1  Joseph M. Alioto (SBN 42680)
   Tatiana V. Wallace (SBN 233939)
2  ALIOTO LAW FIRM
   One Sansome Street, 35th Floor
3  San Francisco, CA  94104
   Telephone:  (415) 434-8900
4  Email:  jmalioto@aliotolaw.com

5

6  [Additional Counsel Listed on Last Page]

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10 | GABRIEL GARAVANIAN, KATHERINE R.
   | ARCELL, JOSE M. BRITO, JAN-MARIE
11 | BROWN, ROSEMARY D'AUGUSTA,
   | BRENDA K. DAVIS, PAMELA FAUST,          CASE NO.: 3:22-cv-6841-JSW
12 | CAROLYN FJORD, DON FREELAND,
13 | DONNA FRY, HARRY GARAVANIAN,            **JOINT CASE MANAGEMENT**
   | YVONNE JOCELYN GARDNER, VALERIE         **STATEMENT AND RULE 26(f) REPORT**
14 | ANN JOLLY, MICHAEL C. MALANEY,
15 | LEN MARAZZO, LISA MCCARTHY,
   | TIMOTHY NIEBOR, DEBORAH M.              Date:       February 10, 2023
16 | PULFER, BILL RUBINSOHN, SONDRA K.       Time:       11:00 a.m.
   | RUSSELL, JUNE STANSBURY, CLYDE D.       Courtroom:  5, 2nd Floor
17 | STENSRUD, GARY TALEWSKY, PAMELA
   | S. WARD, CHRISTINE WHALEN,
18
19          Plaintiffs,
       v.
20

21 | JETBLUE AIRWAYS CORPORATION,
   | SPIRIT AIRLINES, INC.,
22
            Defendants.
23

24

25

26

27

28

The parties respectfully submit this Joint Case Management Conference Statement and Rule 26(f) Report pursuant to Civil Local Rule 16-9 and the Standing Order for All Judges of the Northern District of California in anticipation of the Case Management Conference set for February 10, 2023. Pursuant to Federal Rule of Civil Procedure 26(f), the parties met and conferred on January 12, 2023.

**1. Jurisdiction and Service**

<u>Plaintiffs' Statement</u>

Plaintiffs bring this action pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, alleging that JetBlue's proposed acquisition of Spirit Airlines violates Section 7 of the Clayton Act, 15 U.S.C. § 18, and must be enjoined before it is consummated. This Court has subject matter jurisdiction over federal antitrust law claims. All parties have been served. There are no issues concerning personal jurisdiction, venue or service.

<u>Defendants' Statement</u>

Defendants are not currently aware of any issues pertaining to subject matter jurisdiction, service of process, personal jurisdiction, or venue. However, as described below, the United States Department of Justice, Antitrust Division ("DOJ") is currently reviewing the proposed acquisition of Spirit Airline, Inc. ("Spirit") by JetBlue Airways Corporation ("JetBlue") that is at the center of the Complaint. The acquisition cannot and will not close until after the DOJ makes this decision. If there is litigation between Defendants and the DOJ concerning the proposed transaction, Defendants may seek transfer of this case or the DOJ case, consolidation, or coordination to avoid prejudice, burden, duplication, inconsistent results, as appropriate. Thus, Defendants will promptly inform the Court and Plaintiffs when the DOJ makes its decision, and Defendants will meet and confer with Plaintiffs and make any appropriate transfer, coordination, or consolidation motions at that time.

**2. Facts**

<u>Plaintiffs' Statement</u>

This is a private antitrust action seeking an Order of the Court prohibiting the proposed elimination of Spirit by JetBlue as a violation of the antitrust laws.

On July 28, 2022, Defendants JetBlue, the largest low-cost airline in the country, and Spirit, the largest ultra-low-cost airline, announced that their shareholders approved a definitive merger agreement, valued at $3.8 billion in cash.

Before the shareholder vote, Spirit's Board of Directors and leadership stated that the proposed acquisition would raise airfare prices and eliminate half of the supply of low-cost air passenger travel.  Spirit has admitted that a court "will be very concerned that a higher-cost/higher fare airlines would be eliminating a lower cost/lower fare airline in a combination that would remove about half of the ULCC (ultra-low-cost carrier) capacity in the United States."  In the face of Spirit's assertions, JetBlue simply "sweetened the deal" by offering more money to Spirit, including paying the company a fee of $70 million and its shareholders $400 million, even if the proposed combination failed to go through.

