UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GABRIEL GARAVANIAN, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC.,<br><br>*Defendants*. | Civil Action No.: 1:23-cv-10678-WGY |

**MOTION OF NON-PARTY UNITED STATES OF AMERICA TO STAY ENTRY OF PROPOSED SCHEDULING AND CASE MANAGEMENT ORDER AND FOR STATUS CONFERENCE**

1. Non-party United States respectfully moves to stay entry of the Proposed Scheduling and Case Management Order ("Proposed CMO," ECF No. 76 in this case) briefly so that the United States can confer with the parties to this case (the "Private Action" or "*Garavanian*"). The Proposed CMO materially impacts the rights and interests of the United States and its co-Plaintiffs ("Plaintiff States") in *United States v. JetBlue Airways Corp.*, No. 1:23-cv-10511-WGY ("the Government Action"). The United States appreciates the need for judicial economy that would be served by discovery coordination and is committed to work in good faith with the Private Action parties to address the needs of all parties.

2. The United States seeks relief from the Court because we have not yet had the opportunity to meaningfully weigh in on the Proposed CMO. The Private Action parties *never* conferred with the United States or Plaintiff States regarding the Proposed CMO. Moreover, for the first time on the evening of April 24, 2023, the United States became aware from the Proposed CMO that Defendants claim (and *Garavanian* Plaintiffs apparently dispute) that the

Court made a "decision at the April 13, 2023 status conference [in the Private Action] to consolidate this case with [the Government Action] for the purpose of discovery" (Proposed CMO at 2). That was a remote video conference which the United States diligently attempted to attend, but did not have access.

3. The United States would be unfairly prejudiced if the Proposed CMO were entered without any opportunity for the United States and Plaintiff States to confer with Defendants JetBlue and Spirit and *Garavanian* Plaintiffs or to be heard by the Court about provisions that affect the Government Action. The United States is also willing to confer in good faith and expeditiously with all parties to the Private Action. The United States believes that many of its disagreements with the Proposed CMO, as well as its concerns about ambiguities in the Proposed CMO that affect the United States, can be addressed or clarified through a meet-and-confer process this week.

4. In contrast, JetBlue, Spirit, and *Garavanian* Plaintiffs would not be prejudiced by a brief delay in entry of the Proposed CMO because discovery is ongoing in the Private Action (*see* Proposed CMO at 3), and the United States is not seeking a general stay of proceedings or other relief in the Private Action other than to protect the United States' interests in the Government Action.

5. *Garavanian* Plaintiffs consent to the brief stay of the Proposed CMO requested by the United States. JetBlue and Spirit oppose that relief.

6. For these reasons and as shown below, the United States respectfully asks the Court: (1) to permit the United States to file a status report and to order the Private Action parties to file a revised Proposed CMO reflecting conferral with the United States by Friday, April 28,

2023; (2) to stay entry of the Proposed CMO until after that submission; and (3) to schedule a status conference on Monday, May 1, 2023 or at the Court's convenience.[1]

**Procedural Background**

7.  The Private Action was brought in the Northern District of California while the United States was investigating the proposed merger of JetBlue and Spirit. After the Government Action was filed, the Private Action parties stipulated to transfer it to this District. The *Garavanian* Plaintiffs have opposed consolidation with the Government Action. As set forth below, as is its right, the United States also opposes consolidation. *See infra* ¶¶ 24-26. Indeed, undersigned counsel are not aware of *any* case in which a court ordered the United States over its opposition to try a merger case together with private plaintiffs.

8.  Before the initial conference in the Government Action, the United States and Plaintiff States advised the Court that their "trial time estimate and their position regarding the division of trial time among the parties are premised on the assumption that the private action will not be consolidated with this action." ECF No. 64 at 2, ¶ 5.[2] During that conference, the Court noted that the parties to the Private Action were not before it, and "accept[ed] . . . that the dates that you have -- and times you have proposed deal with the case presently assigned to [it] and not this other purported related case." 3/21/23 Tr. 20:13-21. Defendants *never* engaged in further conferral with the United States about the Private Action.

9.  On April 10, 2023, the Court issued an ECF notice in the Private Action of a status conference to be conducted remotely by video on April 13, 2023. *Garavanian* ECF No. 50. The Government Action was not referenced in this notice setting a conference.

