**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA, ET AL.,

              Plaintiffs,

              v.

JETBLUE AIRWAYS CORPORATION, ET AL.,

              Defendants.

Civil Action No. 1:23-cv-10511-WGY

GABRIEL GARAVANIAN, ET AL.,

              Plaintiffs,

v.

JETBLUE AIRWAYS CORPORATION, ET AL.,

              Defendants.

Civil Action No. 1:23-cv-10678-WGY

## OBJECTIONS OF SOUTHWEST AIRLINES CO. TO PRODUCTION OF HIGHLY CONFIDENTIAL INFORMATION TO PRIVATE ACTION PLAINTIFFS

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

BACKGROUND ................................................................................................................... 4

    A.    Documents at Issue .............................................................................................. 4

    B.    No Discovery Requests in the Private Litigation ................................................ 5

    C.    Counsel for Private Plaintiffs ............................................................................. 5

    D.    The Proposed CMO Would Make All Government Action Discovery
        Available to Counsel in the Private Action ......................................................... 7

ARGUMENT ........................................................................................................................ 8

I.      Failure to Issue Discovery Requests ................................................................... 8

II.     "Cloned" Discovery Improper ........................................................................... 10

III.    Harm from Allowing Confidential Materials to be Shared ............................... 12

CONCLUSION ................................................................................................................... 14

## <u>INTRODUCTION</u>

Southwest Airlines Co. ("Southwest") objects to its Highly Confidential information being produced to Private Action plaintiffs.[1] Southwest has no interest in the outcome of the underlying merger challenge at issue in this case. However, Southwest has a substantial and compelling interest in the confidentiality of its documents. It now finds itself facing the untenable situation of counsel for its competitor (JetBlue) having agreed (without Southwest's consent) to turn over wholesale a trove of Southwest's most confidential and sensitive materials to representatives from at least nine law firms, including a litigant from whom Southwest obtained sanctions in prior merger-related litigation. Moreover, Southwest's competitor intends to provide Southwest's confidential materials *without a discovery request ever having been made to Southwest in the Private Action*. The potential harm to Southwest from this widespread dispersion of Southwest's confidential information, even if under protective order, would be extraordinary.

The Federal Rules of Civil Procedure provide protections to non-party subpoena recipients, including the ability to seek an order to protect themselves from harm and to bar production of irrelevant and burdensome discovery. However, no subpoena in the Private Action has been issued to Southwest in the *seven* months since that case was filed. Not a single one. As such, no marker exists upon which Southwest could assess relevancy or assert Rule 26 and Rule 45 protections.

Instead, the parties in the Private Action have concocted an end-run in which they simply deem that, unless this Court acts, JetBlue counsel will make all discovery in the Government Action available to all counsel in the Private Action. The Southwest information at issue covers

---

[1] The "Private Action" herein refers to *Garavanian et al. v. JetBlue Airways Corp.*, et al., No. 23-cv-10678 (D. Mass.) (originally filed as No. 22-cv-10511 (N.D. Cal.)), and the "Government Action" refers to *United States et al. v. JetBlue Airways Corp. et al.*, No. 23-cv-10511 (D. Mass.). Southwest files these Objections pursuant to the Proposed Protective Order covering both actions. Private Action, Dkt. #97-1 at ¶ 25 (providing non-parties the opportunity to object to production of its documents) & ¶ 53 (providing that the proposed Order does not limit the rights of any person "from seeking further or additional protections for any of its materials . . . , including, without limitation, an order that certain materials not be produced at all . . . .").

strategic plans, internal corporate deliberations, board discussions, ticket data, pricing analyses and other such highly confidential materials, and is not limited to the time period potentially at issue in this case, but instead spans the last fourteen years.

JetBlue counsel possesses these documents solely through the Government Action as DOJ had produced "Investigatory Files" including certain Southwest documents from old DOJ matters. While Southwest believes most, if not all, of these documents are irrelevant in this case, it did not object to their production given deference to the Government Action's public importance and the Protective Order limiting the materials to use in just that case. Similarly, even though DOJ and JetBlue subpoenas to Southwest in the Government Action are unduly burdensome and call for irrelevant information, Southwest, in the same spirit of compromise and deference, did not lodge formal objections and, instead, was working toward productions amenable to DOJ and JetBlue.

