**EXHIBIT E**

**WARNING: AT LEAST ONE DOCUMENT COULD NOT BE INCLUDED!**
**You were not billed for these documents.**
**Please see below.**

## Selected docket entries for case 11−16173

Generated: 05/29/2023 09:50:39

| Filed | Document Description | Page | Docket Text |
|---|---|---|---|
| 06/30/2011 | 24 | | Filed (ECF) Appellees Airtran Holdings, Inc., Guadalupe Holdings Corp. and Southwest Airlines Co. Motion for sanctions. Date of service: 06/30/2011. [7804744] (Sunshine, Steven) |
| | 24 Motion for Sanctions Purusant to 28 U.S.C. s 1927 | 2 | |
| | 24 Application for Attorneys Fees | 17 | |
| | 24 Declaration of Steven C. Sunshine | 19 | |
| | 24 Certificate of Service **DOCUMENT COULD NOT BE RETRIEVED!** | | |

No. 11-16173

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

───────────────

WAYNE TALEFF, ET AL.,

*Plaintiffs-Appellants,*

vs.

SOUTHWEST AIRLINES CO., GUADALUPE HOLDINGS CORP.,
AND AIRTRAN HOLDINGS, INC.,

*Defendants-Appellees.*

───────────────

On Appeal from the United States District Court
for the Northern District of California, No. 3:11-cv-02179 (JW)
(Hon. James Ware, Chief Judge, Presiding)

───────────────

## DEFENDANTS-APPELLEES' MOTION FOR SANCTIONS
## PURSUANT TO 28 U.S.C. § 1927

───────────────

Steven C. Sunshine
Gary A. MacDonald (Of Counsel)
Sara L. Bensley (Of Counsel)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone:  (202) 371-7000
Facsimile:   (202) 393-5760

Lanelle K. Meidan
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Suite 1100
Palo Alto, California 94301
Telephone:  (650) 470-4500
Facsimile:   (650) 470-4570

*Counsel for Defendants-Appellees*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES............................................................................................ii

BACKGROUND ....................................................................................................................3

ARGUMENT......................................................................................................................6

CONCLUSION.....................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Alice L. v. Dusek*,
    492 F.3d 563 (5th Cir. 2007)....................................................................8

*B.K.B. v. Maui Police Department*,
    276 F.3d 1091 (9th Cir. 2002)..................................................................6

*Boumediene v. Bush*,
    No. 05-5062, 2005 U.S. App. LEXIS 21927 (D.C. Cir. Oct. 7,
    2005) ..........................................................................................................8

*Cassan Enterprises, Inc. v. Avis Budget Group, Inc.*,
    No. 10-cv-1934 (W.D. Wash.) ..................................................................9

*D'Augusta v. Northwest Airlines Corp.*,
    No. 08-cv-3007 (N.D. Cal.) ....................................................................10

*FTC v. Weyerhaeuser Co.*,
    665 F.2d 1072 (D.C. Cir. 1981) ...............................................................9

*Ginsburg v. INBEV NV/SA*,
    No. 08-cv-1375 (E.D. Mo.)......................................................................9

*Golden Gate Pharmacy Services, Inc. v. Pfizer, Inc.*,
    No. 09-cv-3854-MMC (N.D. Cal.)....................................................9, 10

*In re Keegan Management Co. Securities Litigation*,
    78 F.3d 431 (9th Cir. 1996).................................................................6, 7

*Malaney v. UAL Corp.*,
    No. 3:10-CV-02858-RS, 2010 WL 3790296 (N.D. Cal. Sept. 27,
    2010), *aff'd*, No. 10-17208, 2011 WL 1979870 (9th Cir.May 23,
    2011) ..........................................................................................................4

*Malaney v. UAL Corp.*,
    No. 10-17208, 2011 WL 1979870 (9th Cir. May 23, 2011) ................2, 5

*Malaney v. UAL Corp.*,
No. 10-cv-2858 (N.D. Cal.) ................................................................9

*Optyl Eyewear Fashion International Corp. v. Style Cos., Ltd.*,
760 F.2d 1045 (9th Cir. 1985) ...........................................................6

## STATUTES AND RULES

28 U.S.C. § 1927....................................................................................6

Fed. R. App. Proc. 28(j) ........................................................................7

## MISCELLANEOUS

Press Release, Dep't of Justice, Statement of the Department of
Justice Antitrust Division on Its Decision to Close Its Investigation
of Southwest's Acquisition of AirTran (Apr. 26, 2011),
http://www.justice.gov/atr/public/press_releases/2011/270293.htm ........3

Plaintiffs' counsel in this litigation have a pattern of filing antitrust strike suits against multi-billion dollar mergers that are being (or, in the case of Southwest, had already been) thoroughly investigated by the Department of Justice or the Federal Trade Commission. Counsel's *modus operandi* in these cases is to sue companies that are attempting to complete high profile mergers at the most time-sensitive stage of the transaction in hopes of extracting a cash settlement that does not benefit (and indeed ultimately increases the costs to) the public at large.

