**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| GABRIEL GARAVANIAN, et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 1:23-cv-10678-WGY ) |
| JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC., | ) ) ) |
| Defendants, | ) ) ) ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................... 1

II.   BACKGROUND ....................................................................................... 2

III.  LEGAL STANDARD................................................................................ 3

IV.   ARGUMENT ............................................................................................ 5

    A.    Plaintiffs Fail to Establish Article III Standing.................................... 5

        1.    All Twenty-Five Plaintiffs Fail to Establish Harm as Personal Travelers. ................................................................. 5

            a.    23 Plaintiffs Have Not Flown Spirit Once Since November 2018; None of the Plaintiffs Have Concrete Plans to Fly Spirit.......................................................... 5

            b.    All 25 Plaintiffs Testified that They Have No Concrete, Imminent Plans to Fly Spirit ......................... 7

            c.    Plaintiffs' Generic Grievances about Airline Mergers Are Insufficient for Article III Standing ............................... 8

        2.    Twenty-Four Plaintiffs Are Financially Indifferent to, or Stand to Benefit from, the Merger in their Professional Capacities. ....................... 9

            a.    Plaintiffs Offered No Fact or Expert Evidence to Establish Any Professional Harm ............................................... 10

            b.    15 of the 25 Plaintiffs Are Financially Agnostic or Stand to Benefit from the Merger ......................................... 10

            c.    The Remaining 9 Plaintiffs Are Retired or Deceased................. 12

    B.    Plaintiffs Separately Cannot Meet their Burden of Showing Irreparable Injury for an Injunction....................................................... 13

        1.    Plaintiffs' Speculative Harms Are Not Irreparable................................. 14

        2.    Plaintiffs' Speculative Harms are Remediable By Money Damages.................................................................................. 15

V.    CONCLUSION.......................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Tunaboat Ass'n v. Brown*,
   67 F.3d 1404 (9th Cir. 1995) ................................................................15

*Bradt v. T-Mobile US, Inc.*,
   2020 WL 1233939 (N.D. Cal. Mar. 13, 2020)................................................13, 17

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977)................................................................................3

*California v. Am. Stores Co.*,
   495 U.S. 271 (1990)................................................................................4, 9

*Carney v. Adams*,
   141 S. Ct. 493 (2020)............................................................................3, 7, 8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..............................................................................3, 10

*Charlesbank Equity Fund II v. Blinds To Go, Inc.*,
   370 F.3d 151 (1st Cir. 2004) ....................................................................15

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) .........................................12

*Dep't of Commerce v. New York*,
   139 S. Ct. 2551 (2019)...........................................................................3

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006)..............................................................................17

*Ferring Pharms. Inc. v. Watson Pharms, Inc.*,
   765 F.3d 205 (3d Cir. 2014).....................................................................14

*Fjord v. AMR Corp. (In re AMR Corp.)*,
   527 B.R. 874 (Bankr. S.D.N.Y. 2015).........................................................8-9, 12

*Fleet Nat'l Bank v. H&D Ent., Inc.*,
   96 F.3d 532 (1st Cir. 1996)......................................................................7

*Goodwin v. C.N.J., Inc.*,
   436 F.3d 44 (1st Cir. 2006).....................................................................13

*Gross v. Landry*,
   2018 WL 2210427 (D. Me. May 14, 2018) ....................................................4

## TABLE OF AUTHORITIES
### continued

**Page(s)**

*In re Korean Airlines Disaster of Sept. 1, 1983*,
   829 F.2d 1171 (D.C. Cir. 1987) (Ginsburg, J.)..........................................................4

*L.A. Mem. Coliseum Comm'n v. NFL*,
   634 F.2d 1197 (9th Cir. 1980) ....................................................................................5

*Lanovaz v. Twinings N. Am., Inc.*,
   726 F. App'x 590 (9th Cir. 2018) ...............................................................................7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..............................................................................................3, 12

*Magarin v. Hawkins*,
   321 F.3d 235 (1st Cir. 2003)........................................................................................3

*Mahroom v. Best Western Int'l, Inc.*,
   2009 WL 248262 (N.D. Cal. Feb. 2, 2009) ...............................................................14

*Malaney v. UAL Corp.*,
   2010 WL 3790296 (N.D. Cal. Sept. 27, 2010), *aff'd*, 434 F. App'x 620 (9th
   Cir. 2011) ..................................................................................................4-5, 9, 14, 15

*McCarthy v. Intercontinental Exch., Inc.*,
   2022 WL 4227247 (N.D. Cal. Sept. 13, 2022) ...............................................3-4, 5, 9

*McMenamon v. Shibinette*,
   2022 WL 17417286 (D.N.H. Dec. 5, 2022)..................................................................4

*Narragansett Indian Tribe v. Guilbert*,
   934 F.2d 4 (1st Cir. 1991)..........................................................................................14

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   522 F.3d 6 (1st Cir. 2008)...................................................................................3, 7, 13

*In re Nexium (Esomeprazole) Antitrust Litig.*,
   309 F.R.D. 107 (D. Mass. July 30, 2015) (Young, J.) ...........................................4, 16

*In re Nexium (Esomeprazole) Antitrust Litig.*,
   42 F. Supp. 3d 231 (D. Mass. 2014) (Young, J.), *aff'd* 842 F.3d 34 (1st Cir.
   2016) ..........................................................................................................................10

*Nypl v. JP Morgan Chase & Co.*,
   2023 WL 2712274 (S.D.N.Y. Mar. 30, 2023) .......................................................6, 10

*O'Neill v. Coca-Cola Co.*,
   669 F. Supp. 217 (N.D. Ill. 1987) ...............................................................................7

