# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GABRIEL GARAVANIAN, et al., | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) Civil Action No.  1:23-cv-10678-WGY |
|  | ) |
| JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC., | ) |
|  | ) |
| Defendants, | ) |
|  | ) |

## LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants JetBlue Airways Corporation ("JetBlue") and Spirit Airlines, Inc. ("Spirit") respectfully submit this statement of undisputed material facts, pursuant to Local Rule 56.1, in support of its Motion for Summary Judgment.  The undisputed material facts as to which there is no genuine issue to be tried are:

## I.    Background

1.    On July 28, 2022, JetBlue and Spirit executed a final merger agreement. JetBlue Airways Corp., Sundown Acquisition Corp. & Spirit Airways, Inc., Agreement and Plan of Merger (July 28, 2022),  https://www.sec.gov/Archives/edgar/data/1498710/000119312522204192/d368049dex21.htm.

2.    On November 3, 2022, Plaintiffs Katherine R. Arcell, Jose M. Brito, Jan-Marie Brown, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Don Freeland, Donna Fry, Harry Garavanian, Gabriel Garavanian, Yvonne Jocelyn Garner, Valarie Ann Jolly, Michael C.  Malaney, Len Marazzo, Lisa McCarthy, Timothy Nieboer, Deborah M. Pulfer, Bill Rubinsohn, Sondra K. Russell, June Stansbury, Clyde D. Stensrud, Gary Talewsky, Pamela S. Ward, and Christine Whalen (collectively, "Plaintiffs") filed a Complaint in the Northern District of California seeking to prohibit the acquisition of Spirit by JetBlue, captioned *Garavanian v. JetBlue Airways Corp.*, No. 22-cv-6841-JSW (N.D. Cal.).  Dkt. 1.

3.    On March 17, 2023, the U.S. District Court for the Northern District of California transferred the case to the U.S. District Court for the District of Massachusetts. Joint Stipulation and Order to Transfer Pursuant to 28 U.S.C. § 1404.  Dkt. 35.

4.    Plaintiffs do not seek to bring this action as representatives of a class of airline travelers.  *See generally* Dkt. 1.

5.      Plaintiffs only seek injunctive relief and do not seek damages.  Dkt. 1 at Prayer for Relief.

## II.      Plaintiffs' Prior Litigation History

6.      Various subsets of Plaintiffs filed lawsuits to enjoin six prior airline merger antitrust lawsuits, including *D'Augusta v. Northwest Airlines Corp.*, No. 08-cv-3007 (N.D. Cal.); *Malaney v. UAL Corp.*, No. 10-cv-02858 (N.D. Cal.); *Taleff v. Southwest Airlines Co.*, No. 11-cv-02179 (N.D. Cal.); *Fjord v. AMR Corp. (In re AMR Corp.)*, No. 13-01392 (Bankr. S.D.N.Y.); *Fjord v. U.S. Airways Grp., Inc.*, No. 13-cv-3041 (N.D. Cal.); and *Grace v. Alaska Air. Grp., Inc.*, No. 16-cv-5165 (N.D. Cal.).  None of these lawsuits successfully blocked the challenged mergers.

7.      In *D'Augusta v. Northwest Airlines Corp.*, on June 18, 2008, 15 of the Plaintiffs filed a complaint in the District Court for the Northern District of California.  No. 08-cv-3007 (N.D. Cal. June 18, 2008), ECF No. 2.  The complaint sought to enjoin a merger between Delta Airlines and Northwest Airlines pursuant to §§ 7 and 16 of the Clayton Act, claiming that the *D'Augusta* Plaintiffs faced "irreparable harm" from the merger.  *Id.* ¶ 21.  The Plaintiffs in *D'Augusta* included: Rosemary D'Augusta, Carolyn Fjord, Donna Fry, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valarie Ann Jolly, Michael C. Malaney, Lisa McCarthy, Deborah M. Pulfer, Sondra K. Russell, June Stansbury, Clyde D. Stensrud, Gary Talewsky, and Pamela S. Ward (the "*D'Augusta* Plaintiffs").  *Id.* ¶ 3.

8.      On or about October 29, 2008—two days prior to trial—the *D'Augusta* Plaintiffs voluntarily dismissed their suit.  *See D'Augusta*, ECF No. 90.  The *D'Augusta* Plaintiffs agreed to do so in exchange for a monetary payment of $5 million and nothing

else.  *See* Exhibit 1 at 31 (Post-Hearing Mem., *Malaney v. UAL Corp.*, No. 10-cv-02858 (N.D. Cal. Sept. 13, 2010), ECF No. 119).

9.      Plaintiffs refused to produce all discovery regarding the *D'Augusta* settlement in this case, asserting that such discovery would violate a "confidential court order."  Plaintiffs have refused to produce, or even describe, those confidentiality provisions to Defendants.  Exhibit 9 at 9 (Correspondence from M. Nguyen to L. Papale); Exhibit 3 at 1 (Correspondence from M. Nguyen to L. Papale).[1]

10.     Joseph Alioto, the *D'Augusta* Plaintiffs' counsel and Plaintiffs' attorney of record in this case, was quoted in the Las Vegas Sun on June 30, 2010, stating the *D'Augusta* suit "was successful."  Exhibit 4 at 3.  Despite the fact that the *D'Augusta* suit did "not result in an order blocking [the] merger," Alioto was quoted as saying Plaintiffs "received a very favorable settlement, an offer we couldn't refuse.  Two days before the trial, the defendants offered and the plaintiffs accepted a settlement." *Id.*

11.     In 2008, 15 Plaintiffs executed a Passengers Against Mergers Agreement ("PAMA").  Exhibit 5 at 1.  The PAMA, dated April 2008, sought to "raise $100,000 to fund an immediate legal filing for an injunction . . . to halt all pending and contemplated airline mergers" because "mergers are not to the benefit of the traveling public or the towns and cities served by said airlines." *Id.*  Under the PAMA, each participant purchased "shares" with the understanding that the more shares they bought, the greater their economic return if the cases resulted in financial payout. *Id.* (stating that signatories would "receive a portion of any award from the Alioto Law Firm … in the same proportion to the

---

[1] Citations to exhibits refer to the exhibits filed with the Declaration of Elizabeth M. Wright in Support of Defendants' Motion for Summary Judgment.

shares purchased by that individual").  The PAMA was signed by all of the *D'Augusta* Plaintiffs.  *Id.*

12.     In *Malaney v. UAL Corp.*, No. 10-CV-02858 (N.D. Cal. June 29, 2010), 22 of the Plaintiffs brought claims under §§ 7 and 16 of the Clayton Act to enjoin the merger between United Air Lines and Continental Airlines.  Their claims were dismissed for failure to state a claim because they could not demonstrate irreparable harm or a viable relevant market.  *See Malaney v. UAL Corp.*, No. 10-CV-02858, 2010 WL 3790296, at *12-13 (N.D. Cal. Sept. 27, 2010).  The Ninth Circuit affirmed, 434 F. App'x 620 (9th Cir. 2011), and the Supreme Court denied *certiorari*.  565 U.S. 1094 (2011).  The Plaintiffs who participated in the *Malaney* case included Katherine R. Arcell, Jose M. Brito, Jan-Marie Brown, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Donald Freeland, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valerie Jolly, Michael C. Malaney, Len Marazzo, Lisa McCarthy, Deborah Pulfer, Bill Rubinsohn, Sondra Russell, Clyde D. Stensrud, Gary Talewsky, Pamela S. Ward, and Christine Whalen.  *See* Complaint, *Malaney v. UAL Corp.*, No. 10-CV-02858 (N.D. Cal. June 29, 2010), ECF No. 1.

13.     In *Taleff v. Southwest Airlines Co.*,  No. 11-cv-02179 (N.D. Cal. May 3, 2011), 21 of the Plaintiffs brought claims under §§ 7 and 16 of the Clayton Act one day after Southwest acquired AirTran Holdings, Inc., seeking divestiture.  Plaintiffs sought and failed to obtain a temporary restraining order from the district court and, during the appeal of that order, the Ninth Circuit sanctioned Plaintiffs' counsel for their conduct and awarded attorneys' fees to defendant/appellees.  Order, *Taleff v. Southwest Airlines Co.*, No. 11-16173 (9th Cir. Aug. 30, 2011), ECF No. 31.   The Northern District of California

subsequently dismissed the complaint for failure to establish irreparable harm, and for failure to establish entitlement to the extraordinary remedy of divestiture.  *See Taleff v. Southwest Airlines Co.*, 828 F. Supp. 2d 1118 (N.D. Cal. 2011).  Plaintiffs then filed an "emergency appeal" to the Ninth Circuit, which was also unsuccessful.  *See Taleff v. Southwest Airlines Co.*, 554 F. App'x 598 (9th Cir. 2014).  Plaintiffs who participated in the *Taleff* case included Katherine R. Arcell, Jose M. Brito, Jan-Marie Brown, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Don Freeland, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valarie Ann Jolly, Michael C. Malaney, Len Marazzo, Lisa McCarthy, Deborah M. Pulfer, Bill Rubinsohn, Sondra Russell, Clyde Stensrud, Gary Talewsky, Pamela S. Ward, and Christine Whalen.  *See* Complaint, *Taleff v. Southwest Airlines Co.*, No. 11-cv-02179 (N.D. Cal. May 3, 2011), ECF No. 1.

14.     In *Fjord v. U.S. Airways Grp., Inc.*, No. 13-cv-03041 (N.D. Cal. July 2, 2013), 22 of the Plaintiffs brought claims under §§ 7 and 16 of the Clayton Act to enjoin the merger between American Airlines and U.S. Airways.  This case was voluntarily dismissed less than three months after it was filed.  Plaintiffs who participated in the *Fjord v. U.S. Airways* case included Katherine R. Arcell, Jose M. Brito, Jan-Marie Brown, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Donald Freeland, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valerie Jolly, Michael C. Malaney, Len Marazzo, Lisa McCarthy, Deborah M. Pulfer, Bill Rubinsohn, Sondra K. Russell, June Stansbury, Clyde D. Stensrud, Gary Talewsky, and Pamela S. Ward.  *See* Complaint, *Fjord v. U.S. Airways Grp., Inc.*, No. 13-cv-03041 (N.D. Cal. July 2, 2013), ECF No. 1.

5

15.     In *Fjord v. AMR Corp. (In re AMR Corp.)*, No. 13-01392 (Bankr. S.D.N.Y. Aug. 6, 2013), 23 of the Plaintiffs brought claims under §§ 7 and 16 of the Clayton Act to unwind the merger of U.S. Airways and American Airlines.  Plaintiffs' claims were denied. 625 B.R. 215 (Bankr. S.D.N.Y. 2021).  The Second Circuit affirmed, No. 22-901, 2023 WL 2563879 (2d Cir. Mar. 20, 2023), and Plaintiffs filed a petition for a writ of *certiorari*, still pending before the Supreme Court, No. 22-901 (June 22, 2023).  Plaintiffs participating in the *AMR Corp.* case include Katherine R. Arcell, Jose M. Brito, Jan-Marie Brown, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Don Freeland, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valerie Anne Jolly, Michael C. Malaney, Len Marazzo, Lisa McCarthy, Deborah M. Pulfer, Bill Rubinsohn, Sondra K. Russell, June Stansbury, Clyde D. Stensrud, Gary Talewsky, Pamela S. Ward, and Christine Whalen.  *See* Complaint, *Fjord v. AMR Corp. (In re AMR Corp.)*, No. 13-01392 (Bankr. S.D.N.Y. Aug. 6, 2013), ECF No. 1.

16.     In *Grace v. Alaska Air Grp.*, No. 16-cv-05165 (N.D. Cal. Sept. 7, 2016), 23 of the Plaintiffs brought claims under §§ 7 and 16 of the Clayton Act to enjoin the merger of Alaska Airlines and Virgin America.  Plaintiffs who participated in the *Alaska Air* case included Katherine R. Arcell, Jose M. Brito, Jan-Marie Brown, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Don Freeland, Donna Fry, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valerie Ann Jolly, Michael C. Malaney, Len Marazzo, Lisa McCarthy, Deborah M. Pulfer, Bill Rubinsohn, Sondra K. Russell, June Stansbury, Clyde D. Stensrud, Gary Talewsky, and Pamela S. Ward.  *See* Complaint, *Grace v. Alaska Air Grp.*, No. 16-cv-05165 (N.D. Cal. Sept. 7, 2016), ECF No. 1.

