# EXHIBIT 1

Katherine B. Forrest (NY Bar No. 2381457)
Max R. Shulman (NY Bar No. 1473982)
Stuart W. Gold (NY Bar No. 1639434)
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
Email: kforrest@cravath.com
       mshulman@cravath.com
       sgold@cravath.com
Admitted *Pro Hac Vice*

Attorneys for Defendants UAL Corporation and United Air Lines, Inc.

Paul L. Yde (D.C. Bar No. 449751)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
701 Pennsylvania Ave., NW. Suite 600
Washington, DC 20004
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
Email: paul.yde@freshfields.com
Admitted *Pro Hac Vice*

Attorneys for Defendant Continental Airlines, Inc.

[Names and Addresses of Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Michael C. Malaney, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> UAL CORPORATION, UNITED AIR LINES, INC., and CONTINENTAL AIRLINES, INC., <br><br> Defendants. | CASE NO. 3:10-CV-02858-RS <br><br> DEFENDANTS' POST-HEARING MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION |

1  that they would share in it. (*See* Ex. 1049 (the Passengers Against Mergers ("PAM") Agreement).)
2  Each PAM participant bought shares in the lawsuit with the understanding that the more shares they
3  bought, the greater would be their relative economic reward. Thus, Mr. Malaney was a participant in
4  the PAM Agreement, purchasing three shares (at $2,000 per share) "in the anticipation that three
5  shares would allow [him] to recover a larger percentage of any monetary award in the Delta and
6  Northwest merger lawsuit than one share". (Tr. 627:21-25, 628:5-8, 628:18, 628:22-25.) And when
7  there was a payment of $5 million in that lawsuit, Mr. Malaney received his proportionate share.
8  (Tr. 629:1-8.) Mr. Stensrud likewise executed the PAM Agreement, purchasing one share (for
9  $2,000) with the "anticipat[ion] that as a result of that lawsuit", he "might share in a monetary
10 award" "if there was one". (Tr. 397:1-5; 397:16-24.) And he too received a portion of the money
11 recovered in that case. (Tr. 398:3-5.) The bottom line: if money was sufficient for these plaintiffs
12 in the analogous lawsuit there, it is obviously sufficient for them here.

13  Plaintiffs have argued that the "only remedy available to [them] under federal
14 antitrust law" is an injunction—*i.e.*, that "[t]hey cannot obtain damages and, as such, do not have an
15 adequate remedy at law". (Pls. Pre-Hearing Mem. at 27.) Plaintiffs are wrong. Section 4 of the
16 Clayton Act allows private individuals to recover money damages for Section 7 violations. *See* 15
17 U.S.C. § 15. Alleged "higher prices" is just what Section 4 was meant to rectify. *See, e.g., Blue*
18 *Shield of Va. v. McCready*, 457 U.S. 465, 482-83 (1982) (an "increase in price resulting from a
19 dampening of competitive market forces is assuredly one type of injury for which § 4 potentially
20 offers redress"); *Am. Ad Mgmt, Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051 (9th Cir. 1999) (finding
21 that authorized sellers of Yellow Pages advertising could sue under Section 4 for damages caused by
22 higher advertising prices).

23  Plaintiffs try to avoid that result by arguing that they are suing for injunctive relief
24 under Section 16, not for damages under Section 4. But the issue is not governed by the choice that

25
26
27
28

DEFS. POST-HEARING MEM. IN
OPP'N TO MOT. FOR PRELIM. INJUNCTION

CASE NO.: 3:10-CV-02858 RS

-31-