# EXHIBIT 21

```
              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MASSACHUSETTS

GABRIEL GARAVANIAN, et al.,       )
                                  )
        Plaintiffs,               )
                                  )
v.                                ) Case No.
                                  ) 1:23-cv-10678-WGY
JETBLUE AIRWAYS CORPORATION and   )
SPIRIT AIRLINES, INC.,            )
                                  )
        Defendants.               )


            *********************************
              REMOTE VIDEOTAPED DEPOSITION OF
                  CLYDE DWAYNE STENSRUD
                     June 22, 2023
            *********************************
```

CLYDE DWAYNE STENSRUD, produced as a witness at the instance of the Defendants, was duly sworn and deposed in the above-styled and numbered cause on June 22, 2023, from 2:03 p.m. to 3:48 p.m. PST, stenographically reported remotely, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record.

Reported by:   Rebecca A. Graziano, CSR, RMR, CRR
               Texas CSR 9306
               California CSR 14407
               Illinois CSR 084.004659

```
 1    bit.
 2              Mr. Stensrud, have you been in the
 3    construction business for your entire career?
 4    A     Yes.
 5    Q     I'm sorry.  Was that a "yes"?
 6    A     Yes.
 7    Q     Okay.  Have you ever worked as a travel
 8    agent?
 9    A     No.
10    Q     Have you ever owned, wholly or partially,
11    any part of a travel agency?
12    A     Yes.
13    Q     Which travel agency is that?
14    A     ETC Holdings.
15    Q     ETC Holdings is the name of the travel
16    agency?
17    A     It has a d/b/a as well.
18    Q     Which is what?
19    A     Executive Travel Consultants.
20    Q     How long have you been a -- well, strike
21    that.
22              What ownership interest do you have in
23    Executive Travel Consulting?
24    A     I am the sole owner.
25    Q     And how long has Executive Travel
```

```
 1   Consulting been in existence?
 2     A     Approximately 1970- -- 1978.
 3     Q     Have you been the sole owner of Executive
 4   Travel Consulting for that entire period?
 5     A     No.
 6     Q     When did you purchase it?
 7     A     Well, I started out as a partial owner in
 8   about 1980, to the best of my recollection.  I
 9   don't know.
10     Q     When did you take on full ownership?
11     A     Maybe 1997.
12     Q     Who had partial ownership -- strike that.
13           Who held a partial ownership interest
14   prior to you owning all of Executive Travel
15   Consulting?
16     A     My father and my sister.
17           (Reporter clarification.)
18   BY MR. SISKO:
19     Q     So it's a family company?
20     A     Yes.
21     Q     Did your father work as a travel agent?
22     A     No.
23     Q     Did your sister work as a travel agent?
24     A     Yes.
25     Q     But you, sir, you never worked as a travel
```

1        from last year.
2    BY MR. SISKO:
3      Q      You received a document, like a tax
4    document?
5      A      Yes.
6      Q      And I may have asked this before.  You
7    don't recall for how much you purchased your
8    current ownership interest in Executive Travel
9    Consultants; correct?
10     A      The very initial, when I started out as a
11   one-third owner, I can recollect that.  But when I
12   became a sole owner, I don't know what that number
13   was or the mechanics of that.
14     Q      How much was your initial investment in
15   Executive Travel Consultants?
16     A      I recall $10,000.
17     Q      When you purchased the ownership interest
18   of your father and sister, was it more or less
19   than $10,000?
20            MR. BONSIGNORE:  Objection.  This
21       is not relevant.  He's made it clear he's
22       hands-off.  He doesn't remember.  And a
23       little bit more, but he's -- this is not
24       relevant to the action, and it's
25       badgering.

```
 1              MR. SISKO:  I'm trying to
 2     understand how much income he received
 3     from a company -- a travel agency that he
 4     owns.
 5              MR. BONSIGNORE:  That's fair
 6     enough.  That one, I get, if he can
 7     remember it.  But the way around it is
 8     just getting to be too much.  It's not
 9     hitting any -- it's not resonating.
10              MR. SISKO:  Well, clearly not.
11     Robert, I'm trying to -- I'm asking --
12              MR. BONSIGNORE:  I understand.  I
13     understand.  I get it.
14              MR. SISKO:  Okay.
15   BY MR. SISKO:
16    Q     Mr. Stensrud, are you aware of whether
17   your travel agency books airline travel for its
18   customers?
19    A     Yes.
20    Q     And are you aware of whether it charges
21   service fees for booking those flights?
22    A     Yes.
23    Q     Does Executive Travel Consultants charge a
24   service fee for booking flights for customers?
25              MR. BONSIGNORE:  Objection; asked
```

