# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GABRIEL GARAVANIAN, et al., | ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) ) Civil Action No. 1:23-cv-10678-WGY |
| JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC., | ) ) ) |
| *Defendants*. | ) ) ) ) ) ) |

## MEMORANDUM IN SUPPORT OF JETBLUE'S MOTION FOR SANCTIONS OR, IN THE ALTERNATIVE, ORDER TO SHOW CAUSE REGARDING PLAINTIFFS' REPEATED VIOLATIONS OF COURT ORDERS AND LOCAL RULES

Plaintiffs and their counsel are serial litigants who challenge almost every large merger. While they have never succeeded in blocking a merger, they have succeeded in being sanctioned by other courts[1] and holding up mergers in litigation such that the merging companies are forced to pay a large ransom just to close the deal. That is exactly why they have brought this case: to force JetBlue to pay a ransom. In response to Defendants' motion for summary judgment on the absence of standing (*i.e.*, not litigating the merits), Plaintiffs engaged in a series of acts last week that violated their duties to the Court and JetBlue: they publicly filed a brief incorrectly purporting

---

[1] *See, e.g.*, Order, *Taleff v. Sw. Airlines Co.*, No. 11-16173 (9th Cir. Mar. 5, 2013), ECF No. 43 (awarding $67,495.30 in attorneys' fees against, among others, Joseph M. Alioto, Esq. and the Alioto Law Firm); Order, *In Re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 4:07-cv-05944 (N.D. Cal. July 27, 2023), ECF No. 6222 (granting a motion for sanctions by Defendants and ordering plaintiffs' counsel Robert Bonsignore and Joseph M. Alioto "to pay LGE reasonable attorney's fees and costs incurred in opposing Massachusetts IPPs' motion for leave to amend and in pursuing sanctions").

to characterize information unrelated to Plaintiffs' standing and marked as confidential under the Protective Order; they failed to properly redact their brief so as to leave the impression that their mischaracterizations were made by the JetBlue documents; they waited hours to even respond to JetBlue's request for them to fix the redactions; and Plaintiffs' counsel gave a press interview about that filing—even after being notified of their violation of this Court's Protective Order. This conduct alone merits serious sanctions.

While JetBlue is reluctant to seek sanctions, they are appropriate here in light of Plaintiffs' pattern of disregard for the rules and the Court's orders. Plaintiffs have repeatedly violated this Court's orders, the Local Rules, and the Federal Rules of Civil Procedure during the course of this litigation. Worse yet, Plaintiffs exploited their violation of the Protective Order last week by speaking with the press in an apparent effort to publicly pressure JetBlue, knowing that JetBlue cannot respond in kind.

As such, JetBlue respectfully moves for sanctions or alternatively for an order to show cause as to why the Court should not: (1) find lead Plaintiffs' counsel in contempt of court for willful violation of the Court's orders; (2) revoke lead Plaintiffs' counsel's *pro hac vice* admission; (3) require Plaintiffs to include a sworn statement on all future pleadings, detailing the steps they have taken to protect confidential information, and otherwise certifying compliance with this Court's orders and the Local Rules; (4) issue monetary sanctions to reimburse JetBlue for time spent responding to Plaintiffs' rule and order violations; and/or (5) issue any other relief the Court deems appropriate to manage these proceedings and the conduct of Plaintiffs' counsel.

## LEGAL STANDARD

Pursuant to its "inherent power," a court may "manage its own proceedings and [] control the conduct of litigants who appear before it through orders or the issuance of monetary sanctions

for bad-faith, vexatious, wanton or oppressive behavior." *Bayad v. Bastian*, No. CV 05-11005-WGY, 2007 WL 9797657, at *6 (D. Mass. Apr. 13, 2007) (Young, J.).   This inherent power includes the "authority to address and sanction 'abuses of process occurring beyond the courtroom,' including but not limited to, the failure to comply with the court's orders." *Power v. Connectweb Techs., Inc.*, --- F. Supp. 3d ---, No. CV 22-10030-JGD, 2023 WL 1111255, at *3 (D. Mass. Jan. 30, 2023) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 57 (1991)).

Likewise, under Fed. R. Civ. P. 37(b), a court may "levy sanctions against parties that fail to comply with discovery orders," *Ins. Recovery Grp., Inc. v. Connolly*, 977 F. Supp. 2d 16, 23 (D. Mass. 2013) (Young, J.); *see id.* (a party "need not have acted in bad faith in order to suffer the consequences" of sanctions).   A court has a "veritable arsenal of sanctions, including designating certain facts as established, awarding attorney's fees, and holding the disobedient party in contempt." *Malot v. Dorado Beach Cottages Assocs.*, 478 F.3d 40, 45 (1st Cir. 2007).   Moreover, Plaintiffs' "[f]ailure to comply with any of the directions or obligations set forth in, or authorized by, the[] [Local Rules] may result in dismissal, default, or the imposition of other sanctions as deemed appropriate by the judicial officer." L.R. 1.3.

