**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

GABRIEL GARAVANIAN, et al.,

*Plaintiffs*,

v.

JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC.,

*Defendants*.

Civil Action No. 1:23-cv-10678-WGY

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 3

A. All Twenty-Five Plaintiffs Lack Article III Standing. ..... 3

1. Plaintiffs' Contradictory and Untimely Declarations Should Be Stricken. ..... 3

2. Plaintiffs' Theory of Harm Upends Article III Standing Doctrine. ..... 7

B. All Twenty-Five Plaintiffs Fail to Establish Irreparable Injury. ..... 9

C. The Court Will Decide Whether an Injunction Should Issue in the DOJ Case. ..... 10

III. CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carney v. Adams*,
141 S. Ct. 493 (2020)....................8

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)....................2

*Cleveland v. Pol'y Mgmt. Sys. Corp.*,
526 U.S. 795 (1999)....................3, 6, 7

*Colantuoni v. Alfred Calcagni & Sons, Inc.*,
44 F.3d 1 (1st Cir. 1994)....................7

*Fjord v. AMR Corp. (In re AMR Corp.)*,
625 B.R. 215 (Bankr. S.D.N.Y. 2021)....................10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................2

*Mahan v. Bos. Water & Sewer Comm'n*,
179 F.R.D. 49 (D. Mass. 1998) (Young, J.).................... *passim*

*Malaney v. UAL Corp.*,
2010 WL 3790296 (N.D. Cal. Sept. 27, 2010),
*aff'd*, 434 F. App'x 620 (9th Cir. 2011)....................8, 9

*Morales v. A.C. Orssleff's EFTF*,
246 F.3d 32 (1st Cir. 2001)....................7

*Narragansett Indian Tribe v. Guilbert*,
934 F.2d 4 (1st Cir. 1991)....................10

*In re Nexium (Esomeprazole) Antitrust Litig.*,
309 F.R.D. 107 (D. Mass. July 30, 2015) (Young, J.)....................9

*Nypl v. JP Morgan Chase & Co.*,
2023 WL 2712214 (S.D.N.Y. Mar. 30, 2023)....................8

*O'Neill v. Coca-Cola Co.*,
669 F. Supp. 217 (N.D. Ill. 1987)....................8

*Rohm & Haas Elec. Materials, LLC v. Elec. Cirs. Supplies, Inc.*,
759 F. Supp. 2d 110 (D. Mass. 2010)....................9

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021)....................9

**TABLE OF AUTHORITIES**
continued

**Page(s)**

*United States v. Borden*,
347 U.S. 514 (1954)....................10

*Whalen v. Albertsons Cos. Inc.*,
2023 WL 4955141 (N.D. Cal. Aug. 2, 2023) ....................7

## I. INTRODUCTION

The narrow, threshold issues before the Court are Plaintiffs' (1) insufficient nexus to the JetBlue-Spirit merger such that they do not have Article III standing to challenge it, and (2) absence of irreparable injury, which is fatal to their request for an injunction.[1]

To the first issue, as JetBlue and Spirit establish in their opening brief, Plaintiffs lack standing because, as of the close of fact discovery, all twenty-four living Plaintiffs[2] admitted in verified discovery responses and sworn deposition testimony that they had no concrete, imminent plans to fly Spirit in the future, including on the 121 routes they initially alleged would be harmed. Now, confronted with a motion for summary judgment on standing grounds, Plaintiffs introduce ***for the first time*** eighteen new declarations, most of which directly contradict their prior factual admissions and purport to reflect newfound flight plans. Specifically, fourteen Plaintiffs insist in these declarations they now plan to fly Spirit, contrary to their prior sworn testimony.[3] Plaintiffs then rely on these self-serving declarations to claim disputed facts.

[1] After Plaintiffs failed to file a procedurally sound motion for summary judgment by the August 1 Court-ordered deadline, they pivoted to filing an opposition brief that primarily addresses the merits of the merger, rather than their lack of standing or irreparable injury. The Court should decline Plaintiffs' improper invitation to prejudge the merits of the merger in connection with JetBlue and Spirit's Motion for Summary Judgment.

