## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GABRIEL GARAVANIAN, et al., | ) ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) Civil Action No. 1:23-cv-10678-WGY ) |
| JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC., | ) ) ) |
| *Defendants*. | ) ) ) ) |

## DEFENDANTS' REPLY STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants respectfully submit this Reply Statement of Undisputed Material Facts in support of their Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment.  Defendants' replies to Plaintiffs' responses to Defendants' statement of undisputed facts are detailed below under "Defendants' Reply."  All exhibits referenced in "Defendants' Reply" unless otherwise noted are Defendants' Exhibits that are referenced and attached to the Declaration of Elizabeth M. Wright in Support of Defendants' Motion for Summary Judgment (Dkt. 175) (Exhibits 1-100) and the Declaration of Elizabeth M. Wright in Support of Reply Memorandum in Support of Motion for Summary Judgment (Exhibits 101-106) ("Wright Reply Decl.") (filed concurrently herewith).  As set forth in Defendants' Reply brief, Defendants object to Plaintiffs' reliance on belated discovery responses (served after depositions, after the close of fact discovery, after their service of expert reports, and after Defendants filed their Motion), as well as to Plaintiffs' use of untimely, self-contradictory declarations in opposing Defendants' Motion.  The belated discovery responses and the sham declarations were manufactured to oppose summary judgment and should not be considered by the Court.  *See generally* Defendants' Reply Brief.

## I.     Background

1.     On July 28, 2022, JetBlue and Spirit executed a final merger agreement. JetBlue Airways Corp., Sundown Acquisition Corp. & Spirit Airways, Inc., Agreement and Plan of Merger (July 28, 2022), https://www.sec.gov/Archives/edgar/data/1498710/000119312522204192/d368049dex21.htm.

Plaintiff's Response No. 1:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 1:

Undisputed and therefore admitted.  *See* Local Rule ("L.R.") 56.1.

2.      On November 3, 2022, Plaintiffs Katherine R. Arcell, Jose M. Brito, Jan-Marie Brown, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Don Freeland, Donna Fry, Harry Garavanian, Gabriel Garavanian, Yvonne Jocelyn Garner, Valarie Ann Jolly, Michael C. Malaney, Len Marazzo, Lisa McCarthy, Timothy Nieboer, Deborah M. Pulfer, Bill Rubinsohn, Sondra K. Russell, June Stansbury, Clyde D. Stensrud, Gary Talewsky, Pamela S. Ward, and Christine Whalen (collectively, "Plaintiffs") filed a Complaint in the Northern District of California seeking to prohibit the acquisition of Spirit by JetBlue, captioned *Garavanian v. JetBlue Airways Corp.*, No. 22-cv-6841-JSW (N.D. Cal.). Dkt. 1.

Plaintiff's Response No. 2:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 2:

Undisputed and therefore admitted.  *See* L.R. 56.1.

3.      On March 17, 2023, the U.S. District Court for the Northern District of California transferred the case to the U.S. District Court for the District of Massachusetts.  Joint Stipulation and Order to Transfer Pursuant to 28 U.S.C. § 1404. Dkt. 35.

Plaintiff's Response No. 3:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 3:

Undisputed and therefore admitted.  *See* L.R. 56.1.

4.      Plaintiffs do not seek to bring this action as representatives of a class of airline travelers.  *See generally* Dkt. 1.

3

<u>Plaintiff's Response No. 4:</u>

Undisputed.

<u>Defendants' Reply to Plaintiffs' Response No. 4</u>:

Undisputed and therefore admitted.  *See* L.R. 56.1.

5.   Plaintiffs only seek injunctive relief and do not seek damages.  Dkt. 1 at Prayer for Relief.

<u>Plaintiff's Response No. 5:</u>

Undisputed.

<u>Defendants' Reply to Plaintiffs' Response No. 5</u>:

Undisputed and therefore admitted.  *See* L.R. 56.1.

## II.   Plaintiffs' Prior Litigation History

6.   Various subsets of Plaintiffs filed lawsuits to enjoin six prior airline merger antitrust lawsuits, including *D'Augusta v. Northwest Airlines Corp.*, No. 08-cv-3007 (N.D. Cal.); *Malaney v. UAL Corp.*, No. 10-cv-02858 (N.D. Cal.); *Taleff v. Southwest Airlines Co.*, No. 11-cv-02179 (N.D. Cal.); *Fjord v. AMR Corp. (In re AMR Corp.)*, No. 13-01392 (Bankr. S.D.N.Y.); *Fjord v. U.S. Airways Grp., Inc.*, No. 13-cv-3041 (N.D. Cal.); and *Grace v. Alaska Air. Grp., Inc.*, No. 16-cv-5165 (N.D. Cal.).  None of these lawsuits successfully blocked the challenged mergers.

<u>Plaintiff's Response No. 6:</u>

Objections.  Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time. Fed. R. Evid. 401, 403.  Purported fact is not supported by a citation to any evidence.  LR Rule 56.1.  This purported fact is not supported by any admissible evidence.  FRCP Rule 56.

<u>Defendants' Reply to Plaintiffs' Response No. 6</u>:

Plaintiffs do not dispute the facts in this paragraph, and their objections should be overruled.  The Court may take judicial notice of proceedings in other federal courts to establish the existence and nature of the litigation and their resolution.  *See* Fed. R. Evid. 201; *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-

accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."); *Clark v. Kitt.*, 2014 WL 4054284, at *8 (S.D.N.Y. Aug. 15, 2014), *aff'd* 619 F. App'x 34 (2d Cir. 2015) (judicial notice proper "to establish the existence of [related] litigation, what claims were asserted, and what issues were argued and decided"); *United States v. Kindred Healthcare, Inc.*, 469 F. Supp. 3d 431, 438 n.3 (E.D. Pa. 2020) (explaining "the Court may take judicial notice of … court filings that are publicly filed on the docket of a district court"). The cited cases are relevant and not unfairly prejudicial because they involve the same Plaintiffs' serial challenges to mergers, and they tend to show that Plaintiffs will not suffer an irreparable injury and that money would adequately address Plaintiffs' grievances. Fed. R. Evid. 401, 402, 403.

7.   In *D'Augusta v. Northwest Airlines Corp.*, on June 18, 2008, 15 of the Plaintiffs filed a complaint in the District Court for the Northern District of California. No. 08-cv-3007 (N.D. Cal. June 18, 2008), ECF No. 2.  The complaint sought to enjoin a merger between Delta Airlines and Northwest Airlines pursuant to §§ 7 and 16 of the Clayton Act, claiming that the *D'Augusta* Plaintiffs faced "irreparable harm" from the merger. *Id.* ¶ 21.  The Plaintiffs in *D'Augusta* included:  Rosemary D'Augusta, Carolyn Fjord, Donna Fry, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valarie Ann Jolly, Michael C. Malaney, Lisa McCarthy, Deborah M. Pulfer, Sondra K. Russell, June Stansbury, Clyde D. Stensrud, Gary Talewsky, and Pamela S. Ward (the "*D'Augusta* Plaintiffs"). *Id.* ¶ 3.

> Plaintiff's Response No. 7:
>
> Objections.  Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time. Fed. R. Evid. 401, 403.  This purported fact is not supported by any admissible evidence. Fed. R. Civ. Proc. Rule 56.
>
> Defendants' Reply to Plaintiffs' Response No. 7:
>
> Plaintiffs do not dispute the facts in this paragraph, and their objections should be overruled for the same reasons described in Defendants' Reply to Plaintiffs' Response No. 6.

8.   On or about October 29, 2008—two days prior to trial—the *D'Augusta* Plaintiffs voluntarily dismissed their suit.  *See D'Augusta*, ECF No. 90.  The *D'Augusta* Plaintiffs agreed to

do so in exchange for a monetary payment of $5 million and nothing else.  *See* Exhibit 1 at 31 (Post-Hearing Mem., *Malaney v. UAL Corp.*, No. 10-cv-02858 (N.D. Cal. Sept. 13, 2010), ECF No. 119).

> Plaintiff's Response No. 8:
>
> Objections.  Hearsay FRE Rule 802; Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time.  Fed. R. Evid. 401, 403.  This purported fact is not supported by any admissible evidence. FRCP Rule 56.
>
> Defendants' Reply to Plaintiffs' Response No. 8:
>
> Plaintiffs do not dispute the facts in this paragraph and their objections should be overruled for the same reasons described in Defendants' Reply to Plaintiffs' Response No. 6.  In addition, the exhibits at issue are not hearsay because they are statements of an opposing party under Fed. R. Evid. 801(d)(2).

9.      Plaintiffs refused to produce all discovery regarding the *D'Augusta* settlement in this case, asserting that such discovery would violate a "confidential court order." Plaintiffs have refused to produce, or even describe, those confidentiality provisions to Defendants.  Exhibit 9 at 9 (Correspondence from M. Nguyen to L. Papale); Exhibit 3 at 1 (Correspondence from M. Nguyen to L. Papale).

> Plaintiff's Response No. 9:
>
> Objections.  Hearsay.  Fed. R. Evid. 802.  Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time.  Fed. R. Evid. 401, 403.  This purported fact is not supported by any admissible evidence.  Fed. R. Civ. Proc. Rule 56.
>
> Defendants' Reply to Plaintiffs' Response No. 9:
>
> Plaintiffs do not dispute the facts in this paragraph, and their objections should be overruled.   The cited correspondence supporting this fact is admissible as a statement of an opposing party and is relevant to establishing whether Plaintiffs have suffered irreparable injury and whether a monetary settlement would be adequate to address Plaintiffs' grievances. Fed. R. Evid. 801(d)(2), 401, 402, 403. The cited documents are relevant to establishing whether Plaintiffs have suffered

irreparable injury and whether a monetary settlement would be adequate to address Plaintiffs' grievances. *Id.*

10.     Joseph Alioto, the *D'Augusta* Plaintiffs' counsel and Plaintiffs' attorney of record in this case, was quoted in the Las Vegas Sun on June 30, 2010, stating the *D'Augusta* suit "was successful." Exhibit 4 at 3. Despite the fact that the *D'Augusta* suit did "not result in an order blocking [the] merger," Alioto was quoted as saying Plaintiffs "received a very favorable settlement, an offer we couldn't refuse. Two days before the trial, the defendants offered and the plaintiffs accepted a settlement." *Id.*

> Plaintiff's Response No. 10:
>
> Objections. Hearsay. FRE Rule 802. Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time. Fed. R. Evid. 401, 403. This purported fact is not supported by any admissible evidence. FRCP Rule 56.
>
> Defendants' Reply to Plaintiffs' Response No. 10:
>
> Plaintiffs do not dispute the facts in this paragraph and their objections should be overruled. The cited correspondence supporting this fact is admissible as a statement of an opposing party and is relevant to establishing whether Plaintiffs have suffered irreparable injury and whether a monetary settlement would be adequate to address Plaintiffs' grievances. Fed. R. Evid. 801(d)(2), 401, 402, 403.

11.     In 2008, 15 Plaintiffs executed a Passengers Against Mergers Agreement ("PAMA"). Exhibit 5 at 1. The PAMA, dated April 2008, sought to "raise $100,000 to fund an immediate legal filing for an injunction . . . to halt all pending and contemplated airline mergers" because "mergers are not to the benefit of the traveling public or the towns and cities served by said airlines." *Id.* Under the PAMA, each participant purchased "shares" with the understanding that the more shares they bought, the greater their economic return if the cases resulted in financial payout. *Id.* (stating that signatories would "receive a portion of any award from the Alioto Law Firm … in the same proportion to the shares purchased by that individual"). The PAMA was signed by all of the *D'Augusta* Plaintiffs. *Id.*

Plaintiff's Response No. 11:

Objections.   Hearsay (FRE Rule 802); Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time.  Fed. R. Evid. 401, 403.  This purported fact is not supported by any admissible evidence.  Fed. R. Civ. Proc. Rule 56.

Defendants' Reply to Plaintiffs' Response No. 11:

Plaintiffs do not dispute the facts in this paragraph, and their objections should be overruled.  The cited agreement is admissible as a statement of an opposing party under Fed. R. Evid. 801(d)(2).  It is relevant to establishing whether Plaintiffs have suffered irreparable injury and whether a monetary settlement would be adequate to address Plaintiffs' grievances, and not unduly prejudicial.  Fed. R. Evid. 401, 402, 403.  Plaintiffs do not dispute that they entered into the PAMA coalition, and in fact embraced its terms in their opposition brief.  Dkt. 184 at 18 ("Plaintiffs challenged six of these mergers, even forming a group (Passengers Against Mergers) . . . The agreement Plaintiffs signed divided among themselves 'any award' obtained from the Court, which includes court-awarded fees for winning injunctions of unlawful mergers, not just settling cases.").

12.     In *Malaney v. UAL Corp.*, No. 10-CV-02858 (N.D. Cal. June 29, 2010), 22 of the Plaintiffs brought claims under §§ 7 and 16 of the Clayton Act to enjoin the merger between United Air Lines and Continental Airlines.  Their claims were dismissed for failure to state a claim because they could not demonstrate irreparable harm or a viable relevant market.  *See Malaney v. UAL Corp.*, No. 10-CV-02858, 2010 WL 3790296, at *12-13 (N.D. Cal. Sept. 27, 2010).  The Ninth Circuit affirmed, 434 F. App'x 620 (9th Cir. 2011), and the Supreme Court denied *certiorari*. 565 U.S. 1094 (2011).  The Plaintiffs who participated in the *Malaney* case included Katherine R. Arcell, Jose M. Brito, Jan- Marie Brown, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Donald Freeland, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valerie Jolly, Michael C. Malaney, Len Marazzo, Lisa McCarthy, Deborah Pulfer, Bill Rubinsohn, Sondra Russell, Clyde D. Stensrud, Gary Talewsky, Pamela S. Ward, and Christine Whalen.  *See* Complaint, *Malaney v. UAL Corp.*, No. 10-CV-02858 (N.D. Cal. June 29, 2010), ECF No. 1.

Plaintiff's Response No. 12:

Objection. Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time. Fed. R. Evid. 401, 403. This purported fact is not supported by any admissible evidence. Fed. R. Civ. Proc. Rule 56.

Defendants' Reply to Plaintiffs' Response No. 12:

Plaintiffs do not dispute the facts in this paragraph, and their objections should be overruled for the same reasons described in Defendants' Reply to Plaintiffs' Response No. 6.

13.     In *Taleff v. Southwest Airlines Co.*, No. 11-cv-02179 (N.D. Cal. May 3, 2011), 21 of the Plaintiffs brought claims under §§ 7 and 16 of the Clayton Act one day after Southwest acquired AirTran Holdings, Inc., seeking divestiture. Plaintiffs sought and failed to obtain a temporary restraining order from the district court and, during the appeal of that order, the Ninth Circuit sanctioned Plaintiffs' counsel for their conduct and awarded attorneys' fees to defendant/appellees. Order, *Taleff v. Southwest Airlines Co.*, No. 11-16173 (9th Cir. Aug. 30, 2011), ECF No. 31. The Northern District of California subsequently dismissed the complaint for failure to establish irreparable harm, and for failure to establish entitlement to the extraordinary remedy of divestiture. *See Taleff v. Southwest Airlines Co.*, 828 F. Supp. 2d 1118 (N.D. Cal. 2011). Plaintiffs then filed an "emergency appeal" to the Ninth Circuit, which was also unsuccessful. *See Taleff v. Southwest Airlines Co.*, 554 F. App'x 598 (9th Cir. 2014). Plaintiffs who participated in the *Taleff* case included Katherine R. Arcell, Jose M. Brito, Jan-Marie Brown, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Don Freeland, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valarie Ann Jolly, Michael C. Malaney, Len Marazzo, Lisa McCarthy, Deborah M. Pulfer, Bill Rubinsohn, Sondra Russell, Clyde Stensrud, Gary Talewsky, Pamela S. Ward, and Christine Whalen. *See* Complaint, *Taleff v. Southwest Airlines Co.*, No. 11-cv-02179 (N.D. Cal. May 3, 2011), ECF No. 1.

Plaintiff's Response No. 13:

Objection.  Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time. Fed. R. Evid. 401, 403.  This purported fact is not supported by any admissible evidence. Fed. R. Civ. Proc. Rule 56.

Defendants' Reply to Plaintiffs' Response No. 13:

Plaintiffs do not dispute the facts in this paragraph, and their objections should be overruled for the same reasons described in Defendants' Reply to Plaintiffs' Response No. 6.

14.    In *Fjord v. U.S. Airways Grp., Inc.*, No. 13-cv-03041 (N.D. Cal. July 2, 2013), 22 of the Plaintiffs brought claims under §§ 7 and 16 of the Clayton Act to enjoin the merger between American Airlines and U.S. Airways.  This case was voluntarily dismissed less than three months after it was filed.  Plaintiffs who participated in the *Fjord v. U.S. Airways* case included Katherine R. Arcell, Jose M. Brito, Jan-Marie Brown, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Donald Freeland, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valerie Jolly, Michael C. Malaney, Len Marazzo, Lisa McCarthy, Deborah M. Pulfer, Bill Rubinsohn, Sondra K. Russell, June Stansbury, Clyde D. Stensrud, Gary Talewsky, and Pamela S. Ward.  *See* Complaint, *Fjord v. U.S. Airways Grp., Inc.*, No. 13-cv-03041 (N.D. Cal. July 2, 2013), ECF No. 1.

Plaintiff's Response No. 14:

Objection.  Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time. Fed. R. Evid. 401, 403.  This purported fact is not supported by any admissible evidence.  Fed. R. Civ. Proc. Rule 56.

Defendants' Reply to Plaintiffs' Response No. 14:

Plaintiffs do not dispute the facts in this paragraph, and their objections should be overruled for the same reasons described in Defendants' Reply to Plaintiffs' Response No. 6.

15.     In *Fjord v. AMR Corp. (In re AMR Corp.)*, No. 13-01392 (Bankr. S.D.N.Y. Aug. 6, 2013), 23 of the Plaintiffs brought claims under §§ 7 and 16 of the Clayton Act to unwind the merger of U.S. Airways and American Airlines.  Plaintiffs' claims were denied.  625 B.R. 215 (Bankr. S.D.N.Y. 2021).  The Second Circuit affirmed, No. 22-901, 2023 WL 2563879 (2d Cir. Mar. 20, 2023), and Plaintiffs filed a petition for a writ of *certiorari*, still pending before the Supreme Court, No. 22-901 (June 22, 2023).  Plaintiffs participating in the *AMR Corp.* case include Katherine R. Arcell, Jose M. Brito, Jan-Marie Brown, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Don Freeland, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valerie Anne Jolly, Michael C. Malaney, Len Marazzo, Lisa McCarthy, Deborah M. Pulfer, Bill Rubinsohn, Sondra K. Russell, June Stansbury, Clyde D. Stensrud, Gary Talewsky, Pamela S. Ward, and Christine Whalen.  *See* Complaint, *Fjord v. AMR Corp.  (In re AMR Corp.)*, No. 13-01392 (Bankr. S.D.N.Y. Aug. 6, 2013), ECF No. 1.

Plaintiff's Response No. 15:

Objection.  Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time. Fed. R. Evid. 401, 403.  This purported fact is not supported by any admissible evidence. Fed. R. Civ. Proc. Rule 56.

Defendants' Reply to Plaintiffs' Response No. 15:

Plaintiffs do not dispute the facts in this paragraph, and their objections should be overruled for the same reasons described in Defendants' Reply to Plaintiffs' Response No. 6.

16.     In *Grace v. Alaska Air Grp.*, No. 16-cv-05165 (N.D. Cal. Sept. 7, 2016), 23 of the Plaintiffs brought claims under §§ 7 and 16 of the Clayton Act to enjoin the merger of Alaska

Airlines and Virgin America.  Plaintiffs who participated in the *Alaska Air* case included Katherine R. Arcell, Jose M. Brito, Jan-Marie Brown, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Don Freeland, Donna Fry, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valerie Ann Jolly, Michael C. Malaney, Len Marazzo, Lisa McCarthy, Deborah M. Pulfer, Bill Rubinsohn, Sondra K. Russell, June Stansbury, Clyde D. Stensrud, Gary Talewsky, and Pamela S. Ward.  *See* Complaint, *Grace v. Alaska Air Grp.*, No. 16-cv-05165 (N.D. Cal. Sept. 7, 2016), ECF No. 1.

> Plaintiff's Response No. 16:
>
> Objection.  Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time.  Fed. R. Evid. 401, 403.  This purported fact is not supported by any admissible evidence.  Fed. R. Civ. Proc. Rule 56.
>
> Defendants' Reply to Plaintiffs' Response No. 16:
>
> Plaintiffs do not dispute the facts in this paragraph, and their objections should be overruled for the same reasons described in Defendants' Reply to Plaintiffs' Response No. 6.

17.    *Grace v. Alaska Air Grp.* was settled three months after it was filed.  During her deposition in this case, Plaintiff Valerie Ann Jolly, who was also a plaintiff in the *Alaska Air* case, testified as to the *Alaska Air* settlement: "I think -- I think we did reach a settlement in that one."  Exhibit 50 at 130:22-24 ("Q: Turning over to *Grace v. Alaska*, did you reach a settlement in that case? Jolly A: I am not sure.  I think -- I think we did reach a settlement in that one.").  That settlement did not prevent the merger of Alaska Airlines and Virgin America.  *Id.*  After they settled in the *Alaska Air* case, several Plaintiffs admitted in depositions in this litigation that the outcome of the Alaska Air merger "wasn't important to [them]" or even memorable because "once it's over and done with, you just go forward." Exhibit 47 at 111:6-112:5 ("Q: Ms. Gardner, do you recall the outcome of that case [*Grace v. Alaska*]? Gardner A: I do.  Q: Did the airlines merge?

Gardner A: Um, I don't know if they did or not. . . . Q: So you were a plaintiff in *Grace v. Alaska*, but you don't know what the outcome is in terms of the merger? Gardner A: No.  Q: You didn't look it up? Gardner A: No.  Q: It wasn't important to you? Gardner A: No."); Exhibit 19 at 113:17-114:6 ("Q: Do you recall what airline merged with Alaska? Brown A: No.  I'm sorry.  Q: You just forget about them, right? Brown A: Pretty much.  I mean it -- you know, once it's over and done with, you just go forward.").

> Plaintiff's Response No. 17:
>
> Objection.  Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time. Fed. R. Evid. 401, 403.  This purported fact is not supported by any admissible evidence. Fed. R. Civ. Proc. Rule 56.
>
> Defendants' Reply to Plaintiffs' Response No. 17:
>
> Plaintiffs do not dispute the facts in this paragraph, and their objections should be overruled.  The statements in paragraph 17 were made during the depositions of Ms. Jolly, Ms. Gardner, and Ms. Brown in this matter, and are statements of a party opponent.  Fed. R. Evid. 801(d)(2).  These statements are relevant to establishing whether Plaintiffs have suffered irreparable injury and whether a monetary settlement would be adequate to address Plaintiffs' grievances, and are not unduly prejudicial.  Fed. R. Evid. 401, 402, 403.

18.    In *Prosterman v. Airline Tariff Publishing Co.*, No. 16-cv-02017 (N.D. Cal. Apr. 18, 2016), 24 of the Plaintiffs brought a claim under §§ 4 and 16 of the Clayton Act alleging a price fixing conspiracy by airlines.  The case was dismissed for failure to state a claim.  2016 WL 7157667 (N.D. Cal. Dec. 8, 2016).  The Ninth Circuit affirmed.  747 F. App'x 458 (9th Cir. 2018). The Supreme Court denied *certiorari*.  139 S. Ct. 1342 (2019).  Plaintiffs who participated in the *Prosterman* case included Katherine R. Arcell, Jose Brito, Jan-Marie Brown, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Don Freeland, Donna Fry, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valarie Ann Jolly, Michael C. Malaney, Len Marazzo, Lisa McCarthy, Deborah M. Pulfer, Bill Rubinsohn, Sondra K. Russell, June

Stansbury, Clyde D. Stensrud, Gary Talewsky, Pamela S. Ward, and Christine Whalen. *See* Complaint, *Prosterman v. Airline Tariff Publ'g Co.*, No. 16-cv-02017 (N.D. Cal. April 18, 2016), ECF No. 1.

> Plaintiff's Response No. 18:
>
> Objection. Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time. Fed. R. Evid. 401, 403. This purported fact is not supported by any admissible evidence. Fed. R. Civ. Proc. Rule 56.
>
> Defendants' Reply to Plaintiffs' Response No. 18:
>
> Plaintiffs do not dispute the facts in this paragraph, and their objections should be overruled for the same reasons described in Defendants' Reply to Plaintiffs' Response No. 6.

19. In *Nypl v. JP Morgan Chase & Co.*, 15-cv-09300 (S.D.N.Y. May 21, 2015), three of the Plaintiffs brought claims under the antitrust laws alleging a conspiracy to fix prices in foreign exchange markets. The court granted summary judgment against the plaintiffs for, *inter alia*, failing to provide evidence of economic harm. 2023 WL 2712214, at *2–6 (S.D.N.Y. Mar. 30, 2023). Plaintiffs who participated in the *Nypl* case included Lisa McCarthy, Valarie Ann Jolly, and Bill Rubinsohn. *See* Complaint, *Nypl v. JP Morgan Chase & Co.*, 15-cv-09300 (S.D.N.Y. May 21, 2015), ECF No. 1.

> Plaintiff's Response No. 19:
>
> Objection. Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time. Fed. R. Evid. 401, 403. This purported fact is not supported by any admissible evidence. Fed. R. Civ. Proc. Rule 56.

Defendants' Reply to Plaintiffs' Response No. 19:

Plaintiffs do not dispute the facts in this paragraph, and their objections should be overruled for the same reasons described in Defendants' Reply to Plaintiffs' Response No. 6.

20.     In *Arcell v. Google LLC*, 22-cv-02499 (N.D. Cal. Apr. 22, 2022), 24 of the Plaintiffs brought claims, *inter alia*, under §§ 4 and 16 of the Clayton Act alleging that Apple and Google agreed not to compete in the search business.  The court heard the defendants' motion to dismiss in June 2023.  Plaintiffs who are participating in the *Google* case are Katherine R. Arcell, Jose M. Brito, Jan-Marie Brown, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Don Freeland, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valarie Ann Jolly, Michael C. Malaney, Len Marazzo, Lisa McCarthy, Timothy Nieboer, Deborah M. Pulfer, Bill Rubinsohn, Sondra K. Russell, June Stansbury, Clyde D. Stensrud, Gary Talewsky, Pamela S. Ward, and Christine Whalen. *See* Complaint, *Arcell v. Google LLC*, 22-cv-02499 (N.D. Cal. Apr. 22, 2022), ECF No. 1.

Plaintiff's Response No. 20:

Objection.  Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time. Fed. R. Evid. 401, 403.  This purported fact is not supported by any admissible evidence. Fed. R. Civ. Proc. Rule 56.

Defendants' Reply to Plaintiffs' Response No. 20:

Plaintiffs do not dispute the facts in this paragraph, and their objections should be overruled for the same reasons described in Defendants' Reply to Plaintiffs' Response No. 6.

21.     In *McCarthy v. Intercontinental Exchange, Inc.*, No. 20-cv-5832 (N.D. Cal. Aug. 18, 2020), all 25 of the Plaintiffs in the present lawsuit challenged ICE LIBOR rate- setting, alleging a hub-and-spoke conspiracy by banks and rate-setting entities pursuant to §§ 4 and 16 of the Clayton Act.  The court dismissed plaintiffs' claims for failure to allege antitrust standing,

noting the "cavalier" approach they took to the issue.  2022 WL 4227247, at *3-4 (N.D. Cal. Sept.

13, 2022).  All of the Plaintiffs in this case participated in the *Intercontinental Exchange* case.  *See*

Complaint, *McCarthy v. Intercontinental Exch., Inc.*, No. 20-cv-5832 (N.D. Cal. Aug. 18, 2020),

ECF No. 1.

> Plaintiff's Response No. 21:
>
> Objection.  Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time. Fed. R. Evid. 401, 403.  This purported fact is not supported by any admissible evidence.  Fed. R. Civ. Proc. Rule 56.
>
> Defendants' Reply to Plaintiffs' Response No. 21:
>
> Plaintiffs do not dispute the facts in this paragraph, and their objections should be overruled for the same reasons described in Defendants' Reply to Plaintiffs' Response No. 6.

22.   In *D'Augusta v. American Petroleum Institute*, No. 22-cv-01979 (N.D. Cal. Mar.

28, 2022), 23 of the Plaintiffs alleged an antitrust conspiracy between United States, Saudi Arabia,

Russia, American Petroleum Institute, Chevron, ExxonMobil, and others to stop a price war for

gasoline.  The case was dismissed for lack of standing, based on the application of certain

governmental immunities.  2023 WL 137474 (N.D. Cal. Jan. 9, 2023).  Plaintiffs who participated

in the *American Petroleum* case included Mary Katherine R. Arcell, Jose M. Brito, Jan-Marie

Brown, Yvonne Jocelyn Gardner, Rosemary D'Augusta, Brenda K. Davis, Pamela Faust, Carolyn

Fjord, Don Freeland, Gabriel Garavanian, Valarie Ann Jolly, Michael C. Malaney, Len Marazzo,

Lisa McCarthy, Timothy Nieboer, Deborah M. Pulfer, Bill Rubinsohn, Sondra K. Russell, June

Stansbury, Clyde D. Stensrud, Gary Talewsky, Pamela S. Ward, and Christine Whalen.  *See*

Complaint, *D'Augusta v. Am. Petroleum Inst.*, No. 22-cv-01979 (N.D. Cal. Mar. 28, 2022), ECF

No. 1.

Plaintiff's Response No. 22:

Objection.  Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time. Fed. R. Evid. 401, 403.  This purported fact is not supported by any admissible evidence.  Fed. R. Civ. Proc. Rule 56.

Defendants' Reply to Plaintiffs' Response No. 22:

Plaintiffs do not dispute the facts in this paragraph, and their objections should be overruled for the same reasons described in Defendants' Reply to Plaintiffs' Response No. 6.

23.     In *Bradt v. T-Mobile US, Inc.*, No. 19-cv-7752 (N.D. Cal. Nov. 25, 2019), 20 of the Plaintiffs challenged the merger of T-Mobile and Sprint in the telecommunications industry under §§ 7 and 16 of the Clayton Act.  The court denied plaintiffs' request for preliminary injunctive relief, in part because plaintiffs' mere speculation about irreparable harm could be remedied by monetary damages.  2020 WL 1809716 (N.D. Cal. Feb. 28, 2020).  The ruling is currently pending appeal.  Plaintiffs participating in the *Bradt* case include Katherine R. Arcell, Jose M. Brito, Brenda K. Davis, Pamela Faust, Carolyn Fjord, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valarie Ann Jolly, Michael Malaney, Len Marazzo, Lisa McCarthy, Timothy Nieboer, Deborah M. Pulfer, Bill Rubinsohn, Sondra K. Russell, June Stansbury, Clyde D. Stensrud, Gary Talewsky, Pamela S. Ward, and Christine Whalen.  *See* Complaint, *Bradt v. T-Mobile US, Inc.*, No. 19-cv-7752 (N.D. Cal. Nov. 25, 2019), ECF No. 1.

Plaintiff's Response No. 23:

Objection.  Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time. Fed. R. Evid. 401, 403.  This purported fact is not supported by any admissible evidence.  Fed. R. Civ. Proc. Rule 56.

Defendants' Reply to Plaintiffs' Response No. 23:

Plaintiffs do not dispute the facts in this paragraph, and their objections should be overruled for the same reasons described in Defendants' Reply to Plaintiffs' Response No. 6.

24.     In *Whalen v. Albertson's Cos.*, No. 23-cv-00459 (N.D. Cal. Feb. 2, 2023), 24 of the Plaintiffs challenged the merger of Albertson's and Kroger in the grocery industry.  The case was fully briefed on defendants' motion to dismiss for, *inter alia*, plaintiffs' failure to plead standing. *See* Mot. to Dismiss & Mem. of P.&A.'s in Supp. at 8, *Whalen v. Albertson's Cos.*, No. 23-cv-00459 (N.D. Cal. Apr. 12, 2023), ECF No. 40.   Plaintiffs participating in the *Albertson's* case include Katherine R. Arcell, Jose M. Brito, Jan-Marie Brown, Rosemary D'Augusta, Brenda K. Davis, Pam Faust, Carolyn Fjord, Don Freeland, Gabriel Garavanian, Harry Garavanian, Yvonne Jocelyn Gardner, Valarie Ann Jolly, Michael C. Malaney, Len Marazzo, Lisa McCarthy, Tim Nieboer, Deborah M. Pulfer, Bill Rubinsohn, Sondra K. Russell, June Stansbury, Clyde D. Stensrud, Gary Talewsky, Pamela S. Ward, and Christine S. Whalen. *See* Complaint, *Whalen v. Albertson's Cos.*, No. 23-cv-00459 (N.D. Cal. Feb. 2, 2023), ECF No. 1.

Plaintiff's Response No. 24:

Objection.  Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time. Fed. R. Evid. 401, 403.  This purported fact is not supported by any admissible evidence.  Fed. R. Civ. Proc. Rule 56.

Defendants' Reply to Plaintiffs' Response No. 24:

Plaintiffs do not dispute the facts in this paragraph, and their objections should be overruled for the same reasons described in Defendants' Reply to Plaintiffs' Response No. 6.

25.     In *Tam Travel, Inc. v. Delta Airlines, Inc.*, No. 03-cv-30001 (N.D. Ohio Dec. 30, 2003), 8 of the Plaintiffs (and several of their associated travel agencies) brought claims under §§ 7 and 16 of the Clayton Act alleging price-fixing among numerous airlines.  The *Tam Travel*

case was consolidated into a multi-district litigation, which was dismissed for failure to state a claim. *In re Travel Agent Comm'n Antitrust Litig.*, No. 03-cv-30000, 2007 WL 3171675, at *7 (N.D. Ohio Oct. 29, 2007).  That decision was affirmed by the Sixth Circuit, 583 F.3d 896 (6th Cir. 2009), and the Supreme Court denied *certiorari*.  562 U.S. 1134 (2011).  Plaintiffs who participated in the *Tam Travel* case included Katherine R. Arcell, Brenda K. Davis, Carolyn Fjord, Gabriel Garavanian, Harry Garavanian, Bill Rubinsohn, and Christine S. Whalen.  *See* Complaint, *Tam Travel, Inc. v. Delta Airlines, Inc.*, No. 03-cv-30001 (N.D. Ohio Dec. 30, 2003), ECF No. 1-1.

> ### Plaintiff's Response No. 25:
>
> Objection.  Irrelevant, lacks probative value, inadmissible, unfairly prejudicial, confuses issues, admission of facts will result in undue delay and waste of time. Fed. R. Evid. 401, 403.  This purported fact is not supported by any admissible evidence.  Fed. R. Civ. Proc. Rule 56.
>
> ### Defendants' Reply to Plaintiffs' Response No. 25:
>
> Plaintiffs do not dispute the facts in this paragraph, and their objections should be overruled for the same reasons described in Defendants' Reply to Plaintiffs' Response No. 6.

## III.     Plaintiffs' Relationship to the Airline Industry

26.     June Stansbury passed away on February 14, 2023.  *See* Obituary of June Stansbury, Reno Gazette-J. (Mar. 16, 2023), https://www.rgj.com/obituaries/rgj050205. Defendants served, but never received, discovery from Stansbury.  Exhibit 6 at 1.

> ### Plaintiff's Response No. 26:
>
> [No response.]
>
> ### Defendants' Reply to Plaintiffs' Response No. 26:
>
> Plaintiffs did not respond to this statement of fact.  Pursuant to Local Rule 56.1, this fact is deemed admitted because Plaintiffs did not respond.  *See* L.R. 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing

parties."); *Brown v. Armstrong*, 957 F. Supp. 1293, 1297-98 (D. Mass. 1997) (deeming admitted all facts not controverted by citations to the record).

27.    Twenty-two of the 24 living Plaintiffs in this matter have never flown on Spirit during the four years before their Complaint was filed to present.  *See infra* ¶¶ 37, 44, 51, 58, 66, 72, 78, 85, 91, 103, 110, 117, 124, 130, 137, 150, 156, 162, 171, 177, 182, 189.  Neither the deceased Plaintiff Stansbury nor her estate produced discovery showing that she flew Spirit. Sixteen of the 24 living Plaintiffs "have never flown" Spirit.  *See infra* ¶¶ 37, 44, 51, 58, 66, 91, 103, 124, 130, 137, 150, 156, 162, 171, 177, 182, 189.  While some Plaintiffs expressed interest in future travel, and perhaps to fly Spirit, in the coming months and years, as of the close of fact discovery, all 25 Plaintiffs have no future Spirit flights booked and no concrete, imminent plans to fly Spirit.  *See infra* ¶¶ 38, 45, 52, 59, 67, 73, 79, 86, 92, 98, 104, 111, 118, 125, 131, 138, 145, 151, 157, 163, 168, 172, 178, 183, 190.

Plaintiff's Response No. 27:

Disputed.

The record is replete with Plaintiffs' plans to fly Spirit in the near future, and Defendants' assertions to the contrary are wrong.  Eighteen of the plaintiffs have plans to fly Spirit on specific routes in the near future.  Seven Plaintiffs currently have flights booked on Spirit or have definitive plans to book Spirit flights in the next month or so.  The remaining six plaintiffs either have intentions to fly Spirit or consider Spirit a viable option as the date of departure nears.  *See infra* ¶ 36.

