**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

GABRIEL GARAVANIAN, *et al.*,

                *Plaintiffs*,

v.

JETBLUE AIRWAYS CORPORATION and
SPIRIT AIRLINES, INC.,

                *Defendants*.

Civil Action No.: 1:23-cv-10678-WGY

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SANCTIONS OR,**
**IN THE ALTERNATIVE, ORDER TO SHOW CAUSE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

    I.       PLAINTIFFS DID NOT VIOLATE ANY RULE OR ORDER WITH RESPECT TO THEIR MOTION FOR SUMMARY JUDGMENT ........................................................................ 2

    II.      PLAINTIFFS DID NOT VIOLATE ANY RULE OR ORDER IN THE HANDLING OF CONFIDENTIAL INFORMATION IN FILING PLAINTIFFS' OPPOSITION TO SUMMARY JUDGMENT ......................................................................................................... 4

    III.    DEFENDANT'S DISCUSSION OF PLAINTIFFS' IRRELEVANT LITIGATION HISTORY IS IMPROPER ...................................................................................................... 16

CONCLUSION ....................................................................................................................... 18

i

## TABLE OF AUTHORITIES

**Cases**

*Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.,*
   784 F.2d 1325 (7th Cir. 1986) ............................................................. 4, 16

*Conservation L. Found. of New England, Inc. v. Franklin,*
   989 F.2d 54 (1st Cir. 1993) ..................................................................... 17

*Converse Inc.* v. *Reebok Int'l Ltd.,*
   328 F.Supp.2d 166 (D. Mass. 2004) ........................................................ 13

*In re Ames,*
   993 F.3d 27 (1st Cir. 2021) ...................................................................... 18

*Martinez* v. *Hubbard,*
   172 F.Supp.3d 378 (D. Mass. 2016) ........................................................ 13

*Sun Cap. Partners III, LP v. New England Teamsters & Trucking Indus. Pension Fund,*
   329 F.R.D. 102 (D. Mass. 2018) .............................................................. 13

**Rules**

Fed.R.Civ.P. 11(b) ........................................................................................ 14

Fed.R.Civ.P. 11(b)(1) ................................................................................... 18

Fed.R.Civ.P. 11(c)(2) ................................................................................... 14

Fed.R.Civ.P. 11(c)(3) ................................................................................... 14

# INTRODUCTION

Defendant JetBlue's motion for sanctions is based on erroneous assumptions and misrepresentations of fact that could have been resolved had Defendant conferred before filing its motion. Defendant did not confer. It filed this motion moments before midnight on August 28, just five hours after notifying Plaintiffs (at 6:55 p.m. EDT) of its intent do so, and without any effort to "resolve or narrow the issue" as required by Local Rule 7.1(a). Perhaps worse, Defendant's counsel signed and filed a certification erroneously stating that it "conferred in good faith" with Plaintiffs but was "unable to resolve or narrow the issues." Dkt. No. 209 (Def. Mot. Sanctions) at 4. Defendant's failure to confer – on a motion for sanctions no less – makes its erroneous assumptions and misrepresentations of the facts inexcusable. The motion, itself sanctionable, should be rejected on that ground alone. JetBlue claims it filed the motion only "reluctant[ly]," but its purported restraint is not credible. A factual examination of the events described clearly reveals that JetBlue leaped to erroneous conclusions without making a reasonable inquiry. Based upon the true facts and circumstances, JetBlue's unfounded motion should be denied.

Plaintiffs have faithfully followed the Local Rules and orders of this Court. They violated no rule in the filing of any motion. They immediately and diligently addressed the inadvertent disclosure of confidential information in faithful compliance with the Protective Order. Plaintiffs' counsel went through extraordinary efforts to limit the dissemination of the inadvertently disclosed material. JetBlue either disregarded or, by failing to inquire, was unaware of these facts and events in favor of quickly dispatching a meritless motion for sanctions.

## ARGUMENT

### I.   PLAINTIFFS DID NOT VIOLATE ANY RULE OR ORDER WITH RESPECT TO THEIR MOTION FOR SUMMARY JUDGMENT

Throughout the month of June, Plaintiffs and the United States conducted some 30 depositions of JetBlue employees, Spirit employees, and third parties. Discovery revealed an extraordinary quantity and quality of direct evidence demonstrating the unlawfulness of the proposed merger. Some of this evidence is powerful enough to merit summary judgment for plaintiffs, even on issues on which they bear the burden of proof at trial.

In July, Plaintiffs assembled this evidence into a single motion for summary judgment that addressed a number of important issues. The motion also sought summary judgment on three of Defendants' defenses, all of which are proscribed as a matter of law pursuant to binding Supreme Court authority. As a result of the quantity of evidence and complexity of legal argument presented, Plaintiffs' memorandum in support of their motion for summary judgment was oversized. Plaintiffs timely served their motion on Defendants, and then filed a motion to file an oversized brief. Dkt. No. 179.

