UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GABRIEL GARAVANIAN, *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC.,<br><br>    *Defendants*. | Civil Action No.: 1:23-cv-10678-WGY |

**DECLARATION OF JOSEPH M. ALIOTO SR. IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS OR, IN THE ALTERNATIVE, MOTION FOR ORDER TO SHOW CAUSE**

I, Joseph M. Alioto, Sr., declare as follows:

1. I am an attorney and my firm is the Alioto Law Firm. I am co-lead counsel for the Plaintiffs in this case. I have personal knowledge of the following facts stated herein and could testify competently thereto if called to do so. I submit this Declaration in support of Plaintiffs' Opposition to Defendants' Motion for Sanctions ("Motion").

2. I am a member of the Supreme Court of the United States and the California Supreme Court.

3. I have argued antitrust cases before the Supreme Court of the United States, the Supreme Court of California, the United States Courts of Appeal for the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh (before the division of the Firth Circuit) Circuits, and I have tried antitrust cases in the major metropolitan and rural areas of the United States from Boston to Honolulu.

4. I have tried approximately 90 antitrust cases in the Federal District Courts throughout the country, including eight to ten antitrust trials in the state courts of California

1

under state antitrust laws, and that approximately 90 percent of those trials were jury trials.

5. I received a copy of the Motion for Sanctions on or about September 1, 2023.

6. The Motion, signed by Ms. Elizabeth M. Wright of the Cooley law firm, made statements that were false, personally insulting, and ignorant of the facts.

7. Neither Ms. Wright nor anyone from the Cooley offices, nor Ms. Wright's apparent collaborator, Mr. William Stallings of the Mayer Brown law firm (counsel for Southwest Airlines who filed similarly statements in Southwest's objections earlier in the action) contacted me prior to filing the Motion (or objection) in order to determine the accuracy of the accusations and the innuendoes that were published in the court filings. I have no personal relationship with any of the defense counsel including Ms. Wright or Mr. Stallings and Mr. Sunshine, I am informed and believe that Mr. Stallings and Sunshine were formally in the antitrust division with the Department of Justice and did nothing to prevent or press a lawsuit against any of the merging airlines over the prior decades. At the time there was substantial controversy between me and the old Department of Justice, because the Department of Justice was relying on mergers guidelines, which were not the law, instead of the binding decisions of the Supreme Court.

8. This declaration will deal with the statements made in the Motion for Sanctions seriatim.

9. I took the depositions of the Chairman and the CEO of Defendant JetBlue, Robin Hayes, as well as the Chairman, CEO and VP of Network Planning of Defendant Spirit Airlines, Edward Christie. The CEO of Defendant Spirit Airlines, H. McIntyre Gardner, and the the VP of Network Planning of Defendant JetBlue, John Patrick Kirby.

10. The twenty-four Plaintiffs in this case were originally referred to me by the late former majority leader of the United States Senate, Sen. Harry Reed, because of the conduct of the major airline's practices and consolidations that were injuring travel agents and their customers. The authority to proceed privately is the Supreme Court's decision in *American Stores v. California*, 495 U.S. 271 (1990) in which the Court stated as follows:

> We have recognized when construing § 16 that it was enacted "not merely to provide private relief, but . . . to serve as well the high purpose of enforcing the antitrust laws." Zenith Radio Corp., 395 U.S. at 395 U. S. 130-131. We have accordingly applied the section "with this purpose in mind, and with the knowledge that the remedy it affords, like other equitable remedies, is flexible and capable of nice 'adjustment and reconciliation between the public interest and private needs as well as between competing private claims.'" Ibid., quoting Hecht Co. v. Bowles, 321 U. S. 321, 321 U. S. 329-330 (1944).
>
> The Act's other provisions manifest a clear intent to encourage vigorous private litigation against anticompetitive mergers. Section 7 itself creates a relatively expansive definition of antitrust liability: to show that a merger is unlawful, a plaintiff need only prove that its effect "may be substantially to lessen competition." Clayton Act § 7, 38 Stat. 731, 15 U.S.C. § 18 (emphasis supplied). See Brown Shoe Co. v. United States, 370 U. S. 294, 370 U. S. 323 (1962).
>
> Section 16, construed to authorize a private divestiture remedy when appropriate in light of equitable principles, fits well in a statutory scheme that favors private enforcement, subjects mergers to searching scrutiny, and regards divestiture as the remedy best suited to redress the ills of an anticompetitive merger.

*American Stores, supra*, 495 U.S. at 283-285.

11. I and many of the Plaintiffs in this case have challenged the acquisitions of the major airlines and in each case, Plaintiffs intended to try the lawsuit and prevent the merger.

12. In no case did the Plaintiffs or counsel ever approach the defendants with any offer to settle any of the cases before trial, and indeed refused to attend any mediation unless otherwise ordered to do so, because of the belief that the defendants would not agree to annul their proposed merger or acquisition.

13. Except in two cases, all cases were settled by the Defendants to the satisfaction of the Plaintiffs, usually a few days before trial. In each of the settlements, the Defendants required a confidentiality agreement as to the terms of those agreements. In the absence of the offers by the Defendants and the acceptance by the Plaintiffs, the Plaintiffs were ready to try each case.

14. That Ms. Wright, apparently relying on the statements made by Mr. Stalling and

Sunshine in their objections, cited a case in which the Plaintiffs challenged the Southwest acquisition of Air Tran, the most prominent low-priced carrier in the industry after the Department of Justice failed to prosecute the case. two members of the Ninth Circuit simply said that the sanctions were awarded, without stating what they were. The Dissent, which Ms. Wright (and Mr. Stalling and Sunshine in their filing) withheld from the Court, by Judge Gould, stated as follows:

> "I respectfully decent. I would grant reconsideration and would deny Defendants' motion for sanctions, believing that that phase or the requisite degree of recklessness of Plaintiffs or their counsel has not been shown, and that the sanctions award may incorrectly discourage vigorous private prosecution of antitrust law claims that is beneficial to the public." *See* Motion, Ex. A (Order of November 23, 2011."

15.  On page 3 of the Motion for Sanctions, Ms. Wright states that Plaintiffs' counsel gave a press interview. In fact, I was called by the press with regard to the Plaintiffs' opposition to the Defendants' motion for summary judgment. In that interview, I stated to the reporter facts that were in the public domain, including facts from a power point presentation of Spirit Airlines and a letter and press release by the Spirit's chairman and CEO, to wit that JetBlue stated it will reduce capacity and raise fares after taking over Spirit. At the conclusion of the interview, the reporter stated that he had been able to manipulate the redacted portions of the filing. Declarant advised the reporter that there was a Protective Order covering the redacted provisions that he should not publish them. The reporter said that he was not a party to the Protective Order and intended to publish whatever it was that had been redacted. Subsequently, the reporter's article appeared, and at the bottom, the reporter noted that the Plaintiffs have specifically told him not to publish what he reverse-engineered. I did not discuss any confidential matter, and I was unaware of what the reporter did until the conclusion of the conversation.

16.  On page 6 of the Motion, the purported statement made by the Declarant to the press is practically word for word an admission by the Defendants in their press release of May

4

2022 and the power point presentation published by Spirit.

17. Therefore, it is shown that the statement made by Ms. Wright is false on its face. The information I provided discloses the public record and striking admissions by the top officers of the Defendants. None of the information or the statements were confidential.

I declare under penalty of perjury and the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated: September 11, 2023                      /s/ *Joseph M. Alioto, Sr.*
                                               Joseph M. Alioto, Sr. Esq.
                                               Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system on September 11, 2023, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Joseph M. Alioto Jr.*
Joseph M. Alioto Jr.
