UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GABRIEL GARAVANIAN, et al.,<br><br>   *Plaintiffs*,<br><br> v.<br><br>JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC.,<br><br>   *Defendants*. | Civil Action No. 1:23-cv-10678-WGY |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE*
TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF DR. HAL SINGER**

  Defendants respectfully move *in limine* pursuant to Fed. R. Evid. 702 to exclude opinions and testimony of Plaintiffs' expert, Dr. Hal Singer, that are unreliable, improperly based on the opinions of non-testifying experts, and not helpful to the trier of fact. Dr. Singer's opinions focus primarily on evaluating: (1) the prospect of anticompetitive harm from the merger; (2) merger-specific efficiencies; and (3) divestitures. *See, e.g.*, Amended Expert Report of Hal Singer, Ph.D., Exhibit 1 ¶¶ 2-3, 103-116, 117-125, 126-143; Reply Report of Hal Singer, Ph.D., Exhibit 2 ¶¶ 1-5, 21, 31.[1] Defendants move to exclude two portions of Dr. Singer's opinions:

  ***First,*** Defendants move to exclude Dr. Singer's opinions concerning the second issue—the effect of JetBlue's post-merger efficiencies—because they are entirely based on his reading and repurposing of JetBlue's "deal modeling" documents, and thus not proper expert testimony. *See* Exhibit 1 ¶¶ 117-125. Dr. Singer did not confirm the assumptions made nor methodologies

---

[1] Citations to exhibits refer to the exhibits filed with the Declaration of Elizabeth M. Wright in Support of Defendants' Motion *In Limine* to Exclude Opinions and Testimony of Dr. Hal Singer.

1

used in these documents and did not employ any economic expertise to assess the accuracy and reliability of the information on which he was basing his opinions on competitive harm.  Merely taking business documents at face value and drawing conclusions from them does not constitute permissible expert opinion testimony under Rule 702.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand" (quoting *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597 (1993))).

***Second***, Defendants move to exclude all portions of Dr. Singer's report and proposed testimony that rely on analysis conducted by DOJ's experts—Dr. Chipty and Prof. Gowrisankaran.  Many of Dr. Singer's findings adopt Dr. Chipty and Prof. Gowrisankaran's analyses wholesale, without any independent, empirical analysis.  Dr. Singer cannot import derivative conclusions or validate his own conclusory, nonempirical findings by reference to the findings of other experts who are not testifying in this case.  Defendants respectfully submit that Dr. Singer's testimony and opinions should be limited to conclusions he reached through his own empirical analysis.  *See United States v. Zolot*, 968 F. Supp. 2d 411, 426-27 (D. Mass. 2013) (excluding expert opinion that "presented no independent analysis" and merely relied on another expert's opinion).

### A.   Dr. Singer Did Not Use Any Methodology to Assess Alleged Competitive Harm, and His Testimony Will Not Assist the Trier of Fact

Experts must do more than just read and characterize documents: experts must use a reliable methodology and independent analysis rather than repackaging evidence to fit the narrative of the proffering party.  *See Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 32 (1st Cir. 2012) (explaining that analysis of expert opinions "entails an examination of his conclusions to determine whether they flow rationally from the methodology employed"); *Anderson News, L.L.C. v. Am. Media, Inc.*, 2015 WL 5003528, at *4 (S.D.N.Y. Aug. 20, 2015), *aff'd*, 899 F.3d 87 (2d Cir. 2018)

(excluding an expert's opinions when they "merely recit[ed] what is on the face of . . . document[s] produced during discovery") (internal quotations and citation omitted); Fed. R. Evid. 702(c) (requiring an expert's testimony to be "the product of reliable principles and methods").

Moreover, when an expert relies on studies or analyses by a businessperson of one of the parties, he must verify, rather than simply assume, that data's reliability. As the Third Circuit explained in excluding expert testimony relying solely on corporate projections:

> An expert's lack of familiarity with the methods and the reasons underlying [someone else's] projections virtually preclude[s] any assessment of the validity of the projections through cross-examination. . . . Here, [the expert] knew that the [projections were] presented to the Board by experienced management professionals, but he did not know who initially calculated the . . . figures. He did not know whether the [] projections were calculated by ZF Meritor management, lower level employees at ZF Meritor, or came from some outside source. Nor did [the expert] know the methodology used to create the [projections] or the assumptions on which the [projection's] price and volume estimates were based.

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 292-93 (3d Cir. 2012) (internal quotations and citation omitted); *see also AngioDynamics, Inc. v. C.R. Bard, Inc.*, 537 F. Supp. 3d 273, 339 (N.D.N.Y. 2021) (excluding expert opinion based on company's projections where expert offered no explanation for "how the data was created" nor "validat[ed] its reliability").

