**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

---

GABRIEL GARAVANIAN, et al.,

       *Plaintiffs*,

   v.

JETBLUE AIRWAYS CORPORATION and
SPIRIT AIRLINES, INC.,

       *Defendants*.

Civil Action No. 1:23-cv-10678-WGY

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF TED P. TATOS**

## TABLE OF CONTENTS

**Page**

I.    LEGAL STANDARD.................................................................................................. 2

II.    ARGUMENT ............................................................................................................. 3

    A.    The Tatos Report Is Not Relevant to the Issues in this Case ................................ 3

    B.    Mr. Tatos Fails to Independently Review or Verify the Data and
         Methodologies of the Third-Party Materials He Purports to Rely on.................... 4

    C.    Mr. Tatos's Opinions Are Unreliable and Untethered to Verifiable
         Methodology ........................................................................................................ 6

         1.    Mr. Tatos's Opinion on Overlap and Spirit-Only Routes Is
              Unreliable ................................................................................................ 7

         2.    Mr. Tatos's "Reverse Spirit Effect" Formula Provides No Value............ 9

III.    CONCLUSION......................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  2015 WL 5003528 (S.D.N.Y. Aug. 20, 2015),
  *aff'd*, 899 F.3d 87 (2d Cir. 2018) ............................................................5

*Cal. Coll. Inc. v. UCN Inc.*,
  440 P.3d 825 (Utah Ct. App. 2019) ....................................................1, 3, 4

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ................................................................... *passim*

*Downing v. Select Rehab., Inc.*,
  2017 WL 3820946 (D. Me. Aug. 31, 2017) ...........................................3

*Earley Info. Sci., Inc. v. Omega Eng'g, Inc.*,
  575 F. Supp. 3d 242 (D. Mass. 2021) ...................................................3

*In re Elec. Books Antitrust Litig.*,
  2014 WL 1282298 (S.D.N.Y. Mar. 28, 2014) ........................................2, 7, 9, 11

*G v. Fay Sch., Inc.*,
  282 F. Supp. 3d 381 (D. Mass. 2017) ...................................................6, 7, 8, 10

*Juarez v. Friess*,
  2016 WL 3551690 (W.D. Pa. June 30, 2016) .........................................6

*In re Neurontin Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2009 WL 3756328 (D. Mass. Aug. 14, 2009) .........................................3

*Riani* v. *Louisville Ladder, Inc.*,
  2010 WL 2802040 (D. Mass. July 14, 2010) ..........................................10

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
  2019 WL 5310220 (D. Del. Oct. 21, 2019) ............................................6

*Rothbaum v. Samsung Telecomms. Am., LLC*,
  52 F. Supp. 3d 185 (D. Mass. 2014) .....................................................3, 5

*Saia* v. *Sears Roebuck & Co.*,
  47 F. Supp. 2d 141 (D. Mass. 1999) .....................................................10

*Samaan v. St. Joseph Hosp.*,
  670 F.3d 21 (1st Cir. 2012) .................................................................3

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co.*,
 295 F.3d 68 (1st Cir. 2002)....................................................................................................3

*Smith v. Jenkins*,
 732 F.3d 51 (1st Cir. 2013).....................................................................................................9

*Transcontinental Gas Pipe Line Corp. v. State Oil & Gas Bd. of Miss.*,
 474 U.S. 409 (1986)................................................................................................................9

*United States v. Zolot*,
 968 F. Supp. 2d 411 (D. Mass. 2013).....................................................................................6

**Other Authorities**

Fed. R. Evid.
 403...........................................................................................................................................6
 702...................................................................................................................................*passim*

Defendants respectfully move pursuant to Fed. R. Evid. 702 to preclude the opinions and testimony of Plaintiffs' expert, Mr. Ted P. Tatos, that are irrelevant, unreliable, and cumulative. Mr. Tatos's Amended Expert Report—running a sum total of seven pages—opines that the proposed merger is "likely to threaten loss or damage to the Plaintiffs," and purports to quantify that alleged harm based on the "available evidence."  Exhibit 1, Expert Report of Ted P. Tatos (served July 28, 2023, as modified August 16, 2023) (the "Tatos Report"), ¶ 1.[1]  But the Tatos Report should be excluded because it offers opinions that are irrelevant to the issues in this case, untethered to independent verification, and based on unreliable methodologies.

