UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GABRIEL GARAVANIAN, *et al.*,<br><br>        *Plaintiffs*,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC.,<br><br>        *Defendants*. | Civil Action No.: 1:23-cv-10678-WGY |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE IN SUPPORT OF AN "EFFICIENCIES DEFENSE"**

Plaintiffs respectfully move the Court to preclude Defendants from offering evidence in support of an "efficiencies defense." An efficiencies defense purports to justify an acquisition on the grounds that efficiencies created by the merger offset any anticompetitive effects. The Supreme Court has firmly rejected this defense on three separate occasions. It has never overruled those decisions. As the DC Circuit stated in 2017, "the Supreme Court has held [the defense is unavailable] and no party points to any subsequent step back by the Court." *United States v. Anthem, Inc.*, 855 F.3d 345, 354 (D.C. Cir. 2017). "[I]t is not a lower court's role to ignore on-point precedent so as to adhere to what might someday become Supreme Court precedent." *Id.* at 354. Therefore, evidence in support of an efficiencies defense is irrelevant as a matter of law and should be excluded. Fed.R.Evid. 402.

Even if the Court were to allow evidence of the merger's efficiencies, the introduction of evidence should be limited to that which can satisfy the five-pronged threshold test outlined by Circuits that have analyzed the theoretical parameters of the defense. Since none of the efficiencies evidence Defendants offer meets any of these requirements, none of it is relevant.

No appellate court in the country has *ever* held that an "efficiencies defense" has justified a merger. Supreme Court precedent prevents its application in this case. The Court should grant the motion and exclude irrelevant evidence offered by Defendants in support of the defense.

## ARGUMENT

### I. THE "EFFICIENCIES DEFENSE" IS UNAVAILABLE AS A MATTER OF LAW

Section 7 of the Clayton Act prohibits mergers and acquisitions whose effect "may be substantially to lessen competition … in any line of commerce … in any section of the country." 15 U.S.C. § 18. Section 7 creates a "relatively expansive definition of antitrust liability" because to show a merger is unlawful, "a plaintiff need only prove that its effect '*may be* substantially to lessen competition.'" *Am. Stores*, 495 U.S. at 284 (emphasis in original); *Brown Shoe*, 370 U.S. at 323, 332 (in enacting Section 7, Congress "indicate[d] that its concern was with probabilities, not certainties" and violations occur where "the probable future effect of the merger" is to lessen competition).

Section 7 cases generally involve a burden-shifting regime. The plaintiff's case is usually established with indirect evidence of anticompetitive effects inferred from market share statistics. *St. Alphonsus Medical Center v. St. Luke's Health System, Ltd.*, 778 F.3d 775, 785 (9th Cir. 2015) ("prima facie case can be established simply by showing high market share").[1]

---

[1] This case is unusual for the strength of *direct* evidence that the merger will result in anticompetitive effects, including higher prices and reduced capacity. "Mergers with a probable anticompetitive effect [are] to be proscribed by the [Clayton] Act." *Brown Shoe*, 370 U.S. at 323.

The defendant can rebut this proof only with evidence that the market share statistics give an "inaccurate account of the acquisition's probable effects on competition." *See, R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 108 (2d Cir. 1989) (market share data creates a "presumption of illegality" which "can be overcome only by evidence that the market share data gives an 'inaccurate account of the probable effects on competition'"); *University Health*, 938 F.2d at 1218 (same); *Chicago Bridge & Iron Co. v. FTC*, 534 F.3d 410, 425 (5th Cir. 2008) (same); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 703-704 (4th Cir. 2020) (defendant can rebut prima facie case only by "discrediting [the] market share evidence … or showing that, even if [plaintiff's] market-concentration evidence is credible, it inaccurately predicts the merger's probable effect on competition").

Moreover, the Supreme Court has repeatedly held that Defendants may not attempt to rebut Plaintiffs' prima facie case by arguing that the merger creates "efficiencies," and that those efficiencies offset any anticompetitive effects. First, in *Brown Shoe*, the Supreme Court observed that "[o]f course, some of the results of large integrated or chain operations are beneficial to consumers." 370 U.S. at 344. But, rejecting the use of that evidence, the Court held, "Congress appreciated that occasional higher costs and prices might result from the maintenance of fragmented industries and markets. It resolved these competing considerations in favor of decentralization. We must give effect to that decision." *Id*.

In *Philadelphia Nat'l Bank*, the Court reiterated that position, holding that "a merger the effect of which 'may be substantially to lessen competition' is not saved because on some

---

"Typical anticompetitive effects include increased prices and decreased output." *Anago, Inc. v. Tecnol Med. Prod., Inc.*, 976 F.2d 248, 249 (5th Cir. 1992); *Fed. Trade Comm'n v. Hackensack Meridian Health, Inc.*, 30 F.4th 160, 172 (3d Cir. 2022) (anticompetitive effects from mergers can include "price increases and reduced product quality, product variety, service, or innovation").

reckoning of social or economic debits and credits, it may be deemed beneficial." 374 U.S. at 371. Congress "proscribed anticompetitive mergers, the benign and the malignant alike, fully aware, we must assume, that some price might have to be paid." *Id*.

