**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GABRIEL GARAVANIAN, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC., <br><br> *Defendants*. | Civil Action No.: 1:23-cv-10678-WGY |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE CERTAIN DOCUMENTS**

Defendants Motion in Limine to Exclude Certain Documents ("Motion") is a desperate and untenable attempt to exclude some of the most damning evidence against them. Before Spirit ultimately agreed to a JetBlue acquisition in July of 2022, Spirit soundly rejected JetBlue's unsolicited hostile takeover bids as anticompetitive because JetBlue planned to cut capacity and raise prices. Spirit came to these conclusions only after a month-long "rigorous review" that involved attorneys, regulatory and economic specialists and multiple exchanges of information with JetBlue. The offer that Spirit finally accepted was not materially different than JetBlue's previous offers. But, it included more money, increasing the "termination fee" to such a level that Spirit's shareholders were well-protected in the event the acquisition was prohibited.

Understanding the legitimacy of Spirit's concerns, JetBlue recently, and for the purpose

of litigation, developed post-acquisition plans to purportedly address them.  Plaintiffs plan to

offer evidence at trial that Defendants' defenses based on these JetBlue plans are illusory and

unsupported.  To bolster their weak defenses, Defendants now ask the Court to exclude Spirit's

damning admissions.  But Defendants' Motion, like their defenses, is without merit.

Defendants argue that Spirit's admissions should be excluded under Fed. R. Evid. 403

because introducing them would "waste time" as Defendants would need "hours" to put the

admissions in context.  Much of this "context," however, is directly relevant evidence of

Defendants' negotiations described through party admissions. Plaintiffs intend to introduce this

evidence to demonstrate that the offer Spirit originally rejected as anticompetitive is, in fact, the

very same substantive offer it ultimately accepted (but for more money). Regardless, the Spirit

admissions are of such a highly probative nature that it more than substantially outweighs any

alleged "wasted time."

Defendants also argue that the Spirit admissions should be excluded as improper opinion

evidence under FRE 701 and 704 because they go to the "ultimate issue" and are not therefore

helpful to the fact-finder.  Admissions of a party opponent, like those of Spirit, are not subject to

exclusion under rules covering opinion evidence.  *Jordan v. Binns*, 712 F.3d 1123, 1128 (7th Cir.

2013) ("Because trustworthiness is not the touchstone for admissibility of party admissions, they

are not subject to . . . the restrictions of the opinion rule of FRE 701.") (internal citations

omitted).  In any event, in the seminal merger case, *Brown Shoe Co. v. United States*, 370 U.S.

294 (1962), the Supreme Court stated that evidence of the "purpose of the merging parties," like

the Spirit admissions in this case, is not only relevant but ***helpful***:

> Although it is "unnecessary for the Government to speculate as to what
> is in the 'back of the minds' of those who promote a merger,"
> H.R.Rep.No.1191, 81st Cong., 1st Sess. 8, **evidence indicating the**
> **purpose of the merging parties, where available, is an aid in**

> **predicting the probable future conduct of the parties and thus the probable effects of the merger**.

*Id.* at 331 n.48 (quoting *Swift & Co. v. U.S.*, 196 U.S. 375, 396 (1905)) (emphasis added).

Defendants reference several specific documents in their Motion that include statements that they seek to exclude, but it is not entirely clear what other portions of those documents or what other documents Defendants ultimately seek to exclude.  Defendants' lack of specificity is inconsequential, however, because, as described in detail below, none of Spirit's admissions between April 2022 and July 2022 should be excluded.[1]

## I.   BACKGROUND

In February 2022, Spirit and Frontier announced plans to merge.[2]  The merger of the two largest ULCCs concerned JetBlue, so much that it began investigating a Spirit acquisition. P0472 (Herrman Decl.[3], Ex. 1) at 21; P0444 (Herrman Decl., Ex. 2) at 34; Klinka CID 30(b)(6) (Herrman Decl., Ex. 3) at 37:22-38:19; 317:19-318:2; Hayes Dep. (DOJ) (Herrman Decl., Ex. 4) 235:23-236:12. ███████████████████████████████████

████████████████ P0444 (Herrman Decl., Ex. 2) at 34.  JetBlue also believed it had to disrupt the Spirit/Frontier merger quickly to avoid being "materially adversely affected" by it.  P0472

---

[1] Plaintiffs' also adopt and incorporate the arguments made by Plaintiffs to Defendants' same or similar motion in the related case.  Case No. 1:23-cv-10511, Dkt. No. 202.

