# EXHIBIT 7

**S&P Global**
Market Intelligence

# Spirit Airlines, Inc. NYSE:SAVE
# Special Call
## Monday, May 23, 2022 9:30 PM GMT



EXHIBIT 20
WIT: CHRISTIE
DATE: 6-6-23
DAWN A. HILLIER, RMR, CRR

COPYRIGHT © 2022 S&P Global Market Intelligence, a division of S&P Global Inc. All rights reserved
spglobal.com/marketintelligence

1

# Call Participants

**EXECUTIVES**

**DeAnne Gabel**
*Senior Director of Investor Relations*

**Edward M. Christie**
*President, CEO & Director*

**ANALYSTS**

**Conor T. Cunningham**
*MKM Partners LLC, Research Division*

**Daniel J. McKenzie**
*Seaport Research Partners*

**David Scott Vernon**
*Sanford C. Bernstein & Co., LLC.,
Research Division*

**Helane Renee Becker**
*Cowen and Company, LLC, Research
Division*

**James M. Kirby**
*JPMorgan Chase & Co, Research
Division*

**Michael John Linenberg**
*Deutsche Bank AG, Research Division*

**Savanthi Nipunika Prelis-Syth**
*Raymond James & Associates, Inc.,
Research Division*

**ATTENDEES**

**Andrew C. Finch**

Copyright © 2022 S&P Global Market Intelligence, a division of S&P Global Inc. All Rights reserved.
spglobal.com/marketintelligence

I'll let Andrew speak to his views in a few minutes. But at the simplest level, a JetBlue transaction is about a high-fare carrier trying to buy a low-fare carrier, reducing capacity and raising fares. Commonsense tells you that is not a favorable story for regulators. In my opinion, JetBlue knows it faces a low probability of approval, which is why it's shifting the risk on Spirit stockholders with inadequate compensation.

So what is JetBlue's motivation in all this? I believe it's a cynical attempt to disrupt our merger with Frontier because the Spirit-Frontier combination poses a competitive threat. Why else would JetBlue wait over 7 weeks after we announced the Frontier deal to submit the acquisition proposal? And why did JetBlue wait to launch the tender offer until just after we mailed our proxy statement for the Frontier merger? I don't think that timing is coincidental.

Think about a world post Spirit-Frontier combination for JetBlue. They will have to compete with the ULCC carrier of a larger size, scale and reach and against one of the lowest cost structures in the world. And the ULCC fares are a fraction of JetBlue's. That is a daunting environment. In fact, in its 2021 10-K risk factors, JetBlue specifically calls out the Spirit/Frontier combination as a factor that may affect JetBlue's competitiveness. That may be an understatement. I think they're scared in the competition. As a result, I think JetBlue believes it's worth the $200 million reverse termination fee to disrupt our pending merger with Frontier.

My message to Spirit stockholders is don't be distracted by JetBlue's tender offer. It is a highly conditional offer, which still requires regulatory approval and contains a list of conditions that are solely for the benefit of JetBlue and cannot reasonably be expected to be met. Including a walk away, the stock market declines more than 10%. And JetBlue's cash offer is highly opportunistic. The supposed premium is based off highly depressed, pandemic-related all-time low stock price levels. I'd remind you that Spirit's stock price was higher than $30 for the entire 5 years before the pandemic. In fact, JetBlue's offer is even below Spirit's high trading price during the depths of COVID.

The offer also excludes Spirit shareholders from participating in the upside from synergies and the industry recovery. Once the airline industry recovers to pre-pandemic levels, that alone is expected to deliver Spirit shareholders value well above JetBlue's offer. This is why we negotiated for 48.5% ongoing ownership through the stock consideration in our Frontier merger. When you combine this with the $500 million of run rate operating synergies from the Frontier merger, Spirit stockholders have even greater potential upside, numbers that by our calculation, dwarf either of JetBlue's offers.

Before I turn it over to Andrew, I also want to touch on the misinformation that JetBlue continues to spread about our Board and our process. The idea that our Board refused to engage on JetBlue's proposal is total fiction. JetBlue's own tender offer document describes the extensive engagement we had with them, including direct contact between our CEOs. To be clear, over a 4-week period, we spent hundreds of hours and hundreds of thousands of dollars assessing the regulatory risk of an acquisition of Spirit by JetBlue, including assessing the validity and merits of JetBlue's own analysis. We share projections with JetBlue's financial advisers and provided them access to documentary due diligence material through a secure virtual data room that offered information substantively consistent with what we shared with Frontier. This included our detailed 5-year plan.

