**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GABRIEL GARAVANIAN, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC.,<br><br>*Defendants*. | Civil Action No.: 1:23-cv-10678-WGY |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF DR. HAL SINGER**

In his Opening Report, Plaintiffs' expert Dr. Hal Singer provides valuable assistance to the Court by offering opinions on, *inter alia*, JetBlue's estimates on the costs, revenues, and purported "efficiencies" of the JetBlue/Spirit merger.[1] [REDACTED] .[2] [REDACTED] .[3] So, Defendants' arguments that Dr. Singer cannot rely upon these same estimates in forming his opinions on efficiencies are not credible. Dr. Singer reviewed the methodologies, calculations, data sources and other bases for the cost and revenue projections in the lengthy deposition testimony given by JetBlue's own corporate witness. Dr. Singer's opinion applies his

[1] Declaration of Elizabeth Wright ("Wright Dec.") Ex. 1 (Singer Opening Rep.) ¶¶ 117-125.
[2] Declaration of Joseph M. Alioto Jr. ("Alioto Jr. Dec.") Ex. A (Hurley Dep) at 194-195.
[3] Alioto Jr. Dec. Ex. B (Christie Dep. Exs. 18, 21, 25)

economic expertise to these estimates in a manner that will assist the Court in its factfinding mission.

Dr. Singer submitted his Opening Report nearly a month before Plaintiffs even obtained copies of the expert reports in the Department of Justice ("DOJ") action. Therefore, Defendants' assertion that Dr. Singer improperly relied on the DOJ experts in forming his own opinions is not only wrong, it is illogical. Dr. Singer cites the DOJ experts in his *Reply* Report only to demonstrate that he and the DOJ experts, working completely independently of one another, applied the same assumptions and arrived at the same ultimate conclusions that refute the contrary conclusions of Defendants' expert Dr. Nicholas Hill. Wright Dec. Ex. 2 (Singer Reply Rep.) ¶¶ 22, 29, 33, 40 & n. 48.

None of Dr. Singer's opinions should be excluded. Defendants' motion should be denied.

## ARGUMENT

### I. DR. SINGER REASONABLY RELIED ON JETBLUE'S OWN INTERNAL COST AND REVENUE PROJECTIONS IN FINDING THAT THE MERGER WILL INCREASE COSTS, INCREASE PRICES, AND RESULT IN NO EFFICIENCIES

Although the Supreme Court has precluded the introduction of efficiencies evidence in Section 7 merger challenges, *see* dkt. nos. 239, 243 (Plts' Mot. *In Limine* to Preclude "Efficiencies Defense"), Defendants in this case nevertheless seek to argue their merger will result in efficiencies that somehow justify its anticompetitive effects. But, [REDACTED] An "efficiency" is "something that would enable the combined firm to achieve lower costs for a given quantity and quality of product." *United States v. Anthem*, Case no. 16-cv-1493, 2017 WL 527923 at *3 (D.C. Dist. Feb. 8, 2017), *affirmed*, 855 F.3d 345 (D.C. Cir. 2017) [REDACTED]

Plaintiffs' expert Dr. Hal Singer analyzed Defendants' purported efficiencies and found [redacted] Wright Dec., Ex. 1 (Singer Opening Rep.) ¶¶ 118 (emphasis in original), 119. Dr. Singer further found that [redacted] In fact, [redacted] *Id*. ¶ 120.

In their motion *in limine*, Defendants argue that Dr. Singer's opinions regarding efficiencies are improper because they rely on [redacted] Apparently, JetBlue's argument is that its own internal analyses [redacted] are unreliable. However, [redacted]. Alioto Jr. Dec., Ex. A (Hurley Dep.) 194-195. These are the same [redacted]. Alioto Dec., Ex. B (Christie 18, 21, 25). And, these are the same internal analyses that Defendants apparently intend to present at trial to show the merger will result in "efficiencies." It is nothing short of remarkable that Defendants now contend that these very same analyses are insufficiently reliable to support Dr. Singer's opinions regarding efficiencies. *See* Dkt. no. 230 at 3 (arguing that "JetBlue's 'deal modeling'" requires "independent analysis" before it can be relied upon).

