# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

GABRIEL GARAVANIAN, *et al.*,

                 *Plaintiffs*,

v.

JETBLUE AIRWAYS CORPORATION and
SPIRIT AIRLINES, INC.,

                 *Defendants*.

Civil Action No.: 1:23-cv-10678-WGY

## DECLARATION OF JOSEPH M. ALIOTO JR.
## IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF DR. HAL SINGER

I, JOSEPH M. ALIOTO JR., declare:

1.      I am an attorney with Alioto Legal and I represent Plaintiffs in this case. I have personal knowledge of the facts set forth herein. I make this declaration in support of Plaintiffs' Opposition to Defendants' Motion *In Limine* to Exclude Opinions and Testimony of Dr. Hal Singer. If called as a witness, I could and would competently testify to the matters stated herein.

2.      I am duly admitted to practice law in the State of California. I have been admitted to the District of Massachusetts *pro hac vice* for the prosecution of this action.

3.      Attached hereto as Exhibit A are true and correct excerpts from the June 21, 2023 Litigation Deposition of JetBlue employee Ursula Hurley.

4.      Attached hereto as Exhibit B are true and correct copies of Exhibits 18, 21, and 25 from the Litigation Deposition conducted by the Department of Justice of Spirit Chief Executive Officer Edward Christie on June 6, 2023.

5.      Attached hereto as Exhibit C are true and correct excerpts from the Rebuttal Expert Report of Nicholas Hill, PhD, prepared on or about August 24, 2023.

6.      Attached hereto as Exhibit D are true and correct excerpts from the January 13, 2023 deposition of JetBlue employee Derek Klinka in his personal capacity.

7.      Attached hereto as Exhibit E are true and correct excerpts from the January 12, 2023 deposition of JetBlue employee Derek Klinka in his capacity as a corporate witness testifying under Federal Rule of Civil Procedure 30(b)(6).

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 25th day of September, 2023, at San Francisco, California.

/s/ Joseph M. Alioto Jr.
_____

JOSEPH M. ALIOTO JR.

**CERTIFICATE OF SERVICE**

I certify that this document was filed through the ECF system on September 25, 2023 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Joseph M. Alioto Jr.*

JOSEPH M. ALIOTO JR.

# EXHIBIT A

Excerpts from the deposition of Ursula Hurley

**Subject to Motion to Impound**

# EXHIBIT B

Exhibits from the deposition of Edward Christie

| **Date:** | Wednesday, May 18 2022 09:31 PM |
| **Subject:** | Privileged and confidential |
| **From:** | Ted Christie |
| **To:** | Chris Richards <chrismemphis@bellsouth.net>; Dawn Zier <dawnzier@gmail.com>; Mac Gardner <hmacgardner@gmail.com>; Mark Dunkerley <mark@markdunkerley.com>; Myrna Soto <Myrna_Soto@live.com>; Robert Johnson <bob.johnson@bobjohnsonmail.com>; Barclay Jones <bjones@istar.com>; |
| **CC:** | Thomas Canfield <Thomas.Canfield@Spirit.com>; |
| **Attachments:** | Spirit Tender Offer Press Release FINAL.docx |

BOD: attached is the press release we plan to issue in the morning. Thanks for your support.



EXHIBIT _18_
WIT: CHRISTIE
DATE: 6-6-23
DAWN A. HILLIER, RMR, CRR

NK-2R-05327976

**Spirit Airlines Board of Directors Urges Stockholders to Reject JetBlue Tender Offer**

*JetBlue Misleads Spirit and JetBlue Stockholders with Inaccurate Statements and Mischaracterizations*

*Board Unanimously Recommends Stockholders Not Tender Their Shares*

*Continues to Recommend that Stockholders Vote FOR the Merger with Frontier*

MIRAMAR, Fla., May 19, 2022 – Spirit Airlines, Inc. ("Spirit" or the "Company") (NYSE: SAVE) today announced that its Board of Directors (the "Board"), after consultation with its outside financial and legal advisors, has unanimously determined that the unsolicited tender offer from JetBlue Airways Corporation ("JetBlue") (NASDAQ: JBLU) to acquire all outstanding shares of Spirit's common stock for $30 per share in cash (the "Offer") is NOT in the best interests of Spirit and its stockholders. In its comprehensive analysis, the Board determined that the JetBlue transaction faces substantial regulatory hurdles, especially while the Northeast Alliance ("NEA") with American Airlines remains in effect, and is, as a result, not reasonably capable of being consummated and is not superior to Spirit's agreed merger transaction with Frontier.

Accordingly, the Spirit Board unanimously recommends that Spirit stockholders not tender any of their shares into the Offer and continues to recommend that stockholders vote FOR the merger agreement with Frontier. Additional information about the significant strategic and financial benefits of the merger with Frontier and voting instructions are at **http://ir.spirit.com** and in the proxy statement/prospectus mailed to Spirit stockholders on May 11, 2022.

"JetBlue's tender offer has not addressed the core issue of the significant completion risk and insufficient protections for Spirit stockholders," said Mac Gardner, Chairman of the Board of Directors for Spirit Airlines. "Based on our own research and the advice of antitrust and economic experts, our view is that the proposed combination of JetBlue and Spirit lacks any realistic likelihood of obtaining regulatory approval, while our company faces a long and bleak limbo period as we await resolution. In that scenario, a $1.83 per share reverse break-up fee will not come close to adequately compensating Spirit stockholders for the significant business disruption Spirit will face during what JetBlue acknowledges will be a protracted regulatory process. Our pending merger with Frontier is advancing as planned, and we continue to recommend that Spirit stockholders vote FOR the merger with Frontier on June 10th, as we believe the combination of these two ULCCs is the best way to deliver maximum value to Spirit stockholders."

**The Spirit Board conducted a comprehensive review of the Offer and recommends Spirit stockholders reject the Offer for the following reasons:**

- **The JetBlue transaction faces very substantial regulatory hurdles, especially while the NEA is in effect**
    - Spirit does not believe that the JetBlue transaction is likely to receive regulatory approval.
    - Spirit retained top-tier aviation and economic consultants and worked with JetBlue and its advisors for four weeks to reach an informed view about the regulatory risk posed by

1

NK-2R-05327977

the JetBlue proposals of March 29 and April 29 and the subsequent JetBlue tender offer. In the end, after several weeks and counting, Spirit concluded that the consummation of the proposed JetBlue combination, with the NEA remaining in place, seemed almost inconceivable – especially given the cavalier manner in which JetBlue intends to address the significant regulatory risk.

- ○ The U.S. Department of Justice (DOJ) is currently suing JetBlue and American Airlines, alleging that the NEA is anti-competitive. Not only Spirit, but also many other airlines and air travel constituencies have publicly opposed the NEA on grounds that it is anticompetitive. Spirit does not believe that the JetBlue proposal to acquire Spirit will be approved by the DOJ in light of that litigation.
- ○ Moreover, Spirit does not believe the DOJ, or a court, will be persuaded that JetBlue should be allowed to form an anticompetitive alliance that aligns its interests with a legacy carrier (American) and then undertake an acquisition that will eliminate the largest ULCC carrier in the U.S. (Spirit).
- ○ Nonetheless, by insisting on prioritizing its position in the NEA as it pursues a Spirit merger, JetBlue effectively imposes this heightened regulatory risk entirely on Spirit stockholders.
- ○ Even putting aside the NEA, Spirit believes the DOJ – and a court – will be very concerned that a JetBlue-Spirit combination will result in a higher-cost/higher fare airline that would eliminate a lower-cost/lower fare airline and remove about half of the ULCC capacity in the United States.
- ○ The conversion of Spirit aircraft to JetBlue configuration will result in significantly diminished capacity on former Spirit routes, and, as JetBlue has stated, will also result in higher prices for consumers.

- **JetBlue's proposed divestitures are highly unlikely to resolve the DOJ's concerns given the NEA's alignment of JetBlue's and American's incentives across the country**
    - ○ JetBlue's proposed divestiture of Spirit assets in New York and Boston does not address the broader competitive implications of effectively merging Spirit into JetBlue's alliance with American.
    - ○ The DOJ has alleged that "the harms threatened by the [NEA] ... extend well beyond Boston and New York City. ... The [NEA] allows American to forgo independent growth that would have benefited consumers. By effectively absorbing JetBlue's operations in Boston and New York City, American can reduce investments not just in those cities, but also in other parts of its network where it otherwise would maintain or add service. Consequently, consumers across the country will have fewer options and pay higher fares."
    - ○ Current DOJ antitrust leadership has expressed deep skepticism about the effectiveness of divestiture remedies and a preference for seeking to block transactions rather than accept divestiture-based settlements.

- **JetBlue's offer puts the risk of the antitrust condition NOT being satisfied on Spirit stockholders**
    - ○ Any JetBlue transaction cannot close without HSR approval, which even JetBlue concedes could take up to 24 months. Spirit shareholders are being asked to bear substantial risks without commensurate protections.

SPIRIT CONFIDENTIAL

NK-2R-05327978

- o   The Spirit Board expects the DOJ would bring a lawsuit to block the acquisition, and that any such lawsuit is unlikely to be resolved until between *18 and 24 months after the date of JetBlue's initial HSR filing*.
- o   During the extensive discussions held between Spirit and JetBlue, JetBlue itself admitted that a lawsuit from DOJ seeking to block the merger was a 100% certainty; therefore, JetBlue would have to prevail or settle (which would be contrary to DOJ's avowed enforcement approach) in order to consummate its proposed acquisition of Spirit.
- **JetBlue's conditions to the Offer also subject Spirit stockholders to significant risk from fluctuating market conditions and stock market volatility**
  - o   The Offer excuses JetBlue from consummating the transaction if there is any decline in either the Dow Jones, the S&P 500 or the NASDAQ-100 Index by an amount in excess of 10%, measured from the close of business on May 13, 2022, prior to receipt of regulatory approval, which could take up to two years.
  - o   Since JetBlue first submitted its proposal to acquire Spirit on March 29, 2022, the Dow Jones is down 10.8%, the S&P 500 is down 15.3% and the NASDAQ-100 is down 21.7%.
- **Debt financing for an acquisition of Spirit by JetBlue remains questionable**
  - o   According to JetBlue, the financing commitment letters have an expiration date 14 months from the date of the commitment letters, with certain possible extensions that are subject to (undisclosed) conditions. The Spirit Board believes the regulatory review and challenge process for any acquisition by JetBlue would likely require more than 14 months.

**In public comments issued on Monday, May 16, 2022, JetBlue misleads Spirit and JetBlue stockholders with inaccurate statements and mischaracterizations. The facts are:**

- **Spirit Airlines' independent Board is acting in the best interests of all Spirit stockholders and engaged constructively with JetBlue**
  - o   Seven of Spirit's eight Board members are independent. The Board has been advised by outside legal counsel and financial advisors and conducted a thorough process in evaluating JetBlue's original proposal.
  - o   Spirit's Board made the requisite determination to allow Spirit to enter into a non-disclosure agreement with JetBlue to allow discussions.
  - o   Spirit shared projections with JetBlue's financial advisors and provided voluminous documentary due diligence material through a secure virtual data room.
  - o   Spirit's antitrust advisors spent many hours, involving seven separate calls, with JetBlue's antitrust advisors seeking to understand the anti-trust risks of the JetBlue proposal and JetBlue's plans to address those risks.
  - o   Following a two-hour call with the JetBlue CEO, CFO and members of its management team in which Spirit's management team addressed all of the questions asked by the JetBlue team, JetBlue and its advisors thanked Spirit for their openness and transparency.
- **Spirit believes JetBlue's proposals and offer are a cynical attempt to disrupt Spirit's merger with Frontier, which JetBlue views as a competitive threat**
  - o   JetBlue claims it has harbored an interest in a combination with Spirit for "many years." Yet JetBlue waited over seven weeks after the announcement of the Frontier merger

SPIRIT CONFIDENTIAL

NK-2R-05327979

agreement to submit a proposal to acquire Spirit, and JetBlue chose to launch the Offer shortly after the merger proxy statement for the Frontier merger was mailed to Spirit stockholders. That timing does not seem coincidental.

- o Spirit and JetBlue's CEOs know each other well and Spirit and JetBlue speak regularly on general industry matters, especially recently as both carriers were managing through the pandemic, but JetBlue has never indicated any interest in a combination with Spirit. Moreover, Spirit's former CEO sits on the Board of JetBlue. JetBlue's familiarity with Spirit would have made it easy for it to initiate engagement regarding a combination at any time.

- **JetBlue's focus on Spirit appears to be an attempt to distract from the fact that JetBlue's own business is in disarray**
  - o Since March 29, the date of JetBlue's initial proposal to acquire Spirit, JetBlue's stock has fallen about 34%. Indeed, JetBlue's stock price has repeatedly fallen whenever JetBlue makes public comments regarding a proposed transaction with Spirit. JetBlue stockholders obviously agree that that their company's quixotic offer for Spirit is a dead end, posing substantial risks to their own business.
  - o As noted in multiple public reports, JetBlue "has a host of issues to resolve in-house." As stated by Emilie Feldman, a management professor at the University of Pennsylvania's Wharton School, "A lot of times companies will do acquisitions to avoid having to fix their own house. Sometimes it's better to let the acquisition go and fix your own business." (CNBC, May 6, 2022).
  - o JetBlue has run last or near last in DOT operational metrics in 2022 and for the past several years.

- **JetBlue's claims about the so-called 'JetBlue Effect' are based on economic modeling that Spirit believes has significant defects and overstates the impact of JetBlue on legacy carriers, when in reality, it is Spirit that continues to be a check on other airlines' fares – including JetBlue's**
  - o After receiving the summary output of JetBlue's economic model from JetBlue's advisors, Spirit's economic consultants identified reasons to doubt that such an effect would significantly exceed any similar "ULCC effect."

**JetBlue's illusory Offer would deprive Spirit stockholders of the long-term benefits and deprive consumers of savings expected to result from the Frontier merger**

- **Spirit stockholders would not have the opportunity to participate in the upside from airline industry recovery and benefits from the Frontier transaction**
  - o JetBlue's Offer comes at a time when airline stocks are trading significantly below their pre-pandemic levels. The airline industry recovering to pre-pandemic levels would alone deliver Spirit shareholders value well in excess of JetBlue's offer.
  - o JetBlue is asking Spirit shareholders to submit to a cap on their value at $30/share, and be forced to wait for up to two years to receive their cash, while the rest of the industry's shareholders get to participate in a full post-pandemic recovery.
  - o Unlike the Frontier transaction, in JetBlue's Offer, Spirit stockholders will not participate in substantial ongoing synergies created in the combined business. In the Frontier

4

NK-2R-05327980

combination, Spirit stockholders continue to own 48.5% of the combined company and thereby participate in its future growth.

