UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC.,<br><br>*Defendants*. | Case No. 1:23-cv-10511-WGY |
| GABRIEL GARAVANIAN, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC.,<br><br>*Defendants*. | Case No. 1:23-cv-10678-WGY |

**NON-PARTY DELTA AIR LINES, INC.'S
MOTION TO SEAL CONFIDENTIAL INFORMATION**

Non-party Delta Air Lines, Inc. ("Delta") hereby moves the Court pursuant to Local Rule 7.2, the Stipulated Protective Orders (ECF No. 140, ECF No. 164),[1] and Paragraph 5 of the Joint Proposed Confidentiality Protocols (ECF No. 154, ECF No. 183) to enter an order to place under seal highly confidential information contained in (i) certain documents produced by Delta, as identified in **Exhibit A**, and (ii) certain deposition designations from the Rule 30(b)(1) and Rule 30(b)(6) depositions of Delta's Managing Director of Domestic Network Planning, Eric Beck, as

---

[1] Where Delta cites to parallel ECF docket numbers, the first citation refers to Case No. 1:23-cv-10511-WGY (the "Government Proceeding") and the second citation refers to Case No. 1:23-cv-10678-WGY (the "Private Plaintiff Proceeding").

1

identified in **Exhibit B**, which the Parties in this case have informed Delta they may introduce at trial, and to the extent any of those materials are offered and admitted into evidence.[2] Delta further requests that the sealed materials remain impounded until further Order of the Court.

Pursuant to Local Rule 7.1, Delta has met and conferred with the Department of Justice, the Private Plaintiffs, and the Defendants (collectively, the "Parties") regarding the relief sought in this motion. The Parties have all indicated that they do not oppose Delta's motion to seal but reserve the right to request that the Court unseal specific Delta documents or deposition testimony and/or to address issues raised during any future court hearing regarding confidentiality.

I.   **The Internal Documents and Deposition Excerpts in Exhibits A and B Contain Highly Confidential Delta Information That Must Be Sealed.**

Recognizing that the public's right to access trial materials is "not unfettered," the First Circuit instructs that the "court must carefully balance the competing interests that are at stake in the particular case" when a party requests sealing of judicial records. *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998). Delta moves to seal the documents identified in Exhibit A and the deposition designations listed in Exhibit B on the basis of "important countervailing interests, [which] can, in given instances, overwhelm the usual presumption" of the public's right of access to judicial records. *Id.*; *see also U.S. v. Kravetz*, 706 F.3d 47, 59 (1st Cir. 2013) (quoting *Siedle*, 147 F.3d at 10). A court considering a motion to seal examines the extent to which the subject matter is "traditionally considered private rather than public." *Kravetz*, 706 F.3d at 62.

More specifically, Delta moves to seal the materials identified in Exhibits A and B because they contain information that Delta protects as highly confidential proprietary commercial and

---

[2] Pursuant to the Stipulated Protective Orders in these proceedings, Delta designated as Confidential or Highly Confidential other portions of Mr. Beck's deposition transcripts that the Parties have not designated for possible use at trial. Delta maintains and does not waive its confidentiality designations over any portion of those deposition transcripts not identified by the Parties in their deposition designations.

competitively sensitive information, the disclosure of which would likely result in serious competitive injury to Delta.  Courts deny public access to information where "court files might . . . become a vehicle for improper purposes," including "as sources of business information that might harm a litigant's competitive standing."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).  This Court has recognized "a legitimate and significant interest in protecting . . . sensitive business information" to "avoid the serious competitive injury that dissemination would more than likely entail."  *Glass Dimensions, Inc. v. State St. Corp.*, No. CV 10-10588, 2013 WL 6280085, at *1 (D. Mass. Dec. 3, 2013) (citing *Kravetz*, 706 F.3d at 62); *see also W.N. Motors, Inc., v. Nissan N. Am., Inc.*, 2022 WL 1568443 (D. Mass. May 18, 2022) ("Courts have recognized the propriety of issuing protective orders to limit the disclosure of such sensitive commercial information among competitors, *particularly that of non-parties*.") (emphasis added).

Delta, based on discussions with employees involved in its day-to-day business, has identified a limited number of categories of competitively sensitive information that, if revealed, would harm Delta's competitive standing.  As set forth in the accompanying Declaration of Micah D. Moon, Senior Corporate Counsel – Antitrust & Regulatory at Delta Air Lines ("Moon Decl.") submitted in support of this motion, Delta has taken reasonable efforts to maintain the secrecy of these documents, and the information in them is sufficiently valuable and secret to afford a potential or actual advantage over others.  Moon Decl. ¶¶ 3-8.  Their disclosure to existing or potential business competitors, customers, or related parties would cause a material injury to Delta's business, commercial, competitive, and financial interests.  *Id.*  The Parties in this case have identified for potential use at trial other Delta-produced information that Delta does not seek to keep sealed.  Mindful of the burden on the Court and the public's general right of access, Delta has endeavored to narrow its confidentiality claims to the extent practicable.

