UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GABRIEL GARAVANIAN, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC., <br><br> Defendants. | Civil Action No. 1:23-cv-10678-WGY |

**NON-PARTY AMERICAN AIRLINES GROUP INC.'S**
**UNOPPOSED MOTION TO SEAL TRIAL EXHIBITS**

Non-party American Airlines Group Inc. ("American") respectfully moves the Court under Local Rule 7.2 and the Joint Proposed Confidentiality Protocol (ECF No. 183) to enter an order to place under seal in whole or in part the trial exhibits identified in **Appendix A**, to the extent the exhibits are offered and admitted into evidence. American further requests that the sealed documents remain impounded until further order of the Court.

American has met and conferred with the Parties regarding the confidentiality of these documents consistent with Paragraph 5 of the Joint Proposed Confidentiality Protocol (ECF No. 183). Defendants have informed American that they do not oppose American's motion to seal.[1]

Recognizing that the public's right to access trial materials is "not unfettered," the First Circuit instructs that the Court "must carefully balance the competing interests that are at stake in the particular case" when a party requests sealing of judicial records. *Siedle v. Putnam Invs., Inc.*,

---

[1] American never produced any documents to Plaintiffs, and Plaintiffs have not proposed to use any American-produced documents at trial. Accordingly, there was no need for American and Plaintiffs to meet and confer regarding this Motion.

147 F.3d 7, 10 (1st Cir. 1998). American moves to seal in whole or in part the documents identified in Appendix A on the basis of one "important countervailing interest[ ], [which] can, in given instances, overwhelm the usual presumption" of the public's right of access to judicial records. *Id.*; *see also U.S. v. Kravetz*, 706 F.3d 47, 59 (1st Cir. 2013) (quoting *Siedle*, 147 F. 3d at 10). Specifically, American moves to seal confidential proprietary and competitively sensitive business information, the disclosure of which would likely result in serious competitive injury. This is especially important because American is a non-party to this litigation. This Court has recognized that "[t]hird-party privacy interests . . . have been referred to as a venerable common law exception to the presumption of access and weigh heavily in a court's balancing equation." *Kravetz*, 706 F.3d at 62 (internal citations and quotations omitted). American has endeavored to narrow its confidentiality claims to the fullest extent possible, including, in many cases, by proposing targeted redactions. Thus, American respectfully requests that the Court grant this motion.

I.  **THE DOCUMENTS AT ISSUE CONTAIN CONFIDENTIAL PROPRIETARY AND COMPETITIVELY SENSITIVE BUSINESS INFORMATION**

American moves to seal documents or portions of documents identified in Appendix A that contain confidential proprietary and competitively sensitive business information. Courts deny public access to information where "court files might . . . become a vehicle for improper purposes," including "as sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). This Court has recognized "a legitimate and significant interest in protecting . . . sensitive business information" to "avoid the serious competitive injury that dissemination would more than likely entail." *Glass Dimensions, Inc. v. State St. Corp.*, No. CV 10-10588, 2013 WL 6280085, at *1 (D. Mass. Dec. 3, 2013) (citing *Kravetz*, 706 F.3d at 62). American has identified a limited number of categories of information that are the most competitively sensitive that, if revealed, would harm American's competitive

2

standing.  American moves to seal the documents in Appendix A falling into each of these categories as described below:

### A.      Future Plans and Strategy

American moves to seal documents or portions of documents that reflect competitively sensitive information related to American's future plans and strategies.  For example, American regularly generates network plans that specify where, when, and how it will fly its aircraft in the future.  American also generates analyses of other, more strategic plans involving potential partnerships or mergers with other airlines or investments in new product lines or ancillary services.  Strategic plans can also include information discussing ongoing strategic initiatives that impact American's immediate and future competitive decision-making.

Disclosure of these types of information would significantly harm American's competitive standing.  Competitors could, for example, use the plans to preempt American's growth plans by targeting growth at the same places or pursuing a particular partnership more aggressively, armed with the knowledge that American plans to pursue a similar partnership.  As a result, courts often seal a business' future plans and strategy documents.  *See, e.g.*, *U.S. v. IBM*, 163 F.3d 737, 739 n.3 (2d Cir. 1998) (noting in an antitrust case that "strategic planning documents [were] filed under seal"); *Williams v. Apple, Inc.*, No. 19-CV-04700, 2021 WL 2476916, at *4 (N.D. Cal. June 17, 2021) (granting a motion to seal documents containing information that "would provide competitors with insight that they could use to unfairly compete" and that could therefore "harm a litigant's competitive standing"); *In re Qualcomm Litig.*, No. 3:17-cv-0108, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (holding that documents "should . . . be sealed" where they provide "insight into the parties' business model and strategy" because disclosure "could harm the parties in future negotiations with existing customers, third-parties, and other entities with whom they do business").

American's future plans and strategy documents also reflect the company's investment of substantial time and resources to identify and develop strategies for growth. Such information is proprietary, and its disclosure would give an unfair advantage to American's competitors. Accordingly, the Court should seal materials containing that information. *Cf. Bauer Bros. LLC v. Nike, Inc.*, No. 09-CV-500, 2012 WL 1899838, at *2 (S.D. Cal. May 24, 2012) ("[P]ublic disclosure of Nike's confidential business materials, including marketing strategies, sales and retailer data, product development plans, unused prototypes, and detailed testimony regarding the same, could result in improper use by business competitors seeking to replicate Nike's business practices and circumvent the considerable time and resources necessary in product and marketing development."); *Morawski v. Lightstorm Ent., Inc.*, No. CV 11-10294, 2013 WL 12122289, at *2 (C.D. Cal. Jan. 14, 2013) (sealing "prospective business plans" because they contain "proprietary information regarding . . . prospective projects").

