UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GABRIEL GARAVANIAN, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC., <br><br> *Defendants*. | Civil Action No.: 1:23-cv-10678-WGY |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PURPORTED OUT-OF-MARKET BENEFITS**

**INTRODUCTION**

Plaintiffs moved *in limine* to preclude Defendants from arguing at trial that their merger will increase competition against the "Big Four" in markets other than those implicated by their proposed merger. Defendants oppose this Motion in Limine arguing that controlling Supreme Court precedent that has existed for decades should be ignored.

What has been alleged, and is at issue in this case, is the harm to competition that the proposed merger presents in the origination and destination ("O&D") city-pair markets (1) where JetBlue and Spirit now compete, (2) where Spirit competes with other airlines and would leave the market or be replaced by JetBlue post-merger, and (3) where Spirit had planned to enter to compete with JetBlue and/ or other airlines absent the proposed merger ("Relevant O&D

1

Markets"). These are the relevant geographic markets in which to measure the adverse effects of the proposed merger – where competition will be lessened by the departure of Spirit. Defendants cannot reasonably question that these are the appropriate, relevant geographic markets. These are the markets upon which Plaintiffs will prove their case, and the markets in which Defendants must attempt to show that the anticompetitive effects will be ameliorated by the merger —if they are able to do so.

The question here is a simple one: Should Defendants be permitted at trial to introduce evidence and argue that purported competitive benefits that may occur in *other* O&D markets not at issue here can outweigh or otherwise be used to justify the clear competitive harm the proposed merger will wreak on the Relevant O&D Markets. The answer is a resounding "No." No such replacement of competition elsewhere or harm balancing test exists under the antitrust laws. *United States v. Philadelphia National Bank,* 374 U.S. 321 (1963) is the controlling Supreme Court law that rejects such theories and makes such evidence irrelevant based upon its holding that "anticompetitive effect in one market" cannot "be justified by procompetitive consequences in another." *Id.* at 370. In an attempt to circumvent this controlling law, Defendants present a number of new, but irrelevant theories, none of which have any foundation in law or antitrust analysis and are contrary to the Clayton Act on its face. None of these new theories overcome the existing, clear and undisputed Supreme Court precedent or relieve Defendants of the obligation to overcome the harm to competition that the proposed merger will cause in the Relevant O&D Markets in order to escape a violation of Section 7 of the Clayton Act.

Under prevailing law, the issues for the Court here are simple and straightforward:

1. Is the proposed merger likely to harm competition in the Relevant O&D Markets?

2. Is there evidence that the proposed merger will result in benefits **within** the Relevant O&D Markets that would overcome the competitive harm?

Possible benefits in other O&D markets are wholly irrelevant. Defendants' apparent position that, under Section 7, evidence of a potential competitive benefit somewhere else can be introduced at trial in an attempt to justify harm to competition in a properly defined Relevant O&D Market is simply contrary to law. In short, Defendants should be limited to addressing the competitive harm in the markets at issue in this case, rather than some potential, competitive effects that may occur in the future in some other markets.

Plaintiffs request that the Court follow *Philadelphia National Bank* and grant their motion in limine.

## ARGUMENT

I. **The Law Is Clear And Prohibits Evidence Of Out-Of-Relevant Market Effects To Justify Competitive Harm In The Relevant Markets.**

Defendants argue that the controlling Supreme Court precedent of *Philadelphia National Bank* has been significantly diluted or is no longer applicable. However, its holding that "anticompetitive effect in one market" cannot "be justified by procompetitive consequences in another" (*Philadelphia National Bank*, 374 U.S. at 370) has withstood the test of time and has been consistently applied without exception. Its rejection of "cross-market-balancing" remains intact. None of the cases that Defendants cite for authority are to the contrary.

