## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

GABRIEL GARAVANIAN, et al.,

       *Plaintiffs*,

    v.

JETBLUE AIRWAYS CORPORATION and
SPIRIT AIRLINES, INC.,

       *Defendants*.

Civil Action No. 1:23-cv-10678-WGY

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF TED P. TATOS

Defendants respectfully submit this reply in support of their motion to exclude the opinions and testimony of Plaintiffs' expert, Ted Tatos (Dkt. 234, "Motion" or "Mot."). Federal Rule of Evidence 702 warrants exclusion of Mr. Tatos's opinions for at least three reasons: (1) Mr. Tatos conducted a damages analysis in a case where Plaintiffs are not seeking damages; (2) Mr. Tatos does not independently analyze or verify the methodologies or economic assumptions in the sources he relies on—he simply reads them; and (3) even where he purports to do some work, Mr. Tatos fails to employ reliable scientific methodology, instead asking the Court to presume the existence of the Spirit Effect. Plaintiffs' Opposition offers no explanations for these fatal defects and Defendants respectfully request that his opinions be excluded.

### A. Mr. Tatos's Damages Analysis Is Irrelevant

In their Opposition, Plaintiffs attempt to rewrite Mr. Tatos's report and testimony to claim he never attempted to calculate monetary damages. Plaintiffs' Opposition ("Opp.") at 2. Then, in an abrupt U-turn, Plaintiffs expressly concede that Mr. Tatos "quantified" alleged harm to Plaintiffs "in pecuniary terms," *id.*, just as the Tatos Report provides that it "quantified" "damage

to Plaintiffs'" "in the form of higher fares" and "additional cost." *See* Declaration of Elizabeth M. Wright in Support of Motion ("Wright Decl.") Ex. 1 at pp. 2, 6, 7. Of course, Plaintiffs do not seek damages and Mr. Tatos's damages calculation, however unreliable, shows that Plaintiffs alleged injuries can be remedied and thus they are not entitled to equitable relief.

### B.    Plaintiffs Concede that Mr. Tatos Relied on Sources Without Any Independent Review or Analysis

Plaintiffs do not dispute that Mr. Tatos simply read documents with no "independent analysis" in forming his conclusions. The law is clear that this is improper to support an expert opinion. *United States v. Zolot*, 968 F. Supp. 2d 411, 426 (D. Mass. 2013) (excluding expert who "presented no independent analysis") (cleaned up); *Rothbaum v. Samsung Telecomms. Am., LLC*, 52 F. Supp. 3d 185, 195 (D. Mass. 2014); *Anderson News, L.L.C. v. Am. Media, Inc.*, 2015 WL 5003528, at *4 (S.D.N.Y. Aug. 20, 2015), *aff'd*, 899 F.3d 87 (2d Cir. 2018) (excluding expert who "merely recit[ed] what is on the face of . . . document[s]") (cleaned up). Indeed, another court has excluded Mr. Tatos for failing to "independently verif[y], even minimally, the accuracy of the data" used to form his opinions. *Cal. Coll. Inc. v. UCN Inc.*, 440 P.3d 825, 832 (Utah Ct. App. 2019). Plaintiffs do not respond to this law; rather they provide a litany of arguments that fail on their face.

*First*, Plaintiffs argue that it was reasonable to rely on their sources, which use DB1B data, because Defendants' expert, Dr. Hill, used DB1B data. Opp. 6-7. But Mr. Tatos does not know whether these data are reliable. And Dr. Hill used DB1B data to conduct multiple independent analyses which he explained and extrapolated from in his 101-page expert report. Mr. Tatos's seven-page report, on the other hand, fails to conduct any analysis of the data, formulas, methodologies, or findings in the non-peer-reviewed sources that, according to Mr. Tatos, establish

that the Spirit Effect exists—even though he had the underlying DB1B data to do so. Dr. Hill's analyses using DB1B data do not excuse Mr. Tatos from engaging in independent analysis.