This hostile takeover by Jet Blue will eliminate Spirit's ultra-low-cost carrier competition that appeals to the most budget-conscious travelers. And, by reason of that elimination, it will catapult JetBlue into the fifth largest airline in the United States, with a share of more than 10 percent of the market, only behind the top four airlines that already control over 80 percent of the U.S. market.  Neither JetBlue nor Spirit is a failing company. Once Spirit is absorbed (into JetBlue), the most innovative, passenger friendly, ultra-low cost, unique price-cutting airline in the industry and its low-cost structure will disappear with it, inevitably reducing capacity, eliminating jobs, raising the cost of flying for some customers and prohibiting others from flying entirely.

JetBlue and Spirit have well over 100 overlapping destinations and routes flown within the United States and to Latin America and the Caribbean.  Spirit is known as a "price disruptor" in the industry.  If Spirit is eliminated, this acquisition will eliminate competition between JetBlue and Spirit on these routes, significantly harming consumers in the process.  In addition, the loss of Spirit's competition in these markets may increase the likelihood that the remaining airlines will coordinate with other airlines to raise prices, reduce output and diminish the quality of their services, thereby lessening competition in these overlapping markets.  If the merger is consummated, JetBlue will become the dominant player, even

monopolist, in dozens of markets that neither it nor Spirit currently control.

JetBlue is also a party to an agreement with American Airlines, known as the Northeast Alliance ("NEA"), which requires JetBlue and American to share customers, pool revenues and jointly coordinate which routes to fly, when to fly them, who will fly them and what size planes to use on flights to and from the four major airports in Boston and New York. The NEA also allows the airlines to pool their gates and takeoff and landing authorizations, known as "slots," raising prices and reducing choices for air passengers traveling in the Eastern Corridor. Back when it was fighting JetBlue's hostile takeover, Spirit admitted that "the Northeast Alliance is anticompetitive and should be blocked" and that "a combination of JetBlue and Spirit would make the NEA even more anticompetitive than it is already."

JetBlue's purchase of Spirit is a non-trivial acquisition by a significant rival that may, and most probably will, substantially lessen competition in the airline industry in violation of Section 7 of the Clayton Act (15 U.S.C. § 18). The proposed acquisition threatens the irreparable loss of a vigorous, popular, low-cost, expanding airline option for Plaintiffs and the traveling public. Consequently, the proposed acquisition is prohibited under Section 7 and should and must be enjoined as a matter of law.

This action is brought by private airline consumers under Section 16 of the Clayton Antitrust Act (15 U.S.C. § 26) to prevent the potential threat of higher fares and lower-quality service that will likely flow from the proposed acquisition. The growing and innovative competition of Spirit Air and its presence in the airline market, once lost would be difficult, if not impossible, to resuscitate.

Defendants' Statement

The proposed transaction is good for consumers. JetBlue and Spirit are two of many airlines—including the Big Four of American, United, Southwest, and Delta—that fly passengers in the United States. On July 28, 2022, JetBlue and Spirit announced that their respective boards of directors approved a definitive merger agreement under which JetBlue will acquire Spirit. JetBlue's acquisition of Spirit will enhance competition by strengthening one of the most disruptive and innovative companies in the history of the airline industry,

1  JetBlue, and expanding its ability to bring lower fares and much-loved, award-winning service
2  to more consumers in more communities across the United States. JetBlue and Spirit,
3  individually, are a fraction of the size of each of the dominant Big Four. Combined, JetBlue
4  and Spirit will form a customer-centric, low-fare alternative to the Big Four, that will still be
5  significantly smaller than the smallest of the Big Four. Armed with a larger footprint, the new
6  JetBlue will bring the traveling public more choices, lower fares, and better and more
7  innovative customer experiences through enhanced competition. In doing so, it will force the
8  Big Four to compete harder to win the business of American consumers, injecting much-
9  needed competition into the part of the industry most starved for competition, where the Big
10 Four dominate, while allowing for continued growth by the ultra-low-cost carriers. This
11 lawsuit on behalf of a handful of Plaintiffs seeks to deprive all consumers of these benefits.

**3. Legal Issues**

Plaintiffs' Statement

Whether the proposed acquisition of Defendant Spirit by Defendant JetBlue violates Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18, and whether Plaintiffs are entitled to the relief sought.