---

[1] The United States submits this motion pursuant to 28 U.S.C. § 517, which provides that "any officer of the Department of Justice, may be sent by the Attorney General to any . . . district in the United States to attend to the interests of the United States in a suit pending in a court of the United States."
[2] Except as indicated, docket and transcript citations refer to the Government Action.

3

10. The United States became aware of the status conference only by reviewing the Private Action docket, not from the Private Action parties. Nonetheless, the United States sought to attend the April 13 conference and followed the instructions for members of the public to "sign up" on the Court's website to "gain access to the hearing." *Id.* Because email responses that the United States received on the morning of the hearing stated that "[n]o access information for this hearing has been entered," the United States followed up with contacts identified in those responses, but did not receive access to the hearing. The United States' only information about what took place at the status conference comes from conflicting representations by counsel for Defendants and the *Garavanian* Plaintiffs. The United States ordered a transcript on April 14, 2023 but has not received it and understands that the Private Action parties also have not.

11. Later on April 13, counsel for the United States and *Garavanian* Plaintiffs had a discussion about the Private Action status conference. The *Garavanian* Plaintiffs indicated that the Court expected coordination on discovery (which the United States is willing to do), but did not indicate the Court ordered or expected consolidation of discovery and represented that the Court did not foresee consolidation of the cases for trial.

12. The United States understands that the parties to the Private Action disagree about what took place at their status conference regarding coordination or consolidation of discovery with the Government Action. The first time the United States learned of Defendants' belief that the Court made a "decision at the April 13, 2023 status conference to consolidate this case with [the Government Action]" for discovery, Proposed CMO at 2, was the evening of April 24, 2023.

13. Notably, although Defendants take the position that the Court ordered that these two actions consolidated for discovery, counsel for JetBlue and Spirit neither shared any draft of the Proposed CMO with the United States nor discussed any of its provisions with the United

4

States—even provisions that directly affect the United States' rights in the case it has brought and that are inconsistent with the CMO entered by the Court in that case.

14.     When the United States reviewed the Proposed CMO on the evening of April 24, it learned of Defendants' positions regarding consolidation and of other provisions in the Proposed CMO affecting the Government Action.  The United States asked all Private Action parties to confer immediately.  The parties spoke later that evening from approximately 10:00 p.m. to 10:40 p.m.

15.     During that evening call, JetBlue asserted that the United States did not have any right to confer with JetBlue regarding case management in the Private Action.  When asked why JetBlue did not seek to confer with the United States about coordination or consolidation of discovery given the implications for the already-entered CMO in the Government Action, JetBlue responded that it had no obligation to do so.

16.     The United States asked the Private Action parties to consent to a brief stay of entry of the Proposed CMO so that the United States and Plaintiff States could negotiate provisions that affect the Government Action in the hope of reducing the disputes.  Defendants refused.  Defendants asserted that the delay would be prejudicial to them, but identified no way in which they could genuinely be prejudiced.[3]  Notably, the United States is not seeking a stay of any proceedings other than entry of the Proposed CMO.  It is the United States and Plaintiff States that were prejudiced by Defendants' failure to confer before filing the Proposed CMO.

17.     On the 10:00 p.m. call, Defendants demanded immediately a list of changes the United States seeks to the Proposed CMO.  The United States identified certain concerns it had

---

[3] The only supposed "prejudice" Defendants identified was the need to get a CMO entered in the Private Action in light of the *Garavanian* Plaintiffs' request for a September 2023 trial setting.  The United States noted such a setting was not feasible, in light of the Court's calendar—a fact of which Defendants were aware from the Government Action status conference.  3/21/23 Tr. 14:5-14.

with the Proposed CMO but was not in a position to provide a comprehensive list late at night, three hours after first receiving it. The United States is also hopeful that, by meeting and conferring with the Private Action parties this week, all parties may be able to limit the number of disagreements that the United States would otherwise present to the Court. In any event, the United States would be prejudiced if the Proposed CMO were entered. *See infra* ¶¶ 20-27.

18. To be clear, the United States does not oppose all discovery coordination. The United States also does not seek to interfere in issues solely involving the Private Action, nor to delay discovery in the Private Action, which has already begun. *See* Proposed CMO at 3, ¶ 1.