That calculus changed dramatically with the current proposal to make all Government Action discovery available in the Private Action. The harm to Southwest from such manifest production is clear: Its most sensitive and most confidential information will be widely distributed without even a showing of need by Private Plaintiffs or an opportunity by Southwest to contest relevance, burden and proportionality under the Federal Rules.

We have found no analogue to such a deprivation of non-party rights. Quite the opposite. As explained below, over the past fifteen years, the Alioto Law Firm – lead counsel for private plaintiffs here – has filed numerous antitrust strike suits against proposed mergers in hopes of extracting cash settlements. Counsel, though, has never obtained injunctive relief in these cases or prevailed on the merits in a single one. Yet, some companies have been forced to surrender settlements (the terms of which are confidential) just prior to closing rather than risk further delay of their multi-billion dollar deals.

While this is not the forum in which to litigate the merits of Private Plaintiffs' business model, we are not aware of a single instance in all those cases when a court has allowed Private Plaintiffs' counsel to access discovery from government matters. This Court should not be the first. The fact that the Government Action has been consolidated with the Private Action does not compel a different result. Consolidation does not completely merge the constituent cases, but instead enables "more efficient case management while preserving the distinct identities of the cases and the rights of the separate parties in them." *Hall v. Hall*, 138 S. Ct. 1118, 1125 (2018). Those separate rights, by extension, should apply equally to protect the interests of non-parties.

Finally, this case cannot be considered in a vacuum given the enormous public policy implications. If access to non-party information is granted here, then, in future government merger matters, non-parties will be much more forceful in asserting discovery objections and hesitant to make accommodations for fear that their materials will similarly be disclosed to opportunistic plaintiffs. Multiple courts in cases involving private litigants have refused to relax protective orders to allow access to discovery given the inherent unfairness and long-run implications:

> A court should be hesitant to modify protective orders for matters unrelated to the litigation in front of it because otherwise, in the long run, parties may begin to distrust protective orders. Discovery, in turn, will become more complicated and expensive and settlements will be more difficult. A natural feeling of unfairness arises when the rules are modified during the middle of the game, especially without very good cause.[2]

The concerns here are even more substantial given the public importance of government litigation.

Accordingly, Southwest respectfully requests that its materials not be produced to the Private Action plaintiffs.  If they truly have a need for Southwest information, they can issue a subpoena to Southwest as provided for under the Federal Rules.

---

[2] *Minogue v. Modell*, 2012 WL 4105312, at *5 (D. Md. 2012), quoting *SmithKline Beecham Corp. v. Synthon Pharmaceuticals*, 210 FRD 163, 166 (M.D.N.C. 2002) (internal citations omitted); *see also Four Corners Nephrology Associates, P.C. v. Mercy Medical Center of Durango*, 2009 WL 4730471 (D. Colo. 2009).

## BACKGROUND

### A.      Documents at Issue

There are two classes of Southwest documents at issue:

1.      DOJ Investigatory Files.   This category covers documents that Southwest had provided to DOJ during the course of various DOJ investigations over the past fourteen years. Southwest was *not* a party to any of these investigations. On March 13, 2023, shortly after filing the complaint in this matter, DOJ informed Southwest that DOJ would be producing within three days to JetBlue and Spirit on an "outside counsel only" basis certain Southwest materials from prior investigations. [3] These internal and confidential Southwest materials include internal Southwest analyses, pricing information, internal reports, strategic plans, and data relating to every ticket that Southwest has sold in the past five years.

All of these materials are highly confidential. Many (if not most) of them have no direct relevance to any claim or defense in the current merger litigation. Nevertheless, Southwest did not object to DOJ producing these materials to counsel for defendants for three reasons: (a) deference to the public policy importance of the Government Action, (b) recognition of the tight schedule that the parties were working under to prepare their case for trial, and (c) the terms of the Government Action Protective Order that mandated that discovery materials could only be used for that specific litigation and that only outside counsel for the defendants would have access.