By way of example, the Alioto Law Firm's recent merger targets – not counting Southwest/AirTran – have included United/Continental, Pfizer/Wyeth, InBev/Anheuser-Busch and Avis/Dollar Thrifty. All of those companies fought and defeated Plaintiffs' counsel's extortionate lawsuits, no doubt in each case spending huge amounts of time and money to defend themselves against the spurious allegations and, excepting Avis/Dollar Thrifty, one or more frivolous appeals. In none of those suits did plaintiffs win a single motion or judgment for injunctive or monetary relief. Plaintiffs' counsel also used the same tactic with Delta/Northwest, which chose to surrender a cash settlement just prior to closing rather than risk further delay of their multi-billion dollar deal, and in fact, that proposed merger was consummated on the same day.

With the instant suit against Southwest and AirTran, Plaintiffs' counsel have sunk to a new low: here, they delayed bringing their strike suit until

1

the day *after* the merger closed. When the district court summarily dismissed Plaintiffs' request for a TRO even prior to any opposition from Southwest, Plaintiffs' counsel filed a meritless appeal and a wholly improper "emergency motion" for interim relief (a "hold separate" order) both far broader than the relief denied below and never sought from the district court. Plaintiffs' counsel also attempted to tie the relief sought in the emergency motion to developments in an unrelated appeal, *Malaney v. UAL Corp.*, No. 10-17208 (9th Cir.), at least while it suited them. When *Malaney* was decided against Plaintiffs' interest, 2011 WL 1979870 (9th Cir. May 23, 2011), Plaintiffs' counsel attempted to distance the emergency motion from it. This Court should sanction Plaintiffs' counsel for their particularly "unreasonable and vexatious" conduct in pursuing an "emergency motion" seeking a hold-separate order that they did not seek below, pending "appeal" in a wholly unrelated case.

Accordingly, for the reasons set out in more detail below, Defendants-Appellees Southwest Airlines Co., Guadalupe Holdings Corp., and AirTran Holdings, Inc. ("Defendants") respectfully move the Court pursuant to 28 U.S.C. § 1927 to require Plaintiffs' counsel to reimburse Defendants for the excess attorneys' fees incurred by Defendants in connection with The Alioto Firm's unreasonable and vexatious "emergency motion."

2

## BACKGROUND

On September 27, 2010, defendants Southwest Airlines Co.
("Southwest") and AirTran Holdings, Inc. ("AirTran") publicly announced their
proposed merger, in a transaction valued at approximately $1.4 billion.  (Compl. ¶
1.)  Seven months later, on April 26, 2011, the U.S. Department of Justice
Antitrust Division announced its clearance of the merger without conditions.[1]
Shortly thereafter, on May 2, 2011, Southwest and AirTran consummated their
merger.  (Order Denying Plaintiffs' *Ex Parte* Motion for a Temporary Restraining
Order ("Order"), at 1:17.)   On May 3, 2011, one day *after* the Southwest/AirTran
merger closed, Plaintiffs filed their complaint in this action under Section 7 of the
Clayton Act, alleging that Defendants' acquisition was likely to result in a
substantial lessening of competition.  (Compl. ¶ 1; Order at 1:16-17.)  At the same
time, Plaintiffs filed an *ex parte* motion for a TRO purportedly attempting to block
the already-consummated merger.  (Order at 1:15-17, 2:3-8.)  The next day, on
May 4th, the district court entered an order denying the TRO, (*id.* at 2:17), at which
point Plaintiffs raced to this Court, even though a TRO is generally not appealable
and the TRO sought here clearly did not meet the narrowly circumscribed

---

[1]   *See* Press Release, Dep't of Justice, Statement of the Department of Justice
Antitrust Division on Its Decision to Close Its Investigation of Southwest's
Acquisition of AirTran, at 1 (Apr. 26, 2011) ("DOJ Press Release"),
http://www.justice.gov/atr/public/press_releases/2011/270293.pdf.  (App. to
Pls.' Emergency Mot. ("App."), Pier Decl., Ex. 6.)

exceptions.  The appeal, which Defendants moved to dismiss on May 12th, was

wholly unfounded, given that Plaintiffs plainly could have no real interest in

pursuing a 14-day TRO blocking the consummation of the already-consummated

merger.