**TABLE OF AUTHORITIES**
continued

**Page(s)**

*Orkin v. Albert*,
    579 F. Supp. 3d 238 (D. Mass. 2022) ......................................................................13

*Parks v. Watson*,
    716 F.2d 646 (9th Cir. 1983) ...................................................................................12

*Rohm & Haas Elec. Materials, LLC v. Elec. Circuits Supplies, Inc.*,
    759 F. Supp. 2d 110 (D. Mass. 2010) ...........................................................15, 16, 17

*SoClean, Inc. v. Sunset Healthcare Sols., Inc.*,
    2020 WL 978037 (D. Mass. Feb. 28, 2020) ....................................................... 13-14

*Spokeo, Inc. v. Robbins*,
    578 U.S. 330 (2016)............................................................................................3, 7

*Sullivan v. Tagliabue*,
    828 F. Supp. 114 (D. Mass. 1993), *aff'd*, 25 F.3d 43 (1st Cir. 1994)......................8

*Taleff v. Sw. Airlines Co.*,
    828 F. Supp. 2d 1118 (N.D. Cal. 2011), *aff'd*, 554 F. App'x 598 (9th Cir.
    2014) ................................................................................................... *passim*

*Transunion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)...........................................................................................3

*United States v. Borden Co.*,
    347 U.S. 514 (1954)......................................................................................4, 9, 14

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
    395 U.S. 100 (1969)...............................................................................................3

**Other Authorities**

Fed. R. Civ. P. 56.........................................................................................................3

## I.      PRELIMINARY STATEMENT

In bringing this case, twenty-five plaintiffs ("Plaintiffs")—one of whom is deceased[1]—seek to deprive millions of people across the United States of the benefits from JetBlue Airways Corporation's ("JetBlue") proposed acquisition of Spirit Airlines, Inc. ("Spirit").  If this case goes to trial, JetBlue and Spirit will demonstrate that this merger will force the dominant Big Four airlines (American, Delta, United, and Southwest) to compete harder to win the business of American consumers.  At the same time, evidence will show that the merger will expand opportunities for Ultra-Low Cost Carriers (such as Frontier, Allegiant, Avelo, Sun Country, and Breeze) to grow and serve the flying public.

But the Court does not need to evaluate the merits of this merger because these Plaintiffs do not have constitutional standing under Article III to bring this case.[2]  To meet this threshold burden, each of the Plaintiffs must—but fails to—establish they have suffered an injury-in-fact that is concrete, particularized, and actual or imminent.  As Plaintiffs only seek an injunction of an event that has yet to occur, Plaintiffs have not suffered any injury.  Rather, they say they will be injured, but rely solely on vague and speculative harms based on two general facts:  (1) "[e]ach Plaintiff is an air passenger"; and (2) "some [Plaintiffs] are travel agents."  Dkt. 1, ¶ 42.  But neither of these facts is sufficient to confer standing under the Constitution.

***First***, Plaintiffs speculate the merger will harm them as general consumers of air travel.  But such generalized allegations of injury are insufficient under Article III, and each Plaintiff fails to establish that they are likely to suffer injury from ***this*** merger.  The undisputed facts show that, as of the close of fact discovery, none of the twenty-five Plaintiffs had concrete, imminent plans to fly Spirit.  And, contrary to their own allegations, the undisputed facts show that twenty-three

---

[1] Plaintiff Stansbury passed away on February 14, 2023.  SUMF ¶ 26.
[2] For the same reasons Plaintiffs lack Article III standing, they also lack antitrust standing.

Plaintiffs have not flown Spirit, **even once**, on any route in the four years prior to filing the Complaint on November 3, 2022. Although Plaintiffs claim they may "some day" fly Spirit, wishful thinking does not establish Article III standing.

**Second**, while Plaintiffs have apparently abandoned this theory, Plaintiffs previously seemed to allege injury based on their current or past affiliation with a travel agency, which also fails to establish standing. Any such Plaintiff would fall into one of two categories: (a) a current travel agency owner or employee, who is financially agnostic to the merger or (*if* their allegations are true) stands to profit from it; or (b) a person who is deceased, retired, or has not recently received income from the travel industry—such that the merger is "irrelevant" to them.

Summary judgment is also separately justified because this merger does not expose Plaintiffs to irreparable injury that could not be remedied by monetary damages. If the DOJ case proceeds to trial, the merits of that trial will determine whether the merger occurs, thereby mooting or denying the relief Plaintiffs seek. Moreover, monetary damages would address Plaintiffs' grievances. Plaintiffs have a decades-long history of filing suits to enjoin mergers in the airline industry and others. Not once have they prevailed in enjoining an airline merger, but they have accepted monetary settlements. For Plaintiffs, this case is fundamentally about money.

Accordingly, summary judgment should issue.

## II.    BACKGROUND

On July 28, 2022, JetBlue and Spirit executed a final merger agreement. Statement of Undisputed Material Facts (hereinafter "SUMF") ¶ 1. On November 23, 2022, Plaintiffs filed suit in the Northern District of California to enjoin the merger. *Id.* ¶ 2; Dkt. 1. After the U.S. Department of Justice filed an action to enjoin the merger in this Court, this case was transferred. SUMF ¶ 3. Prior to the close of fact discovery on June 28, 2023, JetBlue and Spirit served written discovery on all twenty-five Plaintiffs and deposed all living Plaintiffs. On July 28, 2023,

Plaintiffs served a report by Plaintiffs' expert, Ted Tatos.  SUMF ¶ 195.