17.     *Grace v. Alaska Air Grp.* was settled three months after it was filed.  During her deposition in this case, Plaintiff Valerie Ann Jolly, who was also a plaintiff in the *Alaska Air* case, testified as to the *Alaska Air* settlement:  "I think -- I think we did reach a settlement in that one."  Exhibit 50 at 130:22-24 ("Q:  Turning over to *Grace v. Alaska*, did you reach a settlement in that case?  Jolly A:  I am not sure.  I think -- I think we did reach a settlement in that one.").  That settlement did not prevent the merger of Alaska Airlines and Virgin America.  *Id.*  After they settled in the *Alaska Air* case, several Plaintiffs admitted in depositions in this litigation that the outcome of the Alaska Air merger "wasn't important to [them]" or even memorable because "once it's over and done with, you just go forward."  Exhibit 47 at 111:6-112:5 ("Q:  Ms. Gardner, do you recall the outcome of that case [*Grace v. Alaska*]?  Gardner A:  I do.  Q:  Did the airlines merge?  Gardner A:  Um, I don't know if they did or not. . . . Q:  So you were a plaintiff in *Grace v. Alaska*, but you don't know what the outcome is in terms of the merger?  Gardner A:  No.  Q:  You didn't look it up?  Gardner A:  No.  Q:  It wasn't important to you?  Gardner A:  No.");  Exhibit 19 at 113:17-114:6 ("Q:  Do you recall what airline merged with Alaska?  Brown A:  No. I'm sorry. . . . Q: You just forget about them, right?  Brown A:  Pretty much.  I mean it -- you know, once it's over and done with, you just go forward.").

18.     In *Prosterman v. Airline Tariff Publishing Co.*, No. 16-cv-02017 (N.D. Cal. Apr. 18, 2016), 24 of the Plaintiffs brought a claim under §§ 4 and 16 of the Clayton Act alleging a price fixing conspiracy by airlines.  The case was dismissed for failure to state a claim.  2016 WL 7157667 (N.D. Cal. Dec. 8, 2016).  The Ninth Circuit affirmed.  747 F. App'x 458 (9th Cir. 2018).  The Supreme Court denied *certiorari*.  139 S. Ct. 1342 (2019).  Plaintiffs who participated in the *Prosterman* case included Katherine R. Arcell, Jose Brito,

Jan-Marie Brown, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Don Freeland, Donna Fry, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valarie Ann Jolly, Michael C. Malaney, Len Marazzo, Lisa McCarthy, Deborah M. Pulfer, Bill Rubinsohn, Sondra K. Russell, June Stansbury, Clyde D. Stensrud, Gary Talewsky, Pamela S. Ward, and Christine Whalen.  *See* Complaint, *Prosterman v. Airline Tariff Publ'g Co.*, No. 16-cv-02017 (N.D. Cal. April 18, 2016), ECF No. 1.

19.     In *Nypl v. JP Morgan Chase & Co.*, 15-cv-09300 (S.D.N.Y. May 21, 2015), three of the Plaintiffs brought claims under the antitrust laws alleging a conspiracy to fix prices in foreign exchange markets.  The court granted summary judgment against the plaintiffs for, *inter alia*, failing to provide evidence of economic harm.  2023 WL 2712214, at *2–6 (S.D.N.Y. Mar. 30, 2023).  Plaintiffs who participated in the *Nypl* case included Lisa McCarthy, Valarie Ann Jolly, and Bill Rubinsohn.  *See* Complaint, *Nypl v. JP Morgan Chase & Co.*, 15-cv-09300 (S.D.N.Y. May 21, 2015), ECF No. 1.

20.     In *Arcell v. Google LLC*, 22-cv-02499 (N.D. Cal. Apr. 22, 2022), 24 of the Plaintiffs brought claims, *inter alia*, under §§ 4 and 16 of the Clayton Act alleging that Apple and Google agreed not to compete in the search business.  The court heard the defendants' motion to dismiss in June 2023.  Plaintiffs who are participating in the *Google* case are Katherine R. Arcell, Jose M. Brito, Jan-Marie Brown, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Don Freeland, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valarie Ann Jolly, Michael C. Malaney, Len Marazzo, Lisa McCarthy, Timothy Nieboer, Deborah M. Pulfer, Bill Rubinsohn, Sondra K. Russell, June Stansbury, Clyde D. Stensrud, Gary Talewsky, Pamela S. Ward, and

Christine Whalen. *See* Complaint, *Arcell v. Google LLC*, 22-cv-02499 (N.D. Cal. Apr. 22, 2022), ECF No. 1.

21.     In *McCarthy v. Intercontinental Exchange, Inc.*, No. 20-cv-5832 (N.D. Cal. Aug. 18, 2020), all 25 of the Plaintiffs in the present lawsuit challenged ICE LIBOR rate-setting, alleging a hub-and-spoke conspiracy by banks and rate-setting entities pursuant to §§ 4 and 16 of the Clayton Act. The court dismissed plaintiffs' claims for failure to allege antitrust standing, noting the "cavalier" approach they took to the issue. 2022 WL 4227247, at *3-4 (N.D. Cal. Sept. 13, 2022). All of the Plaintiffs in this case participated in the *Intercontinental Exchange* case. *See* Complaint, *McCarthy v. Intercontinental Exch., Inc.*, No. 20-cv-5832 (N.D. Cal. Aug. 18, 2020), ECF No. 1.

22.     In *D'Augusta v. American Petroleum Institute*, No. 22-cv-01979 (N.D. Cal. Mar. 28, 2022), 23 of the Plaintiffs alleged an antitrust conspiracy between United States, Saudi Arabia, Russia, American Petroleum Institute, Chevron, ExxonMobil, and others to stop a price war for gasoline. The case was dismissed for lack of standing, based on the application of certain governmental immunities. 2023 WL 137474 (N.D. Cal. Jan. 9, 2023). Plaintiffs who participated in the *American Petroleum* case included Mary Katherine R. Arcell, Jose M. Brito, Jan-Marie Brown, Yvonne Jocelyn Gardner, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Don Freeland, Gabriel Garavanian, Valarie Ann Jolly, Michael C. Malaney, Len Marazzo, Lisa McCarthy, Timothy Nieboer, Deborah M. Pulfer, Bill Rubinsohn, Sondra K. Russell, June Stansbury, Clyde D. Stensrud, Gary Talewsky, Pamela S. Ward, and Christine Whalen. *See* Complaint, *D'Augusta v. Am. Petroleum Inst.*, No. 22-cv-01979 (N.D. Cal. Mar. 28, 2022), ECF No. 1.

23.     In *Bradt v. T-Mobile US, Inc.*, No. 19-cv-7752 (N.D. Cal. Nov. 25, 2019), 20 of the Plaintiffs challenged the merger of T-Mobile and Sprint in the telecommunications industry under §§ 7 and 16 of the Clayton Act.  The court denied plaintiffs' request for preliminary injunctive relief, in part because plaintiffs' mere speculation about irreparable harm could be remedied by monetary damages.  2020 WL 1809716 (N.D. Cal. Feb. 28, 2020).  The ruling is currently pending appeal.  Plaintiffs participating in the *Bradt* case include Katherine R. Arcell, Jose M. Brito, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valarie Ann Jolly, Michael Malaney, Len Marazzo, Lisa McCarthy, Timothy Nieboer, Deborah M. Pulfer, Bill Rubinsohn, Sondra K. Russell, June Stansbury, Clyde D. Stensrud, Gary Talewsky, Pamela S. Ward, and Christine Whalen.  *See* Complaint, *Bradt v. T-Mobile US, Inc.*, No. 19-cv-7752 (N.D. Cal. Nov. 25, 2019), ECF No. 1.

24.     In *Whalen v. Albertson's Cos.*, No. 23-cv-00459 (N.D. Cal. Feb. 2, 2023), 24 of the Plaintiffs challenged the merger of Albertson's and Kroger in the grocery industry.  The case was fully briefed on defendants' motion to dismiss for, *inter alia*, plaintiffs' failure to plead standing.  *See* Mot. to Dismiss & Mem. of P.&.A's in Supp. at 8, *Whalen v. Albertson's Cos.*, No. 23-cv-00459 (N.D. Cal. Apr. 12, 2023), ECF No. 40. Plaintiffs participating in the *Albertson's* case include Katherine R. Arcell, Jose M. Brito, Jan-Marie Brown, Rosemary D'Augusta, Brenda K. Davis, Pam Faust, Carolyn Fjord, Don Freeland, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valarie Ann Jolly, Michael C. Malaney, Len Marazzo, Lisa McCarthy, Tim Nieboer, Deborah M. Pulfer, Bill Rubinsohn, Sondra K. Russell, June Stansbury, Clyde D. Stensrud, Gary

Talewsky, Pamela S. Ward, and Christine S. Whalen.  *See* Complaint, *Whalen v. Albertson's Cos.*, No. 23-cv-00459 (N.D. Cal. Feb. 2, 2023), ECF No. 1.

25.    In *Tam Travel, Inc. v. Delta Airlines, Inc.*, No. 03-cv-30001 (N.D. Ohio Dec. 30, 2003), 8 of the Plaintiffs (and several of their associated travel agencies) brought claims under §§ 7 and 16 of the Clayton Act alleging price-fixing among numerous airlines. The *Tam Travel* case was consolidated into a multi-district litigation, which was dismissed for failure to state a claim.  *In re Travel Agent Comm'n Antitrust Litig.*, No. 03-cv-30000, 2007 WL 3171675, at *7 (N.D. Ohio Oct. 29, 2007).  That decision was affirmed by the Sixth Circuit, 583 F.3d 896 (6th Cir. 2009), and the Supreme Court denied *certiorari*.  562 U.S. 1134 (2011).  Plaintiffs who participated in the *Tam Travel* case included Katherine R. Arcell, Brenda K. Davis, Carolyn Fjord, Gabriel Garavanian, Harry Garavanian, Bill Rubinsohn, and Christine S. Whalen.  *See* Complaint, *Tam Travel, Inc. v. Delta Airlines, Inc.*, No. 03-cv-30001 (N.D. Ohio Dec. 30, 2003), ECF No. 1-1.

### III.    **Plaintiffs' Relationship to the Airline Industry**

26.    June Stansbury passed away on February 14, 2023.  *See* Obituary of June Stansbury, Reno Gazette-J. (Mar. 16, 2023), https://www.rgj.com/obituaries/rgj050205. Defendants served, but never received, discovery from Stansbury.  Exhibit 6 at 1.

27.    Twenty-two of the 24 living Plaintiffs in this matter have never flown on Spirit during the four years before their Complaint was filed to present.  *See infra* ¶¶ 37, 44, 51, 58, 66, 72, 78, 85, 91, 103, 110, 117, 124, 130, 137, 150, 156, 162, 171, 177, 182, 189.  Neither the deceased Plaintiff Stansbury nor her estate produced discovery showing that she flew Spirit.  Sixteen of the 24 living Plaintiffs "have never flown" Spirit.  *See infra* ¶¶ 37, 44, 51, 58, 66, 91, 103, 124, 130, 137, 150, 156, 162, 171, 177, 182, 189.  While some Plaintiffs expressed interest in future travel, and perhaps to fly Spirit, in the coming

months and years, as of the close of fact discovery, all 25 Plaintiffs have no future Spirit flights booked and no concrete, imminent plans to fly Spirit. *See infra* ¶ ¶ 38, 45, 52, 59, 67, 73, 79, 86, 92, 98, 104, 111, 118, 125, 131, 138, 145, 151, 157, 163, 168, 172, 178, 183, 190.

28.     In verified interrogatory responses, all of the living Plaintiffs allege harm on 121 city-pair routes as a result of the merger ("Rog 8 routes"). *See* Exhibits 13, 16, 20, 24, 27, 31, 34, 37, 40, 43, 46, 49, 52, 56, 60, 64, 67, 71, 77, 81, 86, 89, 93, 98  (Plaintiffs' Supplemental Responses to Defendants' Second Set of Interrogatories, Interrogatory No. 8).[2]  During the four years before their Complaint was filed through the close of fact discovery, none of the living Plaintiffs flew Spirit on these Rog 8 routes. *See infra* ¶¶ 39, 46, 53, 60, 68, 74, 80, 87, 93, 99, 105, 112, 119, 126, 132, 139, 146, 152, 158, 164, 173, 179, 184, 191.

29.     Fifteen Plaintiffs are currently affiliated with a travel agency in some capacity: Brito (travel agent), Brown (travel manager for The Beach Boys), Faust (travel agent), Fjord (travel agent), Freeland (travel agent), Fry (travel agent), G. Garavanian (travel agent), Gardner (travel consultant), Jolly (travel agent), McCarthy (handles travel agency administration, but is not a travel agent), Pulfer (travel agent), Rubinsohn (travel agent), Stensrud (travel agency owner), Talewsky (travel agent), and Ward (travel agent) (the "Travel Agent Plaintiffs"). *See infra* ¶¶ 47, 75, 81, 88, 94, 100, 113, 120, 140, 153, 159, 174, 180, 185.  Brown gave inconsistent responses as to whether she is a travel agent. *See infra* ¶ 54.

---

[2] All at pages 4-8.

30.     Aside from Brown and McCarthy, the Travel Agent Plaintiffs are generally paid in one of two ways for booking airline tickets: (1) flat service fees which they set and charge their customers directly; and/or (2) scaling service fees based on the price of airline tickets.  *See infra* ¶¶ 48, 76, 82, 89, 95, 101, 114, 121, 154, 160, 175, 180, 186.