1  Q    Does JetBlue operate in Seattle?
2  A    I don't know.
3  Q    Does Spirit operate in Seattle?
4  A    Yes.
5           MR. SISKO:  Before we get going, I
6       apologize.  Do you mind if we go off the
7       record and take an early break?
8           MR. BONSIGNORE:  No.
9           MR. SISKO:  Okay.
10          THE VIDEOGRAPHER:  Okay.  The time
11      is 2:47.  We're off the record.
12          (Recess from 2:47 p.m. to 3:00 p.m.)
13          THE VIDEOGRAPHER:  We are back on
14      the record.  The time is 3:00 p.m.
15          MR. SISKO:  Great.  Thank you.
16 BY MR. SISKO:
17  Q    Welcome back, Mr. Stensrud.  I understand
18 that -- well, let me ask it this way:  Did you
19 have something additional about your -- the travel
20 agency that you own that you'd like to describe?
21  A    Yes.  I recall a little bit more about the
22 ownership process.
23          As I said, it started out with myself
24 and my sister and my father, and she was the one
25 that was actually operating the travel agency, and

1  myself and my father were just contributing some
2  money to help her get going, and as kind of a
3  silent investor, which is really what I've been
4  all along.
5              And then I threw out the date 1997
6  when he left, but actually he passed away in '95,
7  so it had to have been before that, and he left
8  and my sister decided she wanted to leave, so I
9  brought in another person -- her name was Kathy,
10 then I couldn't think of her last name, and we
11 became 50/50 owners for a couple years, I believe.
12             And then at that time Kathy wanted to
13 leave, and Angie just didn't -- she wanted to be
14 the manager but not be an owner, so that left me
15 to be the sole owner in it, so I've just been --
16 kind of an investment in something that I've --
17 primarily for the sake of the employees, actually,
18 just to have a company that kept going.  And like
19 I said, I'm very hands-off with it and always been
20 hands-off with it.
21             So that helps maybe clear a little bit
22 about how the ownership went back and forth from
23 the beginning, so that's all I have.
24    Q    Thank you.  That's very helpful.  A couple
25 questions about that.

```
 1          not -- yeah.  So that's...
 2    BY MR. SISKO:
 3     Q       So after you initially answered this
 4    question, you then went to your bookkeeper at
 5    Executive Travel Consultants and asked her to pull
 6    the records; is that correct?
 7     A       Yes.
 8     Q       And to the best of your knowledge, this is
 9    a true and accurate list of all flights you've
10    taken in the last eight years?
11     A       Yes.
12     Q       So it looks like, Mr. Stensrud, in the
13    last eight years, you've flown Alaska twice;
14    correct?
15     A       Yes.
16     Q       And you would have flown American but for
17    your mother's health issues; correct?
18     A       Yes.
19     Q       And you've flown Delta once; correct?
20     A       Yes.
21     Q       Have you ever flown JetBlue?
22     A       No.
23     Q       Have you ever flown Spirit?
24     A       No.
25     Q       And to be clear, you've never flown Spirit
```

```
 1    thing that matters is what the overall price is.
 2     Q      Would you prefer extra leg room?
 3     A      Prefer it, but not necessary.
 4     Q      Would you prefer to have a checked bag
 5    included in the price of the ticket?
 6               MR. BONSIGNORE:  Objection.
 7               You can answer.
 8               THE WITNESS:  Only if it -- that
 9        doesn't matter.  It's just the overall
10        price of the ticket that matters.
11    BY MR. SISKO:
12     Q      How about if you had to pay for a carry-on
13    bag?  Would that impact your decision?
14     A      Not individually.  Only, again, the
15    overall price is what is -- matters.
16     Q      So price is the primary driver for you;
17    correct?
18     A      Yes.
19               MR. BONSIGNORE:  Objection.
20    BY MR. SISKO:
21     Q      So, Mr. Stensrud, you've never flown
22    JetBlue; correct?
23     A      Yes.
24     Q      And you -- do you have any plans to fly
25    JetBlue in the future?
```

```
 1    A      Not currently.
 2    Q      And you've never flown Spirit; correct?
 3    A      Yes.
 4    Q      Do you have any plans to fly Spirit in the
 5    future?
 6    A      Yes, I would.  I would intend to fly
 7    Spirit to locations.  Primarily when I retire, I
 8    plan to do -- back to -- do a lot of golfing,
 9    which is, kind of, my passion, and there's --
10    there's cities that they fly to that I have played
11    there before or would like to play golf again
12    there at times when I can retire and have the
13    ability to use an airline like Spirit.
14    Q      You don't currently have any plans booked
15    to fly Spirit; correct?
16    A      I don't have any current plans.  But,
17    again, I tend to -- I intend to book Spirit in the
18    future to go to different cities that they go to.
19    Q      Well, given that you've never flown Spirit
20    or JetBlue, how would the proposed merger between
21    those companies affect your travel?
22    A      Again, if --
23           MR. BONSIGNORE:  Objection -- if
24    you -- I didn't hear -- go ahead.  Go
25    right ahead.
```

```
 1               THE WITNESS:  Again, like I said, I
 2      would intend to use Spirit to go to these
 3      cities that -- and if they weren't
 4      available, then I wouldn't be available to
 5      use Spirit to go to the cities that they
 6      currently go to.
 7   BY MR. SISKO:
 8    Q      And you never -- but you've never flown
 9   Spirit before; correct?
10    A      Correct.
11               MR. BONSIGNORE:  Objection; asked
12      and answered.
13   BY MR. SISKO:
14    Q      And you have no tickets for Spirit in the
15   future; correct?
16    A      Not current tickets, but I intend to in
17   the future.
18    Q      And, in fact, you've never even flown an
19   ultra-low-cost carrier before; is that correct?
20               MR. BONSIGNORE:  Objection.
21       You can answer.
22               THE WITNESS:  I believe I have
23      before 2015.
24   BY MR. SISKO:
25    Q      Are you aware of what airline that was?
```