## ARGUMENT

Plaintiffs have engaged in a pattern of violating the Federal Rules of Civil Procedure, the Local Rules, the Scheduling and Case Management Order (Dkt. 96), and the Protective Order (Dkt. 164) for strategic gain.   "[D]istrict courts possess wide latitude in the exercise of their case-management authority," and that includes "broad discretion in determining how best to deter parties from flouting" court orders and rules. *Rivera-Aponte v. Gomez Bus Line, Inc.*, 62 F.4th 1, 6-7 (1st Cir. 2023).   This Court has previously recognized that it may "control the conduct of litigants who appear before it through orders or the issuance of monetary sanctions for bad-faith,

vexatious, wanton or oppressive behavior." *Bayad*, 2007 WL 9797657, at *6. When a party does not comply with court orders, "the court may choose from a broad universe of possible sanctions." *Tower Ventures Inc. v. City of Westfield*, 296 F.3d 43, 46 (1st Cir. 2002) (affirming dismissal sanction for violation of scheduling order); *see also United States ex rel. Nargol v. DePuy Orthopaedics, Inc.*, 69 F.4th 1, 14 (1st Cir. 2023) (affirming sanction for violation of protective order).

### A.  Plaintiffs' Prior Litigation History

Many of these same Plaintiffs have previously filed lawsuits to enjoin mergers, including prior airline mergers. None of those lawsuits successfully enjoined the challenged mergers. *See* Dkt. 174 ¶¶ 6-25 (laying out Plaintiffs' prior antitrust litigation history). For example, in *D'Augusta v. Northwest Airlines Corp.*, 15 of these same Plaintiffs voluntarily dismissed their lawsuit challenging the merger between Delta Airlines and Northwest Airlines two days before the start of trial in exchange for a monetary payment of $5 million. Dkt. 174 ¶¶ 7-10. Plaintiffs refused to produce discovery regarding the *D'Augusta* settlement in this case, asserting that such discovery would violate a "confidential court order." Plaintiffs have refused to produce, or even describe, those confidentiality provisions to Defendants. *Id.* ¶ 9.

### B.  Plaintiffs' Attempt to File a Motion for Summary Judgment

The Protective Order expressly limits the parties' disclosure of Confidential and Highly Confidential Information to a narrow subset of individuals. Dkt. 164 ¶ 38. Given this, the Protective Order requires Plaintiffs to file with the Court a properly "redacted version of the filing" if it contains "any documents, testimony, or other materials designated under this Order as Confidential or Highly Confidential Information." *Id.* ¶ 44. L.R. 7.2(c) provides: "Motions for

impoundment must be filed and ruled upon prior to submission of the actual material sought to be impounded, unless the court orders otherwise."

On August 1, Plaintiffs ignored Local Rule 7.2 and filed a document captioned "Unopposed Motion for Leave to File Documents Under Seal" (Dkt. 171), which did not contain any detail regarding the confidential information to be impounded and was not filed in time for the Court to rule on impoundment in advance of the underlying filing. The Court denied the improper motion on August 7, 2023. Dkt. 181.

Also on August 1, Plaintiffs attempted to serve a 66-page summary judgment brief in violation of the Local Rules. L.R. 7.1(b)(4) ("Memoranda supporting or opposing allowance of motions shall not, without leave of court, exceed 20 pages, double-spaced."). Plaintiffs attempted to seek leave of court after the fact by filing a Motion for Leave to File Summary Judgment Motion in Excess of Page Limit (Dkt. 179), which the Court promptly denied. Dkt. 182.

### C.  Plaintiffs' Opposition to Defendants' Motion for Summary Judgment

Plaintiffs violated numerous rules in filing their opposition to Defendants' motion for summary judgment last week.

*First*, shortly before Plaintiffs' opposition to Defendants' summary judgment motion was due, Plaintiffs asked Defendants' assent to a motion to impound. Defendants' counsel provided detailed explanations for sealing the confidential materials identified by Plaintiffs. Rather than filing a motion to impound in advance, as required by Local Rule 7.2, Plaintiffs filed their Motion to Impound (Dkt. 188) at the same time as their opposition containing Defendants' confidential materials.

*Second*, Plaintiffs did not properly apply redactions to their opposition filings. On the evening of August 22, Plaintiffs filed their opposition to Defendants' motion for summary

judgment and responsive statement of facts in which Defendants' confidential information appeared—at least superficially—to be redacted. However, reporters knew nearly immediately that those redactions did not prevent viewing of the entire brief and responsive statement of facts. Thus, on August 23, Law360 published an article titled "Botched Redactions Show JetBlue Plans To Hike Spirit Fares," which pointed out that "improper redaction formatting by [P]laintiffs' counsel" meant that anyone could read the redacted confidential material simply "by copying and pasting the text into another document."