[2] Plaintiffs admit Stansbury passed away six months ago (Statement of Undisputed Material Facts in Supp. of Defs.' Mot. for Summ. J. ("SUMF") Nos. 26, 168-69), and their opposition states that "twenty-four Plaintiffs" remain. Pls. Mem. in Opp. to Defs.' Mot. for Summ. J. ("Opp.") at 7, 8. Despite this, and JetBlue and Spirit's repeated requests that Plaintiffs formally dismiss Stansbury, Plaintiffs have refused to do so notwithstanding their duty under Fed. R. Civ. P. 25(a)(1).

[3] Of the eighteen who filed declarations, four Plaintiffs (Brown, Gardner, Jolly, and Stensrud) still express no interest in flying Spirit. As for the seven that did not file declarations (Arcell, Brito, Fjord, Freeland, Malaney, Russell, and Stansbury), the facts show they have no concrete, imminent plans to fly Spirit. *See* Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Mot.") at 5-9. For example, Brito testified he has no "plans to take Spirit in the near future." Exhibit 14 at 106:16-18. (Citations to "Exhibits" refer to the exhibits attached to Declaration of Elizabeth M. Wright in Support of Defendants' Motion for Summary Judgment (Dkt. 175) (Exhibits 1-100) and Declaration of Elizabeth M. Wright in Support of Defendants' Reply in Support of Defendants' Motion for Summary Judgment (Exhibits 101-106) (filed concurrently herewith); citations to

Such gamesmanship is prohibited. As this Court has recognized, parties cannot introduce new facts for the first time in opposing summary judgment without justifying the discrepancy. *See, e.g.*, *Mahan v. Bos. Water & Sewer Comm'n*, 179 F.R.D. 49, 53 (D. Mass. 1998) (Young, J.) ("If a party simply could offer a contradictory, post-deposition affidavit to defeat summary judgment without providing a 'satisfactory explanation' for the contradiction, the purpose of summary judgment would be defeated."). Because Plaintiffs offer no explanation for their discrepancies, their declarations should be stricken. That record confirms all twenty-five Plaintiffs lack standing because they have no concrete, imminent plans to fly Spirit in the future.

Perhaps in a tacit admission that their self-serving declarations may not withstand the Court's scrutiny, Plaintiffs also argue that their recently discovered travel plans are beside the point because any person who has flown once on ***any airline*** on virtually ***any route in America*** has standing. As Plaintiffs themselves admit, their theory asserts harm "span[ning] the entirety of the nation." Opp. at 8. Of course, this would mean every domestic flyer has standing to challenge any airline merger, even if they would not personally be affected by it. That is not the law. Plaintiffs must, but fail to, demonstrate concrete and particularized injury from the merger they are challenging. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 560 n.1, 573-74 (1992) ("particularized" requires plaintiffs to prove "personal and individual" injury above and beyond "the public at large"); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

---

"Alioto Decl. Ex." refer to the exhibits to Declaration of Joseph M. Alioto Jr. in Support of Plaintiffs' Opp. to Defs.' Mot. for Summ. J. (Dkt. 184) (Alioto Decl. Exs. 1-98).) Likewise, Malaney testified he is "fairly certain" that, if he ever flies, he will "fly out of the Grand Rapids airport" and not fly Spirit, as Spirit does not "fly in or out" of Grand Rapids. Exhibit 53 at 76:9-77:2. Finally, while Pls.' Opp. to Defs.' Statement of Undisputed Material Facts ("Opp. SUMF") refers to a declaration from Fjord, *see* Opp. SUMF Nos. 78, 79, 80, no such declaration was filed as an exhibit with Plaintiffs' Opposition.