Defendants' Reply to Plaintiffs' Response No. 27:

Does not create a genuine dispute of material fact.  As described herein and in Defendants' Reply, Defendants object to Plaintiffs' attempt to introduce "future" travel plans through contradictory, self-serving declarations produced nearly two months after the close of fact discovery.  *See, e.g., infra* Defendants' Reply to Plaintiffs' Response Nos. 36, 52, 59, 60, 67, 68, 73, 74, 78, 79, 80, 92, 93, 98, 99, 104, 105, 111, 112, 118, 119, 131, 132, 138, 139, 145, 146, 151, 157, 158, 172, 173, 178, 179, 183, 184, 190, 191.  Plaintiffs cannot contradict their sworn depositions and interrogatory answers with declarations filed in response to a motion for summary judgment.  "When an interested witness has given clear answers to unambiguous questions [at deposition], he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does

not give a satisfactory explanation of why the testimony is changed." *Flaherty v. Entergy Nuclear Operations, Inc.*, 946 F.3d 41, 50 (1st Cir. 2019) (quoting *Pena v. Honeywell Int'l, Inc.*, 923 F.3d 18, 30 (1st Cir. 2019) and *Colantuoni v. Alfred Calcagni & Sons*, 44 F.3d 1, 4–5 (1st Cir. 1994)) (alterations in original); *see also Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *Mahan v. Bos. Water & Sewer Comm'n*, 179 F.R.D. 49, 53-56 (D. Mass. 1998) (Young, J.).

In addition, Plaintiffs' newfound "plans to fly Spirit in the near future" are too speculative to confer them standing, and therefore do not create a material dispute of fact. *See infra* Defendants' Reply to Plaintiffs' Response Nos. 36, 38, 52, 59, 67, 73, 86, 92, 98, 104, 111, 131, 138, 145, 151, 157, 163, 172, 178. Plaintiffs cannot rely on vague, unformed statements that they "intend" to fly at some point in the future; speculative injury does not constitute irreparable harm. *See* Defendants' Reply at 9-10. Plaintiffs' declarations of "unformed" future intent to travel are too "speculative and *de minimus*" to survive summary judgment. *Malaney v. UAL Corp.*, 2010 WL 3790296, at *13 (N.D. Cal. Sept. 27, 2010), *aff'd* 434 F. App'x 620 (9th Cir. 2011).

28.    In verified interrogatory responses, all of the living Plaintiffs allege harm on 121 city-pair routes as a result of the merger ("Rog 8 routes"). *See* Exhibits 13, 16, 20, 24, 27, 31, 34, 37, 40, 43, 46, 49, 52, 56, 60, 64, 67, 71, 77, 81, 86, 89, 93, 98 (Plaintiffs' Supplemental Responses to Defendants' Second Set of Interrogatories, Interrogatory No. 8). During the four years before their Complaint was filed through the close of fact discovery, none of the living Plaintiffs flew Spirit on these Rog 8 routes. *See infra* ¶¶ 39, 46, 53, 60, 68, 74, 80, 87, 93, 99, 105, 112, 119, 126, 132, 139, 146, 152, 158, 164, 173, 179, 184, 191.

Plaintiff's Response No. 28:

Disputed.

Plaintiffs supplemented these responses upon receiving the expert report of Hal Singer. Alioto Dec. ¶3; *See infra* ¶36.

***All twenty-four*** Plaintiffs are consumers of airline travel in these harmed markets.[1] Plaintiffs have flown and have concrete plans to fly on over 160 of the harmed routes.[2] Of these, Plaintiffs have concrete future plans to fly in over 70 of the

---

[1] SUMF ¶¶ 39, 46, 53, 60, 68, 74, 80, 87, 93, 99, 105, 112, 119, 126, 132, 139, 146, 152, 158, 164, 172, 178, 183, 190.
[2] *Id.*

impacted routes, either because they fly these routes regularly (*e.g.* to visit family) or because they have planned business trips or vacations.[3]

Defendants' Reply to Plaintiffs' Response No. 28:

Defendants object to Plaintiffs' reliance on untimely updates to fact discovery responses between August 10-18, 2023, over six weeks after the close of fact discovery.

In addition, allegations that "Plaintiffs have flown and have concrete plans to fly" on the "harmed routes" or "concrete plans to fly" on the "impacted routes" are untimely efforts to manufacture standing through belatedly filed declarations that contradict their depositions and interrogatory answers and/or are too speculative to confer standing as a matter of law. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Even taking Plaintiffs' second supplemental responses to Interrogatory No. 8 at face value, based on the undisputed record during fact discovery (Plaintiffs' verified discovery responses and sworn deposition testimony), twenty-three Plaintiffs (all except G. Garavanian and Nieboer) have no history of flying Spirit from the four years prior to the Complaint being filed through the close of fact discovery on any route on Plaintiffs' supplemental list of allegedly impacted routes, and none of the twenty-five Plaintiffs (including G. Garavanian and Nieboer) have concrete, imminent plans to fly Spirit on any of those allegedly impacted routes.

Moreover, as described below, Plaintiffs' allegations concerning their plans on these new routes do not raise a genuine dispute of material fact. *See infra* Defendants' Reply to Plaintiffs Response Nos. 39, 46, 53, 60, 68, 74, 80, 87, 93, 99, 105, 112, 119, 126, 132, 139, 146, 152, 158, 164, 172, 178, 183, 190.

29.    Fifteen Plaintiffs are currently affiliated with a travel agency in some capacity:

Brito (travel agent), Brown (travel manager for The Beach Boys), Faust (travel agent), Fjord (travel

agent), Freeland (travel agent), Fry (travel agent), G. Garavanian (travel agent), Gardner (travel

---

[3] SUMF ¶¶ 39 (regularly flies routes to visit family), 68 (planned cruise), 74 (vacations regularly), 80 (regularly visits sister, nephew), 87 (flies routes every year; planned cruise), 93 (booked flights; planned cruise), 99 (flies route four times a year; lives in Boston, works and owns property in Florida), 105 (flies route frequently; visits son), 112 (visits friends), 119 (flies frequently; visits friends; planned wedding), 126 (regular golf trips), 132 (visits friends; regular work trips), 139 (visits friends), 146 (travels route frequently, owns timeshare at destination; visits family), 152 (planned cruise; work trips), 158 (planned cruise; travels route three times/year to visit family), 164 (travels route frequently), 178 (travels for work and annual meetings; visits friends/vacations regularly), 183 (frequently vacations and frequent family visits), 190 (visits family regularly).

consultant), Jolly (travel agent), McCarthy (handles travel agency administration, but is not a travel

agent), Pulfer (travel agent), Rubinsohn (travel agent), Stensrud (travel agency owner), Talewsky

(travel agent), and Ward (travel agent) (the "Travel Agent Plaintiffs").  *See infra* ¶¶ 47, 75, 81, 88,

94, 100, 113, 120, 140, 153, 159, 174, 180, 185.  Brown gave inconsistent responses as to whether

she is a travel agent.  *See infra* ¶ 54.

> Plaintiff's Response No. 29:
>
> Disputed.
>
> Brown's testimony was clear and consistent. Brown testified she is presently
> employed by Meleco Travel as a travel manager (not a travel agent) for the Beach
> Boys. In her role as travel manager, Brown books travel, manages logistics,
> property locations, venue locations, and flights from all around the United States
> and the world year round. (Alioto Dec Ex. 3 - Brown Dep. 22:10-23:12; 40:7-23).
>
> Defendants' Reply to Plaintiffs' Response No. 29
>
> Plaintiffs' response does not actually dispute any material aspect of Paragraph 29,
> which identifies Plaintiffs "currently affiliated with a travel agency *in some*
> *capacity*" (emphasis added), and therefore Paragraph 29 should be deemed
> admitted in its entirety.
>
> In any event, Plaintiffs' response as to a single Plaintiff (Brown) does not raise a
> genuine dispute of material fact as to the remainder of the allegations in Paragraph
> 29, which should be deemed admitted, and does not raise a genuine dispute of
> material fact as to Plaintiff Brown, because the cited material does not contradict
> the statements in Paragraph 29.

30.    Aside from Brown and McCarthy, the Travel Agent Plaintiffs are generally paid in

one of two ways for booking airline tickets: (1) flat service fees which they set and charge their

customers directly; and/or (2) scaling service fees based on the price of airline tickets. *See infra* ¶¶

48, 76, 82, 89, 95, 101, 114, 121, 154, 160, 175, 180, 186.

Plaintiff's Response No. 30:

[No response.]

Defendants' Reply to Plaintiffs' Response No. 30:

Plaintiffs did not respond to this statement of fact.  Pursuant to Local Rule 56.1, this fact is deemed admitted because Plaintiffs did not respond.  *See* Defendants' Reply to Plaintiffs' Response No. 26.

31.     During a meet and confer with Plaintiffs' counsel, Plaintiffs' counsel agreed to produce documents responsive to Defendants' Second Request for Production, which called for "Documents sufficient to show every trip You have arranged for a customer from 2015 to present," but not in response to Defendants' Third Request for Production, which called for "Documents sufficient to show Your and/or Your travel agency's revenue, profits and losses, and financial statements from 2015 to present," on the grounds that Plaintiffs' travel agencies' financials are not relevant. Exhibit 7 at 1; Exhibit 8 at 1–2.

Plaintiff's Response No. 31:

[No response.]

Defendants' Reply to Plaintiffs' Response No. 31:

Plaintiffs did not respond to this statement of fact.  Pursuant to Local Rule 56.1, this fact is deemed admitted because Plaintiffs did not respond.  *See* Defendants' Reply to Plaintiffs' Response No. 26.

32.     To date, the only Plaintiffs who have produced documents responsive to Requests for Production 1 and 2 pertaining to their travel agencies are Arcell, Brito, Davis, and Faust. Declaration of Elizabeth M. Wright ¶ 2 ("Wright Declaration"). Defendants have repeatedly sought these documents without success. Exhibit 7 at 1; Exhibit 9 at 1; Exhibit 11 at 1.

Plaintiff's Response No. 32:

[No response.]

Defendants' Reply to Plaintiffs' Response No. 32:

Plaintiffs did not respond to this statement of fact.  Pursuant to Local Rule 56.1, this fact is deemed admitted because Plaintiffs did not respond.  *See* Defendants' Reply to Plaintiffs' Response No. 26.

33.    Defendants' Interrogatory No. 7 asked each Plaintiff to "[i]dentify each and every distinct injury You allege that You will suffer as a result of the merger between JetBlue and Spirit." *See, e.g.*, Exhibit 13 at 2–3.

Plaintiff's Response No. 33:

[No response.]

Defendants' Reply to Plaintiffs' Response No. 33:

Plaintiffs did not respond to this statement of fact.  Pursuant to Local Rule 56.1, this fact is deemed admitted because Plaintiffs did not respond.  *See* Defendants' Reply to Plaintiffs' Response No. 26.

34.    Defendants' Interrogatory No. 8 asked each Plaintiff to "Identify each and every 'submarket' and 'route' referred to at Paragraphs 7, 19, 59 and 84 of the Complaint. For avoidance of doubt, 'submarket' and 'route' are ascribed the same meanings as in the Complaint." *Id.* at 4.

Plaintiff's Response No. 34:

[No response.]

Defendants' Reply to Plaintiffs' Response No. 34:

Plaintiffs did not respond to this statement of fact.  Pursuant to Local Rule 56.1, this fact is deemed admitted because Plaintiffs did not respond.  *See* Defendants' Reply to Plaintiffs' Response No. 26.

35.    Twenty-two living Plaintiffs issued the following response to Defendants' Interrogatory No. 7:

This proposed acquisition is a substantial threat of harm and injury to all the Plaintiffs in that they will face higher fares, fewer flights, less consumer choice than they otherwise would have, and they would be threatened with the inability to use air travel at all.

The proposed acquisition constitutes a substantial threat of injury to these Plaintiffs because this acquisition may have the effect "substantially to lessen competition" and "tend to create a monopoly" in a "line of commerce" in a "section of the country" in violation of Section 7 of the Clayton Antitrust Act (15 U.S.C. § 18). In addition, the contract to eliminate Spirit constitutes a non-trivial transaction eliminating a significant rival, which is not a failing company, that eliminates a substantial and growing, cost-cutting competitor from the market.

In addition, JetBlue's elimination of Spirit will be virtually certain to cause substantial irreparable injury to Plaintiffs and to all consumers for domestic scheduled air passenger transportation services in the relevant geographic and product markets in that, among other reasons, Spirit, and the consumer choices that go with it, will be gone, and once gone, the harm would be irreparable.

Plaintiffs are threatened with the loss of (1) the distinctive services and in-flight experience offered by Spirit; (2) a reduction in customer choice; (3) a reduction in capacity and the curtailment of flights thereby creating higher prices and severe inconvenience to consumers; and (4) ultimately, the loss of a vibrant, vigorous, and innovative fare-cutting competitor. The elimination of Spirit will further substantially threaten to harm U.S. passengers through increases in the price of tickets, checked bags and flight change fees, translating to billions of dollars of harm to consumers annually, and further threatens to deprive passengers of the unique comfort, style, service and especially affordability offered by Spirit.

If Spirit is eliminated, Plaintiffs will sustain irreparable harm for which damages will be inadequate to compensate Plaintiffs in that the competition from a "price-disruptor" will be extirpated and customer choice for travel options eradicated. The imagination and initiative of Spirit will be snuffed out; modern jets and expansion plans will be jettisoned; customer convenience and satisfaction will be disregarded. Spirit's air service once lost cannot be restored.

*See* Exhibits 13, 16, 20, 24, 27, 31, 34, 37, 40, 43, 46, 49, 52, 56, 60, 64, 67, 71, 77, 81, 86, 89, 93, 98. Gardner and Jolly provided an identical response as the other Plaintiffs except for the first paragraph, which they omitted. *See* Exhibit 49 at 2-4; Exhibit 52 at 2-4. Most Plaintiffs also individually responded with other harms they anticipate the merger will cause them personally. *See infra* ¶¶ 42, 49, 57, 64, 71, 77, 83, 90, 96, 102, 108, 115, 122, 135, 142, 149, 155, 161, 167, 176, 181, 187, 194.

Plaintiff's Response No. 35:

[No response.]

<u>Defendants' Reply to Plaintiffs' Response No. 35</u>:

Plaintiffs did not respond to this statement of fact.  Pursuant to Local Rule 56.1, this fact is deemed admitted because Plaintiffs did not respond.  *See* Defendants' Reply to Plaintiffs' Response No. 26.

36.    All of the living Plaintiffs issued the following response to Defendants' Interrogatory No. 8:

"The following city pairs constitute some, among many, submarkets for airline services in the United States. This response is submitted as a partial and not complete list of potential submarkets and this response may change as further information is received and analyzed by Plaintiff and Plaintiff's attorneys and experts. The specific response set forth below is based upon information now known. Plaintiff has not yet completed discovery or preparation for trial in this case, and, therefore, reserves the right to amend, modify, or supplement any general or specific response.

| City Market 1 | City Market 2 |
|---|---|
| Aguadilla, PR | Raleigh/Durham, NC |
| Aguadilla, PR | Las Vegas, NV |
| Aguadilla, PR | Richmond, VA |
| Aguadilla, PR | Orlando, FL |
| Aguadilla, PR | Washington, DC (Metropolitan Area) |
| Aguadilla, PR | Los Angeles, CA (Metropolitan Area) |
| Aguadilla, PR | Minneapolis/St. Paul, MN |
| Aguadilla, PR | Chicago, IL |
| Aguadilla, PR | Kansas City, MO |
| Aguadilla, PR | New York City, NY (Metropolitan Area) |
| Aguadilla, PR | Charlotte, NC |
| Aguadilla, PR | Detroit, MI |
| Aguadilla, PR | New Orleans, LA |
| Aguadilla, PR | Milwaukee, WI |
| Aguadilla, PR | Tampa, FL |
| Aguadilla, PR | Houston, TX |
| Aguadilla, PR | Philadelphia, PA |
| Aguadilla, PR | Miami, FL (Metropolitan Area) |
| Atlanta, GA | New York City, NY (Metropolitan Area) |
| Atlanta, GA | Ponce, PR |

| City Market 1 | City Market 2 |
|---|---|
| Atlanta, GA | Aguadilla, PR |
| Austin, TX | New York City, NY (Metropolitan Area) |
| Austin, TX | Miami, FL (Metropolitan Area) |
| Austin, TX | Aguadilla, PR |
| Austin, TX | Ponce, PR |
| Boston, MA (Metropolitan Area) | Sacramento, CA |
| Boston, MA (Metropolitan Area) | Orlando, FL |
| Boston, MA (Metropolitan Area) | Miami, FL (Metropolitan Area) |
| Boston, MA (Metropolitan Area) | Tampa, FL (Metropolitan Area) |
| Boston, MA (Metropolitan Area) | New Orleans, LA |
| Boston, MA (Metropolitan Area) | San Diego, CA |
| Boston, MA (Metropolitan Area) | Las Vegas, NV |
| Boston, MA (Metropolitan Area) | Charlotte Amalie, VI |
| Boston, MA (Metropolitan Area) | Fort Myers, FL |
| Boston, MA (Metropolitan Area) | San Juan, PR |
| Boston, MA (Metropolitan Area) | Aguadilla, PR |
| Boston, MA (Metropolitan Area) | Christiansted, VI |
| Boston, MA (Metropolitan Area) | Ponce, PR |
| Chicago, IL | Ponce, PR |
| Cleveland, OH (Metropolitan Area) | San Juan, PR |
| Cleveland, OH (Metropolitan Area) | Miami, FL (Metropolitan Area) |
| Cleveland, OH (Metropolitan Area) | Aguadilla, PR |
| Dallas/Fort Worth, TX | New York City, NY (Metropolitan Area) |
| Dallas/Fort Worth, TX | Ponce, PR |
| Dallas/Fort Worth, TX | Aguadilla, PR |
| Denver, CO | San Juan, PR |
| Denver, CO | Aguadilla, PR |
| Detroit, MI | San Juan, PR |
| Detroit, MI | New York City, NY (Metropolitan Area) |
| Detroit, MI | Ponce, PR |
| Hartford, CT | Orlando, FL |
| Hartford, CT | Fort Myers, FL |
| Hartford, CT | Miami, FL (Metropolitan Area) |
| Hartford, CT | Tampa, FL (Metropolitan Area) |
| Hartford, CT | Charlotte Amalie, VI |
| Hartford, CT | San Juan, PR |
| Hartford, CT | Ponce, PR |
| Hartford, CT | Aguadilla, PR |
| Houston, TX | New York City, NY (Metropolitan Area) |
| Houston, TX | Ponce, PR |
| Kansas City, MO | Ponce, PR |
| Las Vegas, NV | San Juan, PR |
| Las Vegas, NV | Miami, FL (Metropolitan Area) |

| City Market 1 | City Market 2 |
|---|---|
| Las Vegas, NV | Los Angeles, CA (Metropolitan Area) |
| Las Vegas, NV | Ponce, PR |
| Los Angeles, CA (Metropolitan Area) | San Juan, PR |
| Miami, FL (Metropolitan Area) | San Diego, CA |
| Miami, FL (Metropolitan Area) | San Juan, PR |
| Miami, FL (Metropolitan Area) | Richmond, VA |
| Miami, FL (Metropolitan Area) | Raleigh/Durham, NC |
| Miami, FL (Metropolitan Area) | New Orleans, LA |
| Miami, FL (Metropolitan Area) | Los Angeles, CA (Metropolitan Area) |
| Miami, FL (Metropolitan Area) | Philadelphia, PA |
| Miami, FL (Metropolitan Area) | Charlotte Amalie, VI |
| Miami, FL (Metropolitan Area) | Ponce, PR |
| Milwaukee, WI | San Juan, PR |
| Milwaukee, WI | Ponce, PR |
| Minneapolis/St. Paul, MN | Ponce, PR |
| Nashville, TN | New York City, NY (Metropolitan Area) |
| Nashville, TN | San Juan, PR |
| Nashville, TN | Miami, FL (Metropolitan Area) |
| Nashville, TN | Ponce, PR |
| Nashville, TN | Aguadilla, PR |
| New Orleans, LA | San Juan, PR |
| New Orleans, LA | Ponce, PR |
| New York City, NY (Metropolitan Area) | Tampa, FL (Metropolitan Area) |
| New York City, NY (Metropolitan Area) | New Orleans, LA |
| New York City, NY (Metropolitan Area) | Miami, FL (Metropolitan Area) |
| New York City, NY (Metropolitan Area) | Los Angeles, CA (Metropolitan Area) |
| New York City, NY (Metropolitan Area) | Las Vegas, NV |
| New York City, NY (Metropolitan Area) | Sacramento, CA |
| New York City, NY (Metropolitan Area) | Fort Myers, FL |
| New York City, NY (Metropolitan Area) | San Juan, PR |
| New York City, NY (Metropolitan Area) | Christiansted, VI |
| New York City, NY (Metropolitan Area) | Ponce, PR |
| Orlando, FL | New York City, NY (Metropolitan Area) |
| Orlando, FL | San Juan, PR |
| Orlando, FL | Richmond, VA |
| Orlando, FL | Charlotte Amalie, VI |
| Orlando, FL | Salt Lake City, UT |
| Orlando, FL | Ponce, PR |
| Pensacola, FL | San Juan, PR |
| Philadelphia, PA | San Juan, PR |
| Phoenix, AZ | Miami, FL (Metropolitan Area) |
| Pittsburgh, PA | San Juan, PR |
| Ponce, PR | Raleigh/Durham, NC |

| City Market 1 | City Market 2 |
|---|---|
| Ponce, PR | Richmond, VA |
| Salt Lake City, UT | San Juan, PR |
| San Francisco, CA (Metropolitan Area) | Miami, FL |
| Tampa, FL (Metropolitan Area) | San Juan, PR |
| Tampa, FL (Metropolitan Area) | Charlotte Amalie, VI |
| Tampa, FL (Metropolitan Area) | Christiansted, VI |
| Washington, DC (Metropolitan Area) | Orlando, FL |
| Washington, DC (Metropolitan Area) | Miami, FL (Metropolitan Area) |
| Washington, DC (Metropolitan Area) | San Juan, PR |
| Washington, DC (Metropolitan Area) | Fort Myers, FL |
| Washington, DC (Metropolitan Area) | Charlotte Amalie, VI |
| Washington, DC (Metropolitan Area) | Christiansted, VI |
| Washington, DC (Metropolitan Area) | Ponce, PR |
| New Orleans | Boston |
| New Orleans | New York |
| New Orleans | Fort Lauderdale |

In addition, the two airlines currently compete head-to-head on routes



30

*See* Exhibits 13, 16, 20, 24, 27, 31, 34, 37, 40, 43, 46, 49, 52, 56, 60, 64, 67, 71, 77, 81, 86, 89, 93,

98.  Plaintiffs have not amended or modified their Responses to Interrogatory No. 8.

> <u>Plaintiff's Response No. 36:</u>
>
> Plaintiffs modified their Responses to Interrogatory No. 8. Defendants have been served with Plaintiffs' Second Supplementary Response to Defendants' Interrogatories (Set Two). Alioto Dec., ¶3; Alioto Dec Ex. 49-72. Plaintiffs specifically reserved the right to amend initial responses pending additional information from experts. *Id.* On July 28, 2023, Plaintiffs served their expert reports on Defendants, which included the expert report of Hal J. Singer. Declaration of Joseph L. Alioto, Jr. in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (hereinafter "Alioto Dec."), ¶3..Plaintiffs supplemented their response to Defendants' Interrogatories (Set Two) - specifically Interrogatory No. 8 - beginning on August 10, 2023.  *Id.*; Alioto Dec Ex. 49-72. The supplemental responses from Plaintiffs contained an identical table, labeled "Exhibit A". (Alioto Dec. ¶3.) Exhibit A contains:
>
> - 414 routes that were identified in Appendix 3 of the Singer Report are labeled as "Nonstop City Route Pairs" and "City Route Pairs (Nonstop +1)". (*Id.* at ¶3(a) (Alioto Dec Ex. 73 - Singer Rep Table A3.1-A3.7) .)
>
> - 283 routes identified by Singer as being routes served only by Spirit Airlines and no other ultra low cost carriers were included under the header "Spirit Only No ULCCs". Alioto Dec. ¶3(b); Alioto Dec Ex. 73 Singer Report, p.54, ¶108; Declaration of Hal J. Singer in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ¶ 2-3.
>
> - Alioto Dec Ex. These routes include (1) current Spirit routes that JetBlue does not serve but plans to serve absent the merger; (2) current JetBlue routes that Spirit does not serve but plans to serve absent the merger; and (3) routes that neither airline serves but that Spirit plans to serve absent the merger. (Alioto Dec Ex. 73 - Singer Rep. ¶ 41.) Because the two carriers operate out of 159 airports across the nation, the potential range of routes affected under the potential harm to competition spans the entirety of the nation. (Alioto Dec Ex. 73 - Singer Rep. ¶¶ 41, 103-116.) [redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.] Airports that were identified by the Singer Report in "Table 9: New Markets Phased by Gate and Network Priority" were also included in Exhibit A under the header "Additional Relevant Airports Based on Spirit Expansion Plans". Alioto Dec. ¶3(c); Alioto Dec Ex. 73 Singer Report, p. 55, ¶111.

All Plaintiffs have flown or intend to fly the relevant routes identified in Exhibit A to all Plaintiffs' Second Supplemental Responses to Defendants Interrogatories (Set Two). Alioto Dec Ex. 49-72.The record is replete with Plaintiffs' plans to fly Spirit in the near future, and Defendants' assertions to the contrary are wrong. Eighteen

of the plaintiffs have plans to fly Spirit on specific routes in the near future.[4] Seven Plaintiffs currently have flights booked on Spirit or have definitive plans to book Spirit flights in the next month or so.[5]

A full list of the origin/destination pairs or "routes" that will be impacted by the merger, as well as their pre-merger and post-merger concentration levels (HHI), are provided in Tables A3.1 to A3.9 of the Singer Report. Alioto Dec. Ex. 73 – Singer Report.

The merger will have demonstrable anticompetitive effects in every impacted route, including those in which the HHI does not rise to the level of presumptively

---

[4] SUMF ¶¶ 38. (Arcell; will likely fly Spirit in harmed routes); 52 (Brown; plans to fly Spirit to Orlando next year to visit sister); 59 (D'Augusta; will fly Spirit to New York within next six months for wedding, to nephew's graduation in June 2024, and to San Diego in next few months); 67 (Davis; flight booked on Spirit from Dallas to Las Vegas on September 6, 2023; will fly Spirit to Seattle for upcoming cruise to Alaska); 73 (Faust; plans to fly Spirit to Los Angeles next month; [redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]; 86 (Freeland; will fly Spirit to Mexico to visit daughter in near future and has researched pricing and availability); 92 (Fry; Spirit flight booked October 5, 2023 from Phoenix to Seattle); 98 (G. Garavanian; regularly flies Spirit from Boston to Myrtle Beach and will fly Spirit to Myrtle Beach in December 2023 and March 2024); 104 (H. Garavanian; is flying Spirit from Boston to Myrtle Beach in Fall 2023 to visit son); 111 (Gardner; is flying Denver to Miami for a cruise in February 2024 and will book Spirit if it is lowest price as trip approaches); 131 (Marazzo; regularly purchases Spirit flights for his daughter; booked Spirit on November 4, 2023 for trip from Reno to Las Vegas; booked Spirit on December 13, 2023 from Orlando to Richmond); 138 (McCarthy; in addition to considering Spirit for a number of upcoming trips, intends to fly Spirit from Fort Myers to Las Vegas for annual conference); 145 (Nieboer; will book Spirit roundtrip flight from Detroit to Fort Lauderdale for February 17, 2024 to March 2, 2024; Spirit has "always been the most economical one, so that is what I would run with"); 151 (Pulfer; will fly Spirit from Denver to Columbus in summer 2024); 157 (Rubinsohn; has booked Spirit flight in December 2023 from Philadelphia to Detroit to visit family); 163 (Russell; plans on flying Spirit domestically in the future, travels frequently from Dallas to Fort Lauderdale, Miami, and Orlando); 171 (Stensrud; intends to fly Spirit when retires); 177 (Talewski; plans to fly Spirit from West Palm Beach or Fort Lauderdale to Atlantic City with friends in October 2023).
[5] SUMF ¶¶ 67 (Davis; flight booked on Spirit from Dallas to Las Vegas on September 6, 2023; will fly Spirit to Seattle for upcoming cruise to Alaska); 92 (Fry; Spirit flight booked October 5, 2023 from Phoenix to Seattle); 98 (G. Garavanian; regularly flies Spirit from Boston to Myrtle Beach and will fly Spirit to Myrtle Beach in December 2023 and March 2024); 104 (H. Garavanian; is flying Spirit from Boston to Myrtle Beach in Fall 2023 to visit son); 131 (Marazzo; regularly purchases Spirit flights for his daughter; booked Spirit on November 4, 2023 for trip from Reno to Las Vegas; booked Spirit on December 13, 2023 from Orlando to Richmond); 145 (Nieboer; will book Spirit roundtrip flight from Detroit to Fort Lauderdale for February 17, 2024 to March 2, 2024; Spirit has "always been the most economical one, so that is what I would run with"); 157 (Rubinsohn; has booked Spirit flight in December 2023 from Philadelphia to Detroit to visit family).

anticompetitive or competitive concern. Alioto Dec. Ex. 73 (Singer Report) Pp. 29-33, pp. 13-16

Defendants' Reply to Plaintiffs' Response No. 36:

Defendants object to Plaintiffs' reliance on untimely updates to fact discovery responses between August 10-18, 2023, over six weeks after the close of fact discovery.

Plaintiffs cannot contradict their depositions and interrogatory answers with contradictory, self-serving declarations nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

The "plans to fly Spirit in the near future" cited by Plaintiffs in their Response to No. 36 are untimely efforts to manufacture standing through belatedly filed declarations that contradict their depositions and interrogatory answers and/or are too speculative to confer standing, as described as a matter of law, as described *supra* in Defendants' Reply to Plaintiffs' Response No. 27. *See also infra* Defendants' Reply to Plaintiffs' Response Nos. 38, 52, 59, 67, 73, 86, 92, 98, 104, 111, 131, 138, 145, 151, 157, 163, 171, 177.

Even taking Plaintiffs' second supplemental responses to Interrogatory No. 8 at face value, based on the undisputed record during fact discovery (Plaintiffs' verified discovery responses and sworn deposition testimony), twenty-three Plaintiffs (all except G. Garavanian and Nieboer) have no past history of flying Spirit from the four years prior to the Complaint being filed through the close of fact discovery on any route on Plaintiffs' supplemental list of allegedly impacted routes, and none of the twenty-five Plaintiffs (including G. Garavanian and Nieboer) has concrete, imminent plans to fly Spirit on any of those allegedly impacted routes.

Plaintiffs' response does not otherwise raise a genuine dispute of material fact.

- As to the 414 routes identified as "Nonstop City Route Pairs" and "City Route Pairs (Nonstop +1)," Plaintiffs' own expert, Hal Singer, only finds competitive concerns on 214 of those routes. *See* Alioto Dec. Ex. 73 ("Singer Report") ¶¶ 60-62; A3.2, A3.3, A3.6, A3.7. Of these 214 routes, the vast majority were listed in Plaintiffs' original Rog 8 response, and thus do not refuse the facts in Paragraph No. 36. Moreover, zero Plaintiffs flew Spirit on any these routes in the four years prior to filing their Complaint through the close of fact discovery. *See* Plaintiffs Supplemental Responses to Defendants' Interrogatory 8, at 5-8. And, as described below, and in Defendants' Reply, whether a few Plaintiffs chose to fly on these routes on other airlines (and not Spirit) is too de minimis to confer Article III standing.

- As to the "283 routes identified by Singer as being routes served only by Spirit Airlines and no other ultra low cost carriers," Mr. Singer did not

include a list of these routes in his report (dated July 28).  Singer Report ¶ 108.  There is thus no basis before the Court to find that Plaintiffs' supplementation is based on expert discovery, indicating that Plaintiffs have attempted to use untimely supplementation as an end-run around the Court-ordered deadline for fact discovery.

- Plaintiffs' statement are therefore not supported by any expert testimony or record evidence (including the cited portions of the Singer Report), and Plaintiffs' opposition brief offers no supporting case law for this extraordinary claim, which, if accepted, would confer standing on *any* person who has ever flown once on *any* airline on virtually *any* route in the country, no matter how speculative or attenuated.  This argument thus fails as a matter of law.  *See supra*, authority cited in Defendants' Reply to Plaintiffs' Response No. 27.

## IV.  Facts Regarding Individual Plaintiffs

### A.  Katherine Arcell

37.  <u>Flown Spirit</u>: Arcell has never flown Spirit. Exhibit 10 at 69:6-8, 73:3-5; Exhibit 11 at 3.

> <u>Plaintiff's Response No. 37:</u>
>
> Undisputed.
>
> <u>Defendants' Reply to Plaintiffs' Response No. 37:</u>
>
> Undisputed and therefore admitted.  *See* L.R. 56.1.

38.  <u>Future Plans to Fly Spirit</u>: Arcell has no Spirit flights booked, and has no concrete plans to fly Spirit in the future. Exhibit 10 at 73:6-14. Arcell would consider flying Spirit if it "goes to the correct place" and "if it helps [her]." *Id.*

> <u>Plaintiff's Response No. 38:</u>
>
> Disputed.
>
> Plaintiff Arcell will fly Spirit in the future if it is a route she would like to take. Alioto Dec. Ex.1 - Arcell Dep. 73:6-11.
>
> Spirit offers service at MSY New Orleans airport. Arcell Dep. 79:18-20. Arcell believes Spirit offers service from New Orleans to Atlanta. *Id.* at 80:4-9. Arcell typically flies the New Orleans – Atlanta – West Hartford route when flying to

West Hartford, CT. *Id.* at 79:25-80:3. If she was paying for a flight (as opposed to redeeming frequent flyer miles), then she would probably fly Spirit. *Id.* at 80:4-9.

Plaintiff Arcell will be flying to West Hartford sometime in the future. *Id.* at 98:19-99:3.

Plaintiff Arcell plans to fly in the future and will not exclude any airline from consideration of her future airline booking purchases. *Id.* at 119:12-120:4.

Plaintiff Arcell frequently flies to West Hartford, CT to visit family *Id.* at 57:23-58:2.

Plaintiff Arcell frequently flies to Newark, NJ to visit family. *Id.* at 58:4-6.

Plaintiff Arcell frequently flies to Atlanta to visit her youngest daughter who lives there. *Id.* at 57:14-22.

<u>Defendants' Reply to Plaintiffs' Response No. 38</u>:

Does not create a genuine dispute of material fact.

Plaintiff Arcell's "plans to fly Spirit in the future if it is a route she would like to take" are too speculative.  Plaintiffs cannot rely on Arcell's vague, unformed statements that she "intends" to fly at "sometime in the future."  *See* Defendants' Reply to Plaintiffs' Response No. 27.

The route that Arcell claims to intend to fly from "New Orleans – Atlanta – West Hartford" is not a route that Plaintiffs' expert, Hal Singer, claims would be potentially impacted by the merger based on any theory of harm alleged by Plaintiffs.  *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7. Plaintiffs' other citations to a variety of airports do not raise a genuine dispute of material fact under any theory of harm advanced by Singer.

39.    <u>Spirit Flights in Rog 8 Routes</u>: Since November 2018, Arcell has not flown Spirit

on any of the routes listed in Plaintiffs' response to Interrogatory No. 8. Exhibit 12 at 6-8.

<u>Plaintiff's Response No. 39</u>:

Disputed.

Plaintiff has flown or intends to fly the following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories (Set Two):

New Orleans-Atlanta-Newark

Newark-Atlanta-New Orleans New Orleans-

Newark (Round trip) (Frequently travels this route to visit family. (Alioto Dec Ex. 1 - Arcell Dep. 57:23-58:2, 57:23-58:2).)

New Orleans-Houston (Round trip) (Frequently travels this route to visit family. *Id.* at 58:4-6, 89:4-9.

New Orleans-Atlanta-Washington

Washington-Atlanta-New Orleans

New Orleans – Atlanta (Frequently flies to Atlanta to visit her daughter.

*Id.* at 57:14-22.

(Alioto Dec Ex. 49 Plaintiff Arcell's Second Supplemental Responses to Defendants' Interrogatories (Set Two); Alioto Dec Ex. 25-Plaintiff Arcell's Supplemental Responses to Defendants' Interrogatories (Set One).)

Defendants' Reply to Plaintiffs' Response No. 39:

Does not create a genuine dispute of material fact.

Plaintiffs do not state that Arcell flew Spirit on any of the identified routes.

Plaintiff states that she "has flown or intends to fly" routes, but vague "intent" to fly is too speculative to confer standing.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

Arcell's alleged routes from "Washington-Atlanta-New Orleans" and from "New Orleans-Atlanta" are not identified by Singer as routes that would potentially be impacted by the merger.  *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7 (not listing Washington (Metropolitan Area)-New Orleans or New Orleans-Atlanta.).  *See* Defendants' Reply to Plaintiffs' Response No. 36.

Arcell's alleged route from New Orleans to Houston (IAH) is also not listed as a route that may be impacted by the merger in Singer's report, but appear in Plaintiffs' belatedly-served Interrogatory Responses.  *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7; Alioto Dec. Ex. 49.  Plaintiffs have no admissible evidence that the alleged route will be impacted by the merger.  To the extent the challenged route is a "Spirit-Only route," (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185[6]), its inclusion does not raise a genuine dispute of material fact because there is no cognizable

---

[6] In support of their Opposition to Defendants Motion for Summary Judgment, Plaintiffs included a Declaration from Dr. Singer which listed these so-called "Spirit-Only routes."  *See* Dkt. 185. These routes are not specifically listed in the Singer Report.

theory of harm articulated on these routes.  *See* Defendants' Reply to Plaintiffs' Response No. 36.