Plaintiffs' motion for summary judgment included material that Defendants have designated confidential. Critically, Plaintiffs cannot file a motion to seal Defendants' confidential information without Defendants' full participation – only they can make the showings necessary to justify impounding their own internal documents. Thus, Plaintiffs filed a motion to impound on the day their summary judgment motion was due. Defendants *did not oppose* the motion. Declaration of S. Gregory Herrman ("Herrman Dec.") ¶¶ 2, 3. The parties agreed that the unopposed motion would be filed with the understanding they would then work together to resolve any issues related to impoundment. Herrman Dec. ¶ 2.

However, days later, the Court denied Plaintiffs' motion to file an oversize brief, and it denied Plaintiffs' motion to impound. Dkt. Nos. 181, 182. Plaintiffs therefore withdrew their motion for summary judgment rather than refiling it in shorter form. Plaintiffs have opted instead to present the evidence through the live testimony of Defendants' executives at trial. Plaintiffs' arguments that Defendants' defenses are unavailable as a matter of law are being prepared for submission to the Court in Motions in Limine and in Plaintiffs' Trial Brief.

While Defendant did not oppose the motion at the time of filing, Defendant now claims Plaintiffs violated Local Rule 7.2(c) by filing a motion to impound their summary judgment motion. Def. Mot. at 5. Defendant, however, cites no facts that would constitute a violation of Local Rule 7.2(c), which states that "[m]otions for impoundment must be filed and ruled upon prior to submission of the actual material sought to be impounded, unless the court orders otherwise." Plaintiffs filed their unopposed motion for impoundment "prior to submi[tting] the actual material sought to be impounded." Plaintiffs never submitted the "material sought to be impounded," because their motion to impound was denied. Plaintiffs violated no rule. In fact, since Defendant's motion does not even allege facts that would constitute a violation of Rule 7.2(c), its argument is frivolous.[1]

Similarly, Defendant's argument that Plaintiffs should be sanctioned for violating Local Rule 7.1(b)(4) is unfounded. Rule 7.1(b)(4) restricts the length of briefs to 20 pages unless the party obtains "leave of court." That is, the Local Rule specifically authorizes motions for leave to

---

[1] Defendant also inexplicably references a portion of the Protective Order without alleging any violation.  In doing so, however, Defendant distorts its language. Defendant states "the Protective Order requires Plaintiffs to file with the Court a properly 'redacted version of the filing' if it contains 'any documents, testimony, or other materials designated under this Order as Confidential or Highly Confidential Information.'" Def. Mot. at 4.  The Protective Order, however, only requires such redacted versions to be filed "[i]f this Court grants leave to file a document under seal." Dkt. No. 164 at ¶ 44.

file oversized briefs. Plaintiffs sought leave of Court to file an oversized brief. The Court denied it. Plaintiffs, therefore, never filed their oversized memorandum and the Local Rule was plainly not violated. Defendant's argument to the contrary is baseless and should not have been presented.

## II.  PLAINTIFFS DID NOT VIOLATE ANY RULE OR ORDER IN THE HANDLING OF CONFIDENTIAL INFORMATION IN FILING PLAINTIFFS' OPPOSITION TO SUMMARY JUDGMENT

Defendant accuses Plaintiffs of misconduct related to the filing of their Opposition to Defendants' Motion for Summary Judgment ("Opposition"). These arguments are meritless and are based on uninformed conclusions and misstatements of fact that could have been corrected had Defendant conferred with Plaintiffs, as required, obviating the need for the motion. Plaintiffs violated no Local Rules or Court orders with respect to the filing of their Opposition.

### 1.  Background

On August 1, 2023, Defendants filed a motion for summary judgment challenging Plaintiffs' standing. Dkt. No. 172. In their supporting memorandum, Defendants argued *inter alia* that "Plaintiffs cannot establish … antitrust standing," and that "[f]or antitrust standing, Plaintiffs must also prove 'antitrust injury.'" Dkt. No. 173 at 3 (legal citation omitted).

Plaintiffs' Opposition addressed that argument directly. Dkt. No. 184. Under the law, "'antitrust injury' … means injury from higher prices or lower output, the principal vices of the antitrust laws." *Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325, 1334 (7th Cir. 1986). Therefore, to show Plaintiffs will suffer "antitrust injury" and defeat Defendants' summary judgment motion, Plaintiffs were fully entitled to, and did, argue that the merger will result in higher prices and lower output that will impact Plaintiffs directly. It is a matter of public record that Spirit has admitted on numerous occasions that the merger will increase prices and

reduce capacity. However, Plaintiffs also cited additional record evidence that Defendants have designated confidential under the protective order.