Dr. Singer performed ***no*** meaningful independent analysis of JetBlue's "deal modeling." Instead, Dr. Singer simply read and rehashed JetBlue's "deal modeling" documents and then drew conclusions about post-merger efficiencies without applying any independent scientific or expert methodology to his review. *See, e.g.*, Exhibit 1 ¶¶ 117-125; Deposition Transcript of Hal Singer, Exhibit 3 at 124:12-129:10 (explaining he was "relying on [JetBlue] documents"). For example, Dr. Singer reviewed a JetBlue business document, which included information about JetBlue's projected cost savings associated with the merger, and concluded that JetBlue's plan  "is not designed as the type of cost savings that can be returned to consumers in the form of lower prices."

3

Exhibit 1 ¶¶ 123-125. But a cursory review of party documents is not a sufficient basis for expert opinion, and here Dr. Singer performed no scientific verification or analysis of the purported cost-savings or purported output reduction in question, let alone whether it could be returned to consumers. *See ZF Meritor*, 696 F.3d at 292-93 (excluding expert opinion when they only relied on business documents and did not review the underlying methodologies, assumptions, or calculations).

Dr. Singer also admitted in his deposition that his post-merger efficiency conclusions were based only on a review of JetBlue's documents and not on any technical or specialized knowledge. Exhibit 3 at 124:12-125:7, 126:12-24 (stating he "rel[ied] on internal [JetBlue] documents"). Indeed, he said: "[t]he documents tell me what the plan is . . . I can then lean on my economic insight and teachings and principles to say that, for sure, JetBlue, when it makes these decisions, has to have an eye towards how the market and its competitors would react." *Id.* at 127:2-12. But simply *being* an economist does not render Dr. Singer's opinions "economic analysis" in the absence of independent additional economic work to corroborate those conclusions.

Experts do not have "*carte blanche* . . . to substitute their views for matters well within the ken of the [fact finder]." *Maciel v. Thomas J. Hastings Props., Inc.*, 2012 WL 13047595, at *6 (D. Mass. Nov. 30, 2012) (internal quotations and citation omitted). Dr. Singer's conclusory regurgitation of JetBlue analyses will not assist the finder of fact here; the Court is well-equipped to read the documents, hear the fact testimony, and make a determination of the import of this factual information. *See Iconics, Inc. v. Massaro*, 266 F. Supp. 3d 461, 473 (D. Mass. 2017) (excluding expert testimony where it "lack[ed] any methodological explanation"). Because his opinions are not based on independent analysis, not grounded in a sound methodology, and he fails to verify the data on which he relies, Dr. Singer's opinions regarding JetBlue's post-merger

4

efficiencies do not offer anything that "will help the trier of fact to understand the evidence or to determine a fact in issue" and should be excluded.  Fed. R. Evid. 702(a).

> **B.**     **Dr. Singer Improperly Relied on DOJ Expert Opinions Because He Did Not Replicate or Verify Their Work, and Neither DOJ Expert Is Testifying in This Case**

An expert cannot be a mere conduit for another expert's opinion.  *See In re Intuniv Antitrust Litig.*, 2020 WL 5995326, at *10 (D. Mass. Oct. 10, 2020) (excluding in part the testimony of an expert because he provided opinions based on expert reports from the original litigation between the parties, did not offer his own expertise, and "would be testifying as to the opinions of another expert, who would be unavailable for cross-examination"); *United States v. Zolot*, 968 F. Supp. 2d 411, 426-27 (D. Mass. 2013) (excluding a doctor's expert opinion because "he provided no support beyond the medical examiner's diagnosis for his own opinion" and "presented no independent analysis").

Here, neither Dr. Chipty nor Prof. Gowrisankaran are testifying in this case.  Plaintiffs obtained copies of DOJ's expert reports as a result of a provision in the Case Management Order.  *See* Scheduling and Case Management Order at 1, Dkt. 96 (requiring "[a]ny . . . expert report and accompanying exhibits [to be] served or made available to . . . all Parties on the same terms as if it had been served, produced, or received in this case").  After Defendants produced the DOJ reports, Dr. Singer submitted a supplemental report—which was not permitted under the Case Management Order—that included cherrypicked references to Dr. Chipty's and Prof. Gowrisankaran's reports where they supported his analyses or conclusions.  In doing so, Dr. Singer simply borrowed from the record developed in the DOJ case while making no effort to apply his own technical or specialized knowledge, or otherwise show he was justified in relying on these expert opinions.