*First*, the Tatos Report is irrelevant because Mr. Tatos conducted a damages analysis in a case where Plaintiffs do not seek damages.  Opinions that "do[] not relate to any issue in the case [are] not relevant and ergo, non-helpful."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (quotation omitted).  This is reason enough to exclude Mr. Tatos's opinions altogether.

*Second*, Mr. Tatos did not independently verify or assess the sources he relies on.  Mr. Tatos's conclusions derive from: (1) two articles that refute his opinions; (2) his misreading of just two JetBlue documents (tellingly, he cites zero Spirit documents); and (3) the similarly unreliable report of Plaintiffs' second expert, Hal Singer.  Remarkably, Mr. Tatos performed no independent review of the data or formulas in the sources underpinning his opinion, and no independent assessment as to their empirical reliability or economic feasibility.  Appellate courts have excluded him on this very basis.  *Cal. Coll. Inc. v. UCN Inc.*, 440 P.3d 825, 831-32 (Utah Ct. App. 2019) (finding Mr. Tatos's analyses "flawed," "inaccurate," "erroneous," "unreliable," and reliant on "a 'summary' prepared [by another person].").

---

[1] Citations to exhibits refer to the exhibits filed with the Declaration of Elizabeth M. Wright in Support of Defendants' Motion to Exclude Expert Opinions and Testimony of Ted P. Tatos.

***Third***, Mr. Tatos fails to employ scientific methodology.  Untethered to real world facts, Mr. Tatos inexplicably treats each and every one of hundreds of routes as identical.  In doing so, Mr. Tatos disregards market realities, ignoring key variation between specific routes (*e.g.*, Big Four presence, the JetBlue Effect, passenger and revenue shares, Spirit's organic exits, ULCC presence or entry, and Plaintiffs' likely future travel) and specific airlines (*e.g.*, fare classes, loyalty programs, bundled amenities, and Spirit's ancillary fees).  This complete disregard for factual differences is unsound for any quantitative analysis.  *In re Elec. Books Antitrust Litig.*, 2014 WL 1282298, at *16 (S.D.N.Y. Mar. 28, 2014) (excluding expert whose "hypothesis rests on layers of assumptions, many of which are untethered to the real world or at odds with the facts").

Mr. Tatos's analysis is further unreliable because he bases his conclusions on a single formula—New Fare = Current Fare * SE/(1-SE)—in which the pivotal variable is one he calls the "Spirit Effect," or "SE," but he fails to quantify that variable.  Mr. Tatos admits that quantifying the Spirit Effect is a ***prerequisite*** to using his formula but bafflingly places the burden on the factfinder to quantify it.  So while Mr. Tatos claims he quantified Plaintiffs' prospective loss, that is incorrect, since he could not do so without quantifying the Spirit Effect.[2]  That, of course, makes his entire formula useless for the factfinder.

For these reasons, the Tatos Report should be excluded pursuant to Fed. R. Evid. 702.

## I.    LEGAL STANDARD

Courts "act as gatekeepers" to unreliable expert testimony, and must "ensur[e] that proffered expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'"

---

[2] Because Mr. Tatos did not quantify the Spirit Effect, he could not run his formula for even a single route.  Thus, he could not estimate the monetary loss for a single Plaintiff.  He could not even say confidently whether the alleged monetary loss for Plaintiffs would even exceed "$10,000."  Exhibit 2, Rough Deposition Transcript of Ted Tatos ("Tatos Dep.") at 184:11-15 ("Q. Do you think the amount of monetary harm [Plaintiffs] would face would be more than $10,000? . . . . A.  I don't know.").