Finally, the Court bluntly rejected the efficiencies defense in *FTC v. Procter & Gamble Co.* when it held, "Possible economies cannot be used as a defense to illegality." 386 U.S. 568, 580 (1967). "Congress was aware that some mergers which lessen competition may also result in economies but it struck the balance in favor of protecting competition." *Id*.; *see also*, *RSR Corp. v. FTC*, 602 F.2d 1317, 1325 (9th Cir. 1979) (argument that "merger can be justified because it allows greater efficiency of operation" has been "rejected repeatedly") (citing *Philadelphia Nat'l Bank*, 374 U.S. at 370 and *Crown Zellerback Corp. v. FTC*, 296 F.2d 800, 825 (9th Cir.) *cert. denied*, 370 U.S. 937 (1961); *see also F.T.C. v. Coca-Cola Co.*, 641 F. Supp. 1128, 1141 (D.D.C. 1986), *vacated as moot,* 829 F.2d 191 (D.C. Cir. 1987) (rejecting the efficiencies defense because "[t]he Court has no authority to move in a direction neither the Congress nor the Supreme Court has accepted").[2]

Despite this clear precedent, one circuit court – the Eleventh Circuit – recognized the efficiencies defense in 1991. *FTC v. Univ. Health, Inc.*, 938 F.2d 1206, 1222 (11th Cir. 1991). A petition for writ of certiorari was not sought, and it appears no other decision in the Eleventh

---

[2] Furthermore, antitrust commentators have argued the defense is unworkable as a practical matter. Then-professor Robert Bork rejected the efficiencies defense, calling it "spurious" because it "cannot measure the factors relevant to consumer welfare, so that after the economic extravaganza was completed, we would know no more than when we began." Robert H. Bork, *The Antitrust Paradox: A Policy at War With Itself* 124 (1978). Similarly, Judge Posner has repeatedly criticized the efficiencies defense, writing "there should be no general defense of efficiency … [t]t is rarely feasible to determine by the methods of litigation the effect of a merger on the costs of the firm created by the merger." Richard A. Posner, *Antitrust Law* 133 (2d ed. 2001); Richard A. Posner, *Antitrust Law: An Economic Perspective* 112 (1976) ("I would not allow a generalized defense of efficiency").

Circuit has followed or applied it. Its holding limited efficiencies evidence to only "certain circumstances" and required a showing of "significant efficiencies in the relevant market," *id.*, noting that "it may further the goals of antitrust law to limit the availability of an efficiency defense, even when a defendant can demonstrate that its proposed acquisition would produce significant efficiencies," *id.* at n.30. The Eleventh Circuit's basis for disregarding Supreme Court precedent was the opinion of an author of an antitrust treatise that the Supreme Court's *Procter & Gamble*'s holding – "[p]ossible economies cannot be used as a defense to illegality," 386 U.S. at 580 – was intended only to prevent "possible" efficiencies rather than efficiencies based on "more convincing proof." *Univ. Health*, 938 F.2d at 1222 citing P. Areeda & D. Turner, *Antitrust Law* ¶ 941b at 154 (1980). But, *Procter & Gamble* refutes that reading by holding, "Congress was aware that some mergers which lessen competition may also result in economies but it struck the balance in favor of protecting competition," a statement that plainly encompasses efficiencies that the defendant can demonstrably prove. *Procter & Gamble*, 386 U.S. at 580.

  A few circuits have suggested the efficiencies defense might be entertained, but none has specifically adopted it. See, *FTC v. Tenet Health Care Corp.*, 186 F.3d 1045, 1054 (8th Cir. 1999) (noting without citation or discussion of law that "efficiencies defense may have been properly rejected by the district court," but it "should nevertheless have considered evidence of enhanced efficiency"); *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 720 (D.C. Cir. 2001) (claiming that "trend" among courts is to recognize the defense, yet only citing two appellate courts, *University Health*, 938 F.2d at 1222 and *Tenet*, 186 F.3d at 1054); *ProMedica Health System, Inc. v. FTC*, 749 F.3d 559, 571 (6th Cir. 2014) (stating that parties to a merger often argue efficiencies, but did not address the defense further since defendant did not argue efficiencies).

Finally, other circuits have followed Supreme Court guidance, expressed skepticism about the efficiencies defense, and have declined to formally recognize it. *See St. Alphonsus Med. Ctr-Nampa, Inc. v. St. Luke's Health Sys., Ltd*, 778 F.3d 775, 789-90 (9th Cir. 2015) (the status of the defense "remains uncertain," and "[w]e remain skeptical about the efficiencies defense in general and about its scope in particular"); *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 347 (3d Cir. 2016) ("We have never formally adopted the efficiencies defense[;] [n]either has the Supreme Court," so "we are skeptical that such an efficiencies defense even exists"); *United States v. Anthem, Inc.*, 855 F.3d 345, 354 (D.C. Cir. 2017) ( "the Supreme Court has held [the defense is unavailable] and no party points to any subsequent step back by the Court"); *FTC v. Hackensack Meridian Health, Inc.*, 30 F.4th 160, 176 (3d Cir. 2022) ("Neither this Court nor the Supreme Court has formally adopted the efficiencies defense" and while "not rul[ing] out" the defense, refusing to recognize it).