[2] *Frontier Airlines and Spirit Airlines to Combine, Creating America's Most Competitive Ultra-Low Fare Airline*, Feb. 7, 2022, *available from Spirit.com* at https://s24.q4cdn.com/507316502/files/doc_downloads/2022/FINAL-Frontier-Spirit-Transaction-Press-Release.pdf. *See also Frontier Airlines and Spirit Airlines Announce Amended Merger Agreement*, June 2, 2022, *available at* https://ir.spirit.com/news-releases/news-details/2022/Frontier-Airlines-and-Spirit-Airlines-Announce-Amended-Merger-Agreement/default.aspx (announcement of amended deal with Frontier); *Spirit SEC Form 8-K*, February 7, 2022, *available at* https://d1rn0p25nwr6d.cloudfront.net/CIK-0001498710/495e3a62-322b-4775-9efd-cb9bd26dba90.html (announcing merger with Frontier); *Madison* v. *Cruz*, 393 F. Supp. 3d 135, 137 (D. Mass. 2019) (taking judicial notice of press release).

[3] The Declaration of S. Gregory Herrman In Support of Plaintiffs' Opposition To Defendants' Motion In Limine To Exclude Certain Documents, filed concurrently herewith.

(Herrman Decl., Ex. 1) at 21; *see also* P0444 (Herrman Decl., Ex. 2) at 35. ███████████

████████████████████████████████████████████████████████████

████████████████████████████     P0444 (Herrman Decl., Ex. 2) at 34.

On April 5, 2022, just a few weeks after the announcement of the Spirit/Frontier merger, JetBlue announced its unsolicited hostile tender offer proposal to acquire Spirit. P0035 (Herrman Decl., Ex. 5) at 5 of 16.  Spirit believed JetBlue's "real motivation" was "to break up the Spirt/Frontier merger" (P0372 (Herrman Decl., Ex. 6) at 21 of 45; P0149 (Herrman Decl., Ex. 7) at 5), which Spirit says JetBlue confirmed (Gardner (Private Plaintiffs) Dep. (Herrman Decl., Ex. 8) at 20:5-14).

JetBlue announced that the combined airline would operate under the JetBlue name and would involve retrofitting Spirit's fleet as JetBlue. P0471 (Herrman Decl., Ex. 9) at 5 ; P0483 (Herrman Decl., Ex. 10) at 12. Spirit's contemporaneous documents show that JetBlue stated that this included reducing capacity and raising fares on Spirit routes.  P0372 (Herrman Decl., Ex. 6) at 11 of 45. Indeed, the retrofitting of the Spirit fleet will result in the removal of about 10-15% of the seats in each plane.  Gardner (Private Plaintiffs) Dep. (Herrman Decl., Ex. 8) at 47:24-48:10.

Spirit's contemporaneous documents show that, over the next month, Spirit performed a "rigorous review" of the JetBlue offer.  Spirit's primary concern was whether the merger would survive any antitrust challenges.  P0035 (Herrman Decl., Ex. 5) at 5 of 16; P0372 (Herrman Decl., Ex. 6) at 28-31 of 45.  Spirit involved several trusted advisors in its "rigorous review." For example, Spirit's antitrust counsel worked with JetBlue's antitrust counsel to conduct an "extensive analysis" of JetBlue's offer.  P0372 (Herrman Decl., Ex. 6) at 30-31 of 45.  Spirit also engaged "prominent economic consultants" and "an experienced aviation economist," at least

some of whom spent "hundreds of hours assessing" the regulatory risks of JetBlue's proposal, "including assessing the validity and merits of JetBlue's own analysis."  P0372 (Herrman Decl., Ex. 6) at 30-31 of 45; P0149 (Herrman Decl., Ex. 7) at 3; 5-6.  At the time of its "rigorous review," Spirit "engaged consistently and constructively" with JetBlue to discuss the potential acquisition.  P0372 (Herrman Decl., Ex. 6) at 31 of 45; P0149 (Herrman Decl., Ex. 7) at 5-6.