We also participated in a 2-hour due diligence call with JetBlue's management team to discuss financial model projections, fleet financing, labor, our new headquarters and other material contract details. During our engagement with JetBlue's management team and advisers, they thanked us for our openness and transparency. So as you can see, we engaged in good faith. However, we did not meet their requests for highly competitively sensitive information such as forecasts for the economics of every route that we fly or data on our largest and most profitable routes, which would be highly inappropriate to share with a competitor. We didn't provide this information to Frontier either.

The reality is that JetBlue's offer is not superior to our merger agreement with Frontier, but JetBlue is so desperate to disrupt our combination with Frontier that they are willing to spread inaccurate statements and mischaracterizations to the public. I now will turn it over to Andrew for more detail on the regulatory risk.

**Andrew C. Finch**

Thank you, Ted. Given the antitrust issues at the heart of the Spirit Board's decision, I want to briefly reiterate the very substantial regulatory hurdles that a JetBlue/Spirit transaction would face. From my time in the DOJ's Antitrust Division, I can tell you that the facts do not support a favorable decision by regulators. In a JetBlue/Spirit combination, the conversation would be centered around: one, raising ticket prices on Spirit routes to JetBlue levels and reducing capacity on aircraft by reconfiguring them to the JetBlue format with fewer seats.

Two, removing approximately 50% of the ULCC capacity in the U.S. as a result of eliminating Spirit as the largest ULCC airline. Three, merging Spirit with what's essentially a combined JetBlue and American Airlines in the Northeast; and four, trying to complete a second major transaction for JetBlue, while it's in the midst of litigation with the DOJ seeking to block the NEA. When taken in combination, all these factors make regulatory approval of the JetBlue transaction, essentially a nonstarter.

As it relates to the NEA, we consider JetBlue's view on potential litigation outcomes to be fundamentally mistaken. In our opinion, if JetBlue wins or settles the NEA litigation, the DOJ will be even more determined to stop an acquisition of Spirit as JetBlue will have just completed a de facto merger in the Northeast with American Airlines, which is the largest airline in the world. On the other hand, if JetBlue loses the NEA litigation, JetBlue would likely appeal in the last ditch effort to save the anticompetitive alliance that it has implied is more important to it than an acquisition of Spirit, and that could take well over a year to resolve.

And even if we set aside the issue of the NEA, one thing that Spirit and JetBlue can agree on is that the DOJ would likely bring a lawsuit to block a JetBlue/Spirit transaction. JetBlue cannot and hasn't denied that this is a likely outcome. That means that the overall review of a JetBlue/Spirit transaction would likely take up to 2 years to be resolved.

Now JetBlue would have you believe that it's offering to divest all of Spirit's assets in New York City and Boston and that, that should be sufficient to address the regulatory issues, but that's simply not true. The DOJ has been clear that it thinks the Northeast Alliance will not only eliminate important competition in these 2 cities, but will also harm air travelers across the country by significantly diminishing JetBlue's incentive to compete with American elsewhere. And JetBlue has not articulated any concrete plan for addressing those concerns.

Moreover, current DOJ leadership has expressed deep skepticism about the effectiveness of divestiture remedies and a preference for seeking to block transactions rather than accept divestiture-based settlements. All this is to say we don't believe that the JetBlue transaction is likely to receive regulatory approval. Spirit's proposed merger with Frontier poses meaningfully less regulatory risk simply due to Frontier not having pending DOJ litigation and the potential to deliver more ULCC fares to more travelers in more markets. That's totally unlike the JetBlue merger, which would eliminate the largest ULCC and result in capacity reductions and fare increases to consumers. With that, I'll turn it back to Ted.

**Edward M. Christie**
*President, CEO & Director*

Thanks, Andrew. Our Board continues to unanimously recommend that Spirit's stockholders vote for the merger proposal with Frontier on June 10. Further, we recommend Spirit stockholders reject the JetBlue tender offer and do not tender any shares of Spirit to the offer. We are excited about the Frontier combination and the opportunities it brings to our guests, our Spirit family and our stockholders. A vote for the Frontier merger is a vote to create America's most competitive ultra-low fare airline and to bring long-term superior value to Spirit stockholders. With that, I'll turn it back to DeAnne.

**DeAnne Gabel**
*Senior Director of Investor Relations*

Thank you, Ted. Christian, we are ready to begin with the question-and-answer session. [Operator Instructions]

Copyright © 2022 S&P Global Market Intelligence, a division of S&P Global Inc. All Rights reserved.