Dr. Singer was well aware of the methodologies, circumstances, and bases for JetBlue's cost and revenue estimates. An analysis of the costs and revenues generated from the merger was conducted by JetBlue's Derek Klinka and his team. Alioto Jr. Dec., Ex. D (Klinka 1/13/2023 Dep.)

30-31. Mr. Klinka is JetBlue's Integration Management Office Leader, and his duties include "planning for the integration of Spirit into JetBlue, and ensuring that we capture the financial value associated with it." *Id*. at 31:1-8. In fact, Mr. Klinka was designated by JetBlue to testify as the corporate witness on "[a]ny expected synergies or efficiencies from the merger." Alioto Jr. Dec., Ex. E (Klinka 30(b)(6) Dep. 1/12/2023) at 12:13-13:17. The vast majority of Mr. Klinka's 30(b)(6) testimony focused on explaining the methodology for his analysis of the potential cost and revenue synergies of the proposed transaction, detailing what data was used, what the source of this data was, and how it was reflected in various iterations of the synergies model. All of these data, methods, and analyses were made by JetBlue in the ordinary course of business.

Prior to forming his opinions, Dr. Singer reviewed *all* of Mr. Klinka's testimony, as well as other testimony concerning JetBlue's "deal modeling." Wright Dec., Ex. 1 (Singer Opening Rep.) *Appendix* 1 (listing sources Dr. Singer reviewed). He reviewed and understood the methodology JetBlue applied in calculating the merger's costs and efficiencies.

This is a far cry from what the expert did in *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 292 (3d Cir. 2012), the case on which Defendants primarily rely. Dkt. no. 230 at 3. In *ZF Meritor*, the expert's damages calculation was deemed unreliable because he based it on a one-page income projection, did not know the methodology employed in the projection, did not know the circumstances under which it was created, did not know who created it, and did not even know if it had been created internally or by some outside source. *ZF Meritor* 696 F.3d at 292-293. Dr. Singer is not estimating damages here. Instead, he is assessing Defendants' claimed efficiencies. Whatever standards apply to a plaintiff's expert rendering an affirmative damages opinion are more vigorous than those that apply to a plaintiff's expert assessing defendants' claimed efficiencies. In fact, the fallacy of Defendants' position is made clear when one considers that the

only way an expert can assess the economic legitimacy of Defendants' internally-created efficiency claims is, of course, to review and rely on the Defendants' internally-created efficiency claims.

Even if the standards of *ZF Meritor* applied to an assessment of claimed efficiencies, Dr. Singer reviewed the testimony describing the methodology, and he reviewed the underlying documents created by Mr. Klinka and his team, as well as other JetBlue employees with information concerning the estimates. Wright Dec., Ex. 1 (Singer Opening Rep.) ¶¶ 117-125, footnotes 140-152. Dr. Singer knew who created the estimates, understood the manner of JetBlue's calculations, reviewed the methodologies employed, and knew the circumstances under which it was created.

As Defendants' own cited case demonstrates, "'internal projections of future growth' often serve as legitimate bases for expert opinions." *ZF Meritor,* 696 F.3d at 292 quoting *LePage's, Inc. v. 3M*, 324 F.3d 141, 165 (3d Cir. 2003). "Businesses are generally well-informed about the industries in which they operate, and have incentives to develop accurate projections." *Id.*; *see also Autowest, Inc. v. Peugeot, Inc.*, 434 F.2d 556, 566 (2d Cir. 1970) (damages testimony admissible where financial projections "were the product of deliberation by experienced businessmen charting their future courses").

Defendants' assertion that an expert cannot rely on the "analyses by a businessperson of one of the parties" without conducting an "independent analysis" is incorrect. Dkt. No. 230 at 3. Federal Rule of Evidence 702 requires the Court to assess "whether the expert's reliance on the [analysis] in a given case is reasonable." *ZF Meritor*, 696 F.3d at 293. Dr. Singer reviewed and considered the methodology and the reasons behind JetBlue's cost and synergy estimates, and his reliance on them was reasonable. Moreover, Dr. Singer's understanding of the JetBlue projection

methodology could have been examined at Dr. Singer's deposition. It was not, and Defendants' failure to inquire of Dr. Singer's knowledge of the underlying methodologies cannot warrant excluding his opinions.