- **The Spirit and Frontier merger will create America's most competitive ultra-low fare airline**
  - A combination of Spirit and Frontier is a merger of two ULCCs producing $1 billion of consumer benefit and synergies derived from more flying on existing assets.
  - On a combined basis, the company would have annual revenues of ~$5.3 billion based on 2021 results.
  - The combined airline will add new routes and offer more than 1,000 daily flights to over 145 destinations in 19 countries across complementary networks.
  - Once combined, Frontier and Spirit expect to deliver annual run-rate operating synergies of $500 million once full integration is completed, which will be primarily driven by scale efficiencies and procurement savings across the enterprise with approximately $400 million in one-time costs.

The basis for the Board's decision is set forth in the Solicitation/Recommendation Statement on Schedule 14D-9 (the "Schedule 14D-9") filed today with the U.S. Securities and Exchange Commission.

Barclays and Morgan Stanley & Co. LLC are serving as financial advisors to Spirit, and Debevoise & Plimpton LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP are serving as legal advisors.

**About Spirit Airlines**
Spirit Airlines (NYSE: SAVE) is committed to delivering the best value in the sky. We are the leader in providing customizable travel options starting with an unbundled fare. This allows our Guests to pay only for the options they choose — like bags, seat assignments and refreshments — something we call Á La Smarte. We make it possible for our Guests to venture further and discover more than ever before. Our Fit Fleet® is one of the youngest and most fuel-efficient in the U.S. We serve destinations throughout the U.S., Latin America and the Caribbean and are dedicated to giving back and improving those communities. Come save with us at spirit.com.

**Additional Information About the JetBlue Tender Offer**
Spirit has filed a solicitation/recommendation statement with respect to the tender offer with the Securities and Exchange Commission ("SEC"). INVESTORS AND SECURITY HOLDERS ARE URGED TO READ THE SOLICITATION/RECOMMENDATION STATEMENT WITH RESPECT TO THE TENDER OFFER AND OTHER RELEVANT DOCUMENTS THAT ARE FILED WITH THE SEC WHEN THEY BECOME AVAILABLE BECAUSE THEY WILL CONTAIN IMPORTANT INFORMATION ABOUT THE TENDER OFFER. You will be able to obtain free copies of the solicitation/recommendation statement with respect to the tender offer and other documents filed with the SEC by Spirit through the website maintained by the SEC at www.sec.gov. In addition, investors and stockholders will be able to obtain free copies of the documents filed with the SEC by Spirit on Spirit's Investor Relations website at https://ir.spirit.com.

**No Offer or Solicitation**
This communication is for informational purposes only and is not intended to and does not constitute an offer to sell, or the solicitation of an offer to subscribe for or buy, or a solicitation of any vote or approval in any jurisdiction, nor shall there be any sale, issuance or transfer of securities in any jurisdiction in which such offer, sale or solicitation would be unlawful, prior to registration or

5

NK-2R-05327981

qualification under the securities laws of any such jurisdiction. No offer of securities shall be made except by means of a prospectus meeting the requirements of Section 10 of the Securities Act of 1933, as amended, and otherwise in accordance with applicable law.

**Important Additional Information Will be Filed with the SEC**
Frontier has filed with the Securities and Exchange Commission ("SEC") a Registration Statement on Form S-4 in connection with the proposed transaction, including a definitive Information Statement/Prospectus of Frontier and a definitive Proxy Statement of Spirit. The Form S-4 was declared effective on May 11, 2022 and the prospectus/proxy statement was first mailed to Spirit stockholders on May 11, 2022. Frontier and Spirit also plan to file other relevant documents with the SEC regarding the proposed transaction. INVESTORS AND STOCKHOLDERS ARE URGED TO READ THE REGISTRATION STATEMENT/ INFORMATION STATEMENT/ PROSPECTUS/ PROXY STATEMENT AND ANY OTHER RELEVANT DOCUMENTS TO BE FILED BY FRONTIER OR SPIRIT WITH THE SEC IN THEIR ENTIRETY CAREFULLY WHEN THEY BECOME AVAILABLE BECAUSE THEY WILL CONTAIN IMPORTANT INFORMATION ABOUT FRONTIER, SPIRIT, THE PROPOSED TRANSACTIONS AND RELATED MATTERS. Investors and stockholders are able to obtain free copies of the Registration Statement and the definitive Information Statement/Proxy Statement/Prospectus and other documents filed with the SEC by Frontier and Spirit through the website maintained by the SEC at www.sec.gov. In addition, investors and stockholders will be able to obtain free copies of the information statement and the proxy statement and other documents filed with the SEC by Frontier and Spirit on Frontier's Investor Relations website at https://ir.flyfrontier.com and on Spirit's Investor Relations website at https://ir.spirit.com.

**Participants in the Solicitation**
Frontier and Spirit, and certain of their respective directors and executive officers, may be deemed to be participants in the solicitation of proxies in respect of the proposed transactions contemplated by the Merger Agreement. Information regarding Frontier's directors and executive officers is contained in Frontier's definitive proxy statement, which was filed with the SEC on April 13, 2022. Information regarding Spirit's directors and executive officers is contained in Spirit's definitive proxy statement, which was filed with the SEC on March 30, 2022.

**Cautionary Statement Regarding Forward-Looking Information**
Certain statements in this communication, including statements concerning Frontier, Spirit, the proposed transactions and other matters, should be considered forward-looking within the meaning of the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended, and the Private Securities Litigation Reform Act of 1995. These forward-looking statements are based on Frontier's and Spirit's current expectations and beliefs with respect to certain current and future events and anticipated financial and operating performance. Such forward-looking statements are and will be subject to many risks and uncertainties relating to Frontier's and Spirit's operations and business environment that may cause actual results to differ materially from any future results expressed or implied in such forward looking statements. Words such as "expects," "will," "plans," "intends," "anticipates," "indicates," "remains," "believes," "estimates," "forecast," "guidance," "outlook," "goals," "targets" and other similar expressions are intended to identify forward-looking statements. Additionally, forward-looking statements include statements that do not relate solely to historical facts, such as statements which identify uncertainties or trends, discuss the possible future effects of current known trends or uncertainties, or which indicate that the future effects of known trends or uncertainties

SPIRIT CONFIDENTIAL

NK-2R-05327982

cannot be predicted, guaranteed, or assured. All forward-looking statements in this communication are based upon information available to Frontier and Spirit on the date of this communication. Frontier and Spirit undertake no obligation to publicly update or revise any forward-looking statement, whether as a result of new information, future events, changed circumstances, or otherwise, except as required by applicable law.

Actual results could differ materially from these forward-looking statements due to numerous factors including, without limitation, the following: the occurrence of any event, change or other circumstances that could give rise to the right of one or both of the parties to terminate the merger agreement; failure to obtain applicable regulatory or Spirit stockholder approval in a timely manner or otherwise; failure to satisfy other closing conditions to the proposed transactions; failure of the parties to consummate the transaction; risks that the new businesses will not be integrated successfully or that the combined companies will not realize estimated cost savings, value of certain tax assets, synergies and growth, or that such benefits may take longer to realize than expected; failure to realize anticipated benefits of the combined operations; risks relating to unanticipated costs of integration; demand for the combined company's services; the growth, change and competitive landscape of the markets in which the combined company participates; expected seasonality trends; diversion of managements' attention from ongoing business operations and opportunities; potential adverse reactions or changes to business or employee relationships, including those resulting from the announcement or completion of the transaction; risks related to investor and rating agency perceptions of each of the parties and their respective business, operations, financial condition and the industry in which they operate; risks related to the potential impact of general economic, political and market factors on the companies or the proposed transaction; that Frontier's cash and cash equivalents balances, together with the availability under certain credit facilities made available to Frontier and certain of its subsidiaries under its existing credit agreements, will be sufficient to fund Frontier's operations including capital expenditures over the next 12 months; Frontier's expectation that based on the information presently known to management, the potential liability related to Frontier's current litigation will not have a material adverse effect on its financial condition, cash flows or results of operations; that the COVID-19 pandemic will continue to impact the businesses of the companies; ongoing and increase in costs related to IT network security; and other risks and uncertainties set forth from time to time under the sections captioned "Risk Factors" in Frontier's and Spirit's reports and other documents filed with the SEC from time to time, including their Annual Reports on Form 10-K and Quarterly Reports on Form 10-Q.

**Investor inquiries:**

DeAnne Gabel
(954) 447-7920
investorrelations@spirit.com

Okapi Partners LLC
Bruce Goldfarb/Jason Alexander
(212) 297-0720
info@okapipartners.com

**Media inquiries:**

SPIRIT CONFIDENTIAL

NK-2R-05327983

Erik Hofmeyer
Media_Relations@spirit.com

Sard Verbinnen & Co.
Andrew Cole / Robin Weinberg / Columbia Clancy
(212) 687-8080
Spirit-SVC@sardverb.com

SPIRIT CONFIDENTIAL

NK-2R-05327984

425 1 secfiling-jetblueoffersz.htm 425

Filed by Spirit Airlines, Inc.
pursuant to Rule 425 under the Securities Act of 1933
and deemed filed pursuant to Rule 14a-12
under the Securities Exchange Act of 1934

Subject Company: Spirit Airlines, Inc.
SEC File No.: 001-35186
Date: May 23, 2022





**Creating America's Most Competitive Ultra-Low Fare Airline**

May 23, 2022

*spirit*

1

 **Disclaimer**

**Additional Information About the JetBlue Tender Offer**

Spirit has filed a solicitation/recommendation statement with respect to the tender offer with the Securities and Exchange Commission ("SEC"). INVESTORS AND SECURITY HOLDERS ARE URGED TO READ THE SOLICITATION/RECOMMENDATION STATEMENT WITH RESPECT TO THE TENDER OFFER AND OTHER RELEVANT DOCUMENTS THAT ARE FILED WITH THE SEC WHEN THEY BECOME AVAILABLE BECAUSE THEY WILL CONTAIN IMPORTANT INFORMATION ABOUT THE TENDER OFFER. You will be able to obtain free copies of the solicitation/recommendation statement with respect to the tender offer and other documents filed with the SEC by Spirit through the website maintained by the SEC at www.sec.gov. In addition, investors and stockholders will be able to obtain free copies of the documents filed with the SEC by Spirit on Spirit's Investor Relations website at https://ir.spirit.com.

**No Offer or Solicitation**

This communication is for informational purposes only and is not intended to and does not constitute an offer to sell, or the solicitation of an offer to subscribe for or buy, or a solicitation of any vote or approval in any jurisdiction, nor shall there be any sale, issuance or transfer of securities in any jurisdiction in which such offer, sale or solicitation would be unlawful, prior to registration or qualification under the securities laws of any such jurisdiction. No offer of securities shall be made except by means of a prospectus meeting the requirements of Section 10 of the Securities Act of 1933, as amended, and otherwise in accordance with applicable law.

**Important Additional Information Will be Filed with the SEC**

Frontier has filed with the Securities and Exchange Commission ("SEC") a Registration Statement on Form S-4 in connection with the proposed transaction, including a definitive Information Statement/Prospectus of Frontier and a definitive Proxy Statement of Spirit. The Form S-4 was declared effective on May 11, 2022 and the prospectus/proxy statement was first mailed to Spirit stockholders on May 11, 2022. Frontier and Spirit also plan to file other relevant documents with the SEC regarding the proposed transaction. INVESTORS AND STOCKHOLDERS ARE URGED TO READ THE REGISTRATION STATEMENT/ INFORMATION STATEMENT/ PROSPECTUS/ PROXY STATEMENT AND ANY OTHER RELEVANT DOCUMENTS TO BE FILED BY FRONTIER OR SPIRIT WITH THE SEC IN THEIR ENTIRETY CAREFULLY WHEN THEY BECOME AVAILABLE BECAUSE THEY WILL CONTAIN IMPORTANT INFORMATION ABOUT FRONTIER, SPIRIT, THE PROPOSED TRANSACTIONS AND RELATED MATTERS. Investors and stockholders are able to obtain free copies of the Registration Statement and the definitive Information Statement/Proxy Statement/Prospectus and other documents filed with the SEC by Frontier and Spirit through the website maintained by the SEC at www.sec.gov. In addition, investors and stockholders will be able to obtain free copies of the information statement and the proxy statement and other documents filed with the SEC by Frontier and Spirit on Frontier's Investor Relations website at https://ir.flyfrontier.com and on Spirit's Investor Relations website at https://ir.spirit.com.

**Participants in the Solicitation**

Frontier and Spirit, and certain of their respective directors and executive officers, may be deemed to be participants in the solicitation of proxies in respect of the proposed transactions contemplated by the Merger Agreement. Information regarding Frontier's directors and executive officers is contained in Frontier's definitive proxy statement, which was filed with the SEC on April 13, 2022. Information regarding Spirit's directors and executive officers is contained in Spirit's definitive proxy statement, which was filed with the SEC on March 30, 2022.

**Cautionary Statement Regarding Forward-Looking Information**

Certain statements in this communication, including statements concerning Frontier, Spirit, JetBlue, the proposed transactions and other matters, should be considered forward-looking within the meaning of the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended, and the Private Securities Litigation Reform Act of 1995. These forward-looking statements are based on Frontier's, Spirit's and JetBlue's current expectations and beliefs with respect to certain current and future events and anticipated financial and operating performance. Such forward-looking statements are and will be subject to many risks and uncertainties relating to Frontier's, Spirit's and JetBlue's operations and business environment that may cause actual results to differ materially from any future results expressed or implied in such forward looking statements. Words such as "expects," "will," "plans," "intends," "anticipates," "indicates," "remains," "believes," "estimates," "forecast," "guidance," "outlook," "goals," "targets" and other similar expressions are intended to identify forward-looking statements. Additionally, forward-looking statements include statements that do not relate solely to historical facts, such as statements which identify uncertainties or trends, discuss the possible future effects of current known trends or uncertainties, or which indicate that the future effects of known trends or uncertainties cannot be predicted, guaranteed, or assured. All forward-looking statements in this communication are based upon information available to Frontier and Spirit on the date of this communication. Frontier and Spirit undertake no obligation to publicly update or revise any forward-looking statement, whether as a result of new information, future events, changed circumstances, or otherwise, except as required by applicable law. All written and oral forward-looking statements concerning the Frontier merger or other matters addressed in this communication and attributable to Frontier, Spirit, JetBlue or any person acting on their behalf are expressly qualified in their entirety by the cautionary statements contained or referred to in this communication.