### A. Business Plans, Network Planning Documents, and Other Corporate Strategy Information.

Delta moves to seal documents that reflect competitively sensitive information related to Delta's current and future business plans and strategy. For example, Delta, like other airlines, regularly generates network plans that specify where, when, and how it will fly its aircraft in the future. Delta generates analyses of other strategic plans involving potential partnership opportunities and investments in new product lines or ancillary services. Delta's plans can also include information discussing ongoing strategic initiatives that impact its immediate and future competitive decision-making. These network plans and strategic analyses are expressly contemplated as Highly Confidential Information under the protective orders governing these proceedings. ECF No. 140 at ¶ 11; ECF No. 164 at ¶ 11 (defining "Highly Confidential Information" to include "forward-looking financial, marketing, or strategic business planning information, including forward-looking network plans and budgets.").

Disclosure of these types of information would significantly harm Delta's competitive standing. Competitors could, for example, use the plans to preempt Delta's growth plans by targeting growth at the same place or pursue a particular partnership more aggressively if armed with the knowledge that Delta plans to pursue a similar partnership. *Williams v. Apple, Inc.*, No. 19-CV-04700, 2021 WL 2476916, at *4 (N.D. Cal. June 17, 2021) (information that "would provide competitors with insight that they could use to unfairly compete" qualifies as "business information that might harm a litigant's competitive standing"). As a result, courts regularly seal future plans or strategy documents. *See, e.g.*, *U.S. v. IBM*, 163 F.3d 737, 739 n.3 (2d Cir. 1998) (noting in an antitrust case where "strategic planning documents [were] filed under seal"); *In re Qualcomm Litig.*, No. 3:17-cv-0108, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (holding that documents "should . . . be sealed" where they provide "insight into the parties' business model

and strategy" because disclosure "could harm the parties in future negotiations with existing customers, third-parties, and other entities with whom they do business").

Delta does not seek to seal documents that are "stale" or that no longer provide an insight into Delta's plans, methods and strategies. The documents to be sealed consist of internal Delta commercial strategy documents, business plans, and Network Planning documents that contain confidential proprietary commercial or competitively sensitive information, including on topics related to capacity and route planning, fleet planning, sales, corporate strategy, and revenue, cost and other financial information. Moon Decl. ¶ 5. Many of these documents also contain commercially sensitive process information, including processes and methodologies for Network Planning and Revenue Management. *Id.* All but two of these documents are from 2019 to 2023.[3] *Id.* at ¶ 6. Delta therefore seeks to seal only highly sensitive, non-public future plans, strategic initiatives, and business practices or methodologies, that would give Delta's competitors a preview and/or understanding of how Delta makes competitive decisions. *Id.* at ¶¶ 4, 8. The information proposed to be sealed is therefore highly relevant for competition at present and in the future and is highly competitively sensitive.

### B. Proprietary Pricing Models and Strategies.

Delta also moves to seal the documents identified in Exhibit A because they are replete with commercially sensitive pricing information from Delta's Revenue Management department. This information includes detailed internal reporting of fares filed by Delta in specific markets, explanations of proprietary Delta pricing models, and broader discussions of Delta's pricing

---

[3] As Mr. Moon explains in his accompanying declaration, one document is from 2017 and one document is from 2018. However, the date of these documents alone should not render them stale. The airline industry is still recovering from the near-total disruption caused by COVID-19, and the substance of these documents reflects still-relevant Delta internal strategies on pricing and product offering matters. Moon Decl. ¶ 6.

5

strategies and responses to its evolving competitive environment.  Proprietary pricing information lies at the zenith of commercially sensitive materials.  *See Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1, 6 (1st Cir. 2009) ("Astro–Med's financial arrangements with its sales people, its marketing strategy, and its pricing and cost structures are all highly confidential."); *Anaqua, Inc. v. Schroeder*, No. 12-10710-FDS, 2012 WL 12960760, at *4 (D. Mass. Sept. 14, 2012) ("This Court finds that Defendants have shown good cause that Hyperion's customer lists, pricing, and trade secret information should be protected as highly confidential."); *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (pricing information "plainly falls" within the definition of trade secrets and should be sealed).  Fittingly, the Protective Orders list "current or future margin, cost, or pricing information" as a category of Highly Confidential Information.  ECF No. 140 at ¶ 11; ECF No. 164 at ¶ 11.

Delta would face substantial competitive harm if its internal pricing documents were revealed publicly.  For example, competitor airlines could use documents revealing Delta's pricing strategies for specific markets to predict how Delta would react to new fare initiatives.  This would be detrimental to Delta because airlines constantly seek competitive advantages through their pricing decisions.  *See United States v. American Airlines Grp., Inc.*, No. 21-11558-LTS, 2023 WL 3560430, at *4 (D. Mass. May 19, 2023) ("As to any given market, an airline generally considers the actions of, and views itself as competing with, every other airline serving that market…In the airline industry, scheduling and pricing information is published and updated multiple times each day, enabling each carrier to track its competitors' actions almost constantly. As a result, strategic fare and schedule changes are the subject of continual analysis and discussion.").  Publicly revealing Delta's internal thought processes on pricing matters would

therefore give rival airlines a significant and unwarranted upper hand. The documents in Exhibit A are full of commercially sensitive pricing information and strategies, all of which must be sealed.