American is not seeking to seal documents that contain information that was once confidential but is now "stale" or has already become public. American's proposed redactions leave available to the public any portions of documents that contain information regarding plans that are no longer in place. In requesting only targeted sealing, American has balanced its confidentiality concerns with the need for public access.

American is only seeking to seal a narrow set of highly sensitive, non-public future plans and strategic initiatives that would give American's competitors a preview of how American plans to make competitive decisions. The information proposed to be sealed is therefore highly relevant for competition at present, is a product of substantial time and resources by American to develop its strategic plans, and is highly competitively sensitive.

### B.     Pricing Strategy

American also moves to seal, in whole or in part, documents that discuss American's pricing strategies. Pricing in the airline industry is technical, and airlines spend considerable resources to monitor other airlines' publicly available pricing to remain competitive and find an edge to win customers. Allowing competitors access to detailed confidential information that reveals American's pricing strategies, including, for example, how and when American decides to match the pricing of competitors or undercut competitors' prices, would "provide competitors with insight that they could use to unfairly compete" and harm American's competitive standing. *Williams*, 2021 WL 2476916, at *4, 7; *see also Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc*., No. 3:20-CV-01765, 2022 WL 3578260, at *2 (S.D. Cal. Aug. 18, 2022) (finding that "pricing models and approaches," if disclosed, could hurt competitive standing).

### C.     Financial Data

American moves to redact portions of documents identified in Appendix A that reveal detailed and granular financial data regarding revenues, costs, and the profitability of American's flights. Detailed financial data are routinely sealed in federal court proceedings. *See, e.g.*, *Abiomed, Inc. v. Maquet Cardiovascular LLC*, No. CV 16-10914, 2021 WL 5165010, at *3 (D. Mass. Nov. 5, 2021) (finding that the presence of "confidential financial information . . . outweigh[s] the presumption of access"); *Cohen v. Trump*, No. 10-CV-0940, 2016 WL 3036302, at *5 (S.D. Cal. May 27, 2016) (stating that courts have routinely granted motions to seal documents containing "profit, cost, and margin data"); *Trapp v. SunTrust Bank*, No. 1:15-CV-937, 2016 WL 6833986, at *2 (M.D.N.C. Nov. 18, 2016) ("The court may seal . . . confidential and proprietary commercial information such as highly sensitive financial and business information." (alteration and internal quotations omitted)).

The need to prevent disclosure of granular financial data regarding American's flights is particularly important in the airline industry, where airlines are constantly assessing where to deploy their aircraft to compete more effectively.  Access to granular confidential data that would allow a competitor to conclude that American has struggled to generate profits, or generated substantial profits, on a certain route or at a certain airport, for example, could enable a competitor to target that route or airport in ways that it otherwise might not have.

Given the significant advantage that disclosure of this data would provide to American's competitors, *see Williams*, 2021 WL 2476916, at *4, American does not view historical granular financial data as stale.  The information that competitors can glean from historical financial data regarding relative profits, revenues, or costs of certain routes remains highly relevant to competition today and in the future.  American, however, does not propose to seal general references regarding profitability, costs, or revenue in certain regions or airports.

**D.    Customer Names and Specific Pricing and Discount Information**

American moves to redact from documents identified in Appendix A certain corporate customer names, references to specific pricing or discounting information, and information regarding corporate bidding strategies.  This Court has found that "specific customer lists and pricing information . . . can constitute trade secrets where the information provides its holder with a competitive advantage." *Bruno Int'l Ltd. v. Vicor Corp.*, No. 14-10037, 2015 WL 5447652, at *12 (D. Mass. Sept. 16, 2015).  Importantly, American moves to redact only portions of documents—like a particular customer name—despite the fact that many of these documents contain sensitive strategic discussions regarding the customer and relevant factors such as competition and market conditions.  American has proposed these highly targeted redactions in order to balance the anticipated use of these documents at trial with American's need to protect the most sensitive information. Revealing identities of American's corporate customers or specific

6

terms provided to these customers would allow competitors to target American's customers with knowledge they have gained through this trial, which would in turn harm American's competitive standing. Accordingly, the Court should permit American to redact corporate customer names from documents identified in Appendix A. *See Trade W. Inc. v. E.-W. Aloha Corp.*, No. CV 01-00096, 2016 WL 11713185, at *2 (D. Haw. Aug. 22, 2016) (denying a motion to unseal documents containing customer lists because public disclosure of such information "might harm a litigant's competitive standing"); *see also id.* (noting that "courts have permitted customer lists to be filed under seal," and collecting cases).

Disclosure of customer names would also infringe upon the privacy rights of American's customers. As discussed above, "[t]hird-party privacy interests . . . have been referred to as a venerable common law exception to the presumption of access and weigh heavily in a court's balancing equation." *Kravetz*, 706 F.3d at 62 (internal citations and quotations omitted).

## CONCLUSION

For the reasons set forth above, American respectfully requests that the Court grant its Motion to Seal Trial Exhibits.

Dated:  September 29, 2023

Respectfully submitted,

/s/ *Marguerite M. Sullivan*
Marguerite M. Sullivan (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
Email: marguerite.sullivan@lw.com

David C. Tolley (BBO #676222)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Email: david.tolley@lw.com

*Attorneys for Non-party*
*American Airlines Group Inc.*

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), I hereby certify that, on September 27, 2023, American met and conferred in good faith with counsel for Defendants regarding the confidentiality of the Defendants' trial exhibits, and that Defendants stated that they do not oppose the instant Motion to Seal Trial Exhibits.

/s/ *Marguerite M. Sullivan*
Marguerite M. Sullivan

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

/s/ *Marguerite M. Sullivan*
Marguerite M. Sullivan