Importantly, Defendants cannot cite a single Supreme Court case that supports their position. Instead, Defendants rely on a case from the D.C. Circuit, *Baker Hughes,* 908 F.2d 981 (D.C. Cir. 1960), which unlike *Philadelphia National Bank* is not binding on this Court. Defendants rely *Baker Hughes* on for its observation that "[w]ithout overruling *Philadelphia Bank,* then, the Supreme Court has at the very least lightened the evidentiary burden on a section

3

7 defendant." Opposition at 12. However, contrary to the implications Defendants attempt to assert, *Baker Hughes* did not suggest, let alone hold, that cross-market or out-of-market market balancing is appropriate. Instead, *Baker Hughes* confirmed the principle that evidence of purported procompetitive effects of a merger are only relevant in a Section 7 case if they affect the market in which *the harm to competition is alleged. Baker Hughes Inc.*, 908 F.2d at 984, 987-89. *Baker Hughes* addressed the amount of evidence required to rebut the allegations of competitive harm *in the challenged market. Id*. at 990–91.

*Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16 (D.D.C. 2012), also cited by Defendants, does not support their position. As Defendants admit, *Kottaras* was not a case involving "cross-market balancing." Instead, the question addressed by the court (where the grocery products at issue were in the same market) was whether to "count benefits against harms in the *same* market—indeed the same shopping basket." *Id*. at 25. That is clearly not the factual situation existing here.

*Philadelphia National Bank* remains the prevailing precedent, there is no contrary First Circuit authority, and it must be applied in this case to exclude evidence of purported procompetitive effects in markets other than the alleged Relevant O&D Markets.

II. **Defendants' Argument That Out-Of-Market Effects Are Admissible Is Based On Defendants' Improper Attempt To Reject The Relevant O&D Markets Alleged By Plaintiffs As Relevant Antitrust Markets.**

There can be no serious dispute that in the airline industry scheduled air passenger service in O&D city pairs are relevant geographic and product markets for antitrust analysis. Defendant JetBlue has already so agreed in *United States v. Am. Airlines Grp. Inc.*, No. CV 21-11558-LTS, 2023 WL 3560430, at *36 (D.Mass. May 19, 2023) (Sorokin, J.) ("Here the parties agree, and the Court finds, that the relevant product market is 'scheduled air passenger service,' and the relevant geographic markets are O&Ds "in which Defendants compete or would likely

4

compete absent the NEA.").

This case is no different. The relevant antitrust markets here are the O&Ds in which Defendants JetBlue and Spirit compete or would likely compete absent their proposed merger, or those markets that Spirit will exit as a result of the proposed merger. The antitrust analysis must address the markets in which "the effect of the merger on competition will be direct and immediate," *Phila. Nat'l Bank*, 374 U.S. at 357, and in which the products are "viable substitutes for each other." *In re: AMR Corp.*, 502 B.R. 23, 40 (Bankr. S.D.N.Y. 2013).

The removal of Sprit as a ULCC competitor in hundreds of city-pair markets as a result of the merger would have a "direct and immediate" effect on competition and millions of air passengers, in terms of increased prices and reduced capacity—the hallmarks of competitive harm. And it is undisputed that air passengers travel from origin to destination on city-pair routes, and purchase air passenger service from among the airlines competing on the scheduled city-pair routes they desire to travel (the only viable substitutes). Moreover, it is axiomatic that for an air passenger desiring to travel from New York to Miami, a scheduled flight between two distinct city-pairs, such as Chicago and Los Angeles, is not a "viable substitute." This is not a new concept, but a consistent analysis used and approved by the courts in assessing the harm occurring from a reduction in airline competition. *See, e.g., Malaney v. UAL Corp.*, No. 3:10-CV-02858- RS, 2010 WL 3790296 (N.D. Cal. Sept. 27, 2010), *In re: AMR Corp.*, 502 B.R. 23, 40 (Bankr. S.D.N.Y. 2013); *United States v. Am. Airlines Grp. Inc.*, No. CV 21-11558-LTS, 2023 WL 3560430 (D.Mass. May 19, 2023).

Yet, Defendants suggest that they can provide evidence at trial that the relevant geographic and product market is national. However, whether they can or cannot is largely irrelevant for purposes of this motion. Defendants would still be foreclosed, under prevailing

5

law, from submitting evidence of purported benefits in such a "national" market to justify – in cross-market fashion -- the harm wreaked on competition in the Relevant O&D Markets. Simply put, the admissibility of evidence of any procompetitive effects is limited to those that would directly affect the competitively compromised market that would result from the merger.