**Second**, Plaintiffs state it is appropriate for Mr. Tatos to simply read articles about the Spirit Effect (rather than perform independent analysis) because it is so "widely acknowledged."[1] According to Plaintiffs, Mr. Tatos did not do any verification or standalone analysis because he has no obligation to "reinvent the wheel." Opp. at 6. This, of course, does not meet basic *Daubert* principles. *Grimes v. Hoffmann–LaRoche, Inc.*, 907 F. Supp. 33, 38 (D.N.H. 1995) ("[A]n expert cannot establish that a fact is generally accepted merely by saying so."); *see Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993) ("[I]n order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation. . . . In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability.").

**Third**, Plaintiffs claim that "JetBlue relied on this very same [MIT] study," Opp. at 5, "in its pamphlet . . . to tout . . . the JetBlue Effect," such that Mr. Tatos could rely on the article without standalone analysis. Declaration of Elizabeth M. Wright in Support of Reply ("Wright Reply Decl."), Ex. 3 (Tatos Dep. Tr. 78:22-25). Again, Plaintiffs agree Mr. Tatos did nothing to verify the article's methodologies or findings, and they simply disregard the fundamental differences between a non-litigation pamphlet used for marketing (which is how it was used by JetBlue), and

---

[1] Wright Decl. Ex. 2 (Tatos Dep. Tr. 39:11-40:4) ("A. When I talk about the Spirit effect, I rely on the literature which is documented the Spirit effect. Q. What literature did you rely on? A. So, again, there's – there's literature in I think it's – it's – it's – as – as I mentioned, one of the documents in which I relied on was – was – was – that I reference is – was Dr. Singer's report, and he talks – and I understand in his report he talks about – he references various literature that discusses the methodologies, the Bachman – I'm sorry, the Bachwich and Wittman paper, I think there's a paper by Brad Shrago, and so on. Q. Are there any other pieces of literature that you relied on in ascertaining the Spirit effect? A. Certainly the one you just pulled up. Q. The Hopper article? A. Yes. Q. Any other pieces of literature? A. Not that I directly relied upon.")

the Court's gatekeeping function to ensure an expert's analysis meets the scientific rigors of Fed. R. Evid. 702. *Daubert*, 509 U.S. at 592-93 (expert opinions must be "scientifically valid").

***Fourth and finally***, Plaintiffs argue that Mr. Tatos is entitled to rely on Dr. Singer's list of affected routes without conducting his own analysis because, in their view, Defendants would have faulted Mr. Tatos for conducting independent route analysis separate and apart from Dr. Singer. Opp. at 7 ("Mr. Tatos relies on Dr. Singer's analysis for route calculations . . . . Had Mr. Tatos presented another calculation of routes Defendants would have claimed that such analysis was indeed duplicative; in this case, Mr. Tatos did not."). But it is the Federal Rules, not Defendants, that require Mr. Tatos to conduct an independent, reliable analysis separate and apart from Dr. Singer. *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 2019 WL 5310220, at *3 n.5 (D. Del. Oct. 21, 2019) ("Merely to have partisan experts appear to vouch for previous experts violates Fed. R. Evid. 403 and would needlessly present cumulative evidence, waste time, and mislead the jury.") (quotation marks and citation omitted). One expert cannot simply piggyback off the work of another absent additional independent analysis.

Plaintiffs then point to Mr. Tatos's "analysis of Plaintiffs' itineraries" as an example of his standalone economic work. Opp. at 7. But this so-called "analysis"—Exhibit 3 of Mr. Tatos's Report—is merely a chart listing the routes Plaintiffs flew in the past (often incorrectly[2]) based on their discovery responses and sorting those flights into categories ***derived entirely from Dr.***