Defendants' Statement

The issues in a Section 7 analysis include whether any of the markets alleged in the Complaint constitute relevant markets, whether the effect of the merger between JetBlue and Spirit may be to substantially lessen competition or tend to create a monopoly in any of the alleged markets, whether the proposed transaction has efficiencies that will increase competition, and whether Plaintiffs are entitled to equitable, declaratory, or injunctive relief and, if so, the nature of such relief.

**4. Motions**

There are no pending motions.

**5. Amendment of Pleadings**

The parties do not anticipate amending their pleadings at this time.

**6. Evidence Preservation**

The parties have met and conferred pursuant to Fed. R. Civ. P. 26(f). Counsel for the defendants have represented they are aware of their obligation to preserve evidence in anticipation of litigation. The parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and acknowledge their duty to preserve relevant materials in accordance with applicable rules and case law.

**7. Disclosures**

Plaintiffs' Statement

At the January 12, 2023 Rule 26(f) meet and confer, both Defendants objected to Plaintiffs' request that the parties exchange initial disclosures within 14 days. Plaintiffs assert that no changes should be made in the form or requirement for disclosures under Rule 26(a). Plaintiffs served their Rule 26(a) initial disclosures on both defendants on February 3, 2023. Plaintiffs contend the Court should overrule Defendants' objections and order disclosures exchanged on or before February 17, 2023.

Defendants' Statement

Defendants object to service of initial disclosures at this time.  First, initial disclosures in a merger challenge often are more burdensome than probative.  Second, even if initial disclosures were productive in a case like this, as discussed below in Section 8, serving initial disclosures (particularly on witnesses and documents) is premature, as the DOJ has not yet completed its review of the proposed transaction, the entry of a protective order, and the entry of an order on electronically stored information.

**8. Discovery**

Plaintiffs' Statement

A. Discovery Taken to Date

On January 14, 2023, Plaintiffs propounded a single document request on JetBlue and Spirit, namely, a request for copies of documents Defendants have already submitted to the government pursuant to the Hart-Scott-Rodino Act. The deadline for Defendants to respond to these requests is February 14, 2023. Because the requested documents have already been

compiled and produced to the government, there should be no basis to delay their production to Plaintiffs.

In their statement below, Defendants contend that discovery in this case is "premature," because the Department of Justice might file suit in the future to enjoin the merger. Defendants' de-facto Motion for Stay is unsupported by law, has no reasonable factual support, and should be rejected. Speculation about the possible future filing of a lawsuit is not a basis to stay this case.

B. Scope of Anticipated Discovery

Without prejudice to their rights to seek discovery on any relevant issues, Plaintiffs anticipate seeking discovery on the following topics:

a. Hart-Scot-Rodino Act documents already produced to the government by the Defendants;
b. Merger negotiations between Spirit and Frontier Airlines;
c. Merger negotiations between JetBlue and Spirit;
d. JetBlue internal communications and analyses related to JetBlue's acquisition of Spirit;
e. Spirit internal communications and analyses related to JetBlue's acquisition of Spirit;
f. Internal analyses conducted by either defendant related to the possible economic effects of the acquisition, including its impact on prices, services, capacity, decreases in supply, decreases in operations, and other impacts.
g. Internal analysis conducted by either defendant related to the markets and/or city-pairs in which JetBlue and Spirit compete.
h. Communications between JetBlue and American Airlines related to the acquisition of Spirit;
i. Transcripts of testimony (trial or deposition) or interviews related to *United States v. American Airlines and Jet Blue*.
j. The interrelationship between the Northeast Alliance and JetBlue's proposed

        acquisition of Spirit;

    k. The so-called "JetBlue Effect;"

    l. JetBlue's divestiture plan;

    m. Other subjects related to the proposed acquisition of Spirit by JetBlue and its impact on competition;

C. Proposed Limitations or Modifications of the Discovery Rules.

The parties do not anticipate any modifications to the discovery rules.

D. E-Discovery

The parties have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) and have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information.

E. Names of Known Witnesses to be Called at Trial

Plaintiffs intend to call the following witnesses, among others:

- Robin Hayes, Chief Executive Officer of JetBlue Airways;
- Ted Christie III, President and Chief Executive Officer and Class III Director of the Board of Spirit Airlines;
- William Douglas Parker, Chairman of the Board and former Chief Executive Officer of American Airlines;
- Robert Isom; Chief Executive Officer of American Airlines

Plaintiffs, as follows:

- Gabriel Garavanian
- Katherine R. Arcell
- Jose'M. Brito
- Jan-Marie Brown
- Rosemary D'Augusta
- Brenda K. Davis
- Pamela Faust
- Carolyn Fjord

- Don Freeland
- Donna Fry
- Harry Garavanian
- Yvonne Jocelyn Gardner
- Valarie Ann Jolly
- Michael C. Malaney
- Len Marazzo
- Lisa McCarthy
- Timothy Niebor
- Deborah M. Pulfer
- Bill Rubinsohn
- Sondra K. Russell
- June Stansbury
- Clyde D. Stensrud
- Gary Talewsk
- Pamela S. Ward
- Christine Whalen

F. Deposition Logistics

Plaintiffs believe all depositions should be live, recorded, and taken at the deponent's place of business at mutually agreeable times.