19. Before filing this motion, the United States reached out to the Private Action parties again to request a meet-and-confer call regarding its substantive concerns with the Proposed CMO. The United States is prepared to work in good faith and expeditiously with the Private Action parties regarding discovery coordination and believes that a brief period to negotiate changes to the Proposed CMO would be appropriate and constructive.

**The Proposed CMO Would Be Prejudicial to the United States**

20. Based on its preliminary review, the United States has identified numerous aspects of the Proposed CMO that impact the Government Action, including the rights and interests of the United States. The United States has also identified ambiguities in the Proposed CMO that affect the United States. Because of the exigency caused by the Private Action parties' failure to meet and confer with the United States or Plaintiff States, the United States is not yet in a position to comprehensively list all of these disagreements and ambiguities, and they are not yet ripe for the Court to resolve. That is why the United States files this motion seeking a few days to confer with the Private Action parties to resolve as many of these disagreements and ambiguities as possible and the opportunity to be heard by the Court.

21. Nonetheless, the United States presents a few examples of issues impacting the Government Action to illustrate why the Proposed CMO would prejudice the United States.

22. <u>Depositions</u>:  The Proposed CMO impacts depositions in the Government Action in ways that conflict with the Government Action CMO.  For example, both sides of the Private Action contemplate two-day depositions of Defendants' employees coordinated across both cases, which would pose considerable logistical challenges during an already tight schedule.  *See* Proposed CMO at 15-16.  Defendants also seek to limit the amount of time for the United States and its co-Plaintiffs to examine cross-noticed third-party witnesses to less than the agreed amounts of time in the Government Action CMO.  *Id.* at 16.  It is also unclear how the Proposed CMO would impact the allotment of time for depositions of third-parties noticed by only one of the Government Action parties and of Divestiture Buyers.  The United States is examining other ambiguities, uncertainties, and burdens related to depositions in the Proposed CMO and believes many of these issues can be resolved through a meet-and-confer process with the Private Action parties.

23. <u>Document Discovery</u>:  The Proposed CMO may arguably permit the use of ***all*** third-party materials, whether produced directly by third parties or re-produced by the United States as part of its investigation Materials in the Private Action, although the Proposed CMO does not explicitly say so.  *See* Proposed CMO at 1.  This aspect of the Proposed CMO ignores statutory protections for materials provided to the United States during antitrust investigations under the Hart-Scott-Rodino Act and the Antitrust Civil Process Act.  *See* 15 U.S.C. §§ 18a(h), 1313(c).  The United States believes a more tailored approach to the coordination of document discovery would resolve its concerns without burdening the Private Action parties.

24. <u>Consolidation for Trial</u>: Although Defendants ask the Court to "reserve[] whether to consolidate the two cases for trial" until the final pre-trial conference, Proposed CMO at 2, Defendants simultaneously ask to begin trial on the same date as the trial of the Government Action, *id.* at 5.  Plainly, both cases cannot simultaneously be tried without consolidation, which would be inappropriate and prejudicial.  To counsel's knowledge, the United States has *never* been required to try a merger case together with private plaintiffs over its opposition.

25. Antitrust claims brought by sovereign plaintiffs are afforded latitude with respect to consolidation with other matters.  For example, despite the potential impact on efficiency, Congress has exempted the United States, and now also states, from consolidation with multi-district litigation proceedings.  *See* 28 U.S.C. § 1407(g).  As the Supreme Court has explained, the "policy of not permitting private antitrust plaintiffs to press their claims against alleged violators in the same suit as the Government" is "unquestionably sound."  *Sam Fox Pub. Co. v. United States*, 366 U.S. 683, 693 (1961).  Following this sound policy, courts properly decline to combine government antitrust enforcement actions with private actions under the antitrust laws.  For example, in *United States v. JBS S.A.*, No. 1:08-cv-5992 (N.D. Ill.), ECF No. 91, the court denied a motion to consolidate government and private suits challenging the same merger because "established case law holds that private plaintiffs may not intervene in a government antitrust case, in the absence of an exception which is not even argued here, which would be the effect of granting plaintiffs' motion."  And in *In re American Express Anti-Steering Rules Antitrust Litigation*, 2014 WL 558759, at *2 (E.D.N.Y. Feb. 11, 2014), the court declined to consolidate cases in light of the "well-established rule" against private intervention in government enforcement actions, which "ensures the Government full control of its enforcement action, avoids prolonging and confusing the Government's case with collateral side issues, and