2.      Government Action Subpoena Responses. Both DOJ and JetBlue issued Rule 45 subpoenas to Southwest in the Government Action. (Stallings Dec. Exhs. B and C.) The subpoenas

---

[3] The specific investigations were: US Airways, Inc. and Delta Air Lines, Inc. Slot Swap Matter (2009); US Airways and AMR Corp. Matter (2012); United Continental Holdings Matter (2015); American Airlines, Inc. and JetBlue Airways Corp. Matter (2020); and JetBlue Airways Corp. and Spirit Airlines, Inc. Matter (2022). *See* Email dated March 23, 2023 from John Thornburgh of DOJ to William Stallings, attached hereto as Exh. A to the accompanying declaration of William H. Stallings.

call for production of voluminous documents dating as far back as 2013 (JetBlue) and 2018 (DOJ). The individual requests (25 for JetBlue and 13 for DOJ) are incredibly broad, effectively covering all documents in any way relating to competition and specifically including board materials, strategic plans, reports, competitive assessments, pricing actions, and network and fleet plans. Notwithstanding the incredible scope and scale of the requests, both subpoenas called for production with fourteen days of service.

The subpoenas are facially overly broad and unduly burdensome. However, similar to its acquiescence to the production of the Investigatory Files, Southwest – instead of filing objections and seeking a protective order – sought to cooperate with both JetBlue and DOJ. Southwest had been making significant progress on subpoena responses with both parties prior to learning of JetBlue's potential production of all of Southwest's documents to Private Plaintiffs.

**B.     No Discovery Requests in the Private Litigation**

The Private Plaintiffs have *never* sought discovery from Southwest. They originally filed their case in California on November 3, 2022, meaning that over *seven* months have elapsed without any effort to obtain evidence directly from Southwest. Private Plaintiffs have not issued any subpoena to Southwest nor made any demand on Southwest. Similarly, neither JetBlue nor Spirit has issued any subpoena to Southwest in connection with the Private Litigation, even though the claims and defenses in that case differ from those in the DOJ Litigation. As such, *there are no discovery requests directed at Southwest in the Private Action for which to assess relevance, burden or proportionality.*

**C.     Counsel for Private Plaintiffs**

The Complaint in the Private Action lists twenty-five named individuals as plaintiffs who are represented by attorneys from a total of nine different law firms. The lead attorney is Joseph M. Alioto from the Alioto Law Firm.

This is not the first time that Mr. Alioto has sued on behalf of individuals to block a high-profile merger. Indeed, it is at least the thirteenth time he has done so in the past fifteen years.[4] One of these matters was an unsuccessful challenge to Southwest's acquisition of AirTran Airways. As part of that litigation, Southwest requested, and the Ninth Circuit awarded, attorneys' fees against Mr. Alioto and the Alioto Law Firm as sanctions for violation of 28 USC § 1927 in connection with Mr. Alioto's litigation actions.[5] As Southwest explained in its sanctions motion to the Ninth Circuit, Mr. Alioto's "*modus operandi* in these [merger] cases is to sue companies that are attempting to complete high profile mergers at the most time-sensitive stage of the transaction in hopes of extracting a cash settlement that does not benefit (and indeed ultimately increases the costs to) the public at large."[6] The same *m.o.* holds true today. Plaintiffs in Alioto Law Firm private merger suits have not won a single case on the merits or ever won a motion or judgment for injunctive or monetary relief. However, in at least two of them, the companies had settled on confidential terms just prior to closing rather than risk further delay.[7]