But Plaintiffs did not stop there.  The same day they filed their appeal,

Plaintiffs filed with this Court a motion styled "Emergency Motion for Injunction

Seeking Temporary 'Hold Separate' Order Pending Disposition of Malaney, et al.

v. UAL Corporation, et al." (the "Emergency Motion").  Among other things, the

Emergency Motion purported to seek an injunction in the first instance from this

Court, not pending this appeal, but pending a decision in an unrelated case[2]

(Emergency Mot. at 2), on the unsupported grounds that it would be impracticable

to have done so in the district court.  (*Id.* at 4.)  Further, the injunctive relief sought

from this Court was in fact broader in temporal scope than the 14-day TRO

Plaintiffs sought from the district court.  In short, Plaintiffs' counsel tried wholly

inappropriately to turn this appellate Court into a court of original jurisdiction.  On

---

[2] *Malaney v. UAL Corp.*, No. 3:10-CV-02858-RS, 2010 WL 3790296 (N.D. Cal. Sept. 27, 2010), *aff'd*, No. 10-17208, 2011 WL 1979870 (9th Cir. May 23, 2011), is a lawsuit challenging the merger of United Air Lines and Continental Airlines.  Defendants are not parties to that action.  Although both *Malaney* and this suit involve airline mergers (and many of the same plaintiffs), *Malaney* was filed before the merger closed and the plaintiffs there sought a preliminary injunction prior to closing, which was denied after an evidentiary hearing and that denial was affirmed by this Court.

May 20, 2011, Defendants opposed the Emergency Motion. On May 23, 2011, this Court affirmed the district court's decision denying a preliminary injunction in *Malaney* on the grounds that Plaintiffs failed to establish a relevant market for antitrust analysis. *Malaney v. UAL Corp.*, No. 10-17208, 2011 WL 1979870, at *1 (9th Cir. May 23, 2011). Later that same day, Plaintiffs filed their reply to Defendants' opposition to the Emergency Motion. In their reply, Plaintiffs noted that *Malaney* had been decided, but failed to disclose that the Court's decision in *Malaney* rejected the same arguments articulated by Plaintiffs in the Emergency Motion. (Pls.-Appellants' Reply to Defs' Opp'n to Emergency Mot. for Inj. Seeking Temporary "Hold Separate" Order Pending Disposition of Malaney et al. v. UAL Corp. et al. & Req. for Relief Pending This Appeal at 1.) On May 26, 2011, *Defendants* filed a notice of supplemental authority pursuant to Federal Rule of Appellate Procedure 28(j), advising the Court of the substance of the *Malaney* decision.

On June 2, 2011, before briefing was even complete on Defendants' Motion to Dismiss, the Court, in a three-sentence order, summarily dismissed Plaintiffs' appeal for lack of jurisdiction and dismissed the Plaintiffs' Emergency Motion as moot.

Plaintiffs' counsel's attempted end-run around the original jurisdiction of the district court to force this Court to hear a spurious motion for preliminary

injunctive relief was a complete waste of the Court's and Defendants' resources. While Defendants believe that Plaintiffs' entire appeal was frivolous, they seek the more limited relief of sanctioning Plaintiffs' counsel for unreasonably and vexatiously multiplying the proceedings with their wholly improper "Emergency Motion."

While many of the tactics employed by Plaintiffs' counsel in their repetitive strike suits are questionable, this particular motion—clearly improper under the Court's rules and filed without any good faith basis—cries out for this Court to say "enough," and to sanction this gross abuse of process.

## ARGUMENT

Section 1927 of Title 28 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Ninth Circuit "has construed the phrase 'unreasonably and vexatiously' to require a showing of intent, recklessness, or bad faith." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1048 (9th Cir. 1985); *see also B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002) ("In *Fink*, we reconciled *Blodgett, Keegan* and *Barber* by holding that 'recklessness suffices for § 1927, but bad faith is required for sanctions under the court's inherent power.' Hence, under *Fink*, we conclude that

the district court's finding of recklessness plus knowledge was sufficient to justify the imposition of § 1927 sanctions." (citation omitted)); *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) ("For sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass.").

Defendants believe that Plaintiffs' entire appeal was "unreasonable and vexatious" because the district court's denial of the *ex parte* TRO was clearly not an appealable decision. In this motion, however, Defendants seek narrower, more tailored relief; namely, reimbursement for the extra expense they incurred due to Plaintiffs' counsel's reckless and bad faith tactics in connection with the Emergency Motion. Plaintiffs' counsel's pursuit of the Emergency Motion "unreasonably and vexatiously" multiplied the proceedings and thus is sanctionable.