## III.    LEGAL STANDARD

In the absence of a material factual dispute, a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party [] bear[s] the burden of proof," is subject to summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see* Fed. R. Civ. P. 56.  On summary judgment, Plaintiffs bear a higher burden of establishing standing than on a motion to dismiss.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (a plaintiff must provide "specific facts" to show standing on summary judgment); *Magarin v. Hawkins*, 321 F.3d 235, 240 (1st Cir. 2003) ("'[C]onclusory allegations, improbable inferences, and unsupported speculation' are insufficient to defeat summary judgment.").

Plaintiffs cannot establish Article III or antitrust standing—threshold prerequisites for any Clayton Act claim.  For Article III standing, each plaintiff must prove:  "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Transunion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan*, 504 U.S. at 560–61). Injury in fact cannot be "conjectural or hypothetical," *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 339 (2016), and it must be "actual or imminent," *Carney v. Adams*, 141 S. Ct. 493, 498 (2020).  For antitrust standing, Plaintiffs must also prove "***antitrust*** injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (emphasis added); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 13 (1st Cir. 2008) (quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130 (1969); *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019) (plaintiffs must show "substantial risk that the harm will occur") (internal quotations marks and citation omitted); *McCarthy v.*

*Intercontinental Exch., Inc.*, No. 20-CV-05832, 2022 WL 4227247, at *3 (N.D. Cal. Sept. 13, 2022) ("Antitrust standing . . . requires a 'more demanding' showing" than Article III.).

Summary judgment is separately proper because, not only do Plaintiffs fail to establish Article III or antitrust standing, they also cannot demonstrate irreparable injury to justify injunctive relief. *E.g.*, *In re Nexium (Esomeprazole) Antitrust Litig.*, 309 F.R.D. 107, 137 (D. Mass. July 30, 2015) (Young, J.); *Gross v. Landry*, No. 17-cv-00297, 2018 WL 2210427 (D. Me. May 14, 2018), *report and recommendation adopted*, 2018 WL 3117227 (D. Me. June 25, 2018); *McMenamon v. Shibinette*, No. 21-cv-479, 2022 WL 17417286, at *5 (D.N.H. Dec. 5, 2022) (granting summary judgment on injunctive claim because plaintiff could not establish Article III standing).  Plaintiffs seeking an injunction must prove:  (1) irreparable injury; (2) that remedies at law are inadequate; (3) the balance of hardships favors them; and (4) the injunction is in the public interest.  *In re Nexium*, 309 F.R.D. at 137; *Taleff v. Sw. Airlines Co.*, 828 F. Supp. 2d 1118, 1122 (N.D. Cal. 2011), *aff'd*, 554 F. App'x 598 (9th Cir. 2014).[3]  Failing to prove any these factors necessitates summary judgment.

Moreover, for an injunction to issue, each Plaintiff also "must prove 'threatened loss or damage' to his own interests in order to obtain relief."  *California v. Am. Stores Co.*, 495 U.S. 271, 296 (1990) (quoting 15 U.S.C. § 26); *United States v. Borden Co.*, 347 U.S. 514, 518 (1954) ("private plaintiff . . . may be expected to exercise [an injunction] only when his personal interest will be served").  Plaintiffs bear the burden of proving entitlement to injunctive relief by showing irreparable harm separate and apart from the flying public as a whole.  *Malaney v. UAL Corp.*, No.

---

[3] The law of the transferee forum applies following a permissive transfer, but the transferor's law may still receive "close consideration." *In re Korean Airlines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987) (Ginsburg, J.). The First Circuit and Ninth Circuit's law do not materially differ with respect to Article III standing, antitrust standing, or injunctive relief.

3:10-CV-02858, 2010 WL 3790296, at *13 (N.D. Cal. Sept. 27, 2010), *aff'd*, 434 F. App'x 620 (9th Cir. 2011).  To obtain injunctive relief, Plaintiffs must also prove harm beyond that which is necessary to establish standing.  *L.A. Mem. Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1201 (9th Cir. 1980).

## IV.    ARGUMENT

### A.    Plaintiffs Fail to Establish Article III Standing.

All twenty-five Plaintiffs fail to establish Article III standing because the undisputed facts show that they have not suffered any particularized, imminent injury-in-fact, either as general consumers of air travel or as travel agents.  All twenty-four living Plaintiffs allege that they suffer harm as personal travelers, but the undisputed facts demonstrate this is false.  Twenty-three living Plaintiffs[4] state that they work for or previously worked in the travel industry; fifteen currently work in the industry, eight others formerly worked in the industry.  To the extent these twenty-three Plaintiffs claim that the merger will harm them in their professional capacities, the facts belie that claim.  "If standing is not found, an essential element of [each] plaintiff's case is missing and [Plaintiffs'] case fails."  *McCarthy*, 2022 WL 4227247, at *3.

1.    All Twenty-Five Plaintiffs Fail to Establish Harm as Personal Travelers.

a.    *23 Plaintiffs Have Not Flown Spirit Once Since November 2018;
None of the Plaintiffs Have Concrete Plans to Fly Spirit*

In their Complaint and in discovery, Plaintiffs allege injury as general consumers of air travel with the "interest and intent in insuring that the unique qualities of Spirit are preserved as a competitive option for them[selves]."  Dkt. 1, ¶ 42.  Ostensibly in support of this allegation, the

---

[4] Defendants include Stansbury in this category, but because she passed away, Defendants have not received any discovery from her.  SUMF ¶ 26.  The twenty-fifth and final Plaintiff (Nieboer) alleges harm only in his personal capacity.  Nieboer testified he works at a construction company; inherited his mother's travel agency for "a month" before selling it; and has no intention of working as a travel agent.  SUMF ¶¶ 147-148.