31.     During a meet and confer with Plaintiffs' counsel, Plaintiffs' counsel agreed to produce documents responsive to Defendants' Second Request for Production, which called for "Documents sufficient to show every trip You have arranged for a customer from 2015 to present," but not in response to Defendants' Third Request for Production, which called for "Documents sufficient to show Your and/or Your travel agency's revenue, profits and losses, and financial statements from 2015 to present," on the grounds that Plaintiffs' travel agencies' financials are not relevant.  Exhibit 7 at 1; Exhibit 8 at 1–2.

32.     To date, the only Plaintiffs who have produced documents responsive to Requests for Production 1 and 2 pertaining to their travel agencies are Arcell, Brito, Davis, and Faust.  Declaration of Elizabeth M. Wright ¶ 2 ("Wright Declaration").  Defendants have repeatedly sought these documents without success.  Exhibit 7 at 1; Exhibit 9 at 1; Exhibit 11 at 1.

33.     Defendants' Interrogatory No. 7 asked each Plaintiff to "[i]dentify each and every distinct injury You allege that You will suffer as a result of the merger between JetBlue and Spirit."  *See, e.g.*, Exhibit 13 at 2–3.

34.     Defendants' Interrogatory No. 8 asked each Plaintiff to "Identify each and every 'submarket' and 'route' referred to at Paragraphs 7, 19, 59 and 84 of the Complaint. For avoidance of doubt, 'submarket' and 'route' are ascribed the same meanings as in the Complaint."  *Id.* at 4.

35.     Twenty-two living Plaintiffs issued the following response to Defendants'

Interrogatory No. 7:

> This proposed acquisition is a substantial threat of harm and injury to all the Plaintiffs in that they will face higher fares, fewer flights, less consumer choice than they otherwise would have, and they would be threatened with the inability to use air travel at all.
>
> The proposed acquisition constitutes a substantial threat of injury to these Plaintiffs because this acquisition may have the effect "substantially to lessen competition" and "tend to create a monopoly" in a "line of commerce" in a "section of the country" in violation of Section 7 of the Clayton Antitrust Act (15 U.S.C. § 18). In addition, the contract to eliminate Spirit constitutes a non-trivial transaction eliminating a significant rival, which is not a failing company, that eliminates a substantial and growing, cost-cutting competitor from the market.
>
> In addition, JetBlue's elimination of Spirit will be virtually certain to cause substantial irreparable injury to Plaintiffs and to all consumers for domestic scheduled air passenger transportation services in the relevant geographic and product markets in that, among other reasons, Spirit, and the consumer choices that go with it, will be gone, and once gone, the harm would be irreparable.
>
> Plaintiffs are threatened with the loss of (1) the distinctive services and in-flight experience offered by Spirit; (2) a reduction in customer choice; (3) a reduction in capacity and the curtailment of flights thereby creating higher prices and severe inconvenience to consumers; and (4) ultimately, the loss of a vibrant, vigorous, and innovative fare-cutting competitor.  The elimination of Spirit will further substantially threaten to harm U.S.  passengers through increases in the price of tickets, checked bags and flight change fees, translating to billions of dollars of harm to consumers annually, and further threatens to deprive passengers of the unique comfort, style, service and especially affordability offered by Spirit.
>
> If Spirit is eliminated, Plaintiffs will sustain irreparable harm for which damages will be inadequate to compensate Plaintiffs in that the competition from a "price-disruptor" will be extirpated and customer choice for travel options eradicated.  The imagination and initiative of Spirit will be snuffed out; modern jets and expansion plans will be jettisoned; customer convenience and satisfaction will be disregarded. Spirit's air service once lost cannot be restored.

*See* Exhibits 13, 16, 20, 24, 27, 31, 34, 37, 40, 43, 46, 49, 52, 56, 60, 64, 67, 71, 77, 81, 86,

89, 93, 98.[3]  Gardner and Jolly provided an identical response as the other Plaintiffs except

---

[3] All at 2-4.

for the first paragraph, which they omitted.  *See* Exhibit 49 at 2-4; Exhibit 52 at 2-4.  Most Plaintiffs also individually responded with other harms they anticipate the merger will cause them personally.  *See infra* ¶¶ 42, 49, 57, 64, 71, 77, 83, 90, 96, 102, 108, 115, 122, 135, 142, 149, 155, 161, 167, 176, 181, 187, 194.

36.     All of the living Plaintiffs issued the following response to Defendants' Interrogatory No. 8:

"The following city pairs constitute some, among many, submarkets for airline services in the United States.  This response is submitted as a partial and not complete list of potential submarkets and this response may change as further information is received and analyzed by Plaintiff and Plaintiff's attorneys and experts.  The specific response set forth below is based upon information now known.  Plaintiff has not yet completed discovery or preparation for trial in this case, and, therefore, reserves the right to amend, modify, or supplement any general or specific response.

| City Market 1 | City Market 2 |
|---|---|
| Aguadilla, PR | Raleigh/Durham, NC |
| Aguadilla, PR | Las Vegas, NV |
| Aguadilla, PR | Richmond, VA |
| Aguadilla, PR | Orlando, FL |
| Aguadilla, PR | Washington, DC (Metropolitan Area) |
| Aguadilla, PR | Los Angeles, CA (Metropolitan Area) |
| Aguadilla, PR | Minneapolis/St. Paul, MN |
| Aguadilla, PR | Chicago, IL |
| Aguadilla, PR | Kansas City, MO |
| Aguadilla, PR | New York City, NY (Metropolitan Area) |
| Aguadilla, PR | Charlotte, NC |
| Aguadilla, PR | Detroit, MI |
| Aguadilla, PR | New Orleans, LA |
| Aguadilla, PR | Milwaukee, WI |
| Aguadilla, PR | Tampa, FL |
| Aguadilla, PR | Houston, TX |
| Aguadilla, PR | Philadelphia, PA |
| Aguadilla, PR | Miami, FL (Metropolitan Area) |

| City Market 1 | City Market 2 |
|---|---|
| Atlanta, GA | New York City, NY (Metropolitan Area) |
| Atlanta, GA | Ponce, PR |
| Atlanta, GA | Aguadilla, PR |
| Austin, TX | New York City, NY (Metropolitan Area) |
| Austin, TX | Miami, FL (Metropolitan Area) |
| Austin, TX | Aguadilla, PR |
| Austin, TX | Ponce, PR |
| Boston, MA (Metropolitan Area) | Sacramento, CA |
| Boston, MA (Metropolitan Area) | Orlando, FL |
| Boston, MA (Metropolitan Area) | Miami, FL (Metropolitan Area) |
| Boston, MA (Metropolitan Area) | Tampa, FL (Metropolitan Area) |
| Boston, MA (Metropolitan Area) | New Orleans, LA |
| Boston, MA (Metropolitan Area) | San Diego, CA |
| Boston, MA (Metropolitan Area) | Las Vegas, NV |
| Boston, MA (Metropolitan Area) | Charlotte Amalie, VI |
| Boston, MA (Metropolitan Area) | Fort Myers, FL |
| Boston, MA (Metropolitan Area) | San Juan, PR |
| Boston, MA (Metropolitan Area) | Aguadilla, PR |
| Boston, MA (Metropolitan Area) | Christiansted, VI |
| Boston, MA (Metropolitan Area) | Ponce, PR |
| Chicago, IL | Ponce, PR |
| Cleveland, OH (Metropolitan Area) | San Juan, PR |
| Cleveland, OH (Metropolitan Area) | Miami, FL (Metropolitan Area) |
| Cleveland, OH (Metropolitan Area) | Aguadilla, PR |
| Dallas/Fort Worth, TX | New York City, NY (Metropolitan Area) |
| Dallas/Fort Worth, TX | Ponce, PR |
| Dallas/Fort Worth, TX | Aguadilla, PR |
| Denver, CO | San Juan, PR |
| Denver, CO | Aguadilla, PR |
| Detroit, MI | San Juan, PR |
| Detroit, MI | New York City, NY (Metropolitan Area) |
| Detroit, MI | Ponce, PR |
| Hartford, CT | Orlando, FL |
| Hartford, CT | Fort Myers, FL |
| Hartford, CT | Miami, FL (Metropolitan Area) |
| Hartford, CT | Tampa, FL (Metropolitan Area) |
| Hartford, CT | Charlotte Amalie, VI |
| Hartford, CT | San Juan, PR |
| Hartford, CT | Ponce, PR |
| Hartford, CT | Aguadilla, PR |
| Houston, TX | New York City, NY (Metropolitan Area) |
| Houston, TX | Ponce, PR |
| Kansas City, MO | Ponce, PR |

| City Market 1 | City Market 2 |
|---|---|
| Las Vegas, NV | San Juan, PR |
| Las Vegas, NV | Miami, FL (Metropolitan Area) |
| Las Vegas, NV | Los Angeles, CA (Metropolitan Area) |
| Las Vegas, NV | Ponce, PR |
| Los Angeles, CA (Metropolitan Area) | San Juan, PR |
| Miami, FL (Metropolitan Area) | San Diego, CA |
| Miami, FL (Metropolitan Area) | San Juan, PR |
| Miami, FL (Metropolitan Area) | Richmond, VA |
| Miami, FL (Metropolitan Area) | Raleigh/Durham, NC |
| Miami, FL (Metropolitan Area) | New Orleans, LA |
| Miami, FL (Metropolitan Area) | Los Angeles, CA (Metropolitan Area) |
| Miami, FL (Metropolitan Area) | Philadelphia, PA |
| Miami, FL (Metropolitan Area) | Charlotte Amalie, VI |
| Miami, FL (Metropolitan Area) | Ponce, PR |
| Milwaukee, WI | San Juan, PR |
| Milwaukee, WI | Ponce, PR |
| Minneapolis/St. Paul, MN | Ponce, PR |
| Nashville, TN | New York City, NY (Metropolitan Area) |
| Nashville, TN | San Juan, PR |
| Nashville, TN | Miami, FL (Metropolitan Area) |
| Nashville, TN | Ponce, PR |
| Nashville, TN | Aguadilla, PR |
| New Orleans, LA | San Juan, PR |
| New Orleans, LA | Ponce, PR |
| New York City, NY (Metropolitan Area) | Tampa, FL (Metropolitan Area) |
| New York City, NY (Metropolitan Area) | New Orleans, LA |
| New York City, NY (Metropolitan Area) | Miami, FL (Metropolitan Area) |
| New York City, NY (Metropolitan Area) | Los Angeles, CA (Metropolitan Area) |
| New York City, NY (Metropolitan Area) | Las Vegas, NV |
| New York City, NY (Metropolitan Area) | Sacramento, CA |
| New York City, NY (Metropolitan Area) | Fort Myers, FL |
| New York City, NY (Metropolitan Area) | San Juan, PR |
| New York City, NY (Metropolitan Area) | Christiansted, VI |
| New York City, NY (Metropolitan Area) | Ponce, PR |
| Orlando, FL | New York City, NY (Metropolitan Area) |
| Orlando, FL | San Juan, PR |
| Orlando, FL | Richmond, VA |
| Orlando, FL | Charlotte Amalie, VI |
| Orlando, FL | Salt Lake City, UT |
| Orlando, FL | Ponce, PR |
| Pensacola, FL | San Juan, PR |
| Philadelphia, PA | San Juan, PR |
| Phoenix, AZ | Miami, FL (Metropolitan Area) |

| City Market 1 | City Market 2 |
| --- | --- |
| Pittsburgh, PA | San Juan, PR |
| Ponce, PR | Raleigh/Durham, NC |
| Ponce, PR | Richmond, VA |
| Salt Lake City, UT | San Juan, PR |
| San Francisco, CA (Metropolitan Area) | Miami, FL |
| Tampa, FL (Metropolitan Area) | San Juan, PR |
| Tampa, FL (Metropolitan Area) | Charlotte Amalie, VI |
| Tampa, FL (Metropolitan Area) | Christiansted, VI |
| Washington, DC (Metropolitan Area) | Orlando, FL |
| Washington, DC (Metropolitan Area) | Miami, FL (Metropolitan Area) |
| Washington, DC (Metropolitan Area) | San Juan, PR |
| Washington, DC (Metropolitan Area) | Fort Myers, FL |
| Washington, DC (Metropolitan Area) | Charlotte Amalie, VI |
| Washington, DC (Metropolitan Area) | Christiansted, VI |
| Washington, DC (Metropolitan Area) | Ponce, PR |
| New Orleans | Boston |
| New Orleans | New York |
| New Orleans | Fort Lauderdale |

In addition, the two airlines currently compete head-to-head on routes.



*See* Exhibits 13, 16, 20, 24, 27, 31, 34, 37, 40, 43, 46, 49, 52, 56, 60, 64, 67, 71, 77, 81, 86, 89, 93, 98.[4]  Plaintiffs have not amended or modified their Responses to Interrogatory No. 8.