| | | |
|---|---|---|
| 1 | A | Southwest. |
| 2 | Q | Have you ever flown Frontier? |
| 3 | A | I believe I have before 2015. |
| 4 | Q | How many times? |
| 5 | A | I don't recall. |
| 6 | Q | Have you ever flown Allegiant? |
| 7 | A | No. |
| 8 | Q | Let's talk a little bit about those future |

travel plans.

10     Do you have any tickets booked in the
11 near future, Mr. Stensrud?
12  A     No.
13  Q     When do you plan to retire?
14  A     Approximately 70 -- 75 -- well, when I'm
15 75, which is in a couple years.
16  Q     Until you retire in a couple years, do you
17 have any travel plans you intend to take?
18  A     If I -- I would if I -- I can't predict my
19 schedule, but if I have some time off from my busy
20 construction, then I would take a break and fly.
21  Q     Are there any locations in particular
22 you're planning on going?
23  A     I would like to go to Phoenix, Las Vegas,
24 San Diego.
25  Q     And apologies for the redundancy, but you

```
 1              UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MASSACHUSETTS
 2
    GABRIEL GARAVANIAN, et al.,        )
 3                                     )
           Plaintiffs,                 )
 4                                     )
    v.                                 ) Case No.
 5                                     ) 1:23-cv-10678-WGY
    JETBLUE AIRWAYS CORPORATION and    )
 6  SPIRIT AIRLINES, INC.,             )
                                       )
 7         Defendants.                 )

 8
                   REPORTER'S CERTIFICATION
 9             REMOTE VIDEOTAPED DEPOSITION OF
                    CLYDE DWAYNE STENSRUD
10                     June 22, 2023

11         I, Rebecca A. Graziano, Certified Shorthand

12  Reporter in and for the States of Texas,

13  California, and Illinois, hereby certify to the

14  following:

15         That the witness, CLYDE DWAYNE STENSRUD, was

16  duly sworn and that the transcript of the oral

17  deposition is a true record of the testimony given

18  by the witness;

19         I further certify that pursuant to FRCP Rule

20  30(f)(1) that the signature of the deponent:

21         ____ was requested by the deponent or a

22  party before the completion of the deposition and

23  returned within 30 days from date of receipt of

24  the transcript.  If returned, the attached Changes

25  and Signature Page contains any changes and the
```