***Third***, the Protective Order requires the party who caused an improper disclosure to take prompt remedial measures. Dkt. 164 ¶ 42. Instead of doing so, Plaintiffs' counsel spoke to the media and took advantage of their "botched" redactions to discuss Defendants' confidential information.[2] As reported by Law360: "[A]n attorney for the travelers, Joseph M. Alioto of the Alioto Law Firm, argued the deal must be stopped. Alioto pointed to admissions by the companies that if the deal goes through, 'they're going to raise the fares, they're going to cut the capacity, they're going to cut the [capacity] of flights, they're going to fire people … They are cutting the ultra-low-cost carrier market in half.'"[3] Beyond the fact that Plaintiffs' disclosures contained misleading and out-of-context representations of Defendants' confidential materials, Plaintiffs' counsel not only violated the Protective Order in the first instance through their botched redactions, they further violated the Protective Order, by publicizing Defendants' confidential information in

---

[2] Plaintiffs' counsel apparently attempted to advise Law360 that it was in possession of confidential material but then decided to comment on the record to Law360 regarding that same material. A day later, Plaintiffs' counsel advised another reporter that the superficially redacted information was subject to a Protective Order, but at that point, the Law360 article (including comment from Plaintiffs' counsel) was already publicly available.

[3] *See* https://www.law360.com/articles/1714211/botched-redactions-show-jetblue-plans-to-hike-spirit-fares.

the press.  *See E.E.O.C. v. Dial Corp.*, No. 99 C 3356, 2001 WL 1945089, at *2, *4 (N.D. Ill. Dec. 6, 2001) (holding a plaintiff in civil contempt for failing to comply with a protective order when they "release[ed] an unredacted copy of its response memorandum [and communicated with] the press").  Plaintiffs' reckless actions stand in stark juxtaposition with the Protective Order's mandate that, when an unauthorized disclosure occurs, "[t]he disclosing Party must also promptly take all reasonable measures to retrieve the improperly disclosed material and ensure that no further or greater unauthorized disclosure or use of the material is made." Dkt. 164 ¶ 42.

*Fourth*, Defendants' motion for summary judgment pertains only to the narrow, threshold issue of Plaintiffs' lack of standing and irreparable injury.  Local Rule 56.1 requires the party opposing summary judgment to rely on *material* facts.  Instead of following this rule, Plaintiffs larded their opposition brief and responsive statement of facts with immaterial arguments that go to the merits of the case.

### D.  Sanctions Are Appropriate Here

Over the course of this litigation, Plaintiffs have repeatedly violated the Court's orders and the applicable rules.  Plaintiffs' failure to properly redact Defendants' confidential information, coupled with their intentional decision to speak with the press about the same confidential information they had an obligation to protect, constitutes an egregious violation of the Protective Order.  Plaintiffs have chosen to litigate this case in the press, and not in the Court.  Perhaps Plaintiffs believe that by doing so they increase pressure on Defendants to resolve the case—and that a resolution (like others in prior cases to block mergers brought by these same Plaintiffs) would include a monetary payment.  The Court should not countenance Plaintiffs' disregard for the Court's orders in an effort to gain strategic advantage or extract a settlement from Defendants.

"If parties were free to treat court orders as optional, the administration of justice would become as chancy as the menu at a potluck supper." *Rivera-Aponte*, 62 F.4th at 9.  Plaintiffs' repeated failures to comply with the Court's orders and the applicable rules merit the issuance of sanctions.  In the First Circuit, district courts can "choose from a broad universe of possible sanctions" and "the choice of an appropriate sanction must be handled on a case-by-case basis" and are "within the sound discretion of the district court." *Tower Ventures*, 296 F.3d at 46.

## CONCLUSION

For the foregoing reasons, JetBlue respectfully requests the Court order any relief that the Court deems to be appropriate, such as:  (1) finding lead Plaintiffs' counsel in contempt of court for willful violation of the Court's orders; (2) revoking lead Plaintiffs' counsel's *pro hac vice* admission; (3) requiring Plaintiffs to include a sworn statement on all future pleadings, detailing the steps they have taken to protect confidential information, and otherwise certifying compliance with this Court's orders and the Local Rules; (4) reimbursing Defendants for attorneys' fees incurred in conjunction with Plaintiffs' rule and order violations; and/or (5) issuing any other relief the Court deems appropriate to manage these proceedings and control the conduct of Plaintiffs' counsel before it.

Respectfully submitted,

Dated: August 28, 2023

*/s/ Elizabeth M. Wright*
Zachary R. Hafer (MA BBO #569389)
Elizabeth M. Wright (MA BBO #569387)
Zachary Sisko (MA BBO # 705883)
Cooley LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Tel: 617-937-2300
zhafer@cooley.com

8

ewright@cooley.com
zsisko@cooley.com

Ethan Glass (*Pro Hac Vice*)
Matt K. Nguyen (*Pro Hac Vice*)
Cooley LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 2004-2400
Tel: 202-842-7800
Fax: 202-842-7899
eglass@cooley.com
mnguyen@cooley.com

Beatriz Mejia (*Pro Hac Vice*)
Cooley LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Tel: 415-693-2000
Fax: 415-693-2222
bmejia@cooley.com

*Attorneys for Defendant JetBlue Airways*
*Corporation*

9

## **CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system on August 28, 2023 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Elizabeth M. Wright
Elizabeth M. Wright