To the second issue, Plaintiffs point to zero record evidence that they will be irreparably injured by this merger, thus defeating their demand for an injunction. Plaintiffs expressly concede that their "expert's report ***quantifies*** losses" from allegedly higher prices to air travelers writ large, such that their primary alleged harm is non-particularized, measurable, and compensable. Opp. at 20 (emphasis added). They further admit their Passengers Against Mergers Agreement operates as an investment vehicle to distribute profits from airline merger settlements. *Id.* at 18-19. Then, Plaintiffs cite a litany of "intangible harms" such as "service quality, flight cancellations, [and] flight availability," which they perplexingly attribute to "half a dozen airline merger[]" suits they previously lost, as opposed to this specific merger. *Id.* at 16, 18, 20. But they offer no evidence of particularized injury, no explanation as to why money damages are insufficient, and no causal link to ***this merger***. *Id.* The law does not permit such free floating and untethered claims of harm.

Because Plaintiffs have failed to meet their burden of establishing Article III standing or irreparable injury, summary judgment should issue.

## II. ARGUMENT

### A. All Twenty-Five Plaintiffs Lack Article III Standing.

#### 1. Plaintiffs' Contradictory and Untimely Declarations Should Be Stricken.

As the U.S. Supreme Court and this Court have emphasized, courts "have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *Mahan* 179 F.R.D. at 52-53. Where, as here, a party files "contradictory, post-deposition affidavit[s] to defeat summary judgment without providing a 'satisfactory explanation' for the

contradiction," the court disregards the self-serving declarations for the purposes of summary judgment. *Mahan*, 179 F.R.D. at 53, 55.

Here, Plaintiffs' declarations are entirely inconsistent with the facts elicited during discovery. In verified responses to Interrogatory No. 1, Plaintiffs did not identify ***any*** purchased or planned Spirit flights for after the close of fact discovery for ***any*** Plaintiff, thereby confirming none had concrete, imminent plans to fly Spirit. This is unsurprising because, as fact discovery confirmed and Plaintiffs do not dispute, twenty-three Plaintiffs have not flown Spirit even once from November 2018 through June 2023 (four years prior to filing their Complaint through the close of fact discovery). SUMF Nos. 37, 44, 51, 58, 66, 72, 78, 85, 91, 103, 110, 117, 124, 130, 137, 150, 156, 162, 169, 171, 177, 182, and 189. Likewise, Plaintiffs universally testified in their depositions that, while they could fly Spirit someday, they had no concrete, imminent plans to do so any time after the close of fact discovery. SUMF Nos. 38, 45, 52, 59, 67, 73, 79, 86, 92, 98, 104, 111, 118, 125, 131, 138, 145, 151, 157, 163, 172, 178, 183, and 190. And yet, as the quotes below illustrate, their self-serving declarations directly contradict their prior sworn statements:

**1) Plaintiff Jan Marie Brown**

Deposition: Q: "Ms. Brown, do you have any future flights booked as of today for Spirit in the next year? A: Not at this moment." Exhibit 101 at 79:3-6. "Q: Do you have any tickets booked today for any of those locations [including Orlando, Florida] in the future? A: Not at this moment." *Id.* at 123:10-12.

Declaration: "I am planning to fly from Reno, Nevada to Orlando, Florida next year." Dkt. 187 ¶ 2.

**2) Plaintiff Rosemary D'Augusta**

Deposition: "Q: Do you currently have plans? Do you have a ticket booked? A: No, I do not. Q: Are you planning to book a ticket for specific dates on Spirit? A: I have no plans at the moment to book a specific date on any airlines." Exhibit 102 at 76:15-21.

Declaration: (1) "I will be flying most probably from Oakland (because of the cost) to Newark on Spirit"; (2) "Another flight I intend to book in 2024 is from Oakland to Philadelphia on Spirit";

and (3) "Another flight I intend to make in 2024 is from Oakland to San Diego on Spirit . . . ." Dkt. 189 ¶ 2.