According to her discovery responses, Arcell flew the route from New Orleans to Newark on only one occasion in 2022, and this flight was not on Spirit.  This is too attenuated to confer standing as a matter of law.  *See* Defendants' Reply to Plaintiffs' Response No. 36.

Arcell is not identified as a trial witness.  *Infra* ¶ 217.

40.     Travel Agent: Arcell is a retired travel agent. Exhibit 10 at 25:18-20. Arcell founded her travel agency, A&W Travel, in 1998, which she co-owned with Plaintiff Christine Whalen. *Id.* at 19:10-14, 29:23-30:1. A&W Travel dissolved in 2020 during the pandemic and Arcell currently has no revenue from A&W Travel or other travel agency. *Id.* at 20:9-21:3, 54:20-55:1. Arcell is retired, indicated she has no intention of working as a travel agent in the future, and has no specific plans to return to the industry in the future. *Id.* at 25:18-26:2.

> Plaintiff's Response No. 40:
>
> Undisputed.
>
> Defendants' Reply to Plaintiffs' Response No. 40:
>
> Undisputed and therefore admitted.  *See* L.R. 56.1.

41.     Compensation: Arcell is retired and no longer receives any income from a travel agency. *Id.* at 53:22-54:24.

> Plaintiff's Response No. 41:
>
> Undisputed.
>
> Defendants' Reply to Plaintiffs' Response No. 41:
>
> Undisputed and therefore admitted.  *See* L.R. 56.1.

42.     Articulated Harm: When asked how the merger would impact her personally, Arcell testified that if she were to "be in future travel" that she would like to have the option to choose a "less expensive as opposed to a more expensive ticket." *Id.* at 108:22-110:20. Arcell admitted the

Spirit-JetBlue merger would not impact her business in any way, but would "impact [her] personally, and it would impact people in general." *Id.* at 55:4-9. Arcell drafted an individualized response to Interrogatory 7, in addition to the response which was similar for all Plaintiffs. *See supra* ¶ 35.

> I personally would like to have the option of a very low fare airline so that I can decide if I want to pay a higher ticket price with more services or save money and pay less with less services. If Jet Blue succeeds in taking over Spirit, that option would go away.

Exhibit 13 at 4.

> Plaintiff's Response No. 42:
>
> Disputed.
>
> The proposed merger would impact Arcell personally and the greater public "because people in general want the ***availability of choices***." (Arcell Dep. 55:4-11) (emphasis added).
>
> Plaintiff testified she "would like to have the ability – ***the choice to choose***" a "less expensive as opposed to a more expensive ticket." (Arcel Dep. 108:22-109:9; 110:11-20) (emphasis added).
>
> Plaintiff Arcell prefers direct flights over connecting flights. (Arcell Dep. 70:9-11).
>
> Flights schedules are also a factor that impacts Plaintiff Arcell's decisions when booking a flight. (Arcell Dep. 70:20-22).
>
> Defendants' Reply to Plaintiffs' Response No. 42:
>
> Does not create a genuine dispute of material fact.  Plaintiffs' response does not actually dispute any material aspect of Paragraph 42.

43.    Arcell testified that her reason for opposing mergers, in part, is due to being furloughed by Delta following its merger with Pan American Airlines. Exhibit 12 at 16:4-7, 107:11-108:22, 107:25-108:7.

> Plaintiff's Response No. 43:
>
> Disputed.

Plaintiff Arcell does not believe in mergers and has been involved in cases trying to stop airline mergers before. (Arcell Dep. 103:6-12; 104:12-23).  Arcell is opposed to the proposed merger because Spirit is not in financial trouble and she feels that JetBlue is trying to eliminate competition. (Arcell Dep. 106:11- 21; 107:2-5).

Admits she is opposed to the merger in part because of her experience with Pan American, but Pan American had filed for bankruptcy unlike Spirit who has not filed for any financial problems. "When two companies are viable companies and they're trying to – one is trying to buy out another – to eliminate competition." (Arcell Dep. 106:14-107:1; 107:11-24).

Defendants' Reply to Plaintiffs' Response No. 43:

Does not create a genuine dispute of material fact.  Plaintiffs' response does not actually dispute any material aspect of Paragraph 43.

**B.      Jose M. Brito**

44.      Flown Spirit: Brito has never flown Spirit. Exhibit 14 at 105:23-106:12; Exhibit 15 at 3.

Plaintiff's Response No. 44:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 44:

Undisputed and therefore admitted.  *See* L.R. 56.1.

45.      Future Plans to Fly Spirit: Brito has no Spirit flights booked, and has no concrete plans to fly Spirit in the future. Exhibit 15 at 106:7-23.

Plaintiff's Response No. 45:

Disputed.

Plaintiff Brito could fly Spirit in the future. Alioto Dec Ex. 2 - Brito Dep. 106:3-6, 19-21.

Defendants' Reply to Plaintiffs' Response No. 45:

Does not create a genuine dispute of material fact.

Brito's testimony that he "could" fly Spirit or JetBlue was not supported by any indication of a timeframe or destination for any potential flight on Spirit.  Exhibit

15 at 106:3-23.  Plaintiffs cannot rely on vague, unformed statements that they "intend" to fly at some point in the future.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

46.    <u>Spirit Flights in Rog 8 Routes</u>: Since November 2018, Brito has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8. Exhibit 14 at 105:23-106:12.

<u>Plaintiff's Response No. 46:</u>

Disputed.

Plaintiff has flown or intends to fly the following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories (Set Two):

RNO-DFW-LGA

LGA-ORD-RNO

RNO-DEN-EWR

(Alioto Dec Ex. 50 - Plaintiff Brito's Second Supplemental responses to Defendants' Interrogatories (Set Two); Alioto Dec Ex. 26 - Plaintiff Brito's Responses and Objections to Defendants' Interrogatories (Set One), Exhibit A.)

<u>Defendants' Reply to Plaintiffs' Response No. 46:</u>

Does not create a genuine dispute of material fact.  Plaintiffs do not state that Brito flew Spirit on any of the identified routes.

The fact that Brito flew between Reno and New York on only two trips, in March and August 2019 (as the cited material reveals), on a different airline, is too attenuated to confer standing as a matter of law.  *See* Defendants' Reply to Plaintiffs' Response Nos. 27, 36.

Plaintiffs' also cannot rely on vague, unformed statements that Brito "intends to fly" Spirit on the route from Reno to New York (LGA or EWR), as this is too speculative to confer standing.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

Brito is not identified as a trial witness.  *Infra* ¶ 217.

47.    <u>Travel Agent</u>: Brito is the sole owner of a travel agency, Deluxe Travel, with five

employees. *Id.* at 15:7-16, 19:12-14.[7]

> Plaintiff's Response No. 47:
>
> Undisputed.
>
> Defendants' Reply to Plaintiffs' Response No. 47:
>
> Undisputed and therefore admitted. *See* L.R. 56.1.

48.    Compensation: Deluxe Travel charges service fees of $35-50 per ticket booked. *Id.* at 21:17-25. Deluxe Travel also received commissions for booking certain international airline tickets, as well as from certain international sales through ticket consolidators, such as Nexion. *Id.* at 25:7-26:17. Deluxe Travel makes higher commissions when the prices of tickets are higher. *Id.* 63:2-11 (when asked, "if the price of a ticket is higher, you would receive a larger share of commission?", Brito responded: "Correct." ).

> Plaintiff's Response No. 48:
>
> Disputed.
>
> Deluxe Travel does not receive commissions from the sale of domestic air travel generally. (29:1-4. [But note in some circumstances, Deluxe Travel also gets a commission on business class transcontinental airline tickets on United, American and Delta airlines as a result of being a part of Nexion. Alioto Dec Ex. 2 - Brito Dep. 29:20-30:16.
>
> Brito testified the lowest fares in coach do not pay commission. (Alioto Dec Ex. 2 - Brito Dep. 40:15-25).
>
> Brito testified Deluxe Travel makes higher commissions on *international flights* through *Lufthansa and Air Portugal* due to the agreements in place for these specific airlines through Nexion (not tickets for any airline in general or domestic coach flights). Moreover, Brito further testified an increase in ticket price does not necessarily result in an increased commission when, for example, the price increase is due to an increase in the fuel surcharge. (Alioto Dec Ex. 2 - Brito Dep. 30:20-32:18). (When asked "So when ticket prices go up for international travel, your commission, Deluxe's commission, ultimately increases in a corresponding way?",

---

[7] Paragraph 47 of Plaintiffs' Opposition to Defendants' Statement of Undisputed Material Facts inaccurately changes this citation to "Alioto Dec Ex. 2 – Brito Dep. 15:7-16, 19:12-14."  For consistency, Defendants have revised this Paragraph to match Paragraph 47 of their Statement of Undisputed Facts.

Brito responds: "That's not necessarily true, because many times when the prices go up, so goes the fuel surcharge that they add on the tickets, and doesn't mean that the base fare where the commission is paid is going up. It's the fuel surcharge that's going up, and it doesn't change anything." (Brito Dep. 32:4-18).

Deluxe Travel receives more commission *if the base fare is higher* on certain international and transcontinental flights when there is a commission involved. (Alioto Dec Ex. 2 - Brito Dep. 61:17-62:2, 62:15-63:1). (when asked, "If the base fares of those flights on which you receive commissions are higher, you receive more commission.")

Defendants' Reply to Plaintiffs' Response No. 48:

Plaintiffs' response does not actually dispute any material aspect of Paragraph 48, and therefore Paragraph 48 should be deemed admitted in its entirety. Plaintiffs fail to identify any admissible evidence or testimony that varies materially from the facts stated in Paragraph 48.

49.    Articulated Harm: Brito testified that the harm from the merger "would raise fares that would cost me more money to fly." *Id.* at 108:7-9. Brito drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35.

Brito wrote:

There will be higher airfare costs and less service, and more airline flight cancellations. After the merger, if it goes through, the airlines will have more power to control flights, fares, and the quality of service.

Exhibit 16 at 4.

Plaintiff's Response No. 49:

Disputed.

Plaintiff further testified:

When asked how the JetBlue-Spirit merger could impact his business, Brito testified that the merger "would diminish competition because they're the lowest - they hold lower – lower cost tickets and they hold other airlines in check." (Alioto Dec Ex. 2 - Brito Dep. 60:20-61:8).

Brito testified the JetBlue-Spirit merger would, in addition to raising fares, also lower service and lessen choice for air travel. (Alioto Dec Ex. 2 - Brito Dep. 107:23-108:22).

When asked how the JetBlue-Spirit merger could impact his personal travel, Brito testified: "[T]he merger would probably create more of a monopoly and it would … [increase] concentration [sic], reduce capacity in a number of flights, seats, increase airfares overall because that's kind of been the trend that's taken place, and lower service, higher fares in general." (*Id.* at 106:24-107:17).

Defendants' Reply to Plaintiffs' Response No. 49:

Does not create a genuine dispute of material fact.  Plaintiffs have abandoned their allegations of future harm in their professional capacities as travel agents by failing to pursue these claims in discovery or defend them in their Opposition.  The additional text does not create any dispute.

50.      Brito agreed that the two merger challenges in which certain Plaintiffs, including Brito, reached a settlement—*D'Augusta v. Northwest Airlines Corp.*, and *Grace v. Alaska Air Grp.*—had a "favorable outcome." Exhibit 14 at 117:6-118:4.

Plaintiff's Response No. 50:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 50:

Undisputed and therefore admitted.  *See* L.R. 56.1.

**C.      Jan-Marie Brown**

51.      Flown Spirit: Brown has never flown Spirit. Exhibit 19 at 20:3-5, 73:16- 18, 78:13-79:2; Exhibit 18 at 3.

Plaintiff's Response No. 51:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 51:

Undisputed and therefore admitted.  *See* L.R. 56.1.

52.      Future Plans to Fly Spirit: Brown has no Spirit flights booked, and has no concrete plans to fly Spirit in the future. Exhibit 17 at 79:3-6.

Plaintiff's Response No. 52:

Disputed.

43

Plaintiff Brown will fly Spirit in the future as they have the best prices out of closest airport, Reno. (Brown Dep. 126:8-127:3.)

Plaintiff Brown plans on flying from Reno to Orlando in the next year to visit her sister and her family who live there. Plaintiff Brown's Declaration in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Brown Dec.") ¶2.

Defendants' Reply to Plaintiffs' Response No. 52:

Does not create a genuine dispute of material fact.  Plaintiff does not dispute that she has no Spirit flights booked and no concrete plans to fly Spirit in the future.

Plaintiffs cannot contradict Brown's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery.  *See supra* Defendants' Reply to Plaintiffs' Response No. 27.

53.    Spirit Flights in Rog 8 Routes: Brown has not flown Spirit on any of the routes

listed in Plaintiffs' response to Interrogatory No. 8.  Exhibit 19 at 6-7; Exhibit 17 at 73:4-11.

Plaintiff's Response No. 53:

Disputed.

Plaintiff has flown or intends to fly the following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories (Set Two):

RNO-LGA (Roundtrip)

BUR-JFK (Roundtrip)

RNO-EWR (Roundtrip)

RNO-MCO (Roundtrip)

Plaintiff Brown plans on flying from Reno to Orlando in the next year to visit her sister and her family who live there.

(Alioto Dec Ex.51- Plaintiff Brown's Second Supplemental responses to Defendants' Interrogatories (Set Two); Alioto Dec Ex. 27 - Plaintiff Brown's Responses and Objections to Defendants' Interrogatories (Set One) .)

Defendants' Reply to Plaintiffs' Response No. 53:

Plaintiffs' response does not actually dispute any material aspect of Paragraph 53, and therefore Paragraph 53 should be deemed admitted in its entirety. Plaintiffs do not state that Brown flew Spirit on any of the identified routes.

Defendants object to Plaintiffs' reliance on untimely updates to fact discovery responses between August 10-18, 2023, over six weeks after the close of fact discovery.

Brown did not fly between Reno and New York (LGA and EWR) on Spirit and she flew this route last in 2019. This is too attenuated to confer standing as a matter of law. *See* Defendants' Reply to Plaintiffs' Response No. 27.

The evidence that Plaintiffs cite does not show that Brown has flown, or plans to fly, from Los Angeles-Burbank (BUR) to New York (JFK). *See* Exhibit 19 at 6-7; Exhibit 17 at 86:15-87:13 (indicating that Brown was identifying a flight from Reno to Burbank in her deposition, not from Burbank to New York (JFK)).

Plaintiffs cannot rely on vague, unformed statements that Brown "intends" to fly at some point in the future or "plans on flying" at some point "in the next year." *See* Defendants' Reply to Plaintiffs' Response No. 27.

Even assuming Brown *does* fly from Reno to Orlando, this is not a route that Plaintiffs' expert, Hal Singer, claims would be impacted by the merger. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7 (not listing Reno to Orlando); Defendants' Reply to Plaintiffs' Response No. 36.

Brown is not identified as a trial witness. *Infra* ¶ 217.

54.     Travel Agent: Brown works as a travel manager for the musical group the Beach Boys. Brown gave inconsistent responses as to whether she is a travel agent. In her verified response to Defendants' Interrogatory No. 5, Brown stated she has been a "travel agent" for "Meleco Travel" from "January 10th, 2010, to present," and receives a salary from that agency and "share[s] in the income from commissions." Exhibit 20 at 2. Brown's deposition, however, and in her verified responses to Defendants' Request for Admission No. 4, Brown agreed that she is "not presently employed as a travel agent" and she does not "sell travel" to the general public. Exhibit 19 at 20:9-23:12; Exhibit 18 at 3. Brown further testified that Meleco Travel is "not a travel agency," that she has no ownership stake in the company, and that she books travel only for

the Beach Boys, their employees, certain family members, and other musicians and personnel.

Exhibit 17 at 41:23-42:5, 50:24- 52:14.

> Plaintiff's Response No. 54:
>
> Disputed.
>
> Brown testified she is presently employed by Meleco Travel as a travel manager (not a travel agent) for the Beach Boys. In her role as travel manager, Brown books travel, manages logistics, property locations, venue locations, and flights from all around the United States and the world year round. (Alioto Dec Ex. 3 - Brown Dep. 22:10-23:12; 40:7-23).
>
> Brown's position with the Beach Boys does not entail selling travel. (Brown. Dep. 23:10-12).
>
> Brown does not currently receive income from any travel agency. (Alioto Dec Ex. 3 - Brown Dep. 24:6-8).
>
> Brown has performed work as an independent contractor travel agent for Deluxe Travel prior to the pandemic in 2020, but does not currently receive any income or commission from Deluxe Travel. (Alioto Dec Ex. 3 - Brown Dep. 31:16-32:19).
>
> Defendants' Reply to Plaintiffs' Response No. 54:
>
> Plaintiffs' response does not actually dispute any material aspect of Paragraph 54. and therefore Paragraph 54 should be deemed admitted in its entirety.

55.    Compensation: Brown receives the "same salary" whether she books "a thousand flights" or "100 flights," "regardless of which airline people choose to fly," and "regardless of the ticket price that is paid." *Id.* at 42:2-17, 52:16-53:2, 69:21-70:11.

> Plaintiff's Response No. 55:
>
> Undisputed.
>
> Defendants' Reply to Plaintiffs' Response No. 55:
>
> Undisputed and therefore admitted.  *See* L.R. 56.1.

56.    Miscellaneous: Brown testified that she has a medical condition that was impacting her long-term memory, which began in the last "three months" as of the date of her deposition. *Id.* at 111:4-24.

Plaintiff's Response No. 56:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 56:

Undisputed and therefore admitted.  *See* L.R. 56.1.

57.     Articulated Harm: Brown asserted that the merger will make prices higher, and that airline mergers have resulted in "reduced routing," "reduced number of seats," and more crowded flights. *Id.* at 127:8-128:24. Brown confirmed that this only her "opinion based on past experience." *Id.* at 130:5-16. Brown drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. Brown wrote:

> Fewer flights from the merger equals less availability. In my line of work, this is a significant issue. There will likely be higher prices, less customer service, and fewer choices of carriers. The lack of healthy competition between airlines is damaging to any person who flies anywhere or works in the industry.

Exhibit 21 at 4.

Plaintiff's Response No. 57:

Undisputed.

However, Plaintiff further testified:

Plaintiff Brown would personally be impacted by merger if flights out of Reno are impacted as Spirit is the lowest cost carrier in Reno. (Alioto Dec Ex. 3 - Brown Dep. 127:8-128:20.)

Plaintiff Brown would personally be impacted by merger if flights out of Reno are impacted as Spirit is the lowest cost carrier in Reno. (Alioto Dec Ex. 3 - Brown Dep. 127:8-128:20.)

Defendants' Reply to Plaintiffs' Response No. 57:

Undisputed and therefore admitted.  *See* L.R. 56.1.  The additional allegations do not create a genuine dispute of material fact as they do not dispute any material aspect of Paragraph 57.

**D.     Rosemary D'Augusta**

58.     Flown Spirit: D'Augusta has never flown Spirit. Exhibit 22 at 46:14-16; Exhibit 22

at 3.

Plaintiff's Response No. 58:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 58:

Undisputed and therefore admitted.  *See* L.R. 56.1.

59.   Future Plans to Fly Spirit: D'Augusta has no Spirit flights booked, and has no

concrete plans to fly Spirit in the future. Exhibit 21 at 76:11-21, 78:18-21.

Plaintiff's Response No. 59:

Disputed.

D'Augusta plans to fly to New York in the next several weeks. (Alioto Dec Ex. 4 -
D'Augusta Dep. 95:11-22). She will be flying to New York (Metropolitan Area)
from San Francisco (Metropolitan Area) for a family wedding in the next six
months and plans to fly Spirit Airlines.  Declaration of D'Augusta in Support of
Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("D'Augusta
Dec.") ¶2. D'Augusta would fly on any airline. Alioto Dec Ex. 4 - D'Augusta Dep.
70:18-20.

D'Augusta will be flying Spirit airlines in June 2024 for her nephew's graduation
celebration. She will be flying from Oakland to Philadelphia once the party is
scheduled. *Id.*

D'Augusta will also be flying on Spirit airlines from Oakland to San Diego round
trip in early 2024 to visit a close friend. *Id.*

There are no airlines that D'Augusta would exclude from consideration in choosing
a flight in the future. (Alioto Dec Ex. 4 - D'Augusta Dep. 96:22-24).

Defendants' Reply to Plaintiffs' Response No. 59:

Does not create a material dispute of fact.  Plaintiffs do not dispute that D'Augusta
does not have any Spirit flights booked.

Plaintiffs cannot contradict D'Augusta's deposition and interrogatory answer with
a contradictory, self-serving declaration nearly two months after the close of fact
discovery.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

Defendants object to Plaintiffs' reliance on untimely updates to fact discovery
responses between August 10-18, 2023, over six weeks after the close of fact
discovery.

Plaintiffs cannot rely on vague, unformed statements that D'Augusta "would fly on any airline" or statements that she "will be flying Spirit" that are unsupported by the cited deposition testimony when no such tickets have been booked or plans made. *See* Defendants' Reply to Plaintiffs' Response No. 27.

In any event, Plaintiffs' response does not introduce a dispute of material fact. The routes D'Augusta allegedly intends to fly from San Francisco (Metropolitan Area) to New York (Metropolitan Area), from Oakland to Philadelphia and from Oakland to San Diego are not listed as an allegedly route that may be impacted by the merger in Singer's report, but appear in Plaintiffs' belatedly-served Interrogatory Responses. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7. Plaintiffs have no admissible evidence that the alleged route will be impacted by the merger. To the extent the challenged routes are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), inclusion does not raise a genuine dispute of material fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

60. <u>Spirit Flights in Rog 8 Routes</u>: Since November 2018, D'Augusta has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8. Exhibit 21 at 55:2–56:17; Exhibit 23 at 6–7.

<u>Plaintiff's Response No. 60</u>:

Disputed.

Plaintiff has flown or intends to fly the following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories (Set Two):

SFO- New York (Metropolitan Area) (Roundtrip). Has flown and intends to fly several times between now and summer 2024. D'Augusta Dec. ¶2.

SFO-EWR (Roundtrip)

OAK-PHL (Roundtrip). D'August intends to fly this route in June 2024 on Spirit Airlines. Id.

(Alioto Dec Ex. 52 - Plaintiff D'Augusta's Second Supplemental responses to Defendants' Interrogatories (Set Two); Alioto Dec Ex. 28 - Plaintiff's Responses and Objections to Defendants' Interrogatories (Set One); D'Augusta Dec. ¶2)

<u>Defendants' Reply to Plaintiffs' Response No. 60</u>:

Does not create a material dispute of fact. Plaintiffs do not dispute that D'Augusta has not flown Spirit on any of the identified routes.

Plaintiffs cannot contradict D'Augusta's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Defendants object to Plaintiffs' reliance on untimely updates to fact discovery responses between August 10-18, 2023, over six weeks after the close of fact discovery.

Plaintiffs cannot contradict D'Augusta's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

D'Augusta's alleged routes from San Francisco (SFO) to New York (Metropolitan Area, including EWR), and Oakland to Philadelphia, are not routes that Plaintiffs' expert, Hal Singer, claims would be impacted by the merger and Plaintiffs have offered no argument that these routes would be subject to any likelihood of anticompetitive harm from the merger. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7 (not listing San Francisco (SFO) to New York (Metropolitan Area) or Oakland to Philadelphia.) *See* Defendants' Reply to Plaintiffs' Response No. 36.

D'Augusta's intent to fly certain routes on Spirit, an airline that she has never flown before, is too speculative to confer standing. Plaintiffs cannot rely on vague, unformed statements that D'Augusta "intends to fly" or statements that she "intends to fly . . . on Spirit" when no such tickets have been booked or plans made. *See* Defendants' Reply to Plaintiffs' Response No. 27.

D'Augusta is not identified as a trial witness. *Infra* ¶ 217.

61.   <u>Travel Agent</u>: D'Augusta is not currently employed as a travel agent and does not own a travel agency. Exhibit 22 at 3; Exhibit 21 at 16:10-13.

<u>Plaintiff's Response No. 61:</u>

Undisputed.

<u>Defendants' Reply to Plaintiffs' Response No. 61:</u>

Undisputed and therefore admitted. *See* L.R. 56.1.

62.   D'Augusta worked in the travel agency industry for several years, including as the owner of her own travel agency; however, she closed her company due to the COVID pandemic and has no plans to engage in the travel agency industry in the future. Exhibit 21 at 12:9-13:5, 15:18-17:13. The last time D'Augusta sold a ticket was in early 2019. *Id.* at 20:10-14.

Plaintiff's Response No. 62:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 62:

Undisputed and therefore admitted.  *See* L.R. 56.1.

63.    Compensation: D'Augusta is retired and no longer receives any income from a travel agency. *Id.* at 12:9–13:5, 15:18–17:13, 19:12-18.

Plaintiff's Response No. 63:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 63:

Undisputed and therefore admitted.  *See* L.R. 56.1.

64.    Articulated Harm: D'Augusta asserted that the harm resulting from the merger will be that prices will go up, reduce consumer choice of flights, and eliminate jobs. *Id.* at 89:10–90:3. She stated that she "speculate[s]" the merger will affect her and "the general public" because it will eliminate "all the goods and services that Spirit offers in the marketplace." *Id.* at 79:7–16. D'Augusta's travel agency is no longer in operation, and she testified it will not be impacted by the merger. *Id.* at 19:19-22. D'Augusta drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. D'Augusta wrote:

> This merger will create fewer choices as flights and routes are consolidated and will contribute to reduced flexibility to manage longer or forced layovers or inconvenient travel schedules. Less competition increases fares and hurts my pocketbook, opportunities, and lifestyle. Less customer service from overstaffing reductions affects my well-being as the quality of services declines. Integrating different airline cultures and systems with less staffing creates longer wait times, difficulty in resolving issues, and limited support during disruptions which harms my travel experience and increases unhealthy stress conditions in travel.
>
> Merging different airline systems, such as reservations, baggage handling, and flight schedules, invites disruptions at all levels and causes me both inconvenience and expense to resolve lost or delayed

baggage, flight cancellations, or difficulties in transferring between flights. Organizational and operational change hurts employee morale which directly impacts my quality of travel as service and attitudes decline. I am affected by the demeanor and attitude of agents tasked with helping me but are unable or resentful due to merger staffing changes.

I become the victim of the airlines' overall reductions and the airlines' elimination of competition. Merged airlines may discontinue or reduce service to certain regional or secondary airports to prioritize more profitable routes. This can impact more densely traveled airports such as my three airports, San Francisco, Oakland, and San Jose. This will directly affect the quality of my travel experience and dampen any future desire to fly as merged airlines discontinue and reduce flights and airport service. Merged airlines may implement new policies or modify existing ones, such as baggage fees, boarding procedures, or seating arrangements. This will burden and deteriorate the quality of my overall travel experience.

<u>Plaintiff's Response No. 64:</u>

Undisputed.

However, D'Augusta further testified about the impact of the merger on her personally as follows:

The JetBlue-Spirit merger would affect D'Augusta personally and the general public "by eliminating a major competitor to JetBlue, which Spirit is, and with that elimination, all of the goods and services that Spirit offers in the marketplace will be gone. Some of the aircraft will be gone. Seat availability will be gone. Pries will rise. Personnel will be eliminated. Airport staff will be affected. And on and on it goes across the country." (Alioto Dec Ex. 4 - D'Augusta Dep. 78:22-79:16).

D'Augusta personally feels threatened by the potential merger. "I feel that when you take away a … viable competitor, you take away the consumer's choice and you would take away my choice. You would take away jobs. You would … take away flights. … We would have less availability, as we would have fewer choices. And in the long run, that hurts me and it hurts the consumer." (Alioto Dec Ex. 4 - D'Augusta Dep. 89:10- 90:3).

Route, schedule and price are important considerations when D'Augusta is selecting an airline. (Alioto Dec Ex. 4 - D'Augusta Dep. 60:16-61:7).

The most important factors for D'Augusta in choosing a flight are timing and whether a flight is nonstop. (Alioto Dec Ex. 4 - D'Augusta Dep. 63:19-64:4).

Exhibit 24 at 4–5.

<u>Defendants' Reply to Plaintiffs' Response No. 64</u>:

Undisputed and therefore admitted.  *See* L.R. 56.1.  The additional allegations do not create a genuine dispute of material fact.

65.   <u>Miscellaneous</u>: If D'Augusta successfully prevented the merger but did not obtain financial compensation, she would not find that to be a satisfactory outcome. Exhibit 21 at 88:6–10. D'Augusta did not read the complaint before it was filed. *Id.* at 91:11–15.

<u>Plaintiff's Response No. 65</u>:

Disputed.

When D'Augusta was asked this question and answered "no" to the question "if you successfully prevented the merger but did not obtain any financial compensation, would that be a satisfactory outcome, she answered: "[D'Augusta's] objective is to block the merger to … derail the trend that is occurring in this country … towards monopolization, towards larger and larger, bigger and bigger. The power goes to the merged companies, and the people suffer because of it. The trend towards monopolization in all facets of industry across the country, and my objective is to stand in front of it and let the people know it's going to stop. If we block it, it's a good thing." (Alioto Dec Ex. 4 - D'Augusta Dep. 88:6-22).

<u>Defendants' Reply to Plaintiffs' Response No. 65</u>:

Plaintiffs' response is incoherent and fails to comply with Local Rule 56.1. Plaintiffs' response does not actually dispute any material aspect of Paragraph 65, and therefore Paragraph 65 should be deemed admitted in its entirety.

**E.      Brenda K. Davis**

66.   <u>Flown Spirit</u>: Brenda Davis has not flown Spirit in the last eight years.  Exhibit 25 at 65:17-66:1. Davis provided no testimony that she has ever flown Spirit.

<u>Plaintiff's Response No. 66</u>:

Undisputed.

<u>Defendants' Reply to Plaintiffs' Response No. 66</u>:

Undisputed and therefore admitted. *See* L.R. 56.1.

67.   <u>Future Plans to Fly Spirit</u>: Davis has no future Spirit flights booked, and has no concrete plans to fly Spirit. *Id.* at 65:17-66:14; 77:23-78:13. Davis says she intends some day to

fly Spirit to Las Vegas with her brother. *Id.* at 65:17-66:14. Davis says she "would not be opposed

to [flying] Spirit." *Id.* at 65:17-66:14.

> Plaintiff's Response No. 67:
>
> Disputed.
>
> Davis has a flight booked on Spirit from Dallas to Las Vegas from September 6, 2023 to September 9, 2023. Plaintiff Davis' Declaration in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Davis Dec.") ¶2. Davis plans on flying Spirit nonstop from Dallas to Las Vegas with her brother. (Alioto Dec Ex. 5 - Alioto Dec Ex. 5 - Davis Dep. 34:11-35:3). She will also fly Spirit nonstop from Dallas to Las Vegas for her husband's birthday in January, 2024. Davis Dec. ¶2.
>
> Davis intends to fly Spirit from Dallas to Seattle for an upcoming cruise to Alaska. (Alioto Dec Ex. 5 - Davis Dep. 70:20-71:11).
>
> Plaintiff Davis plans to fly from DFW, Dallas Love, Austin and Houston Hobby to Las Vegas, Dallas to New York, Dallas to Florida, and Dallas to Cancun. (Alioto Dec Ex. 5 - Davis Dep. 34:11-35:5.)
>
> Plaintiff Davis also has plans to fly from Dallas to Seattle and Dallas to Alaska. (*Id.* at 78:9-13.)
>
> Davis plans on flying Dallas/Fort Worth to Seattle, New York and also to Florida for a cruise and is not opposed to flying on Spirit. (Alioto Dec Ex. 5 - Davis Dep. 65:17-23).
>
> Davis would definitely book Spirit flights for her customers in the future. (Alioto Dec Ex. 5 - Davis Dep. 34:11-18).
>
> Plaintiff frequently flies from Dallas/Fort Worth to Las Vegas, New York, and Fort Lauderdale. (*Id.* at 48:2-6.)
>
> Defendants' Reply to Plaintiffs' Response No. 67:
>
> Does not create a material dispute of fact.
>
> Defendants object to Plaintiffs' reliance on untimely updates to fact discovery responses between August 10-18, 2023, over six weeks after the close of fact discovery.
>
> Plaintiffs cannot contradict Davis's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Davis's alleged future travel on routes from "Dallas to Seattle," from "Dallas to Cancun," and from Dallas/Fort Worth (DFW) to Las Vegas are not routes that Plaintiffs' expert, Hal Singer, claims would be impacted by the merger and Plaintiffs have offered no argument that these routes would be subject to any likelihood of anticompetitive harm from the merger. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7 (not listing Dallas to Seattle, Dallas to Cancun, Dallas/Fort Worth (DFW) to Las Vegas); Defendants' Reply to Plaintiffs' Response No. 36.

Plaintiffs' alleged routes from Dallas/Fort Worth (DFW) to New York (Metropolitan Area), and from Dallas/Fort Worth (DFW) to Fort Lauderdale are not listed as routes that may be impacted by the merger in the Singer Report, and appears only in Plaintiffs' belatedly-served Interrogatory Responses. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7. Plaintiffs have no admissible evidence that the alleged route will be impacted by the merger. To the extent the challenged routes are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), its inclusion does not raise a genuine dispute of material fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

Plaintiffs' statement that Davis plans to fly from "Dallas/Fort Worth … to Florida" and from "Dallas to Alaska" does not create a dispute of material fact. Plaintiffs' statement is too vague to permit a reasonable fact finder to conclude that Plaintiff will fly on one of the routes that Plaintiffs challenge as being subject to anticompetitive harms.

68.     Spirit Flights in Rog 8 Routes: Davis has not flown Spirit on any of the routes listed

in Plaintiffs' response to Interrogatory No. 8. *Id.* at 65:17-66:1; Exhibit 26 at 7-8.

Plaintiff's Response No. 68:

Disputed.

Plaintiff has flown or intends to fly the following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories (Set Two):

Dallas/Fort Worth, TX – New York (Metropolitan).

She frequently flies this route and will be flying this route again for an upcoming cruise. (Alioto Dec Ex. 5 - Davis Dep. 65:17-23).

Miami, FL – San Juan, PR (Roundtrip)

Dallas/Fort Worth, TX – Fort Lauderdale, FL (Roundtrip)

She frequently flies this route and will be flying this route again for an upcoming cruise. (Alioto Dec Ex. 5 - Davis Dep. 48:2-6; 65:17- 23).

Miami, FL – Charlotte, NC (Roundtrip) Dallas – Las Vegas (Roundtrip)

Davis has a flight booked on Spirit from Dallas to Las Vegas from September 6, 2023 to September 9, 2023. Davis Dec. ¶2. Davis plans on flying Spirit nonstop from Dallas to Las Vegas with her brother. (Alioto Dec Ex. 5 - Davis Dep. 34:11-35:3). She will also be flying Spirit nonstop from Dallas to Las Vegas for her husband's birthday in January, 2024. Davis Dec. ¶2.

(Alioto Dec Ex. 53 - Plaintiff Davis' Second Supplemental responses to Defendants' Interrogatories (Set Two); Alioto Dec Ex. 29 - Plaintiff Davis' Responses and Second Supplemental Responses to Defendants' Interrogatories (Set One), Exhibit A.)

Defendants' Reply to Plaintiffs' Response No. 68:

Does not create a material dispute of fact.

Plaintiff states that she "has flown or intends to fly" routes, but vague "intent" to fly is too speculative to confer standing. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Defendants object to Plaintiffs' reliance on untimely updates to fact discovery responses between August 10-18, 2023, over six weeks after the close of fact discovery.

Plaintiffs cannot contradict Davis's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Davis's alleged route from Dallas/Fort Worth (DFW) to Las Vegas is not a route that Plaintiffs' expert, Hal Singer, claims would be impacted by the merger and Plaintiffs have offered no argument that these routes would be subject to anticompetitive harm from the merger. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7 (not listing Dallas/Fort Worth (DFW) to New York (Metropolitan Area) or Dallas/Fort Worth (DFW) to Las Vegas); Defendants' Reply to Plaintiffs' Response No. 36.

Plaintiffs' alleged routes from Miami to Charlotte, from Dallas/Fort Worth (DFW) to New York (Metropolitan Area), and from Dallas/Fort Worth (DFW) to Fort Lauderdale are not listed as routes that may be impacted by the merger in the Singer Report, but appear in Plaintiffs' belatedly-served Interrogatory Responses. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7; Alioto Dec. Ex. 53. Plaintiffs have no admissible evidence that the alleged route will be impacted by the merger. To the extent the challenged routes are "Spirit-Only routes" (which

are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), their inclusion does not raise a genuine dispute of material fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

Davis's alleged intent to fly from Miami to San Juan, PR is too speculative to confer standing. Plaintiffs cannot rely on vague, unformed statements that Davis "intends to fly" this route that are unsupported by the cited deposition testimony when no such tickets have been booked or plans made. These statements are too speculative to confer standing. *See* Defendants' Reply to Plaintiffs' Response No. 27.