On August 10, 2023 – twelve days before the opposition was due – Plaintiffs advised JetBlue counsel that "[w]e will be including facts in the opposition to JetBlue's summary judgment motion that JetBlue has designated as highly confidential. Do you want us to file a motion to impound the portions of the brief that address confidential material? Since JetBlue has designated this material, we cannot establish the bases for impounding it." Herrman Dec. ¶ 6, Ex. 2. The email included citations to record evidence related to the merger's effects on prices and output, *i.e.* "antitrust injury." Herrman Dec. ¶ 6, Ex. 8. Plaintiffs' email concluded, "Kindly let me know by the end of the business day tomorrow August 11 [] whether you assent to a motion to impound any portions of the Opposition that address material you have designated as confidential." Herrman Dec. ¶ 6, Ex. 2 at 16. Plaintiffs spent the next 12 days attempting to resolve the motion to impound in the face of Defendant's lack of responsiveness. Herrman Dec. ¶¶ 7-14.

On August 22, 2023, Plaintiffs filed redacted versions of their Opposition and supporting statement of facts. Dkt. Nos. 184, 186. These redactions were computer-generated black boxes that covered confidential-designated text. The Plaintiffs' attorney who made these redactions believed in good faith that the redaction method she employed was proper. Declaration of Josephine L. Alioto ("J. L. Alioto Dec." ¶ 3.) However, a member of the press downloaded the redacted document from PACER and successfully attempted to view the redacted text by copying the blacked-out redactions from the PDF document, opening a word processing application, and pasting the redactions into the newly opened application. Def. Mot. at 6 (quoting

article's description of "copying and pasting"). Accessing the redacted text required intent, effort, and manipulation of the downloaded document. [2]

The next day, August 23, 2023, at approximately 3:04 p.m. EDT[3], Plaintiffs' counsel was copied on an email from counsel for JetBlue to the Courtroom Clerk. Herrman Dec. ¶ 15. At 3:12 p.m. EDT, counsel forwarded that email to Plaintiff lawyers who had been involved in filing the opposition brief. J. L. Alioto Dec. ¶ 4. The email was from Defense counsel to the Courtroom Clerk, with three Plaintiffs' counsel and other JetBlue counsel copied, stating that a member of the press had been able to access the redacted material in Plaintiffs' Opposition. *Id.* JetBlue's counsel asked that the Courtroom Clerk remove the document from public access until the issue could be resolved. *Id.* This marked the first time Plaintiffs learned of the inadvertent disclosure.[4] Herrman Dec. ¶ 14.

Plaintiffs' counsel Josephine Alioto read the email sometime after 3:12 p.m. EDT and immediately contacted paralegal Hawrris Niazi of the Alioto Law Firm. *Id.* ¶ 5. Ms. Alioto and Mr. Niazi discussed how to remove the document from public view. J. L. Alioto Dec. ¶ 5; Declaration of Hawrris Niazi ("Niazi Dec.") ¶ 4. Within minutes, Mr. Niazi immediately

---

[2] Notwithstanding that, Plaintiffs have now discovered that some of the information designated "confidential" by JetBlue under the Protective Order and cited by Plaintiffs in the Opposition brief is actually publicly available. J. L. Alioto Dec. ¶¶ 10-13. Plaintiffs are assessing whether JetBlue's designation of publicly available information as "confidential" under the protective order was improper.

[3] All times in this brief are written as Eastern Daylight Time (EDT). However, because some of Plaintiffs' counsel are located in California, times in their declarations may be written in Pacific Daylight Time (PDT).

[4] Ten minutes earlier, at 2:54 p.m. EDT, counsel for Spirit and JetBlue had left a voicemail for one of Plaintiffs' counsel, but that voicemail was not received until a few hours later. Alioto Jr. Dec. ¶¶ 4,5.

attempted to remove the document himself by logging into the electronic filing system. Niazi Dec. ¶ 3.

On realizing the document could not be removed without Court intervention, roughly 30 to 45 minutes after first learning of the inadvertent disclosure, Mr. Niazi made the following calls to Court personnel in an effort to have the document removed from public view:

- 3:51 p.m. EDT – phone call to Courtroom Clerk (no answer)

- 3:59 p.m. EDT – follow-up email to Courtroom Clerk requesting the document's removal and reiterating urgency of request

- 4:14 p.m. EDT – phone call to Courtroom Clerk (no answer)

- 4:15 p.m. EDT – phone call to Docket Clerk (no answer; voicemail)

- 4:21 p.m. EDT – phone call to main Clerk's office

- 4:23 p.m. EDT – phone call to Clerk's Office Customer Service desk.

Niazi Dec. ¶ 5.

When Mr. Niazi was finally able to reach someone during the 4:23 p.m. EDT phone call, the Customer Service representative attempted to assist in removing the document from public view. Niazi Dec. ¶ 5. However, Mr. Niazi was told that such a request needed to first be approved by the Clerk. *Id*. Mr. Niazi was instructed to wait to be contacted by Court personnel. *Id*.