Dr. Singer's references to the opinions of Dr. Chipty and Prof. Gowrisankaran are further improper because Dr. Singer made no attempt to replicate or verify them.  For example, Dr. Singer adopted Dr. Chipty's opinions about divestitures to conclude that Defendants' "divestiture defense cannot address [] percent of the most problematic overlapping routes" but did no independent work to verify Dr. Chipty's conclusions. Exhibit 2 at ¶ 29; Exhibit 3 at 88:14-89:11.  Dr. Singer similarly relied on Dr. Chipty's analysis when discussing the effects of market entry by other airlines, agreeing that his gross upward pricing pressure ("GUPPI") analysis did not account for entry prospects but crediting  Dr. Chipty as having done "a really nice job laying out all the inputs that an airline would need to invade a new market, down to the baggage and employees and the like." Exhibit 3 at 128:20-129:4.  But as Dr. Singer's testimony and report readily indicate, he did nothing beyond reading her report to verify Dr. Chipty's opinions.  *Id.* at 88:23-89:6 (explaining "I didn't endeavor to replicate all of [Dr. Chipty's] work").

Dr. Singer also relied on Prof. Gowrisankaran's opinions to make conclusions he could not have independently drawn.  He "lean[ed] on a very interesting and . . . powerful finding" from Prof. Gowrisankaran to draw conclusions about the JetBlue Effect, saying "I made it with logic and [Prof. Gowrisankaran] actually made it . . . with original empiricism." *Id.* at 86:24-88:13.  Dr. Singer then used Prof. Gowrisankaran's analysis as his only basis to say that, absent the JetBlue Effect, "refashioning [Spirit's] capacity as JetBlue" would be a loss for consumers, providing no support for this conclusion beyond his restating Prof. Gowrisankaran's report.  *Id.*

Dr. Singer also cited certain methodological choices made by Prof. Gowrisankaran— specifically his use of GUPPIs and passenger shares, and his method for calculating diversion ratios—to validate his own approaches in this case.  Exhibit 2 at ¶ 22 ("Dr. Gowrisankaran . . . also measured concentration based on passenger shares"), ¶ 33 ("indeed, another economic expert

6

for the Department of Justice, Dr. Gautam Gowrisankaran, also computed GUPPI values"), ¶ 40 n.48 (citing his calculation of diversion ratios saying "Dr. Gowrisankaran, also used the same approach").  However, nowhere in either report did Dr. Singer suggest he had any economic justification for relying on Prof. Gowrisankaran's choices.  In fact, during his testimony, he admitted that he did not replicate or verify Prof. Gowrisankaran's work.  Exhibit 3 at 88:14-89:11.  Thus, Dr. Singer's reliance on Dr. Chipty's and Prof. Gowrisankaran's economic analysis and conclusions, and references to Prof. Gowrisankaran's methodological choices, were improper and should be excluded.

## CONCLUSION

Defendants respectfully request that the Court exclude the portions of Dr. Singer's opinions and any testimony regarding merger-specific efficiencies and the work done by non-testifying experts in this case pursuant to Federal Rule of Evidence 702.  Once the Court rules on this motion, the parties can meet and confer to reach agreement on the precise contours of Dr. Singer's opinions that should be excluded.

Dated:  September 18, 2023            Respectfully submitted,

/s/ Elizabeth M. Wright
Zachary R. Hafer (MA BBO #569389)
Elizabeth M. Wright (MA BBO #569387)
Zachary Sisko (MA BBO #705883)
Cooley LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Tel: 617-937-2300
zhafer@cooley.com
ewright@cooley.com
zsisko@cooley.com

Ethan Glass (*Pro Hac Vice*)
Dee Bansal (*Pro Hac Vice* forthcoming)
Matt K. Nguyen (*Pro Hac Vice*)
Cooley LLP

1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 2004-2400
Tel: 202-842-7800
Fax: 202-842-7899
eglass@cooley.com
dbansal@cooley.com
mnguyen@cooley.com

*Attorneys for Defendant JetBlue Airways Corporation*

*/s/ Samuel N. Rudman*
Samuel N. Rudman (MA BBO #698018)
Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
Telephone: +1 617 248 4034
srudman@choate.com

*/s/ Andrew C. Finch*
Andrew C. Finch (*Pro Hac Vice*)
Eyitayo St. Matthew-Daniel (*Pro Hac Vice*)
Jay Cohen (*Pro Hac Vice*)
Kate Wald (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: 212-373-3000
Fax: 212-757-3990
afinch@paulweiss.com
tstmatthewdaniel@paulweiss.com
jcohen@paulweiss.com
kwald@paulweiss.com

Meredith R. Dearborn (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel: 628-432-5100
Fax: 628-232-3101
mdearborn@paulweiss.com

*Attorneys for Defendant Spirit Airlines, Inc.*

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this 18th day of September, 2023, the foregoing document was filed through the ECF system and will be sent electronically to the registered participants on the Notice of Electronic Filing and paper copies will be sent to any non-registered participants.

*/s/ Elizabeth Wright*
Elizabeth Wright

291251722