*Earley Info. Sci., Inc. v. Omega Eng'g, Inc.*, 575 F. Supp. 3d 242, 244 (D. Mass. 2021) (quoting *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 31 (1st Cir. 2012)); *see* Fed. R. Evid. 702(b), (c), (d) (expert testimony must be based on "sufficient facts or data," and "reliable principles and methods" "reliably applied . . . to the facts").  This requires evaluating whether an expert's "reasoning or methodology . . . properly can be applied to the facts in issue." *Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co.*, 295 F.3d 68, 80 (1st Cir. 2002).  Courts exclude opinions reliant on "selective readings" of other sources unmoored to "independent analysis." *Rothbaum v. Samsung Telecomms. Am., LLC*, 52 F. Supp. 3d 185, 195 (D. Mass. 2014); *Cal. Coll.*, 440 P.3d at 828, 831-32.  The offering party bears the burden of establishing the opinion's reliability. *In re Neurontin Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2009 WL 3756328, at *3 (D. Mass. Aug. 14, 2009).

## II.    ARGUMENT

### A.    The Tatos Report Is Not Relevant to the Issues in this Case

Mr. Tatos opines on whether the proposed merger is "likely to threaten loss or damage to the Plaintiffs in this matter," and whether that purported loss can "be quantified with reasonable certainty based on the available evidence."  Tatos Report ¶ 1.  Mr. Tatos' opinions on these questions are irrelevant here because ***Plaintiffs are not seeking damages***.[3]  That should be the end of the inquiry.  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (quotation omitted).  Courts regularly exclude expert opinions and testimony where, as here, they do not bear on any live issues relevant to the case. *See, e.g.*, *Downing v. Select Rehab., Inc.*, 2017 WL 3820946, at *9-10 (D. Me. Aug. 31, 2017) (excluding expert testimony that had "no bearing").

---

[3] On one hand, Plaintiffs insist they will suffer irreparable injury, such that an injunction is the only acceptable remedy.  *See* Pls.' Mem. in Opp. to Defs.' Mot. for Summ. J. (Dkt. 184), at 14-16.  And yet, they have retained Mr. Tatos for the sole purpose of "quantif[ying]" their alleged monetary damages.  Tatos Report ¶ 1.  Plaintiffs cannot have it both ways.

**B.      Mr. Tatos Fails to Independently Review or Verify the Data and Methodologies of the Third-Party Materials He Purports to Rely on**

Mr. Tatos's Report relies entirely on a handful of sources, which he selectively quotes out of context, to make sweeping conclusions about harm. Despite his heavy reliance on these sources, Mr. Tatos admits that he did not conduct any independent review of the underlying data or independent assessment regarding their formulas and findings. His opinion has been excluded in the past for these same reasons. *Cal. Coll.*, 440 P.3d at 832 (excluding Tatos for "us[ing] unverified and summary data" without "independently verif[ying], even minimally, the accuracy of the data set"). The same result should issue here.

First, Mr. Tatos relies on two non-peer-reviewed articles authored by other people to reach his sweeping conclusions about a quantified Spirit Effect. However, both articles, when read in full, contradict his opinions regarding the Spirit Effect. The first, a 2015 article (written by a person who, according to his LinkedIn, is not an economist),[4] finds that average fares fall when JetBlue, Spirit, or Frontier enters routes and that JetBlue's entry has a more significant downward effect on Big Four fares than Spirit's entry.[5] *See* Tatos Report ¶ 22 n.9. The same is true of the 2013 article Mr. Tatos relies on, which in fact explains that, as of 2012, JetBlue entry "is associated

---

[4] *See* https://www.linkedin.com/in/youngnicholas/.