The First Circuit has not had occasion to analyze the legality of relying on an efficiencies defense in a Section 7 merger challenge; therefore, the Supreme Court's preclusion of the defense is binding. As the DC Circuit stated in the 2017 *Anthem* opinion, "[T]he Supreme Court held" the efficiencies defense is unavailable, and "no party points to any subsequent step back by the Court." 855 F.3d at 353. "[I]t is not a lower court's role to ignore on-point precedent so as to adhere to what might someday become Supreme Court precedent." *Id.* at 354.

## II. ANY ADMITTED EFFICIENCIES EVIDENCE MUST MEET LEGAL THRESHOLD REQUIREMENTS

In the alternative, in the event the Court allows evidence of efficiencies, Plaintiffs request it be limited to evidence that meets the legal thresholds set forth by those circuits that have discussed the parameters of the defense.

"For the efficiency defense to be cognizable": (1) defendant must show "extraordinary efficiencies" to "offset the anticompetitive concerns in highly concentrated markets;" (2) the efficiencies must be "merger-specific," *i.e.*, "the efficiencies cannot be achieved by either party alone;" (3) the efficiencies must "be verifiable, not speculative;" and (4) the efficiencies must "not arise from anticompetitive reductions in output or service." *Hackensack Meridian Health*, 30 F.4th at 176; *Hershey*, 838 F.3d at 348-349; *see also*, *St. Alphonsus*, 778 F.3d at 775.

In fact, none of the purported "efficiencies" offered by Defendants are efficiencies at all. An "efficiency" is "something that would enable the combined firm to achieve lower costs for a given quantity and quality of product." *United States v. Anthem*, Case no. 16-cv-1493, 2017 WL 527923 at *3 (D.C. Dist. Feb. 8, 2017), *affirmed*, *Anthem*, 855 F.3d 345. If "cost savings will not be accomplished by streamlining the two firms' operations, creating a better product that neither carrier can offer alone, or … enabling the providers to operate more efficiently, they do not represent any 'efficiency' that will be introduced into the marketplace." *Id*. Defendants "must demonstrate that the intended acquisition would result in significant economies and that these economies ultimately would benefit competition [in the relevant market] and, hence, consumers." *University Health*, 938 F.2d at 1223; *see also Hackensack Meridian Health*, 30 F.4th at 177 (efficiencies not cognizable because "[w]hatever savings the merging entities may have cashed in on, there was no evidence the savings ever flowed through to patients").

Here, not only do none of Defendants' purported efficiencies meet any of the threshold requirements outlined by the Courts, none of them is even an "efficiency" at all. Accordingly, even if the Court were to recognize the legal availability of the efficiencies defense, none of Defendants' evidence meets any of the threshold requirements. Therefore, none of Defendants' evidence of efficiencies is relevant or admissible. Fed.R.Evid. 402.

## CONCLUSION

Plaintiffs' respectfully request the motion be granted and Defendants be precluded from offering evidence or arguing that their merger will create efficiencies that offset the merger's anticompetitive effects.

Dated: September 18, 2023

Respectfully submitted,

LARSON LLP

By /s/ *Scott Gregory Herrman*

Scott Gregory Herrman (VA Bar No. 74989)
Robert F. Ruyak
Stephen G. Larson
555 South Flower Street, Suite 4400
Los Angeles, California 90071
(*Admitted pro hac vice*)

*Attorneys for Plaintiffs*

Additional counsel below

Joseph M. Alioto Jr.
ALIOTO LEGAL
100 Pine Street, Suite 1250
San Francisco, California 94111
(*Admitted Pro Hac Vice*)

Jeffery K. Perkins
LAW OFFICES OF JEFFERY K. PERKINS
1550-G Tiburon Blvd., Box 344
Tiburon, California 94920
Telephone: (415) 302-1115

Lingel H. Winters
LAW OFFICES OF LINGEL H. WINTERS
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-2941

Christopher A. Nedeau
NEDEAU LAW PC
154 Baker Street
San Francisco, CA 94117-2111
Telephone: (415) 516-4010
Email: cnedeau@nedeaulaw.net

Joseph M. Alioto
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104
Telephone: (415) 434-8900
(*Admitted pro hac vice*)

Josephine Alioto
THE VEEN FIRM
20 Haight Street
San Francisco, CA 94102
Telephone: (415) 673-4800
Email: j.alioto@veenfirm.com
(*Admitted pro hac vice*)

Lawrence G. Papale
LAW OFFICES OF LAWRENCE G. PAPALE
The Cornerstone Building
1308 Main Street, Suite 117
St. Helena, California 94574
Telephone: (707) 963-1704
(*Admitted pro hac vice*)

Robert J. Bonsignore, Esq.
BONSIGNORE TRIAL LAWYERS, PLLC
23 Forest Street
Medford, MA 02155
Phone: 781-856-7650
Email: rbonsignore@classactions.us

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that this document was filed through the ECF system on September 18, 2023 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ S. Gregory Herrman
S. Gregory Herrman