After concluding this month-long "rigorous review," Spirit announced its conclusions to the public, its shareholders and the SEC in several press releases and SEC filings discussed herein.  Spirit's board concluded that JetBlue's proposed acquisition of Spirit was unlikely to survive any antitrust challenges because it was anticompetitive; it thus voted unanimously to reject the offer.  P0372 (Herrman Decl., Ex. 6) at 30, 31, 33 of 45.  Spirit stated that "JetBlue is a high-fare airline acquiring a low-fare airline and vowing to reduce capacity and increase prices to consumers." P0372 (Herrman Decl., Ex. 6) at 29 of 45. Spirit further concluded that the proposed acquisition "Will Have Lasting Negative Impacts on Consumers," "Raises Spirit's ticket prices," "Removes ~50% of the ULCC capacity in the U.S." and "removes the largest low-fare competitor, affecting millions of consumers across the U.S."  P0372 (Herrman Decl., Ex. 6) at 7 of 45. Spirit noted that "JetBlue has stated it will reduce capacity and raise fares on Spirit routes . . . how will regulators approve that transaction?" (P0372 (Herrman Decl., Ex. 6) at 11 of 45) and wondered "Is JetBlue Purposefully Downplaying the Substantial Regulatory Risk?" (P0372 (Herrman Decl., Ex. 6) at 7 of 45).  Spirit's rigorous review further concluded that "JetBlue's regulatory case is weak and defies common sense - the JetBlue 'offer' is illusory and it is not reasonably capable of being consummated."  P0372 (Herrman Decl., Ex. 6) at 5 of 45.

While Spirit believed the Northeast Alliance Agreement ("NEA") made the proposed acquisition even more anticompetitive, the evidence shows that Spirit was independently

concerned that the proposed acquisition was anticompetitive because it would reduce capacity and raise prices.  For example, Spirit concluded in May 2022 press release that, "[e]ven putting aside the NEA, Spirit believes the DOJ—and a court—will be very concerned that a JetBlue-Spirit combination will result in a higher-cost/lower fare airline and remove about half of the ULCC capacity in the United States." P0147 (Herrman Decl., Ex. 11) at 3 of 9[4].  JetBlue CEO Ted Christie confirmed in his deposition that Spirit believed this statement to be accurate when it was made.  Christie Dep. (DOJ) Tr. (Herrman Decl., Ex. 12) at 243:9-244:2.  In addition, Spirit stated that regardless of whether a Court invalidated the NEA, "[n]either outcome changes the fact that JetBlue is a high-fare airline trying to buy a low-fare airline and raise fares.  In all cases, Spirit shareholders lose with JetBlue's proposal as it is not reasonably capable of being consummated."  P0372 (Herrman Decl., Ex. 6) at 10 of 45.

Spirit continued to negotiate with JetBlue and Frontier between May and July 2022, and on July 28, 2022, JetBlue announced an agreement to purchase Spirit for $3.8 billion.[5]  The only differences between the JetBlue offer Spirit rejected as anti-competitive and the offer it eventually accepted are (1) an increased termination fee of $470MM, which requires JetBlue to pay $400MM to Spirit shareholders and $70MM to Spirit if the acquisition is not consummated, and (2) that JetBlue commit to divestitures "up to a material adverse effect on" the combined entity. P0156 (Herrman Decl., Ex. 13) at 4.  But Spirit's CEO testified in his deposition that Spirit had doubts that the divestitures would be sufficient to address the regulatory concerns.

---

[4] *Spirit Airlines Board of Directors Urges Stockholders to Reject JetBlue Tender Offer*, May 19, 2022, *available from Spirit.com* at https://www.prnewswire.com/news-releases/spirit-airlines-board-of-directors-urges-stockholders-to-reject-jetblue-tender-offer-301550872.html.

[5] *Spirit Airlines, Inc. SEC Form 8-K* at 4, July 28, 2022, *available at* https://d18rn0p25nwr6d.cloudfront.net/CIK-0001498710/f037bf53-da6f-4cb7-a92c-959f6d589fbc.html.

Christie 1-24-23 Dep. Tr. (Herrman Decl., Ex. 14) at 228:18-229:5. The only part of JetBlue's proposal that addressed Spirit's concern that the merger would result in higher fares and lower capacity is the increased termination fee, which will protect Spirit and its shareholders in the event this Court invalidates Defendants' unlawful merger. P0156 (Herrman Decl., Ex. 13) at 4 of 48; Christie Dep. (DOJ) Tr. (Herrman Decl., Ex. 12) at 301:11-14 ("Q  Okay. And then the -- so in this regulatory analysis, there is no analysis of how the deal could benefit Spirit customers; right? A  We didn't do analysis on that, no."); Christie 6-19-23 Depo. Tr. (Herrman Decl., Ex. 15) at 337:1-17.  Spirit also wondered whether JetBlue also questioned the likelihood of the merger surviving a Clayton Act lawsuit, but was willing to pay a termination fee just to prevent the Spirit-Frontier merger.  P0149 (Herrman Decl., Ex. 7) at 5.