Defendants only attack one opinion offered by Dr. Singer. Dkt. no. 230 at 3. Specifically, they take issue with Dr. Singer's opinion that ███████████████████████████████████████████████████████████████████ *Id*. But, in his report, Dr. Singer observes that ███████████████████████████████████████████████████████ Wright Dec., Ex. 1 (Singer Opening Rep.) ¶ 123. ███████████████████████████████████████████████████████████ *Id*. That is, ███████████████████████████████████████████████████████████████ Therefore, Dr. Singer applied his "independent expert methodology" – ███████████████████████████████████████████████ – to arrive at his opinion. JetBlue's assertion that Dr. Singer simply "read and rehashed" JetBlue's internal documents is wrong.

Defendants cannot legitimately contest the reasonableness of Dr. Singer's reliance on JetBlue's cost and synergy projections in forming his opinions about those projections. That is especially true given JetBlue and Spirit themselves have relied on the same analyses.

## II. D<small>R</small>. S<small>INGER</small>'<small>S</small> M<small>ETHODS</small>, A<small>NALYSES</small>, <small>AND</small> O<small>PINIONS</small> A<small>RE</small> H<small>IS</small> O<small>WN</small>: H<small>E</small> C<small>ITES</small> DOJ E<small>XPERTS</small> O<small>NLY</small> T<small>O</small> S<small>HOW</small> T<small>HAT</small> E<small>XPERTS</small> I<small>N</small> P<small>ARALLEL</small> C<small>ASES</small> – W<small>ORKING</small> E<small>NTIRELY</small> I<small>NDEPENDENTLY</small> – U<small>SED</small> T<small>HE</small> S<small>AME</small> A<small>SSUMPTIONS</small> <small>AND</small> M<small>ETHODS</small>, <small>AND</small> A<small>RRIVED</small> A<small>T</small> T<small>HE</small> S<small>AME</small> C<small>ONCLUSIONS</small>

Defendants also ask the Court to exclude portions of Dr. Singer's report that "rely on analysis conducted by DOJ's experts." Dkt. 230 at 2. There are no such portions. Dr. Singer's

theories, assumptions, methodologies, and opinions do not rely on any analysis conducted by DOJ's experts. In fact, Dr. Singer wrote and served his Opening Report on Defendants on July 28, 2023. But, Plaintiffs did not obtain the DOJ expert reports until almost a month later, on August 23, 2023. So, not only did Dr. Singer not rely on the DOJ experts for his opinions, he could not have logically done so. Defendants' misleading suggestion that Dr. Singer "adopted" "wholesale" the DOJ experts' opinions should be rejected out of hand. Dkt. no. 230 at 5.

On September 2, 2023, Dr. Singer served a Reply Report in which he refuted the report of Defendants' expert Nicholas Hill.[4] Wright Dec., Ex. 2 (Singer Reply Rep.). Dr. Singer's Reply Report announces no new methodologies or conclusions. In it, Dr. Singer cites the DOJ experts a total of 4 times, not to adopt their opinions, but to show that DOJs experts arrived at the same conclusions as Dr. Singer. His citations to DOJ experts merely point out that experts in two parallel cases – working entirely independently – arrived at the same methodology and similarly rejected the approaches advocated by Defendants' expert Dr. Hill.

Dr. Singer cites DOJ's expert Dr. Gowrisankaran three times in his reply report. Each reference merely notes that Dr. Gowrisankaran "also" utilized the same method as Dr. Singer, even though working independently. The three instances are as follows:

1. Defendants' expert Dr. Nicholas Hill analyzed

. In his Reply Report, Dr. Singer discusses why Dr. Hill's approach was economically flawed. At the end of his discussion, Dr. Singer notes,

[4] Defendants' assertion that Dr. Singer's Reply Report "was not permitted" under the Case Management Order is also misleading. Dkt. No. 230 at 5. The CMO is silent on expert reply reports. However, the Court authorized a plaintiff reply report in the government action, and without it, Plaintiffs in this case would have been unable to respond to Defendants' expert in any way.