Actual results could differ materially from these forward-looking statements due to numerous factors including, without limitation, the following: the occurrence of any event, change or other circumstances that could give rise to the right of one or both of the parties to terminate the Frontier Merger Agreement; failure to obtain applicable regulatory or Spirit stockholder approval in a timely manner or otherwise; failure to satisfy other closing conditions to the proposed transactions; failure of the parties to consummate the transaction; risks that the new businesses will not be integrated successfully or that the combined companies will not realize estimated cost savings, value of certain tax assets, synergies and growth, or that such benefits may take longer to realize than expected; failure to realize anticipated benefits of the combined operations; risks relating to unanticipated costs of integration; demand for the combined company's services; the growth, change and competitive landscape of the markets in which the combined company participates; expected seasonality trends; diversion of managements' attention from ongoing business operations and opportunities; potential adverse reactions or changes to business or employee relationships, including those resulting from the announcement or completion of the transaction; risks related to investor and rating agency perceptions of each of the parties and their respective business, operations, financial condition and the industry in which they operate; risks related to the potential impact of general economic, political and market factors on the companies or the proposed transaction; that Frontier's cash and cash equivalents balances, together with the availability under certain credit facilities made available to Frontier and certain of its subsidiaries under its existing credit agreements, will be sufficient to fund Frontier's operations including capital expenditures over the next 12 months; Frontier's expectation that based on the information presently known to management, the potential liability related to Frontier's current litigation will not have a material adverse effect on its financial condition, cash flows or results of operations; that the COVID-19 pandemic will continue to impact the businesses of the companies; ongoing and increase in costs related to IT network security; the outcome of any discussions between JetBlue and Spirit with respect to a possible transaction, including the possibility that the parties will not agree to pursue a business combination transaction or that the terms of any such transaction will be materially different from those described herein; the conditions to the completion of the possible transaction, including the receipt of any required stockholder and regulatory approvals and, in particular, the companies' expectation as to the likelihood of receipt of antitrust approvals; JetBlue's ability to finance the possible transaction and the indebtedness JetBlue expects to incur in connection with the possible transaction; the possibility that JetBlue may be unable to achieve expected synergies and operating efficiencies within the expected timeframes or at all and to successfully integrate Spirit's operations with those of JetBlue, the possibility that such integration may be more difficult, time-consuming or costly than expected or that operating costs and business disruption (including, without limitation, disruptions in relationships with employees, customers or suppliers) may be greater than expected in connection with the possible transaction; and other risks and uncertainties set forth from time to time under the sections captioned "Risk Factors" in Frontier's, Spirit's and JetBlue's reports and other documents filed with the SEC from time to time, including their Annual Reports on Form 10-K and Quarterly Reports on Form 10-Q.



# ⟩⟩⟩ The Facts On JetBlue's Inferior Offer

❌ JetBlue's regulatory case is weak and defies common sense – the JetBlue "offer" is illusory as it is not reasonably capable of being consummated

❌ JetBlue's cash offer is highly opportunistic when Spirit's stock is near all-time lows, and it excludes Spirit shareholders from participating in the upside of airline industry recovery and synergies

❌ We believe JetBlue's real motivation is to break up the Spirit / Frontier merger and prevent the creation of a stronger combined competitor

❌ JetBlue's shareholders are telling JetBlue to STOP NOW and fix its own problems

❌ JetBlue has made numerous false claims about Spirit and the superior Frontier merger

✔ Spirit's Board undertook a thorough, deliberate review of JetBlue's offer and made a well-informed, unanimous decision



# JetBlue's Unrealistic Regulatory Analysis Results in an Illusory Offer



 ## Is JetBlue Purposefully Downplaying the Substantial Regulatory Risk?

3

| JetBlue's Claim | Reality |
|---|---|
| **"Combined Spirit / Frontier and JetBlue / Frontier will be approximately the same size"** | ✓ Not about size, but about type of carrier – **JetBlue is a high-fare carrier**<br><br>✓ **JetBlue acquisition removes the largest low-fare competitor,** affecting millions of consumers across the U.S. |
| **"The NEA is limited and pro-competitive"** | ✓ If the NEA is so pro-competitive, **why is DOJ suing to block it?**<br><br>✓ The NEA is not "limited"… it is a **de facto merger between JetBlue and American Airlines** (the largest airline in the world) in the Northeast and will have a major effect in the most lucrative air travel region in the U.S. and **will harm air travelers across the country by significantly diminishing JetBlue's incentive to compete with American** |
| **"JetBlue has solved Spirit's NEA concerns by offering to divest all of Spirit's assets in NYC and Boston"** | ✓ JetBlue is **expressly reserving the right to refuse any other divestiture commitments** that would materially and adversely affect the NEA<br><br>✓ If JetBlue believes that divestitures in NYC and Boston are sufficient, why would it need to explicitly carve out any other divestitures in any other markets that would materially and adversely affect the NEA? |

**JetBlue's Unrealistic Regulatory Analysis Results in an Illusory Offer**

 **The NEA, JetBlue's "First Prize," Is Already Opposed on Grounds it Is Anticompetitive** 4

| Breaking Down the NEA | | |
|---|---|---|
| | **The Short** | **The Long** |
| **What is it?** | Anticompetitive, De Facto Merger | • We believe the NEA is an anticompetitive alliance between JetBlue and American Airlines, the largest airline in the world<br><br>*"de facto merger between American and JetBlue [with] impact on consumers [that] extends far beyond Massachusetts and New York."* - DOJ |
| **Has it been approved by antitrust regulators?** | No | • The DOJ is currently in active litigation to block the NEA on grounds that it is anticompetitive<br><br>*"The Northeast Alliance will cause hundreds of millions of dollars of harm to air passengers"* – DOJ |
| **What is Spirit's view?** | Should be blocked | • Spirit agrees with the DOJ that the Northeast Alliance is anticompetitive and should be blocked<br>• Spirit is a potential witness for the DOJ in its suit and an outspoken critic of the alliance<br>• Numerous other airlines, air travel organizations and policy non-profits have also expressed strong opposition |
| **How could DOJ approve a Spirit acquisition while litigating against the NEA or if the NEA is allowed to remain in place?** | We have no idea! | • Spirit believes a combination of JetBlue and Spirit would make the NEA even more anticompetitive than it is already |

*We asked JetBlue to abandon the NEA if required to obtain approval for an acquisition of Spirit and it has refused to do so...it stretches credulity to believe a JetBlue acquisition would be approved while DOJ is suing to block the NEA or if the NEA is allowed to remain in place*

Source: DOJ Complaint and Press Release.

**JetBlue's Unrealistic Regulatory Analysis Results in an Illusory Offer**



# The NEA Is Not "Limited" and "Pro-Competitive" as JetBlue Asserts

5

**JetBlue & American Will Control Most Capacity from the Northeast[1][2][3]...**

(2019 Northeast[2] Domestic Market Share)

*~2x Delta share and equal to Delta + United's combined share*



**...Which Is the Most Lucrative Market in the U.S...**

(2019 SLA PRASM)

*Highest unit revenues in the U.S.*



**...JetBlue's Most Important Market To / From the Northeast Is Florida**

(Based on 2019 Domestic ASMs)

*46% of Spirit's domestic capacity[1] touches Florida*

*30% of JetBlue's domestic capacity[1] is between Northeast[2] and Florida*





*The NEA's impact goes well beyond the Northeast and that is why JetBlue has refused to undertake any divestitures that would materially and adversely affect the NEA*

Source: Diio, DOT T-100.
1. Based on 2019 domestic ASMs.
2. Northeast region includes Connecticut, Delaware, District of Columbia, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island and Vermont.
3. Represents share of 2019 ASMs originating in Northeast region to all domestic locations.

**JetBlue's Unrealistic Regulatory Analysis Results in an Illusory Offer**



## Spirit Shareholders Lose in All NEA Litigation Scenarios

6



- We consider **JetBlue's simplistic view** on litigation outcomes to be severely flawed, inaccurate and misleading

- If JetBlue <u>wins or settles</u> the NEA litigation, the **DOJ will be even more determined to stop a JetBlue acquisition of Spirit** as JetBlue will have just completed a de facto merger with American Airlines (the largest airline in the world) – this is not a reasonable risk for Spirit's shareholders to bear

- If JetBlue <u>loses</u> the NEA litigation, **JetBlue (and / or American) would likely appeal in a last-ditch effort to save the anticompetitive alliance that it has implied is more important than an acquisition of Spirit** – that process could take well over a year to resolve

- Neither outcome changes the fact that **JetBlue is a high-fare airline trying to buy a low-fare airline** and raise fares

- **In all cases, Spirit shareholders lose** with JetBlue's proposal as it is not reasonably capable of being consummated

*The anticompetitive NEA should be blocked and Spirit cannot commit to a deal that leaves its shareholders on the sidelines while JetBlue engages in a litigation marathon with DOJ*

**JetBlue's Unrealistic Regulatory Analysis Results in an Illusory Offer**

# At Its Core, The JetBlue Proposal Represents a High-Fare Carrier Trying to Buy a Low-Fare Carrier



| 2019 Passenger Yield[1] | | | 2019 Average Fare[2] | | |
| --- | --- | --- | --- | --- | --- |

(cents) ($)

FRONTIER 10.1¢   spirit 10.7¢   jetBlue 14.5¢

FRONTIER $53   spirit $55   jetBlue $182

**JetBlue has stated it will reduce capacity and raise fares on Spirit routes…how will regulators approve that transaction?**

Source: Company filings.
1.  2019 Passenger Revenue / Revenue Passenger Miles.
2.  Spirit and Frontier based on 2019 Fare Revenue Per Passenger and JetBlue based on disclosed 2019 Average Fare.

**JetBlue's Unrealistic Regulatory Analysis Results in an Illusory Offer**



## Shareholders Should Think About the Conversation with Regulators

8

**A JetBlue Acquisition of Spirit Will Have <u>Lasting Negative Impacts on Consumers</u>**

❌ **Raises Spirit's ticket prices**

❌ **Removes ~50% of the ULCC capacity in the U.S.**

❌ **Merges Spirit with a de facto combined JetBlue and American Airlines in the Northeast**

❌ **Represents a second major transaction for JetBlue while DOJ is in litigation to block the NEA transaction**

JetBlue's Unrealistic Regulatory
Analysis Results in an Illusory Offer

 # The Market Doesn't Believe JetBlue's Offer Either

## Spirit Share Price & Spread to JetBlue Offer Since April 5, 2022[1]

($ / share)

Legend: Spread · JetBlue Offer · Spirit Share Price

Hostile Tender Offer Announced

37% Current Discount

Y-axis: $40, $35, $30, $25, $20, $15

X-axis: 4/5/2022, 4/9/2022, 4/13/2022, 4/17/2022, 4/21/2022, 4/25/2022, 4/29/2022, 5/16/2022, 5/20/2022

**Spirit's share price has consistently traded at a significant discount to JetBlue's offer because the market agrees that the deal cannot be consummated**

Source: FactSet.
1. Market data as of May 20, 2022. Data presented from April 5, 2022 to April 29, 2022 ($33 per share offer) and from May 16, 2022 to May 20, 2022 ($30 per share offer).

**JetBlue's Unrealistic Regulatory Analysis Results in an Illusory Offer**

10

 **Let's Use Common Sense**

| | A "Common Sense" Scenario Matrix | |
|---|---|---|
| | **The Expected Outcome** | **The Common Sense** |
| **A Frontier Transaction** | **Strong Regulatory Case**<br><br>Ultimate Outcome:<br>**Substantial Value Creation vs. Status Quo** | ✓ **_Strong Regulatory Case:_** A Spirit / Frontier merger is **pro-consumer**, delivering more ultra-low fares in more places, with **$1B+ of annual consumer savings**<br>✓ **_Substantial Value Creation:_**<br>• Stock merger provides Spirit shareholders **exposure to full pandemic recovery** (in early innings) and continued airline growth<br>• $500MM of annual run-rate operating synergies represents potential _incremental value_ of ~$15+ per share to Spirit shareholders[1] |
| **A JetBlue Transaction** | **Very Low Transaction Certainty**<br><br>Ultimate Outcome:<br>**Value Destruction vs. Status Quo** | × **_Very Low Certainty:_** JetBlue is already in litigation with DOJ over the NEA and, at its core, a JetBlue transaction would substantially raise fares for consumers – **how could that be approved?**<br>× **_Value Destruction:_** RTF of $1.83 per share does not come anywhere close to protecting Spirit shareholders from the **business disruption of a botched M&A transaction**: _average market underperformance of (25%) experienced by targets of failed mergers_[2] |

Source: Capital IQ.
1. Illustrative value per share based on Spirit shareholder's 48.5% share of illustrative market value of run-rate operating synergies of $500MM, calculated at 10x P/E ratio assuming an effective tax rate of 22.7%, less one-time costs to achieve of $400MM, divided by current fully diluted shares outstanding.
2. Based on U.S. public transactions announced since 2016 that were withdrawn after >1 year due to lack of regulatory approvals. Target share price performance measured from unaffected date to one day following transaction withdrawn date, measured relative to performance of S&P 500 over same time period.

**JetBlue's Unrealistic Regulatory Analysis Results in an Illusory Offer**



**JetBlue's Misleading Math**



secfiling-jetblueoffersz

11

# ⟩⟩⟩⟩ Opportunistic Cash Offer Near Spirit's All Time Low

**Spirit Share Price Over Last 10 Years**[1]

($ / share)

- Spirit's stock hasn't traded below JetBlue's offer at any point during the five years preceding COVID
- JetBlue's offer is even below Spirit's high trading price <u>during</u> the depths of COVID
- JetBlue's offer caps value for Spirit shareholders at $30 / share for up to 18 to 24 months (until closing), removing upside from post-COVID rebound and Frontier merger

JetBlue's Illusory Offer: $30

Source: FactSet.
1. Market Data as of May 20, 2022.

**JetBlue's Misleading Math**



# The Airline Industry Recovery Is Taking Off: A Cash Sale Precludes You from Riding the Upside

12

**Airline Stocks Remain Well Below Pre-Pandemic Levels...**

(JETS Index)

**Airline Stocks Have 68% Upside to Pre-Pandemic Levels**

Jan-20   May-20   Sep-20   Jan-21   May-21   Sep-21   Jan-22   May-22

**...With Earnings Recovery in Early Innings**

(Airline Industry Net Income / 2019A Net Income [1][2])

**We are here...**

| 100% | | 19% | 83% | 107% |

(106%)

...recovery to pre-pandemic levels continues here...

...and expect to exceed pre-pandemic levels here

2019A   2021A   2022E   2023E   2024E

Source: Capital IQ, Company Filings.
1. Market data as of May 20, 2022. Airline industry net income estimated based on AAL, ALGT, ALK, DAL, JBLU, LUV, SAVE, UAL, ULCC net income.
2. Historical non-GAAP net income as reported in Company Filings. Forecasted net income based on Wall Street estimates.