### C. Sales Information Including Customer Names.

Finally, many of documents in Exhibit A contain certain Sales information including Sales strategies and practices, specific customer names, and response strategies to competition in specific markets. Moon Decl. ¶¶ 5-6. This Court has found that "specific customer lists and pricing information . . . can constitute trade secrets where the information provides its holder with a competitive advantage." *Bruno Int'l Ltd. v. Vicor Corp.*, No. 14-10037, 2015 WL 5447652, at *12 (D. Mass. Sept. 16, 2015). These materials not only contain the names of corporate customers, but also reveal sensitive strategic discussions or practices regarding customers and relevant factors such as competition and market conditions.

Revealing the identities of Delta's corporate customers or the terms provided to these customers would allow competitors to target Delta's customers with knowledge they have gained through the trial exhibits. *Trade W. Inc. v. E.-W. Aloha Corp.*, No. CV 01-00096, 2016 WL 11713185, at *2 (D. Haw. Aug. 22, 2016) (finding public disclosure of customer lists would harm a litigant's competitive standing). Disclosure of customer names would also infringe upon the privacy rights of Delta's customers. "Third-party privacy interests . . . have been referred to as a venerable common law exception to the presumption of access and weigh heavily in a court's balancing equation." *Kravetz*, 706 F.3d at 62 (internal citations and quotations omitted). Delta's sales information therefore must also be sealed.

### II. The Materials in Exhibits A and B Should Be Fully Sealed Until Trial.

Delta requests that the Court allow it to fully seal the highly confidential trial exhibits and deposition excerpts at this juncture. It is not currently practical for Delta to propose redactions to the documents designated as trial exhibits. For one, the parties have not identified for Delta which

portions of the documents listed in Exhibit A they intend to use at trial. Nor have the Parties confirmed which, if any, documents or deposition testimony they will in fact offer into evidence. Moreover, the Delta-produced exhibits are voluminous and contain substantial amounts of commercially sensitive information. For Delta to offer redactions at this time, it would need to assess confidentiality over every line within approximately 750 pages of internal documents, most of which bear no relevance to the JetBlue/Spirit merger. This is an inefficient and heavily burdensome task for Delta to undertake.

Past experience shows that the parties are unlikely to use the majority of the Delta materials designated on their trial exhibit lists. In the Northeast Alliance proceeding also involving JetBlue, *see* Docket No. 1:21-cv-11558-LTS, the Department of Justice and JetBlue designated thirty-two highly confidential Delta documents as trial exhibits (ECF No. 215-1). Only eleven of these exhibits made it into the final trial record (ECF No. 352-1) and even fewer were used by the parties during trial. Delta suspects a similar process will unfold here, but to an even greater degree. The parties have collectively designated over seventy highly confidential Delta documents as trial exhibits along with over 150 highly confidential Eric Beck deposition excerpts. Most of these materials are unlikely to be used at trial or introduced into the record, especially in light of the parties' large Joint Trial Exhibit Lists that total nearly 2,000 exhibits each for the Government proceeding (ECF No. 191-4) and the Private Plaintiff proceeding (ECF No. 226).

A preemptive redaction effort would be unduly burdensome given the lack of clarity surrounding the parties' intended use of these Delta documents. Instead, Delta respectfully requests that it be allowed to seal the entirety of the materials contained in Exhibits A and B. In the event a Party intends to offer any of the Delta-produced materials identified in Exhibits A and B, and if the Court intends to unseal any such materials, Delta requests an opportunity to redact

such materials to ensure that the highly confidential information contained therein is not disclosed publicly. This process was successfully used during the Northeast Alliance trial. Delta simply requests that it be used again here.

## CONCLUSION

For the reasons set forth above, Delta respectfully requests that this Court grant its Motion to Seal.

September 29, 2023

Respectfully submitted,

/s/ Benjamin Solomon-Schwartz
Benjamin Solomon-Schwartz (BBO 688674)
James P. Denvir (*pro hac vice*)
Michael S. Mitchell (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
jdenvir@bsfllp.com
mmitchell@bsfllp.com
bsolomon-schwartz@bsfllp.com

*Counsel for Delta Air Lines, Inc.*

**LOCAL RULE 7.1 CERTIFICATION**

Pursuant to Local Rule 7.1(a)(2), I hereby certify that Delta met and conferred in good faith with counsel for the Parties regarding the confidentiality of the Delta materials set forth in Exhibits A and B. The Parties have informed Delta that they do not oppose Delta's motion to seal but reserve the right to request that the Court unseal specific Delta documents or deposition testimony and/or to address issues raised during any future court hearing regarding confidentiality.

/s/ Michael S. Mitchell
Michael S. Mitchell (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
mmitchell@bsfllp.com

*Counsel for Delta Air Lines, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

/s/ Benjamin Solomon-Schwartz
Benjamin Solomon-Schwartz (BBO 688674)
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 237-2727
Fax: (202) 237-6131
bsolomon-schwartz@bsfllp.com

*Counsel for Delta Air Lines, Inc.*