**III.     Defendants' Argument That Evidence Of Out-Of-Market Effects Is Relevant To The "Step Two" Rebuttal Of Plaintiffs Prima Facie Case Of A Substantial Lessening Of Competition Is Misplaced.**

Defendants cite to *Baker Hughes* for its language that "If Plaintiffs satisfy their initial burden, then at step two, the 'burden of producing evidence to rebut this presumption then shifts to the defendant.'" Opposition at 4 (quoting *Baker Hughes*, 908 F.2d at 982). Defendants further rely on the statement in *Baker Hughes* that "A defendant can make the required showing [(1)] by affirmatively showing why a given transaction is unlikely to substantially lessen competition, or [(2)] by discrediting the data underlying the initial presumption in the government's favor." Opposition at 4 (quoting *Baker Hughes*, 908 F.2d at 991).

What Defendants fail to recognize by citing to this language is that both of items (1) and (2) apply to the relevant geographic and product markets where the harm to competition is alleged. Here, Plaintiffs allege harm in the Relevant O&D Markets. Nowhere does *Baker Hughes* stand for the proposition that Defendants can ignore the competitive harm in markets in which competition may be substantially lessoned as a result of the merger, and, instead, provide evidence of some potential procompetitive effects in other markets to satisfy their burden. Evidence of the purported benefits of a merger are only relevant in a Section 7 case if they affect the market in which *the harm to competition is alleged. Baker Hughes Inc.*, 908 F.2d at 984, 987-89. *Baker Hughes* provides Defendants no license to submit such irrelevant evidence.

## CONCLUSION

The Court should follow binding Supreme Court precedent  that "anticompetitive effect

in one market" cannot "be justified by procompetitive consequences in another" *Philadelphia National Bank*, 374 U.S. at 370, and grant Plaintiffs' motion *in limine*.

Dated: October 2, 2023

                                                                      */s/* Scott Gregory Herrman
                                                                       Robert F. Ruyak
Stephen G. Larson
Scott Gregory Herrman
LARSON LLP
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Tel: (213) 436-4888
Fax: (213) 623-2000
Email:slarson@larsonllp.com
Email:rruyak@larsonllp.com
Email:gherrman@larsonllp.com
(*Admitted Pro Hac Vice*)

| | |
|---|---|
| Joseph M. Alioto<br>ALIOTO LAW FIRM<br>One Sansome Street, 35th Floor<br>San Francisco, California 94104<br>Telephone: (415) 434-8900<br>(*Admitted pro hac vice*) | Joseph Michelangelo Alioto, Jr<br>ALIOTO LEGAL<br>100 Pine Street<br>Suite 1250<br>San Francisco, CA 94111<br>Tel.: 415-398-3800<br>Email: joseph@aliotolegal.com<br>(Admitted Pro Hac Vice) |
| Jeffery K. Perkins<br>LAW OFFICES OF JEFFERY K. PERKINS<br>1550-G Tiburon Blvd., Box 344<br>Tiburon, California 94920<br>Telephone: (415) 302-1115 | Josephine Alioto<br>THE VEEN FIRM<br>20 Haight Street<br>San Francisco, CA 94102<br>Telephone: (415) 673-4800<br>Email: j.alioto@veenfirm.com<br>(*Admitted pro hac vice*) |
| Lingel H. Winters<br>LAW OFFICES OF LINGEL H. WINTERS<br>275 Battery Street, Suite 2600<br>San Francisco, California 94111<br>Telephone: (415) 398-2941 | Lawrence G. Papale<br>LAW OFFICES OF LAWRENCE G. PAPALE<br>The Cornerstone Building<br>1308 Main Street, Suite 117 |

Christopher A. Nedeau
NEDEAU LAW PC
154 Baker Street
San Francisco, CA 94117-2111
Telephone: (415) 516-4010
Email: cnedeau@nedeaulaw.net

*Counsel for Plaintiffs*

St. Helena, California 94574
Telephone: (707) 963-1704
(*Admitted pro hac vice*)

Robert J. Bonsignore, Esq.
BONSIGNORE TRIAL LAWYERS, PLLC
23 Forest Street
Medford, MA 02155
Phone: 781-856-7650
Email: rbonsignore@classactions.us

## CERTIFICATE OF SERVICE

      I certify that this document was filed through the ECF system on October 2, 2023 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                                        */s/ Scott Gregory Herrman*

                                                        Scott Gregory Herrman