---

[2] Mr. Tatos's chart of Plaintiffs' itineraries is filled with errors. By way of example, Mr. Tatos says Marazzo flew Spirit four times, but Marazzo testified he has never flown Spirit before. Wright Reply Decl. Ex. 4 (Marazzo Dep. Tr. 44:10-12). Mr. Tatos also says Brown flew JetBlue from "RNO to LGA" and "LGA to RNO," but Brown testified that she flew to and from Long Beach (LGB), not LaGuardia (LGA). Wright Reply Decl. Ex. 5 (Brown Dep. Tr. 73:23-74:16). And Mr. Tatos says McCarthy flew JetBlue twice between RSW-EWR, contrary to her verified discovery responses and sworn deposition testimony. Wright Reply Decl. Ex. 6 (McCarthy Dep. Tr. 72:22-73:23). These are but a few examples of Mr. Tatos's errors. In other words, Mr. Tatos's "analysis" contains demonstrably false information, which further speaks to the unreliability of his opinions.

***Singer's report***.  Dkt. 256-4, Declaration of Josephine Alioto ("Alioto Decl.), Ex. 2 (Tatos Report Ex. 3).  Plaintiffs admit that Mr. Tatos conducted no independent work to ascertain these affected routes, let alone any "specialized economic analysis that would assist a fact-finder in interpreting the record evidence." *AngioDynamics, Inc. v. C.R. Bard, Inc.*, 537 F. Supp. 3d 273, 333 (N.D.N.Y. 2021); *In re Elec. Books*, 2014 WL 1282298, at *12 (S.D.N.Y. Mar. 28, 2014) (excluding expert who "present[ed] a collection of facts in a pseudo-scientific way"); *Anderson News*, at *4 (excluding expert who "refer[red] to record evidence" without "actual analysis," as such testimony "merely [recites] what is on the face" of produced documents) (cleaned up).

## C.  Mr. Tatos's Remaining Opinions Are Unreliable

Defendants' Motion further establishes that Mr. Tatos's opinions are unreliable because they:  (1) ignore wide discrepancies in competitive dynamics between airlines and on different routes; (2) create a valueless apples-to-oranges comparison between JetBlue's full cabin of fares and Spirit's lowest unbundled fares, excluding Spirit's high average ancillary fees per customer; and (3) presume "it is simply true that the reverse Spirit effect *exists*," without empirical analysis or verification.  Opp. at 10.  These omissions, individually and collectively, render Mr. Tatos's remaining opinions unreliable and unscientific.  *Daubert* 509 U.S. at 594-95 (the "overarching subject [of Fed. R. Evid. 702] is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission" and "the focus, of course, must be solely on principles and methodology").  Plaintiffs ask the Court to disregard its gatekeeping role under Fed. R. Evid. 702 and presume Mr. Tatos's reliability without question, citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  Opp. at 7.  But *Kumho Tire Co.* stands for the exact opposite rule:  "[A] trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony."  526 U.S. at 152.

### 1.     Mr. Tatos's Average Fare Comparison Is Unreliable

Although Plaintiffs insist that "Mr. Tatos's opinions are firmly rooted in the facts of this case [and] consider the necessary variables," there is no dispute that Mr. Tatos ignored route-level competition and, indeed, Plaintiffs expressly admit his average fare comparison "does not include all of [Spirit's] ancillary fees."  Opp. at 9; *see Smith v. Jenkins*, 732 F.3d 51, 68 (1st Cir. 2013) (expert opinion inadmissible for failure to consider a "crucial variable").  Spirit's average ancillary fees are a "crucial variable" necessary to accurately compare fares differences, *id.*, but Mr. Tatos never measures such fees.[3]  Plaintiffs' defense is that Mr. Tatos "took a similar approach to JetBlue," citing Derek Klinka's testimony.  Opp. at 9.  But Mr. Klinka is a fact witness, not an economics expert subject to Fed. R. Evid. 702, and he further testified that any fare comparison between airlines "depends on the markets and routes" and myriad other factors—all of which Mr. Tatos failed to consider.  Alioto Decl. Ex. 4 (Klinka Dep. Tr. 54:11-12); *see* Wright Decl. Ex. 2 (Tatos Dep. Tr. 120:9-10)  ("I didn't calculate [] a fare differential on a route by route basis.").