G. Experts

Plaintiffs intend to call at least one expert to testify to the proposed acquisition's anticipated effect on competition.

H. Discovery Completion Dates

Plaintiffs believe discovery can and should be completed within 90-120 days.

I. Potential Discovery Disputes: Protective Order

Plaintiffs respectfully oppose the issuance of any blanket protective order that transposes the burdens set forth in Federal Rule of Civil Procedure 26(c). Rule 26(c) requires

that the disclosing party (1) obtain a certification that it met and conferred with opposing counsel, (2) move the court for protection of evidence it considers confidential, and (3) demonstrate "good cause" as to every document for which protection is sought. Plaintiffs oppose stipulated "umbrella" protective in which any document simply designated "confidential" is presumed protected without a finding of good cause by the Court. These orders impose the burden on the requesting party to challenge such designations as lacking in good cause. This procedure runs contrary to the burdens outlined in Rule 26(c) and, in Plaintiffs' experience, too readily invite abuse.

At the Rule 26(f) conference, Plaintiffs voiced concerns about abuses related to the model blanket protective order. Nevertheless, Plaintiffs invited Defendants to submit a proposal, which they have done, and which the parties will discuss. Plaintiffs believe a model order can be crafted that alleviates the defendants' concerns about confidentiality while simultaneously addressing Plaintiffs' concerns outlined above.

Defendants' Statement

Defendants respectfully submit that discovery in this matter is premature until the DOJ has completed its review of the proposed transaction. Upon the completion of its review, the DOJ will decide whether it, too, will bring an action to enjoin the proposed transaction under the same statute under which Plaintiffs brought this claim (Section 7 of the Clayton Act, 15 U.S.C. § 18). Defendants anticipate the DOJ will make its decision on this transaction in early March 2023.

Defendants do not know whether the DOJ will challenge this transaction or, if the DOJ challenges it, how the DOJ will style its lawsuit. However, any such challenge will very likely involve the same parties, the same alleged conduct, the same statute and legal framework, and potentially the same relief. There is likely to be substantial overlap between Plaintiffs' claims in this matter and the DOJ's potential claims, if brought. Should the DOJ proceed to litigation, the potential burden of duplicative discovery and risk of inconsistent rulings across two substantially related matters would weigh in favor of ensuring that, at the very least, discovery is coordinated between them, *see* Fed. R. Civ. P. 26(b)(1), and potentially that the

cases be tried before the same judge. This should involve coordination on key documents governing discovery, such as an ESI stipulation and a stipulated protective order, to avoid burdensome inconsistencies in such matters as deposition scheduling, confidentiality designations, discovery disputes, and the format for production of documents. Given that the proposed pause to begin discovery in earnest likely is only for a matter of weeks, there is no prejudice to Plaintiffs in waiting for the DOJ's decision and potential suit before beginning the bulk of discovery.

In Section 8.I above, Plaintiffs state that they oppose entering any "blanket protective order." This position came as a surprise to Defendants, as they learned Plaintiffs were taking this position for the first time at 10pm Pacific time on Wednesday, February 1—48 hours before this CMC statement was due. Defendants asked Plaintiffs for a clarification of their position, offered to meet and confer, and sent a draft protective order to Plaintiffs based on the Northern District of California's model order to facilitate further discussion.