8

focuses the fact-finder's attention on the public interest presumably being advanced by the Government, rather than the monetary interests of private plaintiffs."[4]

26. Further, because of significant differences between the theories and scope of the Government Action and Private Action, it would be prejudicial to the United States to try the cases simultaneously, especially on a schedule proposed for the Government Action alone. *See supra* ¶ 8. Among other differences, the Private Action complaint: (1) alleges product and geographic markets that are inconsistent with those in the Government Action; (2) challenges JetBlue's Northeast Alliance with American Airlines, which the United States and several states already tried in a separate pending case;[5] and (3) seeks divestiture or disgorgement of JetBlue's pre-payments of the purchase price for Spirit, which is not at issue in the Government Action. Interjecting those issues into the trial of the Government Action, particularly on a trial schedule that does not accommodate them, would complicate and confuse the issues and "demonstrabl[y] prejudice" the United States, a basis to deny consolidation. *Cruickshank v. Clean Seas Co.*, 402 F. Supp. 2d 328, 341 (D. Mass. 2005); *see also Americus Mortg. Corp. v. Mark*, 2013 WL 3106018, at *12 (D. Mass. June 17, 2013) (on motion to consolidate, a court may consider "any confusion, delay or prejudice that might result from consolidation").[6]

27. As noted, this is not a comprehensive list of the United States' disagreements with the Proposed CMO. The United States is always willing to confer in good faith with the Private

---

[4] *See also United States v. Google LLC*, 2023 WL 2486605, at *1 (E.D. Va. Mar. 14, 2023) (rejecting transfer of government case in light of "clear congressional intent to exempt antitrust suits from multidistrict litigation . . . consolidation"); *United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 145 (D. Del. 1999) (rejecting consolidation and holding that "in cases where the Government objects to consolidation, as in this case, public policy concerns . . . outweigh other considerations in favor of consolidation").
[5] *United States v. American Airlines Grp., Inc.*, No. 1:21-cv-11558-LTS (D. Mass.).
[6] In light of these considerations and authorities, the United States respectfully submits that the Court should not decide the issue of consolidation for trial, or its practical equivalent, on the basis of a joint proposed order. Instead, if Defendants insist upon seeking such consolidation, a motion should be filed in the Government Action—the "case first filed in this court," L.R. 40.1(j)—to which the United States and Plaintiff States may respond.

Action parties to try to limit the number of substantive disagreements that may require a resolution by the Court, but needs time for that meet-and-confer effort. That is why we seek a brief stay of entry of the Proposed CMO.

**Conclusion**

WHEREFORE, the United States respectfully requests an order: (1) permitting the United States to file a status report and ordering the Private Action parties to file a revised Proposed CMO by April 28, 2023; (2) staying entry of the Proposed CMO until after that submission; and (3) scheduling a status conference on May 1, 2023 or the Court's convenience.[7]

Dated: April 25, 2023

Respectfully submitted,

/s/ Edward W. Duffy
Edward W. Duffy
John M. Briggs
Arianna Markel
Aaron M. Teitelbaum
United States Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, D.C. 20530
Telephone: (202) 812-4723
Fax: (202) 307-5802
Email: edward.duffy@usdoj.gov

*Attorneys for Movant the United States of America*

---

[7] Pursuant to Local Rule 37.1, the United States certifies that it conferred in good faith with all parties to the Private Action telephonically on April 24, 2023 from approximately 10:00 p.m. to 10:40 p.m. Counsel on the call included Edward Duffy for the United States; Joseph Alioto for the *Garavanian* Plaintiffs; Ethan Glass for JetBlue; and Jay Cohen for Spirit. The *Garavanian* Plaintiffs consented to a stay of entry of the Proposed CMO and to the request for a status conference. JetBlue and Spirit opposed a stay of entry of the Proposed CMO but consented to the request for a status conference.

**CERTIFICATE OF SERVICE**

       I hereby certify that this document filed through the ECF system will be sent electronically to counsel of record for all parties as identified on the Notice of Electronic Filing (NEF). In addition, I caused this document to be served by email on counsel for all parties in *United States v. JetBlue Airways Corp.*, No. 1:23-cv-10511-WGY (D. Mass.).

                                  /s/ Edward W. Duffy

Dated: April 25, 2023