---

[4] *Whalen v. The Kroger Co.,* No. 23-cv-459 (N.D. Cal.) (Kroger/Albertsons); *Demartini v. Microsoft Corp.*, No. 22-cv-08991 (N.D. Cal.) (Microsoft/Activision); *Bradt v. T-Mobile US, Inc.*, No. 19-cv-07752 (N.D. Cal.) (Sprint/T-Mobile); *Grace v. Alaska Air Grp.*, No. 3:16-cv-05165 (N.D. Cal.) (Alaska Airlines/Virgin America); *Edstrom v. AnheuserBusch InBEV SA/NV*, No. 3:13-cv-01309 (N.D. Cal.) (ABI/Groupo Modelo), *Fjord v. AMR Corp.* (*In re AMR Corp.*), No. 11-15463 (S.D.N.Y.) (American Airlines/US Airways); *Taleff v. Sw. Airlines Co.*, No. C-11-02179 (N.D. Cal.) (Southwest/AirTran); *Cassan Enters., Inc. v. Avis Budget Group, Inc.*, No. 10-cv-1934 (W.D. Wash.) (Avis/Dollar); *Malaney v. UAL Corp.*, No. 10-cv-2858 (N.D. Cal.) (United/Continental); *Golden Gate Pharm. Servs., Inc. v. Pfizer, Inc.*, No. 09-cv-3854-MMC (N.D. Cal.) (Pfizer/Wyeth); *Ginsburg v. INBEV NV/SA*, No. 08-cv-1375 (E.D. Mo.) (INBEV/Anheuser-Busch); *D'Augusta v. Nw. Airlines Corp.*, No. 08-cv-3007 (N.D. Cal.) (Delta/Northwest).

[5] Order, *Taleff v. Southwest Airlines*, No. 11-cv-161793, Dkt. #31 (9th Cir., Aug. 30, 2011), attached as Stallings Dec. Exh. D.

[6] Motion for Sanctions, *Taleff*, Dkt #24-1, at pdf p. 6, attached as Stallings Dec. Exh. E.

[7] The merger of Alaska Airlines and Virgin America closed on December 14, 2016, seven days after the companies entered a confidential settlement involving clients represented by Mr. Alioto. *See* Susan Carey, "Alaska Air Agrees to Settle Consumer Lawsuit Opposing Virgin America Merger," WALL STREET JOURNAL (Dec. 7, 2016), available at https://www.wsj.com/articles/alaska-air-agrees-to-settle-consumer-lawsuit-opposing-virgin-america-merger-1481147817 ("Settlement removes the last big obstacle in the way of the Alaska Air-Virgin America deal"). Delta Air Lines and Northwest Airlines closed their deal on October 29, 2008, the same day that DOJ closed its investigation and the airlines reached a confidential settlement with Mr. Alioto. *See* Associated Press, "Delta

Importantly, we are not aware of any instance in all of these Alioto Law Firm merger challenges where discovery in a related government action has been shared with counsel for private plaintiffs; indeed we are not aware of any such request even being made. This is not surprising as most of these private cases are dismissed on the pleadings or motions for injunctive relief are denied for failure to show irreparable harm.[8]

**D.    The Proposed CMO Would Make All Government Action Discovery Available to Counsel in the Private Action**

On April 24, 2023, the parties in the Private Action submitted a proposed Case Management Order that provided that all discovery in the Government Action "shall be served or made available" to the parties in the Private Action. Dkt. #76 at 1.  JetBlue counsel sought this Order without providing any notice to Southwest that Southwest highly confidential information produced to JetBlue strictly under the terms of the Government Action Protective Order could be soon disclosed to Private Action plaintiffs. On May 23, 2023, this Court entered the Scheduling and Case Management Order in the Private Action. Dkt. #96 at 1. The same order consolidates the two Actions for fact discovery. *Id.* at 2.

On May 26, the parties in the Private Action, together with DOJ, filed a Joint Motion for Entry of Stipulated Joint Protective Order and Order Governing Production of Investigation Materials that provides for production of material from the Government Action to the Private

---

Completes Deal to Acquire Northwest Airlines," LOS ANGELES TIMES (Oct. 30, 2008), available at https://www.latimes.com/travel/la-trw-merger31-2008oct31-story.html ("Also Wednesday, an attorney for 28 air travelers who had sued to block the deal said the case had settled. The attorney, Joseph Alioto, declined to release terms of the settlement, which he said was worked out on Friday and finalized over the last few days.").