Plaintiffs' counsel abused this Court's process for preliminary injunctive relief by using the Emergency Motion as an improper device to seek broader relief (a "hold-separate" order) than they sought in the underlying appeal of the TRO denial, pending their appeal in an *unrelated* case. This demonstrates Plaintiff's intention to short-circuit the original jurisdiction of the district court and to turn this Court into a court of first instance, with no legal or procedural basis.

This sort of procedural overreaching is an abuse of process on its face.[3]  As

Defendants argued in their Motion to Dismiss:

> . . . Plaintiffs' appeal is a thinly veiled attempt to seek a different,
> broader form of injunctive relief without a valid reason for not first
> seeking it from the district court. In pursuing their emergency motion
> for injunction, Plaintiffs now are stealthily seeking an injunction of
> *indefinite* duration, whereas the TRO they sought from the district
> court, which is the purported basis for their appeal here, would have
> expired after 14 days. *See* Fed. R. Civ. P. 65(b)(2). . . . If Plaintiffs
> could prevail on their motion for a "temporary hold separate order"
> (pending resolution of an unrelated case), the appeal of the TRO then
> would be moot because Plaintiffs would have received more relief
> than their underlying request for a TRO to enjoin consummation of an
> already-consummated merger.

(Mot. to Dismiss at 2-3.)

Plaintiffs' TRO motion before the district court sought to temporarily

enjoin consummation of the proposed merger; it did *not* seek a "hold separate"

order.   Moreover, Plaintiffs' TRO motion inexplicably referred to the

consummation of the merger as something that would happen in the future, even

though the merger was consummated the day before the complaint was filed.[4]

---

[3]  Plaintiffs failed utterly to comply with Federal Rule of Appellate Procedure 8,
which requires that a party seek injunctive relief pending appeal in the first
instance from the district court, prior to seeking it from the court of appeals. *See,
e.g.*, *Alice L. v. Dusek*, 492 F.3d 563, 565 (5th Cir. 2007) (per curiam);
*Boumediene v. Bush*, No. 05-5062, 2005 U.S. App. LEXIS 21927, at *1 (D.C.
Cir. Oct. 7, 2005) (per curiam).

[4]  *See* Mem. in Supp. of Pls.' Mot. for a TRO at 1 ("[t]he merger between the
defendants will increase the size of what is already the nation's largest low cost
carrier"), 2 ("Plaintiff [sic] seeks a temporary restraining order to enjoin

*(cont'd)*

8

Tellingly, it was not until 11 days *after* appealing the denial of the TRO that Plaintiffs amended their complaint in the district court to add a request for a hold-separate order.  (First Amended Complaint for Injunctive Relief Against Violations of Section 7 of the Clayton Act 14 (filed May 20, 2011).)

Plaintiffs' counsel's failure to ask for a hold-separate order from the district court cannot be excused as an innocent misunderstanding.  While Plaintiffs suggested that the district court "failed to distinguish between the closing of the merger on paper and a full consummation of the merger," (Opp'n 4), this argument is absurd.  First, it is inconsistent with the common usage of "consummation" in the merger context.  *See, e.g.*, *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072, 1076-77 (D.C. Cir. 1981).  Second, Plaintiffs' counsel never even bothered to argue the point to the district court.  Instead, they immediately launched their appeal and Emergency Motion before this Court.  Plaintiffs' counsel obviously know better, having previously launched – and lost – numerous challenges to other mergers.[5]

---

*(cont'd from previous page)*

Southwest's acquisition of AirTran until the matter of *Malaney* is heard."), *id.* (referring to AirTran Airlines in the present tense, even though it ceased to exist the day before), 4 ("should defendants consummate their merger"), 5 ("the proposed merger between Southwest and AirTran"), 8 ("[i]f allowed to combine").

[5]    *E.g.*, *Cassan Enters., Inc. v. Avis Budget Group, Inc.*, No. 10-cv-1934 (W.D. Wash.); *Malaney v. UAL Corp.*, No. 10-cv-2858 (N.D. Cal.); *Golden Gate Pharm. Servs., Inc. v. Pfizer, Inc.*, No. 09-cv-3854-MMC (N.D. Cal.); *Ginsburg*

*(cont'd)*

The Alioto Firm is well aware of the difference between a pre-closing TRO and a post-closing hold-separate order.[6]  There was thus no good-faith basis for the filing of the "Emergency Motion," and Defendants incurred unnecessary costs as a result of Plaintiffs' counsel's reckless and inexcusable abuse of the Court's process.