Complaint avers:  "Many of the Plaintiffs have flown on JetBlue and/or Spirit and/or American Airlines within the last four years."  *Id.*

But the undisputed record—especially Plaintiffs' interrogatory responses and deposition testimony—tells the opposite story.  In reality, twenty-three Plaintiffs[5] have not flown Spirit even one time "within the last four years" prior to the Complaint being filed.  SUMF ¶ 27; *see Nypl v. JP Morgan Chase & Co.*, No. 15 civ. 9300, 2023 WL 2712274, at *2 (S.D.N.Y. Mar. 30, 2023) (holding that many of these same Plaintiffs failed to establish injury where they failed to prove that they purchased the good at issue).  These twenty-three Plaintiffs have no recent history of flying Spirit and cannot establish they are imminently likely to fly Spirit in the future.  Indeed, according to both Plaintiffs' responses to requests for admission and a report written by Plaintiffs' expert Mr. Tatos, sixteen Plaintiffs[6] admitted they "have never flown Spirit."  SUMF ¶¶ 27, 197.

While two Plaintiffs (G. Garavanian and Nieboer) testified to flying Spirit more recently, they too lack standing because ***none*** of the Plaintiffs, including those two, have flown Spirit along any of the routes Plaintiffs identified in their verified interrogatory responses as the harmed routes even once "within the last four years" since filing the Complaint.  SUMF ¶ 28.  Nor does any Plaintiff, including those two, have concrete, imminent plans to fly Spirit in the future.  *See infra* Section V.A.1.b.  Where, as here, Plaintiffs cannot establish particularized "threatened [] injury" because they did not "show that [they] purchase[] the product[]" at issue, they lack standing.

---

[5] The twenty-three Plaintiffs who have not produced any evidence of taking even a single Spirit flight "within the last four years" prior to filing their Complaint are:  Arcell, Brito, Brown, D'Augusta, Davis, Faust, Fjord, Freeland, Fry, H. Garavanian, Gardner, Jolly, Malaney, Marazzo, McCarthy, Pulfer, Russell, Rubinsohn, Stansbury, Stensrud, Talewsky, Ward, and Whalen.  SUMF ¶ 27.

[6] The sixteen Plaintiffs who admitted they have never flown Spirit are:  Arcell, Brito, Brown, D'Augusta, Davis, Faust, H. Garavanian, Malaney, Marazzo, McCarthy, Pulfer, Rubinsohn, Russell, Stensrud, Ward, and Whalen.  SUMF ¶ 27.

*O'Neill v. Coca-Cola Co.*, 669 F. Supp. 217, 221, 223 (N.D. Ill. 1987).

> b.     *All 25 Plaintiffs Testified that They Have No Concrete, Imminent Plans to Fly Spirit*

The undisputed facts also confirm that, as of the close of fact discovery, each of the twenty-five Plaintiffs lacks concrete, imminent plans to fly Spirit—such as by booking a future Spirit flight.  Although some Plaintiffs expressed interest in future travel, and perhaps even some day to fly Spirit, testimonial evidence confirms that, as of the close of fact discovery, none of the twenty-five Plaintiffs has concrete plans to book a future flight.  SUMF ¶ 27.  *See Fleet Nat'l Bank v. H&D Ent., Inc.*, 96 F.3d 532, 540 (1st Cir. 1996) (granting summary judgment notwithstanding the nonmovant's "conclusory affidavit").  Indeed, Plaintiffs have no Spirit routes selected, no precise travel dates, and/or no firm sense of whether they would even fly Spirit or another airline.  *Spokeo*, 578 U.S. at 339 (rejecting "conjectural or hypothetical" injury) (internal quotation marks and citation omitted).

*In re New Motor Vehicles* is instructive.  There, 36 plaintiffs purported to represent a class of automobile purchasers seeking injunctive relief under Section 16 of the Clayton Act.  522 F.3d at 15.  The court found that the plaintiffs who had previously purchased cars lacked standing because "[n]owhere" did the evidence show "named plaintiff's intention to buy or lease another new vehicle within such a time that could be deemed imminent."  *Id.*  Here, too, Plaintiffs have no concrete plans to fly Spirit, let alone fly Spirit imminently.  Plaintiffs' "some day" intentions to fly Spirit are insufficient to prove particularized, imminent injury under Article III or the drastic remedy of an injunction.  *Carney*, 141 S. Ct. at 502 ("some day intentions do not support a finding of [] actual or imminent injury") (internal quotation marks and citation omitted); *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590 (9th Cir. 2018) ("that [plaintiff] would 'consider buying' [the] product[] do[es] not satisfy [Article III]") (citation omitted).

> c.   *Plaintiffs' Generic Grievances about Airline Mergers Are Insufficient for Article III Standing*

Some Plaintiffs attempt to resuscitate their lack of personal injury by complaining about airline mergers generally and speculating about the merger's impact on the flying public (rather than themselves). This too is insufficient. *See Carney*, 141 S. Ct. at 499, 502 (plaintiff "has not sufficiently differentiated himself from a general population of individuals" but instead raises "generalized grievance").

As one example, as of 2008, at least fifteen Plaintiffs[7] owned "shares" in a Passengers Against Mergers ("PAMA") coalition, which was founded to "halt all pending and contemplated airline mergers" on the categorical view that "mergers are not to the benefit of the traveling public or the towns and cities served by said airlines." SUMF ¶ 11. Of course, harm from mergers generally is not the same as alleging specific harm from this proposed transaction.