### IV.   Facts Regarding Individual Plaintiffs

#### A.   Katherine Arcell

37.   Flown Spirit: Arcell has never flown Spirit.  Exhibit 10 at 69:6-8, 73:3-5; Exhibit 11 at 3.

38.   Future Plans to Fly Spirit: Arcell has no Spirit flights booked, and has no concrete plans to fly Spirit in the future.  Exhibit 10 at 73:6-14.  Arcell would consider flying Spirit if it "goes to the correct place" and "if it helps [her]."  *Id.*

39.   Spirit Flights in Rog 8 Routes:  Since November 2018, Arcell has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8.  Exhibit 12 at 6-8.

40.   Travel Agent: Arcell is a retired travel agent.  Exhibit 10 at 25:18-20.  Arcell founded her travel agency, A&W Travel, in 1998, which she co-owned with Plaintiff Christine Whalen.  *Id.* at 19:10-14, 29:23-30:1.  A&W Travel dissolved in 2020 during the pandemic and Arcell currently has no revenue from A&W Travel or other travel agency. *Id.* at 20:9-21:3, 54:20-55:1.  Arcell is retired, indicated she has no intention of working as a travel agent in the future, and has no specific plans to return to the industry in the future. *Id.* at 25:18-26:2.

41.   Compensation: Arcell is retired and no longer receives any income from a travel agency.  *Id.* at 53:22-54:24.

---

[4] All at 5-9.

42.   <u>Articulated Harm:</u>  When asked how the merger would impact her personally, Arcell testified that if she were to "be in future travel" that she would like to have the option to choose a "less expensive as opposed to a more expensive ticket."  *Id.* at 108:22-110:20.  Arcell admitted the Spirit-JetBlue merger would not impact her business in any way, but would "impact [her] personally, and it would impact people in general." *Id.* at 55:4-9.  Arcell drafted an individualized response to Interrogatory 7, in addition to the response which was similar for all Plaintiffs.  *See supra* ¶ 35.

> I personally would like to have the option of a very low fare airline so that I can decide if I want to pay a higher ticket price with more services or save money and pay less with less services. If Jet Blue succeeds in taking over Spirit, that option would go away.

Exhibit 13 at 4.

43.   Arcell testified that her reason for opposing mergers, in part, is due to being furloughed by Delta following its merger with Pan American Airlines.  Exhibit 12 at 16:4-7, 107:11-108:22, 107:25-108:7.

**B.   Jose M.  Brito**

44.   <u>Flown Spirit:</u>  Brito has never flown Spirit.  Exhibit 14 at 105:23-106:12; Exhibit 15 at 3.

45.   <u>Future Plans to Fly Spirit:</u>  Brito has no Spirit flights booked, and has no concrete plans to fly Spirit in the future.  Exhibit 15 at 106:7-23.

46.   <u>Spirit Flights in Rog 8 Routes:</u>  Since November 2018, Brito has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8.  Exhibit 14 at 105:23-106:12.

47.   <u>Travel Agent:</u>  Brito is the sole owner of a travel agency, Deluxe Travel, with five employees.  *Id.* at 15:7-16, 19:12-14.

20

48.     <u>Compensation:</u> Deluxe Travel charges service fees of $35-50 per ticket booked.  *Id.* at 21:17-25.  Deluxe Travel also received commissions for booking certain international airline tickets, as well as from certain international sales through ticket consolidators, such as Nexion.   *Id.* at 25:7-26:17.   Deluxe Travel makes higher commissions when the prices of tickets are higher.  *Id.* 63:2-11 (when asked, "if the price of a ticket is higher, you would receive a larger share of commission?", Brito responded: "Correct." ).

49.     <u>Articulated Harm:</u> Brito testified that the harm from the merger "would raise fares that would cost me more money to fly."   *Id.* at 108:7-9.  Brito drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs.  *See supra* ¶ 35. Brito wrote:

> There will be higher airfare costs and less service, and more airline flight cancellations.  After the merger, if it goes through, the airlines will have more power to control flights, fares, and the quality of service.

Exhibit 16 at 4.

50.     Brito agreed that the two merger challenges in which certain Plaintiffs, including Brito, reached a settlement—*D'Augusta v. Northwest Airlines Corp.*, and *Grace v. Alaska Air Grp.*—had a "favorable outcome."  Exhibit 14 at 117:6-118:4.

### C.     Jan-Marie Brown

51.     <u>Flown Spirit:</u> Brown has never flown Spirit.  Exhibit 19 at 20:3-5, 73:16-18, 78:13-79:2; Exhibit 18 at 3.

52.     <u>Future Plans to Fly Spirit:</u> Brown has no Spirit flights booked, and has no concrete plans to fly Spirit in the future.  Exhibit 17 at 79:3-6.

53.     Spirit Flights in Rog 8 Routes: Brown has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8.  Exhibit 19 at 6-7; Exhibit 17 at 73:4-11.

54.     Travel Agent: Brown works as a travel manager for the musical group the Beach Boys.  Brown gave inconsistent responses as to whether she is a travel agent.  In her verified response to Defendants' Interrogatory No. 5, Brown stated she has been a "travel agent" for "Meleco Travel" from "January 10th, 2010, to present," and receives a salary from that agency and "share[s] in the income from commissions."  Exhibit 20 at 2.  Brown's deposition, however, and in her verified responses to Defendants' Request for Admission No. 4, Brown agreed that she is "not presently employed as a travel agent" and she does not "sell travel" to the general public.  Exhibit 19 at 20:9-23:12; Exhibit 18 at 3.  Brown further testified that Meleco Travel is "not a travel agency," that she has no ownership stake in the company, and that she books travel only for the Beach Boys, their employees, certain family members, and other musicians and personnel.  Exhibit 17 at 41:23-42:5, 50:24-52:14.

55.     Compensation:  Brown receives the "same salary" whether she books "a thousand flights" or "100 flights," "regardless of which airline people choose to fly," and "regardless of the ticket price that is paid."  *Id.* at 42:2-17, 52:16-53:2, 69:21-70:11.

56.     Miscellaneous: Brown testified that she has a medical condition that was impacting her long-term memory, which began in the last "three months" as of the date of her deposition.  *Id.* at 111:4-24.

57.     Articulated Harm: Brown asserted that the merger will make prices higher, and that airline mergers have resulted in "reduced routing," "reduced number of seats," and

more crowded flights.  *Id.* at 127:8-128:24.  Brown confirmed that this only her "opinion based on past experience."  *Id.* at 130:5-16.  Brown drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs.  *See supra* ¶ 35. Brown wrote:

> Fewer flights from the merger equals less availability.  In my line of work, this is a significant issue.  There will likely be higher prices, less customer service, and fewer choices of carriers.  The lack of healthy competition between airlines is damaging to any person who flies anywhere or works in the industry.

Exhibit 21 at 4.

### D.   Rosemary D'Augusta

58.   <u>Flown Spirit:</u> D'Augusta has never flown Spirit.  Exhibit 22 at 46:14-16; Exhibit 22 at 3.

59.   <u>Future Plans to Fly Spirit:</u> D'Augusta has no Spirit flights booked, and has no concrete plans to fly Spirit in the future.  Exhibit 21 at 76:11-21, 78:18-21.

60.   <u>Spirit Flights in Rog 8 Routes:</u> Since November 2018, D'Augusta has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8. Exhibit 21 at 55:2–56:17; Exhibit 23 at 6–7.

61.   <u>Travel Agent</u>: D'Augusta is not currently employed as a travel agent and does not own a travel agency.  Exhibit 22 at 3; Exhibit 21 at 16:10-13

62.   D'Augusta worked in the travel agency industry for several years, including as the owner of her own travel agency; however, she closed her company due to the COVID pandemic and has no plans to engage in the travel agency industry in the future.  Exhibit 21 at 12:9-13:5, 15:18-17:13.  The last time D'Augusta sold a ticket was in early 2019.  *Id.* at 20:10-14.

63.    <u>Compensation</u>:  D'Augusta is retired and no longer receives any income from a travel agency.  *Id.* at 12:9–13:5, 15:18–17:13, 19:12-18.

64.    <u>Articulated Harm:</u> D'Augusta asserted that the harm resulting from the merger will be that prices will go up, reduce consumer choice of flights, and eliminate jobs. *Id.* at 89:10–90:3.  She stated that she "speculate[s]" the merger will affect her and "the general public" because it will eliminate "all the goods and services that Spirit offers in the marketplace."  *Id.* at 79:7–16.  D'Augusta's travel agency is no longer in operation, and she testified it will not be impacted by the merger.  *Id.* at 19:19-22.  D'Augusta drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs.  *See supra* ¶ 35. D'Augusta wrote:

> This merger will create fewer choices as flights and routes are consolidated and will contribute to reduced flexibility to manage longer or forced layovers or inconvenient travel schedules. Less competition increases fares and hurts my pocketbook, opportunities, and lifestyle. Less customer service from overstaffing reductions affects my well-being as the quality of services declines. Integrating different airline cultures and systems with less staffing creates longer wait times, difficulty in resolving issues, and limited support during disruptions which harms my travel experience and increases unhealthy stress conditions in travel.

> Merging different airline systems, such as reservations, baggage handling, and flight schedules, invites disruptions at all levels and causes me both inconvenience and expense to resolve lost or delayed baggage, flight cancellations, or difficulties in transferring between flights. Organizational and operational change hurts employee morale which directly impacts my quality of travel as service and attitudes decline. I am affected by the demeanor and attitude of agents tasked with helping me but are unable or resentful due to merger staffing changes.

> I become the victim of the airlines' overall reductions and the airlines' elimination of competition. Merged airlines may discontinue or reduce service to certain regional or secondary airports to prioritize more profitable routes. This can impact more densely traveled airports such as my three airports, San Francisco, Oakland, and San Jose. This will directly affect the quality of my travel experience and dampen any future desire to fly as merged airlines discontinue and reduce flights and airport service. Merged airlines may implement new policies or modify existing ones, such as baggage fees, boarding procedures, or seating arrangements. This will burden and deteriorate the quality of my overall travel experience.

24

Exhibit 24 at 4–5.

65.    <u>Miscellaneous:</u> If D'Augusta successfully prevented the merger but did not obtain financial compensation, she would not find that to be a satisfactory outcome. Exhibit 21 at 88:6–10.  D'Augusta did not read the complaint before it was filed.  *Id.* at 91:11–15.

**E.    Brenda K.  Davis**

66.    <u>Flown Spirit:</u> Brenda Davis has not flown Spirit in the last eight years. Exhibit 25 at 65:17-66:1.  Davis provided no testimony that she has ever flown Spirit.

67.    <u>Future Plans to Fly Spirit:</u> Davis has no future Spirit flights booked, and has no concrete plans to fly Spirit.  *Id.* at 65:17-66:14; 77:23-78:13.  Davis says she intends some day to fly Spirit to Las Vegas with her brother.  *Id.* at 65:17-66:14.  Davis says she "would not be opposed to [flying] Spirit."  *Id.* at 65:17-66:14.

68.    <u>Spirit Flights in Rog 8 Routes:</u> Davis has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8.  *Id.* at 65:17-66:1; Exhibit 26 at 7-8.

69.    <u>Travel Agent:</u> Davis opened her own travel agency in 1990, which is still in business today.  Exhibit 25 at 14:3-4, 16:16-17:18.  However, Davis has been "semi-retired" since 2016.  *Id.* at 17:19-24; Exhibit 27 at 2.  Davis estimated that her agency serviced around 30-50 customers in 2016 and the number of customers the agency services has gradually trickled down since 2016.  Exhibit 25 at 18:9-20.  She has not sold an airline ticket in the last five years.  Exhibit 27 at 2.

70.    <u>Compensation:</u> Davis used to charge a $30 flat fee per airline ticket booked. Exhibit 25 at 24:13-25:8.  In 2022, she did not book travel for any customers besides the

approximately 40 people traveling for her daughter's wedding. *Id.* at 18:21-19:13. Since her semi-retirement from the travel industry, Davis made an estimated total of $5,000-$6,000 in revenue from her travel agency, and did not believe that she received any revenue from the agency in 2022. *Id.* at 20:16-24, 40:24-41:19.

71.  <u>Articulated Harm:</u> Davis testified that she would be personally impacted by the merger "if it increased the fares, if [] the service is cut." *Id.* at 42:21-43:5. Specifically, she noted that "service may be cut in Dallas for Spirit," "Spirit…keeps the prices down in [Dallas]," and the merger "would maybe eliminate the low-cost carriers." *Id.* at 43:18-44:3. Davis drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. Davis wrote:

> This merger will harm American travelers by driving up prices, eliminating low-fare carriers, making less flights available, eliminating competition, reducing choices for travelers and eliminating low cost capacity.

Exhibit 27 at 4.

### F.  Pamela Faust

72.  <u>Flown Spirit:</u> Plaintiff Pamela Faust has never flown on Spirit. Exhibit 28 at 64:10-15; Exhibit 29 at 3.