**3) Plaintiff Brenda Kay Davis**

Deposition: "Q: But just to be clear, other than the Seattle and Vancouver trip you just discussed, nothing is booked yet; correct? A: Correct." Exhibit 103 at 74:21-24. "Q: The trip to Seattle -- and I apologize if you already answered this -- that you have coming up, what airline are you taking to Seattle? A: I have not booked an airline yet." *Id.* at 77:23-78:1.

Declaration: "I have booked flights on Spirit Airlines from Dallas/Fort Worth to Las Vegas on September 6, 2023, and will be returning on September 9, 2023. My husband and I are travelling to celebrate our wedding anniversary." Dkt. 190 ¶ 2.

**4) Plaintiff Donna Fry**

Deposition: "A: At this time, I have no flights booked for myself, no. . . . Q: And in the next six months, you don't expect to fly Spirit either? A: I don't --- I don't expect to." Exhibit 104 at 51:24-52:13.

Declaration: I "expect to fly Spirit Airlines on October 5, 2023, from Phoenix to Seattle returning on October 16 . . . ." Dkt. 192 ¶ 2.

**5) Plaintiff Harry Garavanian**

Deposition: Q: "[D]o you have any other future flights that you've already booked? A: No." Exhibit 44 at 68:10-12. "Q: And you don't intend to fly in the near future? A: No." *Id.* at 77:22-24.

Declaration: "I currently plan to travel between Boston, MA, or Manchester, NH and Tampa, Florida. . . . Spirit will be my most likely choice." Dkt. 195 ¶ 2.

**6) Plaintiff Yvonne Jocelyn Gardner**

Deposition: "None of the flights you've taken in the last eight years are in or out of Fort Lauderdale, right? A: No, huh-uh." Exhibit 105 at 81:18-21. "Q: Okay. So you haven't booked any future flights as of today? A: No. Huh-uh." *Id.* at 72:10-12.

Declaration: "I have a close friend who lives in the Fort Lauderdale area and I enjoy visiting her often. I currently plan to visit her and fly from Denver to Fort Lauderdale by August of 2024." Dkt. 194 ¶ 2.

**7) Plaintiff Len Marazzo**

Deposition: "Q: Do you have any plans to fly Spirit as of today? A: I don't have anything concrete as of today." Exhibit 57 at 28:19-23.

Declaration: "I am flying from Reno to Las Vegas on Spirit on November 4 to visit my daughter" and "I will be flying from Orlando, Florida to Richmond, Virginia on Spirit on December 13 for a social event." Dkt. 197 ¶ 2.

**8) Plaintiff Timothy Nieboer**

Deposition: "Q: Do you have any tickets booked to fly on Spirit? A: I do not. Q: Do you have a destination chosen that you will be flying to on Spirit? . . . A: No. Not at all." Exhibit 65 at 78:18-79:16.

Declaration: "I currently plan on booking a flight for February 17, 2024 through March 2, 2024 from Detroit, MI to Ft. Lauderdale." Dkt. 199 ¶ 2.

**9) Plaintiff Bill Rubinsohn**

Deposition: "Q: So you don't have any plans to fly Spirit in the near future either? A: Correct. Q: And you have no plans to fly JetBlue or Spirit in the near future? . . . A: I have no plans to fly anybody except [to Hawaii and Vietnam on other airlines]." Exhibit 73 at 98:18-100:5.

Declaration: "I have booked a roundtrip flight on Spirit from Philadelphia to Detroit leaving on December 6 and returning on December 11, 2023. . . . We've also booked roundtrip flights on American to Detroit from Philadelphia leaving September 21, 2023 and returning September 24, 2023. . . ." Dkt. 201 ¶ 2.

**10) Plaintiff Pamela Ward**

Deposition: "Q: But you have not booked any flight -- any tickets on a Spirit flight in the future? A: At this point, no. Exhibit 90 at 66:6-8. "Q: Have you purchased tickets for any air travel in the future? A: Not at this point." *Id.* at 67:24-68:2.

Declaration: "I have plans to travel from Tampa to San Juan on March 9, 2024 and return to Tampa on March 17, 2024. . . . I would prefer to book Spirit." Dkt. 204 ¶ 2.