69.  <u>Travel Agent</u>: Davis opened her own travel agency in 1990, which is still in business today. Exhibit 25 at 14:3-4, 16:16-17:18. However, Davis has been "semi- retired" since 2016. *Id.* at 17:19-24; Exhibit 27 at 2. Davis estimated that her agency serviced around 30-50 customers in 2016 and the number of customers the agency services has gradually trickled down since 2016. Exhibit 25 at 18:9-20. She has not sold an airline ticket in the last five years. Exhibit 27 at 2.

<u>Plaintiff's Response No. 69</u>:

Disputed.

Davis testified she might consider ramping up her business in the future. (Alioto Dec Ex. 5 - Davis Dep. 22:5-23:2).

Plaintiff has not sold airline tickets to the public in the last 5 years *through the CRT system*. She has sold airline tickets to the public through a tour vendor in a package. (Alioto Dec Ex. 5 - Davis Dep. 50:6-16) (emphasis added).

Davis has mainly sold airline tickets to her family and herself since she retired in 2016. (Alioto Dec Ex. 5 - Davis Dep. 19:16-23).

Davis also booked a family's airline travel to Cancun through a tour vendor. (Alioto Dec Ex. 5 - Davis Dep. 21:5-23).

<u>Defendants' Reply to Plaintiffs' Response No. 69</u>:

Plaintiffs' response does not actually dispute any material aspect of Paragraph 69. The fact that Davis has booked a family friend's airline travel through a tour vendor's "package deal with the air and hotel . . . packaged together" does not materially contradict the contents of Paragraph 69, and therefore Paragraph 69 should be deemed admitted in its entirety. *See* Wright Dec. Exhibit 25 at 21:5-23.

70.   <u>Compensation</u>: Davis used to charge a $30 flat fee per airline ticket booked. Exhibit 25 at 24:13-25:8. In 2022, she did not book travel for any customers besides the approximately 40 people traveling for her daughter's wedding. *Id.* at 18:21-19:13. Since her semi-retirement from the travel industry, Davis made an estimated total of $5,000-$6,000 in revenue from her travel agency, and did not believe that she received any revenue from the agency in 2022. *Id.* at 20:16-24, 40:24-41:19.

> <u>Plaintiff's Response No. 70</u>:
>
> Undisputed.
>
> <u>Defendants' Reply to Plaintiffs' Response No. 70</u>:
>
> Undisputed and therefore admitted.  *See* L.R. 56.1.

71.   <u>Articulated Harm</u>: Davis testified that she would be personally impacted by the merger "if it increased the fares, if [] the service is cut." *Id.* at 42:21-43:5. Specifically, she noted that "service may be cut in Dallas for Spirit," "Spirit…keeps the prices down in [Dallas]," and the merger "would maybe eliminate the low-cost carriers." *Id.* at 43:18- 44:3. Davis drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. Davis wrote:

> This merger will harm American travelers by driving up prices, eliminating low-fare carriers, making less flights available, eliminating competition, reducing choices for travelers and eliminating low cost capacity.

Exhibit 27 at 4.

> <u>Plaintiff's Response No. 71</u>:
>
> Disputed.
>
> If the JetBlue-Spirit merger is allowed to proceed, Davis would be affected personally because Spirit's service may be cut in Dallas and she plans on traveling Spirit. Her business [which she testified earlier that she could decide to ramp up in the future] would be affected because Vegas and Cancun are big travel destinations and the merger could eliminate other low- cost carriers as Spirit keeps the prices down in the Dallas market. (Alioto Dec Ex. 5 - Davis Dep. 43:9-44:3).

Price, direct flight, convenience and time and whether an airline services a city are all factors Davis considers when booking airline travel. (Alioto Dec Ex. 5 - Davis Dep. 71:20-72:4).

Defendants' Reply to Plaintiffs' Response No. 71:

Plaintiffs' response does not actually dispute any material aspect of Paragraph 71 and therefore Paragraph 71 should be deemed admitted in its entirety. The additional allegations do not create a genuine dispute of material fact.

**F.    Pamela Faust**

72.    Flown Spirit: Plaintiff Pamela Faust has never flown on Spirit. Exhibit 28 at 64:10-15; Exhibit 29 at 3.

Plaintiff's Response No. 72:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 72:

Undisputed and therefore admitted.  *See* L.R. 56.1.

73.    Future Plans to Fly Spirit: Faust has no future Spirit flights booked, and has no concrete plans to fly Spirit. Exhibit 28 at 99:21–101:9. Faust is considering flying Spirit to Los Angeles in September or October, although she has no flights booked, no confirmed dates of travel, and does not have "anything in the plans." *Id.* at 99:21–101:9, 103:24– 104:21. Faust prefers to fly nonstop, and her preferred airline is Delta. *Id.* at 77:18–23.

Plaintiff's Response No. 73:

Disputed.

Plaintiff Faust plans to fly from Columbus to Los Angeles on Spirit airlines in September or October. (Alioto Dec Ex. 6 - Faust Dep. 26:18- 26:25; 100:13-22.) She would like to go to see the Hollywood sign, the observatory, and shop at the grove. (*Id.*)

Faust would fly Spirit if it provided service out of CVG. (Alioto Dec Ex. 6 - Faust Dep. 72:17-23).  [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]  Faust would very likely consider flying the nonstop route on Spirit from Columbus to Orlando to go to Disney in the future. (Alioto Dec Ex. 6 - Faust Dep. 78:16-79:10).

Spirit offers service out of the Columbus airport, which Plaintiff would consider flying out of. (Alioto Dec Ex. 6 - Faust Dep. 72:24-73:5; 73:10-12).

Defendants' Reply to Plaintiffs' Response No. 73:

Does not create a genuine dispute of material fact. Plaintiffs do not state that Faust has any future Spirit flights booked.

Plaintiffs cannot contradict Faust's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiff does not plan to fly any of the routes that Plaintiffs' expert, Hal Singer, claims would potentially be impacted by the merger. Plaintiff Faust's identified route, from Columbus to Los Angeles (Metropolitan Area), is not a route that Plaintiffs' expert, Hal Singer, claims in the Singer Report would be impacted by the merger, though it is identified as a Spirit-Only route in the Singer Declaration. Dkt. 185. But Plaintiffs have offered no argument that this route would be subject to any likelihood of anticompetitive harm from the merger. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7 (not listing Columbus to Los Angeles (Metropolitan Area); Defendants' Reply to Plaintiffs' Response No. 36.

74.     Spirit Flights in Rog 8 Routes: Faust has not flown Spirit on any of the routes listed

in Plaintiffs' response to Interrogatory No. 8. Exhibit 30 at 6–8; Exhibit 28 at 59:16-21.

Plaintiff's Response No. 74:

Disputed.

Plaintiff has flown or intends to fly the following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories (Set Two):

CMH-LAX (Roundtrip)

Plaintiff intends to fly the following routes in the near future:

Columbus, OH – Los Angeles, CA (Roundtrip) in September or October. (Alioto Dec Ex. 6 - Faust Dep. 26:18-26:25; 100:13-22.)

Columbus, OH – Fort Meyers, FL for vacation (Roundtrip). (Alioto Dec Ex. 6 - Faust Dep. 57:14-24).

CVG to Salt Lake City, Fort Meyers, Tampa and Orlando. (Alioto Dec Ex. 6 - Faust Dep. 56:21-57:4, 57:14-24).

(Alioto Dec. Ex. 54 - Plaintiff Faust's Second Supplemental responses to Defendants' Interrogatories (Set Two); Alioto Dec. Ex. 30 - Plaintiff Faust's Second Supplemental Responses to Defendants' Interrogatories (Set One).)

Defendants' Reply to Plaintiffs' Response No. 74:

Does not create a genuine dispute of material fact.

Defendants object to Plaintiffs' reliance on untimely updates to fact discovery responses between August 10-18, 2023, over six weeks after the close of fact discovery.

Plaintiffs cannot contradict Faust's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiff has not flown any of the routes that Plaintiffs' expert, Hal Singer, claims in the Singer Report would potentially be impacted by the merger, though they are identified in the Singer Declaration as Spirit-Only routes.  Plaintiff Faust's identified routes, from Columbus to Los Angeles (Metropolitan Area) and from Columbus to Fort Myers, are not routes that Plaintiffs' expert, Hal Singer, claims would be impacted by the merger and Plaintiffs have offered no argument that these routes would be subject to any likelihood of anticompetitive harm from the merger. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7 (not listing Columbus to Los Angeles (Metropolitan Area) and Columbus to Fort Myers); Defendants' Reply to Plaintiffs' Response No. 36.

The routes Faust has flown from Cincinnati to Salt Lake City, from Cincinnati to Fort Myers, from Cincinnati to Tampa, and from Cincinnati to Orlando are not listed as harmed routes in Plaintiffs' expert Hal Singer's report.  *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7.  Plaintiffs have no admissible evidence that the alleged route will be impacted by the merger.  To the extent the challenged routes are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), their inclusion does not raise a genuine dispute of material fact because there is no cognizable theory of harm articulated on these routes.  *See* Defendants' Reply to Plaintiffs' Response No. 36.

Faust is not identified as a trial witness.  *Infra* ¶ 217.

75.  Travel Agent: Faust has been a travel agent for nearly forty years. Exhibit 28 at 12:4–6; 12:22–23. Her company, based in Cincinnati, Ohio, is called Silhouette Tours and Travel, Inc. *Id.* at 12:17–19, 13:3.

Plaintiff's Response No. 75:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 75:

Undisputed and therefore admitted. *See* L.R. 56.1.

76.    Compensation: Faust does not receive commissions from booking airline travel. *Id.* at 44:4-10. Instead, she charges her clients flat service fees ranging from approximately $40 to $50 per airline ticket booked, and may charge more if a booking "takes a lot of planning to look at multiple choices, different hotel options." *Id.* at 45:16– 46:5.

Plaintiff's Response No. 76:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 76:

Undisputed and therefore admitted. *See* L.R. 56.1.

77.    Articulated Harm: Faust testified that Spirit does not service Cincinnati but explained that the merger could have a "trickle-down effect" that "will affect lots of people, not just in [a] particular hundred-mile zone of that airport," creating a "hardship" for her and her clients. *Id.* at 52:2-54:2. Specifically, she stated merger could drive her clients to choose alternative modes of transportation and eliminate her service if flight options disappear. *Id.* at 54:22–25. Faust drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. Faust wrote:

> This merger will change the market structure in the country. JetBlue and Spirit directly compete on routes now and their merger will more than likely increase their market power and thus their prices. The fact that there will be less competition means that Plaintiffs will pay more for an airline ticket.

Exhibit 31 at 3–4.

Plaintiff's Response No. 77:

Undisputed.

62

Faust testified that mergers lead to limited options for consumers, elimination of certain flights, including nonstop options, and increased prices. (Alioto Dec. Ex. 6 - Faust Dep. 51:2-18).

Faust further explained, "And on a bigger scale, I should be concerned about any kind of merger as a travel agent and consumer because it's just one more nail in the coffin on the options that American customers have for their flight travel." (Alioto Dec.. Ex. 6 - Faust Dep. 52:2-53:9).

Faust's understanding is that there will be less competition in the city pairs markets as indicated in the chart in her response to Interrogatory No. 8 in the merger were allowed to proceed. (Alioto Dec.. Ex. 6 - Faust Dep. 75:22-76:1). "[] [L]ess competition with city pairs or city markets means less options for the consumer." (Alioto Dec.. Ex. 6 - Faust Dep. 75:12-76:1).

Faust further explained, "And on a bigger scale, I should be concerned about any kind of merger as a travel agent and consumer because it's just one more nail ion the coffin on the options that American customers have for their flight travel." (Alioto Dec.. Ex. 6 - Faust Dep. 52:2-53:9).

Faust testified about her concerns that the JetBlue-Spirit merger could affect service and flight options. (*Id.* at 111:3-8-112:11).

The most important factors Faust considers in booking airline travel is a nonstop flight, time of flight, and price, in that order. (*Id.* at 77:24-78:6).

Faust believes that mergers lead to the downsizing of options, including choices of flights, and eliminates jobs in the community, which is why she is motivated to block the merger. (*Id.* at 113:19-114:5).

Defendants' Reply to Plaintiffs' Response No. 77:

Undisputed and therefore admitted.  *See* L.R. 56.1.  Plaintiffs' additional text does not create a genuine dispute of material fact.

**G.    Carolyn Fjord**

78.    Flown Spirit: From November 2018 to the present, Carolyn Fjord has not flown

Spirit. Exhibit 33 at 7-8.

Plaintiff's Response No. 78:

Disputed.

Ms. Fjord has flown or intends to fly Spirit several times. She testified, "I had flown Spirit three times, two times in 2017 and one time in 2018." (Alioto Dec.. Ex. 7

Fjord Dep. 10: 10-12.) She further testified, "We've flown Spirit from Oakland to Detroit three times, three trips, in 2017 and 2018." (*Id.* at 45:24-25; 46:1-2.)

Ms. Fjord flew spirit from SMF to DTW with a connection in AUS on August 1, 2023. She purchased the flight for $193.15. Declaration of Carolyn Fjord in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Fjord Dec.") ¶2.

Defendants' Reply to Plaintiffs' Response No. 78:

Does not create a genuine dispute of material fact.

Plaintiffs do not dispute that Plaintiffs' discovery responses show that Fjord had not flown Spirit since November 2018.

While Plaintiffs did not file a declaration from Fjord, it appears based on Plaintiffs' response that they may be trying to rehabilitate and perhaps contradict Fjord's deposition and interrogatory answer with a self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27. No declaration from Fjord is before the Court currently, and no contradictory declaration should be considered in any event.

The belatedly identified route allegedly flown by Fjord on Spirit in August 2023, from Sacramento to Detroit, is not a route that Plaintiffs' expert, Hal Singer, claims would be impacted by the merger and Plaintiffs have offered no argument that this route would be subject to any likelihood of anticompetitive harm from the merger. *See* Defendants' Reply to Plaintiffs' Response No. 36.

79.   Future Plans to Fly Spirit: Fjord has no future Spirit flights booked, and has no concrete plans to fly Spirit. Exhibit 32 at 52:10-54:16. Fjord is interested in flying to Las Vegas and she wants to travel more when she retires, but she has not purchased any tickets on Spirit or any other airline, and has no confirmed dates of travel. *Id.*

Plaintiff's Response No. 79:

Disputed.

Ms. Fjord testified that although she had no specific plans to fly Spirit at this time that she would consider Spirit on future flights and that she had plans to fly to destinations serviced by Spirit. (*Id.* at 50:6-9; 50:15-20; 51:5-9; 52:12-16, 23-25; 53:1-15.)

She intends to fly from San Francisco or Oakland to Los Angeles to visit her sister-in-law; Orlando to take her grandchildren to Disney World; to Las Vegas this September or October to visit friends. (*Id.* at 48:25-49:9; 50:15-20; 52:12-24.)

She intends to fly for San Francisco or Oakland to visit her nephew in New York in January or February 2024. Fjord Dec. ¶2.

She plans to travel this route in October to visit with her sister and brother-in-law and visit a sculpture created by her son. Fjord Dec. ¶2.

Defendants' Reply to Plaintiffs' Response No. 79:

Does not create a genuine dispute of material fact.

While Plaintiffs did not file a declaration from Fjord, it appears based on Plaintiffs' response that they may be trying to rehabilitate and perhaps contradict Fjord's deposition and interrogatory answer with a self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27. No declaration from Fjord is before the Court currently, and no contradictory declaration should be considered in any event.

Plaintiff does not intend to fly any of the routes that Plaintiffs' expert, Hal Singer, claims would potentially be impacted by the merger. Fjord's identified routes, from San Francisco to Los Angeles, from San Francisco or Oakland to Orlando, from San Francisco to New York (Metropolitan Area), and from San Francisco or Oakland to Las Vegas, are not routes that Singer claims would be impacted by the merger and Plaintiffs have offered no argument that these routes would be subject to anticompetitive harm from the merger. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7, (not listing San Francisco to Los Angeles, San Francisco or Oakland to Orlando, San Francisco to New York (Metropolitan Area), or San Francisco  or Oakland or Las Vegas); Defendants' Reply to Plaintiffs' Response No. 36.

The routes Fjord allegedly plans to fly from Oakland to Los Angeles (LAX) and from Oakland to New York (EWR) are also not listed in Singer's Report, but appear in Plaintiff's belatedly-served Interrogatory Responses and the Singer Declaration. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7; Defendants' Reply to Plaintiffs' Response No. 36.  As a result, Plaintiffs have no admissible evidence that the alleged routes will be subject to anticompetitive harms.  To the extent the challenged routes are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), their inclusion does not raise a genuine dispute of material fact because there is no cognizable theory of harm articulated on these routes.  *See* Defendants' Reply to Plaintiffs' Response No. 36.

80.   Spirit Flights in Rog 8 Routes: Since November 2018, Fjord has not flown Spirit

on any of the routes listed in Plaintiffs' response to Interrogatory No. 8. Exhibit 33 at 7-8.

Plaintiff's Response No. 80:

Disputed.

Plaintiff has flown or intends to fly the following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories (Set Two):

Detroit, MI: Detroit Metro Wayne County - Oakland, CA (Roundtrip)

Dallas/Fort Worth Int - Pensacola, FL: Pensacola Int

San Francisco, CA (Metropolitan Area)-Los Angeles, CA (Metropolitan Area).

She intends to fly to Los Angeles to visit her sister-in-law from SFO. Alioto Dec.. Ex. 7 Fjord Dep. at 48:25-49:9; 50:15-20.

New York City, NY (Metropolitan Area)-San Francisco, CA (Metropolitan Area). San Francisco, CA (Metropolitan Area)-New York City, NY (Metropolitan Area)

She intends to fly to New York to visit her nephew. Alioto Dec. Ex. 7 - Fjord Dep. 48:25-49:9; 50:15-20. She intends to visit her nephew in New York in January or February 2024. Fjord Dec. ¶2.

(Alioto Dec. Ex.55 Plaintiff Fjord's Second Supplemental Responses to Defendants' Interrogatories (Set Two); Alioto Dec. Ex. 31- Plaintiff Fjord's Third Supplemental Responses and Objections to Defendants' Interrogatories (Set One).)

Defendants' Reply to Plaintiffs' Response No. 80:

Does not create a genuine dispute of material fact.

While Plaintiffs did not file a declaration from Fjord, it appears based on Plaintiffs' response that they may be trying to rehabilitate and perhaps contradict Fjord's deposition and interrogatory answer with a self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27. No declaration from Fjord is before the Court currently, and no contradictory declaration should be considered in any event.

The routes in Plaintiffs' Response No. 80 that Plaintiff Fjord has flown are not routes that Plaintiffs' expert, Hal Singer, claims would potentially be impacted by the merger. Plaintiff Fjord's identified routes, from San Francisco (SFO) to Los Angeles (Metropolitan Area) and from New York (Metropolitan Area) to and from San Francisco (Metropolitan Area), are not routes that Plaintiffs' expert, Hal Singer, claims would be impacted by the merger and Plaintiffs have offered no argument that these routes would be subject to anticompetitive harm from the merger. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7, (not listing San Francisco (SFO) to Los Angeles (Metropolitan Area) or New York (Metropolitan Area) to San Francisco (Metropolitan Area)). *See* Defendants' Reply to Plaintiffs' Response No. 36.

According to her discovery responses, Fjord flew the route from Sacramento to New York (Metropolitan Area) on one occasion in 2019, and this flight was not on Spirit.  This is too attenuated to confer standing as a matter of law.  *See* Defendants' Reply to Plaintiffs' Response No. 36.

The routes Fjord has flown from Detroit to Oakland, Dallas/ Fort Worth (DFW) to Pensacola, and from Oakland to Los Angeles (LAX) are not listed as harmed routes in Plaintiffs' expert Hal Singer's report, but appear in Plaintiffs' belatedly-served Interrogatory Responses and the Singer Declaration.  *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7; Dkt. 185.  Plaintiffs have no admissible evidence that the alleged route will be impacted by the merger.  To the extent the challenged routes are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), their inclusion does not raise a genuine dispute of material fact because there is no cognizable theory of harm articulated on these routes.  *See* Defendants' Reply to Plaintiffs' Response No. 36.

81.    <u>Travel Agent</u>: Fjord is the "sole proprietor of [her] travel agency." Exhibit 32 at 26:20-21. She is "trying to retire" and is not seeking new clients. *Id.* at 15:19-25.

<u>Plaintiff's Response No. 81:</u>

Undisputed.

<u>Defendants' Reply to Plaintiffs' Response No. 81:</u>

Undisputed and therefore admitted.  *See* L.R. 56.1.

82.    <u>Compensation</u>: As a travel agent, Fjord charges flat service fees to her clients directly, and sometimes she receives commissions on business-class tickets.  *Id.* at 27:25–33:15.

<u>Plaintiff's Response No. 82:</u>

Undisputed.

<u>Defendants' Reply to Plaintiffs' Response No. 82:</u>

Undisputed and therefore admitted.  *See* L.R. 56.1.

83.    <u>Articulated Harm</u>: Fjord testified that she is bringing this lawsuit because "I don't want another merger. I don't want another – I want to keep Spirit around. I don't want them to cut the capacity, cut any flights, fire their employees. I would love to have Spirit stay around. They're in my – they're in my area and they go to places I want to go." *Id.* at 77:20-78:2. Fjord further

testified that she "believe[d] that probably the low fare" to, for example, New York or Detroit,

would no longer be available. *Id.* at 79:4–8, 82:8-16. Fjord further testified that she does not want

the merger to go through because it "would just be hard for people to travel," as a result of

increased fares. *Id.* at 81:5–16. Fjord wants "to maintain the low-cost options for my clients and

for myself, [and] my friends." *Id.* at 83:15- 84:7.

Fjord drafted an individualized response to Interrogatory 7, in addition to the response

which was identical for all Plaintiffs. *See supra* ¶ 35. Fjord wrote:

> Opportunities for less expensive alternatives for myself, family, friends, and
> clients travel will be eliminated. I travel from Oakland to Detroit at least
> once a year and like to have the Oakland Detroit option. Spirit works to
> travel one way with good airfares. We will return with stops in St Louis and
> Loveland, Colorado using good one way airfares. For example, I checked
> Denver Oakland on Spirit for August 23rd and for one way airfare of $63.19
> I can visit my son in Colorado on our return.

Exhibit 34 at 4.

> Plaintiff's Response No. 83:
>
> Disputed.
>
> Plaintiff additionally testified that price increases would negatively impact her
> business as she would not have as many options to present to her clients for air
> travel. *Id.* at 35:1-09. Moreover, many of her clients would not be able to travel at
> all. (*Id.* 81:1-15, 22-25.)
>
> Plaintiff further testified, "I want to keep Spirit around. I don't want them to cut the
> capacity, cut any flights, fire their employees. I would love to have Spirit stay
> around. They're in my they're in my area and they go to places I want to go.
>
> Plaintiff also testified that a specific route she flies – to New York – would not be
> available at the price point she has paid in the past. (*Id* at 79:4-10. "I believe that
> probably the low fare that I found going to New York for, like, $200 would be gone.
> I don't know. I -- I think that they'll -- they want to get rid of their competition, so
> Spirit, you are the -- their competition…." )
>
> In response to Interrogatory No. 7, Plaintiff explained that, "Opportunities for less
> expensive alternatives for myself, family, friends, and clients travel will be
> eliminated. I travel from Oakland to Detroit at least once a year and like to have the
> Oakland Detroit option. Spirit works to travel one way with good airfares. We will

return with stops in St Louis and Loveland, Colorado using good one way airfares. For example, I checked Denver Oakland on Spirit for August 23rd and for one way airfare of $63.19 I can visit my son in Colorado on our return." (Exhibit _- Plaintiff Fjord's Supplemental Response to Defendants' Interrogatories (Set Two).)

Defendants' Reply to Plaintiffs' Response No. 83:

Does not create a genuine dispute of material fact.

The route Fjord mentions from Denver to Oakland is not a route that Plaintiffs' expert, Hal Singer, claims would be impacted by the merger and Plaintiffs have offered no argument that this route would be subject to anticompetitive harm from the merger. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7, (not listing Denver to Oakland); Defendants' Reply to Plaintiffs' Response No. 36.

Additionally, the route from Oakland to Detroit is not listed as a route that may be impacted by the merger in Singer's Report, and appears only in Plaintiffs' belatedly-served Interrogatory Responses. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7. Plaintiffs have no admissible evidence that the alleged route will be impacted by the merger. To the extent the challenged routes are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), its inclusion does not raise a genuine dispute of material fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

84. <u>Miscellaneous</u>: When asked if she was familiar with the co-plaintiffs, Fjord testified that she was, and knows them from past merger cases. Exhibit 32 at 79:22-80:6. She stated "we challenge mergers. It's what I do." *Id.* at 79:22-80:6.

Plaintiff's Response No. 84:

Disputed.

Plaintiff testified that this lawsuit is about maintaining competition in the airline industry, stating "It's my travel agent, and it's been an issue forever. I used to work at Giselle's – I think I told you -- . . . -- I worked before deregulation. And he said once they deregulate, airlines are going to end up with one airline. They're going to all get together, one airline. And so it kind of seems like they're gobbling up all the small airlines, **and I really want to keep them around**. There used to be PSA, Air Cal, Pan Am, TWA, People's Express. We used to do $99 to London on People's Express." *Id* at 80: 7-19.

Defendants' Reply to Plaintiffs' Response No. 84:

Plaintiffs' response does not actually dispute any material aspect of Paragraph 84 and therefore Paragraph 84 should be deemed admitted in its entirety. The additional text does not raise any genuine dispute of material fact.

**H.  Donald Freeland**

85.   Flown Spirit: Freeland has not flown on Spirit since November 2018, and has flown Spirit only once, in 2015. Exhibit 36 at 7-8; Exhibit 35 at 30:9-16, 32:12-14.

Plaintiff's Response No. 85:

Undisputed.

Defendants' Reply to Plaintiffs' Response No.85:

Undisputed and therefore admitted.  *See* L.R. 56.1.

86.   Future Plans to Fly Spirit: Freeland has no future Spirit flights booked, and has no concrete plans to fly Spirit. Exhibit 35 at 44:15-45:19. After he retires, Freeland "would consider" flying from Los Angeles to Fort Lauderdale on JetBlue, American, Delta, United, or Spirit. *Id.* at 82:6-11.

Plaintiff's Response No. 86:

Disputed.

Mr. Freeland does intend to fly in the near future but has not purchased any particular tickets as of yet. *Id* at 44:15-45:19. He anticipates that he will be fling out to Cabo San Lucas to visit his daughter on Spirit as he has reviewed prices and the ticket price is less than $100 and he could depart from his primary airport. *Id*. at 53:5-54: 4.

Mr. Freeland anticipates that after he retires in the near future he will be regularly flying between Fort Lauderdale and LAX. He plans on flying from LAX to FLL or MIA to go on a cruise at the end of this year. (Freeland Deposition, 80:18-25.) He would consider flying JetBlue and Spirit as well as other airlines on that route. He would most likely fly the airline that offered the lowest price, all things considered. (*Id*. at 80:1-82:11; 84:3- 85:13.)

Mr. Freeland also flies from New York City, NY (Metropolitan Area)-Los Angeles, CA (Metropolitan Area) once every year or two in order pick up cruises (*Id*. at 25:17-24.)

Defendants' Reply to Plaintiffs' Response No. 86:

Does not create a genuine dispute of material fact. Plaintiffs do not dispute that Freeland has no Spirit flights booked.

Plaintiffs cannot rely on vague, unformed statements that they "intend" to fly allegedly harmed routes that Plaintiffs, such as from LAX to FLL and nowhere does Freeland state that he has concrete plans to fly Spirit on this route. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiff's alleged plan to fly between Los Angeles to FLL and from Los Angeles to Cabo San Lucas are not on routes that Plaintiffs' expert, Hal Singer, claims would potentially be impacted by the merger. Plaintiffs have offered no argument that these routes would be subject to any likelihood of anticompetitive harm from the merger. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7 (not listing Los Angeles (Metropolitan Area) to Cabo San Lucas (SJD) or Los Angeles to Fort Lauderdale). *See* Defendants' Reply to Plaintiffs' Response No. 36.

According to his discovery responses, since November 2018, Freeland has not flown from New York City to Los Angeles or Los Angeles to Miami on Spirit. This is too attenuated to confer standing as a matter of law. *See* Defendants' Reply to Plaintiffs' Response No. 36.

Freeland is not identified as a trial witness. *Infra* ¶ 217.

87.     Spirit Flights in Rog 8 Routes: Since November 2018, Freeland has not flown Spirit

on any of the routes listed in Plaintiffs' response to Interrogatory No. 8. Exhibit 36 at 7-8.

Plaintiff's Response No. 87:

Disputed.

Plaintiff has flown or intends to fly the following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories (Set Two):

Los Angeles, CA (Metropolitan Area)-New York City, NY (Metropolitan Area).

Plaintiff flies this route once every year or two. *Id*. at 25:17-24.

New York City, NY (Metropolitan Area)-Orlando, FL

Los Angeles (Metropolitan Area) - Miami (Metropolitan Area)

Plaintiff has flown this route and intends to fly this route for a pre-planned end of year cruise. *Id.* at 80:18-25.

Los Angeles International - New York, NY: LaGuardia

Los Angeles International - New Orleans, LA

(Alioto Dec. Ex.56 Plaintiff Freeland's Second Supplemental Responses to Defendants' Interrogatories (Set Two); Alioto Dec. Ex. 32 -Plaintiff's Third Supplemental Responses and Objections to Defendants' Interrogatories (Set One).)

Defendants' Reply to Plaintiffs' Response No. 87:

Does not create a genuine dispute of material fact.

Defendants object to Plaintiffs' reliance on untimely updates to fact discovery responses between August 10-18, 2023, over six weeks after the close of fact discovery.

Freeland's alleged intent in the future to fly between Los Angeles (Metropolitan Area) and Miami (Metropolitan Area) and between Los Angeles (LAX) and New York (LGA) in the future is too speculative to confer standing. Plaintiffs cannot rely on vague, unformed statements that they "intend" to fly allegedly harmed routes. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiffs' alleged route from Los Angeles (LAX) to New Orleans is not listed as a route that may be impacted by the merger in Singer's report, and appears only in Plaintiffs' belatedly-served Interrogatory Responses. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7. Plaintiffs have no admissible evidence that the alleged route will be impacted by the merger. To the extent the challenged routes are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), inclusion does not raise a genuine dispute of material fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

According to his discovery responses, since November 2018, Freeland has not flown from New York City to Los Angeles or Los Angeles to Miami on Spirit. This is too attenuated to confer standing as a matter of law. *See* Defendants' Reply to Plaintiffs' Response No. 36.

Freeland is not identified as a trial witness. *Infra* ¶ 217.

88.   Travel Agent: Freeland owns two travel agencies: (1) the TravelStore and (2) ChicLuxury Cruises. Exhibit 35 at 18:22-20:3. Freeland recently purchased ChicLuxury Cruises, which does not "really sell airline tickets directly." *Id.* at 12:15-25, 13:22-14:22.

Plaintiff's Response No. 88:

Undisputed.

> Defendants' Reply to Plaintiffs' Response No.88:
>
> Undisputed and therefore admitted.  *See* L.R. 56.1.

89.  <u>Compensation</u>: ChicLuxury Cruises does not sell airline tickets directly. Airline tickets are provided by cruise lines, and Freeland receives scaling fees for booking airline tickets from cruise lines, tour operators, and excursion providers. *Id.* at 14:9-15:5, 20:6-20; Exhibit 37 at 2. TravelStore is not "really doing … any business at this point," and Freeland does not receive income from TravelStore. Exhibit 35 at 20:13-18, 46:25- 47:9.

> Plaintiff's Response No. 89:
>
> Undisputed.
>
> Defendants' Reply to Plaintiffs' Response No. 89:
>
> Undisputed and therefore admitted.  *See* L.R. 56.1.

90.  <u>Articulated Harm</u>: Freeland testified that the merger would reduce his "options for flying" and would result in decreased capacity and higher prices. *Id.* at 50:8- 53:16. While Freeland stated his travel agency doesn't "really sell airline tickets directly" and that cruise lines usually provide airline tickets on trips he books for clients, he asserted that some clients may choose not to book a cruise "because the total cost [would be] too much, and [he would] therefore lose the revenue on the cruise." *Id.* at 14:9-13, 20:11-12, 50:8-16, 52:17-53:16.

> a.      Freeland testified that previous mergers have affected him because he has "had to pay for baggage charges on flights, which [he] never had to do prior to some of the[] mergers taking place." *Id.* at 64:5-10. Freeland's assertions regarding the consequences of the present merger—"decreased capacity and higher fare prices and poorer service"—were based on his understanding of the effects of prior mergers, saying "[he] believe[s] there has been some negative results as a result of some of these mergers," and "[he] would talk more in general terms that the unbundling of services and charging

for them is a result of a consolidation in the industry, which has resulted in higher prices for consumers." *Id.* at 47:16-48:5, 63:12-64:4.

       b.     Freeland drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. Freeland wrote:

> If this merger is consummated I will suffer higher prices and poorer service flying from the west coast. We may have clients who, because of higher flight costs, may opt to not take a cruise and we would lose a commission by not selling the cruise.

Exhibit 37 at 4.

Plaintiff's Response No. 90:

Disputed.

Plaintiff further testified:

Without Spirit, he would have to drive to LAX from Palm Springs to fly most routes or connect. He also testified that, "[W] when flights are eliminated, smaller -- smaller cities end up receiving poorer service because they lose their direct flights as opposed to a hub-and-spoke." *Id.* at 52:25- 54:11.

Low fares are important to him as a retired person and he needs money for other things. (*Id.* at 72:6-73:3.)

Defendants' Reply to Plaintiffs' Response No. 90:

Plaintiffs' response does not actually dispute any material aspect of Paragraph 90 and therefore Paragraph 90 should be deemed admitted in its entirety. The additional text does not create a genuine dispute of material fact.

**I.**    **Donna Fry**

91.    Flown Spirit: Since 2015, Fry has not flown Spirit. Exhibit 38 at 41:25-42:5.

Plaintiff's Response No. 91:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 91:

Undisputed and therefore admitted. *See* L.R. 56.1.

92.  <u>Future Plans to Fly Spirit</u>: Fry has no future Spirit flights booked, and has no concrete plans to fly Spirit. *Id.* at 52:5-13; 77:23-24. Fry said, "Spirit routes have not been accessible to me for the -- because of the areas that I have lived and the places that I have been traveling to." *Id.* at 78:13-16. Fry does not expect to fly Spirit within the next 6 months. *Id.* at 52:5-13; 77:23-24.

> <u>Plaintiff's Response No. 92:</u>
>
> Disputed.
>
> Ms. Fry plans to fly in the future to visit family and for vacations. When she does fly, she will consider all airlines. She looks at all options when booking including good scheduling and good pricing. She would hope that she will have more options in the future instead of less. (Alioto Dec. Ex. 9 - Fry Dep. 77:1- 80:8.)
>
> She intends to stay in business and continue to write tickets for flights for herself and for her clients and will consider all options: best scheduling, best pricing, and best service. Everything is under consideration. (*Id*. at 80:5-8.)
>
> Plaintiff has a roundtrip Spirit flight booked from Phoenix to Seattle with a layover in Las Vegas from October 5-16, 2023. Plaintiff Donna Fry's Declaration in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Fry Dec.") ¶2. Ms. Fry's son lives in Seattle and she flies there three times/year to visit. *Id.*
>
> Plaintiff intends to fly from Phoenix to Miami for a cruise in February 2024 and will consider Spirit. Fry Dec. ¶2.
>
> Plaintiff also intends to fly to New York on stopovers on the way to Europe several times over the next two years, including a stopover in New York for a flight she has booked from New York to Ireland in July 2024. *Id;* Fry Dec. ¶2.
>
> <u>Defendants' Reply to Plaintiffs' Response No. 92:</u>
>
> Does not create a genuine dispute of material fact.
>
> Plaintiffs cannot contradict Fry's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery.  *See* Defendants' Reply to Plaintiffs' Response No. 27.
>
> Plaintiffs cannot rely on Fry's vague, unformed statements that she "plans to fly in the future" and that "she looks at all options when booking".  Plaintiff's injury "cannot be 'conjectural' or 'hypothetical.'"  *See* Defendants' Reply to Plaintiffs' Response No. 27.

Fry has plans or alleged plans to fly on Spirit from Phoenix to Seattle, from Phoenix to Miami (Metropolitan Area), and from Phoenix to Europe, with a stop in New York. These plans do not relate to any of the routes that Plaintiffs' expert, Hal Singer, claims would be impacted by the merger and Plaintiffs have offered no argument that these routes would be subject to anticompetitive harm from the merger. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7 (not listing Phoenix to Seattle, Phoenix to Miami (Metropolitan Area), or any flights to Europe.) *See* Defendants' Reply to Plaintiffs' Response No. 36.

93.    <u>Spirit Flights in Rog 8 Routes</u>: Fry has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8. *Id.* at 41:25-42:5; Exhibit 39 at 7-8.

<u>Plaintiff's Response No. 93:</u>

Disputed.

Plaintiff has flown or intends to fly the following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories (Set Two):

Phoenix to New York City, NY (Metropolitan Area) (Roundtrip)

> Plaintiff also intends to fly to New York on stopovers on the way to Europe several times over the next two years, including a stopover in New York for a flight she has booked from New York to Ireland in July 2024. *Id;* Fry Dec. ¶2.

Phoenix to Miami (Roundtrip)

> Plaintiff intends to fly from Phoenix to Miami for a cruise in February 2024 and will consider Spirit. *Id.*

(Alioto Dec. Ex. 57 - Plaintiff Fry's Second Supplemental responses to Defendants' Interrogatories (Set Two); Alioto Dec. Ex. 33 - Plaintiff Fry's Responses and Objections to Defendants' Interrogatories (Set One).)