At 4:10 p.m. EDT, while Mr. Niazi was making phone calls, JetBlue counsel Elizabeth Wright wrote an email to Plaintiffs' counsel asking "What are plaintiffs doing to remedy this issue?" and "Have you called the clerk? Have you tried to pull down the filing?" Herrman Dec. ¶ 18, Ex. 5.

Four minutes later, at 4:14 p.m. EDT, Plaintiffs' counsel confirmed Ms. Wright that they had already done what defense counsel had asked them to do, responding, "We immediately attempted to pull the filing, which can only be done by contacting the clerk. We have called and emailed. We will continue calling to try and get ahold of someone." Herrman Dec. Ex. 5; J. L. Alioto Dec. ¶ 6. Plaintiffs did continue calling courthouse personnel. Niazi Dec. ¶ 5.

Elsewhere and in the meantime, the reporter who had deciphered the redactions contacted Plaintiffs' attorney Joseph M. Alioto Sr. to request a comment on the filing. Mr. Alioto Sr, who was not on any of the email communications from defense counsel, was at this point unaware of the inadvertent disclosure. The reporter had not yet revealed he obtained confidential material from the redacted portions of Plaintiffs' Opposition. Declaration of Joseph M. Alioto Sr. ("Alioto Sr. Dec.") ¶ 19. In the article, Mr. Alioto Sr. was quoted as saying, "they're going to raise the fares, they're going to cut the capacity, they're going to cut the [capacity] of flights, they're going to fire people … They're cutting the ultra-low cost carrier market in half." Def. Mot. at 6 (quoting article). Each of these facts is publicly available in admissions published by Spirit airlines. Alioto Sr. Dec.; J. L. Alioto Dec. ¶¶ 10-13.

Only *after* providing a comment to the reporter was Mr. Alioto Sr. advised the reporter had obtained confidential material from the redacted portions of Plaintiffs' opposition brief. Alioto Sr. Dec. ¶ 19. Mr. Alioto Sr. immediately admonished the reporter that the material was subject to a court order, that the reporter was not authorized to possess the material, and that the confidential material should not be published. Alioto Sr. Dec. ¶ 19. Later, Plaintiffs' counsel emailed JetBlue's attorneys stating: "I can confirm that the Law360 reporter was put on notice – before publication – that the document contained information protected by Court order, that he should destroy the document immediately, and that he should not reprint the protected material."

Declaration of Joseph M. Alioto Jr. ("Alioto Jr. Dec.") ¶ 14. However, neither Ms. Wright, nor any other counsel for JetBlue, ever responded to that email. Alioto Jr. Dec. ¶ 15.

At 5:23 p.m. EDT, the Courtroom Clerk notified the parties that the filings had been removed from public view. J.L.Alioto Dec. ¶ 7.

At 6:35 pm EDT, Plaintiffs' counsel took additional remedial steps and wrote defense counsel, "[s]ince it appears all the documents with issues have been removed from the docket, my question is, as far as you are aware, are there any media outlets (other than Law 360 that you mentioned on your voicemail) that have received the documents? If so, please contact me immediately with whatever information you have and I will call them." Alioto Jr. Dec. ¶ 7. Plaintiffs' counsel also asked "[h]as the Law 360 reporter agreed not to publish?" and "[i]f not, will you please send me their contact information so I may call them." *Id*. Plaintiffs' counsel concluded, "If there is anything else you think I can do to address this please contact me directly on my cell." *Id*. However, neither Ms. Wright, nor any other counsel for JetBlue, responded. Alioto Jr. Dec. ¶ 8.

The following morning, August 24, 2023, Plaintiffs' counsel obtained the email address of the reporter. Alioto Jr. Dec. ¶ 11. At 11:25 a.m. PDT, Plaintiffs' counsel wrote the reporter and requested that he "immediately delete the document with protected material, confirm it has been deleted, and confirm it has not been duplicated or disseminated. If it has been disseminated, please immediately let me know who you gave it to or sent it to." Alioto Jr. Dec. ¶ 12. Plaintiffs' counsel wrote a similar email to a different reporter who had been seeking comment on the confidential information. *Id*. ¶ 13.

On August 24, 2023 at 2:44 p.m. EDT, Plaintiffs' counsel forwarded these emails to counsel for JetBlue and outlined other steps Plaintiffs had taken to address the issue. Alioto Jr.

Dec. ¶ 14. Counsel for Plaintiffs asked, "If you believe there are other remedial steps we can take, please let me know immediately." *Id*. Neither Ms. Wright, nor any other counsel for JetBlue, ever responded. *Id*. ¶ 15.

### 2. *Defendant's Assertion That Plaintiffs Violated the Local Rules by Delaying Its Motion to Impound Is False*

Defendant first argues that Plaintiffs should be sanctioned because they waited until "shortly before" their opposition brief was due before asking for Defendants' assent to a motion to impound, and that Plaintiffs' delay resulted in the motion to impound being filed late under Local Rule 7.2. Def. Mot. at 5. Defendant's argument relies on a misrepresentation of the facts.