[5] In particular, the Hopper article notes that "[a]ll three non-legacy carriers exerted downward pressure on prices," and explicitly states that "JetBlue and Frontier have had the biggest impact on legacy carriers' pricing specifically, driving them down by about 21%." *See* Nicholas Young, *Forecasting Vulnerability in an Ultra-Low-Cost World*, Hopper (Dec. 2, 2015), https://www.linkedin.com/pulse/forecasting-vulnerability-ultra-low-cost-world-nicholas-young. Even further, the Hopper article refutes Mr. Tatos's formula concerning the reverse Spirit Effect. *See id.* ("Notably, if [JetBlue, Frontier, or Spirit] exited a route, airfares increased about 11% – recovering somewhat but not fully in the months after their departure. So [these airlines] caused a lasting price shift even when they no longer operated in that market."). Despite his reliance on the Hopper article for the Spirit Effect, Mr. Tatos fails to explain the gaping discrepancy between the Hopper article's findings and his Report. *Id.* at 39:11-40:4 (testifying he "relied on" the "Hopper article" to ascertain the Spirit Effect).

with the largest decrease in average fares," even before adding in Spirit's ancillary fees.[6]   In addition, and critically, Mr. Tatos undertakes no review of the data, formulas, or methodologies from those articles, and he makes no effort to reproduce, validate, or refute their findings.[7]

Second, Mr. Tatos's analysis centers on "selective readings" of just two JetBlue documents (and zero Spirit documents) to make sweeping claims about whether Spirit actually affects other carriers' prices on all routes, once again undertaking no verification of the underlying data and no independent analysis of his own.[8]  *Rothbaum*, 52 F. Supp. 3d at 195-96.  This is precisely the type of unreliable methodology that Fed. R. Evid. 702 guards against.  *Anderson News, L.L.C. v. Am. Media, Inc.*, 2015 WL 5003528, at *4 (S.D.N.Y. Aug. 20, 2015), *aff'd*, 899 F.3d 87 (2d Cir. 2018) (excluding expert opinion when they "merely recit[ed] what is on the face of . . . document[s] produced") (cleaned up).

Third, the Tatos Report leans heavily on the report of Hal Singer, Plaintiffs' second economic expert.  Tatos Report ¶ 14 (relying on Singer Report to draw conclusions regarding post-merger price impact and effects).  Even as he regurgitates Dr. Singer's unreliable report to reach the same opinion that "harm to consumers would directly result," Mr. Tatos admits he did not independently run any of Dr. Singer's analyses.  *See, e.g.*, Tatos Dep. 112:19-20-25, 113:1-4, 113:9-10, 113:12-15, 130:20-21 (confirming he did not independently run Dr. Singer's analyses);

---

[6] *See* Tatos Report ¶ 22 n.7 (citing Michael D. Wittman and William S. Swelbar, Evolving Trends of US Domestic Airfares: The Impacts of Competition, Consolidation, and Low-Cost Carriers, MIT Small Community Air Service White Paper No. 3. Report No. ICAT-2013-07, August 2013).

[7] Tatos Dep. at 35:20-21 ("I did not have access to the data that [Hopper] used so as to independently confirm the findings here."); *id.* at 36:17-20 ("I didn't do an independent analysis to check those [Hopper] numbers, so those -- so there's nothing in my report that would -- that would provide a verification."); *id.* at 79:5-6 ("I didn't review or -- or perform an independent analysis of that [MIT] report's findings.").

[8] Tatos Dep. at 146:25-147:1 ("So I didn't do any analysis to replicate [JetBlue's] own work."); 199:5-7 (I didn't prepare an independent analysis [] to double-check what JetBlue itself did"); *id.* at 200:13-14 ("I didn't do an independent analysis [] to confirm all of JetBlue's calculations.").

*see also* Defendants' Memorandum in Support of Motion *In Limine* to Exclude Opinions and Testimony of Dr. Hal Singer (Dkt. 230).  Indeed, Mr. Tatos fails to independently identify or verify ***any economic impact the merger will have***.  He instead wholly relies on the Singer Report to categorize and identify those routes for him.  *United States v. Zolot*, 968 F. Supp. 2d 411, 426 (D. Mass. 2013) (excluding expert who "relied upon" another expert "to make []his determination" and failed to offer "independent analysis").  "Merely to have partisan experts appear to vouch for previous experts violates Fed. R. Evid. 403 and would needlessly present cumulative evidence, waste time, and mislead the jury."  *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 2019 WL 5310220, at *3 n.5 (D. Del. Oct. 21, 2019) (quotation omitted); *Juarez v. Friess*, 2016 WL 3551690, at *1 (W.D. Pa. June 30, 2016) (excluding as report that "would essentially amount to [one expert] vouching for [the other's] opinions").