While Defendants claim that the admissions "were designed in part to elicit commitments from JetBlue to make regulatory concessions to get a transaction closed," this is not what the evidence shows, and Defendants point to none.  The evidence instead shows that these admissions were accurate at the time and, in many cases, still accurate today.  For example, nearly all of these Spirit admissions were made in SEC filings, which Spirit's CEO Ted Christie confirmed contain accurate information.  Christie Dep. (DOJ) Tr. (Herrman Decl., Ex. 12) at 18:25-19:14. Indeed, Spirit's executives have a fiduciary duty to the company and the shareholders.  In addition, Spirit's Chairman of the Board confirmed in his deposition Spirit's belief that the proposed acquisition "removes the largest low-fare competitor, affecting millions of consumers across the US."  Gardner Dep. (DOJ) Tr. (Herrman Decl., Ex. 16) at 168:19-169:2.

## II.  Spirit's Admissions Are Highly Probative And Admissible Under FRE 403

Evidence may be excluded under Rule 403 only where "its probative value *is substantially outweighed* by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence." (emphasis added). "Rule 403 assumes a trial judge is able to discern and weigh the improper inferences that a jury might draw from certain evidence, and then balance those improprieties against probative value and necessity." *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981). Thus, it is a "useless procedure" in a bench trial to exclude evidence under FRE 403 where the judge can "exclude [] improper inferences from his mind in reaching a decision."

Spirit's admissions are highly relevant to the issues in this case, and the probative value of these admissions far outweighs any alleged risk of "wasting time." Defendants' motion is deficient for several reasons, including that it does not address whether any probative value of the admissions "is substantially outweighed" by any risk of "wasting time." The reason for Defendants' deficiencies are clear – Spirit's admissions are highly relevant, contemporaneous, and thoroughly investigated impressions of Spirit. And Defendants' contention that introducing the admissions would require the parties to spend time introducing evidence of the context of those admissions is unavailing – the context of the admissions is also highly relevant.

## A.     Spirit's Admissions Are Highly Probative

As described above, Plaintiffs plan to introduce evidence showing:

- JetBlue's planned acquisition of Spirit in March and April 2022 was reckless and in reaction to Spirit's planned merger with Frontier that threatened JetBlue,

- Spirit, and its attorneys and economic and regulatory advisors, spent a month in April 2022 performing a "rigorous review" of JetBlue's offer,

- after the "rigorous review" in May 2022 Spirit concluded that the proposed acquisition was anticompetitive because it would decrease capacity and increase prices and wondered how JetBlue could possibly believe the proposed acquisition was not anticompetitive,

- The only material change in the JetBlue offer that Spirit accepted in July 2022 was a substantially increased breakup fee to protect Spirit's shareholders from the known anticompetitive effects,

- Spirit believed JetBlue may be making a business decision to pay a breakup fee to Spirit in order to prevent Spirit from merging with JetBlue, and

▪ JetBlue's recent and litigation-motivated plans to allegedly compensate for the anticompetitive effects of the merger are illusory and unsupported.

Spirit's contemporaneous and well-investigated admissions were made well before any threat of litigation in April to July 2022.  These admissions included that Spirit believed the acquisition would reduce capacity and increase prices, and would therefore be anticompetitive. They are a significant part of this case and highly relevant to Plaintiffs' claims. For example, they are relevant to Spirit's view of JetBlue's rejected offers, whether the accepted offer addressed Spirit's concerns and the merit of JetBlue's recently-developed plans to purportedly address some of Spirit's concerns.  In addition, all of these admissions will be used to impeach Defendants' witnesses.