[redacted]” Wright Dec., Ex. 2 (Singer Reply Rep.) ¶ 22.

2. In his Opening Report, Dr. Singer measured [redacted]. DOJ’s expert Dr. Gowrisankaran independently arrived at a similar conclusion. But, Defendants’ expert Dr. Hill concluded that [redacted]. Wright Dec., Ex. 2 (Singer Reply Rep.) ¶ 33. Dr. Singer methodically refuted Dr. Hill’s reasoning, *id.* ¶¶ 33-39, and again noted that [redacted],” *id.* ¶ 33.

3. In his Opening Report, Dr. Singer [redacted]. Wright Dec., Ex. 1 (Singer Opening Rep.) ¶ 80, Figure 1. In his Reply Report, Dr. Singer described his methodology and noted in a footnote, “The DOJ expert, Dr. Gowrisankaran, also used the same approach.” Wright Dec., Ex. 2 (Singer Reply Rep.) ¶ 40, n. 48.

Defendants’ vastly exaggerated statement that Dr. Singer “adopt[ed]” Dr. Gowrisankaran’s “analyses wholesale” is meritless. Dr. Singer did not rely on any of Dr. Gowrisankaran’s findings, nor could he have, since Dr. Singer’s opinions were submitted well before he ever saw Dr. Gowrisankaran’s report. In citing to Dr. Gowrisankaran in his Reply Report, Dr. Singer merely points out that another economic expert, working independently,

applied the same methodologies and arrived at the same conclusions that refute the contrary findings of Defendants' expert Dr. Hill.

Defendants next assert that Dr. Singer's "reference" to DOJ expert Dr. Chipty's report is improper because Dr. Singer did not "verify" Dr. Chipty's opinion. Dkt. no. 230 at 6. To begin with, Dr. Singer cited Dr. Chipty *once* in his Reply Report (Ex. 2 (Singer Reply Rep.) ¶ 29), so when Defendants claim that citation is one such "example" (dkt. no. 230 at 6), in fact, it is the only example. More importantly, Dr. Singer not only verified the underlying analysis of Dr. Chipty's opinion, Dr. Singer independently completed a fulsome analysis underlying his opinion months before he ever saw Dr. Chipty's report.

The statements at issue concern whether [redacted]. On that score, before having seen Dr. Chipty's report, Dr. Singer observed [redacted] Wright Dec., Ex. 1 (Singer Opening Rep.) ¶ 126. Dr. Singer further concluded, [redacted] *Id*. Dr. Singer summed up, [redacted] *Id*. ¶ 4. These conclusions were premised on a comprehensive independent analysis Dr. Singer conducted (again, before seeing Dr. Chipty's report) which (1) [redacted] (Ex. 1 (Singer Opening Rep.) ¶¶ 4, 38-39, 42, 60-62, Tables A3.1 to A3.7), and (2) [redacted], *id*. ¶¶ 126-142.

In his Reply Report, Dr. Singer outlined . Wright Dec., Ex. 2 (Singer Reply Rep.) ¶¶ 27-32. One of those six points cites Dr. Chipty's conclusion that ." Wright Dec., Ex. 2 (Singer Reply Rep.) ¶ 29. Defendants argue this citation necessarily means that Dr. Singer "adopted wholesale" Dr. Chipty's conclusions. Dkt. no. 230 at 2, 6. Not so. This is not just derived from Dr. Chipty's analysis; it is also derived from Dr. Singer's independent analysis, which defense expert Dr. Hill himself concedes. Specifically, defense expert Dr. Hill writes that Dr. Singer (not Dr. Chipty) determined . Alioto Jr. Dec., Ex. C (Hill Rep.) ¶ 131. Dr. Hill then argues that . *Id.* ¶ 132. Therefore, Dr. Hill admits by implication that . In other words, relying on Dr. Singer's conclusions, Dr. Hill agrees . So, while Defendants argue in their motion that Dr. Singer "did no independent work to verify Dr. Chipty's conclusion" that , dkt. no. 230 at 6, Defendants' argument is refuted by their own expert. Not only did defense expert Dr. Hill verify Dr. Singer's underlying analysis, by doing so, Dr. Hill shows that Dr. Singer and Dr. Chipty – two economists working entirely independently – arrived at the same conclusion.