**JetBlue's Misleading Math**



## In Fact, Airline Industry Recovery Would Deliver Shareholder Value Far in Excess of JetBlue Offer...

13



| P/E Multiple | Implied *spirit* Standalone Stock Price |
|---|---|
| **10x** (Current 2023E P/E: 10.5x) | **$37** |
| **11x** (2017 – '19A Average NTM P/E) | **$40** |
| **12x** (2012 – '19A Average NTM P/E) | **$44** |

**Illustrative Spirit Stock Price from Pandemic Recovery[2]**

Source: Capital IQ, Company Filings.
1. Market data as of May 20, 2022. Net income based on Wall Street estimates.
2. Illustrative share price calculated as each respective P/E ratio multiplied by 2024E Spirit net income based on Wall Street estimates, divided by current fully diluted shares outstanding. Not intended as a prediction of future trading prices.

**JetBlue's Misleading Math**



## ...With Synergies from Frontier Merger Creating Even More Potential Upside for Spirit Shareholders

14



*Based on __third party__ earnings estimates (which are consistent for the broader airline industry), the value upside from a __pandemic recovery alone__ exceeds a cash offer that, even if it could close, would take up to 2 years to deliver cash proceeds to shareholders: __Don't miss out on the recovery!__*

Source: Capital IQ, Company Filings.
1. Market data as of May 20, 2022.
2. Illustrative share price calculated as each respective P/E ratio multiplied by 2024E Spirit net income based on estimates, divided by current fully diluted shares outstanding. Not intended as a prediction of future trading prices.
3. Illustrative value per share based on Spirit shareholder's 48.5% share of pro forma 2024E Spirit and Frontier net income of $826MM based on Wall Street estimates, divided by current fully diluted shares outstanding, plus cash consideration of $2.13. Includes illustrative market value of run-rate operating synergies of $500MM, calculated at each P/E ratio assuming an effective tax rate of 22.7%, less one-time costs to achieve of $400MM. Not intended as a prediction of future trading prices.

JetBlue's Misleading Math





# We Believe JetBlue's Real Motivation Is to Break Up The Spirit / Frontier Merger

| JetBlue vs. Spirit / Frontier[1] | | **JetBlue Seems Afraid to Compete with a Combined ULCC...and We Understand Why** |

*Spirit / Frontier Merger Creates National ULCC with Greater Reach than JetBlue...*

*...And a Much Lower Cost Base to Undercut JetBlue on Prices...JetBlue Loses but Consumers Win!*



- True national ULCC with an expansive network

- Unit costs are ~32% below JetBlue's unit costs before cost savings[1][2]

- JetBlue's high fares already repel many customers leading to its weak financial performance relative to ULCCs (or any other airline), but at least it has a scale advantage...

- ...With that scale advantage gone, JetBlue may be understandably afraid of becoming irrelevant

- JetBlue still wins if the Spirit / Frontier merger does not happen, but Spirit shareholders and the American public lose BIG TIME

*With fares >3x higher than Spirit and Frontier, JetBlue appears to be worried about competing against a combined ULCC that has greater reach and a larger network than JetBlue!*

1. Based on FY2021 or as of December 31, 2021.
2. Based on average of Spirit and Frontier 2021 CASM Ex-Fuel vs. JetBlue 2021 CASM Ex-Fuel.

**What Is JetBlue's Real Motivation?**



# JetBlue Has Publicly Admitted Its Concerns About Competing with a Combined Spirit / Frontier

16

**Excerpt From Page 21 of JetBlue's 2021 10-K**

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

FORM 10-K

☒ ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934
For the fiscal year ended December 31, 2021

☐ TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934
For the transition period from to
Commission file number 000-49728



"...in February 2022, Frontier Airlines and Spirit Airlines announced an intention to merge. If the proposed merger meets regulatory and stockholder approval, the combined airline is expected to be a larger competitor to JetBlue, which may affect our competitiveness."

*JetBlue added a risk factor about the Spirit / Frontier combination to its 2021 10-K, thereby confirming the combination can impact their competitiveness given the potential fare reductions*

Source: JetBlue 2021 10-K.

**What Is JetBlue's Real Motivation?**

17



# ⟩⟩⟩ Tender Offer is a Highly Conditional Distraction

**✖ Regulatory Condition:** Tender offer would need to be extended to remain open until regulatory approval is obtained, which is **highly unlikely**

- JetBlue itself said it expects the DOJ will sue to block its acquisition of Spirit, which will likely take 18 – 24 months to resolve

**✖ No Market Decline Condition:** JetBlue can walk away from its offer if there is any decline in either the Dow Jones, the S&P 500 or the NASDAQ-100 in excess of 10%, measured from close of business on May 13, 2022

- Since JetBlue first submitted its proposal to acquire Spirit on March 29, 2022, the Dow Jones is down 11.4%, the S&P 500 is down 15.8% and the NASDAQ-100 is down 22.3%[1]

> *What stops JetBlue from walking away once it achieves its objective of disrupting Spirit's merger with Frontier?*

Source: Capital IQ, Company Filings.
1. Market data as of May 20, 2022.

**What Is JetBlue's Real Motivation?**



# JetBlue's Shareholders Are Saying "STOP!"





# Investors Want JetBlue to Get Its Own House in Order...

18

## Q1 2022 EBITDAR Margin[1]

(% Margin)



| ULCCs | Big Four | JetBlue |
|---|---|---|
| 6% | (3%) | (11%) |

## Q1 2022 Completion Factor[2]

(% Completion Factor)

| Big Four | ULCCs | JetBlue |
|---|---|---|
| 96% | 95% | 94% |

## JetBlue's Q1 2022 Earnings Call Highlights

*"...operational setback here in April that has significantly impacted our second quarter outlook..."*

*"...90% completion factor, 9 points lower than our historical average."*

– *Robin Hayes, CEO*

*"Many investors [believed] the implied growth acceleration you were guiding to felt ambitious, aggressive last quarter."*

*"...what specifically broke down here in just three months' time...?"*

– *Broker A*

*"...it's worth noting there's precedent for senior leaders being let go when operations have suffered."*

*"How would you characterize your recent conversations with the board?... how much [time] has been split between discussing the merger and discussing the operational challenges?"*

– *Broker B*

**JetBlue's financial and operational performance are in disarray, and its stock is down 31% (worst in airline industry) since its offer was made public, resulting in brokers calling into question their ability to run the company**

Source: Company filings, DOT, Earnings Transcripts, FactSet (Market data as of May 20, 2022).
1. ULCCs is an average of Allegiant, Frontier, Spirit and Sun Country; Big Four is an average of American, Delta, United and Southwest.
2. ULCCs is an average of Allegiant, Frontier and Spirit; Big Four is an average of American, Delta, United and Southwest.

**JetBlue's Shareholders Are Saying "STOP!"**

 # ...And Clearly Don't See Value in a Deal

**$1.5B of JetBlue Value Destruction Since Initial Offer for Spirit Made Public**

**JetBlue Share Price Performance (%)[1]**

**JetBlue Market Capitalization ($B)**

***JetBlue has continued to pursue a strategy to disrupt to the Spirit / Frontier combination despite clear skepticism and concern from JetBlue shareholders***

Source: Capital IQ.
1. JETS is the U.S. Global Jets ETF.

**JetBlue's Shareholders Are Saying "STOP!"**



20

 **JetBlue Continues to Spread Misinformation**

| The Fiction | The Fact |
|---|---|
| **"Spirit Board refused to engage on proposal"** | ✓ Spirit Board's rejection of JetBlue's proposal followed a **careful, thorough review** as described in our proxy statement<br>✓ JetBlue's own background section of its **Tender Offer describes several weeks of engagement**<br>✓ In a two-hour call with JetBlue CEO, CFO and other members of management team, Spirit answered all their due diligence questions, and JetBlue **thanked our team for their openness and transparency** |
| **"Cash offer is more value in any scenario"** | ✓ JetBlue does **not account for any industry recovery**, assumes all airline stocks will continue to trade at today's level<br>✓ Ignores the value of the 48.5% **share of synergies created in a merger with Frontier** that Spirit shareholders receive<br>✓ JetBlue does not account for the value destruction incurred by Spirit from up to 2 years of fighting the DOJ |
| **"Average airline transaction premium is 86%"** | ✓ JetBlue and its advisors have erroneously conflated the Frontier stock merger with an all-cash acquisition – **don't be fooled by their phony statistics**<br>✓ JetBlue's **cash acquisition** offer is a 38% premium to Spirit's unaffected price on February 4th, a **material discount** to precedent median **cash acquisition premiums** of 86% in cash LCC transactions[1][2]!<br>✓ On the contrary, Frontier **stock merger** premium of 19% **exceeds** precedent median **stock merger premiums of 12%**[3], which are customarily lower than cash acquisition premiums due to target and acquirer sharing in the future upside<br>✓ In the Frontier merger, not only is Spirit receiving a relatively high upfront premium compared to merger precedents, but Spirit shareholders also benefit from substantial potential upside from future growth and synergies |
| **"Spirit agreed to Frontier deal without considering alternatives"** | ✓ Spirit has had strategic discussions with other airlines over the years as outlined in our proxy statement<br>✓ Spirit has **specifically spoken to JetBlue** over the years and JetBlue **never indicated any interest** in a combination<br>✓ Robin Hayes and Ted Christie know each other well. Current JetBlue Board member **Ben Baldanza is the former CEO of Spirit and could have initiated engagement with Spirit at any time**<br>✓ JetBlue CEO, Robin Hayes: "*Once the Spirit and Frontier deal was announced it created a window of opportunity that if you don't act in it, it's gone. So yes, it was something that the timing was definitely driven by the announcement*" |

1. Precedent transaction premiums are based on unaffected stock prices, Spirit / Frontier transaction's unaffected date is February 4, 2022.
2. Includes precedent cash consideration transactions in the LCC sector: WestJet / Onex, Virgin America / Alaska, and Midwest Air / TPG & Northwest.
3. Based on median one-day premiums for U.S. M&A transactions in all sectors over $500MM in size announced in 2007 – 2021 with pro forma target ownership of 35 – 65%.

**Summary of JetBlue's Propaganda**

21

 **JetBlue Continues to Spread Misinformation**

| The Fiction | The Fact |
|---|---|
| **"Spirit Board members are conflicted"** | ✓ On Spirit's Board, **7 out of 8 members are independent**<br>✓ Bill Franke has not been involved with Spirit since he resigned from the Board and sold his last shares of Spirit over 9 years ago<br>✓ Board has been advised by top-tier legal, economic and financial advisors, and thoroughly evaluated the proposals |
| **"Spirit's Chairman didn't return our call"** | ✓ When JetBlue's Chairman called, **our Chairman was contractually prohibited from speaking to would-be suitors until the Spirit Board acted** according to the customary non-solicitation provision in the Frontier merger agreement |
| **"Frontier has similar regulatory risk"** | ✓ JetBlue is a **high-fare airline acquiring a low-fare airline and vowing to reduce capacity and increase prices to consumers**<br>✓ Frontier is a merger of two ULCCs producing $1B of annual consumer benefit and $500MM in annual operating synergies derived from more flying on existing assets<br>✓ **Doesn't take an antitrust attorney to see that JetBlue is a much tougher story to sell!** |
| **"Spirit's standalone projections are unreasonably optimistic"** | ✓ As the leading ULCC serving price-sensitive leisure customers, **Spirit is seeing a historically strong demand environment**<br>✓ Spirit's ultra-low-cost structure and fuel-efficient fleet makes us a **relative winner in a higher fuel environment**; we believe that the Street will catch-up to our long-term targets as we continue to outperform quarter over quarter |

Summary of JetBlue's Propaganda

# ⟩⟩⟩ **Spirit Undertook a Rigorous Review of JetBlue Offer**

- Spirit, its Board, and its advisors undertook a **thorough, comprehensive review to evaluate JetBlue's proposal throughout April, including the likelihood of its obtaining regulatory clearance**

- Spirit's Board spent the first week following receipt of JetBlue's proposal analyzing the proposal – the Board initially determined that it COULD potentially lead to a superior proposal, and authorized Spirit's management to engage in conversations with JetBlue

- **Spirit's antitrust counsel retained prominent economic consultants** as well as **an experienced aviation economist** to provide input and analysis on the veracity of JetBlue's claims

- **Extensive dialogue between antitrust counsels to Spirit and JetBlue over a four-week period**; seven calls and video conferences and a comprehensive review of the data provided by JetBlue's regulatory counsel and economic consultant

- At the conclusion of Spirit's analysis of JetBlue's claims, Spirit's Board determined that JetBlue's original proposal represented an **unsatisfactorily high degree of completion risk with inadequate protections for Spirit shareholders**

- In order to address the Spirit Board's concerns, on April 25 **Spirit responded to JetBlue with a proposal including strengthened regulatory provisions designed to reduce completion risk** along with a substantial reverse termination fee intended to protect Spirit shareholders and underline partially compensate Spirit if the transaction failed to win antitrust clearance

- JetBlue responded on April 29, **rejecting Spirit's proposal and failing to address Spirit's concerns**, including an unwillingness to commit to terminate the NEA, so Spirit's Board determined JetBlue's proposal is not reasonably capable of being consummated and therefore does not constitute a Superior Proposal

> *Rigorous process undertaken to assess completion risk, which JetBlue failed to adequately address*

**Summary of JetBlue's Propaganda**

23

 **JetBlue Was Provided Access, Data and Information**

*JetBlue's claims that Spirit's Board refused to engage are not supported by facts....read the proxy for yourself!*


**7 Meetings & Hundreds of Hours**

- Following signing of the NDA with JetBlue on April 8, Spirit's outside antitrust counsel, Paul Weiss, immediately engaged with JetBlue's antitrust counsel and conducted extensive analysis of JetBlue's proposal
- Spirit's economic consultants have spent literally hundreds of hours assessing the regulatory risk of an acquisition of Spirit by JetBlue, including assessing the validity and merits of JetBlue's own analysis


**Constructive VDR Access**

- Spirit promptly opened a virtual data room to JetBlue, which was substantively consistent with information shared with Frontier and included a detailed 5-year plan
- As any reasonable and responsible person would do, in the interest of protecting Spirit's business in the event a JetBlue transaction did not proceed, certain commercially sensitive "clean room" information was withheld until JetBlue could establish a clear path forward to obtain regulatory approval, which it has clearly failed to do


**2-Hour Diligence Call**

- On April 19, Spirit's management team conducted a 2-hour due diligence call with JetBlue's management team on a range of high priority due diligence topics, including financial model projections, fleet financing, labor, Spirit's new HQ, and other material contract details