### 2.     Mr. Tatos's Reverse Spirit Effect Formula Is Unreliable

Plaintiffs tell the Court it should just presume the Spirit Effect exists and that Plaintiffs need not quantify it overall or on any particular route.  Opp. at 10.  But they are silent as to why Mr. Tatos then provided a formula that requires quantification of the Spirit Effect to function.  And they have no answer to Mr. Tatos's statements that the burden is on the factfinder to calculate the Spirit Effect:  "I don't do an independent analysis of the Spirit effect . . . that's something for the

---

[3] Wright Decl. Ex. 2 at 50:22-51:11 ("Q. Does your report independently calculate the size of the ancillary charges that are not incorporated in that data? A. . . . I don't break out specifically the ancillary fees. Q. On average do you know how many dollars in ancillary fees a Spirit customer pays? A. Are you referring to a Spirit customer's – just a Spirit customer that pays an ancillary fee or across all Spirit customers? Q. Let's start with the first category. A. I don't have the data to – to – to determine, you know, how much that – that additional ancillary fee any individual would pay.").

factfinder to determine."  Wright Decl. Ex. 2 (Tatos Dep. Tr. 40:12-21); *id.* at 69:12-13 (Mr. Tatos places the burden on "the fact-finder [to] determine what the actual Spirit effect is").

To conclude that the Spirit Effect exists, Mr. Tatos would need to quantitatively measure **changes** in fares by each airline before and after Spirit's entry on a given route.  *McGovern ex rel. McGovern v. Brigham & Women's Hosp.*, 584 F. Supp. 2d 418, 424 (D. Mass. 2008) (Young, J.) (asking "whether an expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field'") (quoting *Kumho Tire*, 526 U.S. at 152).  In lieu of any analysis, Plaintiffs rely on Mr. Tatos's say-so.  In Plaintiffs' own words, the Court must accept that "it is simply true that the reverse Spirit effect *exists*."  Opp. at 10.  That, of course, is insufficient.  *McGovern*, at 424 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.") (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

## CONCLUSION

For the foregoing reasons, JetBlue and Spirit respectfully submit that Mr. Tatos's opinions and testimony must be excluded as unreliable pursuant to Fed. R. Evid. 702.

Dated:  October 2, 2023

Respectfully submitted,

*/s/ Elizabeth M. Wright*
Zachary R. Hafer (MA BBO #569389)
Elizabeth M. Wright (MA BBO #569387)
Zachary Sisko (MA BBO #705883)
Cooley LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Tel: 617-937-2300
zhafer@cooley.com
ewright@cooley.com
zsisko@cooley.com

Ethan Glass (*Pro Hac Vice*)
Dee Bansal (*Pro Hac Vice*)
Matt K. Nguyen (*Pro Hac Vice*)

Cooley LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 2004-2400
Tel: 202-842-7800
Fax: 202-842-7899
eglass@cooley.com
dbansal@cooley.com
mnguyen@cooley.com

*Attorneys for Defendant*
*JetBlue Airways Corporation*


*/s/ Samuel N. Rudman*
Samuel N. Rudman (MA BBO #698018)
Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
Telephone: +1 617 248 4034
srudman@choate.com

*/s/ Andrew C. Finch*
Andrew C. Finch (*Pro Hac Vice*)
Eyitayo St. Matthew-Daniel (*Pro Hac Vice*)
Jay Cohen (*Pro Hac Vice*)
Kate Wald (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: 212-373-3000
Fax: 212-757-3990
afinch@paulweiss.com
tstmatthewdaniel@paulweiss.com
jcohen@paulweiss.com
kwald@paulweiss.com

Meredith R. Dearborn (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel: 628-432-5100
Fax: 628-232-3101
mdearborn@paulweiss.com

*Attorneys for Defendant Spirit Airlines, Inc.*

-8-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Defendants' Reply Memorandum in Support of Motion *in Limine* to Exclude Expert Opinions and Testimony of Ted P. Tatos was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record registered on the CM/ECF system, on October 2, 2023.

<u>*/s/ Elizabeth M. Wright*</u>
Elizabeth M. Wright

291724933