While Defendants hope that further meeting and conferring will resolve this dispute, Defendants will, if necessary, move for entry of a protective order governing the production of confidential information based on the Court's model. As the Court is well aware, "blanket protective orders governing the handling of confidential information exchanged in discovery are routinely approved by courts in civil cases," as they serve the interest of a "just, speedy, and inexpensive determination of cases by alleviating the undue cost and delay that would ensue if courts had to make good cause determinations on a document-by-document basis for *all* documents exchanged in discovery that a party wished to protect." *Quality Inv. Properties Santa Clara, LLC v. Serrano Elec., Inc.*, No. C 09-5376 JF (PVT), 2010 WL 2889178, at *1 (N.D. Cal. July 22, 2010) (cleaned up; citing, inter alia, Fed. R. Civ. P. 1); *Kelora Systems, LLC v. Target Corp.*, 2011 WL 6000759, at *2, (N.D. Cal. Aug. 29, 2011) ("[T]he court treats the model protective order as setting forth presumptively reasonable conditions regarding the treatment of highly confidential information."). As noted above, however, Defendants believe that it would be most efficient to postpone entry of the protective order until it is known whether the DOJ will file suit, so that the DOJ can weigh in and, hopefully, agree to the entry

of a protective order in the form Defendants propose.

Finally, in Section 8.A above, Plaintiffs state that they served requests for production of Hart-Scott-Rodino documents on Defendants. As Plaintiffs note, the time for Defendants to respond or object to those requests for production has not yet occurred. On February 14, 2023, Defendants will serve their responses and objections as required under the Federal Rules, and if there are any disputes, promptly meet and confer with Plaintiffs on the proper scope of production, and likely produce at least some portion of these documents to Plaintiffs, assuming the parties can agree on protective and ESI orders. However, it is not as simple to produce these documents as Plaintiffs intimate. <u>First</u>, second-requests are generally very broad,[1] and the documents Defendants have produced to the DOJ are likely not all appropriate for production to Plaintiffs based on the scope of Plaintiffs' case; this is why "me too" requests for documents produced in other contexts are generally disfavored. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 4680242, at *1 (N.D. Cal. Oct. 18, 2017) ("To better determine which documents in the MDL Production are relevant and which are not, the [shareholder] Plaintiffs must comply with the Federal Rules by serving Volkswagen with requests for production, which 'must describe with reasonable particularity each item or category of items to be inspected.'" (quoting Fed. R. Civ. P. 34(b)(1)(A))); *see also Z Best Body & Paint Shops, Inc. v. Sherwin-Williams Co.*, 2017 WL 3730515, at *3 (C.D. Cal. Aug. 29, 2017) ("[T]he broad request for all 'records and documents' produced by Defendant in [prior litigation] appears to be overbroad on its face…") <u>Second</u>, as described above, document production is premature, as no protective order governing the exchange of confidential information or ESI orders have been entered. In particular, the second-request documents contain competitively sensitive internal documents, and were produced to the Government only with appropriate confidentiality guarantees. Defendants object to the production of that information without an appropriate protective order in place.

---

[1] DOJ Model Second Request, available at https://www.justice.gov/atr/file/706636/download.

9. **Class Actions**

This is not a class action.

10. **Related Cases**

Plaintiffs' Statement

There are no related cases.

Defendants' Statement

As explained above, the DOJ has not yet decided whether to bring an action to enjoin the proposed transaction. If the DOJ brings such an action in this district, that action would be "related" to the instant case within the meaning of Civil Local Rule 3-12(a), as it would likely involve the same parties, the same conduct, the same statue and legal framework, and potentially the same relief. If the DOJ brings this case in another district, Defendants may seek to transfer, coordinate, or consolidate the two cases.

11. **Relief**

Plaintiffs' complaint prays for the Court to enjoin the proposed acquisition of Spirit by JetBlue as violative of the antitrust laws and award attorneys' fees and costs. Defendants deny that Plaintiffs are entitled to any relief.

12. **Settlement and ADR**

There are no present prospects for settlement. The parties met and conferred as required to discuss ADR. The parties agree that ADR would not be a productive use of resources. Both parties have filed their ADR certifications. (Dkt. Nos. 23, 27.)

13. **Other References**

Plaintiffs declined magistrate judge jurisdiction. (Dkt. No. 2.) At this time, the parties agree this case is not suitable for a special master or the Judicial Panel on Multidistrict Litigation.

14. **Narrowing of Issues**

The parties have conferred and will continue to confer in an effort to reach agreement regarding the scope and timing of fact discovery and trial in light of the forthcoming DOJ decision on its investigation, as well as the need for and wording of protective and ESI orders,

in addition to the most consequential issue of the merits of this case.

**15. Expedited Trial Procedure**

Plaintiffs' Statement

This case is not appropriate for the Expedited Trial Procedure. Nevertheless, this is a straight-forward one-count antitrust case that hinges on the singular question: Whether the proposed acquisition may substantially lessen competition. Fact discovery will not be extensive. Few depositions will be required. This case can and should be ready for trial on an expedited basis in less than six months.