[8] *See, e.g.*, *Demartini v. Microsoft Corp.*, 2023 WL 3569993 (N.D. Cal. May 19, 2023) (denying injunctive relief in challenge to Microsoft/Activision merger for failure to show personal irreparable harm); *In re AMR Corp.*, 502 B.R. 23 (S.D.N.Y. 2013) (denying TRO in challenge to merger of American and USAirways as "the Court finds that Plaintiffs have utterly failed to establish irreparable harm, a deficiency that standing alone dooms their request for injunctive relief"); *Taleff v. Southwest Airlines Co.*, 828 F.Supp.2d 1118, 1125 (N.D. Cal. 2011) (dismissing challenged to Southwest/Air Tran merger as plaintiffs "failed to demonstrate that they are entitled to the injunctive relief they request").

Action, but "only after non-parties that provided such material receive notice and the opportunity to object in the Private Action." Dkt. #97 at 2.

## **ARGUMENT**

Southwest objects to the disclosure of its materials in the Private Action for the following reasons.

### I.   **Failure to Issue Discovery Requests**

The Private Action plaintiffs have never sought discovery from Southwest in the seven months since that case was filed. In contrast, Private Action plaintiffs issued document demands to defendants as far back as January 2023, and, on February 2, 2023, filed a detailed report with the Court setting forth the scope of anticipated discovery in this case (which they represented "can and should be completed within 90-120 days") and listing twenty-nine planned trial witnesses.[9] Yet, they never once referenced in the report any interest (much less the need) in obtaining discovery from Southwest and did not list any Southwest employees as potential trial witnesses. In the over four months since filing that report, they have not approached Southwest with any discovery demand. If they had a true need for materials from Southwest, they could have issued Rule 45 subpoenas well before now. Southwest would have then been able to respond and/or object pursuant to the Federal Rules, including with respect to relevancy, burden and proportionality.

Instead, the Private Action parties' planned end-run would automatically make Southwest's materials available wholesale in the Private Action. This is improper. *See Commonwealth of Mass. v. Mylan Lab.*, 246 FRD 87 (D. Mass 2007) (proper process is to issue subpoena for materials directly from producing parties instead of trying to obtain discovery from other litigation). In *LG Display Co., Ltd. v. AU Optronics*, 2010 WL 5463305 (D. Del. Dec. 29,

---

[9] Joint Case Management Statement and Rule 26(f) Report (February 3, 2023), Dkt. #28 in Private Action, at 6-10.

2010), the court denied a motion to modify an existing protective order to allow a movant to obtain discovery that had been produced under a protective order. The court was especially cognizant of the harm to third-parties as "those third parties have also relied on the Protective Order" and the movant "could have sought these materials through its own third party subpoenas (a process which would have provided these third parties a direct opportunity to object to production of their documents . . .)." *Id.* at *4. Such is the case here as the Private Action litigants are depriving Southwest of its opportunity to object and other protections under the Federal Rules.

The fact that the Government Action and the Private Action are now consolidated for discovery does not change the result. Even when consolidated, each case's individuality and distinctness will remain. *See Gen. Contracting & Trading Co., LLC v. Interpole, Inc.* 899 F.2d 109, 113 (1st Cir. 1990) (consolidation is a procedural device that does not alter the character of separate suits). "[C]onsolidation is permitted as a matter of convenience and economy in administration but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Hall*, 138 S. Ct. at 1127 (2018).

In *United States v. Hames*, No. 18-cv-1096, 2020 WL 10139466 (N.D. Ala. Mar. 17, 2020), the court had consolidated an action brought by the United States alleging violations of the Fair Housing Act with an action brought by private plaintiffs alleging violations of the FHA and state law. The government sought discovery from the defendant, and the court found that the government was entitled to that discovery under the Federal Rules. However, the court found that the private plaintiffs were not entitled to the same discovery. The court therefore granted discovery only to the government. *Id.* at *3. In other words, consolidation with the government's case did not entitle the private plaintiffs to all of the discovery in the government's case. *See also Norton Lilly International, Inc. v. Puerto Rico Ports Authority* 2019 WL 13094747, at *4 (D. P.R. 2019)

9

(granting consolidation with recognition that "certain discovery and evidence is unique to each case").