## CONCLUSION

For the reasons stated above and pursuant to Southwest's Application for Attorneys Fees and supporting documentation pursuant to Circuit Rule 39-1.6 submitted herewith, the Court should award to Defendants the excess fees incurred

---

*(cont'd from previous page)*
v. *INBEV NV/SA*, No. 08-cv-1375 (E.D. Mo.); *D'Augusta v. Nw. Airlines Corp.*, No. 08-cv-3007 (N.D. Cal.).

[6]  *Compare*, *e.g.*, Pls.' Notice of Mot., Mot. & Appl. for TRO and Order to Show Cause; Mem. of P&A in Supp. Thereof, *Golden Gate Pharm. Servs., Inc. v. Pfizer, Inc.*, No. 09-cv-3854-MMC, at ii (N.D. Cal. filed Oct. 13, 2009) (seeking a pre-closing TRO to block the closing of the proposed merger), *with* Pls.' Notice of Mot., Mot. & Appl. for TRO and Order to Show Cause; Mem. of P&A in Supp. Thereof, *Golden Gate Pharm. Servs., Inc. v. Pfizer, Inc.*, No. 09-cv-3854-MMC, at i-ii (N.D. Cal. filed Oct. 16, 2009) (seeking a post-closing hold-separate TRO to prohibit integration of the merged companies).

as a result of Plaintiffs' counsel's needless multiplication of the proceedings

through their unreasonable, vexatious, and indefensible "Emergency Motion."

Dated:  June 30, 2011                    Respectfully submitted,


                                         By:        /s/ Steven C. Sunshine

                                         Steven C. Sunshine
                                         Gary A. MacDonald (Of Counsel)
                                         Sara L. Bensley (Of Counsel)
                                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM
                                         LLP
                                         1440 New York Avenue, N.W.
                                         Washington, D.C. 20005
                                         Telephone:  (202) 371-7000
                                         Facsimile:   (202) 393-5760

                                         Lanelle K. Meidan
                                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM
                                         LLP
                                         525 University Avenue
                                         Suite 1100
                                         Palo Alto, California 94301
                                         Telephone:  (650) 470-4500
                                         Facsimile:   (650) 470-4570

No. 11-16173

_____

In The
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

WAYNE TALEFF, ET AL.,

*Plaintiffs-Appellants,*

vs.

SOUTHWEST AIRLINES CO., GUADALUPE HOLDINGS CORP.,
AND AIRTRAN HOLDINGS, INC.,

*Defendants-Appellees.*

_____

On Appeal from the United States District Court
for the Northern District of California, No. 3:11-cv-02179 (JW)
(Hon. James Ware, Chief Judge, Presiding)

_____

**DEFENDANTS-APPELLEES' APPLICATION
FOR ATTORNEYS FEES**

_____

Steven C. Sunshine
Gary A. MacDonald (Of Counsel)
Sara L. Bensley (Of Counsel)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760

Lanelle K. Meidan
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Suite 1100
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

*Counsel for Defendants-Appellees*

_____

**Office of the Clerk**
**U.S. Court of Appeals for the Ninth Circuit**
**San Francisco, CA**

**DEFENDANTS-APPELLEES' APPLICATION FOR ATTORNEYS FEES**
**Under Ninth Circuit Rule 39-1.6**

**Wayne Taleff, et al.,**
**Plaintiffs-Appellants**

**v.**

**Southwest Airlines Co., Guadalupe Holdings Corp., and**
**AirTran Holdings, Inc.,**
**Defendants-Appellees**

**No. 11-16173**

| DESCRIPTION OF SERVICES | HOURS |
|---|---|
| Legal Research & Preparing Briefs | |
| S. Sunshine | 5.50 |
| G. MacDonald | 12.25 |
| L. Meidan | 41.30 |
| S. Bensley | 18.50 |
| P. Hammon | 22.50 |
| N. Soderstrom | 20.70 |
| M. Buchwald | 6.00 |
| TOTAL | 126.75 |

TOTAL COMPENSATION REQUESTED:            $82,276.65

Signature: _____ /s/ Steven C. Sunshine _____          Date: __ June 30, 2011 _____

No. 11-16173

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————

WAYNE TALEFF, ET AL.,

*Plaintiffs-Appellants,*

vs.