Similarly, some Plaintiffs testified the merger may affect "all air travelers" and "the public." SUMF ¶¶ 149, 187. For example, Plaintiff Faust complains of hardship to "lots of people" and customers, SUMF ¶ 77; Fjord complains of harm to student customers and "friends," SUMF ¶ 83; and Gardner says she brings lawsuits to stop mergers to "look[] out for [her] clients," SUMF ¶ 115. But the law is settled: Individual plaintiffs cannot bring representative claims on behalf of non-parties and cannot establish Article III standing based on alleged harm to non-parties. *Sullivan v. Tagliabue*, 828 F. Supp. 114, 120 (D. Mass. 1993) (in § 4 damages case, injuries "merely derivative of [another's] are too indirect and tangential to support [an] individual action"), *aff'd*, 25 F.3d 43 (1st Cir. 1994); *see also Fjord v. AMR Corp. (In re AMR Corp.)*, 527 B.R. 874,

---

[7] The fifteen Plaintiffs with shares in the 2008 Passengers Against Mergers agreement are: D'Augusta, Fjord, Fry, G. Garavanian, H. Garavanian, Gardner, Jolly, Malaney, McCarthy, Pulfer, Russell, Stansbury, Stensrud, Talewsky, Ward. SUMF ¶ 11; *see also* SUMF ¶ 116 ("[Q:] Are you saying that you don't have any control over whether you file a lawsuit [against airline mergers]? Gardner A: That's true, that's true. I don't.").

891 (Bankr. S.D.N.Y. 2015) (rejecting claim by travel agent Plaintiffs Jolly and Fjord that they could challenge airline mergers on behalf of their customers).

Along these lines, the twenty-four living Plaintiffs served virtually-identical discovery responses declaring that the merger will affect 121 routes Spirit currently operates—but as noted above, not one Plaintiff has flown Spirit along those routes "within the last four years" prior to filing their Complaint through present.  SUMF ¶ 28.  In the identical words in their interrogatory answers:  "The elimination of Spirit will further substantially threaten to harm U.S. passengers through increases in the price of tickets, checked bags and flight change fees, translating to billions of dollars of harm to consumers annually . . . ."  SUMF ¶ 35.  Plaintiffs' expert Mr. Tatos spoke in similar generalities, speculating monetary harms applicable to "Plaintiffs, as well as other air travelers," with no mention of any alleged injuries uniquely affecting Plaintiffs.  SUMF ¶ 196.

Plaintiffs' fact and expert admissions reveal the telling absence of any nexus between Plaintiffs and their alleged harm.  *See Am. Stores Co.*, 495 U.S. at 296; *Borden*, 347 U.S. at 518; *McCarthy*, 2022 WL 4227247, at *4 (many of the same Plaintiffs had no standing where they merely alleged harm as general consumers); *Malaney*, 2010 WL 3790296, at *13 (finding that many of the same Plaintiffs lacked personalized harm).  Speculative grievances about alleged harm to the flying public or about ***all*** mergers writ large are insufficient to prove particularized, imminent injury for Article III standing here.

    2. <u>Twenty-Four Plaintiffs Are Financially Indifferent to, or Stand to Benefit from, the Merger in their Professional Capacities.</u>

The Complaint alleges "some" Plaintiffs face harm in their capacity as travel agents, Dkt. 1, ¶ 42, but Plaintiffs appear to have abandoned this theory during discovery—and thus cannot prove it at trial.  But in any event, Plaintiffs have no standing to assert harm based on these Plaintiffs' affiliation with the travel industry, as a matter of law, because they are retired, deceased,

or their travel agency income is agnostic to and/or benefitted by their speculative harm.  *See infra*

Sections IV.2.b-c.

> a.      *Plaintiffs Offered No Fact or Expert Evidence to Establish Any*
>          *Professional Harm*

During discovery, Plaintiffs produced no business records detailing their travel agencies'

profits and losses, fees, or costs.  Nor could Plaintiffs testify to those facts with precision.  *See,*

*e.g.*, SUMF ¶ 174 ("Q:  And you have no knowledge of the total income or revenue [your travel

agency] receives?  Stensrud A:  Correct.").  Plaintiffs cannot show what their businesses look like

***today***, much less infer what impact the merger might have on their businesses in the future.[8]

Likewise, Plaintiffs' expert offers zero evidence of Plaintiffs' alleged harms as travel agents.  *See*

SUMF ¶ 196.  Without meaningful fact and expert evidence, Plaintiffs' alleged injury based on

their travel agency affiliations suffers from "complete failure of proof," such that Plaintiffs

necessarily lack standing on this basis.  *Celotex*, 477 U.S. at 322–23; *Nypl*, 2023 WL 2712274, at

*4 (granting summary judgment on similar claims for failure to prove harm).

> b.      *15 of the 25 Plaintiffs Are Financially Agnostic or Stand to Benefit*
>          *from the Merger*

But even assuming Plaintiffs are pursuing the theory that Plaintiffs suffer harm in their

professional capacities, the undisputed facts show that this is not true.  The fifteen Plaintiffs[9] who

---

[8] Because Plaintiffs have not produced these records, they cannot offer expert testimony on this point either; it is well-established that "expert testimony without a factual foundation cannot defeat a motion for summary judgment."  *In re Nexium (Esomeprazole) Antitrust Litig.*, 42 F. Supp. 3d 231, 248 (D. Mass. 2014) (Young, J.), *aff'd* 842 F.3d 34 (1st Cir. 2016) (internal quotation marks and citations omitted).

[9] The fifteen Plaintiffs currently affiliated with travel agencies are:  Brito (travel agent), Brown (Beach Boys travel manager), Faust (travel agent), Fjord (travel agent), Freeland (travel agent), Fry (travel agent), G. Garavanian (travel agent), Gardner (travel agent), Jolly (travel agent), McCarthy (works for a travel agency, but is not a travel agent), Pulfer (travel agent), Rubinsohn (travel agent), Stensrud (travel agency owner), Talewsky (travel agent), and Ward (travel agent). SUMF ¶ 29.

are presently affiliated with travel agencies would be unaffected by the merger in their professional capacities.  Of those fifteen, two Plaintiffs (Brown and McCarthy)[10] testified they earn a set annual salary regardless of the price, quantity, or airlines of flights booked.  SUMF ¶ 55 (Brown receives the "same salary" whether she books "a thousand flights" or "100 flights," "regardless of which airline people choose to fly," and "regardless of the ticket price that is paid."); SUMF ¶ 141 ("Q: So regardless of [the travel agency's] performance in a given year, your salary remains the same? McCarthy A.  That's correct.").  Consequently, the merger will not impact their salaries and neither has an ownership stake in a travel agency.  SUMF ¶¶ 54, 140.