73.  <u>Future Plans to Fly Spirit:</u> Faust has no future Spirit flights booked, and has no concrete plans to fly Spirit. Exhibit 28 at 99:21–101:9. Faust is considering flying Spirit to Los Angeles in September or October, although she has no flights booked, no confirmed dates of travel, and does not have "anything in the plans." *Id.* at 99:21–101:9, 103:24–104:21. Faust prefers to fly nonstop, and her preferred airline is Delta. *Id.* at 77:18–23.

74.    <u>Spirit Flights in Rog 8 Routes:</u> Faust has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8.  Exhibit 30 at 6–8; Exhibit 28 at 59:16-21.

75.    <u>Travel Agent:</u> Faust has been a travel agent for nearly forty years.  Exhibit 28 at 12:4–6; 12:22–23.  Her company, based in Cincinnati, Ohio, is called Silhouette Tours and Travel, Inc.  *Id.* at 12:17–19, 13:3.

76.    <u>Compensation:</u> Faust does not receive commissions from booking airline travel.  *Id.* at 44:4-10.  Instead, she charges her clients flat service fees ranging from approximately $40 to $50 per airline ticket booked, and may charge more if a booking "takes a lot of planning to look at multiple choices, different hotel options." *Id.* at 45:16–46:5.

77.    <u>Articulated Harm:</u> Faust testified that Spirit does not service Cincinnati but explained that the merger could have a "trickle-down effect" that "will affect lots of people, not just in [a] particular hundred-mile zone of that airport," creating a "hardship" for her and her clients.  *Id.* at 52:2-54:2.  Specifically, she stated merger could drive her clients to choose alternative modes of transportation and eliminate her service if flight options disappear. *Id.* at 54:22–25.  Faust drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35.  Faust wrote:

> This merger will change the market structure in the country.  JetBlue and Spirit directly compete on routes now and their merger will more than likely increase their market power and thus their prices.  The fact that there will be less competition means that Plaintiffs will pay more for an airline ticket.

Exhibit 31 at 3–4.

### G.   Carolyn Fjord

78.   <u>Flown Spirit:</u> From November 2018 to the present, Carolyn Fjord has not flown Spirit.  Exhibit 33 at 7-8.

79.   <u>Future Plans to Fly Spirit</u>: Fjord has no future Spirit flights booked, and has no concrete plans to fly Spirit.  Exhibit 32 at 52:10-54:16.  Fjord is interested in flying to Las Vegas and she wants to travel more when she retires, but she has not purchased any tickets on Spirit or any other airline, and has no confirmed dates of travel.  *Id.*

80.   <u>Spirit Flights in Rog 8 Routes:</u> Since November 2018, Fjord has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8.  Exhibit 33 at 7-8.

81.   <u>Travel Agent:</u> Fjord is the "sole proprietor of [her] travel agency." Exhibit 32 at 26:20-21.  She is "trying to retire" and is not seeking new clients.  *Id.* at 15:19-25.

82.   <u>Compensation:</u> As a travel agent, Fjord charges flat service fees to her clients directly, and sometimes she receives commissions on business-class tickets.  *Id.* at 27:25–33:15.

83.   <u>Articulated Harm:</u> Fjord testified that she is bringing this lawsuit because "I don't want another merger.  I don't want another – I want to keep Spirit around.  I don't want them to cut the capacity, cut any flights, fire their employees.  I would love to have Spirit stay around.  They're in my – they're in my area and they go to places I want to go." *Id.* at 77:20-78:2.  Fjord further testified that she "believe[d] that probably the low fare" to, for example, New York or Detroit, would no longer be available.  *Id.* at 79:4–8, 82:8-16.  Fjord further testified that she does not want the merger to go through because it "would just be hard for people to travel," as a result of increased fares.  *Id.* at 81:5–16.  Fjord wants

28

"to maintain the low-cost options for my clients and for myself, [and] my friends." *Id.* at 83:15-84:7.

        a.     Fjord drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. Fjord wrote:

> Opportunities for less expensive alternatives for myself, family, friends, and clients travel will be eliminated. I travel from Oakland to Detroit at least once a year and like to have the Oakland Detroit option. Spirit works to travel one way with good airfares. We will return with stops in St Louis and Loveland, Colorado using good one way airfares. For example, I checked Denver Oakland on Spirit for August 23rd and for one way airfare of $63.19 I can visit my son in Colorado on our return.

Exhibit 34 at 4.

84.    <u>Miscellaneous:</u> When asked if she was familiar with the co-plaintiffs, Fjord testified that she was, and knows them from past merger cases. Exhibit 32 at 79:22-80:6. She stated "we challenge mergers. It's what I do." *Id.* at 79:22-80:6.

### H.    Donald Freeland

85.    <u>Flown Spirit:</u> Freeland has not flown on Spirit since November 2018, and has flown Spirit only once, in 2015. Exhibit 36 at 7-8; Exhibit 35 at 30:9-16, 32:12-14.

86.    <u>Future Plans to Fly Spirit:</u> Freeland has no future Spirit flights booked, and has no concrete plans to fly Spirit. Exhibit 35 at 44:15-45:19. After he retires, Freeland "would consider" flying from Los Angeles to Fort Lauderdale on JetBlue, American, Delta, United, or Spirit. *Id.* at 82:6-11.

87.    <u>Spirit Flights in Rog 8 Routes:</u> Since November 2018, Freeland has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8. Exhibit 36 at 7-8.

88.     Travel Agent: Freeland owns two travel agencies: (1) the TravelStore and (2) ChicLuxury Cruises.   Exhibit 35 at 18:22-20:3.   Freeland recently purchased ChicLuxury Cruises, which does not "really sell airline tickets directly." *Id.* at 12:15-25, 13:22-14:22.

89.     Compensation: ChicLuxury Cruises does not sell airline tickets directly. Airline tickets are provided by cruise lines, and Freeland receives scaling fees for booking airline tickets from cruise lines, tour operators, and excursion providers. *Id.* at 14:9-15:5, 20:6-20; Exhibit 37 at 2.  TravelStore is not "really doing … any business at this point," and Freeland does not receive income from TravelStore.  Exhibit 35 at 20:13-18, 46:25-47:9.

90.     Articulated Harm: Freeland testified that the merger would reduce his "options for flying" and would result in decreased capacity and higher prices. *Id.* at 50:8-53:16.  While Freeland stated his travel agency doesn't "really sell airline tickets directly" and that cruise lines usually provide airline tickets on trips he books for clients, he asserted that some clients may choose not to book a cruise "because the total cost [would be] too much, and [he would] therefore lose the revenue on the cruise." *Id.* at 14:9-13, 20:11-12, 50:8-16, 52:17-53:16.

         a.     Freeland testified that previous mergers have affected him because he has "had to pay for baggage charges on flights, which [he] never had to do prior to some of the[] mergers taking place." *Id.* at 64:5-10.  Freeland's assertions regarding the consequences of the present merger—"decreased capacity and higher fare prices and poorer service"—were based on his understanding of the effects of prior mergers, saying "[he] believe[s] there has been some negative results as a result of some of these

mergers," and "[he] would talk more in general terms that the unbundling of services and charging for them is a result of a consolidation in the industry, which has resulted in higher prices for consumers." *Id.* at 47:16-48:5, 63:12-64:4.

        b.      Freeland drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs.  *See supra* ¶ 35.  Freeland wrote:

> If this merger is consummated I will suffer higher prices and poorer service flying from the west coast.  We may have clients who, because of higher flight costs, may opt to not take a cruise and we would lose a commission by not selling the cruise.

Exhibit 37 at 4.

       **I.**     **Donna Fry**

91.    <u>Flown Spirit:</u>  Since 2015, Fry has not flown Spirit.  Exhibit 38 at 41:25-42:5.

92.    <u>Future Plans to Fly Spirit:</u>  Fry has no future Spirit flights booked, and has no concrete plans to fly Spirit.  *Id.* at 52:5-13; 77:23-24.  Fry said, "Spirit routes have not been accessible to me for the -- because of the areas that I have lived and the places that I have been traveling to."  *Id.* at 78:13-16.  Fry does not expect to fly Spirit within the next 6 months.  *Id.* at 52:5-13; 77:23-24.

93.    <u>Spirit Flights in Rog 8 Routes:</u>  Fry has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8.  *Id.* at 41:25-42:5; Exhibit 39 at 7-8.

94.    <u>Travel Agent:</u>  Fry is a travel agent, and the owner of All Ways Travel, of which Fry is the sole owner.  All Ways Travel has no employees apart from Fry.  Exhibit 38 at 13:4-14:11, 15:7-22.

95.    Compensation: Fry estimated that 95% of her travel agency's revenue comes from commissions from booking travel experiences (cruises, hotels, car rental companies), and the remainder (an estimated 5%) comes from flat service fees. *Id.* at 17:25-18:24. All Ways Travel's only source of revenue for airfare, regardless of airline, is the flat service fees charged to customers, which does not change based on the airline booked. *Id.* at 33:6-18 ("[W]hether my clients fly Airline A or Airline B does not really affect my income. I would charge them a service fee."); *id.* ("Q: Got it. So whether your clients flew Spirit or United, you still receive the same fee? Fry A: Correct.").

96.    Articulated Harm: Fry states that the harm resulting from mergers in the airline industry is that routes are cancelled, causing the number of seats to decrease and ticket prices to go up. *Id.* at 57:25-58:18. Fry also provided an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. Fry wrote:

> The merger between JetBlue and Spirit will reduce the number of airline choices, will eliminate the low-cost option that Spirit offers, will reduce the number of flights offered because when airlines merge they do not continue duplicate routes and do not continue all the routes that both airlines offered before merging, and service may be discontinued at some airports. I have experienced all of these injuries in past airline mergers.

Exhibit 40 at 4.

**J.    Gabriel Garavanian**

97.    Flown Spirit: G. Garavanian has flown Spirit since November 2018. Exhibit 42 at 1, 7, 13, 14, 19, 20.

98.    Future Plans to Fly Spirit: As of the close of fact discovery, G. Garavanian has no future Spirit trips booked, and has no concrete plans to fly Spirit. Exhibit 45 at 83:8-16.

99.     Spirit Flights in Rog 8 Routes: Since November 2018, G. Garavanian has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8. Exhibit 42 at 1, 7, 13, 14, 19, 20.   G. Garavanian testified that the flights listed in his verified response to Interrogatory No. 1 were not a complete list of the flights he has taken since 2015.  Exhibit 45 at 28:5-29:5.

100.    Travel Agent: G. Garavanian has owned various iterations of a travel agency with his brother since 1986.   *Id.* at 16:17-18:2.   G. Garavanian recently started offering travel services as an independent contractor with Thomas Hogan in February 2023. *Id.* at 89:1-20.

101.    Compensation: G. Garavanian's only current source of revenue from airline ticket sales is a service fee, the amount of which is his "discretion" to decide.  *Id.* at 102:3-103:5.  G. Garavanian charges a higher service fee for both more expensive, "individually" sold airline tickets, as well as for airline tickets purchased as part of the larger tour or cruise package.  *Id.* at 104:18-107:8.  (G. Garavanian "A:  You know, whatever the price is for the airline ticket, the fee will be higher, okay").

102.    Articulated Harm: G. Garavanian testified that the merger would impact his current travel business by resulting in increased prices, which would result in customer being unable "to afford to go" to certain destinations or on certain trips.  *Id.* at 108:2-19. This assertion was based on his "experience" with airline prices following airline mergers. *Id.* at 111:2-112:13.  G. Garavanian could not identify any current customers who had traveled or requested to travel on the routes that he identified as having increased prices following airline mergers.  *Id.* at 110:20-114:20.   He also asserted that post-merger integration would cause to trip interruptions, computer system interruptions, and frequent

33

flyer program issues. *Id.* at 116:16-120:19. G. Garavanian drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. G. Garavanian wrote:

In addition:

1) Prices will go up in the markets where they are merging.

2) The process of airlines merging will cause cancellations and double bookings. Jet Blue has code shared with American out of Boston. The computer systems did not work together resulting in the airline cancelling reservations and especially pre-assigned seats. Every time there was a problem, the airlines told clients and passengers go to other airline, Jet Blue blaming American and American blaming Jet Blue. But the passenger's problem was not solved.

3) Cancelled flights. When a flight is cancelled, the airline issues vouchers. In previous code share number 2, JetBlue will tell the passenger to go to Spirit for vouchers. If the client goes to Spirit, he is then told to go to JetBlue. The vouchers are almost impossible to use.

4) The crews will be fighting with each other because of different pay scales. This was evident in the American and USAir merger. They still have flight crew problems

5) The GDS system used by travel agencies will be penalized for issuing tickets by either airline. They do this by issuing debit memos. JetBlue would charge me 25 dollars on tickets saying that I did not write "non-refundable" in the endorsement box of an electronic ticket. The GDS writes it in automatically. If you ask for proof from an airline they will not give you any. When a debit memo is not paid, the airline will escalate charges and threaten to take away the travel agency's ability to issue tickets.