Plaintiffs offer no explanation for these blatant inconsistencies.[4] Settled law prohibits Plaintiffs from weaponizing untimely and self-contradictory declarations to stave off summary judgment. *See Cleveland*, *supra* at 4, 526 U.S. at 806; *Mahan*, *supra* at 4, 179 F.R.D. at 52-53.

[4] Tellingly, zero Plaintiffs state in their declarations ***when*** they booked these flights or made these newfound flight plans—whether pre-deposition, post-deposition, post-discovery, or post-Motion. Regardless, Plaintiffs have either violated: (a) their Rule 26(e) duty to supplement their verified discovery responses as soon as they made plans to fly Spirit after the close of fact discovery, or (b) Rule 30 by testifying untruthfully during sworn depositions. But perhaps most critically, Plaintiffs' conveniently-timed decision to plan a Spirit flight (many for the first time ever) after

The First Circuit's holding in *Morales v. A.C. Orssleff's EFTF* is instructive. 246 F.3d 32, 33 (1st Cir. 2001). There, a tort plaintiff testified that "he leaped [from a boat] when he thought it was safe." *Id.* at 35. Like Plaintiffs here, following his deposition and only when confronted with a summary judgment motion, the plaintiff in *Morales* signed a declaration that, "by contrast, describes him as having 'no choice' but to jump when he did." *Id.* On appeal from a grant of summary judgment, the First Circuit "refused to allow issues of fact to be created simply by submitting a subsequent contradictory affidavit" and affirmed summary judgment. *Id.*; *see also Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994) ("[W]e think it significant that the affidavit was offered only after defendants had filed motions for summary judgment. In these circumstances, we are persuaded that plaintiff's affidavit should be disregarded in considering the propriety of summary judgment."). Just as in *Cleveland*, *Mahan*, *Morales*, and *Colantuoni*, so too should Plaintiffs' sham declarations be stricken and "disregarded in considering the propriety of summary judgment." *Colantuoni*, 44 F.3d at 5.

2. <u>Plaintiffs' Theory of Harm Upends Article III Standing Doctrine.</u>

Plaintiffs' theory of harm appears to be that ***any*** air traveler who flies on ***any*** airline on practically ***any*** route has standing to challenge the merger because Spirit could hypothetically service that route someday—even if the traveler has never flown Spirit before and does not intend to do so in the future. This is far too thin a reed to establish standing under Article III. *See, e.g.*, *Whalen v. Albertsons Cos. Inc.*, No. 23-00459, 2023 WL 4955141, at *1 (N.D. Cal. Aug. 2, 2023) (all the same twenty-five Plaintiffs lacked standing to challenge a merger as they did not "explain

---

fact discovery and after the Motion was filed does not show that they intend fly Spirit regularly enough in the future such that they can allege concrete, particularized harm from the merger.

how the merger would affect any one of them personally"); *see Carney v. Adams*, 141 S. Ct. 493, 502 (2020) (a plaintiff must "sufficiently differentiate[] himself from a general population").