<u>Defendants' Reply to Plaintiffs' Response No. 93:</u>

Does not create a genuine dispute of material fact. Fry does not allege that she would fly Spirit on any of these routes.

Plaintiffs cannot contradict Fry's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Defendants object to Plaintiffs' reliance on untimely updates to fact discovery responses between August 10-18, 2023, over six weeks after the close of fact discovery.

Fry's plans to fly from Phoenix to Miami (Metropolitan Area), and from Phoenix to Europe, with a stopover in New York (Metropolitan Area), do not relate to any of the routes that Plaintiffs' expert, Hal Singer, claims would be impacted by the merger and Plaintiffs have offered no argument that this route would be subject to any likelihood of anticompetitive harm from the merger. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7 (not listing Phoenix to Miami (Metropolitan Area), or Phoenix to New York (Metropolitan Area).). Plaintiffs have no admissible evidence that the alleged route will be impacted by the merger. To the extent the challenged routes are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), inclusion does not raise a genuine dispute of material fact because there is no cognizable theory of harm articulated on these routes. See Defendants' Reply to Plaintiffs' Response No. 36.

Fry is not identified as a trial witness. *Infra* ¶ 217.

94.     Travel Agent: Fry is a travel agent, and the owner of All Ways Travel, of which Fry is the sole owner. All Ways Travel has no employees apart from Fry. Exhibit 38 at 13:4-14:11, 15:7-22.

> Plaintiff's Response No. 94:
>
> [No Response.]
>
> Defendants' Reply to Plaintiffs' Response No. 94:
>
> Plaintiffs did not respond to this statement of fact. Pursuant to Local Rule 56.1, this fact is deemed admitted because Plaintiffs did not respond. *See* Defendant's Reply to Plaintiffs' Response No. 26.

95.     Compensation: Fry estimated that 95% of her travel agency's revenue comes from commissions from booking travel experiences (cruises, hotels, car rental companies), and the remainder (an estimated 5%) comes from flat service fees. *Id.* at 17:25-18:24. All Ways Travel's only source of revenue for airfare, regardless of airline, is the flat service fees charged to customers, which does not change based on the airline booked. *Id.* at 33:6-18 ("[W]hether my clients fly Airline A or Airline B does not really affect my income. I would charge them a service

fee."); *id.* ("Q: Got it. So whether your clients flew Spirit or United, you still receive the same fee?

Fry A: Correct.").

Plaintiff's Response No. 95:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 95:

Undisputed and therefore admitted.  *See* L.R. 56.1.

96.    Articulated Harm: Fry states that the harm resulting from mergers in the airline

industry is that routes are cancelled, causing the number of seats to decrease and ticket prices to

go up. *Id.* at 57:25-58:18. Fry also provided an individualized response to Interrogatory 7, in

addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. Fry wrote:

> The merger between JetBlue and Spirit will reduce the number of airline choices,
> will eliminate the low-cost option that Spirit offers, will reduce the number of
> flights offered because when airlines merge they do not continue duplicate routes
> and do not continue all the routes that both airlines offered before merging, and
> service may be discontinued at some airports. I have experienced all of these
> injuries in past airline mergers.

Exhibit 40 at 4.

"Mergers have created very few options out of Tucson, and so we need more low-cost, especially
thinking about Spirit, because they're about 50% of the low cost market out there." (*Id.* at 79:2-
4.). Unfortunately, service to the smaller towns is threatened by the merger. "I've seen it happen,
especially out of Colorado Springs to Houston." (*Id.* at 79:9-11.)

Plaintiff's Response No. 96:

Disputed.

Plaintiff further testified:

> The merger cases she has been a part of have all been important to her because they
> affect her livelihood in a very direct way: cancellation of routes and increased prices
> for tickets. (*Id*. at 58: 6-15.)

Defendants' Reply to Plaintiffs' Response No. 96:

Does not create a genuine dispute of material fact.  The additional text does not
raise a genuine dispute of material fact.

### J.    Gabriel Garavanian

97.    Flown Spirit: G. Garavanian has flown Spirit since November 2018.

Exhibit 42 at 1, 7, 13, 14, 19, 20.

Plaintiff's Response No. 97:

Undisputed.

Plaintiff additionally testified:

He testified he regularly flies Spirit from Boston to Florida up to four times a year to care for three condominiums he bought in Myrtle Beach in 2019 and 2020. (Alioto Dec. Ex. 10 - Garavanian Dep. 19: 9-14.) In 2020 he flew 3 roundtrips with Spirit to Boston from Myrtle Beach. (*Id.* at 21: 2-6; 24:3-13.). In 2021, he flew Spirit to Myrtle Beach. (*Id.* at 22: 16-20.). He flew Charleston to Myrtle Beach in 2019. (*Id.* at 23: 23-23.)

He flew roundtrip from Myrtle Beach to Manchester on Spirit from August 15, 2023 to August 20, 2023. (Declaration of G. Garavanian in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("G. Garavanian Dec.") ¶2.

"I fly on, you know, Spirit, a lot, obviously." *Id.* at 42:5-6.

He flew once on Spirit Boston to Myrtle Beach roundtrip in November 2021. Alioto Dec., Ex. 10 - G. Garavanian Dep. 74: 12-24.

He flew Boston to Myrtle Beach in May, 2023. *Id.* at 76: 17-25.

He flew Boston to Myrtle Beach and return in June of 2023. *Id.* at 77:5-17.

He flew Boston to Myrtle Beach and return in November, 2022. *Id.* at 78:4-17.

He flew Boston to Puerto Rico and back on JetBlue in 2018. *Id.* at 81: 10-25.

In January 2023, he was forced to drive back to Boston because Spirit was not operating. Alioto Dec., Ex. 10 - Garavanian Dep. 25:2-10. Mr. Garavanian testified he wanted to fly home for Christmas but with Spirit out of the market, prices had gone from $90 per roundtrip to $750 per roundtrip. *Id.*

Defendants' Reply to Plaintiffs' Response No. 97:

Undisputed and therefore admitted. *See* L.R. 56.1.  The additional text does not create a genuine dispute of material fact as to Paragraph 97.

G. Garavanian is not listed as a trial witness.  *Infra* ¶ 217.

98. <u>Future Plans to Fly Spirit</u>: As of the close of fact discovery, G. Garavanian has no

future Spirit trips booked, and has no concrete plans to fly Spirit.  Exhibit 45 at 83:8-16.

> <u>Plaintiff's Response No. 98</u>:
>
> Disputed.
>
> At the time of the deposition June of 2023 he was planning to book a flight from Boston to Fort Lauderdale but had not yet purchased the tickets. *Id*. at 83: 8-23. He testified he would consider booking Spirit. *Id*. at 87: 10 – 88: 13. He considers booking Spirit for his customers for flights out of Boston. *Id*. at 93: 19-24.
>
> He travels to Boston from Myrtle Beach, FL four times a year.  *Garavanian Dep.* 19: 9-14. He plans on flying this route in December 2023 and/or March 2024. G. Garavanian Dec. ¶2.
>
> Plaintiff plans on flying from Myrtle Beach to FLL in December 2023 or January 2024. *Id.*
>
> <u>Defendants' Reply to Plaintiffs' Response No. 98</u>:
>
> Does not create a genuine dispute of material fact.  Plaintiffs' additional text does not demonstrate that G. Garavanian has a Spirit flight booked.
>
> G. Garavanian's statements that he "would consider booking Spirit" are too speculative to confer standing.  *See* Defendants' Reply to Plaintiffs' Response No. 27.
>
> Plaintiffs cannot contradict G. Garavanian's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery.  *See* Defendants' Reply to Plaintiffs' Response No. 27.
>
> The routes Plaintiffs allege G. Garavanian intends to fly—from Boston to Myrtle Beach and from Myrtle Beach to Fort Lauderdale—are not listed as harmed routes in Plaintiffs' expert Hal Singer's Report, and appear only in Plaintiffs' belatedly-served Interrogatory Responses.  *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7.  Plaintiffs have no admissible evidence that these alleged routes will be impacted by the merger.  To the extent the challenged routes are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185),  their inclusion does not raise a genuine dispute of material fact because there is no cognizable theory of harm articulated on these routes.  *See* Defendants' Reply to Plaintiffs' Response No. 36.

99. <u>Spirit Flights in Rog 8 Routes</u>: Since November 2018, G. Garavanian has not flown

Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8. Exhibit 42 at 1, 7,

13, 14, 19, 20. G. Garavanian testified that the flights listed in his verified response to Interrogatory

No. 1 were not a complete list of the flights he has taken since 2015. Exhibit 45 at 28:5-29:5.

> Plaintiff's Response No. 99:
>
> Disputed.
>
> Plaintiff has flown or intends to fly the following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories (Set Two):
>
>> Boston, MA (Metropolitan Area)-Miami, FL (Metropolitan Area)
>>
>> Boston, MA (Metropolitan Area)-Orlando, FL
>>
>> Boston, MA (Metropolitan Area)-New Orleans, LA (Roundtrip)
>>
>> Las Vegas, NV-Boston, MA (Metropolitan Area) (Roundtrip)
>>
>> BOS-DTW (Detroit)-SAN (San Jose, CA)-ATL-BOS
>>
>> Boston-Myrtle Beach (Roundtrip)
>>
>>> He travels between Boston and Myrtle Beach, FL four times a year. (Alioto Dec., Ex. 10. (Garavanian Dep. 19:9).) He plans on flying this route in December 2023 and/or March 2024. G. Garavanian Dec. ¶2.
>>>
>>> Garavanian's primary residence is in Tyngsborough, Massachusetts Alioto Dec., Ex 10 (G. Garavanian Dep. 6); however, he is employed part-time in Myrtle Beach, Florida (*Id*. at 16).
>>>
>>> In January 2023, Garavanian was forced to drive home to Boston from Myrtle Beach because Spirit was not operating. Alioto Dec., Ex 10 (Garavanian Dep. 19-25).
>>>
>>> With Spirit out of the Market, prices went from 90/180 dollars round trip to 750 dollars roundtrip. Alioto Dec., Ex. 10 (G Garavanian Dep. 24-25).
>>>
>>> If Spirit is eliminated, people like Mr. Garavanian won't be able to afford going or flying to certain destinations. Alioto Dec.- Ex. 10 (Garavanian Dep. 108).
>>
>> Myrtle Beach to FLL (Roundtrip).

Plaintiff intends to fly this route in December 2023 or January 2024. Garavanian Dec. ¶2.

Manchester, NH- Orlando, FL(Roundtrip)

New York City, NY (Metropolitan Area)-Reno, NV (Roundtrip)

Ponce, PR-Boston, MA (Metropolitan Area)

Boston, MA (Metropolitan Area)-San Juan, PR (Roundtrip)

(Alioto Dec Ex. 58 - Plaintiff G. Garavanian's Second Supplemental responses to Defendants' Interrogatories (Set Two); Alioto Dec Ex. 34 Plaintiff G. Garavanian's Responses to Defendants' Interrogatories (Set One).)

Defendants' Reply to Plaintiffs' Response No. 99:

Does not create a genuine dispute of material fact.

Defendants object to Plaintiffs' reliance on untimely updates to fact discovery responses between August 10-18, 2023, over six weeks after the close of fact discovery.

Plaintiffs cannot contradict G. Garavanian's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiffs cannot rely on statements that G. Garavanian "intends to fly" routes, including New York (Metropolitan Area) to Reno and Ponce to Boston that are unsupported by the cited deposition testimony or documents when no such tickets have been booked or plans made, as these statements are too speculative to confer standing. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiffs' intent to fly from Manchester to Orlando, Myrtle Beach to Fort Lauderdale and from Boston to Myrtle Beach are not listed as harmed routes in Plaintiffs' expert Hal Singer's report, and appear only in Plaintiffs' belatedly-served Interrogatory Responses. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7. Plaintiffs have no admissible evidence that the alleged route will be impacted by the merger. To the extent the challenged routes are a "Spirit-Only route," (which are not listed in the Singer Report), their inclusion does not raise a genuine dispute of material fact because there is no cognizable theory of harm articulated on these routes. See Defendants' Reply to Plaintiffs' Response No. 36.

Plaintiffs' alleged route "BOS-DTW-SAN (San Jose, CA)-ATL-BOS" is vague and ambiguous and does not create a dispute of material fact. It is not clear which city is the destination of this flight since "SAN" is the airport code for San Diego International Airport, not San Jose, California. Even assuming the route is a one-

stop flight from Boston to San Diego or from Boston to San Jose, this would not raise a genuine dispute of material fact since neither of these routes are identified by Plaintiffs' expert, Hal Singer, as potentially being impacted by the merger. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7 (not listing Boston to San Diego or Boston to San Jose). To the extent the challenged route is a "Spirit-Only route," (which are not listed in the Singer Report), its inclusion does not raise a genuine dispute of material fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

G. Garavanian claims to have flown or "intends" to fly from Boston (Metropolitan Area) to San Juan, from Boston (Metropolitan Area) to Miami (Metropolitan Area), from Boston (Metropolitan Area) to Orlando, and from Boston (Metropolitan Area) to New Orleans but has flown only once on these routes since 2019 and he has not flown Spirit on any of these routes since at least November 2018. This is too attenuated to confer standing as a matter of law. *See* Defendants' Reply to Plaintiffs' Response No. 36.

G. Garavanian is not identified as a trial witness. *Infra* ¶ 217.

100. <u>Travel Agent</u>: G. Garavanian has owned various iterations of a travel agency with his brother since 1986. *Id.* at 16:17-18:2. G. Garavanian recently started offering travel services as an independent contractor with Thomas Hogan in February 2023. *Id.* at 89:1-20.

<u>Plaintiff's Response No. 100:</u>

Undisputed.

<u>Defendants' Reply to Plaintiffs' Response No. 100:</u>

Undisputed and therefore admitted. *See* L.R. 56.1.

101. <u>Compensation</u>: G. Garavanian's only current source of revenue from airline ticket sales is a service fee, the amount of which is his "discretion" to decide. *Id.* at 102:3- 103:5. G. Garavanian charges a higher service fee for both more expensive, "individually" sold airline tickets, as well as for airline tickets purchased as part of the larger tour or cruise package. *Id.* at 104:18-107:8. (G. Garavanian "A: You know, whatever the price is for the airline ticket, the fee will be higher, okay").

<u>Plaintiff's Response No. 101:</u>

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 101:

Undisputed and therefore admitted.  *See* L.R. 56.1.

102.    Articulated Harm: G. Garavanian testified that the merger would impact his current travel business by resulting in increased prices, which would result in customer being unable "to afford to go" to certain destinations or on certain trips. *Id.* at 108:2-19. This assertion was based on his "experience" with airline prices following airline mergers. *Id.* at 111:2-112:13. G. Garavanian could not identify any current customers who had traveled or requested to travel on the routes that he identified as having increased prices following airline mergers. *Id.* at 110:20-114:20. He also asserted that post-merger integration would cause to trip interruptions, computer system interruptions, and frequent flyer program issues. *Id.* at 116:16-120:19. G. Garavanian drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs.

*See supra* ¶ 35. G. Garavanian wrote: In addition:

1) Prices will go up in the markets where they are merging.

2) The process of airlines merging will cause cancellations and double bookings. Jet Blue has code shared with American out of Boston. The computer systems did not work together resulting in the airline cancelling reservations and especially pre-assigned seats. Every time there was a problem, the airlines told clients and passengers go to other airline, Jet Blue blaming American and American blaming Jet Blue. But the passenger's problem was not solved.

3) Cancelled flights. When a flight is cancelled, the airline issues vouchers. In previous code share number 2, JetBlue will tell the passenger to go to Spirit for vouchers. If the client goes to Spirit, he is then told to go to JetBlue. The vouchers are almost impossible to use.

4) The crews will be fighting with each other because of different pay scales. This was evident in the American and USAir merger. They still have flight crew problems

5) The GDS system used by travel agencies will be penalized for issuing tickets by either airline. They do this by issuing debit memos. JetBlue would charge me 25 dollars on tickets saying that I did not write "non-refundable" in the endorsement

box of an electronic ticket. The GDS writes it in automatically. If you ask for proof from an airline they will not give you any. When a debit memo is not paid, the airline will escalate charges and threaten to take away the travel agency's ability to issue tickets.

6) The new airline will have 2 accounting systems which will cause more havoc.

7) The 2 frequent flyer programs are completely different and no matter how they try to combine them, neither the JetBlue nor Spirit customers are going to be happy.

8) Air routes will be more seasonal. For example, the Boston to Myrtle Beach route will operate only 8 months a year and people will have no alternative flights to choose from.

9) JetBlue will cancel routes completely if it does not feel the route is profitable. So a route that Spirit had previously serviced will be completely discontinued.

10) Spirit is a low cost airline with no complimentary snack or beverage service. Jet Blue does give a snack and 1 beverage. Will this be eliminated?

11) Luggage: JetBlue allows 50 pounds and Spirit allows 40 pounds. One will be eliminated.

Exhibit 43 at 4-6.

  Plaintiff's Response No. 102:

  Undisputed.

  Plaintiff additionally testified:

  Plaintiff testified that if Spirit is eliminated, people like him "aren't going to be able to afford to go to some of these destinations or [make] any of these trips" at all. Alioto Dec., Ex. 10 - G. Garavanian Dep. 108:2-19. The merger will affect his business because the cost of the plane tickets will go up and his customers may not be able to fly to the destinations where they want to fly at the higher prices. (*Id*.)

  Prices will go up due to less choice and less airline capacity (seats). (*Id*. at 108: 23-25.)

  After the American merger, airline tickets went up. (*Id*. at 109: 15- 23.). After American merged with USAir, whereas they were both servicing Orlando before the merger, after the merger the price of tickets went up from $200 roundtrip to $450 roundtrip. (*Id*. at 110: 1-5.)

  During the American – JetBlue code share, American and JetBlue serviced Puerto Rico, and JetBlue was charging $150 one way from Boston but after 3 months

American pulled out and left JetBlue as the only service to Puerto Rico and the price of a JetBlue ticket skyrocketed to $800 roundtrip. (*Id*. at 111: 2-25.)

Delta also substantially raised prices to Manchester after its merger. (*Id*. at 113: 1-17.). American raised prices to Phoenix by 3x after its merger with USAir. (*Id*. at 114: 1-10.)

The merger will create problems for baggage handling and the cost of taking bags on flights. (*Id*. at 115, 4-17.). There will be problems with trip interruptions, maintenance as well as food service. (*Id*. at 116: 2 – 117:14.). There will be problems with the computer systems and seat assignments and flight delays and the frequent flyer programs. (*Id*. at 117: 19 - 120:20.)

Defendants' Reply to Plaintiffs' Response No. 102:

Undisputed and therefore admitted.  The additional text does not create any genuine dispute of material fact.

**K.    Harry Garavanian**

103.    Flown Spirit: H. Garavanian has never flown Spirit.  Exhibit 44 at 66:11-12; Exhibit 45 at 3.

Plaintiff's Response No. 103:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 103:

Undisputed and therefore admitted.  *See* L.R. 56.1.

104.    Future Plans to Fly Spirit:    H. Garavanian has no future Spirit flights booked, has no concrete plans to fly Spirit, and does not intend to fly in the near future. Exhibit 44 at 68:9-14, 77:22-24, 84:12-86:4. H. Garavanian testified he would "probably" be flying from the Boston area to Tampa to visit his son in the next year, and from Boston to Myrtle Beach to visit his brother, but he has not booked any tickets or chosen an airline. *Id.* He asserted "probably [] lean[s] towards Spirit" for those flights. *Id.* at 78:10-22.

Plaintiff's Response No. 104:

Disputed.

Plaintiff does not have any flights booked from any airline. (Alioto Dec., Ex. 12 - H. Garavanian Dep. 68:9-18.) However, Plaintiff plans on flying from Boston to Myrtle Beach on Spirit in the fall to visit his son. (*Id.* at 84:12-85:25.) He also plans on flying from BOS or MHT to Tampa in October 2023, January 2024, and May 2024. Declaration of H. Garavanian in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("H. Garavanian Dec.") ¶2.

Defendants' Reply to Plaintiffs' Response No. 104:

Does not create a genuine dispute of material fact. Plaintiffs do not dispute that H. Garavanian has no future Spirit flights booked, or concrete plans to fly Spirit.

Plaintiffs cannot contradict H. Garavanian's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

H. Garavanian's alleged plans to fly the route between Boston or Manchester and Tampa, and from Boston to Myrtle Beach, when he has not chosen the date for such travel or the airport he will travel from, are too speculative and therefore insufficient to provide standing. *See* Defendants' Reply to Plaintiffs' Response No. 27.

105.    Spirit Flights in Rog 8 Routes: H. Garavanian has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8. *Id.* at 66:11-12.

Plaintiff's Response No. 105:

Disputed.

Plaintiff has flown or intends to fly the following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories (Set Two):

Boston to Tampa (Roundtrip). H. Garavanian frequently flies this route and intends to fly it in October 2023, January 2024, and May 2024. H. Garavanian Dec. ¶2.

Boston to Myrtle Beach (Roundtrip). Plaintiff plans on flying from Boston to Myrtle Beach on Spirit in the fall to visit his son. (Alioto Dec., Ex. 12 - H. Garavanian Dep. at 84:12-85:25.)

(Alioto Dec., Ex. 60 - Plaintiff H. Garavanian's Second Supplemental responses to Defendants' Interrogatories (Set Two).)

Defendants' Reply to Plaintiffs' Response No. 105:

Does not raise a genuine dispute of material fact.

Plaintiffs cannot contradict H. Garavanian's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiffs' alleged route from Boston to Myrtle Beach is not listed as a route that may be impacted by the merger in Singer's Report, and appears only in Plaintiffs' belatedly-served Interrogatory Responses. See Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7. Plaintiffs have no admissible evidence that the alleged route will be impacted by the merger. To the extent the challenged routes are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), its inclusion does not raise a material dispute of fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

Plaintiff only flown the route from Boston to Tampa once in 2020. He has never flown this route on Spirit. This is too attenuated to confer standing as a matter of law. *See* Defendants' Reply to Plaintiffs' Response No. 27.

H. Garavanian cannot rely on vague, unformed statements that he "intends" to fly on the Boston to Tampa route at some point in the future. *See* Defendants' Reply to Plaintiffs' Response No. 27.

H. Garavanian is not identified as a trial witness. *See infra* ¶ 217.

106.    <u>Travel Agent</u>: H. Garavanian started Garavanian Travel in 1986, and sold the agency to a St. Louis business called Chi-Chi in December 2020. *Id.* at 10:18-11:19. H. Garavanian no longer works as a travel agent. *Id.* at 13:24-14:2.

<u>Plaintiff's Response No. 106:</u>

Undisputed.

<u>Defendants' Reply to Plaintiffs' Response No. 106:</u>

Undisputed and therefore admitted. *See* L.R. 56.1.

107.    <u>Compensation</u>: H. Garavanian is retired and no longer receives any income from a travel agency. *Id.* at 12:22-14:2. H. Garavanian also testified that the merger "irrelevant" to his travel agency because it is no longer in business. *Id.* at 50:7-24 ("It's irrelevant—not to be—this isn't to be snitty, it's really irrelevant because I'm out of business.").

Plaintiff's Response No. 107:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 107:

Undisputed and therefore admitted.  *See* L.R. 56.1.

108.   Articulated Harm: H. Garavanian testified that the merger will impact him because he is planning to continue flying to Tampa and Myrtle Beach, but did not elaborate on how his continued flying will be harmed by the merger. *Id.* at 84:12-85:4. H. Garavanian drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. H. Garavanian wrote:

> I believe we will have less options for flight routes, especially Boston to Fort Lauderdale. I in particular will have less options to fly into and out of Tampa from Manchester.

Exhibit 46 at 4.

Plaintiff's Response No. 108:

Objection. Misstates Plaintiff's testimony.

Disputed.

Plaintiff did elaborate as he testified that there would be less choices and that Spirit's customers keep prices down. (Alioto Dec., Ex. 12 - H. Garavanian Dep. 50:4-6.)

Defendants' Reply to Plaintiffs' Response No. 108:

Does not create a material dispute of fact.  G. Garavanian's testimony in Response No. 108 does not elaborate on how the merger will impact him personally sufficient to actually dispute any material aspect of Paragraph 108.

109.   Miscellaneous: Harry Garavanian did not know whether he read the Complaint before it was filed; he testified that he reviewed it "when it was issued." Exhibit 44 at 83:16-84:11.

Plaintiff's Response No. 109:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 109:

Undisputed and therefore admitted.  *See* L.R. 56.1.

**L.      Yvonne Jocelyn Gardner**

110.    Flown Spirit: Since November 2018, Gardner not flown Spirit. Exhibit 47 at 74:3-24; Exhibit 48 at 6-7. Her last Spirit flight was in July 2015. *Id.*

Plaintiff's Response No. 110:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 110:

Undisputed and therefore admitted.  *See* L.R. 56.1.

111.    Future Plans to Fly Spirit: Gardner has no future Spirit flights booked, and has no concrete plans to fly Spirit. Exhibit 47 at 72:10-12, 74:12-16. Gardner said she "might" fly Spirit in future, but did not identify any routes, dates, or locations. *Id.* Gardner's son works for United Airlines as a pilot and so she will "fly as [a space available passenger] if it's available." *Id.* at 66:19-67:8, 79:6-24. Gardner has taken about 15-20 flights on United Airlines ("United") since 2015, either for free or paid by her son. *Id.* Gardner did not disclose these flights in her discovery responses and she could not identify the exact dates and routes for these flights. *Id.* at 68:2-70:21; Exhibit 48 at 7.

Plaintiff's Response No. 111:

Disputed.

Gardner will fly from Denver to Miami for a cruise to the Caribbean in February 2024. Declaration of Jocelyn Gardner in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Gardner Dec."), ¶2.

She will consider Spirit airlines and will book Spirit if the flight is the lowest cost. (*Id.*)

Gardner intends to fly from Denver to FLL to visit a close friend by August 2024. (*Id.*)

Gardner also books Spirit flights for her customers and has booked one for a customer from Minneapolis to Orlando for October. Alioto Dec., Ex. 11 - Gardner Dep. 48:11-24.

Defendants' Reply to Plaintiffs' Response No. 111:

Does not raise a genuine dispute of material fact.  Plaintiffs do not claim that Gardner has booked any flight on Spirit.

Vague, unformed statements that she "will consider Spirit" is too speculative to grant standing.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiffs cannot contradict Gardner's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

Neither of the routes Plaintiffs claim that Gardner will fly, from Denver to Miami and from Denver to Fort Lauderdale, are identified as harmed routes in Plaintiffs' expert Hal Singer's report, and only one of the routes, Denver to Fort Lauderdale appears in Plaintiffs' belatedly-served Interrogatory Responses.  *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7.  As a result, Plaintiffs have no admissible evidence that either of the alleged routes will be subject to anticompetitive harms.  To the extent the route from Denver to Fort Lauderdale is a "Spirit-Only route" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), its inclusion does not raise a material dispute of fact because there is no cognizable theory of harm articulated on these routes.  *See* Defendants' Reply to Plaintiffs' Response No. 36.

112.    Spirit Flights in Rog 8 Routes: Since November 2018, Gardner has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8. Exhibit 47 at 74:3-24; Exhibit 48 at 6-7.

Plaintiff's Response No. 112:

Disputed.

Plaintiff has flown or intends to fly the following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories (Set Two):

New York City, NY (Metropolitan Area)-Miami, FL (Metropolitan Area)

(Roundtrip)

Denver – FLL (Roundtrip) – Gardner intends to fly this route to visit a friend in the FLL area by August 2024. Gardner Dec. ¶2..)

(Alioto Dec., Ex. 59 - Plaintiff Gardner's Second Supplemental Responses to Defendants' Interrogatories (Set Two); Alioto Dec., Ex. 35 - Plaintiff Gardner's Responses to Defendants' Interrogatories (Set One).)

Defendants' Reply to Plaintiffs' Response No. 112:

Does not raise a genuine dispute of material fact. Plaintiffs do not state that Gardner flew Spirit on any of the identified routes.

Plaintiff states that she "intends to fly" routes, but vague "intent" to fly is too speculative to confer standing. Gardner cannot rely on vague, unformed statements that she "intends" to fly between New York (Metropolitan Area) and Miami (Metropolitan Area) at some point in the future. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiffs cannot contradict Gardner's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiffs' alleged route from Denver to Fort Lauderdale is not listed as a route that may be impacted by the merger in Singer's report, and appears only in Plaintiffs' belatedly-served Interrogatory Responses. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7. Plaintiffs have no admissible evidence that the alleged route will be impacted by the merger. To the extent the challenged route is a "Spirit-Only route," (which are not listed in the Singer Report), its inclusion does not raise a material dispute of fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

According to her discovery responses, Gardner flew the alleged route from New York to Miami only once, in 2019, and this flight was not on Spirit. This is too attenuated to confer standing as a matter of law. *See* Defendants' Reply to Plaintiffs' Response Nos. 27, 36.

Gardner is not identified as a trial witness. *See infra* ¶ 217.

113.   Travel Agent: Gardner works as a travel consultant for Travel Planners, but has done very little work over the past two years due to a long-term illness. Exhibit 47 at 12:8-13:13. From 1988 to 2018, Gardner owned a travel agency, Gateway Travel & Cruises. *Id.* at 13:14-14:3. It is "possible" that Gardner retires from being a travel agent in the next year or so. *Id.* at 46:7-21.

Gardner produced no documents relating to her travel agent, despite testifying that records would exist on her email. *Id.* at 50:2-52:14.

> Plaintiff's Response No. 113:
>
> Undisputed.
>
> Defendants' Reply to Plaintiffs' Response No. 113:
>
> Undisputed and therefore admitted. *See* L.R. 56.1.

114.   Compensation: Gardner's travel agency was previously paid commission by airlines, but after airlines stopped paying commissions in 2005, Gardner's agency began charging the clients service fees instead. *Id.* at 18:16-19:24. Gardner charges higher fees for more expensive airfare. *Id.* at 21:5-7. Gardner made no money from her travel agency in 2022 or 2023. *Id.* at 61:2-8.

> Plaintiff's Response No. 114:
>
> Undisputed.
>
> Defendants' Reply to Plaintiffs' Response No. 114:
>
> Undisputed and therefore admitted. *See* L.R. 56.1.

115.   Articulated Harm: Gardner testified that she is interested in giving clients best service and the cheapest flight, and explained her goal is to ensure that "Spirit isn't taken away, and so I can give my clients the best service." *Id.* at 114:13-22. Gardner testified that she is "looking out for [her] clients" and wants them to have comfort and flight options. *Id.* at 112:22-113:3. Gardner drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. Gardner wrote:

> I feel that this merger will result in higher prices and less service and more disgruntled passengers.

Exhibit 49 at 4.

Plaintiff's Response No. 115:

Undisputed.

Plaintiff further testified that if prices increase, she will lose business. Alioto Dec., Ex. 11- Gardner Dep. 114:10-22.

Defendants' Reply to Plaintiffs' Response No. 115:

Undisputed and therefore admitted.  *See* L.R. 56.1. The additional text does not create a material dispute of fact.

116.  Miscellaneous: Gardner could not recall whether she reviewed her discovery responses, including her RFA responses, before they were served, but testified that she "remember[ed] something about" her discovery responses. Exhibit 47 at 55:6-25.  57:5-11. Gardner produced no documents at all.  Wright Decl. ¶ 3.  Gardner further testified she did not have any control over whether lawsuits were filed on her behalf. Exhibit 47 at 113:4-25 ("[Q:] Are you saying that you don't have any control over whether you file a lawsuit [against airline mergers]? Gardner A: That's true, that's true. I don't.").

Plaintiff's Response No. 116:

Objection. Immaterial to the issues in Defendant's Motion for Summary Judgment.

Defendants' Reply to Plaintiffs' Response No. 116:

Undisputed and therefore admitted.  The cited material tends to show that Plaintiffs will not suffer an irreparable injury and that money would be adequate to address Plaintiffs' grievances, that Plaintiffs' Passengers Against Mergers Agreement files suits against airline mergers on Gardner's behalf whether or not Gardner wants to file a lawsuit. Fed. R. Evid. 401, 402, 403; Defendants' Reply to Plaintiffs' Response Nos. 11, 27.

**M.  Valerie Ann Jolly**

117.  Flown Spirit: Jolly has not flown Spirit since November 2018. Exhibit 50 at 66:2-67:10, 81:6-21; Exhibit 51 at 1, 6-7. Jolly has never booked a personal Spirit flight, and has taken Spirit only once for business purposes. Exhibit 50 at 81:25-82:16, 84:17-19.

Plaintiff's Response No. 117:

Disputed.

Plaintiff Valerie Ann Jolly has flown the following route on Sprit Airlines: Dallas-Minneapolis. (Alioto Dec., Ex. 37 - Plaintiffs' Responses and Objections to Defendants' First Set of Interrogatories, Response No. 1, Exhibit A.)

Defendants' Reply to Plaintiffs' Response No. 117:

Does not create a genuine dispute of material fact.  The cited material does not contradict the fact that Jolly has not flown Spirit since November 2018.

118.   Future Plans to Fly Spirit: Jolly has no future Spirit flights booked, and has no

concrete plans to fly Spirit. *Id.* at 71:3-6, 116:7-8. Jolly stated that she "could fly to Las Vegas or

to Minneapolis" in the future on Spirit and that she "will be looking at Spirit" when considering

future travel. *Id.* at 70:6-11, 140:15-17. However, Jolly did not know whether Spirit still operates

a flight between Dallas-Fort Worth (her home airport) or Las Vegas or between Dallas-Fort Worth

and Minneapolis because she has not looked up those routes in several years. *Id.* at 35:17-37:8;

67:11-68:7.

Plaintiff's Response No. 118:

Disputed.

Plaintiff Jolly frequently flies between New York and Dallas/Fort Worth. (Alioto Dec., Ex. 13 - Jolly Dep. at 72:6-19.)

Plaintiff has plans to fly to New York from Dallas/Fort Worth in June 2024 to visit her best friend and attend her best friend's daughter's wedding. (*Id.* at 139:7- 140:6; Declaration of Valerie Ann Jolly in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Jolly Dec.") ¶2.)

Plaintiff Jolly also intends to fly into Boston or New York to go to Saratoga and the Lake George area with her husband. (*Id.* at 139:7- 140:6).

She also plans to travel out of Puerto Rico to go on cruises with her husband for scuba diving in 2024. (*Id.*; Jolly Dec ¶2.) Plaintiff Jolly plans to visit friends in Florida and other places in the Northeast and Utah. (Alioto Dec., Ex. 13 - Jolly Dep. at 142:12-25.)

Defendants' Reply to Plaintiffs' Response No. 118:

Does not create a genuine dispute of material fact.  Plaintiff does not state that any of the identified flights would be taken on Spirit, and thus this material is not responsive.

Plaintiffs cannot contradict Jolly's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

Jolly cannot rely on vague, unformed statements that she "intends" to fly at some point in the future.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

In any event, Jolly's purported future travel plans do not raise a genuine dispute of material fact because Plaintiffs have not asserted cognizable harm on the routes identified by Jolly.  *Infra* ¶ 119.

119.    Spirit Flights in Rog 8 Routes: Jolly has never flown Spirit on any of the routes

listed in Plaintiffs' response to Interrogatory No. 8. Exhibit 57 at 6-7 & 58 at 1-2.

Plaintiff's Response No. 119:

Disputed.

Plaintiff has flown or intends to fly the following routes, which have been identified in Plaintiff Jolly's Second Supplemental responses to Defendants' Interrogatories (Set Two): Dallas/Fort Worth to New York City, NY (Metropolitan Area) (Roundtrip). Plaintiff Jolly frequently flies between New York and Dallas/Fort Worth. (Alioto Dec., Ex. 13 - Jolly Dep. at 72:6-19.) Plaintiff Jolly has plans to fly to New York from Dallas/Fort Worth in June 2024 to visit her best friend and attend her best friend's daughter's wedding. (Alioto Dec., Ex. 13 - Jolly Dep. 139:7-140:6; Jolly Dec. ¶2)

Dallas/Fort Worth to PR. She also plans to travel out of Puerto Rico to go on cruises with her husband for scuba diving in 2024. (*Id.*)

(Alioto Dec., Ex. 61 - Plaintiff Jolly's Second Supplemental responses to Defendants' Interrogatories (Set Two); Alioto Dec., Ex. 37 - Plaintiff Jolly's Third Supplemental Responses and Objections to Defendants' First Set of Interrogatories, Supplemental Response No. 1.)

Defendants' Reply to Plaintiffs' Response No. 119:

Does not create a genuine dispute of material fact.

Plaintiffs do not state that Jolly flew Spirit on any of the identified routes, and thus this material is not responsive.

Defendants object to Plaintiffs' reliance on untimely updates to fact discovery responses between August 10-18, 2023, over six weeks after the close of fact discovery.