Plaintiffs did not wait until "shortly before" their opposition brief was due to ask for Defendants' assent to a motion to impound.  In fact, Plaintiffs first asked for Defendants' assent to a motion to impound the material on August 10, 2023 – *twelve days* before Plaintiffs' opposition brief was due. Herrman Dec. ¶ 6, Ex. 2 at 16 ("Kindly let me know by the end of the business day tomorrow August 11 [] whether you assent to a motion to impound any portions of the Opposition that address material you have designated as confidential"). The August 10 email included an attached documents with some 50 citations to confidential material Plaintiffs intended to rely on in their opposition. [5] Herrman Dec. ¶ 6, Ex. 8.

Defendant and its counsel therefore knew Plaintiffs requested Defendant's assent to the motion to impound 12 days before the opposition was due. Yet, it still represented to the Court that Plaintiffs did not ask for assent until "shortly before" the deadline. Defendant's statements are inexcusably inaccurate and violate counsel's duty of candor to the Court. L. R. 83.6.1(a);

---

[5] Defendant suggests that identifying the citations to confidential material in a document attached to an email was somehow insufficient, so it needlessly demanded that the citations be provided in different format. Herrman Dec. Ex. 2 at 11-12. Plaintiffs' counsel obliged the request and still provided the list of citations five days before the Opposition was due.  Herrman Dec. ¶ 7, Ex. 2.

Mass. R. Prof. C. 3.3(a). To the extent there was delay in the filing of the motion to impound, that delay was of Defendant's creation, as outlined in detail at Herrman Dec. ¶¶ 6-14. Those dilatory tactics run counter to the rules. L. R. 83.6.1(a); Mass. R. Prof. C. 3.2.

For these reasons, Plaintiffs did not violate Local Rule 7.2 by filing their motion to impound, as Defendant wrongly asserts.[6]

### 3.  *Plaintiffs' Redactions Did Not Violate The Protective Order*

Defendant also claims Plaintiffs should be sanctioned for "violat[ing] the protective order" when they filed a redacted document that a member of the press was able to download and decipher. Def. Mot. at 5-6. Plaintiffs' counsel redacted the document using a method she believed in good faith was proper. J. L. Alioto Dec. ¶ 3. The disclosure was inadvertent. *Id*. ¶¶ 3, 9. Inadvertent disclosures violate no provision of the protective order, and Defendant cites no provision of the order to the contrary. Defendant's argument is baseless.

### 4.  *Plaintiffs Took Immediate Remedial Measures After The Disclosure*

Defendant also contends Plaintiffs should be sanctioned for purportedly failing to take remedial action after the inadvertent disclosure of confidential information as required by the Protective Order. Def. Mot. at 6. Defendant is incorrect. As outlined in detail above, Plaintiffs made repeated and immediate efforts to remove the document from public view: attempting to remove it themselves and seeking the Court's assistance to remove the document. Niazi Dec. ¶¶ 2-6; Herrman Dec. ¶¶ 15-18; J. L. Alioto Dec. ¶¶ 4-9; Alioto Jr. Dec. ¶¶ 4-16. Plaintiffs' counsel then made additional efforts to ensure that no further or greater unauthorized disclosure was

---

[6] Defendant distorts Local Rule 7.2(c) by claiming it requires that a motion to impound must be filed "in advance" of filing a *public* version of a brief.  That is not what 7.2(c) says.  Instead, it requires that "Motions for impoundment must be filed and ruled upon prior to submission of the actual material sought to be impounded." Because the Court still has not ruled on Plaintiffs' Motion to Impound, in accordance with Local Rule 7.2(c), Plaintiffs have not yet "submi[tted] the actual material sought to be impounded."

made, efforts that were communicated to Defendant's counsel who never responded. Alioto Jr. Dec. ¶¶ 11-15. The Protective Order states that the disclosing party must "take all reasonable measures to retrieve the improperly disclosed material and ensure that no further or greater unauthorized disclosure of use of the material is made." Dkt. No. 164 ¶ 42. That is precisely what Plaintiffs did.

Defendant's argument that Plaintiffs should be sanctioned hinges on ignorance of the facts – facts JetBlue's counsel avoided discovering. Had Defendant conferred with Plaintiffs before filing its motion, it would have learned that Plaintiffs took extraordinary remedial measures, and the baselessness of Defendant's motion would have been revealed. But, no JetBlue lawyer ever conferred, or even attempted to confer, with Plaintiffs before JetBlue filed its false accusations of misconduct. Alioto Jr. Dec. ¶¶ 17-23.