Accordingly, because Mr. Tatos offers minimal independent analysis and, instead, rests on a handful of third-party sources that he did not independently review, verify, or reproduce, the Court should exclude his Report.  *See* Fed. R. Evid. 702(c) (expert testimony must derive from "reliable principles and methods"); *Daubert*, 509 U.S. at 593 (expert reasoning and methodology must be "scientifically valid"); *G v. Fay Sch., Inc.*, 282 F. Supp. 3d 381, 391 (D. Mass. 2017) (excluding expert who "lack[ed] sufficient facts or data" and "[fell] short under Rule 702(b)").

### C.     Mr. Tatos's Opinions Are Unreliable and Untethered to Verifiable Methodology

Mr. Tatos's analysis regarding Plaintiffs' alleged harm is rife with errors rendering his opinions and testimony unreliable, thereby warranting exclusion.  Specifically, Mr. Tatos's analysis relies on average fares (rather than route-specific fares) and is infected with analytical omissions, non-independent analysis, and unsound methodology.  *See Daubert*, 509 U.S. at 593. His opinions reflect precisely the type of analysis that courts routinely exclude to preserve

scientific reliability and integrity in the judicial process. *In re Elec. Books*, 2014 WL 1282298, at *12 (excluding expert whose analysis "standing alone . . . [did] little more than present a collection of facts in a pseudo-scientific way").

### 1.    Mr. Tatos's Opinion on Overlap and Spirit-Only Routes Is Unreliable

Mr. Tatos asserts without basis that Spirit typically offers lower fares than JetBlue on average where both carriers serve the given route.  Tatos Report ¶ 21.  From there, Mr. Tatos next asserts, again without support, that post-merger Plaintiffs would pay higher fares on routes where Spirit and JetBlue currently overlap, because Spirit would not operate on those routes."  *Id.* ¶ 26.

However, Mr. Tatos's assertions regarding JetBlue's fares are unreliable for two main reasons.  First, the report fails to undertake any specific analysis, blatantly ignoring the differences in competitive dynamics on specific routes.  Second, in arbitrarily asserting that JetBlue offers higher fares, Mr. Tatos failed to take into account Spirit's ancillary fees and instead only relied on Spirit's base fares.  *Id.* ¶ 21; *Fay Sch.*, 282 F. Supp. 3d at 391.  Both these errors drastically undermine the credibility and reliability of Mr. Tatos's conclusions.

Mr. Tatos's Report purports to investigate price differences on a "route-by-route basis."  It does not.  His conclusion relies entirely on ***average*** price and fails to account for the significant variance between origin-destination pairs.  *Compare id.* ("I have performed my own analysis . . . on a route-by-route basis") *with* Tatos Dep. at 43:4-5 ("I didn't do any route specific analysis.").  Mr. Tatos concedes that his Report never identifies the routes where JetBlue offers fares lower than Spirit—even though his own analysis found that to be true on several overlap routes.[9]  Nor did he account for the JetBlue Effect or JetBlue's unbundled Blue Basic fare.  *Id.* at 160:14 ("The

---

[9] *Id.* at 119:15-23 ("[O]n five percent of routes JetBlue's fares are lower than Spirit's or equivalent to; right?  . . .  A. Yes.  Q. And sitting here today, do you know which routes that five percent are? A. I do not.  Q. Do you know if plaintiffs have flown on any of those routes that are part of that five percent?  A. I do not.").