Moreover, in *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962), the Supreme Court stated that evidence of the "purpose of the merging parties," like the Spirit admissions in this case, is not only relevant but helpful:  "evidence indicating the purpose of the merging parties, where available, is an aid in predicting the probable future conduct of the parties and thus the probable effects of the merger.  *Id.* at 331 n.48 (quoting *Swift & Co. v. U.S.*, 196 U.S. 375, 396 (1905)) (emphasis added).  *See also*, *Morrison v. Murray Biscuit Co.*, 797 F.2d 1430 (7th Cir. 1986) (Judge Posner describing the importance of "motive" evidence in antitrust cases); *United States v. Visa U.S.A., Inc.*, 163 F. Supp. 2d 322, 401 (S.D.N.Y. 2001) ("The admitted, anticompetitive purpose of limiting brand competition among bank issuers raises serious antitrust and economic concerns."); 4A Phillip E. Areeda et al., Antitrust Law ¶ 964a (2d ed. 2006) ("[E]vidence of anticompetitive intent cannot be disregarded.").

For at least these reasons, Spirit's admissions are highly relevant.

**B.**　　**Introducing Spirit's Admissions Will Not "Waste Time"**

As described above, Spirit's admissions are highly relevant and an important part of

Plaintiffs' case.  As a result, the time spent at trial on these admissions, and their context in the negotiations between JetBlue and Spirt, will not "waste time" but will be a necessary part of the trial.

Defendants allege that "many" of the admissions were made in the context of the now-defunct NEA, but as explained above, most were not.  Defendants have never alleged, and cannot now allege, that Spirits' statements that the merger will decrease capacity and increase prices, and will therefore be anticompetitive, are in any way related to the NEA.  Introduction of these admissions will therefore not require any "minitrials" regarding the relevance of the NEA.

**C.**   **The Highly Probative Nature of Spirit's Admissions Outweigh Any Risk of "Wasting Time"**

Under Rule 403, any risk of "wasting time" must "substantially" outweigh the highly probative value of Spirit's admissions.  Here, however, the highly probative value of the evidence more than substantially outweighs the low or speculative risk of any wasted time.

In *Thompson v. City of Chicago*, 722 F.3d 963, 970–71 (7th Cir. 2013), the Seventh Circuit reversed the district court's exclusion of evidence under 403, despite the risk of "mini-trials."  *Id.* at 970–71.  The court found that the district court erred in weighing the factors required by FRE 403 because the evidence was "highly probative" and not cumulative, and because excluding the evidence caused "the litigant [to be] effectively prevented from presenting his or her case." *Id.* Likewise, if Spirit's highly probative and non-cumulative admissions are excluded from this case, Plaintiffs will be prevented from effectively presenting their case.  *See also Pintro v. Rosenworcel*, 554 F. Supp. 3d 14, 25 (D.D.C. 2021) (finding risk that admission would "devolve into several mini-trials . . . insufficient to prohibit the plaintiff from presenting relevant evidence in support of her claim"); *Sanders v. Univ. of Idaho, Coll. of L.*, 634 F. Supp. 3d 923, 932 (D. Idaho 2022) (rejecting argument that evidence should be excluded because its

admission would lead to "a series of 'mini-trials' concerning the truth, relevancy, and outcome of each of the incidents/complaints involved and will thus result undue delay and confusion of the issues" and stating "[a]lthough it will take time if Defendants choose to delve into the veracity of the evidence of other incidents/complaints, the risk of any resulting delay does not substantially outweigh the probative value of the evidence" and "the Court can address any risk of delay at trial, as the evidence unfolds").

Defendants' largely argue that Spirit's admissions will "waste time" because they "would require the parties to delve into a protracted back-and-forth concerning the negotiations between Spirit and JetBlue." Motion at 12. As described above, however, Plaintiffs contend that the negotiations are highly relevant to this case. In any event, these issues are "fact-intensive" and "context-specific" and are "best considered at trial." *Marquez-Marin v. Garland*, No. 3:16-CV-01706-JAW, 2021 WL 3557630, at *4 (D.P.R. Aug. 11, 2021) (refusing to exclude evidence that would allegedly result in "seven mini-trials" because the decision involves "a fact-intensive, context-specific inquiry best considered at trial, where admissibility will turn on the evidence's purpose and context").

All of the cases cited by Defendants are easily distinguishable. Unlike the highly probative Spirit admissions at issue here, the evidence in Defendants' cases was at best marginally relevant or cumulative evidence, and therefore was excluded because the low probative value was substantially outweighed by the risk wasting time.