Finally, Defendants cite two answers to questions at Dr. Singer's deposition which they claim purportedly show Dr. Singer "adopted" "wholesale" the DOJ experts' reports. Dkt. no. 230

at 2, 6. These cherrypicked phrases – two sentences from a 5-hour deposition – do not even arguably reflect an "adoption" by Dr. Singer of any other expert's analysis.

Defendants first claim "Dr. Singer relied on Dr. Chipty's analysis" because

Dr. Singer testified that Dr. Chipty "did a really nice job" on her analysis. Dkt. no. 230 at 6. But, the full answer in the deposition transcript tells the real story. Dr. Singer completed his own independent analysis on barriers to entry, and then showed that Dr. Chipty independently arrived at the same conclusion:

Wright Dec., Ex. 3 (Singer Dep.) 128:22-129-4.

Defendants finally argue Dr. Singer relies on Dr. Gowrisankaran's opinion "to make conclusions he could not have independently drawn." Dkt. no. 230 at 6. But again, Dr. Singer discussed Dr. Gowrisankaran's analysis only to demonstrate how it complemented his own conclusions. Defendants' cherrypicked phrases from Dr. Singer's deposition ignore his testimony that "[Dr. Gowrisankaran] makes this point – and I made it, too." Ex. 3 (Singer Dep.) 86:17-18. Defendants incorrectly assert that Dr. Singer used Dr. Gowrisankaran's opinion "as his only basis to say" that . Dkt. no. 230 at 6. That conclusion requires ignoring Dr. Singer's reports. Dr. Singer independently concluded that

 Wright Dec., Ex. 2 (Singer Reply Rep.) ¶ 5, Table 1. Nowhere in his report does Dr. Singer rely on Dr. Gowrisankaran's findings. Defendants' claims to the contrary should be rejected.

**CONCLUSION**

Defendants' motion *in limine* to exclude the opinions and testimony of Dr. Singer should be denied.

Dated: September 25, 2023

Respectfully submitted,

ALIOTO LEGAL

By *Joseph M. Alioto Jr.*

Joseph M. Alioto Jr. (CA Bar No. 215544)
100 Pine Street, Suite 1250
San Francisco, California 94111

Robert F. Ruyak
Stephen G. Larson
Scott Gregory Herrman
LARSON LLP
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Tel: (213) 436-4888
Fax: (213) 623-2000
Email:slarson@larsonllp.com
Email:rruyak@larsonllp.com
Email:gherrman@larsonllp.com
(*Admitted Pro Hac Vice*)

Jeffery K. Perkins
LAW OFFICES OF JEFFERY K. PERKINS
1550-G Tiburon Blvd., Box 344
Tiburon, California 94920
Telephone: (415) 302-1115

Lingel H. Winters
LAW OFFICES OF LINGEL H. WINTERS
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-2941

Christopher A. Nedeau
NEDEAU LAW PC
154 Baker Street
San Francisco, CA 94117-2111
Telephone: (415) 516-4010
Email: cnedeau@nedeaulaw.net

Joseph M. Alioto
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104
Telephone: (415) 434-8900
(*Admitted pro hac vice*)

Josephine Alioto
THE VEEN FIRM
20 Haight Street
San Francisco, CA 94102
Telephone: (415) 673-4800
Email: j.alioto@veenfirm.com
(*Admitted pro hac vice*)

Lawrence G. Papale
LAW OFFICES OF LAWRENCE G. PAPALE
The Cornerstone Building
1308 Main Street, Suite 117
St. Helena, California 94574
Telephone: (707) 963-1704
(*Admitted pro hac vice*)

Robert J. Bonsignore, Esq.
BONSIGNORE TRIAL LAWYERS, PLLC
23 Forest Street
Medford, MA 02155
Phone: 781-856-7650
Email: rbonsignore@classactions.us

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that this document was filed through the ECF system on September 25, 2023, and I understand it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Joseph M. Alioto Jr.*

JOSEPH M. ALIOTO JR.