**Inappropriate Requests**

- JetBlue requested highly competitive, sensitive items including route-level forecast of passenger and other revenue through 2025
- Spirit's management declined to provide such information, consistent with the information provided to Frontier
- Material information on Spirit is of course publicly available; JetBlue – like any U.S. airline – also has easy access to airline subscription data services that would allow them to evaluate Spirit's route level economics

**Spirit and its advisors engaged consistently and constructively with JetBlue since their March 29th proposal**

**Summary of JetBlue's Propaganda**



24



## Spirit's Board Recommendations for Spirit Shareholders



**Vote "<u>FOR</u>" the Frontier Merger Agreement**



**<u>REJECT</u> the JetBlue Tender Offer and <u>DO NOT</u> tender any shares of Spirit to the Offer**

Spirit's Board Recommendations

25

 **An Important Reminder**

**REMEMBER:**

A vote "no" for Frontier does **NOT** equal a vote "yes" for JetBlue

- A vote "no" on the Frontier merger is NOT a vote for a JetBlue transaction – Spirit does not have an agreement with JetBlue

- The current JetBlue tender offer may not be better than Spirit's "status quo"
  - Subjects Spirit to significant business risk for up to two years with very low transaction certainty
  - Caps Spirit shareholders' upside, preventing them from participating in the pandemic recovery and future growth
  - Substantially higher employee departure risk than the Frontier merger
  - Restrictive operational covenants in any sale agreement with JetBlue
  - A low RTF to compensate for all these issues for a transaction that is unlikely to be approved

- We believe **the Frontier merger is far superior for Spirit shareholders** than the status quo and **urge all Spirit shareholders to VOTE YES**

**Spirit's Board Recommendations**



# Frontier + Spirit = A Winning Formula



# Frontier Transaction Is a Winning Combination for Spirit Shareholders

26

**✓ Definitive agreement to combine with Frontier Group Holdings, creating America's most competitive ultra-low fare airline**

- Spirit equity holders to receive 1.9126 shares of Frontier plus $2.13 in cash for each Spirit share they own
- Spirit equity holders will own ~48.5% upon closing
- Transaction terms implied a 26% upfront premium based on 30-trading day VWAPs of Frontier and Spirit as of February 4th, 2022
- 12 Member Board (including CEO), 7 named by Frontier and 5 named by Spirit

**✓ Transaction with Frontier is expected to deliver significant benefits and value creation for Spirit shareholders**

- Combines two highly complementary businesses to create the lowest cost U.S. airline
- Annual run-rate operating synergies of $500MM
- Stock consideration allows Spirit shareholders to participate in upside from a full pandemic recovery and growth from 350 new aircraft

**✓ Transaction followed ongoing review of Spirit's strategic plan by Spirit Board and its senior management**

- Spirit's Board and management regularly reviewed and assessed Spirit's strategic alternatives with a goal of maximizing shareholder value
- Included discussions with other third parties from time to time regarding potential strategic transactions

Frontier + Spirit =
A Winning Formula

 **Everyone Wins With Even More Ultra-Low Fares**



**CONSUMERS**

# $1B
in Annual
Consumer Savings

**SUSTAINABILITY**

# 285MM+
Gallons of Fuel
Saved per Year[1]

**TEAM MEMBERS**

# 10,000
New Direct Jobs by 2026

**SHAREHOLDERS**

# $500MM
in Expected Synergies





1. Gallons of fuel saved vs. 2021 average fuel efficiency of the four largest U.S. airlines.

Frontier + Spirit =
A Winning Formula

# Consumers and Shareholders Win With Significant Expected Benefits



Expected annual consumer savings[1] of $1 billion gained from new route entry

- Driven by schedule efficiencies, improved fleet utilization and block time optimization

**$1B**
**Annual Consumer Savings**



Expected annual run-rate operating synergies of $500 million[2]

- Primarily driven by scale efficiencies and procurement savings across the enterprise
- Not driven by price increases to consumers

**$500MM**
**Run-Rate Operating Synergies**

1. There are two categories: 1. New route entry resulting from schedule efficiencies, improved fleet utilization and block time optimization, as well as freeing up a portion of the combined operational spares (11 aircraft that would result in 46 new markets). 2. "But for" new routes. The proposed transaction and improved brand strength of a more national ULCC would allow entry in Legacy dominated markets that, but for the combination, neither carrier would likely enter (32 new markets). These markets are hub-to-hub markets (though not necessarily same carrier hub-to-same carrier hub markets).
2. One-time costs to achieve of ~$400 million.

**Frontier + Spirit = A Winning Formula**

# Shareholders Win With Significant Value Creation



**Participation in the Growth from 350 New Aircraft**

**Participation in Industry Recovery to Pre-Pandemic Performance**

**48.5% of $3.85+ Billion Synergy Value[2]**

**Cash Consideration to Spirit[1]**

**48.5% of Frontier + Spirit Combination**

*The significant potential upside to current share price is further enhanced by a Frontier transaction*

## Illustrative Spirit Value per Share, Pro Forma for Frontier Merger[3][4]

| | $50 | $56 | $61 |
|---|---|---|---|
| 2024E P/E | 10x | 11x | 12x |

Source: Capital IQ, Company Filings, Broker Reports, Synergies Estimates.
1. Cash consideration of $2.13 per share.
2. Represents Spirit shareholder's 48.5% share of illustrative market value of run-rate operating synergies of $500MM, calculated at 11x P/E ratio assuming an effective tax rate of 22.7%, less one-time costs to achieve of $400MM.
3. Market data as of May 20, 2022.
4. Illustrative value per share based on Spirit shareholder's 48.5% share of pro forma 2024E Spirit and Frontier net income of $826MM based on Wall Street estimates, divided by current fully diluted shares outstanding, plus cash consideration of $2.13. Includes illustrative market value of run-rate operating synergies of $500MM, calculated at each P/E ratio assuming an effective tax rate of 22.7%, less one-time costs to achieve of $400MM. Not intended as a prediction of future trading prices.

**Frontier + Spirit = A Winning Formula**



## More Ultra-Low Fares for More People in More Places

**145+**
destinations

**650+**
nonstop routes

**1,000+**
daily flights

- Combines highly complementary networks

- Increases access to ultra-low fares by enabling new routes across the United States, Latin America and the Caribbean

- Fuels small business growth with more frequent ultra-low fare flights

- Deepens service to underserved small and mid-sized cities

- Creates ability to succeed in cities previously exited (such as Jackson, MS; Washington-Dulles, VA; Birmingham, AL) and opportunities to add additional small cities (such as Eugene, OR; Ithaca, NY; Worcester, MA)

Source: Cirium. Route map represents flights flown to / from during 2021.
Note: Destinations and nonstop routes represent combined company for 2021. Daily flights represents combined company for Q4 2021.



Both Frontier & Spirit
Frontier Only
Spirit Only

**Frontier + Spirit =
A Winning Formula**

# More Effective Ultra-Low Fare Competitor Against the Big Four and JetBlue

31



**2021 Available Seat Miles**

Total Passenger Revenue per Passenger, 2019

The Big Four airlines are on average 80%+ more expensive per passenger relative to the combined company

With an **ultra-low base fare of only $54**, customers of the combined company pay only for the services they value, further increasing choice and savings

| American | Delta | United | Southwest | S F | JetBlue | Alaska | S | F | Allegiant |
|----------|-------|--------|-----------|-----|---------|--------|---|---|-----------|
| $195 | $211 | $244 | $128 | $108 | $182 | $173 | $109 | $107 | $112 |

**Frontier + Spirit = A Winning Formula**

Source: Company filings.



## Everyone Wins With Over 350 Aircraft on Order to Deliver More Ultra-Low Fares

32



**Combined Fleet Plan — Aircraft at End of Period**

CAGR: 12%

| Year | Aircraft |
|------|----------|
| 2021 | 283 |
| 2022 | 321 |
| 2023 | 365 |
| 2024 | 406 |
| 2025 | 440 |
| 2026 | 493 |

Total combined fleet to increase by

## ~75% by 2026

Stimulating demand with ultra-low fares for more people in more cities and providing a more effective ultra-low fare competitor, especially against the Big Four airlines





**Frontier + Spirit = A Winning Formula**

33

 **Frontier + Spirit = A Winning Formula**

**Shareholders**

- Combines two highly complementary businesses to create the lowest cost U.S. airline
- Unlocks $500 million in annual run-rate operating synergies
- Opportunity for Spirit shareholders to participate in full pandemic recovery, upside from synergies and growth from 350 new aircraft

**Team Members**

- Received support from flight attendants' labor union
- Improves career opportunities and stability
- Fuels addition of 10,000 direct jobs by 2026
- Supports thousands of additional new jobs at business partners

**Consumers & Communities**

- Delivers $1 billion in annual consumer savings
- Expands access to more ultra-low fares for more people in more places
- Creates a more effective ultra-low fare competitor, especially against the Big Four and JetBlue
- Provides nationwide access to sustainable, affordable travel

Frontier + Spirit =
A Winning Formula



| Date: | Tuesday, June 28 2022 06:53 AM |
|---|---|
| Subject: | Fwd: FYI - Setting the Record Straight on JetBlue's Antitrust Arguments |
| From: | Ted Christie |
| To: | Chris Richards <chrismemphis@bellsouth.net>; Dawn Zier <dawnzier@gmail.com>; Mac Gardner <hmacgardner@gmail.com>; Mark Dunkerley <mark@markdunkerley.com>; Myrna Soto <Myrna_Soto@live.com>; Robert Johnson <bob.johnson@bobjohnsonmail.com>; Barclay Jones <bjones@istar.com>; |
| CC: | Thomas Canfield <Thomas.Canfield@Spirit.com>; |

Attachments: image001.png; Frontier - Setting the Record Straight on JetBlue's Antitrust.pdf

Good release from Falcon this morning.

Sent from my iPad
Begin forwarded message:

> **From:** Amanda Boateng <Amanda.Boateng@fgsglobal.com>
> **Date:** June 28, 2022 at 6:53:11 AM EDT
> **To:** Ted Christie <Ted.Christie42@spirit.com>, Thomas Canfield <Thomas.Canfield@spirit.com>, Scott Haralson <Scott.Haralson@spirit.com>, Bobby Schroeter <Bobby.Schroeter@spirit.com>, Matt Klein <Matt.Klein@spirit.com>, Erik Hofmeyer <Erik.Hofmeyer@spirit.com>, Lania Rittenhouse <Lania.Rittenhouse@spirit.com>, DeAnne Gabel <DeAnne.Gabel@spirit.com>, Laura Butler <Laura.Butler@spirit.com>, Samantha Johnson <Samantha.Johnson@spirit.com>, Guru.Gupta@morganstanley.com, Nelson.Walsh@morganstanley.com, Kristin.Healy@morganstanley.com, projectgalaxy_all@morganstanley.com, benjamin.metzger@barclays.com, jonathan.gerst@barclays.com, ProjectGalaxyAll@barclayscorp.com, afinch@paulweiss.com, jnagley@paulweiss.com, sbertran@paulweiss.com, wdregner@debevoise.com, ggooding@debevoise.com, etjuergens@debevoise.com, ProjectFalcon2022@debevoise.com
> **Cc:** Spirit-SVC <Spirit-SVC@sardverb.com>
> **Subject: FYI - Setting the Record Straight on JetBlue's Antitrust Arguments**

# Redacted



EXHIBIT 25
WIT: CHRISTIE
DATE: 6-6-23
DAWN A. HILLIER, RMR, CRR

NK-2R-05330342

**Redacted**

NK-2R-05330343

 GlobeNewswire
by notified

ESG
NEWS

COVID-
19
NEWS

SERVICES ⌄

CONTACT
US

FRANÇAIS

SIGN IN

 REGISTER          🔍

# *FRONTIER*

## Setting the Record Straight on JetBlue's Antitrust Arguments

June 28, 2022 06:45 ET | Source: <u>Frontier Airlines, Inc.</u>

f

🐦

in

✉

•••

*JetBlue's "Less Seats, Higher Prices" Acquisition Is a Dead End*

*JetBlue's Misdirection and Negative Attacks Cannot Hide the Fatal Flaws With its Bid to Eliminate Spirit and Derail the Frontier/Spirit Procompetitive Merger*

*As Opposed to JetBlue's Illusory Bid, a Frontier Merger Offers Significant Upside*

DENVER, June 28, 2022 (GLOBE NEWSWIRE) -- Frontier Group Holdings, Inc. ("Frontier") (NASDAQ: ULCC), parent company of Frontier Airlines, Inc., today issued the following statement regarding Frontier's proposed merger with Spirit.

Over the last few weeks, JetBlue has proclaimed that Spirit management is hiding behind "false" and "misleading" antitrust concerns so as to deny JetBlue the right to take over—and erase from existence—the nation's largest ultra-low cost carrier.

JetBlue is not telling you the truth. A Spirit acquisition by JetBlue would lead to a dead end—a fact that no amount of money, bluster, or misdirection will change. And the only value Spirit stockholders would be likely to receive from JetBlue's proposal is the reverse termination fee, because JetBlue's proposal lacks any realistic likelihood of obtaining regulatory approval.

JetBlue admitted that it will permanently remove capacity from the market by retrofitting Spirit's fleet to remove seats. Antitrust lawyers call that an "output restriction," and it is fatal to JetBlue's bid. So are JetBlue's admitted price increases. Less airline capacity means higher fares. JetBlue's CEO, Robin Hayes, certainly knows that. He observed just a few days ago, "The average price of air fares will go up because there is [*sic*] less seats."[1] That is

SPIRIT CONFIDENTIAL                                                                    NK-2R-05330344



ESG
NEWS

COVID-
19
NEWS

SERVICES ⌄

CONTACT
US

FRANÇAIS

SIGN IN



These facts—admitted higher prices and lower output—guarantee that JetBlue could never secure clearance for its proposed acquisition of Spirit. No claimed "divestitures" of airport slots or gates, or false claims or gimmicks, can fix JetBlue's fatal problems.

And these are not even JetBlue's only regulatory problems. The anticompetitive rationale for its bid is obvious. JetBlue even admitted it, stating in its 2021 10-K that the Frontier/Spirit deal is a threat to JetBlue's "competitiveness"—and an example of a merger that "could cause fares of our competitors to be reduced." Mr. Hayes later conceded that "the timing" of JetBlue's bid was "definitely driven by the announcement"[2] of the proposed ULCC merger.

Then there is the U.S. Department of Justice's pending lawsuit against JetBlue to block its Northeast Alliance with American Airlines. Despite assuring everyone—including Spirit shareholders—that a transaction would spread the mythical, so-called "JetBlue Effect," Mr. Hayes previously admitted the DOJ's reason for bringing the NEA lawsuit: "*DOJ believes that American's influence will bring an end to the "JetBlue Effect."*[3] The DOJ has therefore already disputed JetBlue's arguments for a transaction. And, contrary to Mr. Hayes' assertion that the NEA litigation will be resolved shortly—and thus will have no effect either way on the JetBlue/Spirit acquisition—it will surely take *years* to resolve the NEA litigation, through trial and all inevitable appeals. While Spirit shareholders wait for what, exactly? A break-up fee, years later, out of the illusory JetBlue bid?