Defendants' Statement

An expedited trial schedule may be appropriate in this matter. However, Defendants respectfully submit that it is premature to discuss a trial schedule until the DOJ has completed its review of proposed transaction, as discussed above.

**16. Scheduling**

Plaintiffs' Statement

Plaintiffs propose the following schedule:

- Close of Discovery – Friday June 2, 2023
- Pretrial Conference – Monday June 12, 2023
- Trial – Monday June 19, 2023 ~ Friday June 30, 2023

Defendants' Statement

As described above, Defendants respectfully submit that it is premature to discuss a case schedule until the DOJ has completed its review of the proposed transaction. Plaintiffs' schedule, however, is unreasonably aggressive in light of the timing of the DOJ's decision, and leaves almost no time for fact or expert discovery. Defendants respectfully request the opportunity to discuss a more appropriate schedule at the case management conference.

**17. Trial**

Plaintiffs' Statement

This case seeks injunctive relief and will be tried to the Court. The trial will take approximately two weeks.

Defendants' Statement

Defendants agree this case would be tried to the Court, and not a jury, and that most merger trials last between two and three weeks, depending on the Court's trial schedule. However, Defendants respectfully submit that discussing the trial date, estimated trial length, and other pretrial deadlines is premature until the DOJ has completed its review of the proposed transaction.

**18. Disclosure of Non-party Interested Entities or Persons**

Each party has filed the Certification of Interested Entities or Persons. (Dkt. Nos. 11, 15, 20.)

**19. Professional Conduct**

Undersigned counsel certifies that all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**20. Other**

The parties are not presently aware of other matters that should be brought to the attention of the Court.

Dated: February 3, 2023                    ALIOTO LAW FIRM

By: /s/ *Joseph M. Alioto*
Joseph M. Alioto (SBN 42680)
Tatiana V. Wallace (SBN 233939)
One Sansome Street, Suite 3500
San Francisco, CA  94104
Telephone: (415) 434-8900
Attorneys for Plaintiffs

ADDITIONAL PLAINTIFFS' COUNSEL

Lawrence G. Papale (SBN 67068)
LAW OFFICES OF LAWRENCE G. PAPALE
1308 Main Street, Suite 117
St. Helena, CA 94574
Telephone: (707) 963-1704
Email: lgpapale@papalelaw.com

Joseph M. Alioto Jr. (SBN 215544)
ALIOTO LEGAL
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone:  (415) 398-3800
E-mail:  joseph@aliotolegal.com

Robert J. Bonsignore (SBN
BONSIGNORE TRIAL LAWYERS, PLLC
23 Forest Street
Medford, MA 02155
Phone: 781-856-7650
Email: rbonsignore@classactions.us

Theresa Moore (SBN 99978)
LAW OFFICE OF THERESA D. MOORE PC
One Sansome Street, 35th Floor
San Francisco, CA 94104
Phone: (415) 613-1414
tmoore@aliotolaw.com

Christopher A Nedeau (SBN 81297)
NEDEAU LAW PC
154 Baker Street
San Francisco, CA 94117-2111
Telephone: (415) 516-4010
Email: cnedeau@nedeaulaw.net

Josephine Alioto (SNB 282989)
THE VEEN FIRM
20 Haight Street
San Francisco CA 94102
Telephone: (415) 673-4800
Email: jalioto@veenfirm.com

1
*JOINT CASE MANAGEMENT STATEMENT AND RULE 26 REPORT*

DEFENDANTS' COUNSEL

COOLEY LLP

By: /s/ *Ethan Glass*

Ethan Glass (SBN 216159)
eglass@cooley.com
1299 Pennsylvania Avenue, NW Suite 700 Washington, DC 20004-2400
Telephone: (202) 842-7800
Facsimile: (202) 842-7899

Beatriz Mejia (SBN 190948)
mejiab@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Defendant*
*JetBlue Airways Corporation*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: /s/ *Andrew Finch*

Andrew C. Finch (SBN 195012)
afinch@paulweiss.com
Eyitayo St. Matthew-Daniel (admitted *pro hac vice*)
tstmatthewdaniel@paulweiss.com
1285 Avenue of the Americas
New York, NY 10019
Telephone:    (212) 373-3000
Facsimile:    (212) 757-3990

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Meredith R. Dearborn (SBN 268312)
mdearborn@paulweiss.com
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone:    (628) 432-5100
Facsimile:    (628) 232-3101

*Attorneys for Defendant*
*Spirit Airlines, Inc.*