## II.       "Cloned" Discovery Improper

The Private Action plaintiffs seek "cloned discovery" – that is, a broad-stroke request to obtain all documents produced or received in another litigation or investigation. *See Capital Ventures Intern. v. J.P. Morgan Mortg. Acquisition Corp.*, 2014 WL 1431124 (D. Mass., Apr. 14, 2014). This is an over-reach. In *TravelPass Grp., LLC v. Caesars Ent. Corp.*, 2020 WL 698538 (E.D. Tex. Jan. 16, 2020), the court denied the defendants' motion to compel plaintiffs to produce (a) documents they provided to the Federal Trade Commission during a government investigation of defendants into the same issues as in the litigation and (b) documents produced in similar litigation against a separate defendant. Even though there was "overlap between the issues in those cases" and the plaintiffs conceded that "much" of the discovery may be relevant, the court found that defendants were not entitled to the "wholesale reproduction" of the materials as they had failed "to make the requisite showing of relevance." *Id.* at *6 (*citing In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 4680242, at *1).

Instead, the party requesting documents must issue document requests so that relevance can be determined. *Goro v. Flowers Foods, Inc.*, 2019 WL 6252499, at *18 (S.D. Cal. Nov. 22, 2019); *see also Midwest Gas Services v. Indiana Gas Co., Inc.*, 2000 WL 760700, at *1 (S.D. Ind. 2000) (denying motion to obtain files produced to DOJ: "The plaintiffs' counsel must do their own work and request the information they seek directly."). Private Action plaintiffs have failed in this essential step.

Moreover, cloned discovery is especially improper when dealing with files from government investigations as "[g]overnment investigations also may be much broader than the

limited subject matter of a lawsuit." *Capital Ventures*, 2014 WL 1431124, at *2; *see also King County v. Merrill Lynch & Co., Inc.*, 2011 WL 3438491 (W.D. Wash. Aug. 5, 2011), at *3 ("It may very well be that each and every document produced in the government investigations is relevant to Plaintiff's claims. However, Plaintiff must make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them—and each category must be relevant to its claims and defenses.").

Indeed, this issue has already been litigated in this very case. On February 27, 2023, when this case was still in the Northern District of California, JetBlue filed objections to Plaintiffs' discovery request that sought the entirety of JetBlue's submission to the DOJ during DOJ's investigation of the JetBlue-Spirit merger, claiming that Plaintiffs' "cloned" discovery request was overly broad and unduly burdensome. JetBlue argued that:  the DOJ merger investigation casted "a wide net and investigated an acquisition in myriad ways that Plaintiffs – airline passengers – would not have standing to challenge;" JetBlue "did not conduct the same relevance and privilege reviews they would in civil litigation;" and the productions to the government contained "significant amounts of information irrelevant to Plaintiffs' claims." [10] JetBlue asserted that Plaintiffs must "follow the Federal Rules by serving specific document requests" as, after all, "the Federal Rules require that document requests 'must describe with reasonable particularity each item or category of items to be inspected.'"[11] The Court found for JetBlue.  On March 10, 2023, Magistrate Judge Westmore ruled that the request for cloned discovery of the government's

---

[10] Joint Discovery Letter, *Garavanian, et al. v. JetBlue et al.* (original case no. 22-cv-6841 (N.D. Cal.), now 23-cv-10678 (D. Mass.)), Dkt. #31 at 4-5.

[11] *Id.* (quoting Fed. R. Civ. P. 34(b)(1)(A).

investigation was too broad and that, instead, "Plaintiffs must propound requests identifying the specific categories of documents sought."[12]

Notwithstanding this clear direction of the Court, JetBlue (Southwest's competitor) now seeks to have *all* of Southwest's documents that it produced to DOJ during the merger review turned over wholesale to Private Action plaintiffs without any showing of need or relevance. This is a textbook case for application of judicial estoppel. *See Alternative System Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st. Cir. 2004) ("[W]e recently concluded that, in a prototypical case, judicial estoppel applies when 'a party has adopted one position, secured a favorable decision, and then taken a contradictory position in search of legal advantage.'" (*quoting InterGen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir. 2003)). Similarly, even though Private Plaintiffs have been on notice from the Court about the need to issue specific document requests to obtain discovery, they have never attempted to issue a subpoena to Southwest.