SOUTHWEST AIRLINES CO., GUADALUPE HOLDINGS CORP.,
AND AIRTRAN HOLDINGS, INC.,

*Defendants-Appellees.*

———————

On Appeal from the United States District Court
for the Northern District of California, No. 3:11-cv-02179 (JW)
(Hon. James Ware, Chief Judge, Presiding)

———————

**DECLARATION OF STEVEN C. SUNSHINE**

———————

Steven C. Sunshine
Gary A. MacDonald (Of Counsel)
Sara L. Bensley (Of Counsel)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760

Lanelle K. Meidan
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Suite 1100
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

*Counsel for Defendants-Appellees*

## DECLARATION OF STEVEN C. SUNSHINE

I, Steven C. Sunshine, do hereby declare as follows:

1.      I am lead outside counsel for Southwest Airlines Co., Guadalupe Holdings

Corp. and AirTran Holdings, Inc. (collectively "Southwest") in the matter of *Taleff*

*v. Southwest Airlines Co.*, No. 11-cv-2179 (N.D. Cal.) and No. 11-16173 (9th Cir.),

which is litigation challenging the approximately $1.4 billion acquisition of

AirTran by Southwest Airlines.  As Southwest's lead counsel, my responsibilities

include coordinating Southwest's defense.  I have served in this capacity since

inception of the case in May 2011.

2.      I make this declaration in support of Defendants-Appellees' Motion For

Sanctions Pursuant To 28 U.S.C. § 1927 ("Motion for Sanctions").

3.      Except where otherwise noted, I have personal knowledge of the facts set

forth below and could testify competently thereto.

## EXPERIENCE AND BACKGROUND

4.      I have been a partner in the Washington, D.C. office of Skadden, Arps, Slate,

Meagher & Flom L.L.P. ("Skadden") since I joined the firm in January 2007.

Since 2010, I have been the North American group leader of Skadden's Antitrust

and Competition practice.  Prior to joining Skadden, I was a partner and the

Antitrust practice group leader at Cadwalader, Wickersham & Taft from 2005 to

2007, and prior to that was also the practice group leader for antitrust at Shearman

& Sterling.  From 1993 to 1995, I was deputy assistant attorney general in charge of merger enforcement at the U.S. Department of Justice, Antitrust Division. In that position, I supervised interventions in more than 35 proposed transactions, including those in the telecommunications, computer, consumer products, mining and industrial sectors.

5.      I am a member of the bars of the State of New York and the District of Columbia.  I have been a member of the New York bar since 1985 and a member of the D.C. bar since 1995.  In addition, I am admitted  to appear before the U.S. Courts of Appeals for the Third, Ninth and Eleventh Circuits, and the U.S. District Courts for the District of Columbia, Southern District of New York, and Eastern District of New York.

6.      I have been practicing law for twenty-seven years, with an emphasis on antitrust.  In private practice, I have led antitrust representations for a merging party in numerous transactions, including : Cisco/Tandberg,  Exelon/Constellation and NRG, Duke/Progress Energy, Valeant/Biovail, Jet Aviation/General Dynamics, StorageTek/Sun Microsystems, Watson/Arrow and Andrx, Rockwood/Elementis, Gambro/DaVita, De Beers/Louis Vuitton, Evian/Coke, Rhone Poule/Hoechst (Aventis), SmithKline/GlaxoWellcome, Bell Atlantic/Nynex and Fiat-New Holland/Case.  My recent litigation representations include defending Watson Pharmaceuticals in a suit brought by the FTC relating to "reverse payment" patent

settlements, defending De Beers in connection with national class actions involving gem diamonds, representing Energy Transfer Partners in defense of an antitrust class action in the Texas natural gas markets, defending a pharmaceutical company CEO in a challenge to an FTC investigation, defending Laboratoires Fournier in connection with 20 suits alleging monopolization of a major pharmaceutical product, and defending Hankyu Hanshin Express Ltd. in an alleged price fixing conspiracy in freight forwarding.

## <u>OVERVIEW OF WORK PERFORMED BY SKADDEN</u>

7.      The fees sought in connection with Defendants-Appellees' Motion For Sanctions are limited to those  accrued directly in connection with Skadden's work in opposing Plaintiffs' "Emergency Motion for Injunction Seeking Temporary 'Hold Separate' Order Pending Disposition of Malaney, et al. v. UAL Corporation, et al." (the "Emergency Motion") before this Court. Other fees were accrued in connection with defending this appeal, which was summarily dismissed, but Southwest does not seek to recover those fees in the Motion for Sanctions.

8.      As described in further detail in the Motion for Sanctions filed contemporaneously herewith, on May 9, 2011, Plaintiffs appealed the district court's May 4, 2011 denial of their motion for a temporary restraining order.  Also on May 9, Plaintiffs filed their Emergency Motion before this Court.