The remaining thirteen Plaintiffs, based on their own testimony, earn revenue from booking airline tickets in two ways:  charging a flat service/booking fee for each ticket booked on their customers' behalf, and/or charging a percentage fee based on the overall fare for certain tickets. SUMF ¶ 30.   In either instance, Plaintiffs cannot show business injury from the merger.  Flat fees do not depend on the price or airline booked, and so any alleged fare increase or inability to book Spirit tickets could not affect those travel agent Plaintiffs.[11]  For those Plaintiffs who receive a percentage cut of the overall ticket fare, any hypothetical fare increase would culminate in higher

---

[10] Brown gave inconsistent responses as to whether she is a travel agent.  *Compare* SUMF ¶ 54 (stating in her verified response to Defendants' Interrogatory No. 5 that she has been a "travel agent" for "Meleco Travel" from "January 10th, 2010, to present"), *with id.* (admitting in her deposition and verified responses to Defendants' Request for Admission No. 4 she is "not presently employed as a travel agent").  In an abundance of caution, Defendants assume that Brown is also asserting Article III standing in her professional capacity.

[11] For instance, during her deposition, Fry stated: "[W]hether my clients fly Airline A or Airline B does not really affect my income.  I would charge them a service fee."  SUMF ¶ 95; *see, e.g.*, *id.* ("Q:  Got it.  So whether your clients flew Spirit or United, you still receive the same fee? Fry A:  Correct.").  Similarly, when Defendants asked Jolly if she charges "a flat fee that does not depend on the price of the ticket" or the airline—whether "United," "American," "JetBlue," or "Spirit"—Jolly responded:  "Correct."  *Id.* ¶ 121; *see, e.g.*, *id.* ¶ 160 ("Q:  Okay.  So [your service fee]'s not based on the cost of the flight in any way?  Rubinsohn A:  Nope."); *id.* ¶ 180 ("Q:  Does the service fee differ by airline or is it the same across airlines?  Talewsky A:  No, it's usually pretty much the same.").

revenue for each ticket booked.[12]   Accordingly, any Plaintiffs who charge scaling fees based on ticket fares would profit personally from the harm they allege (*i.e.*, higher fares).

To the extent these Plaintiffs may assert that their overall service fees, whether flat or scaling, would decrease because fewer passengers will book flights post-merger, Plaintiffs produced no business records suggesting this would be true, and as such are unable to offer anything beyond rank speculation. *See supra* Section IV.A.2.a.  Such speculation is not the type of "concrete, particularized, and actual or imminent" injury that establishes Article III standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *see id.* ("allegations of *possible* future injury are not sufficient" to constitute injury-in-fact) (emphasis in original) (internal quotation marks and citation omitted); *In re AMR Corp.*, 527 B.R. at 891; *see also Parks v. Watson*, 716 F.2d 646, 662 (9th Cir. 1983); *see also Lujan*, 504 U.S. at 583 ("[W]e have denied standing to plaintiffs whose likelihood of suffering any concrete adverse effect from the challenged action was speculative.").

These fifteen Plaintiffs who are presently affiliated with travel agencies have not suffered injury-in-fact and, as such, lack Article III standing.

         *c.*      *The Remaining 9 Plaintiffs Are Retired or Deceased[13]*

The undisputed facts show that the remaining nine Plaintiffs also lack Article III standing because they are no longer in the travel industry (and one is deceased).  Six Plaintiffs (Arcell,

---

[12] For example, when asked "if the price of a ticket is higher, you would receive a larger share of commission?", Brito responded:  "Correct."  *Id.* ¶ 48; *see e.g.*, *id.* ¶ 121 ("Q:  And so if a flight were more expensive, the percentage commission would be higher in total dollar value?  Jolly A: Yes."); *id.* ¶ 101 (G. Garavanian "A:  You know, whatever the price is for the airline ticket, the fee will be higher, okay").

[13] The nine retired or deceased Plaintiffs are:  Arcell, D'Augusta, Davis, H. Garavanian, Malaney, Marazzo, Russell, Stansbury, and Whalen.  Due to Stansbury's passing, Defendants do not know whether Stansbury alleged injury on the basis of her employment.  *Id.* ¶ 26.  Plaintiffs did not produce discovery regarding Stansbury.  *Id.*

D'Augusta, H. Garavanian, Malaney, Marazzo, and Whalen) no longer own or work for any travel agency because they have retired from the travel industry altogether.  SUMF ¶¶ 41, 63, 107, 128, 134, 193.  By way of example, when asked whether the merger would affect his travel agency or income, H. Garavanian testified: "It's *irrelevant*—not to be—this isn't to be snitty, it's really irrelevant because I'm out of business."  SUMF ¶ 107 (emphasis added).  The seventh Plaintiff (Davis) has been "semi-retired" since 2016 and has not sold airline tickets in the last five years, SUMF ¶ 69, and the eighth Plaintiff (Russell) stopped issuing airline tickets at the end of 2022, SUMF ¶ 166.  And it is undisputed that the ninth and last Plaintiff (Stansbury) is deceased and can no longer earn income, whether as a travel agent or otherwise.  SUMF ¶¶ 26, 168.  Nor can Plaintiffs establish any conceivable harm to Stansbury from a future merger. *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 48–49 (1st Cir. 2006).  Consequently, all nine lack Article III standing.  *See In re New Motor*, 522 F.3d at 15.