6) The new airline will have 2 accounting systems which will cause more havoc.

7) The 2 frequent flyer programs are completely different and no matter how they try to combine them, neither the JetBlue nor Spirit customers are going to be happy.

8) Air routes will be more seasonal. For example, the Boston to Myrtle Beach route will operate only 8 months a year and people will have no alternative flights to choose from.

9) JetBlue will cancel routes completely if it does not feel the route is profitable. So a route that Spirit had previously serviced will be completely discontinued.

10) Spirit is a low cost airline with no complimentary snack or beverage service. Jet Blue does give a snack and 1 beverage. Will this be eliminated?

11) Luggage: JetBlue allows 50 pounds and Spirit allows 40 pounds.  One will be eliminated.

Exhibit 43 at 4-6.

### K.     Harry Garavanian

103.     <u>Flown Spirit:</u>  H. Garavanian has never flown Spirit.  Exhibit 44 at 66:11-12; Exhibit 45 at 3.

104.     <u>Future Plans to Fly Spirit:</u>  H. Garavanian has no future Spirit flights booked, has no concrete plans to fly Spirit, and does not intend to fly in the near future.  Exhibit 44 at 68:9-14, 77:22-24, 84:12-86:4.  H. Garavanian testified he would "probably" be flying from the Boston area to Tampa to visit his son in the next year, and from Boston to Myrtle Beach to visit his brother, but he has not booked any tickets or chosen an airline.  *Id.*  He asserted "probably [] lean[s] towards Spirit" for those flights.  *Id.* at 78:10-22.

105.     <u>Spirit Flights in Rog 8 Routes:</u>  H. Garavanian has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8.  *Id.* at 66:11-12.

106.     <u>Travel Agent:</u>  H. Garavanian started Garavanian Travel in 1986, and sold the agency to a St. Louis business called Chi-Chi in December 2020.  *Id.* at 10:18-11:19.  H. Garavanian no longer works as a travel agent.  *Id.* at 13:24-14:2.

107.     <u>Compensation:</u>  H. Garavanian is retired and no longer receives any income from a travel agency.  *Id.* at 12:22-14:2.  H. Garavanian also testified that the merger "irrelevant" to his travel agency because it is no longer in business.  *Id.* at 50:7-24 ("It's irrelevant—not to be—this isn't to be snitty, it's really irrelevant because I'm out of business.").

108.     <u>Articulated Harm:</u>  H. Garavanian testified that the merger will impact him because he is planning to continue flying to Tampa and Myrtle Beach, but did not elaborate

on how his continued flying will be harmed by the merger.  *Id.* at 84:12-85:4.   H. Garavanian drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs.  *See supra* ¶ 35.  H. Garavanian wrote:

> I believe we will have less options for flight routes, especially Boston to Fort Lauderdale.  I in particular will have less options to fly into and out of Tampa from Manchester.

Exhibit 46 at 4.

109.   Miscellaneous:  Harry Garavanian did not know whether he read the Complaint before it was filed; he testified that he reviewed it "when it was issued."  Exhibit 44 at 83:16-84:11.

### L.   Yvonne Jocelyn Gardner

110.   Flown Spirit:  Since November 2018, Gardner not flown Spirit.  Exhibit 47 at 74:3-24; Exhibit 48 at 6-7.  Her last Spirit flight was in July 2015.  *Id.*

111.   Future Plans to Fly Spirit:  Gardner has no future Spirit flights booked, and has no concrete plans to fly Spirit.  Exhibit 47 at 72:10-12, 74:12-16.  Gardner said she "might" fly Spirit in future, but did not identify any routes, dates, or locations.  *Id.* Gardner's son works for United Airlines as a pilot and so she will "fly as [a space available passenger] if it's available."  *Id.* at 66:19-67:8, 79:6-24.  Gardner has taken about 15-20 flights on United Airlines ("United") since 2015, either for free or paid by her son.  *Id.* Gardner did not disclose these flights in her discovery responses and she could not identify the exact dates and routes for these flights.  *Id.* at 68:2-70:21; Exhibit 48 at 7.

112.   Spirit Flights in Rog 8 Routes:  Since November 2018, Gardner has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8. Exhibit 47 at 74:3-24; Exhibit 48 at 6-7.

113.    <u>Travel Agent:</u> Gardner works as a travel consultant for Travel Planners, but has done very little work over the past two years due to a long-term illness.  Exhibit 47 at 12:8-13:13.  From 1988 to 2018, Gardner owned a travel agency, Gateway Travel & Cruises.  *Id.* at 13:14-14:3.  It is "possible" that Gardner retires from being a travel agent in the next year or so.  *Id.* at 46:7-21.  Gardner produced no documents relating to her travel agent, despite testifying that records would exist on her email.  *Id.* at 50:2-52:14.

114.    <u>Compensation:</u> Gardner's travel agency was previously paid commission by airlines, but after airlines stopped paying commissions in 2005, Gardner's agency began charging the clients service fees instead.  *Id.* at 18:16-19:24.  Gardner charges higher fees for more expensive airfare.  *Id.* at 21:5-7.  Gardner made no money from her travel agency in 2022 or 2023.  *Id.* at 61:2-8.

115.    <u>Articulated Harm:</u> Gardner testified that she is interested in giving clients best service and the cheapest flight, and explained her goal is to ensure that "Spirit isn't taken away, and so I can give my clients the best service."  *Id.* at 114:13-22.  Gardner testified that she is "looking out for [her] clients" and wants them to have comfort and flight options.  *Id.* at 112:22-113:3.  Gardner drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs.  *See supra* ¶ 35.  Gardner wrote:

> I feel that this merger will result in higher prices and less service and more disgruntled passengers.

Exhibit 49 at 4.

116.    <u>Miscellaneous:</u>   Gardner could not recall whether she reviewed her discovery responses, including her RFA responses, before they were served, but testified that she "remember[ed] something about" her discovery responses.  Exhibit 47 at 55:6-25,

57:5-11.  Gardner produced no documents at all.  Wright Decl. ¶ 3.  Gardner further testified she did not have any control over whether lawsuits were filed on her behalf. Exhibit 47 at 113:4-25 ("[Q:] Are you saying that you don't have any control over whether you file a lawsuit [against airline mergers]?  Gardner A:  That's true, that's true.  I don't.").

  **M.** **Valerie Ann Jolly**

117. <u>Flown Spirit:</u> Jolly has not flown Spirit since November 2018.  Exhibit 50 at 66:2-67:10, 81:6-21; Exhibit 51 at 1, 6-7.  Jolly has never booked a personal Spirit flight, and has taken Spirit only once for business purposes.  Exhibit 50 at 81:25-82:16, 84:17-19.

118. <u>Future Plans to Fly Spirit:</u> Jolly has no future Spirit flights booked, and has no concrete plans to fly Spirit.  *Id.* at 71:3-6, 116:7-8.  Jolly stated that she "could fly to Las Vegas or to Minneapolis" in the future on Spirit and that she "will be looking at Spirit" when considering future travel.  *Id.* at 70:6-11, 140:15-17.  However, Jolly did not know whether Spirit still operates a flight between Dallas-Fort Worth (her home airport) or Las Vegas or between Dallas-Fort Worth and Minneapolis because she has not looked up those routes in several years.  *Id.* at 35:17-37:8; 67:11-68:7.

119. <u>Spirit Flights in Rog 8 Routes:</u>  Jolly has never flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8.  Exhibit 57 at 6-7 & 58 at 1-2.

120. <u>Travel Agent:</u> Jolly owns a travel agency, Riverside Travel as one of three equal co-owners.  Exhibit 56 at 24:2-25:6.

121. <u>Compensation:</u> Jolly receives a salary from her work at Riverside Travel. *Id.* at 26:3-14.  Jolly testified that she received commissions for airline tickets sold until around 2000 calculated as a percentage of the total flight fare, meaning that more expensive fares resulted in higher commissions.  *Id.* at 31:12-32:2 ("Q:  And so if a flight were more expensive, the percentage commission would be higher in total dollar value?  Jolly A:

Yes.")  Riverside Travel currently charges a $50 fee for booking customer flights, which has increased from $20 when the travel agency first started.  *Id.* at 32:3-33:21 (when asked if she charges "a flat fee that does not depend on the price of the ticket" or the airline—whether "United," "American," "JetBlue," or "Spirit"—Jolly responded:  "Correct.").

122.   <u>Articulated Harm:</u> Jolly asserted that when mergers occur, competition lessens, and that she did "not want to see another option leave from the Dallas airport" as prices may rise if Spirit were no longer in the market.  *Id.* at 141:14-142:11.  Jolly also testified that her kids would not be able to afford flying absent Spirit's low fares.  *Id.* Jolly drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs.  *See supra* ¶ 35.  Jolly wrote:

> When airlines merge, prices increase, options decrease, and service becomes minimal.  Frequent flyer programs are devalued.  I have experienced losses from previous mergers.  There is no reason to think I won't suffer injuries from a Jet Blue [sic] and Spirit merger.

Exhibit 52 at 4.

123.   <u>Miscellaneous:</u> Jolly agreed that she would "sue to block any airline merger" because she thinks "airline mergers are bad as a whole." Exhibit 56 at 126:4-9.

**N.   Michael C.  Malaney**

124.   <u>Flown Spirit:</u> Malaney has never flown Spirit.  Exhibit 53 at 20:4-7, 76:6-8; Exhibit 54 at 3.

125.   <u>Future Plans to Fly Spirit:</u>  Malaney has no future Spirit flights booked, and has no concrete plans to fly Spirit.  Exhibit 53 at 68:17-25, 76:17-19.

126.   <u>Spirit Flights in Rog 8 Routes:</u> Malaney has never flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8.  *Id.* at 20:4-7; Exhibit 55 at 6.

127.   <u>Travel Agent:</u> Malaney is not a travel agent anymore.  Exhibit 53 at 21:2-16.  Malaney pleaded guilty to felony larceny by conversion for stealing $25,000 intended to book a client's trip to Aruba, which contributed to him leaving the travel agent industry altogether in 2015.  *Id.* at 50:4-58:21.

128.   <u>Compensation:</u> Malaney is retired from the travel industry and no longer receives any income from a travel agency.  *Id.* at 21:2-16, 59:6-8.

129.   <u>Articulated Harm:</u> Malaney did not draft an individualized response to Interrogatory 7.  *See supra* ¶ 35; Exhibit 56 at 3-4.

**O.   Lenard Marazzo**

130.   <u>Flown Spirit:</u> Marazzo has never flown Spirit.  Exhibit 57 at 28:13-14, 44:10-12; Exhibit 58 at 3.

131.   <u>Future Plans to Fly Spirit:</u> Marazzo has no future Spirit flights booked, and has no concrete plans to fly Spirit.  Exhibit 57 at 28:19-29:10 (Q: "Do you have any plans to fly Spirit as of today?  I don't have anything concrete as of today.").  Marazzo "look[s] at Spirit regularly," and his working adult daughter "flies Spirit regularly" and he has paid for his daughter's tickets.  *Id.*  Marazzo also stated that when he considers flying a route he knows Spirit flies on, he looks at Spirit's website to see whether they offer the lowest fare, but explained that American is his preferred airline.  *Id.* at 20:11-15, 60:12-19.

132.   <u>Spirit Flights in Rog 8 Routes:</u> Marazzo has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8.  Exhibit 57 at 44:10-12; Exhibit 65 at 6-7, 9-10, 12.

133.   <u>Travel Agent:</u>  Marazzo formerly owned a travel agency, which he closed in 2008.  Exhibit 57 at 14:2-15:12.  He testified that he and his son are considering re-opening a travel business which would organize events in and around Reno, Nevada.  *Id.*

15:19-23, 58:23-25.  Marazzo has taken no steps to open that business, however, and does not know when (if ever) that business would open.  *Id.* at 54:25-57:19.

134.    <u>Compensation</u>:  Marazzo has not worked in the "travel agency business" since 2008, and therefore has not received any income by working for a travel agency since that time.  *Id.* at 14:2-15:12; Exhibit 60 at 1-2.

135.    <u>Articulated Harm:</u>  Marazzo testified that he believes the harms he will experience from the merger are higher fares, and fewer travel options.  Exhibit 57 at 52:16-55:4.  Marazzo drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs.  *See supra* ¶ 35.  Marazzo wrote:  "The merger will result in higher fares and less choice in flights."  Exhibit 60 at 4.

136.    <u>Miscellaneous:</u>  Marazzo has reimbursed his daughter for nine flights she booked for herself on Spirit, but he did not accompany his daughter on those flights.  Exhibit 63 at 28:19-29:21; Exhibit 65 at 7, 11-12.  Marazzo has also purchased flights for his daughter on other airlines, which he did not include in his response to Defendants' Interrogatory No. 1.  Exhibit 57 at 48:1-9.