However, even if we accept Plaintiffs' alleged 585 routes,[5] the undisputed record still establishes that twenty-three Plaintiffs have not flown on Spirit even once, including on any of those 585 routes, during the four years prior to filing their Complaint (and through the close of fact discovery). SUMF Nos. 37, 44, 51, 58, 66, 72, 78, 85, 91, 103, 110, 117, 124, 130, 137, 150, 156, 162, 169, 171, 177, 182, and 189. As such, these twenty-three Plaintiffs fail to prove standing given their nonexistent recent history of flying Spirit. *See Malaney v. UAL Corp.*, No. 10-cv-2858, 2010 WL 3790296, at *13-14 (N.D. Cal. Sept. 27, 2010), *aff'd*, 434 F. App'x 620 (9th Cir. 2011) (many of the same Plaintiffs' future intent to travel was too "speculative and de minimus" to survive summary judgment); *Nypl v. JP Morgan Chase & Co.*, No. 15 civ. 9300, 2023 WL 2712214, at *2 (S.D.N.Y. Mar. 30, 2023) (some of the same Plaintiffs faced no injury because they had not purchased the goods at issue); *O'Neill v. Coca-Cola Co.*, 669 F. Supp. 217, 221, 223 (N.D. Ill. 1987) (requiring relationship to parties or products at issue). As for the two remaining Plaintiffs, over that same timeframe, G. Garavanian flew Spirit on only three of the 585 routes (SUMF Nos. 97, 99; Exhibit 42 at 1, 7, 13, 14, 19, 20; Alioto Decl. Ex. 58 at Ex. A at 6, 8, 9), and Nieboer flew Spirit on only two of the 585 routes. SUMF No. 146; Exhibit 66 at 7; Alioto Decl.

[5] Through the close of fact discovery and service of their expert reports, Plaintiffs' discovery responses alleged the merger would affect 121 city pairs. Long after the close of fact discovery and the Motion was filed (indeed, up to three weeks after serving their expert reports), Plaintiffs now claim harm on "at least 697" routes. Opp. at 7. This is incorrect for multiple reasons. Plaintiffs double-counted 112 non-stop overlap routes to arrive at this figure—identifying 585 distinct routes, not 697. Reply SUMF No. 36. Moreover, although Plaintiffs claim their five-fold route expansion is based on expert discovery, inexplicably, their 283 "Spirit Only Routes" and conjectural future Spirit routes are not even listed in their expert report. The list of 283 "Spirit Only Routes" does appear in the Declaration of Hal Singer, Dkt. 185, which Plaintiffs filed with their Opposition.

Ex. 65 at Ex. A at 7. Given their *de minimis* history flying Spirit on these routes, G. Garavanian and Nieboer also cannot establish "concrete, particularized, and actual or imminent" injury needed for standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

**B. All Twenty-Five Plaintiffs Fail to Establish Irreparable Injury.**

Based on the record evidence, there is no dispute that Plaintiffs fail to establish particularized, irreparable injury from this merger. *In re Nexium (Esomeprazole) Antitrust Litig.*, 309 F.R.D. 107, 137 (D. Mass. July 30, 2015) (Young, J.) (to satisfy the high bar for injunctive relief, plaintiffs must prove (1) inadequacy of money remedies and (2) irreparable injury, among other requirements); *Malaney*, 2010 WL 3790296, at *13 (many of the same Plaintiffs, in another airline merger suit, failed to prove irreparable injury because they alleged harms "suffered by the general air carrier flying public as a whole" and not them personally).

First, Plaintiffs concede the availability and sufficiency of monetary relief by admitting that their "expert's report ***quantifies*** the losses stemming from the higher prices Plaintiffs will be forced to pay" in perpetuity. Opp. at 20 (emphasis added); *see Rohm & Haas Elec. Materials, LLC v. Elec. Cirs. Supplies, Inc.*, 759 F. Supp. 2d 110, 126 (D. Mass. 2010) ("quantifiable" harms are not "irreparable"). Indeed, Plaintiffs now embrace their Passengers Against Mergers Agreement, *see* Mot. at 8, 15-17, which promises to divide money settlements proportionally among Plaintiffs based on investment shares they purchased in the coalition. Opp. at 19. Plaintiffs assert that an award could include fees from winning an injunction; but this is nothing more than wishful thinking since Plaintiffs have never prevailed in enjoining a merger before (including in their six prior airline merger suits). On the other hand, Plaintiffs have repeatedly initiated airline merger suits ostensibly seeking only injunctions before voluntarily accepting settlement funds to dismiss. SUMF Nos. 7-8, 10-11, 17. Although Plaintiffs contend their long history of accepting money in such suits has no bearing on whether money suffices here, they nevertheless concede

that their coalition's mission is exacting pecuniary gain from "all pending and contemplated airline mergers," not just this one—reflecting their view that all airline mergers are indistinguishable. *Id.*