Plaintiffs cannot contradict Jolly's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiffs' response that Plaintiff Jolly "intends to fly" certain routes in the future, including Dallas/Fort Worth (DFW)-New York (Metropolitan Area) and Dallas/Fort Worth-"PR" does not dispute Defendants' statement that Plaintiff Jolly has not flown those routes, and is too speculative to confer standing. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiffs' alleged route and Dallas/Fort Worth (DFW)-New York (Metropolitan Area) are not listed as a route that may be impacted by the merger in Singer's report, and appear only in Plaintiffs' belatedly-served Interrogatory Responses. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7 (not listing Dallas to Puerto Rico or Dallas to New York City). To the extent the challenged routes are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), its inclusion does not raise a material dispute of fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

Plaintiffs' belatedly-filed declaration that she will travel from "Dallas/Fort Worth to PR" and "out of Puerto Rico to go on cruises with her husband" is too vague to introduce a dispute of material fact because identifying Plaintiffs identify multiple airports within "Puerto Rico," there are airports within Puerto Rico that Plaintiffs do not challenge, and therefore Plaintiffs' statement does not offer sufficient information from which a rational trier of fact can determine that Plaintiff is likely to fly on one of the routes which will purportedly be subject to anticompetitive harm as a result of the merger.

Jolly is not identified as a trial witness. *Infra* ¶ 217.

120.    <u>Travel Agent</u>: Jolly owns a travel agency, Riverside Travel as one of three equal co-owners. Exhibit 56 at 24:2-25:6.

<u>Plaintiff's Response No. 120:</u>

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 120:

Undisputed and therefore admitted.  *See* L.R. 56.1.

121.   Compensation: Jolly receives a salary from her work at Riverside Travel. *Id.* at 26:3-14. Jolly testified that she received commissions for airline tickets sold until around 2000 calculated as a percentage of the total flight fare, meaning that more expensive fares resulted in higher commissions. *Id.* at 31:12-32:2 ("Q: And so if a flight were more expensive, the percentage commission would be higher in total dollar value? Jolly A:  Yes.") Riverside Travel currently charges a $50 fee for booking customer flights, which has increased from $20 when the travel agency first started. *Id.* at 32:3-33:21 (when asked if she charges "a flat fee that does not depend on the price of the ticket" or the airline— whether "United," "American," "JetBlue," or "Spirit"— Jolly responded: "Correct.").

Plaintiff's Response No. 121:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 121:

Undisputed and therefore admitted.  *See* L.R. 56.1.

122.   Articulated Harm: Jolly asserted that when mergers occur, competition lessens, and that she did "not want to see another option leave from the Dallas airport" as prices may rise if Spirit were no longer in the market. *Id.* at 141:14-142:11. Jolly also testified that her kids would not be able to afford flying absent Spirit's low fares. *Id.* Jolly drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. Jolly wrote:

> When airlines merge, prices increase, options decrease, and service becomes minimal. Frequent flyer programs are devalued. I have experienced losses from previous mergers. There is no reason to think I won't suffer injuries from a Jet Blue [sic] and Spirit merger.

Exhibit 52 at 4.

> Plaintiff's Response No. 122:
>
> Undisputed.
>
> Defendants' Reply to Plaintiffs' Response No. 122:
>
> Undisputed and therefore admitted.  *See* L.R. 56.1.

123.   Miscellaneous: Jolly agreed that she would "sue to block any airline merger" because she thinks "airline mergers are bad as a whole." Exhibit 56 at 126:4-9.

> Plaintiff's Response No. 123:
>
> [No response.]
>
> Defendants' Reply to Plaintiffs' Response No. 123:
>
> Plaintiffs did not respond to this statement of fact. Pursuant to Local Rule 56.1, this fact is deemed undisputed and therefore admitted.  *See* Defendants' Reply to Plaintiffs' Response No. 26.

**N.   Michael C. Malaney**

124.   Flown Spirit: Malaney has never flown Spirit. Exhibit 53 at 20:4-7, 76:6-8; Exhibit 54 at 3.

> Plaintiff's Response No. 124:
>
> Undisputed.
>
> Defendants' Reply to Plaintiffs' Response No. 124:
>
> Undisputed and therefore admitted.  *See* L.R. 56.1.

125.   Future Plans to Fly Spirit: Malaney has no future Spirit flights booked, and has no concrete plans to fly Spirit. Exhibit 53 at 68:17-25, 76:17-19.

> Plaintiff's Response No. 125:
>
> Disputed.
>
> Plaintiff Malaney intends to fly all over the country for golf related trips from Detroit airport for a discounted price. (Alioto Dec., Ex. 14 - Malaney Dep. 101:11-19; 102:5-14; 104:6-12; 105:2-15.)

Defendants' Reply to Plaintiffs' Response No. 125:

Does not create a genuine dispute of material fact.  Plaintiff Malaney does not state that he has any future Spirit flights booked, or that he intends to fly Spirit at all.

Plaintiffs' response misstates the record.  Malaney's cited deposition testimony states that "if" he were to fly, he would "probably" fly from Grand Rapids to Atlanta (Exhibit 53 at 101:11-19); that he "like[s] to go golfing" in "North Carolina and South Carolina. Arizona" (*id.* at 102:5-14); that he would not "limit [his] future golf trips to the cities" that he listed (*id.* at 104:6-12) and that Malaney would <u>only</u> fly from Detroit if he was offered a "big discount because I don't like driving to Detroit." (*id.* at 105:2-15).  Defendants are not aware of any evidence in the record that establishes that Plaintiff Malaney "intends to fly all over the country" and Plaintiffs have presented none.

Plaintiffs' statement that Malaney "intends" to fly at some point in the future is too speculative to confer standing.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

126.   Spirit Flights in Rog 8 Routes: Malaney has never flown Spirit on any of the routes

listed in Plaintiffs' response to Interrogatory No. 8. *Id.* at 20:4-7; Exhibit 55 at 6.

Plaintiff's Response No. 126:

Disputed.

Plaintiff Malaney intends to fly all over the country for golf related trips from Detroit airport for a discounted price. (Malaney Dep. 101:11-19; 102:5-14; 104:6-12; 105:2-15.) There are several impacted routes from Detroit that are identified in Plaintiffs' Response to Interrogatory No. 8 that Plaintiff may fly in the future from Detroit, MI, including: Detroit to New York City (Metropolitan Area)

Detroit, MI - Baltimore, MD

Detroit, MI - Dallas/Fort Worth, TX

Detroit, MI - Fort Lauderdale, FL

Detroit, MI - Houston, TX

Detroit, MI - Los Angeles, CA

Detroit, MI - Minneapolis, MN

Detroit, MI - New Orleans, LA

Detroit, MI - Myrtle Beach, SC

Detroit, MI - Oakland, CA

Detroit, MI - Philadelphia, PA

Detroit, MI - Fort Myers, FL

Detroit, MI - San Diego, CA

Detroit, MI - Louisville, KY

(Alioto Dec., Ex. 62 - Plaintiff Malaney's Second Supplemental responses to Defendants' Interrogatories (Set Two); Alioto Dec., Ex. 14 - Malaney Dep. 101:11-19; 102:5-14; 104:6-12; 105:2-15.)

<u>Defendants' Reply to Plaintiffs' Response No. 126</u>:

Does not create a genuine dispute of material fact. Plaintiffs do not state that Malaney flew Spirit on any of the identified routes.

Defendants object to Plaintiffs' reliance on untimely updates to fact discovery responses between August 10-18, 2023, over six weeks after the close of fact discovery.

Plaintiffs' statement that Plaintiff Malaney "may" fly the above-listed routes does not appear in the citation offered by Plaintiffs. Plaintiffs' cited statement that Plaintiff Malaney will "go wherever [his] friends go or [he] decide[s] to go" is too speculative to raise a dispute of material fact as to Malaney's standing. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiffs' response also does not introduce a dispute of material fact because the newly-listed routes are not routes identified by Plaintiffs' expert, Hal Singer, as routes that will potentially be impacted by the merger. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7 (only listing routes from Detroit to Puerto Rico and New York as subject to anticompetitive harm). Plaintiffs have no admissible evidence that the alleged route will be impacted by the merger. The routes listed appear in Plaintiffs' belated response to Interrogatory 8, served six weeks after the close of fact discovery, and in the Singer Declaration. To the extent any of the challenged routes are "Spirit-Only routes," (which are not listed in the Singer Report, but are listed in the Singer Declaration, Dkt. 185), their inclusion does not raise a material dispute of fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

Malaney is not identified as a trial witness. *Infra* ¶ 217.

127. <u>Travel Agent</u>: Malaney is not a travel agent anymore. Exhibit 53 at 21:2-16.

Malaney pleaded guilty to felony larceny by conversion for stealing $25,000 intended to book a

client's trip to Aruba, which contributed to him leaving the travel agent industry altogether in 2015. *Id.* at 50:4-58:21.

> Plaintiff's Response No. 127:
>
> Objection. Inadmissible character evidence pursuant to FRE, Rule 404.
>
> Defendants' Reply to Plaintiffs' Response No. 127:
>
> Undisputed.  Plaintiffs' objection based on FRE 404 is misplaced.  The cited evidence is not offered to prove Plaintiff Malaney "acted in accordance with [a] character or trait" but to demonstrate that he is not likely to re-enter the travel agency industry.  *See* Fed. R. Evid. 404 ("Evidence of a person's character or character trait is not admissible *to prove that on a particular occasion the person acted in accordance* with the character or trait.") (emphasis added).  In any event, Plaintiffs have abandoned their allegations that the merger will result in harm to them in their professional capacities by failing to pursue these claims in discovery or defend them in their Opposition.

128.   <u>Compensation</u>: Malaney is retired from the travel industry and no longer receives any income from a travel agency. *Id.* at 21:2-16, 59:6-8.

> Plaintiff's Response No. 128:
>
> Undisputed.
>
> Defendants' Reply to Plaintiffs' Response No. 128:
>
> Undisputed and therefore admitted.  *See* L.R. 56.1.

129.   <u>Articulated Harm</u>: Malaney did not draft an individualized response to Interrogatory 7. *See supra* ¶ 35; Exhibit 56 at 3-4.

> Plaintiff's Response No. 129:
>
> Disputed.
>
> Plaintiff's response *was* his individualized response.
>
> Defendants' Reply to Plaintiffs' Response No. 129:
>
> Does not create a genuine dispute of material fact.  The "dispute" is not responsive.  Plaintiff's entire response was identical to a portion of the answer provided by the twenty-three other living Plaintiffs.

O.     **Leonard Marazzo**

130.     Flown Spirit: Marazzo has never flown Spirit. Exhibit 57 at 28:13-14, 44:10-12; Exhibit 58 at 3.

> Plaintiff's Response No. 130:
>
> Disputed.
>
> Plaintiff Marazzo has flown the following routes on Spirit Airlines:
>
> LAS-RNO
>
> RNO-LAS
>
> SAN-LAS
>
> IAH-LAS
>
> (Alioto Dec., Ex. 39 - Plaintiff Marazzo's Second Supplemental Responses and Objections to Defendants' First Set of Interrogatories, Response No. 1, Exhibit B.)
>
> Defendants' Reply to Plaintiffs' Response No. 130:
>
> Plaintiffs' Response No. 130 misstates the record.  Exhibit 39 to the Alioto declaration was introduced as Exhibit 2 to the deposition of Len Marazzo.  *See* Exhibit 106, Marazzo Dep. at 3:11-14, 42:6-43:1.  Marazzo testified that the flights he listed in Exhibit B to Exhibit 39 of the Alioto declaration reflected flights he purchased for his daughter, that he was not a passenger on any of those flights, and that he has never flown Spirit.  *See id.*, Marazzo Dep. at 46:25-49:22; *see also id.* at 29:13-14 ("Q:  Have you ever flown on Spirit?  A:  I have not."); 44:10-12 ("Q:  You've – and I think you testified earlier, but you've never flown Spirit, right?  A: Correct").
>
> In any event, the above-listed routes are not identified by Plaintiffs' expert, Hal Singer, as those that may be impacted by the merger.  *See* Defendants' Reply to Plaintiffs' Response Nos. 36, 132.

131.     Future Plans to Fly Spirit: Marazzo has no future Spirit flights booked, and has no concrete plans to fly Spirit. Exhibit 57 at 28:19-29:10 (Q: "Do you have any plans to fly Spirit as of today? I don't have anything concrete as of today."). Marazzo "look[s] at Spirit regularly," and his working adult daughter "flies Spirit regularly" and he has paid for his daughter's tickets. *Id.* Marazzo also stated that when he considers flying a route he knows Spirit flies on, he looks at

Spirit's website to see whether they offer the lowest fare, but explained that American is his preferred airline. *Id.* at 20:11-15, 60:12-19.

Plaintiff's Response No. 131:

Disputed.

Plaintiff Marazzo purchases his daughter's flights from Las Vegas to Reno and Las Vegas to Houston on Spirit Airlines. (Alioto Dec., Ex. 15 – Marazzo Dep. 28:19-29:10.) Plaintiff Marazzo plans on flying from Reno to Orlando, Reno to New York (Metropolitan Area), Reno to Richmond (VA), and Reno to Salt Lake City. (*Id.* at 36:2-10; 37:8-14; 39:4-17.)

Plaintiff Marazzo plans on flying from Reno to Las Vegas. *Id.* at 50:2-19. He has booked this Spirit Airlines flight for November 4, 2023. Declaration of Len Marazzo in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Marazzo Dec.") ¶2. Plaintiff Marazzo's daughter lives in Las Vegas so they intend to travel this route several times per year on Spirit. *Id.*

Plaintiff will be flying on Spirit from Orlando to Richmond on December 13, 2023 for an event. *Id.*

Plaintiff regularly flies from Reno to Orlando for work often.

Marazzo Dec. ¶2.

Defendants' Reply to Plaintiffs' Response No. 131:

Does not create a genuine dispute of material fact.  Most of the identified plans above do not state that Marazzo has future flights booked on Spirit and therefore are unresponsive.

Plaintiffs cannot contradict Marazzo's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

Marazzo's invocation of flights his daughter takes are insufficient to confer standing on him.  Plaintiffs cannot assert standing on behalf of others.  *See California v. Am. Stores Co.*, 495 U.S. 271, 296 (1990) (requiring a private antitrust litigant to "prove threatened loss or damage to his own interests" in order to have standing to obtain relief) (internal quotations and citations omitted); *United States v. Borden*, 347 U.S. 514, 518 (1954) (while the "Government seeks its injunctive remedies on behalf of the general public; the private plaintiff, though his remedy is made available pursuant to public policy as determined by Congress, may be expected to exercise it only when *his personal interest* will be served") (emphasis added); *Sullivan v. Tagliabue*, 828 F. Supp. 114, 120 (D. Mass. 1993) (in § 4

damages case, injuries "merely derivative of [another's] are too indirect and tangential to support [an] individual action"), *aff'd*, 25 F.3d 43 (1st Cir. 1994).

The routes Plaintiffs identify of Las Vegas to Reno, Las Vegas to Houston, Reno to Orlando, Reno to Richmond, and Reno to Salt Lake City are not routes that Plaintiffs' expert, Hal Singer, identifies as routes that would potentially be impacted by the merger. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7. Plaintiffs' statement that Marazzo plans to fly the route Orlando to Richmond appears nowhere in the record other than Marazzo's self-serving declaration. *See* Defendants' Reply to Plaintiffs' Response Nos. 27, 36.

Plaintiffs' statement that Marazzo plans to fly from Reno to New York (Metropolitan Area) misstates the record. Marazzo testified that "we, you know, often talk about going to New York." Alioto Dec. Ex. 15 at 37:8-14. Marazzo's statement that he "talk[s]" about going to New York is too speculative to introduce a genuine dispute of material fact as to whether Marazzo's harm is concrete or imminent. *See* Defendants' Reply to Plaintiffs' Response No. 27.

132.  <u>Spirit Flights in Rog 8 Routes</u>: Marazzo has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8. Exhibit 57 at 44:10-12; Exhibit 65 at 6-7, 9-10, 12.

<u>Plaintiff's Response No. 132:</u>

Disputed.

There are several impacted routes from are identified in Plaintiff's response to Interrogatory No. 8 that Plaintiff has flown. These include:

RNO-MCO (roundtrip)

> Plaintiff regularly flies from Reno to Orlando for work. Marazzo Dec. ¶2.RNO-TPA (roundtrip)

RNO-New York (Metropolitan Area).

> Plaintiff has previously flown this route. He also intends to fly this route in the near future. Marazzo Dep. 37:8-14;. His family often discusses going to New York. *Id.*

LAS-LGA/ New York City, NY (Metropolitan Area) (roundtrip)

MCO – RIC (Roundtrip).

> Plaintiff will be flying on Spirit from Orlando to Richmond on December 13, 2023 for an event. Marazzo Dec. ¶2. Marazzo

frequents Florida many times a year for work. His company is based in Richmond, and being able to fly form Orlando to Richmond on Spirit at a great price and schedule allows him great flexibility. Marazzo Dec. ¶2(b).

(Ex 63 - Plaintiff Marazzo's Second Supplemental responses to Defendants' Interrogatories (Set Two); Alioto Dec., Ex. 39 - Plaintiff Marazzo's Second Supplemental Responses to Defendants' Interrogatories (Set One), Exhibit A.)

Defendants' Reply to Plaintiffs' Response No. 132:

Does not create a genuine dispute of material fact.  The response above does not state that Marazzo flew Spirit on any of the identified routes.

Plaintiffs cannot contradict Marazzo's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiff Marazzo's listed routes of Reno-Orlando are not routes that Plaintiffs challenge as being potentially subject to anticompetitive harm under any cognizable theory. *See* Defendants' Reply to Plaintiffs' Response No. 36.

The route Orlando to Richmond, Reno to New York (Metropolitan Area), and Las Vegas to New York (Metropolitan Area) also do not create a genuine dispute of material fact.  Marazzo has not flown from Reno to New York (Metropolitan Area) since 2017, which is too remote to establish standing. *See* Ex. 59.  Marazzo has only flown from Orlando to Richmond one time, and for business reasons, which are reimbursed by his company.  *See id.;* Ex. 57 at 31:20-25. Marazzo's claimed route of Las Vegas to New York (Metropolitan Area, including LGA) does not appear in the cited exhibit, and Defendants are not aware of any record fact concerning his travel on that route.

133.  <u>Travel Agent</u>: Marazzo formerly owned a travel agency, which he closed in 2008. Exhibit 57 at 14:2-15:12. He testified that he and his son are considering re- opening a travel business which would organize events in and around Reno, Nevada. *Id.*  15:19-23, 58:23-25. Marazzo has taken no steps to open that business, however, and does not know when (if ever) that business would open. *Id.* at 54:25-57:19.

Plaintiff's Response No. 133:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 133:

Undisputed and therefore admitted.  *See* L.R. 56.1.

134.    Compensation: Marazzo has not worked in the "travel agency business" since 2008, and therefore has not received any income by working for a travel agency since that time. *Id.* at 14:2-15:12; Exhibit 60 at 1-2.

Plaintiff's Response No. 134:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 134:

Undisputed and therefore admitted.  *See* L.R. 56.1.

135.    Articulated Harm: Marazzo testified that he believes the harms he will experience from the merger are higher fares, and fewer travel options. Exhibit 57 at 52:16- 55:4. Marazzo drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. Marazzo wrote: "The merger will result in higher fares and less choice in flights." Exhibit 60 at 4.

Plaintiff's Response No. 135:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 135:

Undisputed and therefore admitted.  *See* L.R. 56.1.

136.    Miscellaneous: Marazzo has reimbursed his daughter for nine flights she booked for herself on Spirit, but he did not accompany his daughter on those flights. Exhibit 63 at 28:19-29:21; Exhibit 65 at 7, 11-12. Marazzo has also purchased flights for his daughter on other airlines, which he did not include in his response to Defendants' Interrogatory No. 1. Exhibit 57 at 48:1-9.

Plaintiff's Response No. 136:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 136:

Undisputed and therefore admitted.  *See* L.R. 56.1.

**P.  Lisa McCarthy**

137.  Flown Spirit: McCarthy has never flown Spirit. Exhibit 61 at 62:2-3; 76:8- 13;
Exhibit 62 at 3.

Plaintiff's Response No. 137:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 137:

Undisputed and therefore admitted.  *See* L.R. 56.1.

138.  Future Plans to Fly Spirit: McCarthy has no future Spirit flights booked, and has no
concrete plans to fly Spirit. Exhibit 61 at 85:13-86:2. McCarthy speculated that she "definitely
would fly Spirit in the future," but also agreed she has not flown any ultra- low- cost carrier in the
past eight years. *Id.* at 86:6-16.

Plaintiff's Response No. 138:

Disputed.

Plaintiff McCarthy's preferred home airports are Fort Myers, Fort Lauderdale, and
Miami. (Alioto Dec., Ex. 16 - McCarthy Dep. 53:4-15.) Plaintiff McCarthy intends
to fly from Fort Myers throughout the country, including Detroit (every fall),
Connecticut, Boston, New York, Pittsburgh and Hartford. (*Id.* at 102:16-103:12.)

Plaintiff McCarthy will fly Spirit in the future if it is a route she would like to take.
(*Id.* at 73:6-11.)

Plaintiff McCarthy did book Spirit flights for her customers while she was a travel
agent. (*Id.* at 47:22-24).

Plaintiff McCarthy plans to fly in the future and will not exclude any airline from
consideration of her future airline booking purchases. (*Id.* at 119:12-120:4).

McCarthy has a Godson graduating from high school in Pittsburgh, and plans to
travel there for his graduation in 2024. *Id.* at 103:5-8.

McCarthy will be flying from Fort Myers, FL to New York (metropolitan area) and Hartford, NY to visit friends in October 2023. McCarthy will be flying from Fort Myers, FL to New York (metropolitan area) to visit friends in October 2023. Plaintiff McCarthy's Declaration in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("McCarthy Dec.") ¶2.

McCarthy will also be flying from Fort Myers, FL to Detroit in the fall to attend Michigan State football games. She is currently planning to fly this route the weekend of September 23, 2023 and is considering flying Sprit. *Id.*

McCarthy regularly attends conferences in Las Vegas and flies from Fort Myers, FL to Las Vegas at least annually to attend. She intends to fly Spirit as it offers a nonstop low cost option. *Id.*

<u>Defendants' Reply to Plaintiffs' Response No. 138</u>:

Does not raise a genuine dispute of material fact.  None of McCarthy's additional statements suggest that she has any Spirit flights booked, or concrete plans to fly spirit.

Plaintiff McCarthy's "inten[t] to fly from Fort Myers throughout the country," that she will "fly Spirit if it is a route she wants to take," and that she will "not exclude any airline from consideration," McCarthy's statement that she "will fly Spirit in the future if it is a route she would like to take" and that she "intend[s]" to visit friends "in the Northeast—Connecticut, Boston, New York areas" are too speculative to confer standing.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiffs cannot contradict McCarthy's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

The routes Plaintiffs identify of Fort Myers-New York (Metropolitan Area) and Fort Myers-Las Vegas are not routes that Plaintiffs challenge under any theory.  *See* Defendants' Reply to Plaintiffs' Response No. 36.  Moreover, McCarthy's invocation of "Connecticut" as a destination is not cognizable under Singer's theories of harm.

Plaintiffs' alleged travel on the Fort Myers-Detroit and Fort Myers-Pittsburgh routes are not listed as a potentially impacted routes in Singer's Report, but appear in Plaintiffs' belatedly-served Interrogatory Responses and the Singer Declaration.  *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7. Plaintiffs have no admissible evidence that the alleged routes will be impacted by the merger.  To the extent the challenged routes are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), their inclusion does not raise a material dispute of fact because there is no cognizable theory of harm articulated on these routes.  *See* Defendants' Reply to Plaintiffs' Response No. 36.

McCarthy is not identified as a trial witness. *Infra* ¶ 217.

139.   <u>Spirit Flights in Rog 8 Routes</u>: Since November 2018, McCarthy has not flown Spirit on any of the routes listed in Plaintiffs' response to Interrogatory No. 8. *Id.* at 76:8-13; *see also* Exhibit 63 at 6, 11-12.

> <u>Plaintiff's Response No. 139:</u>
>
> Disputed.
>
> Plaintiff will fly the following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories (Set Two):
>
> Fort Myers to Pittsburgh, PA (Roundtrip)
>
>> McCarthy has a Godson graduating from high school in Pittsburgh, and plans to travel there for her graduation in 2024. Alioto Dec Ex. 16 - McCarthy Dep. at 103:5-8.
>
> Fort Myers, FL to New York (metropolitan area) (Roundtrip)
>
>> McCarthy will be flying from Fort Myers, FL to New York (metropolitan area) to visit friends in October 2023. McCarthy Dec. ¶2.
>
> Fort Myers, FL to Detroit (Roundtrip)
>
>> McCarthy will also be flying from Fort Myers, FL to Detroit in the fall to attend Michigan State football games. She is currently planning to fly this route the weekend of September 23, 2023 and is considering flying Sprit. *Id.*
>
> Fort Myers, FL to Las Vegas (Roundtrip)
>
>> McCarthy regularly attends conferences in Las Vegas and flies from Fort Myers, FL to Las Vegas at least annually to attend. She intends to fly Spirit as it offers a nonstop low cost option. *Id.*
>
> Fort Myers to Hartford (Roundtrip)
>
>> McCarthy has a good friend who lives in the Berkshires and intends to fly into Hartford to visit this friend. Alioto Dec Ex. 16 - McCarthy Dep. 102:24-103:4.
>
> Fort Myers to Boston (Roundtrip)

McCarthy has friends in Boston she intends to visit. *Id.*

(Alioto Dec Ex. 64 - Plaintiff McCarthy's Second Supplemental responses to Defendants' Interrogatories (Set Two); Alioto Dec Ex. 40 – Plaintiff McCarthy's Responses to Defendants' Interrogatories (Set One).)

Defendants' Reply to Plaintiffs' Response No. 139:

Does not create a genuine dispute of material fact.  Plaintiffs do not state that McCarthy has flown Spirit on any of the identified routes.

Plaintiffs cannot contradict McCarthy's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

Freeland's alleged intent to fly between Fort Myers-Hartford and Fort Myers-Boston in the future is too speculative to confer standing.  Plaintiffs cannot rely on vague, unformed statements that they "intend" to fly allegedly harmed routes.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

In addition, the routes Fort Myers-New York, Fort Myers-Detroit, and Fort Myers-Las Vegas, are not listed as a potentially impacted routes in Singer's Report, but appear in Plaintiffs' belatedly-served Interrogatory Responses and in Singer's Declaration.  *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7; Dkt. 185 (Fort Myers-Detroit).  Plaintiffs have no admissible evidence that the alleged routes will be impacted by the merger.  To the extent the challenged routes are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), their inclusion does not raise a material dispute of fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

McCarthy is not identified as a trial witness.  *Infra* ¶ 217.

140.   Travel Agent: McCarthy is not presently employed as a travel agent and has never been employed as a travel agent. Exhibit 64 at 1-2; Exhibit 61 at 12:10-15. McCarthy is not and has never been the whole or partial owner of a travel agency. Exhibit 64 at 1-2. McCarthy works for MAD Travel, a travel agency, where McCarthy works in the back office and handles administration—such as accounting, human resources, and marketing. Exhibit 61 at 13:11-17, 14:22-15:5. McCarthy plans to retire from MAD Travel "in the very near future." *Id.* at 104:11-17.

Plaintiff's Response No. 140:

Disputed.

McCarthy works for a travel agency, MAD travel. McCathy Dep. 13:10.

McCarthy is not a travel agent but handles agreements between MAD Travel and airlines. McCarthy Dep. 29: 7-10.

McCarthy's husband owns MAD Travel. McCarthy Dep. 13:11-17. McCarthy's husband has booked flights for her. McCarthy Dep. 65:2-5.

Defendants' Reply to Plaintiffs' Response No. 140:

Does not create a genuine dispute of material fact. Plaintiffs have abandoned their allegations of future harm in their professional capacities as travel agents by failing to pursue these claims in discovery or defend them in their Opposition.

Plaintiffs' statement concerning McCarthy's husband does not create a dispute of material fact because McCarthy cannot assert standing on behalf of others. *See California v. Am. Stores Co.*, 495 U.S. 271, 296 (1990) (requiring a private antitrust litigant to "prove threatened loss or damage to his own interests" in order to have standing to obtain relief) (internal quotations and citations omitted); *United States v. Borden*, 347 U.S. 514, 518 (1954) (while the "Government seeks its injunctive remedies on behalf of the general public; the private plaintiff, though his remedy is made available pursuant to public policy as determined by Congress, may be expected to exercise it only when ***his personal interest*** will be served") (emphasis added); *Sullivan v. Tagliabue*, 828 F. Supp. 114, 120 (D. Mass. 1993) (in § 4 damages case, injuries "merely derivative of [another's] are too indirect and tangential to support [an] individual action"), *aff'd*, 25 F.3d 43 (1st Cir. 1994).

141.   <u>Compensation</u>: McCarthy was not sure what her salary was, but believed it was around $73,000 annually. *Id.* at 44:7-14. McCarthy's salary remains the same regardless of MAD Travel's performance. *Id.* at 44:23-25 ("Q: So regardless of [the travel agency's] performance in a given year, your salary remains the same? McCarthy A. That's correct.").

Plaintiff's Response No. 141:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 141:

Undisputed and therefore admitted.  *See* L.R. 56.1.

142.   Articulated Harm: McCarthy asserted the merger would generally result in higher prices, fewer available seats, and a decline in service. She expressed concern for "other people's travels" because those individuals will not "be able to afford the non, low- cost carriers." *Id.* at 87:1-89:22. McCarthy drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. McCarthy wrote:

> I feel that this merger will result in less competition among airlines thereby creating a monopoly. One of the largest low-cost competitors would be eliminated and competing low cost airlines would be cut in half, losing 50% of capacity and therefore fewer flight options on them. There will be higher airfares charged by all airlines, not just low-cost carriers, due to lessened competition. There will be fewer flight options offered by all the airlines, not just the low-cost carriers.

Exhibit 64 at 5.

Plaintiff's Response No. 142:

Disputed.

The proposed merger would impact McCarthy personally and the greater public it will eliminate competition, affect prices, fewer seats available on planes, which leads to higher prices. McCarthy Dep. 87:1-19.

"I think it's going to be harder to get seats on airplanes if you're removing a carrier out of the marketplace." *Id.* at 89:13-16.

Plaintiff McCarthy prefers direct flights over connecting flights. *Id.* at 70:20- 22.

Defendants' Reply to Plaintiffs' Response No. 142:

Does not create a genuine dispute of material fact.  The additional text cited does not contradict the facts in Paragraph 142.

143.   Miscellaneous: McCarthy's husband is the sole owner of MAD Travel.  Exhibit 61 at 13:11-17, 14:22-15:5.

Plaintiff's Response No. 143:

[No response.]

Defendants' Reply to Plaintiffs' Response No. 143:

Plaintiffs did not respond to this statement of fact. Pursuant to Local Rule 56.1, this fact is deemed undisputed and therefore admitted. *See* Defendants' Reply to Plaintiffs' Response No. 26.

**Q.   Timothy Nieboer**

144.   Flown Spirit: Since November 2018, Nieboer has flown Spirit four times.

Exhibit 66 at 6-7.

Plaintiff's Response No. 144:

Undisputed. However, Plaintiff Nieboer has flown the following routes on Spirit Airlines:

DTW-MCI

MCI-DTW

DTW-FLL

FLL-DTW

DTW-ATL

AT-LDTW

DTW-IAH-DEN

DTW-JAX

JAX-DTW

DTW-DEN-DTW

DTW-TPA-DTW

(Alioto Dec Ex. 41 - Plaintiff's Second Supplemental Responses and Objections to Defendants' First Set of Interrogatories, Supplemental Response No. 1.)

Defendants' Reply to Plaintiffs' Response No. 144:

Undisputed and therefore admitted.  *See* L.R. 56.1.  The additional text does not create a genuine dispute of material fact.

None of Plaintiff Nieboer's listed flights are routes that Plaintiffs' expert, Hal Singer, claims would potentially be impacted by the merger.  *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7.  *See infra* ¶ 146.

Plaintiffs' invocation of flights by Nieboer on the route "DTW-IAH-DEN" are not supported by Plaintiffs' citations to the record.

145.   <u>Future Plans to Fly Spirit</u>: Nieboer has no future Spirit flights booked, and has no concrete plans to fly Spirit. Exhibit 65 at 78:18-80:1, 103:3-21. Nieboer stated he has plans to fly in February and May next year, but has no tickets booked, no destination chosen, and no dates set, and "can't guarantee" he would choose Spirit for those flights. *Id.* When asked if he has a preference for flying Spirit, Nieboer said "No. Not at all" and, when his wife flies Spirit, "her back hurts a little bit in the seat." *Id.* at 68:11-13, 70:13- 14.

Plaintiff's Response No. 145:

Disputed.

Plaintiff Nieboer would consider flying Spirit in the future. Alioto Dec Ex. 17 – Nieboer Dep. 78:18-21.

Nieboer said flying any airline is possible, but [Spirit] has "always been the most economical one, so that is what I would run with." *Id*. at 79:25-80:1.

Plaintiff Nieboer will be flying from February 17, 2024 to March 2, 2024 roundtrip from Detroit to Fort Lauderdale and plans to book this flight on Spirit. Plaintiff Nieboer's Declaration in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Nieboer Dec.") ¶2. He has an annual timeshare in Fort Lauderdale and his daughter lives in Florida so he makes this route often. *Id.* He uses Spirit to fly this route as it is the cheapest choice. *Id.*

Defendants' Reply to Plaintiffs' Response No. 145:

Does not create a genuine dispute of material fact.  Nieboer does not state that he has a future flight on Spirit booked.

Nieboer's vague statement that he would "consider" flying Spirit and "flying any airline is possible," and his "plans" to book his flight on Spirit are too speculative to confer standing. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiffs cannot contradict Nieboer's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiff Nieboer's future flight from Detroit to Fort Lauderdale does not raise a dispute of material fact. Detroit to Fort Lauderdale is not listed as a potentially impacted route in Singer's Report,but appears in Plaintiffs' belatedly-served Interrogatory Responses and in the Singer Declaration. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7; Dkt. 185. Plaintiffs have no admissible evidence that the alleged route will be impacted by the merger. To the extent the challenged routes are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), its inclusion does not raise a material dispute of fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

146.   <u>Spirit Flights in Rog 8 Routes</u>: Since November 2018, Nieboer has not flown Spirit on any of the routes Plaintiffs listed in response to Defendants' Interrogatory No. 8. Exhibit 66 at 7.

<u>Plaintiff's Response No. 146:</u>

Disputed.

There are several impacted routes from are identified in Plaintiff's response to Interrogatory No. 8 that Plaintiff has flown. These include:

FLL-DTW (roundtrip)

Plaintiff Nieboer will be flying this route from February 17, 2024 to March 2, 2024 roundtrip from Detroit to Fort Lauderdale and plans to book this flight on Spirit. Nieoboer Dec. ¶2. He has an annual timeshare in Fort Lauderdale and his daughter lives in Florida so he flies this route often. *Id.* He uses Spirit to fly this route as it is the cheapest choice. *Id.*

DTW-JAX (roundtrip)

(Ex. 65 Plaintiff Nieboer's Second Supplemental responses to Defendants' Interrogatories (Set Two); Alioto Dec Ex. 41 - Plaintiff's Second Supplemental Responses and Objections to Defendants' First Set of Interrogatories.)

116

<u>Defendants' Reply to Plaintiffs' Response No. 146</u>:

Does not create a genuine dispute of material fact. Plaintiffs do not state that Nieboer flew Spirit on any of the identified routes.

Plaintiffs cannot contradict Nieboer's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

In any event, Fort Lauderdale to Detroit and Detroit to Jacksonville are not identified by Singer as routes that would potentially be impacted by the merger. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7. Plaintiffs have no admissible evidence that the alleged routes will be impacted by the merger. To the extent the challenged routes are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), their inclusion does not raise a material dispute of fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

Nieboer is not identified as a trial witness. *Infra* ¶ 217.

147.  <u>Travel Agent</u>: Nieboer is not currently a travel agent, has never been a travel agent, and is not the owner of a travel agency. Exhibit 65 at 11:9–13:5. Nieboer works at a construction company; inherited his mother's travel agency for "a month" before selling it; and has no intention of working as a travel agent. *Id.* at 14:17-23, 17:8-10, 23:18-23.

<u>Plaintiff's Response No. 147</u>:

Undisputed.

<u>Defendants' Reply to Plaintiffs' Response No. 147</u>:

Undisputed and therefore admitted. *See* L.R. 56.1.

148.  <u>Compensation</u>: Nieboer receives no income from a travel agency. *Id.* at 11:9–13:5.

<u>Plaintiff's Response No. 148</u>:

Undisputed.

<u>Defendants' Reply to Plaintiffs' Response No. 148</u>:

Undisputed and therefore admitted.  *See* L.R. 56.1.

149.   <u>Articulated Harm</u>: When asked how the merger would affect him, Nieboer testified that mergers "only help the companies, not the public," and would result in less seats, higher prices, and "less opportunity to … fly certain destinations." *Id.* at 82:6-83:10. Nieboer testified that his greatest personal concern is pricing. *Id.* at 96:7-10.

Nieboer testified that he is bringing this lawsuit because his mother was a travel agent, and he believes she "passed literally because of what happened with the airlines previously. She literally – the company was literally just struggling. She literally had nothing to her name." *Id.* at 15:23-16:3. Nieboer's mother was previously involved in lawsuits in the airline industry. *Id.* at 88:1-90:24. Nieboer drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. Nieboer wrote:

This merger will result in higher travel fees and less flights available.

Exhibit 67 at 4.

<u>Plaintiff's Response No. 149</u>:

Disputed.

Nieboer testified that mergers "only help the companies, not the public," and would result in less seats, higher prices, and "less opportunity to … fly certain destinations." Nieboer Dep. at 82:6-83:10. Nieboer testified that his greatest personal concern is pricing. *Id*. at 96:7-10.