On August 28, 2023, at 6:55 p.m. EDT, Elizabeth Wright, counsel for JetBlue, sent Plaintiffs' counsel an email notifying them for the first time that "JetBlue is filing a request that the Court issue sanctions." Alioto Jr. Dec. ¶ 17. Ms. Wright's email concluded, "We don't expect that you will consent to the motion." At 8:56 p.m. EDT, Plaintiffs' counsel asked Ms. Wright, "What are the factual and legal bases of your motion?" *Id*. ¶ 18. Plaintiffs' counsel anticipated the question would ultimately lead to a discussion of the motion's merits. *Id*. At 11:22 p.m. EDT, Ms. Wright responded with six bullet points outlining the general categories of topics forming the bases of the motion, all of which this opposition refutes. *Id*. ¶ 19. Just 32 minutes later, moments before midnight, Ms. Wright filed the motion for sanctions.

JetBlue's motion includes a certification, signed by Ms. Wright, that "counsel for Defendant conferred in good faith" with Plaintiffs "but were unable to resolve or narrow the

issues." Dkt. No. 209 at 4. But, the communications described in the paragraph above were the only ones exchanged between the parties regarding the motion. Alioto Jr. Dec. ¶ 23.

Local Rule 7.1, which requires a pre-filing meet and confer, "plays an important role in the practices and procedures of this District." *Sun Cap. Partners III, LP v. New England Teamsters & Trucking Indus. Pension Fund*, 329 F.R.D. 102, 105 (D. Mass. 2018). "[I]t fosters discussion between parties about matters before they come before the court, and it preserves scarce judicial resources." *Id*. quoting *Martinez* v. *Hubbard*, 172 F.Supp.3d 378, 385 (D. Mass. 2016). It is "not an empty exercise." *Id.* "Sanctions for non-compliance" with Local Rule 7.1's meet and confer provision "are both available and appropriate." *Id*. "[T]he failure of [a party] to comply with Rule 7.1 is an offense that harms the District Court as much as [the opposing party]." *Converse Inc.* v. *Reebok Int'l Ltd.*, 328 F.Supp.2d 166, 170 (D. Mass. 2004).

The facts in *Converse* are strikingly similar to the facts in this case. There, on the same day it filed a motion for contempt, counsel left a message for opposing counsel, stating *inter alia*, "I obviously don't expect you to assent to the motion for contempt." *Converse*, 328 F.Supp.2d at 173, n. 5. Here, Ms. Wright's email similarly assumes "We don't expect you will assent to the motion." Alioto Jr. Dec. ¶ 17. As in *Converse*, Ms. Wright then filed the motion, on the same day, without ever attempting to narrow the issues. The Magistrate Judge in *Converse* concluded counsel's conduct should be sanctioned, and the District Court "endorse[d] [that] reasoning and conclusion wholeheartedly." *Id.* at 170. It is no excuse that counsel assumes the opposing party will not assent. *Id*. at 174. As the *Converse* Court concluded, "Although it might be true that [Plaintiff] would not be likely to admit it was in contempt of the consent decree, *there could have been fruitful discussions to narrow the issue*." *Id*. (emphasis added). That is even more true in this case, where Defendant's motion for sanctions relies heavily on an incomplete understanding

13

of the facts that could have been corrected had Defendant followed the rules. A "meet and confer" is especially important before a party files a motion that accuses a lawyer of misconduct. That is one reason Rule 11 contains a mandatory 21-day "safe harbor" provision, which allows the parties to resolve the issue without burdening the Court. Fed.R.Civ.P. 11(c)(2).

Such reckless behavior by Defendant and its lawyers is not just a violation of Local Rule 7.1's meet and confer provision. By signing a motion presented to the Court, JetBlue represented that it had conducted an "inquiry reasonable under the circumstances" to justify the motion. Fed.R.Civ.P. 11(b). In fact, it appears JetBlue intentionally avoided making a reasonable inquiry by evading its obligation to confer. [7]

Key facts could have been corrected had Defendant conferred. For instance, Defendant claims Plaintiffs' counsel Joseph M. Alioto Sr. learned of the inadvertent disclosure "but *then* decided to comment on the record to Law360 regarding that same material." Def. Mot. at 6, n.2 (emphasis added). In truth, Mr. Alioto Sr. responded to a question from the reporter *before* he was made aware of the disclosure of redacted material. Alioto Sr. Dec. ¶ 19. The moment Mr. Alioto Sr. was told the reporter had accessed the redacted material, he admonished the reporter not to disclose it. *Id*.

Not only did JetBlue fail to inquire into the facts before filing a meritless motion, it also paints an inaccurate picture with facts it possessed.  JetBlue criticizes Plaintiffs by asserting "they waited hours to even respond to JetBlue's request for them to fix the redactions." (Def.