JetBlue effect is not relevant to my analysis."); *id.* at 122:15-21 ("[Q,]   [Y]ou didn't compare JetBlue's basic product to the Spirit fare, did you? . . . A.  I didn't do a fare by fare comparison."). Mr. Tatos's sole reliance on average price—without accounting for routes where, under his analysis, customers have access to lower JetBlue fares, JetBlue's unbundled fare option, or JetBlue's price discipline on other airlines—offers minimal insight into fares on any specific routes and fails to measure whether any Plaintiff who flies a specific route would face harm.  *Id.* at 120:9-10 ("I didn't calculate [] a fare differential on a route by route basis.").

Similarly, Mr. Tatos does not consider competitive conditions on any particular route (such as which carriers service that route, revenue or passenger share, or whether the Big Four airlines provide basic economy fares on the route) that may impact the fares on that route.[10]  And even though Mr. Tatos admits that the presence of other ULCCs may dull the Spirit Effect's impact, *id.* at 66:25-67:6, Mr. Tatos ignores the presence of ULCCs, or their prospective entry and expansion on any post-merger routes.  *Id.* at 38:13-24; 113:12-15.  Basic economics teaches that pricing on any given route will be informed by the competitive conditions on that route, including supply and demand, and the existence and reaction by other competitors.  *Transcontinental Gas Pipe Line Corp. v. State Oil & Gas Bd. of Miss.*, 474 U.S. 409, 422 (1986) (pricing of gas is driven by supply, demand and market forces such as competition).  But Mr. Tatos investigates none of this.  *In re Elec. Books*, 2014 WL 1282298, at *16 (excluding expert whose assumptions were "untethered to the real world or at odds with the facts").

Another critical flaw is that Mr. Tatos admits that the data he used to compare fares did not account for Spirit's ancillary fees.  Mr. Tatos did not account for the costs of Spirit's ancillary

---

[10] *See, e.g.*, *id.* at 136:16-18 (explaining that he did not "do an independent analysis of … each individual other airline" in measuring impact of "Spirit Effect"); *id.* at 126:9-13 (explaining that he "didn't do any analysis on an individual fare class level").

products; account for what percentage of Spirit customers pay such ancillary fees; or account for the average ancillary fees paid by Spirit customers.  Tatos Dep. at 176:20-21 ("I didn't provide a separate analysis for ancillary fees."); *see id.* at 21:9-24:18; 49:25-52:11; 120:13-121:3.[11]  Thus, in comparing JetBlue and Spirit's fares, Mr. Tatos disregarded Spirit's full range of fares—instead he simply tabulated Spirit's lowest fares, and from there said that JetBlue's average fares were higher.  *In re Elec. Books*, 2014 WL 1282298, at *12 (excluding expert whose damages analysis did "little more than present a collection of facts in a pseudo-scientific way").

Mr. Tatos's incomplete analyses cannot generate a reliable opinion and must be excluded. *Smith v. Jenkins*, 732 F.3d 51, 68 (1st Cir. 2013) (expert testimony regarding damages was inadmissible where calculations did not consider "crucial variables"); *Riani* v. *Louisville Ladder, Inc.*, 2010 WL 2802040, at *6-7 (D. Mass. July 14, 2010).

## 2. Mr. Tatos's "Reverse Spirit Effect" Formula Provides No Value

Mr. Tatos concludes that post-merger the prices of **all airlines** (not just those of JetBlue) will increase because Spirit will no longer be on the route.  Tatos Report ¶ 26.  Mr. Tatos quantifies this harm through a method he dubs the "reversal of the Spirit Effect."  *Id.*  But the calculation of the "reverse Spirit Effect" suffers from critical errors ripe for exclusion under Fed. R. Evid. 702.

Even though the Spirit Effect functions as the ***dispositive*** variable in his reverse Spirit Effect formula, Mr. Tatos admits that he performed no independent analysis to ascertain the purported size of the Effect, whether nationally or at the route level—even though he had access to historical fare data to do so.  Tatos Dep. at 40:12-13 ("I don't do an independent analysis of the Spirit effect . . . that's something for the factfinder to determine"); *id.* at 59:18-19 ("I don't calculate an independent Spirit effect or [] for any individual route.").  Despite admitting that the

---

[11] Spirit's ancillary fees are essential to assessing Plaintiffs' purported harm because many Plaintiffs testified that they ***do*** seek ancillary products—*e.g.*, checked bags—when flying.