## III.    Spirit's Admissions Do Not Violate FRE 701 and 704

Defendants argue that Spirit's admissions should be excluded improper opinion testimony under FRE 701 and 704. Many of Spirit's admissions, however, cannot plausibly be "opinions," and are instead contemporaneous descriptions of facts. For example, Spirit's statement that the combined entity will reduce capacity and increase prices is an observation of

fact and an admission of the parties' stated intentions.

In any event, Spirit's statements are admissions of a party opponent under 801(d)(2) and are not subject to the Rules of Evidence governing opinions. And even if they were, Spirit's admissions are admissible under FRE 701 and 704.

### A.   Spirit's Admissions Are Not Subject to FRE 701-704

Admissions like Spirit's are generally not subject to Fed. R. Evid. 701 and 704. In fact, the Federal Rules of Evidence acknowledge that admissions "enjoy[] [t]he freedom . . . from the restrictive influences of the opinion rule." Advisory Committee Notes to Fed. R. Evid. 801. Courts have recognized this general rule. *See, e.g.*, *Palmer v. Cognizant Tech. Sols. Corp.*, No. CV176848DMGPLAX, 2023 WL 4155403, at *8 (C.D. Cal. June 1, 2023) ("Cognizant argued at the hearing that Ms. Israel's statement about race discrimination should be excluded because it is a legal conclusion. *See* Fed. R. Evid. 701. But because the Court concludes they are Cognizant's own statements, Rule 701 does not apply."); *Jordan v. Binns*, 712 F.3d 1123, 1128 (7th Cir. 2013) ("Because trustworthiness is not the touchstone for admissibility of party admissions, they are not subject to the personal-knowledge requirement of FRE 602 or the restrictions of the opinion rule of FRE 701.") (internal citations omitted).

The rules of evidence do not apply to admissions even if those admissions go to a legal opinion or conclusion. *See Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, No. 11 C 8449, 2017 WL 106109, at *1 (N.D. Ill. Jan. 11, 2017) ("The statements come in as party admissions, which are an exception to the hearsay rule, regardless of whether in the form of opinions. This is the case even as to what might be considered mixed questions of fact and law that are relevant to the ultimate issue, such as the validity of Plaintiff's case against Defendants."); *Bakst v. Cmty. Mem'l Health Sys., Inc.*, No. CV0908241MMMFFMX, 2011 WL 13214315, at *43 (C.D. Cal. Mar. 7, 2011) ("As the court has already concluded that the statements are adoptive party admissions,

Bakst's contention they constitute improper lay opinion testimony is unavailing."); *Middleby Corp. v. Hussmann Corp.*, No. 90 C 2744, 1993 WL 151290, at *3 (N.D. Ill. May 7, 1993) (noting that FRE 701 is "grotesquely misapplied to out-of-court statements such as admissions where the declarant's statements are made without the thought of the form of courtroom testimony" and that [a]dmissions often contain important facts that should not be ignored merely because the form of the out-of-court statement could have been more precise under Rule 701."); *Foster v. Comm'r of Internal Revenue*, 80 T.C. 34, 129 (1983), affid in part and vacated in part sub nom. *Foster v. Comm'r*, 756 F.2d 1430 (9th Cir. 1985) (noting that "an admission is not objectionable merely because it . . . is in the form of an opinion and that "[s]uch an admission may be entitled to less weight, but it is clearly not inadmissible").

The inapplicability of the opinion rules to admissions is particularly clear where, as here, the admissions are contemporaneously prepared by a corporate agent and relied on by the corporation.  Courts find that even if these type of admissions "reflect[] opinion" it  "goes to its weight and credibility, not its admissibility." *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1143 (7th Cir. 1983).  *See Pekelis v. Transcon. & W. Air, Inc.*, 187 F.2d 122, 129 (2d Cir. 1951) (noting that the inapplicability of "The Opinion Rule" to admissions "is especially true where the opinions were the result of the deliberations of boards skilled in dealing with the subject matters before them," and [t]he fact that they were based on hearsay and expressed opinions would go to their credibility rather than to their admissibility"); *In re: Gen. Motors LLC*, No. 14-MD-2543 (JMF), 2015 WL 8578945, at *3 (S.D.N.Y. Dec. 9, 2015) (citing to *Pekelis* in refusing to exclude corporate admissions that are alleged to violated Rules 701 and 702);  *Washington Pub. Power Supply Sys. v. Pittsburgh-Des Moines Corp.*, 876 F.2d 690, 697 (9th Cir. 1989) (affirming decision that testimony based on beliefs at the time of the contract

negotiations was not inadmissible legal conclusion and opinion because the statements were party admissions "and thus the 'legal opinion rule' was not a bar").