For weeks, JetBlue has filled the airwaves with noise. It has shared an astonishing array of misleading claims, all while ignoring obvious and lethal antitrust problems. Indeed, just yesterday, JetBlue claimed that "outside experts agree that, within the current administration, our transaction has a similar chance as Frontier in gaining approval."[4] JetBlue includes no source, of course—so the "outside experts" it appears to be talking about? *Its very own, JetBlue-hired antitrust lawyer.*

JetBlue wants you to think that Frontier and JetBlue bring antitrust risk profiles that differ only in degree, not in kind. But nothing could be further from the truth. A JetBlue acquisition of Spirit could not succeed.

SPIRIT CONFIDENTIAL                                                                                    NK-2R-05330345


ESG NEWS   COVID-19 NEWS   SERVICES ⌄   CONTACT US   FRANÇAIS   SIGN IN
**REGISTER**   🔍

Frontier and Spirit will stimulate demand by inducing people to fly when the high fares offered by JetBlue and the Big Four would otherwise price them out of the market.

**Context: the evolution of JetBlue's antitrust arguments**

JetBlue's antitrust-related arguments initially sputtered. Observers commonly noted that

- DOJ was already in federal court accusing JetBlue of being an antitrust violator, and
- The Frontier/Spirit combination had obvious synergies and a procompetitive narrative that the "headscratcher" JetBlue/Spirit bid conspicuously lacked.

But as its arguments went unheeded, JetBlue shifted course. Its attacks grew negative and went low. JetBlue prepared numerous materials aimed at muddling the antitrust landscape. It built its own web site, filled with attacks on Spirit and the Spirit/Frontier deal. It even choreographed a Q&A video about antitrust, featuring yet another JetBlue-hired lawyer—this one labeled as an "antitrust expert" because, well, "JetBlue-retained antitrust lawyer" lacks the same appearance of impartiality. And it spared no expense. The Q&A video with JetBlue's antitrust lawyer, according to its "Final Edit10.mp4" title, apparently took at least 10 takes or versions to deliver the desired message:[5]



Spin, as it turns out, is hard to get just right.

Perhaps most troublingly, JetBlue resorted to attacking the integrity of both Spirit and Frontier—and anyone else who disagrees with JetBlue's vision of the world. It has falsely attacked Spirit's board of directors via a thesaurus-rich tapestry of pejoratives: "Entrenched...stonewalling...deeply conflicted... strikingly poor...astounding failure;" the list goes on. And it also unloaded on Glass Lewis—a prominent independent proxy advisor— as having allegedly

SPIRIT CONFIDENTIAL                                                                                    NK-2R-05330346

 GlobeNewswire
by notified

| ESG | COVID- | SERVICES ⌄ | CONTACT | FRANÇAIS | SIGN IN |
| NEWS | 19 | | US | | |
| | NEWS | | | | |

 REGISTER   🔍

There is an old saying about those who doth protest too much.

**JetBlue has no answer to its first glaring antitrust problem:**
**an admitted, immediate and substantial *output reduction* upon closing of**
**the Spirit acquisition**

Antitrust law asks whether a merger is likely to substantially lessen
competition. Of the key focal points of this analysis, the most prominent are
the effects on <u>output</u> and <u>prices</u>. A JetBlue/Spirit combination would be
doomed from the outset because JetBlue has already admitted that the
acquisition would reduce capacity (output) and increase fares (prices).

JetBlue knows this. In the NEA litigation, JetBlue tried to get the DOJ's
antitrust claims thrown out for want of allegations that the alliance would
reduce output or increase prices, arguing:

> "The Complaint is defective as a matter of law because Plaintiffs have
> not alleged that the NEA has actually harmed competition. The NEA has
> been underway for nine months, yet Plaintiffs do not allege that it has
> caused a *single higher price*, any reduction in quality *or the slightest
> reduction in output...*"[7]

The court recently rejected JetBlue's arguments, finding that the DOJ had
indeed alleged more than enough facts to plausibly state an antitrust
violation.

Here, by contrast, JetBlue has *already admitted* that reduced output and
increased prices are the very point and rationale of its proposed acquisition
of Spirit. At the very first investor presentation, Mr. Hayes admitted that
JetBlue will reconfigure Spirit's aircraft to remove 10-15% of seat capacity.
Reports were not kind:

> "Indeed, there was a tone of mild incredulity during the investor
> conference call. 'I'm just trying to square away how removing seats right
> now is pro-consumer over the long haul,' Connor Cunningham of MKM
> Partners asked, referring to the removal of capacity from the market as
> Spirit's dense A320 family aircraft get converted to JetBlue's significantly
> less-dense configuration. . . . Even [] pro-consumer advocates would
> agree reducing capacity across Spirit's entire fleet is only likely to put
> upward pressure on fares."[8]

SPIRIT CONFIDENTIAL                                                                      NK-2R-05330347

 GlobeNewswire
by notified

ESG NEWS   COVID-19 NEWS   SERVICES ⌄   CONTACT US   FRANÇAIS   SIGN IN    REGISTER   🔍

addresses this fatal problem or even claims that it can. Nor does it ever dispute that the Frontier/Spirit merger will lead to the opposite—an increase in capacity, and, therefore, *output* due to the undisputed demand stimulation that ultra-low-fares fuel, the many new routes that a combined Frontier/Spirit could enter in competition with far-larger airlines, and the enhanced growth trajectory created by our merger, all creating a virtuous cycle of enhanced ULCC competition.

### JetBlue has no answer to its second glaring antitrust problem: an admitted, immediate and substantial *price increase* upon closing of the Spirit acquisition

As JetBlue's CEO observed on June 20, capacity reductions mean higher fares.[9] Tellingly, in its April 6 investor presentation, JetBlue assured investors that, despite cost increases, its acquisition of Spirit would lead to significantly higher margins:[10]

 Combined Company would Further JetBlue's Progress Towards Generating Superior Margins



As a matter of math, that means higher prices for passengers (a lot higher, given the difference between Spirit's ultra-low fares and JetBlue's average fares):

> "Simply removing 10-15% of the seating capacity from Spirit's operations will drive up unit costs. JetBlue CFO Ursula Hurley acknowledges this challenge. She notes that post-merger the airline hopes to maintain JetBlue's existing cost levels, which are higher than Spirit's. And there is no way JetBlue can deliver profitable operations on fewer total seats flying without raising the prices on those seats. . . . It will have to operate

SPIRIT CONFIDENTIAL                                                    NK-2R-05330348

6/28/22, 11:50 AM Setting the Record Straight on JetBlue's Antitrust



| ESG NEWS | COVID-19 NEWS | SERVICES ⌄ | CONTACT US | FRANÇAIS | SIGN IN |
|---|---|---|---|---|---|
| | | | | | REGISTER |

This is not surprising: the cost differential between JetBlue and Spirit is so significant that JetBlue would have no option other than a significant increase in fares.

The principal measure of structural cost differentials is CASM ex fuel (cost per available seat mile excluding fuel costs). By that metric, for 2021, JetBlue was roughly 50% higher than either Spirit or Frontier, as the following chart —drawn from the companies' SEC filings—makes clear:

**2019/2021 CASM ex Fuel** *(in cents)*



Further, JetBlue has admitted that its base plan assumes bringing Spirit's cost structure (CASM ex Fuel) up to JetBlue's CASM following an acquisition. As JetBlue's CFO stated:

> "..., so in terms of the synergies, we provided a net number. So in regards to the dissynergies associated with labor and then you're correct, there's puts and takes in terms of the density. The base case assumes that the Spirit fleet is brought up to JetBlue density at this point in time. And with that, in terms of the overarching CASM ex-fuel base, we don't believe there will be a material change to the unit cost base compared to JetBlue today, given, to your point, the dissynergies and the puts and takes around density."[12]

That means that JetBlue plans on increasing Spirit fares by approximately ~40% in order to cover the incremental cost structure and operate at existing JetBlue margins.

An admission of systemwide substantial price increases is a fatal antitrust problem for JetBlue. Once again, JetBlue has no answer. Nor does it ever dispute that the Frontier/Spirit merger will lead to the opposite: lower costs supporting continued ultra-low fares, far lower than Jet Blue's, and far more of them given the capacity (*output*) expansion synergies and ultra-low-fare growth (lower *prices*) at the heart of the Frontier/Spirit merger.

SPIRIT CONFIDENTIAL

NK-2R-05330349

 GlobeNewswire
by notified

ESG
NEWS

COVID-
19
NEWS

SERVICES ⌄

CONTACT
US

FRANÇAIS

SIGN IN

**REGISTER**

🔍

of the "JetBlue Effect" over the clearly more significant "ULCC Effect," which
has already forced legacy and other high-cost carriers like JetBlue to offer
an entire new class of low fares. JetBlue can claim no equivalent pro-
consumer impact, despite already having the size of a combined
Frontier/Spirit. No ULCC in the United States has achieved the full
competitive potential of the ultra-low-cost business model—none is at scale
or adequately resourced. And, yet, the ULCC Effect has already disrupted the
airline industry in a far more profound way than JetBlue can claim credit for.

Undeterred, and without disclosing any supporting data, JetBlue claims
that its presence decreases legacy fares by ~16%. It argues that the DOJ itself
has recognized and underlined blessed the power of the JetBlue Effect (in the NEA
litigation), and that JetBlue's assimilation of Spirit is therefore
procompetitive because it will increase the power and reach of this DOJ-
blessed "JetBlue Effect."

At a May 26, 2022 Wolfe Research conference, Mr. Hayes summed up his
argument:

> "I think that our conviction and our [confidence] on the regulatory side
> is really predicated, first of all, on the JetBlue effect, which is
> documented and proven. And if you don't take my word for it, take the
> Department of Justice's word for it because they now – in the complaint
> they filed against the NEA, they talked persuasively about the JetBlue
> effect and our disruptive impact on fares.[13]



This is classic misdirection. Yes, the DOJ mentions the "JetBlue Effect" in the
NEA litigation complaint. But the DOJ's actual allegation is that the NEA
*compromises* JetBlue's incentives to compete and the entire JetBlue Effect;
in other words, the DOJ believes that there will be no JetBlue Effect with
the NEA in place.

Mr. Hayes knows all this. He admitted it in September 2021, when he issued
a press release the day the NEA litigation was filed:[14]

> "DOJ believes that American's influence will bring an end to the
> "JetBlue Effect."

SPIRIT CONFIDENTIAL                                                                    NK-2R-05330350

6/28/22, 11:50 AM                              Setting the Record Straight on JetBlue's Antitrust



| ESG | COVID- | SERVICES ⌄ | CONTACT | FRANÇAIS | SIGN IN |
| NEWS | 19 | | US | | |
| | NEWS | | | | |



statements that the NEA litigation does not impact the Spirit acquisition in the slightest. For example, here's what JetBlue said just a few weeks ago:

> *Spirit's Suggestion that Our Northeast Alliance Is a Regulatory Obstacle Has No Basis in Fact or in Law. The Northeast Alliance litigation will go to trial this September, and we believe the outcome of that trial will not impact the outcome of the regulatory process for the acquisition of Spirit, which will likely take place later. If the court allows the DOJ to block the Northeast Alliance, by definition it will not be an obstacle to the acquisition of Spirit. If we are successful in defending the case, as we think we will be, it will be a testament that the alliance is procompetitive, disproving Spirit's claim. In either case, the Northeast Alliance litigation does not impact JetBlue's ability to acquire Spirit.*[15]

And here's what JetBlue told you just yesterday—and what it so very much wants you to believe:

> "the litigation outcome [is] irrelevant... The Northeast Alliance trial will begin in September, and will be decided long before the resolution of any challenge to the Spirit transaction."[16]

That is simply not accurate. It will take *years* to resolve the NEA litigation. Trial will occur later this year, in September...and then there will then be months of post-trial filings. The judge may issue an opinion months after that (or even longer). There will then inevitably be appeals, from one or more parties. Years of litigation. In fact, it is virtually certain that the NEA litigation will be outstanding without reaching a final resolution while at the same time JetBlue is likely also litigating with the DOJ over a Spirit transaction. But JetBlue does not want you to know any of this. The DOJ's lawsuit alleging that the NEA compromises any historical "JetBlue Effect" is another big strike <u>against</u> a JetBlue/Spirit acquisition, not a reason for it.

### JetBlue's argument that the "JetBlue Effect" has historically been more significant in lowering fares than ultra-low-fares from Spirit and Frontier is a fantasy

Since announcing the proposed Spirit acquisition, JetBlue has claimed that the "JetBlue Effect" is greater than any effect that ultra-low-cost carriers have on lowering overall fares. This claim is not true, either.

SPIRIT CONFIDENTIAL                                                          NK-2R-05330351

6/28/22, 11:50 AM                                   Setting the Record Straight on JetBlue's Antitrust

  GlobeNewswire
by notified

ESG NEWS    COVID-19 NEWS    SERVICES ⌄    CONTACT US    FRANÇAIS    SIGN IN    **REGISTER**    🔍

- **The JetBlue Effect.** JBLU argued on its call this week that when it enters a new market, it's more effective in introducing competition and driving lower fares for legacy carriers compared with a ULCC. JBLU argues that it's combination of low fares and strong customer service triggers bigger fare reductions at legacy airlines. In our note today, we back-test the "JetBlue Effect" vs. the "Frontier Effect."
- **Going Back to 2004...** we identified 83 new markets that JBLU entered with a well-established legacy presence and 181 new markets that ULCC entered. In Exhibit 1 in the full note, we show how fares on average trended in the quarter before JBLU or ULCC entered the market, and then in the quarter and year after JBLU and ULCC entered. On average, we saw a dramatic initial reduction in fares when either JBLU or ULCC enter a new market, with fares dropping on average by around 20% (a little more in the ULCC markets and a little less in the JBLU markets).
- **But a Year Later...** is where we see a bigger difference between JBLU and ULCC. One year after JBLU entered those 83 markets, fares on averaged rebounded modestly after falling sharply initially (still down from where they started before JBLU). But in the markets that ULCC entered, fares continued to trend even lower a year later, indicating much greater pressure on fares. So, while there clearly is a JetBlue effect, our data suggest it's really hard to argue that the JetBlue effect is more effective at driving down fares than the ULCC effect.