## III.   Harm from Allowing Confidential Materials to be Shared

Southwest would be harmed by allowing Private Action plaintiffs to access materials that Southwest produced only upon the assurance of the existing terms of the Government Action Protective Order, among them, the assurance that the materials would only be used in that Action. The "promissory rug" is being pulled out from under it. *See Four Corners Nephrology Assoc. v. Mercy Medical Ctr.*, 2009 WL 4730471 (D. Colo. 2009) ("The Court finds that Mercy would be prejudiced by modification of the Protective Order. It freely produced information under an express promise of confidentiality. After having relied on Bevan's promise, Mercy now faces having the earlier 'promissory rug' pulled out from under it.").

---

[12] Order, *Garavanian*, Dkt. #32 at 4-5.

The fact that counsel in the Private Action would be under a protective order provides no solace. First, Southwest is not a party to that case, which would make it difficult to monitor and enforce the terms of the protective order. *See Four Corners*, at *3 (noting entity's difficulty in protecting confidentiality of information when not a party to proceedings as entity "loses control of the documents and information and can no longer be assured of their confidentiality").

Second, Southwest's documents will be provided to nine law firms and their personnel, as well as their respective outside vendors and service providers. This significantly increases the risks of disclosure. *See Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 58 (E.D. Pa. 1980) ("Although the court might attempt to restrict dissemination of information gained through civil discovery through the mechanism of a protective order, the possibility of inadvertent disclosure, *notwithstanding the good faith of the many law firms that would be privy to civil discovery*, is not insubstantial.") (emphasis added).

Third, Southwest's information would be provided to a litigant from whom Southwest has previously obtained sanctions. It is patently unfair to now mandate the disclosure of Southwest's confidential information to that litigant without Southwest being afforded any nonparty rights under the Federal Rules. Moreover, just a few days ago, Judge Tigar of the Northern District of California sanctioned Mr. Alioto and Robert G. Bonsignore of Bonsignore Trial Lawyers under both Rule 11 and Section 1927. In that case, both attorneys represented a proposed class of Massachusetts indirect purchaser plaintiffs in an antitrust case. The court ruled that the attorneys improperly included a party as a defendant in a proposed complaint and, even after being alerted to the issue directly by the parties and by an order entered by the court, failed to correct the pleading.[13]  Both Mr. Alioto and Mr. Bonsignore represent named plaintiffs here in the Private

---

[13]  Order Granting LGE's Motion for Sanctions, *Terry v. LG Electronics, Inc.*, No. 08-cv-01559, Dkt. #6201 (N.D. Cal. May 25, 2023), at *2-3 (Stallings Dec. Exh. F).

Action. Such sanctionable conduct – even if merely inadvertent or negligent – does not bode well for adherence to the strict terms of a litigation protective order.

The harm will not only be to Southwest. Allowing government-action discovery to go to private plaintiffs will have an overall chilling effect in future government merger litigation. Non-parties will be much more reluctant to provide materials for fear that those materials will be disclosed to a whole cadre of opportunistic plaintiffs. The past practice of companies working constructively with the government and defendants in merger litigation to provide materials on an expedited timeline will be replaced by objections and litigation. When such changes happen, "[d]iscovery, in turn, will become more complicated and expensive and settlements will be more difficult.  A natural feeling of unfairness arises when the rules are modified during the middle of the game, especially without very good cause." *Minogue*, 2012 WL 4105312, at *5.

## CONCLUSION

Southwest requests that its discovery from the Government Action not be produced to Private Action plaintiffs. If they believe they have a need to seek third-party evidence for their case (a need that they have not asserted in the seven months since their complaint was filed), they can issue subpoenas under the Federal Rules.

Dated: June 5, 2023

*/s/ William H. Stallings*
William H. Stallings
MAYER BROWN LLP
1999 K Street, NW
Washington, D.C. 20006
Tel: 202-263-3807
wstallings@mayerbrown.com

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as not registered participants on June 5, 2023.

*/s/ William H. Stallings*
William H. Stallings
Mayer Brown LLP
1999 K Street, N.W.
Washington, D.C., 20006-1101
WStallings@mayerbrown.com