9.     Since May 9, much of Skadden's attention and focus in this matter was devoted to legal research regarding the impropriety of Plaintiffs' filings. With respect to the Emergency Motion alone, Plaintiffs' filing required Skadden to engage in extensive legal research, internal strategizing, and consultation with Southwest on an expedited basis.

10.     Skadden takes care that its factual characterizations and legal claims in court filings are fair, accurate, and truthful. Even in response to meritless filings, Skadden takes great pains to make sure that its filings fulfill its commitments to high-quality representation, diligence, and candor.

## BILLING RECORDS AND RATES

11.     Attached hereto as Exhibit A is a true and correct summary of Skadden's fees in connection with opposing the Emergency Motion for which Southwest is seeking reimbursement. The summary indicates the amount of hours worked each day by each person for which Southwest is seeking reimbursement, and a description, on a daily basis, of the tasks performed by each person for which Southwest is seeking reimbursement.

12.     The information reflected on the summary is based on Skadden's billing records. My firm's practice is to require partners, associates, legal assistants, and billing and clerical personnel to record time worked on firm matters in tenth of an hour increments. The time is to be recorded contemporaneously and is entered into

the firm's computerized time and billing system either by the attorney directly or his or her secretary. As far as I am aware, attorneys, legal assistants and other personnel working on this matter recorded their time contemporaneously.

13. My work in connection with the Emergency Motion was billed to Southwest at a rate of $986 per hour.

14. In addition to my fees, Southwest also seeks reimbursement of fees for one other partner, one counsel, three associates, and one legal assistant who also worked on responding to Plaintiffs' Emergency Motion.

15. Gary A. MacDonald, one of my partners at Skadden, worked on the opposition to Plaintiffs' Emergency Motion. Mr. MacDonald has been a partner at Skadden since 1999, and his practice focuses on complex antitrust litigations. Mr. MacDonald received his J.D. from the University of Michigan Law School in 1988. He also received an M.B.A. from the University of Michigan Graduate School of Business in 1982 and his B.A. from Michigan State University in 1980. He is admitted to the District of Columbia bar. Mr. MacDonald's work in connection with the Emergency Motion was billed to Southwest at a rate of $927 per hour.

16. Lanelle K. Meidan is counsel at Skadden. She has worked at the firm since 2001. Ms. Meidan received her J.D. from Washington University School of Law in 1999. She received her B.A. in 1992 from the University of Pennsylvania. Ms. Meidan is a member of the bars of New York, Illinois, the District of Columbia,

and California.  Ms. Meidan's work in connection with the Emergency Motion was billed to Southwest at a rate of $734 per hour.

17.     Sara L. Bensley is an associate at Skadden.  She has worked at the firm since 2002.  Ms. Bensley received her J.D. from Cornell Law School in 2001.  She received her B.A. in 1998 from Georgetown University.  She is admitted to the bars of New York and the District of Columbia.  Ms. Bensley's work in connection with the Emergency Motion was billed to Southwest at a rate of $639 per hour.

18.     Patrick M. Hammon is an associate at Skadden.  He has worked at the firm since 2007.  Mr. Hammon received his J.D. from the University of California at Los Angeles Law School in 2007 and his undergraduate degree from U.C. Berkeley in 2004.  He was admitted to the California bar in 2008.  Mr. Hammon's work in connection with the Emergency Motion was billed to Southwest at a rate of $536 per hour.

19.     Nathan G. Soderstrom is an associate at Skadden.  He has worked at the firm since 2008.  Mr. Soderstrom received his J.D. from the University of Minnesota Law School in 2008 and his undergraduate degree from the University of Wisconsin, Madison in 2004.  Mr. Soderstrom's work in connection with the Emergency Motion was billed to Southwest at a rate of $486 per hour.

20.    Matthew Buchwald is a legal assistant at Skadden who assisted with the opposition to the Emergency Motion.  Mr. Buchwald's work in connection with the Emergency Motion was billed to Southwest at a rate of $207 per hour.

21.    Based upon my understanding of rates charged by other large private law firms in national antitrust cases in the United States, I believe the hourly rates of the Skadden attorneys and the legal assistant assigned to this matter are well within the range of rates charged by professionals of comparable experience, expertise, and reputation in connection with high stakes merger litigation.

22.    As reflected on Southwest's Application for Attorneys Fees submitted herewith, Southwest is requesting reimbursement for a total of 126.75 hours of attorney fees associated with the opposition to Plaintiffs' Emergency Motion, totaling $82,276.65.