### B.    Plaintiffs Separately Cannot Meet their Burden of Showing Irreparable Injury for an Injunction.

Plaintiffs must prove two requisite elements to obtain an injunction:  (1) irreparable harm and (2) inadequacy of monetary relief.  Plaintiffs fail on both grounds.  First, the undisputed record reveals that Plaintiffs lack any injury, much less particularized irreparable injury required to enjoin the proposed merger.  *See Orkin v. Albert*, 579 F. Supp. 3d 238, 245 (D. Mass. 2022) ("Irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief.") (internal quotation marks and citation omitted); *Taleff*, 828 F. Supp. 2d at 1123 n.7; *Bradt v. T-Mobile US, Inc.*, No. 19-cv-7752, 2020 WL 1233939, at *3 (N.D. Cal. Mar. 13, 2020).  Second, Plaintiffs have failed to establish "an actual, viable, presently existing threat of serious harm that cannot be adequately remedied through money damages alone."  *SoClean, Inc. v. Sunset Healthcare Sols., Inc.*, No. 20-cv-10351, 2020 WL 978037, at *4 (D. Mass. Feb. 28, 2020) (internal

quotation and citation omitted); *Mahroom v. Best Western Int'l, Inc.*, No. C 07-2351, 2009 WL 248262, at *3 (N.D. Cal. Feb. 2, 2009) (internal quotation marks and citation omitted).  Indeed, Plaintiffs' evidence and long history of settling airline merger suits for money shows just the opposite—that Plaintiffs themselves regard monetary remedies as adequate to address their alleged grievances.

1.    <u>Plaintiffs' Speculative Harms Are Not Irreparable.</u>

For an injunction, each Plaintiff has the burden to demonstrate irreparable harms "that are personal to them were defendants to merge, and [the Court] cannot consider any injuries that plaintiffs allege would be suffered by the general air carrier flying public as a whole." *Malaney*, 2010 WL 3790296, at *13.  Irreparable harm may "not [be] assumed; it must be ***demonstrated***," and "speculative injury does not constitute a showing of irreparable harm." *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6–7 (1st Cir. 1991) (emphasis added) (internal quotation marks and citation omitted).

On irreparable harm, *Malaney* is right on point.  In that case, many of the same Plaintiffs sued to enjoin the merger of United and Continental.[14]  After an evidentiary hearing, the court found Plaintiffs failed "to establish any significant harm they will personally suffer that would warrant preliminary injunctive relief."  2010 WL 3790296, at *13; *Borden*, 347 U.S. at 518 ("private plaintiff" may seek an injunction "only when his personal interest will be served.").  The Court rejected as "speculative and *de minimus*" declarations with intended future travel.  *Malaney*, at *14.  Due to the lack of a substantial showing of harm "personal to them," *id.*, Plaintiffs were not entitled to an injunction then, and they are not entitled to one now.  *See supra* Section IV.A.1.c.

---

[14] The elements of a preliminary injunction are the same as a permanent injunction.  *Ferring Pharms. Inc. v. Watson Pharms, Inc.*, 765 F.3d 205, 215 n.9 (3d Cir. 2014) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction. . . .") (internal quotation marks and citation omitted) (collecting sources).

14

2.      Plaintiffs' Speculative Harms are Remediable By Money Damages.

Plaintiffs' allegations are not only vague, speculative, and unfounded, but as Plaintiffs and their expert Mr. Tatos admit, their alleged harms are also quantifiable and remediable by money damages. *Am. Tunaboat Ass'n v. Brown*, 67 F.3d 1404, 1411 (9th Cir. 1995) (financial harms fall "far short of qualifying as irreparable injury" because injury of a "strictly monetary nature generally is not cognizable as a basis for issuing an injunction"); *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004); *see also Rohm & Haas Elec. Materials, LLC v. Elec. Circuits Supplies, Inc.*, 759 F. Supp. 2d 110, 126 (D. Mass. 2010) (if alleged harms are "quantifiable," they are not "irreparable").

As noted above, fifteen Plaintiffs acknowledge that money damages would remedy alleged harms from "all" airline mergers based on the financial stake they have in their anti-airline-merger PAMA coalition, which pays out proportionally based on the ultimate monetary recovery from their repeated suits. SUMF ¶ 11.  Likewise, in near-identical interrogatory responses, all twenty-four living Plaintiffs speculate they will suffer by paying higher prices and additional fees, SUMF ¶ 35, all of which are readily compensable through monetary damages. *Taleff*, 828 F. Supp. 2d at 1123, 1123 n.7 (plaintiffs had not shown money damages would be inadequate because "the harm which Plaintiffs allege will ensue from the merger"—higher ticket prices—"is expressed in terms of monetary damages").  Plaintiffs' other purported harms—such as reduced scheduling, flight capacity, and customer choice—fundamentally reduce to alleged monetary injury.  *Id.* (finding that claims of "diminished services" were, at bottom, monetary harms).

Notably, Plaintiffs asked their expert Mr. Tatos whether the merger would "threaten loss or damage to Plaintiffs" and whether that loss or damage could "be quantified"—and he answered both questions "in the affirmative."  SUMF ¶ 195.  Indeed, in a report served on July 28, 2023, Mr. Tatos quantified Plaintiffs' alleged harms by calculating a percent-based increase in airfare

15

tickets.  SUMF ¶ 196.  The admission by Plaintiffs' expert that their speculative injury ***could*** be accurately quantified by money defeats the injunction they seek.  *Rohm & Haas Elec.*, 759 F. Supp. 2d at 126.  *Taleff*, 828 F. Supp. 2d at 1123, 1123 n.7 (N.D. Cal. 2011).  So, even assuming Plaintiffs could establish more than speculative injury (they cannot), Plaintiffs and their expert expressly concede that any alleged injury ultimately boils down to monetary damages.