**P.    Lisa McCarthy**

137.    <u>Flown Spirit:</u> McCarthy has never flown Spirit.  Exhibit 61 at 62:2-3; 76:8-13; Exhibit 62 at 3.

138.    <u>Future Plans to Fly Spirit:</u> McCarthy has no future Spirit flights booked, and has no concrete plans to fly Spirit.  Exhibit 61 at 85:13-86:2.  McCarthy speculated that she "definitely would fly Spirit in the future," but also agreed she has not flown any ultra-low-cost carrier in the past eight years.  *Id.* at 86:6-16.

139.   <u>Spirit Flights in Rog 8 Routes:</u> Since November 2018, McCarthy has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8. *Id.* at 76:8-13; *see also* Exhibit 63 at 6, 11-12.

140.   <u>Travel Agent:</u> McCarthy is not presently employed as a travel agent and has never been employed as a travel agent.   Exhibit 64 at 1-2; Exhibit 61 at 12:10-15. McCarthy is not and has never been the whole or partial owner of a travel agency.   Exhibit 64 at 1-2.   McCarthy works for MAD Travel, a travel agency, where McCarthy works in the back office and handles administration—such as accounting, human resources, and marketing.   Exhibit 61 at 13:11-17, 14:22-15:5.   McCarthy plans to retire from MAD Travel "in the very near future." *Id.* at 104:11-17.

141.   <u>Compensation:</u>   McCarthy was not sure what her salary was, but believed it was around $73,000 annually.   *Id.* at 44:7-14.   McCarthy's salary remains the same regardless of MAD Travel's performance.   *Id.* at 44:23-25 ("Q: So regardless of [the travel agency's] performance in a given year, your salary remains the same?  McCarthy A.  That's correct.").

142.   <u>Articulated Harm:</u> McCarthy asserted the merger would generally result in higher prices, fewer available seats, and a decline in service.   She expressed concern for "other people's travels" because those individuals will not "be able to afford the non, low-cost carriers."   *Id.* at 87:1-89:22.   McCarthy drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35.  McCarthy wrote:

> I feel that this merger will result in less competition among airlines thereby creating a monopoly.  One of the largest low-cost competitors would be eliminated and competing low cost airlines would be cut in half, losing 50% of capacity and therefore fewer flight options on them.  There will be higher

airfares charged by all airlines, not just low-cost carriers, due to lessened competition.  There will be fewer flight options offered by all the airlines, not just the low-cost carriers.

Exhibit 64 at 5.

143.  <u>Miscellaneous:</u>  McCarthy's husband is the sole owner of MAD Travel. Exhibit 61 at 13:11-17, 14:22-15:5.

### Q.   Timothy Nieboer

144.  <u>Flown Spirit:</u>  Since November 2018, Nieboer has flown Spirit four times. Exhibit 66 at 6-7.[5]

145.  <u>Future Plans to Fly Spirit:</u>  Nieboer has no future Spirit flights booked, and has no concrete plans to fly Spirit.  Exhibit 65 at 78:18-80:1, 103:3-21.  Nieboer stated he has plans to fly in February and May on next year, but has no tickets booked, no destination chosen, and no dates set, and "can't guarantee" he would choose Spirit for those flights. *Id.*  When asked if he has a preference for flying Spirit, Nieboer said "No. Not at all" and, when his wife flies Spirit, "her back hurts a little bit in the seat."  *Id.* at 68:11-13, 70:13-14.

146.  <u>Spirit Flights in Rog 8 Routes:</u>  Since November 2018, Nieboer has not flown Spirit on any of the routes Plaintiffs listed in response to Defendants' Interrogatory No. 8.  Exhibit 66 at 7.

147.  <u>Travel Agent:</u>  Nieboer is not currently a travel agent, has never been a travel agent, and is not the owner of a travel agency.  Exhibit 65 at 11:9–13:5.  Nieboer works at

---

[5] On July 20, 2023 (32 days after Nieboer was deposed, and 22 days after the close of fact discovery), Plaintiffs served Nieboer's Second Supplemental Response to Interrogatory No. 1, which disclosed for the first time multiple flights Nieboer has taken on Spirit. *See* Exhibit 66 at 6-7.  Because this production was made after his deposition and after the close of fact discovery, Defendants were unable to question Nieboer about these flights.  In fact, Nieboer testified during his deposition that he could not recall whether he had flown Spirit since 2019.  Exhibit 65 at 77:20-78:5.

a construction company; inherited his mother's travel agency for "a month" before selling it; and has no intention of working as a travel agent.  *Id.* at 14:17-23, 17:8-10, 23:18-23.

148.   <u>Compensation</u>:  Nieboer receives no income from a travel agency.  *Id.* at 11:9–13:5.

149.   <u>Articulated Harm:</u>  When asked how the merger would affect him, Nieboer testified that mergers "only help the companies, not the public," and would result in less seats, higher prices, and "less opportunity to … fly certain destinations."  *Id.* at 82:6-83:10. Nieboer testified that his greatest personal concern is pricing.  *Id.* at 96:7-10.

Nieboer testified that he is bringing this lawsuit because his mother was a travel agent, and he believes she "passed literally because of what happened with the airlines previously.  She literally – the company was literally just struggling.  She literally had nothing to her name."  *Id.* at 15:23-16:3.  Nieboer's mother was previously involved in lawsuits in the airline industry.  *Id.* at 88:1-90:24.  Nieboer drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs.  *See supra* ¶ 35.  Nieboer wrote:

> This merger will result in higher travel fees and less flights available.

Exhibit 67 at 4.

### R.   Deborah Pulfer

150.   <u>Flown Spirit:</u>  Pulfer has never flown Spirit.  Exhibit 68 at 17:12-13, 36:20-21; Exhibit 69 at 3.

151.   <u>Future Plans to Fly Spirit:</u>  Pulfer has no future Spirit flights booked, and has no concrete plans to fly Spirit.  Exhibit 68 at 36:22-38:21.  Pulfer explained that she is interested in flying from Denver to Columbus in the future when she lives full-time in

44

Denver, even though Spirit does not offer a direct route on this flight, and that she may fly Spirit even though she has "nothing planned yet." *Id.*; Exhibit 72 at 1-5.

152.   <u>Spirit Flights in Rog 8 Routes:</u>  Pulfer has not flown Spirit on any of the routes Plaintiffs listed in response to Defendants' Interrogatory 8.  Exhibit 68 at 17:10-13; Exhibit 70 at 6-7, 11-13.

153.   <u>Travel Agent:</u> Pulfer is presently employed as a travel agent by Creative Vacations, a division of All-Travel, but she is no longer the whole or partial owner of a travel agency.  Exhibit 69 at 3; Exhibit 68 at 12:5-11, 55:15-22.  Pulfer initially testified that mergers in the airline industry had nothing to do with her closing her travel agency, but she admitted the opposite when shown a prior declaration in a separate airline merger case.  Exhibit 68 at 55:23-56:3, 113:16-116:8; *see* Declaration of Deborah Pulfer, *In re AMR*, No. 13-01392 (S.D.N.Y. June 24, 2017), ECF No. 149-9.  Pulfer does not plan to open another agency and plans to retire in the next six years.  Exhibit 68 at 56:4-11.

154.   <u>Compensation:</u> Pulfer charges her clients a flat service fee.  She does not receive commissions from airlines, but does earn commissions from cruises and other tours.  *Id.* at 56:25-57:14, 57:18-58:22.

155.   <u>Articulated Harm:</u> Pulfer testified that she believes mergers are harmful regardless of the context and that any merger in the airline industry is harmful.  *Id.* at 96:12-23.  Pulfer describes her litigation history as "citizens against mergers" because she "just [does not] believe in mergers." *Id.* at 107:5-7.  Pulfer testified that the harms from the merger are that prices will go up and flights and seating availability will be lower.  *Id.* at 49:15-52:7.  Pulfer also testified that she anticipated harm to her travel agency as a result

of the merger, asserting that fewer people will book trips because airline costs will increase, and that the merger will generally harm travelers.  *Id.* at 86:2-87:6, 127:5-128:16.

a.      Pulfer drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs.  *See supra* ¶ 35.  Pulfer wrote:

> The merger will reduce the number of low cost carriers, thus the major airlines will have one less to compete with.  This will affect everyone flying as cost will increase overall as the low cost carriers reduce.  It's a known fact: the more competitors, the more reasonable and fair pricing will be.  This is true of all industries and supply chains.

Exhibit 71 at 4.

### S.      Bill Rubinsohn

156.      <u>Flown Spirit:</u>  Rubinsohn has never flown Spirit.  Exhibit 73 at 60:6-8, 76:7-10; Exhibit 74 at 3.  Rubinsohn has never flown Spirit because Spirit has "[n]o schedules with -- with an opportunity for where [he] was going."  Exhibit 73 at 63:13-15.

157.      <u>Future Plans to Fly Spirit:</u>  Rubinsohn has no future Spirit flights booked, and has no concrete plans to fly Spirit.  *Id.* at 98:18-99:5, 99:25-100:5 ("Q:  So you don't have any plans to fly Spirit in the near future either?  A:  Correct.").

158.      <u>Spirit Flights in Rog 8 Routes:</u> Rubinsohn has not flown Spirit on any of the routes Plaintiffs listed in response to Defendants' Interrogatory 8.  *Id.* at 76:7-10; Exhibit 75 at 6-7; Exhibit 76 at 9-10.

159.      <u>Travel Agent:</u> Rubinsohn currently runs a travel agency, Rubinsohn Travel, which was started in 1992.  Exhibit 73 at 17:10-23.

160.      <u>Compensation:</u> Rubinsohn Travel charges a flat $40 service fee per airline ticket booked.  *Id.* at 44:14-18, 44:22-24 ("Q:  Okay.  So [your service fee]'s not based on

the cost of the flight in any way?  Rubinsohn A:  Nope.").  These service fees account for less than 2 percent of Rubinsohn Travel's total revenue.  *Id.* at 97:2-8.  Rubinsohn Travel also takes commissions from certain airlines.  *Id.* at 95:16-96:2.

161.    Articulated Harm:  Rubinsohn posited that the effect of the merger will be that, "if Spirit is gone, then the American Airlines price will probably go up."  *Id.* at 100:6-14.  Rubinsohn also testified that the merger would affect his business because the "number of people that [he] book[s] will probably go down if the prices of the air tickets go up," but could not say that with certainty.  *Id.* at 52:9-25.  Rubinsohn drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs.  *See supra* ¶ 35.  Rubinsohn wrote:

> The elimination of competition will allow the remaining airlines to raise their base flight cost as they won't be worried about losing a significant number of passengers.

Exhibit 77 at 4.

### T.    Sondra Russell

162.    Flown Spirit:  Russell has never flown on Spirit.  Exhibit 78 at 42:23-43:4 Exhibit 79 at 3.  She has not flown Spirit "because of the routing," meaning that the airline does not go to the destinations that she seeks to visit.  Exhibit 78 at 43:8-44:7.

163.    Future Plans to Fly Spirit:  Russell has no future Spirit flights booked, and has no concrete plans to fly Spirit.  *Id.* at 44:16-45:18.  Russell says that she has no Spirit "trips planned for the end of the year" but she speculates "can" fly Spirit "if the opportunity comes."  *Id.*  Russell typically books business class flights.  *Id.* at 31:13–17.

164.    Spirit Flights in Rog 8 Routes:  Russell has not flown Spirit on any of the routes Plaintiffs listed in response to Defendants' Interrogatory No. 8.  *Id.* at 42:23-43:4; Exhibit 80 at 6-7, 11.

165.  <u>Travel Agent:</u> Russell has been the sole owner of Sandy's Getaway Travel since 1984.  Exhibit 78 at 14:19-15:4, 47:8-10.

166.  <u>Compensation:</u> Russell's travel agency used to charge a $30 service fee for each flight booked.  *Id.* at 59:3–15.  Russell's travel agency stopped issuing airlines tickets at the end of 2022, however, and has no plans to resume issuing tickets because it is "time-consuming" and "not cost-effective."  *Id.* at 58:5–22, 59:3–15.  Accordingly, if airline ticket prices go up, it would not affect her agency.  *Id.* at 60:10–16.

167.  <u>Articulated Harm:</u> Russell claims that the merger will cause ticket prices to rise, eliminate consumer choice and competition, and eliminate jobs for airline employees.  *Id.* at 59:21–61:21.  She agreed that increased ticket prices would not affect her agency because her agency does not currently issue tickets.  *Id.* at 60:10–16.  Russell stated that she commenced all of the prior airline-related merger litigations for the "same" reasons she is challenging the instant merger: injury to clients, price increases, and reduction in choices.  *Id.* at 68:4–69:8.  Russell drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs.  *See supra* ¶ 35.  Russell wrote:

> I feel that this merger will result in fewer, limited route choices which will make ticket prices go up.  Carriers will no longer be classified as low cost carriers.