Second, Plaintiffs fail to provide any evidentiary basis for their belief that this merger will cause intangible harms such as "service, quality, flight cancellations, flight availability, and other harms." Opp. at 18. In so arguing, Plaintiffs double down on their "beliefs" that "prior airline mergers," Opp. at 16, caused their "general grievances concerning the state of the airline industry." *Fjord v. AMR Corp. (In re AMR Corp.)*, 625 B.R. 215, 265 (Bankr. S.D.N.Y. 2021) ("[M]any of the [same] Plaintiffs' alleged harms are a laundry list of general grievances concerning the state of the airline industry."). But Plaintiffs cannot point to any causal nexus between these vague intangible harms and ***this merger***. *See id.* (many of the same Plaintiffs' "anecdotal" gripes about all airline mergers "fail[] to establish a causal relationship between these alleged harms and the [instant] [m]erger"). Unmoored to the evidentiary record, their subjective "beliefs" are insufficient to survive summary judgment. *See Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6-7 (1st Cir. 1991) ("speculative injury does not constitute a showing of irreparable harm") (cleaned up).

In the end, Plaintiffs' speculative harms are non-personalized, compensable, and not attributable to this merger. Injunctive relief is an extraordinary remedy. It is not warranted here.

**C. The Court Will Decide Whether an Injunction Should Issue in the DOJ Case.**

Plaintiffs set up a strawman by asserting that "resolution of the government's case cannot as a matter of law prevent Plaintiffs' action from proceeding." Opp. at 20. In making this argument, Plaintiffs rely on a single non-merger case from the 1950s, *United States v. Borden*, 347 U.S. 514 (1954), in which the Court unremarkably held that DOJ could still seek relief following settlement of a private lawsuit. But JetBlue and Spirit do not argue that Plaintiffs have no right to seek an injunction, nor do Defendants argue that Plaintiffs cannot bring a lawsuit under Section 7. Rather, in the circumstances presented here, in deciding whether DOJ should receive injunctive

relief under Section 7, the Court will necessarily decide whether the merger should be enjoined. Thus, resolution of the DOJ action will moot Plaintiffs' request for injunctive relief.

## III. CONCLUSION

For these reasons, JetBlue and Spirit's motion for summary judgment should be granted.

Dated: September 5, 2023

*/s/ Elizabeth M. Wright*
Zachary R. Hafer (MA BBO #569389)
Elizabeth M. Wright (MA BBO #569387)
Zachary Sisko (MA BBO # 705883)
Cooley LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Tel: 617-937-2300
zhafer@cooley.com
ewright@cooley.com
zsisko@cooley.com

Ethan Glass (*Pro Hac Vice*)
Deepti Bansal (*Pro Hac Vice forthcoming*)
Matt K. Nguyen (*Pro Hac Vice*)
Cooley LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 2004-2400
Tel: 202-842-7800
Fax: 202-842-7899
eglass@cooley.com
dbansal@cooley.com
mnguyen@cooley.com

*Attorneys for Defendant JetBlue Airways Corporation*

*/s/ Andrew C. Finch*
Andrew C. Finch (*pro hac vice*)
Eyitayo St. Matthew-Daniel (*pro hac vice*)
Jay Cohen (*pro hac vice*)
Jared P. Nagley (*pro hac vice*)
Kate Wald (*pro hac vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas

New York, NY 10019
Tel: 212-373-3000
Fax: 212-757-3990
afinch@paulweiss.com
tstmatthewdaniel@paulweiss.com
jcohen@paulweiss.com
jnagley@paulweiss.com
kwald@paulweiss.com

Meredith R. Dearborn (*pro hac vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel: 628-432-5100
Fax: 628-232-3101
mdearborn@paulweiss.com

*Attorneys for Defendant*
*Spirit Airlines, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system on September 5, 2023 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Elizabeth M. Wright*
Elizabeth M. Wright

290307370