Nieboer's mother literally passed after what happened to the airlines and died with nothing to her name. *Id*. at 15:24-16:3.

"...When mergers happen and competition goes away and monopoly becomes stronger, they – and this is, you know, communicating through, you know, with my mom's stuff, there was collusion that eliminated most or— could charge, and basically when all that happened, they literally lost about everything, and when my mom—my stepdad passed first..." *Id*. at 18:3-11.

Airlines colluded and cut their fees way down. *Id*. at 18:13-14.

Nieboer said that there would be less availability because of the merger.

*Id*. at 83:7-10.

Defendants' Reply to Plaintiffs' Response No. 149:

Does not create a genuine dispute of material fact.  Response No. 149 does not dispute any material aspect of Defendants' statement.

**R.   Deborah Pulfer**

150.   Flown Spirit: Pulfer has never flown Spirit. Exhibit 68 at 17:12-13, 36:20- 21; Exhibit 69 at 3.

Plaintiff's Response No. 150:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 150:

Undisputed and therefore admitted.  *See* L.R. 56.1.

151.   Future Plans to Fly Spirit: Pulfer has no future Spirit flights booked, and has no concrete plans to fly Spirit. Exhibit 68 at 36:22-38:21. Pulfer explained that she is interested in flying from Denver to Columbus in the future when she lives full-time in Denver, even though Spirit does not offer a direct route on this flight, and that she may fly Spirit even though she has "nothing planned yet." *Id.*; Exhibit 72 at 1-5.

Plaintiff's Response No. 151:

Disputed.

Plaintiff Pulfer plans on flying to Fort Lauderdale from Columbus, OH to go on a cruise. Alioto Dec Ex. 18 - Pulfer Dep. at 27:5-13;23-25; 31:8-15.)

Plaintiff intends to fly from Columbus, OH to Los Angeles because her company that she works for (All-Travel) is headquartered there. *Id.* at 28:12- 13.

Pulfer intends to fly from Denver to New York to meet Hoda and Jenna and be on their show. *Id.* at 29:12-13; 30:1-5.

Spirit does not fly out of Dayton, but does fly out of Columbus. Pulfer would be willing to travel to Columbus to fly Spirit to visit family. *Id.* at 24:17.

Pulfer will fly Spirit from Denver to Columbus because she has family in , and recently bought a house just outside of Denver in Estes Park. Pulfer Dep. 37:11-15. She plans to fly from Denver to Columbus in the summer of 2024 to visit her parents. Plaintiff Pulfer's Declaration in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Pulfer Dec.") ¶2. She plans on booking Spirit flights often to travel this route because it offers nonstop service on this route. *Id.*

Defendants' Reply to Plaintiffs' Response No. 151:

Does not create a genuine dispute of material fact. None of Plaintiffs' additional facts suggest that she has future flights booked on Spirit, or concrete plans to fly on Spirt.

Pulfer's vague "plans" to fly on any airline are too speculative to confer standing. *See* Defendants' Reply to Plaintiffs' Response No. 27. For example, Plaintiff Pulfer did not testify that she "will" or is "likely" to travel to New York, but that she is "manifest[ing]" that she will travel to New York to appear on the Today Show as a guest of Hoda Kotb and Jenna Bush Hager. There is no record evidence that Pulfer has been invited to participate as a guest on that television program or that she has purchased or intends to purchase a flight to New York in the near future. Alioto Dec Ex. 18 - Pulfer Dep. 29:12-30:5. This route is therefore too speculative to introduce a dispute of material fact. Plaintiff also never testified that she has tickets or a date to go on a cruise leaving from the Fort Lauderdale area but stated that many cruise lines operate out of Fort Lauderdale. Exhibit 62, 27:5-13; 31:8-15 ("Okay. Do you have any other reason that you can think of that you'll be going to Fort Lauderdale in the future? A: I – not in the immediate future, but there's always circumstances and situations that come up and there's many cruise lines that go out of the Fort-Lauderdale- Miami area.")

Plaintiffs cannot contradict Pulfer's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiffs otherwise do not raise a material dispute of fact Pulfer's statement that she "would be willing to travel to Columbus to fly Spirit to visit family" does not identify any particular destination which would allow a rational trier of fact to determine that she is likely to fly on any of the routes challenged by Plaintiffs. Plaintiffs also misstate the record with respect to Ms. Pulfer's plan to travel on a Denver-New York, Columbus-Los Angeles and Columbus-Fort Lauderdale routes; the cited documentation does not support Pulfer's intention to fly these routes.

Moreover, Plaintiff's purported future travel from Denver to New York, Columbus-Los Angeles, Denver-Columbus, and Columbus-Fort Lauderdale do not raise a material dispute of fact because they are not routes on which Singer articulates a cognizable theory of harm. *See* Defendants' Reply to Plaintiffs' Response No. 36.

While not necessary to resolve the motion, Plaintiff Pulfer's declaration that "Spirit has a non-stop service between [Denver and Columbus]" which she seeks to purchase, Dkt. 200, is wrong. Spirit does not offer "direct" service from Denver to Columbus.

152.   <u>Spirit Flights in Rog 8 Routes</u>: Pulfer has not flown Spirit on any of the routes Plaintiffs listed in response to Defendants' Interrogatory 8. Exhibit 68 at 17:10-13; Exhibit 70 at 6-7, 11-13.

<u>Plaintiff's Response No. 152:</u>

Disputed.

Plaintiff intends to fly following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories

(Set Two):

CMH-FLL (roundtrip).

Plaintiff Pulfer plans on flying to Fort Lauderdale from Columbus, OH to go on a cruise. Alioto Dec Ex. 18 - Pulfer Dep. at 27:5-13;23-25; 31:8-15.

CMH-LAX (roundtrip).

Plaintiff intends to fly from Columbus, OH to Los Angeles because her company that she works for (All-Travel) is headquartered there. *Id.* at 28:12-13.

(Alioto Dec Ex. 66 Plaintiff Pulfer's Second Supplemental responses to Defendants' Interrogatories (Set Two).)

<u>Defendants' Reply to Plaintiffs' Response No. 152:</u>

Does not create a genuine dispute of material fact.

Response No. 152 does not dispute any material aspect of Defendants' statement that Pulfer "<u>has not flown</u>" Spirit on challenged routes, and instead provides purported facts about Pulfer's purported future flights.

Plaintiff Pulfer's purported future travel does not raise a dispute of material fact because the routes identified are not subject to any cognizable theory of harm. *See supra* Defendants' Reply to Response Nos. 36, 151.

Plaintiffs cannot contradict Pulfer's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Pulfer was not identified as a trial witness. *Infra* ¶ 217.

153.    Travel Agent: Pulfer is presently employed as a travel agent by Creative Vacations, a division of All-Travel, but she is no longer the whole or partial owner of a travel agency. Exhibit 69 at 3; Exhibit 68 at 12:5-11, 55:15-22. Pulfer initially testified that mergers in the airline industry had nothing to do with her closing her travel agency, but she admitted the opposite when shown a prior declaration in a separate airline merger case. Exhibit 68 at 55:23-56:3, 113:16-116:8; *see* Declaration of Deborah Pulfer, *In re AMR*, No. 13-01392 (S.D.N.Y. June 24, 2017), ECF No. 149-9. Pulfer does not plan to open another agency and plans to retire in the next six years. Exhibit 68 at 56:4-11.

> Plaintiff's Response No. 153:
>
> Disputed.
>
> Pulfer owned a travel agency, UNIGLOBE Professional travel from January 1995 to December 31, 2008. Pulfer Dep. 54:17-20.
>
> Defendants' Reply to Plaintiffs' Response No. 153:
>
> Does not create a genuine dispute of material fact.  The additional text does not contradict Paragraph 153.  In any event, Plaintiffs have abandoned their allegations concerning harm in their professional capacities as travel agents.

154.    Compensation: Pulfer charges her clients a flat service fee. She does not receive commissions from airlines, but does earn commissions from cruises and other tours. *Id.* at 56:25-57:14, 57:18-58:22.

> Plaintiff's Response No. 154:
>
> Undisputed.
>
> Defendants' Reply to Plaintiffs' Response No. 154:
>
> Undisputed and therefore admitted.  *See* L.R. 56.1.

155.    Articulated Harm: Pulfer testified that she believes mergers are harmful regardless of the context and that any merger in the airline industry is harmful. *Id.* at 96:12-23. Pulfer

describes her litigation history as "citizens against mergers" because she "just [does not] believe in mergers." *Id.* at 107:5-7. Pulfer testified that the harms from the merger are that prices will go up and flights and seating availability will be lower. *Id.* at 49:15-52:7. Pulfer also testified that she anticipated harm to her travel agency as a result of the merger, asserting that fewer people will book trips because airline costs will increase, and that the merger will generally harm travelers. *Id.* at 86:2-87:6, 127:5-128:16.

      a.     Pulfer drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. Pulfer wrote:

> The merger will reduce the number of low cost carriers, thus the major airlines will have one less to compete with. This will affect everyone flying as cost will increase overall as the low cost carriers reduce. It's a known fact: the more competitors, the more reasonable and fair pricing will be. This is true of all industries and supply chains.

Exhibit 71 at 4.

Plaintiff's Response No. 155:

Disputed.

Merging airlines will get rid of markets that they no longer fly to.

Alioto Dec Ex. 18 – Pulfer Dep. 50:20-21.

When a ULCC goes out of the market, that is one less player in the field, and airlines will raise their prices. Id. at 51:1-3.

If seats are removed, that means less availability for people to book on. Pulfer Dep. 51:9-11.

"Sometimes service goes down because there's not as many competitors in the field." Id. at 51:12-14.

"When you have a lot of competitors, you seem to keep—I don't know what the right word is 'integrity,' but you try to stay on top of things because you're a competitor. You want their business. The less competitors there are, you don't have to maintain their standards, or so they don't feel, and then it just hurts the consumers in general." Id. at 51:15-25.

"Consumers do not benefit when there's less amount of competitors in any given field." Id. at 53:18-20.

Defendants' Reply to Plaintiffs' Response No. 155:

Response No. 155 does not dispute any material aspect of Defendants' statement. The additional text does not create a genuine dispute of material fact.

**S.    Bill Rubinsohn**

156.    Flown Spirit: Rubinsohn has never flown Spirit. Exhibit 73 at 60:6-8, 76:7-10; Exhibit 74 at 3. Rubinsohn has never flown Spirit because Spirit has "[n]o schedules with -- with an opportunity for where [he] was going." Exhibit 73 at 63:13-15.

Plaintiff's Response No. 156:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 156:

Undisputed and therefore admitted.  See L.R. 56.1.

157.    Future Plans to Fly Spirit: Rubinsohn has no future Spirit flights booked, and has no concrete plans to fly Spirit. Id. at 98:18-99:5, 99:25-100:5 ("Q: So you don't have any plans to fly Spirit in the near future either? A: Correct.").

Plaintiff's Response No. 157:

Disputed.

Rubinsohn travels from his home airport of Philadelphia to Detroit to visit his three granddaughters at least three times per year. Alioto Dec Ex. 19 - Rubinsohn Dep. 53:6-14; Declaration of Plaintiff Rubinsohn in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Rubinsohn Dec.") ¶ 2. He has concrete plans to visit his family on this route in September 2023, December 2023, January 2024 and May 2024. Rubinsohn Dec. ¶ 2. He purchased the December 2023 roundtrip flight (December 7, 2023 to December 10, 2023) on Spirit Airlines. Id.

Rubinsohn is going to Florida in December 2024 for a cruise. Alioto Dec Ex. 19 - Rubinsohn Dep. 121:13-20.

Rubinsohn would consider flying Spirit and not exclude any airlines from consideration. Id. at 121:23-25.

Defendants' Reply to Plaintiffs' Response No. 157:

Does not create a genuine dispute of material fact.

Rubinsohn's statement that he would "consider" flying Spirit, including on future flights to Florida, are too speculative to confer standing. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiffs cannot contradict Rubinsohn's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

In any event, Philadelphia to Detroit is not a route identified by Plaintiffs' expert, Hal Singer, as a route that would potentially be impacted by the merger. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7.   Plaintiffs have no admissible evidence that the alleged route will be impacted by the merger.  To the extent the challenged route is a "Spirit-Only route," (which are not listed in the Singer Report), its inclusion does not raise a material dispute of fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

158.    Spirit Flights in Rog 8 Routes: Rubinsohn has not flown Spirit on any of the routes

Plaintiffs listed in response to Defendants' Interrogatory 8. *Id.* at 76:7-10; Exhibit 75 at 6-7;

Exhibit 76 at 9-10.

Plaintiff's Response No. 158:

Disputed.

Plaintiff has flown or intends to fly following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories (Set Two):

Philadelphia, PA to San Juan, PR (Roundtrip)

Detroit to New York City (Metropolitan Area)

Las Vegas to Miami (Metropolitan Area)

Miami (Metropolitan Area) to Philadelphia, PA

Philadelphia, PA to Detroit (Roundtrip)

Rubinsohn travels from his home airport of Philadelphia to Detroit to visit his three granddaughters at least three times per year. Alioto Dec Ex. 19 - Rubinsohn Dep. 53:6-14; Rubinsohn Dec., ¶ 2. He has concrete plans to visit his family on this route

in September 2023, December 2023, January 2024 and May 2024. Rubinsohn Dec., ¶ 2. He purchased the December 2023 roundtrip flight (December 7, 2023 to December 10, 2023) on Spirit Airlines. *Id.*

Philadelphia, PA to Miami (Roundtrip)

Rubinsohn is going to Florida in December 2024 for a cruise. Alioto Dec Ex. 19 - Rubinsohn Dep. 121:13-20.

(Alioto Dec Ex. . 67 - Plaintiff Rubinsohn's Second Supplemental responses to Defendants' Interrogatories (Set Two); Alioto Dec Ex. 43 - Plaintiff Rubinsohn's Responses to Defendants' Interrogatories (Set One).)

Defendants' Reply to Plaintiffs' Response No. 158:

Does not create a genuine dispute of material fact. Rubinsohn does not say that he flew Spirit on any of the above routes.

Plaintiffs cannot contradict Rubinsohn's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiff states that he "has flown or intends to fly" routes, but vague "intent" to fly is too speculative to confer standing. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Rubinsohn's purported travel on the Philadelphia-Detroit and Philadelphia-San Juan routes does not create a genuine dispute of material fact. Philadelphia-San Juan is not identified by Singer as a route that would potentially be impacted by the merger. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7. *See* Defendants' Reply to Plaintiffs' Response No. 36. The Philadelphia-Detroit route is also not listed as a potentially impacted route in Singer's Report, but appears in Plaintiffs' belatedly-served Interrogatory Responses and in the Singer Declaration. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7; Dkt. 185. Plaintiffs have no admissible evidence that the alleged route will be impacted by the merger. To the extent the challenged routes are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), its inclusion does not raise a material dispute of fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

Rubinsohn's purported future travel between Philadelphia and Miami is not supported by the record. Rubinsohn testified that he "will be going to Florida in December because we're taking a cruise. But that's not booked yet." Alioto Dec Ex. 19 at 121:13-20. He did not specify where in Florida he will go.

Plaintiffs do not offer a citation to the record for Rubinsohn's other purported future travel.

Rubinsohn is not identified as a trial witness. *Infra* ¶ 217.

159.   <u>Travel Agent</u>: Rubinsohn currently runs a travel agency, Rubinsohn Travel, which was started in 1992. Exhibit 73 at 17:10-23.

> <u>Plaintiff's Response No. 159:</u>
>
> Undisputed.
>
> <u>Defendants' Reply to Plaintiffs' Response No. 159</u>:
>
> Undisputed and therefore admitted. *See* L.R. 56.1.

160.   <u>Compensation</u>: Rubinsohn Travel charges a flat $40 service fee per airline ticket booked. *Id.* at 44:14-18, 44:22-24 ("Q: Okay. So [your service fee]'s not based on the cost of the flight in any way? Rubinsohn A: Nope."). These service fees account for less than 2 percent of Rubinsohn Travel's total revenue. *Id.* at 97:2-8. Rubinsohn Travel also takes commissions from certain airlines. *Id.* at 95:16-96:2.

> <u>Plaintiff's Response No. 160:</u>
>
> Undisputed.
>
> <u>Defendants' Reply to Plaintiffs' Response No. 160</u>:
>
> Undisputed and therefore admitted. *See* L.R. 56.1.

161.   <u>Articulated Harm</u>: Rubinsohn posited that the effect of the merger will be that, "if Spirit is gone, then the American Airlines price will probably go up." *Id.* at 100:6-14. Rubinsohn also testified that the merger would affect his business because the "number of people that [he] book[s] will probably go down if the prices of the air tickets go up," but could not say that with certainty. *Id.* at 52:9-25. Rubinsohn drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. Rubinsohn wrote:

> The elimination of competition will allow the remaining airlines to raise their base flight cost as they won't be worried about losing a significant number of passengers.

Exhibit 77 at 4.

Plaintiff's Response No. 161:

Disputed.

"Pending merger between JetBlue and Spirit will eliminate what amounts to a low-cost airline flying out of, in our particular case, Philadelphia, which, because of its prices, has made other airlines put aside less expensive seats so that they can match or pretend to match the cost of the low-cost carrier." *Id.* at 51:23-52:6.

If the merger happens, the number of people that he books will go down, and the prices of tickets will go up. *Id.* at 52:18-20.

American Airlines typically has higher fares than Spirit. *Id.* at 101:10-12.

Historically with other airline mergers, prices of tickets have gone up after the merger. *Id.* at 102:3-6.

"I do not see any benefit to a merger between two airlines for the traveling public." *Id.* at 108:21-23.

Defendants' Reply to Plaintiffs' Response No. 161:

Does not create a genuine dispute of material fact.  The additional text does not contradict or otherwise create a dispute of material fact as to Paragraph 161.

**T.    Sondra Russell**

162.    <u>Flown Spirit</u>: Russell has never flown on Spirit. Exhibit 78 at 42:23-43:4 Exhibit 79 at 3. She has not flown Spirit "because of the routing," meaning that the airline does not go to the destinations that she seeks to visit. Exhibit 78 at 43:8-44:7.

Plaintiff's Response No. 162:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 162:

Undisputed and therefore admitted.  *See* L.R. 56.1.

163.    <u>Future Plans to Fly Spirit</u>: Russell has no future Spirit flights booked, and has no concrete plans to fly Spirit. *Id.* at 44:16-45:18. Russell says that she has no Spirit "trips planned for the end of the year" but she speculates "can" fly Spirit "if the opportunity comes." *Id.* Russell typically books business class flights. *Id.* at 31:13–17.

Plaintiff's Response No. 163:

Disputed.

Plaintiff Russell plans on flying domestically in the future, including flights on Spirit airlines. Alioto Dec Ex. 20 – Russell Dep. 44:16-23; 70:10- 71:4.

Plaintiff Russell frequently travels from DFW to Fort Lauderdale, Miami, and Orlando. *Id.* at 18:6-14.

Spirit airlines will be included in Russell's future travel plans. *Id.* at 71:2-4.

Russell will not discount any airline when she books future trips for her clients. *Id.* at 71:11-14.

Defendants' Reply to Plaintiffs' Response No. 163:

Does not create a genuine dispute of material fact. Russel does not state that she has any Spirit flights booked, or concrete plans to fly Spirit.

Plaintiff Russell's statements that Spirit "will be included" in her "future travel plans" and that she will "not discount any airline" are too vague and speculative to support standing. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Russell's statement that she "frequently travels from DFW to Fort Lauderdale" is not responsive to the fact that Russell has not identified future plans to do so. Further, Dallas/Fort Worth to Fort Lauderdale is not listed as a route that may be impacted by the merger in Singer's Report, and Plaintiffs do not challenge Russell's other two routes, Dallas/Fort Worth to Miami and Orlando under any theory. *See* Defendants' Reply to Plaintiffs' Response No. 36. To the extent the challenged routes are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), its inclusion does not raise a material dispute of fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

164.   Spirit Flights in Rog 8 Routes: Russell has not flown Spirit on any of the routes

Plaintiffs listed in response to Defendants' Interrogatory No. 8. *Id.* at 42:23-43:4; Exhibit 80 at 6-

7, 11.

Plaintiff's Response No. 164:

Disputed.

Plaintiff has flown following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories (Set Two):

DFW-LGA/New York City Metropolitan Area (Roundtrip)

DFW-EWR/New York City Metropolitan Area (Roundtrip) DFW-FLL (Roundtrip)

Plaintiff Russell frequently travels from DFW to Fort Lauderdale, Miami, and Orlando. (Alioto Dec Ex. 20 - Russell Dep. at 18:6-14.)

(Alioto Dec Ex. 68 Plaintiff Russell's Second Supplemental responses to Defendants' Interrogatories (Set Two); Alioto Dec Ex. 44 - Plaintiff Russell's Responses and Objections to Defendants' Interrogatories (Set One), Exhibit A.)

Defendants' Reply to Plaintiffs' Response No. 164:

Does not create a genuine dispute of material fact.

Defendants object to Plaintiffs' reliance on untimely updates to fact discovery responses between August 10-18, 2023, over six weeks after the close of fact discovery.

Russell's claimed flights do not raise a dispute of material fact. Dallas-Miami, Dallas-Fort Lauderdale, and Dallas-Orlando are not identified in the Singer Report as routes that would potentially be impacted by the merger. *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7. Dallas-Fort Lauderdale appears in Plaintiffs' belatedly-served Interrogatory Responses and in the Singer Declaration. *See id.*; Dkt. 185. Plaintiffs have no admissible evidence that the alleged route will be impacted by the merger. To the extent the challenged routes are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), its inclusion does not raise a material dispute of fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

165. <u>Travel Agent</u>: Russell has been the sole owner of Sandy's Getaway Travel since 1984. Exhibit 78 at 14:19-15:4, 47:8-10.

Plaintiff's Response No. 165:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 165:

Undisputed and therefore admitted. *See* L.R. 56.1.

166. <u>Compensation</u>: Russell's travel agency used to charge a $30 service fee for each flight booked. *Id.* at 59:3–15. Russell's travel agency stopped issuing airlines tickets at the end of 2022, however, and has no plans to resume issuing tickets because it is "time- consuming" and

"not cost-effective." *Id.* at 58:5–22, 59:3–15. Accordingly, if airline ticket prices go up, it would not affect her agency. *Id.* at 60:10–16.

> ### Plaintiff's Response No. 166:
>
> Disputed as to whether her agency will be affected if airline ticket prices go up.
>
> Customers will have less choices and be limited on who they fly with. Alioto Dec Ex. 20 – Russell Dep. 61:5-7.
>
> If people lose their jobs due to the merger, they won't have any money to travel. *Id.* at 61:17-20.
>
> ### Defendants' Reply to Plaintiffs' Response No. 166:
>
> Does not create a material dispute of fact.  The additional allegations are too speculative to support standing.  *See* Defendants' Reply to Plaintiffs' Response No. 27.  Plaintiffs have abandoned their allegations that the merger will result in harm to them in their professional capacities by failing to pursue these claims in discovery or defend them in their Opposition.

167.    <u>Articulated Harm</u>: Russell claims that the merger will cause ticket prices to rise, eliminate consumer choice and competition, and eliminate jobs for airline employees. *Id.* at 59:21–61:21. She agreed that increased ticket prices would not affect her agency because her agency does not currently issue tickets. *Id.* at 60:10–16. Russell stated that she commenced all of the prior airline-related merger litigations for the "same" reasons she is challenging the instant merger: injury to clients, price increases, and reduction in choices. *Id.* at 68:4–69:8. Russell drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. Russell wrote:

> I feel that this merger will result in fewer, limited route choices which will make ticket prices go up. Carriers will no longer be classified as low cost carriers.

Exhibit 81 at 4.

> ### Plaintiff's Response No. 167:
>
> Disputed.

Airline ticket prices would go up in this merger happens and competition is going to be deleted. Alioto Dec Ex. 20 – Russell Dep. 60:1-3.

It will not only affect Russell, but people will lose their jobs such as ticket agents and baggage handlers. *Id.* at 60:4-9.

Customers will have less choices and be limited on who they fly with. *Id.* at 61:5-7.

If people lose their jobs due to the merger, they won't have any money to travel. *Id.* at 61:17-20.

Defendants' Reply to Plaintiffs' Response No. 167:

Does not create a material dispute of fact. The additional allegations are too speculative to support standing. *See* Defendants' Reply to Plaintiffs' Response No. 27.

**U.   June Stansbury**

168.   June Stansbury passed away on February 14, 2023. *See supra* ¶ 26.

Plaintiff's Response No. 168:

[No response.]

Defendants' Reply to Plaintiffs' Response No. 168:

Plaintiffs did not respond to this statement of fact. Pursuant to Local Rule 56.1, this fact is deemed admitted because Plaintiffs did not respond. *See* Defendants' Reply to Plaintiffs' Response No. 26.

169.   On May 19, 2023, Plaintiffs' counsel notified Defendants that Stansbury had "recently passed away." Exhibit 6. Plaintiffs' counsel has not filed any notice of death on the docket, and did not move for substitution of the proper party within 90 days following Ms. Stansbury's death as required to avoid dismissal under Fed. R. Civ. P. 25.

Plaintiff's Response No. 169:

[No response.]

Defendants' Reply to Plaintiffs' Response No. 169:

Plaintiffs did not respond to this statement of fact.  Pursuant to Local Rule 56.1, this fact is deemed admitted because Plaintiffs did not respond.  *See* Defendants' Reply to Plaintiffs' Response No. 26.

170.    Plaintiffs' counsel has not filed any notice of death on the docket, and did not move for substitution of the proper party within 90 days following Ms. Stansbury's death as required to avoid dismissal under Fed. R. Civ. P. 25.[8]

Plaintiff's Response No. 170:

[No response.]

Defendants' Reply to Plaintiffs' Response No. 170

Plaintiffs did not respond to this statement of fact.  Pursuant to Local Rule 56.1, this fact is deemed admitted because Plaintiffs did not respond.  *See* Defendants' Reply to Plaintiffs' Response No. 26.

**V.     Clyde Stensrud.**

171.    Flown Spirit: Stensrud has never flown Spirit. Exhibit 82 at 41:23-42:2, 46:2-3; Exhibit 83 at 3.

Plaintiff's Response No. 171:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 171:

Undisputed and therefore admitted.  *See* L.R. 56.1.

172.    Future Plans to Fly Spirit: Stensrud has no future Spirit flights booked, and has no concrete plans to fly Spirit. Exhibit 82 at 46:2-18. Stensrud says that "when [he] can retire," he

---

[8] Plaintiffs' Opposition to Defendants' Statement of Undisputed Material Facts omitted Defendants' Paragraph No. 170, which resulted in numbering errors for all subsequent paragraphs. For consistency and ease of reference, Defendants have re-included Paragraph No. 170 to ensure all paragraph numbers herein are consistent with Defendants' Statement of Undisputed Facts. Plaintiffs' Responses have not been altered except to correct the paragraph numbers.

would like "the ability to use an airline like Spirit" to fly to "locations"— without specifying which cities he intends to fly Spirit to. *Id.*

Plaintiff's Response No. 172:

Disputed.

Stensrud intends to fly Spirit in the future, especially when he retires. Alioto Dec Ex. 21 – Stensrud Dep. 46:4-13.

"I intend to book Spirit in the future to go to different cities that they go to." *Id.* at 46:17-18.

Stensrud has no current tickets but he intends to fly with them in the future. *Id.* at 47:14-17.

Plaintiff Stensrud plans to fly to Phoenix, Las Vegas, and San Diego to go golfing once he retires. (*Id.* at 48:16-24.) He has plans to fly from Las Vegas to Los Angeles in late fall 2023 and January 2024 to golf. Declaration of Clyde Stensrud in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Stensrud Dec." ¶2).

Defendants' Reply to Plaintiffs' Response No. 172:

Does not create a genuine dispute of material fact. Plaintiff does not dispute that he has no future Spirit flights booked, and has no concrete plans to fly Spirit.

Plaintiffs cannot contradict Stensrud's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Stensrud's statements that he "intend[s] to book Spirit in the future to go to different cities," that he "intends to fly with [Spirit] in the future" and that he plans to "fly to Phoenix, Las Vegas, and San Diego to go golfing" are too vague and speculative to support standing or irreparable injury. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Stensrud's statement that he plans to "fly from Las Vegas to Los Angeles for the golf trip[s]" in late fall 2023 and January 2024, issued in a declaration attached to summary judgment, is inconsistent with his deposition testimony and cannot be credited. *See* Defendants' Reply to Plaintiffs' Response No. 27.

173.   <u>Spirit Flights in Rog 8 Routes</u>: Stensrud has never flown Spirit on any of the routes listed in Plaintiffs' response to Defendants' Interrogatory No. 8. *Id.* at 41:23- 42:2; Exhibit 84 at 6-7; Exhibit 85 at 6-7.

> <u>Plaintiff's Response No. 173:</u>
>
> Disputed.
>
> Plaintiff has flown following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories
>
> (Set Two):
>
> Las Vegas to Los Angeles (Metro Area)
>
> He has plans to fly from Las Vegas to Los Angeles in late fall 2023 and January 2024 to golf. Stensrud Dec. ¶2.
>
> (Alioto Dec Ex. 69 Plaintiff Stensrud's Second Supplemental responses to Defendants' Interrogatories (Set Two); Stensrud Dec. ¶2.)
>
> <u>Defendants' Reply to Plaintiffs' Response No. 173:</u>
>
> Does not create a genuine dispute of material fact. Stensrud does not state that he has flown Spirit on any of the identified routes.
>
> Plaintiffs cannot contradict Stensrud's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.
>
> Defendants object to Plaintiffs' reliance on untimely updates to fact discovery responses between August 10-18, 2023, over six weeks after the close of fact discovery.
>
> Stensrud's statement that he "has plans" to fly to Los Angeles "to golf" is too vague and speculative to support standing. *See* Defendants' Reply to Plaintiffs' Response No. 27.
>
> Plaintiffs cannot contradict Stensrud's statements in his deposition and interrogatory answers with belatedly filed declarations. *See* Defendants' Reply to Plaintiffs' Response No. 27. For example, Plaintiff Stensrud's declaration that he plans to "fly from Las Vegas to Los Angeles for the golf trip[s]" in late fall 2023 and January 2024 to golf, is inconsistent with his prior deposition testimony. *Compare* Def's Ex. 82 at 46:2-18 (not identifying any specific travel plans). In any event, Las Vegas to Los Angeles is not identified by Singer as a route that would potentially be impacted by the merger. *See* Singer Report ¶¶ 60-62; App'x 3,

Tables A3.2, A3.3, A3.6, A3.7 (not listing Las Vegas to Los Angeles). *See* Defendants' Reply to Plaintiffs' Response No. 36.

Stensrud is not identified as a trial witness. *Infra* ¶ 217.

174.    <u>Travel Agent</u>: Stensrud has never worked as a travel agent. Exhibit 83 at 3-4. He has worked in the construction industry for his entire career and he is also the sole owner of a travel agency, Executive Travel Consultants (ETC) Holdings. Exhibit 82 at 15:2-24. Despite being the sole owner of ETC Holdings, he did not know how many employees it had, how much money it made in the last year, how many customers it served, or how much money he received as a result of his ownership. *Id.* at 21:7-22 ("Q: And you have no knowledge of the total income or revenue [your travel agency] receives? Stensrud A: Correct."). Stensrud did not have any knowledge of how the merger would impact his agency. *Id.* at 50:21-25.

a.      Stensrud produced no documents reflecting his travel agency's financials or sales, despite agreeing to do so. Wright Decl. ¶ 4.

<u>Plaintiff's Response No. 174:</u>

Disputed as to never working as a travel agent.

Stensrud is also the sole owner of a travel agency, Executive Travel Consultants (ETC) Holdings. Alioto Dec Ex. 21. - Stensrud Dep. 15:22-24.

Stensrud's father and sister worked for the company. His sister is a travel agent. *Id.* at 16:23-24.

Stensrud's initial investment in ETC was $10,000. *Id.* at 25:14-16.

ETC charges a service fee for booking flights. *Id.* at 26:20-23.

ETC originally started with Stensrud, his father, and sister operating it. His sister was primarily operating it. He put in money to help her as a silent investor. He eventually bought her out, and owns it 50/50 with another individual. He is more of a silent partner. *Id.* at 31:23-25; 32:1-20.

<u>Defendants' Reply to Plaintiffs' Response No. 174:</u>

Does not create a genuine dispute of material fact. Plaintiffs have abandoned their allegations that the merger will result in harm to them in their professional

capacities by failing to pursue these claims in discovery or defend them in their opposition.

175.  <u>Compensation</u>: Stensrud said he thought ETC "charge[s] for some booking fees," but does not know if ETC charges fees for every booking or how much that booking fee is. Exhibit 82 at 26:23-27:9. Stensrud does not know how much overall revenue is generated by his travel agency, what the total revenue or yearly income is, or any other relevant details of how ETC is run. *Id.* at 19:19-29:2.

<u>Plaintiff's Response No. 175:</u>

Undisputed.

<u>Defendants' Reply to Plaintiffs' Response No. 175:</u>

Undisputed and therefore admitted.  *See* L.R. 56.1.

176.  <u>Articulated Harm</u>: Stensrud was unable to cite any specific harm from the merger, beyond being unable to fly Spirit in the future "to the cities that they currently go to." *Id.* at 46:19-47:6. Stensrud drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. Stensrud wrote:

> I feel that this merger will result in higher air fares, more add-on fees, and less availability of flights.

Exhibit 86 at 4.

<u>Plaintiff's Response No. 176:</u>

Disputed.

If Spirit was unavailable due to the merger, he would not be able to fly with Spirit to the cities that he wants to fly to. *Id.* at 47:1-6. Stensrud does want to fly with Spirit in the future. *Id.* at 46:4-13.

<u>Defendants' Reply to Plaintiffs' Response No. 176:</u>

Does not create a genuine dispute of material fact.

Stensrud's vague "intent" to fly Spirit is too speculative to confer standing.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

### W.    Gary Talewsky

177.   <u>Flown Spirit</u>: Talewsky has never flown Spirit. Exhibit 87 at 45:16-18. Talewsky booked a Spirit flight in 2017, but that flight was cancelled and he traveled the same route on a different airline. *Id.* at 64:21-65:12, 66:23-67:18.

> <u>Plaintiff's Response No. 177</u>:
>
> Undisputed.
>
> <u>Defendants' Reply to Plaintiffs' Response No. 177</u>:
>
> Undisputed and therefore admitted.  *See* L.R. 56.1.

178.   <u>Future Plans to Fly Spirit</u>: Talewsky has no future Spirit flights booked, and has no concrete plans to fly Spirit. *Id.* at 64:21-65:4, 65:18-24. Talewsky expressed interest in flying Spirit in the fall, but he does not "know the dates yet" and has not booked his flights. *Id.* at 65:15-22. When asked how the merger would affect him, Talewsky acknowledged he does "[n]ot . . . personally fly Spirit." *Id.* at 45:16-17.

> <u>Plaintiff's Response No. 178</u>:
>
> Disputed.
>
> Talewsky intends on flying Spirit in the future. Alioto Dec Ex. 22 - Talewsky Dep. 65:18-20.
>
> Plaintiff Talewsky flies from West Palm, Fort Lauderdale, or Miami to Rhode Island often. (*Id.* at 55:23-56:10.) He also flies to Las Vegas for annual meetings. (*Id.*)
>
> Talewsky plans to travel from West Palm Beach or Fort Lauderdale to Atlantic City on Spirit to visit his friends in October 2023. *Id.* at 66:15-19; Declaration of Gary Talewsky in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Talewsky Dec.") ¶2.
>
> <u>Defendants' Reply to Plaintiffs' Response No. 178</u>:
>
> Does not create a genuine dispute of material fact.  Talewsky does not state that he has future flights booked on Spirit.

Plaintiffs cannot contradict Talewsky's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

Talewsky's statement that he "intends" or "would certainly consider" flying Spirit "in upcoming travel" is too speculative to support standing.  Plaintiffs cannot rely on vague, unformed statements that they "intend" to fly at some point in the future.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

Talewsky's purported future travel from West Palm Beach, Fort Lauderdale, or Miami to Rhode Island and Atlantic City are not identified by Singer as routes that would potentially be impacted by the merger.  *See* Singer Report ¶ ¶ 61-62, App'x 3, Tables A3.2, A3.3, A3.6, A3.7.  Plaintiffs have no admissible evidence that the alleged routes will be impacted by the merger.  To the extent West Palm Beach, Fort Lauderdale, or Miami to Atlantic City are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), their inclusion does not raise a material dispute of fact because there is no cognizable theory of harm articulated on those routes.  *See* Defendants' Reply to Plaintiffs' Response No. 36.

179.  <u>Spirit Flights in Rog 8 Routes</u>: Talewsky has not flown Spirit on any of the routes

Plaintiffs listed in response to Defendants' Interrogatory 8. *Id.* at 64:21-65:12; Exhibit 88 at 7-11.