---

[7] Defendant's motion appears to violate Rule 11(b) in a number of respects. Plaintiffs' counsel have expended significant resources as a result of Defendant's actions, not only in analyzing and refuting Defendant's baseless claims, but in meticulously developing the evidence in defense of unjustified accusations of misconduct. "On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed.R.Civ.P. 11(c)(3).

Mot. at 2.) But, that is untrue. Plaintiffs first learned of the inadvertent disclosure between 3:04 p.m. and 3:12 p.m when they received an email on which a few of Plaintiffs' counsel had been copied. Herrman Dec. ¶ 18. Plaintiffs convened and took actions to remove the filing from PACER minutes later, and then called and emailed Court personnel seven times beginning at 3:51 p.m. Plaintiffs acted expeditiously. But, the first time Plaintiffs received any *request to act* from JetBlue was in an email at 4:10 p.m., to which Plaintiffs responded *4 minutes later* at 4:14 p.m that they had "immediately attempted to pull the filing, which can only be done by contacting the clerk. We have called and emailed. We will continue to try and get ahold of someone." Herrman Dec. ¶ 18 and Ex. 5; J. L. Alioto Dec. ¶ 6. In other words, JetBlue's lawyer knew Plaintiffs had acted immediately after they were made aware, yet it still represented in its motion that Plaintiffs "waited hours" to respond. [8]

There is no basis to conclude Plaintiffs violated any rule or any provision of the Protective Order. Defendant's unsupported accusation that Plaintiffs' counsel should be held in contempt for a "willful" violation of the Court's orders (Def. Mot. at 2) is false.

### 5.   *Plaintiffs Properly Presented Evidence Of "Antitrust Injury"*

Finally, Defendant argues Plaintiffs violated Local Rule 56.1 by including in their Opposition "immaterial arguments that go to the merits of the case." Def. Mot. at 7. Defendant does not discuss or even identify the purportedly "immaterial arguments." *Id*. It asks the Court to sanction Plaintiffs, accusing them of violating a Local Rule, but it does not bother to make an argument in support of that serious allegation. Defendant's argument is frivolous.

---

[8] Counsel for Spirit and JetBlue left a voicemail for one of Plaintiffs' counsel at 2:54 p.m. EDT. Alioto Jr. Dec. ¶ 4. But, counsel did not receive that message until a few hours later. *Id*. ¶ 5. Immediately on receiving the voicemail, Plaintiffs' counsel returned the phone calls and informed JetBlue lawyers that the voicemail had not been received until 6:35 p.m. EDT, Alioto Jr. Dec. ¶¶ 5-9, so JetBlue was aware of that fact at the time it filed its sanctions motion.

To the extent Defendant suggests Plaintiffs' Opposition argument about prices and capacity is "immaterial," Defendant's misunderstands its own motion. In their motion, Defendants argued that "Plaintiffs cannot establish … antitrust standing," and that "[f]or antitrust standing, Plaintiffs must also prove 'antitrust injury.'" Dkt. No. 173 at 3 (legal citation omitted). Naturally, Plaintiffs were entitled to confront those arguments by showing Plaintiffs *will* suffer "antitrust injury." "'[A]ntitrust injury' … means injury from higher prices or lower output, the principal vices of the antitrust laws." *Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325, 1334 (7th Cir. 1986). So, whether Defendants' merger will increase prices and reduce capacity is undeniably material to whether Plaintiffs will suffer antitrust injury. Defendants' own motion required Plaintiffs to cite and discuss the evidence Defendants now baselessly claim is "immaterial."

### III. DEFENDANT'S DISCUSSION OF PLAINTIFFS' IRRELEVANT LITIGATION HISTORY IS IMPROPER

Defendant's *ad hominem* attacks on Plaintiffs are inappropriate, irrelevant, and should be disregarded by the Court. Def. Mot. at 1, 4. JetBlue gratuitously criticizes Plaintiffs for having challenged previous airline mergers, but Plaintiffs' litigation history bears no logical connection to any purportedly sanctionable conduct. It is offered only to unfairly attack Plaintiffs, and its inclusion in Defendant's motion is facially improper. Unfortunately, this is not the first time JetBlue has levelled such irrelevant *ad hominem* attacks. *See* Dkt. No. 173 (Defs' Mot. Sum. Judg.) at 2, 14-16; Dkt. No. 184 (Plts' Opp. to Sum. Judg) at 17-19.

Plaintiffs are present and former travel agents who lived through and witnessed the effects of a series of airline mergers that have negatively impacted the industry since 2005. Their collective conviction in preserving competition in the airline industry was so strong they formed a group for that purpose. *See* Dkt. No. 184 at 17-20. Plaintiffs rely partly on having experienced

the negative effects of prior airline mergers in their desire to contest the negative effects on

competition and consumers that the JetBlue/Spirit merger will have. *Id*. Notwithstanding its

criticisms of Plaintiffs, JetBlue has conceded the airline industry has become overly consolidated

as a result of airline mergers of the past decade. *Id*. at 17. Yet, *Plaintiffs are the only ones who*

*challenged any of those mergers at the time*. *Id*. at 17-18. JetBlue hypocritically attacks Plaintiffs

for challenging the very mergers that JetBlue now concedes were problematic.