Spirit Effect "could" vary based on certain routes based on the competitive dynamics on those routes, Mr. Tatos concedes his "analysis is irrespective of competition." *Id.* at 113:15; *id.* at 60:21-23 ("I don't do an independent calculation of [] the competitive response.").

Perplexingly, Mr. Tatos disclaims his responsibility for ascertaining the size of the Spirit Effect because, in his view, it is the responsibility of "the fact-finder [to] determine what the actual Spirit effect is." *Id.* at 69:12-13. In short, his formula centers on a key variable that he delegates to the factfinder to measure from scratch (without any data or formulas to do so). *Fay Sch.*, 282 F. Supp. 3d at 391 (excluding an expert because their "testimony lack[ed] sufficient facts or data"). This, of course, renders Mr. Tatos's formula to assess harm completely unusable as there is no way for the factfinder to calculate the Spirit Effect on the hundreds of routes on which Plaintiffs have alleged harm. *See, e.g.*, *Saia* v. *Sears Roebuck & Co.*, 47 F. Supp. 2d 141, 150 (D. Mass. 1999) (excluding expert opinion whose analysis was not "helpful to the [factfinder]"). Consequently, without quantifying the Spirit Effect and analyzing specific routes with his formula, Mr. Tatos relies on mere conjecture to opine that the fares will increase post-merger and the amount by which they will increase. *See In re Elec. Books*, 2014 WL 1282298, at *19 ("[G]uesswork does not meet the *Daubert* standards for the admission of expert testimony and would not assist the trier of fact.").

## III.   CONCLUSION

For the foregoing reasons, JetBlue and Spirit respectfully request that the Court order that Mr. Tatos's expert report and testimony be excluded under Fed. R. Evid. 702.

Dated: September 18, 2023                    Respectfully submitted,

                                            */s/ Elizabeth M. Wright*
                                            Zachary R. Hafer (MA BBO #569389)
                                            Elizabeth M. Wright (MA BBO #569387)
                                            Zachary Sisko (MA BBO #705883)
                                            Cooley LLP

500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Tel: 617-937-2300
zhafer@cooley.com
ewright@cooley.com
zsisko@cooley.com

Ethan Glass (*Pro Hac Vice*)
Dee Bansal (*Pro Hac Vice* forthcoming)
Matt K. Nguyen (*Pro Hac Vice*)
Cooley LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 2004-2400
Tel: 202-842-7800
Fax: 202-842-7899
eglass@cooley.com
dbansal@cooley.com
mnguyen@cooley.com

*Attorneys for Defendant*
*JetBlue Airways Corporation*


/s/ Samuel N. Rudman
Samuel N. Rudman (MA BBO #698018)
Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
Telephone: +1 617 248 4034
srudman@choate.com

/s/ Andrew C. Finch
Andrew C. Finch (*Pro Hac Vice*)
Eyitayo St. Matthew-Daniel (*Pro Hac Vice*)
Jay Cohen (*Pro Hac Vice*)
Kate Wald (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: 212-373-3000
Fax: 212-757-3990
afinch@paulweiss.com
tstmatthewdaniel@paulweiss.com
jcohen@paulweiss.com
kwald@paulweiss.com

Meredith R. Dearborn (*Pro Hac Vice*)

Paul, Weiss, Rifkind, Wharton & Garrison LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel: 628-432-5100
Fax: 628-232-3101
mdearborn@paulweiss.com

*Attorneys for Defendant Spirit Airlines, Inc.*

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that on this 18th day of September, 2023, the foregoing

document was filed through the ECF system and will be sent electronically to the registered

participants on the Notice of Electronic Filing and paper copies will be sent to any non-registered

participants.

                                          */s/ Elizabeth M. Wright*
                                          Elizabeth M. Wright


291174151