> **B.** **Even if Spirit's Admissions Are Opinion Evidence, They Are Admissible Under 701 and 704**

Even if Spirit's Admissions are opinions, they are nonetheless admissible.  Fed. R. Evid. 701 allows lay opinions that are (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.  Spirit's admissions satisfy each of these and are therefore admissible under Rule 701 and 704.[6]

Defendants do not dispute that Spirit's admissions satisfy (a) and (c), and dispute only that they are not "helpful" under (b).  As described above, Spirit's admissions are based on a "rigorous review" and are helpful in understanding Spirit and JetBlue's motivations during the negotiations, why Spirit ultimately agreed to a revised JetBlue offer, and whether the anticompetitive effects identified by Spirit are addressed by JetBlue's plans.

The Supreme Court recognizes that admissions like these are helpful to show the purpose and intent of the merging parties, stating they are "an aid in predicting the probable future conduct of the parties and thus the probable effects of the merger."  *Brown Shoe Co.*, 370 U.S. at 331 n.48.

The cases cited by Defendants stand for the unremarkable proposition that a lay witness cannot offer opinion testimony at trial that goes to the "ultimate issue" unless it is helpful.  These cases are all easily distinguishable.  None of the cases deal with contemporaneous party admissions that the party admit were based on a "rigorous review," like the Spirit admissions in

---

[6] Defendants argument with respect Rule 704 is the same as its argument for Rule 701 – that the admissions are opinions that go to the "ultimate issue" and are not helpful.  Plaintiffs response that the admissions are helpful addresses both.

this case.  Indeed, most deal with lay witness testimony at trial.

For at least these reasons, the Spirit admissions cannot be excluded by FRE 701 or 704.

## IV.    CONCLUSION

For the at least the reasons provided above, Defendants' Motion in Limine to Exclude

Certain Documents should be denied.

Dated: September 25, 2023

/s/ Joseph M. Alioto, Sr
Joseph M. Alioto
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104
Telephone: (415) 434-8900
(*Admitted pro hac vice*)

Robert F. Ruyak
Stephen G. Larson
Scott Gregory Herrman
LARSON LLP
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Tel: (213) 436-4888
Fax: (213) 623-2000
Email:slarson@larsonllp.com
Email:rruyak@larsonllp.com
Email:gherrman@larsonllp.com
(*Admitted Pro Hac Vice*)

Joseph Michelangelo Alioto, Jr
ALIOTO LEGAL
100 Pine Street
Suite 1250
San Francisco, CA 94111
Tel.: 415-398-3800
Email: joseph@aliotolegal.com
(Admitted Pro Hac Vice)

Jeffery K. Perkins
LAW OFFICES OF JEFFERY K. PERKINS
1550-G Tiburon Blvd., Box 344
Tiburon, California 94920
Telephone: (415) 302-1115

Josephine Alioto
THE VEEN FIRM
20 Haight Street
San Francisco, CA 94102
Telephone: (415) 673-4800
Email: j.alioto@veenfirm.com
(*Admitted pro hac vice*)

Lingel H. Winters
LAW OFFICES OF LINGEL H. WINTERS
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-2941

Christopher A. Nedeau
NEDEAU LAW PC
154 Baker Street
San Francisco, CA 94117-2111
Telephone: (415) 516-4010
Email: cnedeau@nedeaulaw.net

*Counsel for Plaintiffs*

Lawrence G. Papale
LAW OFFICES OF LAWRENCE G.
PAPALE
The Cornerstone Building
1308 Main Street, Suite 117
St. Helena, California 94574
Telephone: (707) 963-1704
(*Admitted pro hac vice*)

Robert J. Bonsignore, Esq.
BONSIGNORE TRIAL LAWYERS,
PLLC
23 Forest Street
Medford, MA 02155
Phone: 781-856-7650
Email: rbonsignore@classactions.us

**CERTIFICATE OF SERVICE**

I certify that this document was filed through the ECF system in redacted form on September 25, 2023 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

I further certify that this document, in unredacted form, was served on the defendants on September 25, 2023 by transmitting it by email to counsel for defendants.

_/s/ Joseph M. Alioto, Sr_

Joseph M. Alioto, Sr