J.P. Morgan looked at the claim as well, and raised another issue: JetBlue had failed to address the demand stimulation that is an essential and proven component of the ULCC business model worldwide. This demand stimulation would only get stronger and more sustainable under a Frontier/Spirit combination.[18]

In any event, the "JetBlue Effect is stronger" claim is nonsensical, contradicting what everyone knows about how airline industry pricing has shifted over the last few years directly as a result of ultra-low-fares.

Despite wishing to charge high prices, JetBlue concedes that ULCC competition has forced it to reduce its own fares. In September 2018, JetBlue issued a letter from its President and Chief Operating Officer, Joanna Geraghty, explaining that ultra-low-fares (and the "basic economy" fares that legacies had been forced to respond with) stimulated great demand, revealing many customers who seek low fares, and that JetBlue felt forced to offer its own "basic" fares in response:[19]



A Note from Joanna

Since deregulation of the U.S. airline industry 40 years ago, the number of people who have access to air travel has climbed. Ultra-low-cost carriers and basic economy options created a big market for bare-bones fares, and internet comparison sites encouraged more people to shop solely on price. Highly price-conscious travelers voted with their wallets, showing they are willing to give up some of the experience for the lowest fare possible.

At JetBlue, we never liked the "no frills" approach. But with these competitors now offering basic economy on many routes we fly, Customer behavior suggests our success is at risk if we do not disrupt this market by lowering fares without sacrificing the experience.

That's a dramatic admission. JetBlue agrees that ultra-low-cost airlines have transformed airline pricing, triggering an industry-wide ultra-low fare class

SPIRIT CONFIDENTIAL          NK-2R-05330352



| ESG NEWS | COVID-19 NEWS | SERVICES ⌄ | CONTACT US | FRANÇAIS | SIGN IN |
|---|---|---|---|---|---|



REGISTER

🔍

JetBlue Effect" somehow exerts greater downward pressure on industry pricing than the ULCC Effect (and more than the magnified ULCC Effect that a combined Frontier/Spirit would create). JetBlue's own actions and statements belie that claim.

Hundreds of articles and reports address this overall issue; here are just two:

- "JetBlue Airways announced it will now be adding its own edition of basic economy to its seating choices, joining domestic rivals American Airlines, United Airlines, and Delta Airlines in offering lower-priced economy fares.... Basic economy was created by America's biggest three airlines—American, United, and Delta—as a reaction to lower fares offered by ultra-low-cost carriers like Spirit Airlines and Frontier Airlines. Basic economy seeks to allow larger airlines to remain competitive against those super-low fares others offer without sacrificing the revenue generated by their traditional economy-class seating prices."[20]

- "Call it the Spirit Syndrome or the Wow Effect. More airlines are copying the stripped-down fare model of the minimalist airlines, offering lower fares for fewer perks. American, United and Delta have all introduced this fare option. Last week, JetBlue announced that it will add a basic pricing tier next year."[21]

JetBlue's own begrudging acceptance of lower fares shows that ultra-low-cost airlines have a far more profound effect on industry dynamics and pricing than any "JetBlue Effect" does. Indeed, the ULCC Effect has served to *keep JetBlue's fares* lower than they otherwise would be. And that fact, of course, is yet another reason why JetBlue's bid to acquire the largest ULCC will never obtain antitrust approval.

### Airline competitors would rather see JetBlue acquire Spirit

In its latest June 7 presentation deck, extolling the virtues of the JetBlue acquisition (this one 41-pages long), JetBlue included a slide meant to indicate that "independent industry observers" saw the two deals as similar. Here's in part what it said there: [22]

**Independent industry observers see similar regulatory profile for both Frontier and JetBlue transactions**

"If I were a Spirit shareholder, I would be irate with the airline's board for not more seriously entertaining an acquisition offer from JetBlue...a deal between Spirit and JetBlue might be somewhat more difficult to get past regulators than a merger with Frontier, but not 50% harder." —*United Airlines CEO, Scott Kirby*

SPIRIT CONFIDENTIAL

NK-2R-05330353



becomes a bigger and stronger ULCC, better able to penetrate and disrupt pricing in United-dominated routes (as Frontier and Spirit together would do).

The CEO of one of the biggest legacy airlines, publicly undermining the Frontier/Spirit deal, shows which transaction is procompetitive, will hurt legacies and force them to lower fares.

### JetBlue's personal attacks against the DOJ, and anyone else who dares disagree, do not further JetBlue's standing

As you have seen, JetBlue goes on the personal attack—and hits low—when its audience questions or refutes its claims. The Spirit board has real issues with JetBlue's bid? Go after them personally, accusing them of being conflicted, biased, and not doing their jobs. Glass Lewis is not buying the yarn JetBlue is trying to sell? Claim that they don't know how to do their jobs, or are deliberately ignoring facts, in conducting their "remarkably superficial regulatory analysis." Frontier maintains and strengthens its bid—the only one that can realistically pass antitrust review? Claim that chummy ties with the Spirit board explain it all.

And it is worth highlighting just how far JetBlue is willing to take this approach: all the way to the Department of Justice itself, the agency responsible for reviewing a JetBlue/Spirit combination. The day DOJ filed its NEA lawsuit, Mr. Hayes issued a detailed press release assailing DOJ as:[23]

> "Hypocritical"

> "Standing in the way of JetBlue's growth"

> "Using the public's resources to stifle competition"

> "The irony now is that the government agency responsible for preserving competition is instead trying to take away our ability to further expand our low fares in these markets"

> "I'm sad to say that our biggest obstacle to bringing more low fares and great service to the Northeast right now is the DOJ-the very government agency that should be making every effort to foster robust competition among airlines"



SPIRIT CONFIDENTIAL    NK-2R-05330354



| ESG NEWS | COVID-19 NEWS | SERVICES ⌄ | CONTACT US | FRANÇAIS | SIGN IN |

**REGISTER**

and arguments seem particularly credible.

Individually and especially collectively, these issues are fatal to JetBlue's proposed acquisition of Spirit. And they show just how drastically different the Frontier/Spirt merger is.

It is worth highlighting one additional factual data point, focusing on the difference between the two deals.

Remember Mr. Pomerantz? JetBlue's antitrust lawyer in the special Q&A antitrust video? Mr. Pomerantz was asked the following question, via a slide —and provided the following answer, in full:[24]

> **Do you think the DOJ would prefer a Frontier-Spirit combination?**

*"JetBlue is known for offering high quality service. They offer that service to business travelers, and they offer it to vacationers. Spirit and Frontier are known for offering basic service. And that difference in service is something that the DOJ and any court will consider in assessing this merger."*



Yes. That's all he said. With all the polish, all the effort, and all the sleight of hand that JetBlue has attempted during this process, the *best* answer it can provide on this important point is that DOJ and any court will consider the different levels of service offered. And, of course, that means the different levels of *prices* offered and the *demand stimulation* which comes with Frontier/Spirit pricing, rather that JetBlue's higher fares.

It seems clear to us, from this answer, that JetBlue itself thinks that the DOJ would prefer a Frontier-Spirit combination. And that, at least, is one thing that Frontier and JetBlue can agree on.

Citigroup Global Markets Inc. is serving as financial advisor and Latham & Watkins, LLP is serving as legal advisor to Frontier.

**About Frontier Airlines**

SPIRIT CONFIDENTIAL                                                        NK-2R-05330355

 GlobeNewswire
by notified

ESG NEWS   COVID-19 NEWS   SERVICES ⌄   CONTACT US   FRANÇAIS   SIGN IN

REGISTER   🔍

U.S. The use of these aircraft, Frontier's seating configuration, weight-saving tactics and baggage process have all contributed to Frontier's continued ability to be the most fuel-efficient of all major U.S. carriers when measured by ASMs per fuel gallon consumed.

**No Offer or Solicitation**

This communication is for informational purposes only and is not intended to and does not constitute an offer to sell, or the solicitation of an offer to subscribe for or buy, or a solicitation of any vote or approval in any jurisdiction, nor shall there be any sale, issuance or transfer of securities in any jurisdiction in which such offer, sale or solicitation would be unlawful, prior to registration or qualification under the securities laws of any such jurisdiction. No offer of securities shall be made except by means of a prospectus meeting the requirements of Section 10 of the Securities Act of 1933, as amended, and otherwise in accordance with applicable law.

**Important Additional Information Will be Filed with the SEC**

Frontier has filed with the Securities and Exchange Commission ("SEC") a Registration Statement on Form S-4 in connection with the proposed transaction, that included a definitive Information Statement/Prospectus of Frontier and a definitive Proxy Statement of Spirit. The Form S-4 was declared effective on May 11, 2022 and the prospectus/proxy statement was first mailed to Spirit stockholders on May 11, 2022. Frontier and Spirit also plan to file other relevant documents with the SEC regarding the proposed transaction. **INVESTORS AND STOCKHOLDERS ARE URGED TO READ THE REGISTRATION STATEMENT/ INFORMATION STATEMENT/ PROSPECTUS/ PROXY STATEMENT AND ANY OTHER RELEVANT DOCUMENTS TO BE FILED BY FRONTIER OR SPIRIT WITH THE SEC IN THEIR ENTIRETY CAREFULLY WHEN THEY BECOME AVAILABLE BECAUSE THEY WILL CONTAIN IMPORTANT INFORMATION ABOUT FRONTIER, SPIRIT, THE PROPOSED TRANSACTIONS AND RELATED MATTERS.** Investors and stockholders are able to obtain free copies of the Registration Statement and the definitive Information Statement/Proxy Statement/Prospectus and other documents filed with the SEC by Frontier and Spirit through the website maintained by the SEC at www.sec.gov. In addition, investors and stockholders are able to obtain free copies of the information statement and

SPIRIT CONFIDENTIAL                                                                                    NK-2R-05330356

Setting the Record Straight on JetBlue's Antitrust



ESG NEWS    COVID-19 NEWS    SERVICES ⌄    CONTACT US    FRANÇAIS    SIGN IN    REGISTER    🔍

**Participants in the Solicitation**

Frontier and Spirit, and certain of their respective directors and executive officers, may be deemed to be participants in the solicitation of proxies in respect of the proposed transactions contemplated by the Merger Agreement. Information regarding Frontier's directors and executive officers is contained in Frontier's definitive proxy statement, which was filed with the SEC on April 13, 2022. Information regarding Spirit's directors and executive officers is contained in Spirit's definitive proxy statement, which was filed with the SEC on March 30, 2022.

**Cautionary Statement Regarding Forward-Looking Information**

Certain statements in this communication, including statements concerning Frontier, Spirit, the proposed transactions and other matters, should be considered forward-looking within the meaning of the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended, and the Private Securities Litigation Reform Act of 1995. These forward-looking statements are based on Frontier's and Spirit's current expectations and beliefs with respect to certain current and future events and anticipated financial and operating performance. Such forward-looking statements are and will be subject to many risks and uncertainties relating to Frontier's and Spirit's operations and business environment that may cause actual results to differ materially from any future results expressed or implied in such forward looking statements. Words such as "expects," "will," "plans," "intends," "anticipates," "indicates," "remains," "believes," "estimates," "forecast," "guidance," "outlook," "goals," "targets" and other similar expressions are intended to identify forward-looking statements. Additionally, forward-looking statements include statements that do not relate solely to historical facts, such as statements which identify uncertainties or trends, discuss the possible future effects of current known trends or uncertainties, or which indicate that the future effects of known trends or uncertainties cannot be predicted, guaranteed, or assured. All forward-looking statements in this communication are based upon information available to Frontier and Spirit on the date of this communication. Frontier and Spirit undertake no obligation to publicly update or revise any forward-looking statement, whether as a result of new information, future events, changed circumstances, or otherwise, except as required by applicable law. All written and oral forward-looking statements

SPIRIT CONFIDENTIAL                                                                    NK-2R-05330357



statements contained or referred to in this communication.

Actual results could differ materially from these forward-looking statements
due to numerous factors including, without limitation, the following: the
occurrence of any event, change or other circumstances that could give rise
to the right of one or both of the parties to terminate the merger
agreement; failure to obtain applicable regulatory or Spirit stockholder
approval in a timely manner or otherwise and the potential financial
consequences thereof; failure to satisfy other closing conditions to the
proposed transactions; failure of the parties to consummate the transaction;
risks that the new businesses will not be integrated successfully or that the
combined companies will not realize estimated cost savings, value of
certain tax assets, synergies and growth, or that such benefits may take
longer to realize than expected; failure to realize anticipated benefits of the
combined operations; risks relating to unanticipated costs of integration;
demand for the combined company's services; the growth, change and
competitive landscape of the markets in which the combined company
participates; expected seasonality trends; diversion of managements'
attention from ongoing business operations and opportunities; potential
adverse reactions or changes to business or employee relationships,
including those resulting from the announcement or completion of the
transaction; risks related to investor and rating agency perceptions of each
of the parties and their respective business, operations, financial condition
and the industry in which they operate; risks related to the potential impact
of general economic, political and market factors on the companies or the
proposed transaction; that Frontier's cash and cash equivalents balances,
together with the availability under certain credit facilities made available to
Frontier and certain of its subsidiaries under its existing credit agreements,
will be sufficient to fund Frontier's operations including capital expenditures
over the next 12 months; Frontier's expectation that based on the
information presently known to management, the potential liability related
to Frontier's current litigation will not have a material adverse effect on its
financial condition, cash flows or results of operations; that the COVID-19
pandemic will continue to impact the businesses of the companies;
ongoing and increase in costs related to IT network security; and other risks
and uncertainties set forth from time to time under the sections captioned

SPIRIT CONFIDENTIAL                                                                    NK-2R-05330358





**Contacts**

**Investor inquiries:**

David Erdman

(720) 798-5886

david.erdman@flyfrontier.com

**Media inquiries:**

Jennifer F. de la Cruz

(720) 374-4207

jenniferf.delacruz@flyfrontier.com

or

Joele Frank, Wilkinson Brimmer Katcher

Ed Trissel / Joseph Sala

(212) 355-4449

[1] Interview with Robin Hayes, Chief Executive Officer, JetBlue Airways Corp., Bloomberg Markets (June 20, 2022), https://www.bloomberg.com/news/videos/2022-06-20/jetblue-ceo-access-to-second-permanent-heathrow-slot-video.

[2] JetBlue Airways Corp., Analyst and Media Conference Call Transcript (Form DEF 14A) (Apr. 6, 2022), https://www.sec.gov/Archives/edgar/data/0001158463/000094787122000442/ss920339_dfan14a.htm.

[3] JetBlue Airways Corp., Press Release, *JetBlue CEO Robin Hayes Provides an Update on the Northeast Alliance and Action by the U.S. Department of Justice (DOJ)* (Sept. 21, 2021), https://www.sec.gov/Archives/edgar/data/1158463/000115846321000080/ex99 1newsrelease-bluenote.htm.