        I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on June 30, 2011, in Washington, D.C.


        ___/s/ Steven C. Sunshine_____
        STEVEN C. SUNSHINE

# EXHIBIT A

**EXHIBIT A**
**TO DECLARATION OF STEVEN C. SUNSHINE**

Skadden Attorneys' Fees for which Southwest Requests Reimbursement

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| 05/13/11 | S. Sunshine | Review of opposition outline re: Plaintiffs' emergency motion; meeting with team re: same. | 2.10 |
| 05/18/11 | S. Sunshine | Review of draft opposition re: Plaintiffs' emergency motion; telephone calls re: same. | 2.20 |
| 05/19/11 | S. Sunshine | Review of draft re: opposition to Plaintiffs' emergency motion. | 1.20 |
| 05/17/11 | G. MacDonald | Develop and refine arguments in opposition to Plaintiffs' emergency motion for hold-separate order; discuss same with team. | 5.50 |
| 05/18/11 | G. MacDonald | Continue work on draft opposition to Plaintiffs' emergency motion for hold-separate order; telephone call re: fact development; discussions and email correspondence with team re: same. | 6.75 |
| 05/13/11 | L.K. Meidan | Draft opposition to Plaintiffs' emergency motion for injunctive relief pending appeal; review research in connection with same; discuss same with team; review procedural requirements for motion practice in the Ninth Circuit. | 4.80 |
| 05/15/11 | L.K. Meidan | Continue drafting and revising opposition to Plaintiffs' emergency motion. | 2.20 |
| 05/16/11 | L.K. Meidan | Continue drafting and revising opposition to Plaintiffs' emergency motion; discuss same with team. | 6.80 |
| 05/17/11 | L.K. Meidan | Continue drafting and revising opposition to Plaintiff's emergency motion; emails and phone calls with team regarding same; review research regarding same. | 10.30 |
| 05/18/11 | L.K. Meidan | Review and revise draft opposition to Plaintiffs' emergency motion; participate in conference call regarding fact development; emails and phone calls with team regarding same. | 6.40 |
| 05/19/11 | L.K. Meidan | Draft request for judicial notice in support of opposition to Plaintiffs' emergency motion; review and provide comments on opposition; discuss same with team. | 5.20 |
| 05/20/11 | L.K. Meidan | Review and revise draft opposition to Plaintiffs' emergency motion and request for judicial notice in support thereof; phone calls with team regarding filing; assist with Ninth Circuit filing. | 5.60 |
| 05/14/11 | S.L. Bensley | Email re: opposition to Plaintiffs' emergency motion. | 0.30 |

| Date | Name | Description | Hours |
|------|------|-------------|-------|
| 05/17/11 | S.L. Bensley | Research, draft and edit draft opposition to Plaintiffs' emergency motion seeking a hold-separate order, and discuss same with team. | 10.90 |
| 05/18/11 | S.L. Bensley | Prepare for conference call with client re: fact development; continue researching, drafting and editing draft opposition to Plaintiffs' emergency motion seeking a hold-separate order; conference call re: fact development. | 7.30 |
| 05/10/11 | P. Hammon | Transport to and attend Ninth Circuit hearing in *Malaney, et al. v. UAL Corp., et al.* | 2.10 |
| 05/12/11 | P. Hammon | Performed legal research and drafted rider re: emergency motion. | 2.90 |
| 05/13/11 | P. Hammon | Performed legal research in connection with Ninth Circuit appeal. | 2.20 |
| 05/16/11 | P. Hammon | Performed legal research re: injunctive relief. | 3.20 |
| 05/17/11 | P. Hammon | Drafted memorandum re: injunctive relief. | 6.90 |
| 05/18/11 | P. Hammon | Reviewed public filings re: merger. | 3.10 |
| 05/20/11 | P. Hammon | Prepared materials for filings. | 2.10 |
| 05/17/11 | N.G. Soderstrom | Legal research; drafting of opposition to Plaintiffs' emergency motion. | 6.80 |
| 05/18/11 | N.G. Soderstrom | Legal research for draft opposition to Plaintiffs' emergency motion. | 5.10 |
| 05/19/11 | N.G. Soderstrom | Legal research; cite checking of opposition to Plaintiffs' emergency motion. | 3.70 |
| 05/20/11 | N.G. Soderstrom | Review and edit draft opposition to Plaintiffs' emergency motion; legal research. | 5.10 |
| 05/19/11 | M. P. Buchwald | Cite check opposition to Plaintiffs' emergency motion. | 6.00 |
| Total Hours | | | 126.75 |