Moreover, the Court need look no further than Plaintiffs' litigation history to see that many of these Plaintiffs have brought airline merger challenges in the past, initially alleging they would suffer irreparable harm, before accepting "remedies available at law, such as monetary damages."[15] SUMF ¶¶ 6–25; *In re Nexium*, 309 F.R.D. at 137.  Simply put:  under similar circumstances, many of the same Plaintiffs believed money was sufficient to address their harm.  If it was true then, it is true now.

In sum, Plaintiffs have voluntarily: (1) taken monetary settlements in return for dismissing past airline merger lawsuits (SUMF ¶¶ 8, 10, 17), and/or (2) formed an anti-airline-merger

---

[15] It is undisputed that Plaintiffs accepted a monetary settlement in *D'Augusta v. Northwest Airlines Corp.*, No. 08-cv-3007, (N.D. Cal.).  There, many of these same Plaintiffs sued to enjoin the Delta/Northwest merger in 2008, but voluntarily dismissed their lawsuit with prejudice for a monetary settlement.  Plaintiffs refused to produce documents regarding *Grace v. Alaska Air Grp.*, No. 16-cv-05165 (N.D. Cal.), but the record suggests Plaintiffs entered into a monetary settlement in that case as well.  SUMF ¶ 17 ("Q:  Turning over to *Grace v. Alaska*, did you reach a settlement in that case?  Jolly A:  I am not sure.  I think -- I think we did reach a settlement in that one.").  If Jolly is correct, then there is no dispute that twenty-three Plaintiffs (all except Nieboer and Whalen) have voluntarily accepted money in one or more airline merger cases.  And, following the Alaska Air Group and Virgin America merger in *Grace v. Alaska Air Grp.*, several Plaintiffs admitted the outcome "wasn't important to [them]" or even memorable—"once it's over and done with, you just go forward."  *Id.* ("Q:  Ms. Gardner, do you recall the outcome of that case [*Grace v. Alaska*]?  Gardner A:  I do.  Q:  Did the airlines merge?  Gardner A:  Um, I don't know if they did or not. . . . Q:  So you were a plaintiff in *Grace v. Alaska*, but you don't know what the outcome is in terms of the merger?  Gardner A:  No.  Q:  You didn't look it up?  Gardner A:  No.  Q:  It wasn't important to you?  Gardner A:  No."); *id.* ("Q:  Do you recall what airline merged with Alaska?  Brown A:  No. I'm sorry. . . .  Q:  You just forget about them, right?  Brown A:  Pretty much. I mean, it -- you know, once it's over and done with, you just go forward.").

coalition to seek monetary payouts from "all" airline mergers in the future (SUMF ¶ 11). Thus, any contention that these Plaintiffs face irreparable injury necessary for an injunction rings hollow. *See Rohm & Haas Elec.*, 759 F. Supp. 2d at 126 (irreparable harm could not be shown because their alleged losses were "quantifiable") (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)); *Taleff*, 828 F. Supp. 2d at 1123, 1123 n.7; *Bradt*, 2020 WL 1233939, at *3.

Further, Plaintiffs cannot meet their threshold burden of showing how their personal grievances or their desired injunction would not be wholly mooted or rejected altogether by the Court's resolution of the DOJ action set for trial.

Plaintiffs' requested injunctive remedy is woefully inappropriate, and summary judgment must issue.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment should be granted.

Dated: August 1, 2023

*/s/ Elizabeth Wright*
Elizabeth M. Wright (MA BBO #569387)
Zachary R. Hafer (MA BBO #569389)
Cooley LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Tel: 617-937-2300
ewright@cooley.com
zhafer@cooley.com

Ethan Glass (*Pro Hac Vice*)
Deepti Bansal (*Pro Hac Vice*)
Matt K. Nguyen (*Pro Hac Vice*)
Cooley LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 2004-2400
Tel: 202-842-7800
Fax: 202-842-7899
eglass@cooley.com
dbansal@cooley.com

Beatriz Mejia (*Pro Hac Vice*)
Cooley LLP

17

3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Tel: 415-693-2000
Fax: 415-693-2222
bmejia@cooley.com

Joyce Rodriguez-Luna (*Pro Hac Vice*)
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
Tel: 212 479 6895
Fax: 2124796275
jrodriguez-luna@cooley.com

*Attorneys for Defendant JetBlue Airways
Corporation*

/s/ Andrew C. Finch
Andrew C. Finch (*pro hac vice*)
Eyitayo St. Matthew-Daniel (*pro hac vice*)
Jay Cohen (*pro hac vice*)
Jared P. Nagley (*pro hac vice*)
Kate Wald (*pro hac vice*)
Paul, Weiss, Rifkind, Wharton & Garrison
LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: 212-373-3000
Fax: 212-757-3990
afinch@paulweiss.com
tstmatthewdaniel@paulweiss.com
jcohen@paulweiss.com
jnagley@paulweiss.com
kwald@paulweiss.com

Meredith R. Dearborn (*pro hac vice*)
Paul, Weiss, Rifkind, Wharton & Garrison
LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel: 628-432-5100
Fax: 628-232-3101
mdearborn@paulweiss.com

*Attorneys for Defendant
Spirit Airlines, Inc.*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document was filed through the ECF system on August 1, 2023 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Elizabeth M. Wright*
Elizabeth M. Wright

289322730