Exhibit 81 at 4.

**U.  June Stansbury**

168.  June Stansbury passed away on February 14, 2023.  *See supra* ¶ 26.

169.  On May 19, 2023, Plaintiffs' counsel notified Defendants that Stansbury had "recently passed away."  Exhibit 6.

170.    Plaintiffs' counsel has not filed any notice of death on the docket, and did not move for substitution of the proper party within 90 days following Ms. Stansbury's death as required to avoid dismissal under Fed. R. Civ. P. 25.

**V.    Clyde Stensrud.**

171.    <u>Flown Spirit:</u> Stensrud has never flown Spirit.  Exhibit 82 at 41:23-42:2, 46:2-3; Exhibit 83 at 3.

172.    <u>Future Plans to Fly Spirit:</u> Stensrud has no future Spirit flights booked, and has no concrete plans to fly Spirit.  Exhibit 82 at 46:2-18.  Stensrud says that "when [he] can retire," he would like "the ability to use an airline like Spirit" to fly to "locations"— without specifying which cities he intends to fly Spirit to.  *Id.*

173.    <u>Spirit Flights in Rog 8 Routes:</u> Stensrud has never flown Spirit on any of the routes listed in Plaintiffs' response to Defendants' Interrogatory No. 8.  *Id.* at 41:23-42:2; Exhibit 84 at 6-7; Exhibit 85 at 6-7.

174.    <u>Travel Agent:</u> Stensrud has never worked as a travel agent.  Exhibit 83 at 3-4.  He has worked in the construction industry for his entire career and he is also the sole owner of a travel agency, Executive Travel Consultants (ETC) Holdings.  Exhibit 82 at 15:2-24.  Despite being the sole owner of ETC Holdings, he did not know how many employees it had, how much money it made in the last year, how many customers it served, or how much money he received as a result of his ownership.  *Id.* at 21:7-22 ("Q:  And you have no knowledge of the total income or revenue [your travel agency] receives?  Stensrud A:  Correct.").  Stensrud did not have any knowledge of how the merger would impact his agency.  *Id.* at 50:21-25.

a.    Stensrud produced no documents reflecting his travel agency's financials or sales, despite agreeing to do so.  Wright Decl. ¶ 4.

49

175.   <u>Compensation:</u> Stensrud said he thought ETC "charge[s] for some booking fees," but does not know if ETC charges fees for every booking or how much that booking fee is.  Exhibit 82 at 26:23-27:9.  Stensrud does not know how much overall revenue is generated by his travel agency, what the total revenue or yearly income is, or any other relevant details of how ETC is run.  *Id.* at 19:19-29:2.

176.   <u>Articulated Harm:</u> Stensrud was unable to cite any specific harm from the merger, beyond being unable to fly Spirit in the future "to the cities that they currently go to." *Id.* at 46:19-47:6.  Stensrud drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs.  *See supra* ¶ 35.  Stensrud wrote:

> I feel that this merger will result in higher air fares, more add-on fees, and less availability of flights.

Exhibit 86 at 4.

**W.   Gary Talewsky**

177.   <u>Flown Spirit</u>: Talewsky has never flown Spirit.  Exhibit 87 at 45:16-18.  Talewsky booked a Spirit flight in 2017, but that flight was cancelled and he traveled the same route on a different airline.  *Id.* at 64:21-65:12, 66:23-67:18.

178.   <u>Future Plans to Fly Spirit:</u> Talewsky has no future Spirit flights booked, and has no concrete plans to fly Spirit.  *Id.* at 64:21-65:4, 65:18-24.  Talewsky expressed interest in flying Spirit in the fall, but he does not "know the dates yet" and has not booked his flights.  *Id.* at 65:15-22.  When asked how the merger would affect him, Talewsky acknowledged he does "[n]ot . . . personally fly Spirit."  *Id.* at 45:16-17.

179.   <u>Spirit Flights in Rog 8 Routes:</u> Talewsky has not flown Spirit on any of the routes Plaintiffs listed in response to Defendants' Interrogatory 8.  *Id.* at 64:21-65:12; Exhibit 88 at 7-11.

180.   <u>Travel Agent:</u> Talewsky sells travel agent services as an independent contractor for Direct Travel.  Exhibit 87 at 13:20-25.  Talewsky earns 80% of his compensation from commissions generated from selling trips, and also charges services fees for airline tickets booked for clients, receiving 80% of the service fees charged.  *Id.* at 34:12-22, 35:19-24; *see id.* at 35:25-36:3 ("Q:  Does the service fee differ by airline or is it the same across airlines?  Talewsky A:  No, it's usually pretty much the same.").  Talewsky explained there was no connection between his domestic tickets prices and his compensation, but he may receive commission from certain airlines for international flights.  *Id.* at 49:3-13.

181.   <u>Articulated Harm:</u> Talewsky testified that the merger would impact his business because people would choose to travel less due to higher prices, reduced flight schedules, worse customer service, and devalued loyalty programs.  *Id.* at 40:17-41:1, 47:18-22.  In his personal capacity, and as a JetBlue frequent flyer, he asserted that eliminating Spirit would cause his JetBlue ticket prices to increase.  *Id.* at 45:23-46:5.  He also testified that if "JetBlue and Spirit dominate the market, then they merge, prices go up . . . less people could travel."  *Id.* at 51:11-18.  Talewsky drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs.  *See supra* ¶ 35.  Talewsky wrote:

> I feel that this merger will result in poor service, especially customer service, less choice for flight options, higher prices, and a devalued frequent flyer program.  Historically this has happened every time there is a merger.  As time passes prices go up and flight choices go down.  Frequent Flyers

with status see their perks slowly disappear and mileage requirements for
frequent flyer awards go way up.

Exhibit 89 at 4.

### X.     Pamela Ward

182.    <u>Flown Spirit:</u> Ward has never flown Spirit.  Exhibit 90 at 48:22-49:3, 65:15-
18; Exhibit 91 at 3.

183.    <u>Future Plans to Fly Spirit:</u> Ward has no future Spirit flights booked, and has
no concrete plans to fly Spirit.  Exhibit 90 at 65:19-68:5.  Ward said she would "love to fly
on Spirit," but only "if they have a flight offered on a route that [she's] planning to take"
and that Spirit generally "has not been on the route that [she's] traveling on."  *Id.*

184.    <u>Spirit Flights in Rog 8 Routes:</u> Ward has not flown Spirit on any of the
routes Plaintiffs listed in response to Defendants' Interrogatory 8.  Exhibit 91 at 3; Exhibit
97 at 48:22–49:3; Exhibit 92 at 7.

185.    <u>Travel Agent:</u> Ward opened her own travel agency in 1985.  Exhibit 90 at
14:18-21.  Although Ward's agency is still in business today, Ward has been "semiretired"
for the last five years and is "in the process of retiring."  *Id.* at 15:10-15.

186.    <u>Compensation:</u> When booking travel, Ward's agency would receive a
scaling fee based on the price of the ticket.  *Id.* at 32:24-34:25.  Ward testified that because
she was retiring, the merger would have no impact on her income.  *Id.* at 41:5-12, 42:21-
23.

187.    <u>Articulated Harm:</u> When asked how the merger would harm her personally,
Ward testified that the merger would "limit the choice[s]" available to the public, and result
in eliminated routes, reduced flights and service, and "fewer flights."  *Id.* at 38:18-39:23.
When asked how the merger would harm her business, Ward testified that the merger

would have "negative effects" as a result of reduced choice, less competition, and higher fares. *Id.* at 39:25-41:4. Ward drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. Ward wrote:

> In sum, the elimination of competition due to the merger of JetBlue and Spirit would cause the following injury to myself and to all air travelers: (1) The likelihood of increased fares; (2) The likelihood of decreased customer service; (3) The likelihood of fewer flight choices; (4) The likelihood of fewer route options.

Exhibit 93 at 4.

188.     <u>Miscellaneous:</u>  Today, Ward's travel agency exclusively books travel for "one major corporate account."  Exhibit 90 at 16:6-13.

## Y.     Christine Whalen

189.     <u>Flown Spirit:</u> Whalen has never flown Spirit. Exhibit 94 at 62:5-7, 92:1-3; Exhibit 95 at 3.

190.     <u>Future Plans to Fly Spirit:</u> Whalen has no future Spirit flights booked, and has no concrete plans to fly Spirit. Exhibit 94 at 92:1-24, 103:1-21. Whalen said "[she] would like to experience Spirit since she has never" flown Spirit before" and that she "would like to try Spirit" and she "would love to" fly Spirit, even though she has not selected any routes or locations she intends to travel to on Spirit. *Id.* at 102:15-21. She indicated that Spirit is "certainly going to be a consideration if it all lines up." *Id.* at 92:4-93:25.

191.     <u>Spirit Flights in Rog 8 Routes:</u> Whalen has not flown Spirit on any of the routes Plaintiffs listed in response to Defendants' Interrogatory 8. Exhibit 96 at 7; Exhibit 97 at 7; Exhibit 94 at 92:1-3.

192.     <u>Travel Agent:</u> Whalen is a former travel agent. Exhibit 94 at 10:14-16. She worked as a travel agent for approximately thirty years at A&W Travel, which she co-

owned with co-Plaintiff Katherine Arcell, and closed the agency in 2020.  *Id.* at 12:14-14:3.  She has no intention of returning to the travel industry at the moment.  *Id.* at 44:7-9.

193.   <u>Compensation:</u>  Whalen is retired and no longer receives any income from a travel agency.  *Id.* at 44:7-19.

194.   <u>Articulated Harm:</u> Whalen testified that the Spirit-JetBlue merger would not affect her business, which no longer operates.  *Id.* at 44:7-24.  Whalen testified that the merger will impact her personally because it would give her "less choices," increase fares, and result in "extra charges" and "cutbacks in maybe some flights and destinations." *Id.* at 95:3-13–96:6.  Whalen drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs.  *See supra* ¶ 35.  Whalen wrote:

> Flyers such as me will no longer have a choice of a low fare airline (Spirit) and a higher fare airline (Jet Blue).  Also there will be more additional fees for seats, changes and for checked bags.

Exhibit 98 at 3-4.

## V.   **Report by Plaintiffs' Expert Mr. Ted Tatos**

195.   On July 28, 2023, Plaintiffs served on Defendants a report by Plaintiffs' expert, Mr. Ted Tatos.  Plaintiffs asked Mr. Tatos to answer:  "Can such threatened loss or damage to Plaintiffs [from the merger] be quantified with reasonable certainty based on the available evidence?"  Mr. Tatos responded "in the affirmative"  Exhibit 99 at 2.

196.   Mr. Tatos's report did not detail any irreparable injury to Plaintiffs or any injury to Plaintiffs in their professional capacities as travel agents.  Instead, Mr. Tatos quantifies Plaintiffs' alleged harms by calculating a percent-based increase in airfare tickets applicable to "Plaintiffs, as well as other air travelers."  *Id.* at 6.

In his report, Mr. Tatos acknowledged that at least sixteen Plaintiffs have never flown Spirit.  *Id.* at 23-29.

Dated: August 1, 2023

*/s/ Elizabeth Wright*
Elizabeth M. Wright (MA BBO #569387)
Zachary R. Hafer (MA BBO #569389)
Cooley LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Tel: 617-937-2300
ewright@cooley.com
zhafer@cooley.com

Ethan Glass (*Pro Hac Vice*)
Deepti Bansal (*Pro Hac Vice*)
Matt K. Nguyen (*Pro Hac Vice*)
Cooley LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 2004-2400
Tel: 202-842-7800
Fax: 202-842-7899
eglass@cooley.com
dbansal@cooley.com

Beatriz Mejia (*Pro Hac Vice*)
Cooley LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Tel: 415-693-2000
Fax: 415-693-2222
bmejia@cooley.com

Joyce Rodriguez-Luna (*Pro Hac Vice*)
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
Tel: 212 479 6895
Fax: 2124796275
jrodriguez-luna@cooley.com

*Attorneys for Defendant JetBlue Airways Corporation*

/s/ Andrew C. Finch
Andrew C. Finch (*Pro Hac Vice*)
Eyitayo St. Matthew-Daniel (*Pro Hac Vice*)
Jay Cohen (*Pro Hac Vice*)
Jared P. Nagley (*Pro Hac Vice*)
Kate Wald (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: 212-373-3000
Fax: 212-757-3990
afinch@paulweiss.com
tstmatthewdaniel@paulweiss.com
jcohen@paulweiss.com
jnagley@paulweiss.com
kwald@paulweiss.com

Meredith R. Dearborn (*pro hac vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel: 628-432-5100
Fax: 628-232-3101
mdearborn@paulweiss.com

*Attorneys for Defendant*
*Spirit Airlines, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document was filed through the ECF system on August

1, 2023 and will be sent electronically to the registered participants as identified on the Notice of

Electronic Filing.

<u>*/s/ Elizabeth M. Wright*</u>
Elizabeth M. Wright