> <u>Plaintiff's Response No. 179:</u>
>
> Disputed.
>
> Plaintiff has flown or intends to fly following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories (Set Two):
>
> BOS-MCO (Roundtrip)
>
> BOS-LAS (Roundtrip)
>
>> Talewsky flies to Las Vegas for annual meetings. (Alioto Dec Ex. 22 - Talewsky Dep. 55:23-56:10.) He recently flew this route for an annual meeting from August 8, 2023 to August 13, 2023. (Talewsky Dec. ¶2.)
>
> MIA-PHL;
>
> PBI-LGA (Roundtrip)
>
> PBI-BOS (Roundtrip)
>
> FLL-BOS (Roundtrip)

BOS-LAS (Roundtrip)

BOS-MIA (Roundtrip)

BOS-MCO (Roundtrip)

BOS-ACY

PBI-ACY (Roundtrip)

> Talewsky plans to travel from West Palm Beach or Fort Lauderdale to Atlantic City on Spirit to visit his friends in October 2023. Alioto Dec Ex. 22 – Talewsky Dep. 66:15-19; Talewsky Dec. ¶2.

PBI-PVD

> Talewsky flies this route often. Alioto Dec Ex. 22 - Talewsky Dep. 55:23-56:10

FLL-LAS

> Talewsky's home airport is Fort Lauderdale. *Id.* at 55:13-19. Talewsky flies to Las Vegas for annual meetings. *Id.* at 55:23- 56:10.

(Alioto Dec Ex. 70 - Plaintiff Talewsky's Second Supplemental responses to Defendants' Interrogatories (Set Two); Alioto Dec Ex. 46 - Plaintiff Talewsky's Responses to Defendants' Interrogatories (Set One);)

Defendants' Reply to Plaintiffs' Response No. 179:

Does not create a genuine dispute of material fact.

Plaintiffs cannot rely on statements that Talewsky "plans" to fly, as these statements are too speculative to confer standing and not responsive to the identified fact in Paragraph 178. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiffs cannot contradict Talewsky's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *Id.*

To the extent Plaintiff Talewsky claims to have flown on the BOS-ACY, PBI-ACY, and FLL-LAS routes do not appear in the cited document, and Plaintiffs have therefore introduced no evidence that Talewsky took these flights. Talewsky's flights on the route BOS-MCO occurred in 2016, and are therefore too outdated to confer standing. Talewsky can offer no information about his purported flight from MIA-PHL beyond a bare statement that he took that flight. Except for BOS-MIA, Talewsky has flown the other challenged routes at most three times during the relevant period of time. None of Talewsky's flights were on Spirit. This is too

attenuated to confer standing as a matter of law.  *See* Defendants' Reply to Plaintiffs' Response Nos. 27, 36.

Plaintiffs' listed route of Palm Beach-Rhode Island is not listed as a potentially impacted route in Singer's Report as a route that would potentially be impacted by the merger.  *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7; Defendants' Reply to Plaintiffs' Response No. 36.

Talewsky is not identified as a trial witness.  *Infra* ¶ 217.

180.    <u>Travel Agent</u>: Talewsky sells travel agent services as an independent contractor for Direct Travel. Exhibit 87 at 13:20-25. Talewsky earns 80% of his compensation from commissions generated from selling trips, and also charges services fees for airline tickets booked for clients, receiving 80% of the service fees charged. *Id.* at 34:12-22, 35:19-24; *see id.* at 35:25-36:3 ("Q: Does the service fee differ by airline or is it the same across airlines? Talewsky A: No, it's usually pretty much the same."). Talewsky explained there was no connection between his domestic tickets prices and his compensation, but he may receive commission from certain airlines for international flights. *Id.* at 49:3-13.

<u>Plaintiff's Response No. 180:</u>

Undisputed.

<u>Defendants' Reply to Plaintiffs' Response No. 180:</u>

Undisputed and therefore admitted.  *See* L.R. 56.1.

181.    <u>Articulated Harm</u>: Talewsky testified that the merger would impact his business because people would choose to travel less due to higher prices, reduced flight schedules, worse customer service, and devalued loyalty programs. *Id.* at 40:17-41:1, 47:18-22. In his personal capacity, and as a JetBlue frequent flyer, he asserted that eliminating Spirit would cause his JetBlue ticket prices to increase. *Id.* at 45:23-46:5. He also testified that if "JetBlue and Spirit dominate the market, then they merge, prices go up . . . less people could travel." *Id.* at 51:11-18. Talewsky

drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. Talewsky wrote:

> I feel that this merger will result in poor service, especially customer service, less choice for flight options, higher prices, and a devalued frequent flyer program. Historically this has happened every time there is a merger. As time passes prices go up and flight choices go down. Frequent Flyers with status see their perks slowly disappear and mileage requirements for frequent flyer awards go way up.

Exhibit 89 at 4.

> Plaintiff's Response No. 181:
>
> Disputed.
>
> The merger will devastating because there will be less competition, higher prices, and the level of customer service will decrease. Talewsky Dep. 40:20-24.
>
> Anyone tied into a loyalty program will be devalued. *Id.* at 40:22-23.
>
> Jobs within the industry are lost. *Id.* at 40:24-25.
>
> Regarding loyalty members being devalued: "I mean, you know, don't forget that when, you know, we had the major legacy carriers, and US Air was one -- although they're a legacy carrier, they also offered a -- lower price points. For instance, if a businessman was flying last minute Boston- LA, the nonstop price is probably about $2300 in economy, where US Air would also offer alternatives back then with maybe one stop, last minute would be $800. So once American took them over – that's just one example – there went that major option." *Id.* at 41:14-20.
>
> Less people will travel if ticket prices go up too high. *Id.* at Dep. 42:4-7.
>
> Less competition means prices will go up, and that means fewer people are likely to book tickets to other types of travel that they have to fly to, such as cruises. *Id.* at 42:8-16.
>
> Talewsky personally flies JetBlue up and down the east coast. With the merger, if Spirit is no longer an option, JetBlue prices will rise. *Id.* at 13- 22.
>
> Frequent Flier program benefits are going to go down as they historically have. *Id.* at 46:10-12.
>
> Personally, it will affect Talewsky's business because prices will go higher, there will be less choice, less desirable schedules, less people will travel, hence Talewsky's income will drop. *Id.* at 47:18-22.
>
> The merger will mean there are less desirable schedules. *Id.* at 47:20-21.

"If JetBlue and Spirit dominate the market, then they merge, prices go up, then the option is pay, say, 500 a ticket to go nonstop or go on another carrier and maybe pay 350 but change planes and worry about your bags arriving and getting on the cruise ship in time if there's a delay, yes, I think, in my experience, less people could travel." *Id.* at 51:11-18.

If there is competition in a market, prices tend to be lower. *Id.* at 74:6- 9.

The problem with mergers, especially in the airline industry, is that it gives the consumer less choices, higher prices, poor customer service, and devalues frequent flier programs. That is why Talewsky got involved in this litigation. *Id.* at 88:9-15.

If the merger were to take place, higher prices will prevail, and since the economy is likely to go down, more people will only be able to afford to fly on a Spirit airlines carrier. *Id.* at 96:4-9.

If Spirit is not around, a lot of people will not be able to afford to travel.  It is very important to keep Spirit as a separate entity. *Id.* at 96:10-15.

Defendants' Reply to Plaintiffs' Response No. 181:

Does not create a material dispute of fact.  Plaintiffs have abandoned their allegations concerning harm in their professional capacities by failing to introduce evidence of such harm, and by failing to respond to Defendants' briefing on this point.

## X.     Pamela Ward

182.    <u>Flown Spirit</u>: Ward has never flown Spirit. Exhibit 90 at 48:22-49:3, 65:15-18; Exhibit 91 at 3.

Plaintiff's Response No. 182:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 182:

Undisputed and therefore admitted.  *See* L.R. 56.1.

183.    <u>Future Plans to Fly Spirit</u>: Ward has no future Spirit flights booked, and has no concrete plans to fly Spirit. Exhibit 90 at 65:19-68:5. Ward said she would "love to fly on Spirit," but only "if they have a flight offered on a route that [she's] planning to take" and that Spirit generally "has not been on the route that [she's] traveling on." *Id.*

<u>Plaintiff's Response No. 183:</u>

Disputed.

Ward books many Spirit flights for her customers. Alioto Dec Ex. 23 – Ward Depo. 31:23-25.

Ward would consider all airlines to fly on. *Id.* at 57:14-16.

Ward is planning to travel a lot more in the future than she has in the past. *Id.* at 68:3-5. Fare is one of the most important factors when Ward books a flight. *Id.* at 71:9-12.

Ward has had medical issues that prevented her from traveling more in the past, but she will be traveling more in the future now that she feels better. *Id.* at 88:13-23.

Ward frequently flies from Sarasota to Dallas Fort Worth as well as Las Vegas. *Id.* at 44:7-21.

Other cities she frequently travels to include Las Vegas, several places in the Caribbean, including St. Martin and San Juan. *Id.* at 44:16- 21.

Plaintiff has plans to travel from Tampa to San Juan on March 9, 2024 and return to Tampa on March 17, 2024. Declaration of Pamela Ward in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Ward Dec.") ¶2.

The purpose of the travel is to take a cruise with her family for spring break. She would prefer to book Spirit for this flight. *Id.*

<u>Defendants' Reply to Plaintiffs' Response No. 183:</u>

Does not create a material dispute of fact. Ward does not contest that she has no future Spirit flights booked, or concrete plans to fly Spirit.

Plaintiffs cannot contradict Ward's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiffs have abandoned their allegations concerning harm in their professional capacities by failing to introduce evidence of such harm, and by failing to respond to Defendants' briefing on this point.

Ward's statements concerning her plans to "travel a lot more in the future" are too speculative to support standing or imminent injury. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Ward's flights from Sarasota to Las Vegas and Dallas Fort Worth do not introduce a dispute of material fact.  Sarasota to Las Vegas and Dallas Fort Worth are not

identified by Singer as subject to anticompetitive harms from the merger.  *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7; Defendants' Reply to Plaintiffs' Response No. 36.

184.   <u>Spirit Flights in Rog 8 Routes</u>: Ward has not flown Spirit on any of the routes Plaintiffs listed in response to Defendants' Interrogatory 8. Exhibit 91 at 3; Exhibit 97 at 48:22–49:3; Exhibit 92 at 7.

<u>Plaintiff's Response No. 184:</u>

Disputed.

Plaintiff intends to fly the following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories (Set Two):

Tampa to San Juan (roundtrip)

Plaintiff has plans to travel from Tampa to San Juan on March 9, 2024 and return to Tampa on March 17, 2024. Ward Dec. ¶2.

SRQ-DFW (roundtrip)

The closest airport to Plaintiff Ward's primary residence is Sarasota International. Alioto Dec Ex. 22 - Ward Dep. 44: 5-6. Plaintiff Ward frequently flies to Dallas Forth Worth to visit family members. (*Id.* at 44:7-15.)

SRQ-LAS (roundtrip)

Plaintiff Ward frequently travels to Las Vegas. *Id.* at 44:16-21.

(Alioto Dec., Ex. 71 - Plaintiff Ward's Second Supplemental responses to Defendants' Interrogatories (Set Two).)

<u>Defendants' Reply to Plaintiffs' Response No. 184</u>:

Does not create a genuine dispute of material fact.  Plaintiffs' response does not actually dispute any material aspect of Defendants' statement that Ward *has not* flown on the challenged routes.

Plaintiffs cannot contradict Ward's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiffs' stated "future" flight from SRQ-LAS and SRQ-DFW are not routes which Singer has listed as potentially impacted routes, and appears only in Plaintiffs' belatedly-served Interrogatory Responses.  *See* Singer Report ¶¶ 60-62;

App'x 3, Tables A3.2, A3.3, A3.6, A3.7. Plaintiffs have no admissible evidence that the alleged route will be impacted by the merger. To the extent the challenged routes are "Spirit-Only route," (which are not listed in the Singer Report), their inclusion does not raise a material dispute of fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

Ward is not identified as a trial witness. *Infra* ¶ 217.

185.  <u>Travel Agent</u>: Ward opened her own travel agency in 1985. Exhibit 90 at 14:18-21. Although Ward's agency is still in business today, Ward has been "semiretired" for the last five years and is "in the process of retiring." *Id.* at 15:10-15.

Plaintiff's Response No. 185:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 185:

Undisputed and therefore admitted. *See* L.R. 56.1.

186.  <u>Compensation</u>: When booking travel, Ward's agency would receive a scaling fee based on the price of the ticket. *Id.* at 32:24-34:25. Ward testified that because she was retiring, the merger would have no impact on her income. *Id.* at 41:5-12, 42:21- 23.

Plaintiff's Response No. 186:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 186:

Undisputed and therefore admitted. *See* L.R. 56.1.

187.  <u>Articulated Harm</u>: When asked how the merger would harm her personally, Ward testified that the merger would "limit the choice[s]" available to the public, and result in eliminated routes, reduced flights and service, and "fewer flights." *Id.* at 38:18-39:23. When asked how the merger would harm her business, Ward testified that the merger would have "negative effects" as a result of reduced choice, less competition, and higher fares. *Id.* at 39:25-41:4. Ward drafted an

146

individualized response to Interrogatory 7, in addition to the response which was identical for all

Plaintiffs. *See supra* ¶ 35. Ward wrote:

> In sum, the elimination of competition due to the merger of JetBlue and Spirit would cause the following injury to myself and to all air travelers: (1) The likelihood of increased fares; (2) The likelihood of decreased customer service; (3) The likelihood of fewer flight choices; (4) The likelihood of fewer route options.

Exhibit 93 at 4.

> Plaintiff's Response No. 187:
>
> Disputed.
>
> The merger will have a very highly negative impact on Ward and her clients with travelers. Alioto Dec Ex. 22 - Ward Dep. 38:14-17.
>
> Jobs will be eliminated. *Id.* at 39:13-14.
>
> Ward believes routes will be eliminated. *Id.* at 39:14-15.
>
> Ward believes service is going to be decreased across the board. *Id.* at 39:15-16.
>
> Ward believes there will be hidden fares, for seats, bags, anything that you have to pay an extra fee for. There will likely be fewer flights and fares will go up. *Id.* at 39:16-21.
>
> The merger will create very harmful features for the public and anyone who is traveling. *Id.* at 39:22-23.
>
> Regarding her personal business, Ward says the effects of the merger will have a negative effect for the same reason because businesses like choices. People like choices. Choices are being eliminated and soon there will only be one airline. *Id.* at 40:12-17.
>
> Ward says that competition is good. It makes people and businesses better. Airlines strive to be better when they are competing with another airline. When competition is eliminated, businesses can do whatever they want and can charge any fees that they want. *Id.* at 40:18-25; 41:2.
>
> The merger will affect Ward immensely. It limits choice. Competition is gone. The public, including Ward, has little to no choice over who to fly.  Her friends and clients won't have a choice. The routes would be eliminated. Service will be reduced. Fares will go up. *Id.* at 67:13-20.

Ward says mergers like this happen often and there will be fewer flights that she is able to take. *Id.* at 67:19-20.

Harm will come from the merger and she is trying to prevent it from happening. *Id.* at 67:21-23.

If the merger occurs, routes will be cut, people will lose their jobs. Service is going to go down. There will be fewer flights. And fares will go up. *Id.* at 73:25-74:4.

There is a loss of choice and whatever airlines are left can decide the price. If airlines don't have competition, they are going to charge whatever they want. *Id.* at 74:5-10.

The elimination of competition will be harmful for everyone. *Id.* at 75:4-7.

As an American, we should have the freedom to choose which airline we book. This merger will make it difficult to have any sort of choice. *Id.* at 75:20-24.

Ward would be happy if the merger was unsuccessful, even if she received no compensation. *Id.* at 76:10-15.

<u>Defendants' Reply to Plaintiffs' Response No. 187</u>:

Does not create a genuine dispute of material fact.  The additional cited text does not introduce a dispute of material fact.

Plaintiffs' Response No. 186 speculates about the mergers' impact on others, including airline employees, Ward's "travelers," and the general public. Plaintiffs do not have standing to bring derivative claims on behalf of others.  *See California v. Am. Stores Co.*, 495 U.S. 271, 296 (1990) (requiring a private antitrust litigant to "prove threatened loss or damage to his own interests" in order to have standing to obtain relief) (internal quotations and citations omitted); *United States v. Borden*, 347 U.S. 514, 518 (1954) (while the "Government seeks its injunctive remedies on behalf of the general public; the private plaintiff, though his remedy is made available pursuant to public policy as determined by Congress, may be expected to exercise it only when ***his personal interest*** will be served") (emphasis added); *Sullivan v. Tagliabue*, 828 F. Supp. 114, 120 (D. Mass. 1993) (in § 4 damages case, injuries "merely derivative of [another's] are too indirect and tangential to support [an] individual action"), *aff'd*, 25 F.3d 43 (1st Cir. 1994).

Plaintiffs' Response No. 186's reference to Ward's travel agent business does not raise a dispute of material fact because Plaintiffs have abandoned their claims of harm in their professional capacities by failing to put forth any admissible record evidence that the merger will cause them professional harm.

188.   <u>Miscellaneous</u>: Today, Ward's travel agency exclusively books travel for "one major corporate account." Exhibit 90 at 16:6-13.

Plaintiff's Response No. 188:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 188:

Undisputed and therefore admitted. *See* L.R. 56.1.

**Y.    Christine Whalen**

189.    Flown Spirit: Whalen has never flown Spirit. Exhibit 94 at 62:5-7, 92:1-3; Exhibit

95 at 3.

Plaintiff's Response No. 189:

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 189:

Undisputed and therefore admitted. *See* L.R. 56.1.

190.    Future Plans to Fly Spirit: Whalen has no future Spirit flights booked, and has no

concrete plans to fly Spirit. Exhibit 94 at 92:1-24, 103:1-21. Whalen said "[she] would like to

experience Spirit since she has never" flown Spirit before" and that she "would like to try Spirit"

and she "would love to" fly Spirit, even though she has not selected any routes or locations she

intends to travel to on Spirit. *Id.* at 102:15-21. She indicated that Spirit is "certainly going to be a

consideration if it all lines up." *Id.* at 92:4- 93:25.

Plaintiff's Response No. 190:

Disputed.

Whalen would consider all airlines when booking future travel. Alioto Dec Ex. 24 - Whalen Dep. 76:8-10.

Whalen would check all airlines out when deciding which airline to fly. *Id.* at 81:16- 17.

Whalen does not necessarily prefer extra leg room or greater comfort when flying. *Id.* at 83:10-15.

149

Whalen would not necessarily book a seat ahead of time or pay extra for a seat. If it's an option to not book a seat in advance, she would do that. *Id.* at 83:17-25.

Whalen would consider all airlines. *Id.* at 84:4-9.

Whalen would love to fly Spirit because they go where she wants to go. *Id.* at 92:4-6.

"I would like to experience Spirit since I have never. It's certainly going to be a consideration if it all lines up." *Id.* at 92:22-24.

Whalen liked Spirit's website and they are worth considering taking in the future. *Id.* at 103:3-13.

Spirit's fares looked very reasonable when Whalen checked the website. *Id.* at 104:1-3.

Whalen wants to visit New York City because she has never been. *Id.* at 53:9-11. She is planning on flying from New Orleans to New York City in January 2024. Declaration of Christine Whalen in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Whalen Dec.") ¶2.

Whalen also has family in the Tampa area that she would like to visit. *Id.* at 53:13-16. She is planning on flying from New Orleans to Tampa in November 2023 to celebrate a family member's birthday and her wedding anniversary. Whalen Dec. ¶2.

Defendants' Reply to Plaintiffs' Response No. 190:

Does not create a genuine dispute of material fact. The cited material does not suggest that Whalen has future Spirit flights booked, or has concrete plans to fly Spirit.

Whalen's statements that she would "consider" flying Spirit, that Spirit's fares "looked very reasonable" and are "worth considering taking" and the like are too speculative to confer standing or demonstrate injury. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiffs cannot contradict Whalen's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery. *See* Defendants' Reply to Plaintiffs' Response No. 27.

Whalen's statement that she is planning on flying New Orleans to Tampa does not raise a dispute of material fact. New Orleans to Tampa is not listed as a potentially impacted route in Singer's report, and appears only in Plaintiffs' belatedly-served Interrogatory Responses. See Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7. Plaintiffs have no admissible evidence that the alleged route will be impacted by the merger. To the extent the challenged routes

are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), its inclusion does not raise a material dispute of fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

191.    <u>Spirit Flights in Rog 8 Routes</u>: Whalen has not flown Spirit on any of the routes Plaintiffs listed in response to Defendants' Interrogatory 8. Exhibit 96 at 7; Exhibit 97 at 7; Exhibit 94 at 92:1-3.

> <u>Plaintiff's Response No. 191:</u>
>
> Disputed.
>
> Plaintiff has flown following routes, which have been identified in Plaintiff's Second Supplemental responses to Defendants' Interrogatories (Set Two):
>
> MSY-MDW (Roundtrip)
>
> MSY-TPA (Roundtrip)
>
> > Whalen also has family in the Tampa area that she would like to visit. Alioto Dec Ex. 24 - Whalen Dep. 53:13-16. She is planning on flying from New Orleans to Tampa in November 2023 to celebrate a family member's birthday and her wedding anniversary. Whalen Dec. ¶2.
>
> MSY-ORD (Roundtrip)
>
> MSY- New York Metro Area (Roundtrip)
>
> > Whalen wants to visit New York City because she has never been. Alioto Dec Ex. 24 - Whalen Dep. 53:9-11. She is planning on flying from New Orleans to New York City in January 2024. Whalen Dec. ¶2.
>
> (Alioto Dec Ex. . 72 - Plaintiff Whalen's Second Supplemental responses to Defendants' Interrogatories (Set Two); Alioto Dec Ex. 48 - Plaintiff Whalen's Responses to Defendants' Interrogatories (Set One) and Supplemental Responses to Defendants' Interrogatories (Set One).)
>
> <u>Defendants' Reply to Plaintiffs' Response No. 191:</u>
>
> Does not create a genuine dispute of material fact.  The cited material does not suggest that Whalen has flown Spirit on any of the identified routes.
>
> Whalen's statement that she is "planning" or "would like" to fly or "wants" to visit particular destinations are too speculative to confer standing.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

Plaintiffs cannot contradict Whalen's deposition and interrogatory answer with a contradictory, self-serving declaration nearly two months after the close of fact discovery.  *See* Defendants' Reply to Plaintiffs' Response No. 27.

To the extent Plaintiffs' response suggests that Plaintiff Whalen has flown from MSY-New York (Metropolitan Area) or MSY-ORD in the past, that statement misstates the record. *See* Alioto Dec Ex. 48 (Whalen's identification of prior flights which do not include MSY-New York Metropolitan Area or MSY-ORD).

Whalen's flight from MSY-MDW, MSY-TPA and MSY-ORD are not listed as a potentially impacted route in Singer's report, and appear only in Plaintiffs' belatedly-served Interrogatory Responses.  *See* Singer Report ¶¶ 60-62; App'x 3, Tables A3.2, A3.3, A3.6, A3.7. Plaintiffs have no admissible evidence that the alleged routes will be impacted by the merger.  To the extent the challenged routes are "Spirit-Only routes" (which are not listed in the Singer Report, but are included in the Singer Declaration, Dkt. 185), their inclusion does not raise a material dispute of fact because there is no cognizable theory of harm articulated on these routes. *See* Defendants' Reply to Plaintiffs' Response No. 36.

192.   <u>Travel Agent</u>: Whalen is a former travel agent. Exhibit 94 at 10:14-16. She worked as a travel agent for approximately thirty years at A&W Travel, which she co-owned with co-Plaintiff Katherine Arcell, and closed the agency in 2020. *Id.* at 12:14- 14:3. She has no intention of returning to the travel industry at the moment. *Id.* at 44:7-9.

<u>Plaintiff's Response No. 192:</u>

Undisputed.

<u>Defendants' Reply to Plaintiffs' Response No. 192:</u>

Undisputed and therefore admitted.  *See* L.R. 56.1.

193.   <u>Compensation</u>: Whalen is retired and no longer receives any income from a travel agency. *Id.* at 44:7-19.

<u>Plaintiff's Response No. 193:</u>

Undisputed.

Defendants' Reply to Plaintiffs' Response No. 193:

Undisputed and therefore admitted.  *See* L.R. 56.1.

194.   Articulated Harm: Whalen testified that the Spirit-JetBlue merger would not affect her business, which no longer operates. *Id.* at 44:7-24. Whalen testified that the merger will impact her personally because it would give her "less choices," increase fares, and result in "extra charges" and "cutbacks in maybe some flights and destinations." *Id.* at 95:3-13–96:6. Whalen drafted an individualized response to Interrogatory 7, in addition to the response which was identical for all Plaintiffs. *See supra* ¶ 35. Whalen wrote:

> Flyers such as me will no longer have a choice of a low fare airline (Spirit) and a higher fare airline (Jet Blue). Also there will be more additional fees for seats, changes and for checked bags.

Exhibit 98 at 3-4.

Plaintiff's Response No. 194:

Disputed.

The proposed merger would affect the entire country's travel. Alioto Dec Ex. 24 - Whalen Dep. 44:24.

Competition, fare increases, and cuts in service would all be affected by the merger. *Id.* at 45:2-3.

Mergers have happened too many times and if they continue to happen, the public will have no choices. *Id.* at 45:3-5.

Plaintiff Whalen prefers direct flights over connecting flights. (*Id.* at 70:20-22).

Whalen thinks competition is where it needs to be, and she does not want to be told that she can only go on this airline or that airline. She likes to have options. *Id.* at 93:19-23.

The potential merger would give Whalen less choices. The fares would go up. There would likely be additional charges, just like has happened in the past with other mergers. *Id.* at 95:7-11.

Whalen sees fewer destinations, fewer flights, and less capacity if the merger were to go through. *Id.* at 95:14-19.

When three or four airlines inevitably take over, they will be the ones in charge. They are not going to treat anyone like a guest or a customer. *Id.* at 101:7-12.

Spirit wants to lay people off and raise fares because they would benefit from the merger. *Id.* at 114:17-21.

Defendants' Reply to Plaintiffs' Response No. 194:

Does not create a material dispute of fact. The additional cited text does not create a material dispute of fact.

Whalen's general statements are not a basis from which a rational trier of fact can find that Whalen herself will suffer "imminent" injury from this merger in particular. Plaintiffs do not have standing to bring claims on behalf of others. *California v. Am. Stores Co.*, 495 U.S. 271, 296 (1990) (requiring a private antitrust litigant to "prove threatened loss or damage to his own interests" in order to have standing to obtain relief); *United States v. Borden*, 347 U.S. 514, 518 (1954) (while the "Government seeks its injunctive remedies on behalf of the general public; the private plaintiff, though his remedy is made available pursuant to public policy as determined by Congress, may be expected to exercise it only when ***his personal interest*** will be served") (emphasis added); *Sullivan v. Tagliabue*, 828 F. Supp. 114, 120 (D. Mass. 1993) (in § 4 damages case, injuries "merely derivative of [another's] are too indirect and tangential to support [an] individual action"), *aff'd*, 25 F.3d 43 (1st Cir. 1994).

## V.   Report by Plaintiffs' Expert Mr. Ted Tatos

195.    On July 28, 2023, Plaintiffs served on Defendants a report by Plaintiffs' expert, Mr. Ted Tatos. Plaintiffs asked Mr. Tatos to answer: "Can such threatened loss or damage to Plaintiffs [from the merger] be quantified with reasonable certainty based on the available evidence?" Mr. Tatos responded "in the affirmative" Exhibit 99 at 2.

Plaintiff's Response No. 195:

Disputed.

Mr. Tatos quantified only those harms stemming from the increased prices that Plaintiffs will necessarily pay as a result of the merger. Mr. Tatos did *not* quantify the non-price harms, such as a diminution in service, the loss of consumer choice, and/or the loss of innovation. Def. Alioto Dec Ex. 99; *see also* Alioto Dec Ex. 3 - Singer Rep. P.2, fn.2 (describing the "non-price welfare losses owing to the proposed merger" that cannot be quantified).

Defendants' Reply to Plaintiffs' Response No. 195:

Misstates the record. Nowhere in the report by Plaintiffs' expert, Mr. Ted Tatos, does Mr. Tatos discuss "non-price harms" or clarify that they were not included in the scope of his report. Instead, in his "Summary of Findings" Mr. Tatos states that he answers the question, "Can such threatened loss or damage to Plaintiffs be quantified with reasonable certainty based on the available evidence?" "in the affirmative." Exhibit 99, at 2.

196.    Mr. Tatos's report did not detail any irreparable injury to Plaintiffs or any injury to Plaintiffs in their professional capacities as travel agents. Instead, Mr. Tatos quantifies Plaintiffs' alleged harms by calculating a percent-based increase in airfare tickets applicable to "Plaintiffs, as well as other air travelers." *Id.* at 6.

In his report, Mr. Tatos acknowledged that at least sixteen Plaintiffs have never flown Spirit. *Id.* at 23-29.

Plaintiff's Response No. 196:

Disputed.

Mr. Tatos quantified only those harms stemming from the increased prices that Plaintiffs will necessarily pay as a result of the merger. Mr. Tatos did *not* quantify the non-price harms, such as a diminution in service, the loss of consumer choice, and/or the loss of innovation. Def. Alioto Dec Ex. 99; *see also* Alioto Dec Ex. 3 - Singer Rep. P.2, fn.2 (describing the "non-price welfare losses owing to the proposed merger" that cannot be quantified).

Defendants' Reply to Plaintiffs' Response No. 196:

Misstates the record. Nowhere in the report by Plaintiffs' expert, Mr. Ted Tatos, does Mr. Tatos discuss "non-price harms" or clarify that they were not included in the scope of his report. Instead, in his "Summary of Findings" Mr. Tatos states that he answers the question, "Can such threatened loss or damage to Plaintiffs be quantified with reasonable certainty based on the available evidence?" "in the affirmative." Exhibit 99, at 2.

**Plaintiffs' Additional Undisputed Material Facts**

**Defendants' Omnibus Reply to Paragraphs 197 to 216:**

Defendants' motion for summary judgment pertains only to the narrow, threshold issue of Plaintiffs' lack of standing and irreparable injury.  Local Rule 56.1 requires the party opposing

summary judgment to rely on *material* facts.  Instead of following this rule, Plaintiffs included in their

Responsive Statement of Facts dozens of paragraphs containing immaterial arguments that have no

bearing on Plaintiffs' individual standing in this litigation.  Defendants object to Plaintiffs' reliance on

irrelevant documents and testimony, and their mischaracterization of those materials, in attempting to

oppose Defendants' narrow motion for summary judgment.  Defendants dispute Paragraphs 197

through 216, and in addition raise the following objections:

197.   [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]

Defendants' Reply No. 197:

Objections: Irrelevant and unduly prejudicial (Fed. R. Evid. 401, 403); speculation/foundation (Fed. R. Evid. 602); improper opinion testimony (Fed. R. Evid. 701–704); mischaracterizes the evidence and is immaterial in violation of L.R. 56.1.  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

198.   [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]

Defendants' Reply No. 198:

Objections: Irrelevant and unduly prejudicial (Fed. R. Evid. 401, 403); speculation/foundation (Fed. R. Evid. 602); improper opinion testimony (Fed. R. Evid. 701–704); mischaracterizes the evidence and is immaterial in violation of L.R. 56.1.  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

199.   [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]

Defendants' Reply No. 199:

Objections: Irrelevant and unduly prejudicial (Fed. R. Evid. 401, 403); immaterial in violation of L.R. 56.1.  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

200.   [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]

Defendants' Reply No. 200:

Objections: Irrelevant and unduly prejudicial (Fed. R. Evid. 401, 403); mischaracterizes the evidence and is immaterial in violation

of L.R. 56.1.  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

201.   [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]

Defendants' Reply No. 201:

Objections: Irrelevant and unduly prejudicial (Fed. R. Evid. 401, 403); speculation/foundation (Fed. R. Evid. 602); improper opinion testimony (Fed. R. Evid. 701–704); mischaracterizes the evidence and is immaterial in violation of L.R. 56.1.  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

202.   [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]

Defendants' Response No. 202:

Objections: Irrelevant and unduly prejudicial (Fed. R. Evid. 401, 403), improper opinion testimony, legal conclusion, ultimate issue (Fed. R. Evid. 701–704); speculation/foundation (602).  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

203.   [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]

Defendants' Response No. 203:

Objections: Irrelevant and unduly prejudicial (Fed. R. Evid. 401, 403), improper opinion testimony, legal conclusion, ultimate issue (Fed. R. Evid. 701–704); hearsay-within-hearsay (Fed. R. Evid. 805); speculation/foundation (602).  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

204.   [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]

Defendants' Reply No. 204:

Objections: Irrelevant and unduly prejudicial (Fed. R. Evid. 401, 403), improper opinion testimony, legal conclusion, ultimate issue (Fed. R. Evid. 701–704); speculation/foundation (602).  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

205.   [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]

Defendants' Reply No. 205:

Objections: Irrelevant and unduly prejudicial (Fed. R. Evid. 401, 403); mischaracterizes the evidence and is immaterial in violation of L.R. 56.1.  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

206.    [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]

Defendants' Reply No. 206:

Objections: Irrelevant and unduly prejudicial (Fed. R. Evid. 401, 403); speculation/foundation (Fed. R. Evid. 602); improper opinion testimony (Fed. R. Evid. 701–704); mischaracterizes the evidence and is immaterial in violation of L.R. 56.1.  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

207.    [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]

Defendants' Reply No. 207:

Objections: Irrelevant and unduly prejudicial (Fed. R. Evid. 401, 403); speculation/foundation (Fed. R. Evid. 602); improper opinion testimony (Fed. R. Evid. 701–704); mischaracterizes the evidence and is immaterial in violation of L.R. 56.1.  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

208.    [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.] .

Defendants' Reply No. 208:

Objections: Irrelevant and is immaterial in violation of L.R. 56.1.  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

209.    [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]

Defendants' Reply No. 209:

Objections: Irrelevant and is immaterial in violation of L.R. 56.1.  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

210.    [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]

Defendants' Reply No. 210:

Objections: Irrelevant and unduly prejudicial (Fed. R. Evid. 401, 403); speculation/foundation (Fed. R. Evid. 602); improper opinion testimony (Fed. R. Evid. 701–704); mischaracterizes the evidence and is immaterial in violation of L.R. 56.1.  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

211.    [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]

Defendants' Reply No. 211:

Objections: Irrelevant and unduly prejudicial (Fed. R. Evid. 401, 403); speculation/foundation (Fed. R. Evid. 602); improper opinion testimony (Fed. R.

Evid. 701–704); mischaracterizes the evidence and is immaterial in violation of L.R. 56.1.  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

212.  [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]

Defendants' Reply No. 212:

Objections: Irrelevant and unduly prejudicial (Fed. R. Evid. 401, 403); speculation/foundation (Fed. R. Evid. 602); improper opinion testimony (Fed. R. Evid. 701–704); mischaracterizes the evidence and is immaterial in violation of L.R. 56.1.  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

213.  [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]

Defendants' Reply No. 213:

Objections: Irrelevant and unduly prejudicial (Fed. R. Evid. 401, 403); speculation/foundation (Fed. R. Evid. 602); improper opinion testimony (Fed. R. Evid. 701–704); mischaracterizes the evidence and is immaterial in violation of L.R. 56.1.  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

214.  [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]

Defendants' Reply No. 214:

Objections: Irrelevant and unduly prejudicial (Fed. R. Evid. 401, 403); speculation/foundation (Fed. R. Evid. 602); improper opinion testimony (Fed. R. Evid. 701–704); mischaracterizes the evidence and is immaterial in violation of L.R. 56.1.  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

215.  [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]

Defendants' Reply No. 215:

Objections: Irrelevant and immaterial in violation of L.R. 56.1.  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

216.  [Redacted pursuant to Plaintiffs' Unopposed Motion to Impound, Dkt. 188.]

Defendants' Reply No. 216:

Objections: Irrelevant and immaterial in violation of L.R. 56.1.  *See* Defendants' Omnibus Reply to Paragraphs 197 to 216.

**Defendants Additional Reply Undisputed Material Facts**

217.    Plaintiffs have identified Plaintiffs Carolyn Fjord, Len Marazzo, and Brenda Davis as fact witnesses expected to be called to testify live at trial and/or by deposition designation. Wright Reply Decl. ¶ 8.


Dated: September 5, 2023

/s/ Elizabeth M. Wright
Zachary R. Hafer (MA BBO #569389)
Elizabeth M. Wright (MA BBO #569387)
Zachary Sisko (MA BBO # 705883)
Cooley LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Tel: 617-937-2300
zhafer@cooley.com
ewright@cooley.com
zsisko@cooley.com

Ethan Glass (*Pro Hac Vice*)
Deepti Bansal (*Pro Hac Vice forthcoming*)
Matt K. Nguyen (*Pro Hac Vice*)
Cooley LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 2004-2400
Tel: 202-842-7800
Fax: 202-842-7899
eglass@cooley.com
dbansal@cooley.com
mnguyen@cooley.com

*Attorneys for Defendant JetBlue Airways Corporation*

/s/ Andrew C. Finch
Andrew C. Finch (*Pro Hac Vice*)
Eyitayo St. Matthew-Daniel (*Pro Hac Vice*)
Jay Cohen (*Pro Hac Vice*)
Jared P. Nagley (*Pro Hac Vice*)
Kate Wald (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: 212-373-3000
Fax: 212-757-3990
afinch@paulweiss.com
tstmatthewdaniel@paulweiss.com
jcohen@paulweiss.com
jnagley@paulweiss.com
kwald@paulweiss.com

Meredith R. Dearborn (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel: 628-432-5100
Fax: 628-232-3101
mdearborn@paulweiss.com

*Attorneys for Defendant*
*Spirit Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system on September 5, 2023, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Elizabeth M. Wright*
Elizabeth M. Wright