JetBlue's desperation in attacking Plaintiffs is most on display when it inappropriately

charges that Plaintiffs filed this case to "force JetBlue to pay a ransom." (Def. Mot. at 1.) The

word "ransom" is intentionally chosen to conjure images of criminality – an unsubtle libel – in

an attempt to bias the Court, demonstrating the impropriety of JetBlue's motion. JetBlue bases

this serious accusation on one fact: Plaintiffs' settlement of a single lawsuit. Nothing more.

Never mind Plaintiffs have never approached JetBlue to settle *this case*. Never mind it was the

*defendant* who approached Plaintiffs in the case that did settle. Declaration of Joseph M. Alioto

Sr. ("Alioto Sr. Dec."). Never mind Plaintiffs have never approached any other airline defendant

to settle a prior merger case. *Id.* Never mind the "strong and clear policy in favor of encouraging

settlements." *Conservation L. Found. of New England, Inc. v. Franklin*, 989 F.2d 54, 59 (1st Cir.

1993). JetBlue's accusation, meant to appeal to the basest sentiments, is divorced from the facts.[9]

Defendant does not simply note Plaintiffs' litigation history in a passing footnote. On the

contrary, this denigration of Plaintiffs occupies the opening paragraph of Defendant's

---

[9] Defendant seems to suggest Plaintiffs should be sanctioned for not producing documents
related to prior settlements. Def. Mot. at 4. Plaintiffs objected to producing those documents on
the basis that *inter alia* settlements in prior cases are irrelevant to this case. Defendants did not
seek to compel their production. Now they demand sanctions. Defendants outline no logical or
legal basis for sanctioning Plaintiffs for not disclosing documents they are not obligated to
produce.

memorandum and is the subject of Defendant's primary Argument "A." (Def. Mot. at 1, 4.)

Since that criticism has no relevance to a motion for sanctions, it is frivolous by definition. *See*

*In re Ames*, 993 F.3d 27, 34 (1st Cir. 2021) ("advocating a frivolous position" which is one

"unwarranted by existing law" violates Rule 11). It is "presented for an[] improper purpose" of

besmirching Plaintiffs' characters. Fed.R.Civ.P. 11(b)(1). Faced with a mountain of direct

evidence that its merger with Spirit is unlawful, JetBlue has desperately resorted to name-calling.

These tactics should not be condoned.

## CONCLUSION

For the reasons set forth herein, Defendant's Motion for Sanctions is without merit and

should be denied.


Dated: September 11, 2023                          Respectfully submitted,

                                                   ALIOTO LEGAL

                                                   By  */s/ Joseph M. Alioto Jr.*

                                                   Joseph M. Alioto Jr. (CA Bar No. 215544)
                                                   100 Pine Street, Suite 1250
                                                   San Francisco, California 94111
                                                   (*Admitted Pro Hac Vice*)

Robert F. Ruyak
Stephen G. Larson
Scott Gregory Herrman
LARSON LLP
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Tel: (213) 436-4888
Fax: (213) 623-2000
Email:slarson@larsonllp.com
Email:rruyak@larsonllp.com
Email:gherrman@larsonllp.com
(*Admitted Pro Hac Vice*)

Jeffery K. Perkins
LAW OFFICES OF JEFFERY K. PERKINS
1550-G Tiburon Blvd., Box 344
Tiburon, California 94920
Telephone: (415) 302-1115

Lingel H. Winters
LAW OFFICES OF LINGEL H. WINTERS
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-2941

Christopher A. Nedeau
NEDEAU LAW PC
154 Baker Street
San Francisco, CA 94117-2111
Telephone: (415) 516-4010
Email: cnedeau@nedeaulaw.net

Joseph M. Alioto
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104
Telephone: (415) 434-8900
(*Admitted pro hac vice*)

Josephine Alioto
THE VEEN FIRM
20 Haight Street
San Francisco, CA 94102
Telephone: (415) 673-4800
Email: j.alioto@veenfirm.com
(*Admitted pro hac vice*)

Lawrence G. Papale
LAW OFFICES OF LAWRENCE G. PAPALE
The Cornerstone Building
1308 Main Street, Suite 117
St. Helena, California 94574
Telephone: (707) 963-1704
(*Admitted pro hac vice*)

Robert J. Bonsignore, Esq.
BONSIGNORE TRIAL LAWYERS, PLLC
23 Forest Street
Medford, MA 02155
Phone: 781-856-7650
Email: rbonsignore@classactions.us

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that this document was filed through the ECF system on September 11, 2023 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Joseph M. Alioto Jr.*

JOSEPH M. ALIOTO JR.