[4] JetBlue Airways Corp., Press Release, *JetBlue Modifies Superior Offer After Consultation with Shareholders*, (June 27, 2022), https://www.businesswire.com/news/home/20220627005782/en/JetBlue-Modifies-Superior-Offer-After-Consultation-with-Shareholders.

[5] JetBlue Airways Corp., Interview with Glenn Pomerantz, Attorney Advisor, https://jetblueoffersmore.com/regulatory-confidence/.

[6] JetBlue Airways Corp., Press Release, *JetBlue Comments on Glass Lewis Report* (June 3, 2022),

SPIRIT CONFIDENTIAL                                                              NK-2R-05330359



| ESG | COVID- | SERVICES ⌄ | CONTACT | FRANÇAIS | SIGN IN |
| NEWS | 19 | | US | | |
| | NEWS | | | | |

REGISTER

[8] David Slotnick, *Skepticism on Wall Street as details emerge on JetBlue's bid for Spirit*, The Points Guy (Apr. 6, 2022), https://thepointsguy.com/news/spirit-airlines-jetblue-wall-street-skepticism/; see also Jack Hough, *The Best Airline Bet Might Be the One That Owns An Oil Refinery*, Barron's (Apr. 8, 2022), https://www.barrons.com/articles/jetblue-spirit-delta-51649456037 ("The premise for this whole merger...just eliminates 10% to 11% of all seats right out the door immediately...").

[9] Interview with Robin Hayes, *supra* note 1.

[10] JetBlue Airways Corp., Investor Presentation at 19 (Form DEF 14A) (Apr. 6, 2022), https://www.sec.gov/Archives/edgar/data/1158463/000094787122000441/ss917756_dfan14a.htm.

[11] Seth Miller, *A JetBlue-Spirit merger almost certainly means higher fares*, Paxex.Aero (Apr. 6, 2022), https://paxex.aero/jetblue-spirt-merger-higher-fares; *see also* Dawn Gilbertson, *The battle for Spirit Airlines just got more interesting: Airline says it will entertain JetBlue's $3.6 billion offer*, USA Today (Apr. 7, 2022), https://www.usatoday.com/story/travel/airline-news/2022/04/07/jetblue-spirit-bid-budget-airline-weighs-offer/9507114002/ ("If the deal went through, JetBlue said Spirit would be absorbed into JetBlue, with seats taken out of its planes to conform with JetBlue's roomier configuration. Analysts say that pricey plane conversion can't be done without raising fares. Already, JetBlue's fares are higher than Spirit's on some competing routes. For a June trip from Fort Lauderdale to New York, Spirit's cheapest fare is $156, compared with $289 on JetBlue. The latter is for a JetBlue basic economy ticket").

[12] JetBlue Airways Corp., Analyst and Media Conference Call Transcript (Form DEF 14A) (Apr. 6, 2022), https://www.sec.gov/Archives/edgar/data/0001158463/000094787122000442/ss920339_dfan14a.htm.

[13] JetBlue Airways Corp., Interview with Robin Hayes, Chief Executive Officer, and Scott H Group, Wolfe Research LLC, at Wolfe Research, LLC's 15th Annual Global Transportation & Industrials Conference (May 26, 2022), https://www.sec.gov/Archives/edgar/data/1158463/000119312522162303/d304700ddfan14a.htm.

[14] JetBlue's Press Release, *supra* note 3.

[15] JetBlue Airways Corp., Press Release, *JetBlue Urges Spirit Shareholders to*

SPIRIT CONFIDENTIAL                                                                      NK-2R-05330360



ESG
NEWS

COVID-
19
NEWS

SERVICES ⌄

CONTACT
US

FRANÇAIS

SIGN IN

REGISTER

🔍

---

oodex59a5a.htm.

[16] JetBlue Airways Corp., Investor Presentation at 7 (Form DEF 14A) (June 27, 2022),

https://www.sec.gov/Archives/edgar/data/1158463/000119312522169027/d3553
94ddfan14a.htm..

[17] *Friday Flyer: the Jet Blue Effect?*, Wolfe Research (Apr. 8, 2022).

[18] *See JetBlue – Spirit Merger: v2.0, deal day observations, tactical trade idea*, J.P. Morgan (Apr. 6, 2022),

https://markets.jpmorgan.com/research/email/-
usu4g0c/Dn5tdPGdsl7OQVkMTL6Hiw/GPS-4054656-0.

[19] Joanna Geraghty, President and COO JetBlue Airways, Letter to crewmembers (Sept. 28, 2018), http://blog.jetblue.com/where-can-we-
inspire-humanity-next/.

[20] Brian Pascus, *JetBlue is launching a basic economy fair to help it compete with Delta, United, and American*, Business Insider (Sept. 28, 2018) https://www.businessinsider.com/jetblue-to-add-basic-economy-fare-like-
delta-american-and-united-2018-9.

[21] Andrea Sachs, *No-frill fares are all the rage. Even JetBlue will start offering basic economy.*, Washington Post (Oct. 10, 2018) https://www.washingtonpost.com/lifestyle/travel/no-frill-fares-are-all-the-
rage-even-jetblue-will-start-offering-basic-economy/2018/10/09/b409fdfc-
cb0a-11e8-a3e6-44daa3d35ede_story.html.

[22] JetBlue Airways Corp., Investor Presentation at 31 (Form DEF 14A) (June 7, 2022),

https://www.sec.gov/Archives/edgar/data/1158463/000119312522169027/d3553
94ddfan14a.htm.

[23] JetBlue's Press Release, *supra* note 3.

[24] Interview with Glenn Pomerantz, *supra* note 5.

Photos are available at:

https://www.globenewswire.com/NewsRoom/AttachmentNg/a908aa30-
1c29-4675-b20b-9a672d5595a6

https://www.globenewswire.com/NewsRoom/AttachmentNg/68b0d115-
4ae8-4532-920b-7de0b729317c

https://www.globenewswire.com/NewsRoom/AttachmentNg/4c9f6c60-41c1-
4318-95d1-694c76d4cf14

SPIRIT CONFIDENTIAL                                                          NK-2R-05330361

ESG NEWS · COVID-19 NEWS · SERVICES ˅ · CONTACT US · FRANÇAIS · SIGN IN · **REGISTER** · 🔍

3eea-4098-94c5-74e152b2f697

https://www.globenewswire.com/NewsRoom/AttachmentNg/63d3ba32-66a0-4f26-a445-6a91f881fc09

https://www.globenewswire.com/NewsRoom/AttachmentNg/cb399c5a-560a-4c35-9070-fff6279064f2

https://www.globenewswire.com/NewsRoom/AttachmentNg/52efdbce-63ff-4acd-851d-a5c367671f39

https://www.globenewswire.com/NewsRoom/AttachmentNg/eb6864ee-bb6a-4c24-abf1-e365d10c75d8

https://www.globenewswire.com/NewsRoom/AttachmentNg/60959f91-ee38-41e2-be84-b9faa07e855d

https://www.globenewswire.com/NewsRoom/AttachmentNg/3a6d2208-f4f9-4adf-a781-9652af24e73b

# Recommended Reading

June 27, 2022 07:09 ET

Source: Frontier Airlines, Inc.

**Frontier Airlines Issues Open Letter to Spirit Airlines Stockholders Highlighting Greater Value and Clearer Pathway to Close Than JetBlue...**

Leading Proxy Advisory Firms ISS and Glass Lewis Recognize Superior Long-Term Value and Upside Potential of the Frontier-Spirit Combination New Agreement Includes More Cash and Increased Reverse...

*FRONTIER*

May 20, 2022 10:06 ET

Source: Frontier Airlines, Inc.

**Frontier Airlines to Participate in the 15th Annual Wolfe Research Global Transportation & Industrials Conference**

DENVER, May 20, 2022 (GLOBE NEWSWIRE) -- Frontier Group Holdings, Inc., parent company of Frontier Airlines, Inc. (NASDAQ: ULCC), today announced that Barry Biffle, President and CEO, and Ted...

*FRONTIER*

SPIRIT CONFIDENTIAL

NK-2R-05330362



ESG
NEWS

COVID-
19
NEWS

SERVICES ∨

CONTACT
US

FRANÇAIS

SIGN IN

**REGISTER**







### [Global Carmine Market Report (2022 to 2027) - Indu...](#)

June 28, 2022 06:48 ET

### [Setting the Record Straight on JetBlue's Antitrust...](#)

June 28, 2022 06:45 ET



**About Us**

GlobeNewswire is one of the world's largest newswire distribution networks, specializing in the delivery of corporate press releases, financial disclosures and multimedia content to media, investors, and consumers worldwide.

Follow us on social media:   in   🐦

**Newswire Distribution Network & Management**

· [Home](#)

· [Newsroom](#)

· [RSS Feeds](#)

· [Legal](#)

GlobeNewswire is a newswire distribution network. Articles and other content published by GlobeNewswire are the legal responsibility of the author and GlobeNewswire accepts no liability for the content of such material. GlobeNewswire publishes content for informational purposes and makes no representations regarding, recommendation or invitation to engage in, any form of financial or investment activity, and does not endorse the content of any material published.

© 2022 GlobeNewswire, Inc. All Rights Reserved.

SPIRIT CONFIDENTIAL                                                                                       NK-2R-05330363

# EXHIBIT C
Excerpts from the Expert Report of Nicholas Hill, PhD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

GABRIEL GARAVANIAN, *et al.*,

        *Plaintiffs,*

    v.

JETBLUE AIRWAYS CORPORATION
and
SPIRIT AIRLINES INC.,

        *Defendants.*

CASE NO. 1:23-cv-10678-WGY

HON. JUDGE WILLIAM G. YOUNG

**REBUTTAL EXPERT REPORT OF NICHOLAS HILL, PHD**

**24 AUGUST 2023**

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

### 8.2.1. Concentration thresholds



(131)    Prof. Singer draws strong inferences about the likely impact of the transaction on competition from concentration thresholds based on shares. But when the results of such an analysis are sensitive to the use of passenger or revenue shares, drawing such a strong inference based solely on one measure alone is unwarranted. I therefore calculate route shares and concentration measures using both



passengers and revenues. Applying this standard, 11 of Prof. Singer's 68 nonstop directional routes do not meet the concentration thresholds using revenue shares.[178]

(132)   A second problem with Prof. Singer's concentration threshold assertions is that he presumes that the parties' proposed divestitures will have no impact. This assumption is unreliable, as I show in Section 11. Instead, the evidence is consistent with competition being preserved or enhanced at divestiture airports. Removing nonstop overlap routes that involve divestiture airports eliminates 48 of Prof. Singer's nonstop directional concentration threshold routes.

# EXHIBIT D

Excerpts from the deposition of Derek Klinka
in his personal capacity on Jan. 13, 2023



Transcript of **Derek Klinka**

Friday, January 13, 2023

*JetBlue/Spirit Investigation*

www.TP.One
www.aldersonreporting.com
www.accutrancr.com
800.FOR.DEPO (800.367.3376)
Scheduling@TP.One

Reference Number: 124088

1    strategy and business development.

2         Q.    And what change in responsibilities did

3    that 2021 promotion entail?

4         A.    Generally, the same responsibilities.   My

5    team grew a little bit.

6         Q.    Okay.   And what were you working on in the

7    2021 time period?

8         A.    In the 2021 period, we were in the depths

9    of COVID.   I was looking for opportunities to help

10   the business in any way possible, be they revenue or

11   cost initiatives.

12        Q.    Okay.

13        A.    Alongside the responsibilities that I

14   listed, the general responsibilities I listed.

15        Q.    Right.   And then when were you promoted to

16   your current position?

17        A.    My current position is not a promotion,

18   it's a lateral move.

19        Q.    Okay.

20        A.    And that happened on October 19th of 2022.

21        Q.    And that's the -- your current title is

22   what?

1      A.     I am a leader, the integration management

2   office leader, value capture.

3      Q.     And can you describe how your duties as

4   IMO leader differ from your prior roles as director

5   of strategy and business development?

6      A.     Sure.   My focus is on planning for the

7   integration of Spirit into JetBlue, and ensuring that

8   we capture the financial value associated with it.

9      Q.     And how do you go about doing it?

10      A.     Admittedly, I'm still in the process of

11   learning, given it's a new role.   But I believe that

12   we are establishing an execution plan that will be

13   enacted, assuming the deal closes, and be able to

14   deliver the JetBlue value proposition and offer

15   customers more choice as we go after taking on the

16   legacy carriers.

17      Q.     How specifically do you intend to offer

18   customers more choice?

19      A.     By delivering the JetBlue value

20   proposition and the product offering to more people,

21   more customers.

22      Q.     You mentioned an execution plan.   Can you

# EXHIBIT E

Excerpts from the deposition of Derek Klinka
in his capacity as a corporate witness under Rule 30(b)(6)
on Jan. 12, 2023



Transcript of **Derek Klinka 30(b)(6)**

Thursday, January 12, 2023

*JetBlue/Spirit Investigation*

www.TP.One
www.aldersonreporting.com
www.accutrancr.com
800.FOR.DEPO (800.367.3376)
Scheduling@TP.One

Reference Number: 124086

1        A.    I do.

2        Q.    Do you have any questions about anything

3    contained in it?

4        A.    Not at this time.

5              MR. SHORES:  Mr. Duffy, could I just say

6    for the record, there were some modifications to this

7    by email that haven't been shown to the witness, but

8    it's fine to ask if he generally understands the

9    notice.

10             MR. DUFFY:  I appreciate the

11   clarification.

12   BY MR. DUFFY:

13       Q.    And then the other thing I wanted to ask

14   was that, it's your understanding that you have been

15   designated by JetBlue as the person to testify as to

16   topics 2 through 7, subject to the modifications

17   Mr. Shores mentioned?

18       A.    It is.

19       Q.    Right.  So topic 1 is outside your purview

20   as the 30(b)(6) witness, fair to say?

21       A.    Fair.

22       Q.    But you are prepared to testify as to the

1    other topics that are listed here?

2              MR. SHORES:  Again, as modified.

3    BY MR. DUFFY:

4        Q.    As modified.

5        A.    Yes.

6        Q.    And I just want to say one thing.  You

7    haven't been deposed before.  You understand you're

8    being deposed in your individual capacity as well in

9    this case?

10       A.    Not right now.

11       Q.    Correct.  So Mr. Shores and I have

12   discussed this, but until we stop the deposition and

13   make clear that you're testifying in your individual

14   capacity, your understanding is that, right now,

15   you're testifying as the 30(b)(6) witness for

16   JetBlue?

17       A.    Yes.

18       Q.    Fair to say?  Okay.  And so tomorrow --

19   likely tomorrow, we'll start up with your individual

20   deposition, where we're asking about what you

21   personally know, as opposed to what JetBlue, as a

22   company, knows about these topics.