UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GABRIEL GARAVANIAN, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC., <br><br> *Defendants*, | Civil Action No. 1:23-cv-10678-WGY |

**DEFENDANTS JETBLUE AIRWAYS CORPORATION'S AND SPIRIT AIRLINES, INC.'S REPLY IN SUPPORT OF THEIR MOTION IN LIMINE TO EXCLUDE CERTAIN DOCUMENTS**

Plaintiffs' opposition ("Opp.") mischaracterizes the evidence at issue as well as the relevant rules and caselaw, and it provides no reason why the Court should not grant Defendants' motion *in limine* ("MIL") to exclude the Proxy Fight Evidence. As set out in Defendants' moving brief, the Proxy Fight Evidence is composed of documents and statements expressing Spirit's opinions, expressed between April and July of 2022, while Spirit and JetBlue (and, separately, Spirit and Frontier) were negotiating the terms of a potential merger, concerning the likelihood of regulatory or judicial approval of a JetBlue merger. In the context of that protracted and contentious process—and at a time when the Department of Justice ("DOJ") was actively litigating against JetBlue concerning a separate alliance with American Airlines (the "NEA")—Spirit predicted that the DOJ might object if JetBlue acquired Spirit. Those statements by Spirit's management and board are excludable because they are legal conclusions and opinions that go to the ultimate issue to be decided by the Court at trial: whether the merger of Spirit and JetBlue contemplated by the July 28, 2022 merger agreement will substantially lessen competition in

1

relevant markets. Spirit's early handicapping of the legal hurdles facing JetBlue will not assist the Court's task, the prerequisite to the admission of an opinion under FRE 701 and 704. That is especially true here because the deal terms changed over time—particularly with respect to steps to be taken by JetBlue to obtain regulatory approval—and the alliance with American, which informed the opinions expressed by Spirit, has been terminated.

Ignoring all of this, Plaintiffs argue that the Proxy Fight Evidence is "directly relevant" rather than collateral, misconstruing the context in which the statements at issue were made: a proxy fight where Spirit expressed concerns about how regulators or a court would view a Spirit-JetBlue merger given the then-existence of the NEA, and during which it sought to persuade JetBlue to make additional commitments (reflected in the July 28, 2022 merger agreement, which was signed after the time of the Proxy Fight Evidence) to obtain regulatory approval. Admission of that evidence will necessarily require Defendants to spend trial time focusing on the negotiation history of the regulatory covenants of the July 28, 2022 merger—and their debate about the role of the now-abandoned NEA—time that is better spent addressing the core issue to be decided: whether Plaintiffs can meet their burden of demonstrating that the combination of the sixth and seventh largest airlines in the United States—which together will have a combined market share far below of each of the Big Four airlines—will substantially lessen competition.

Plaintiffs argue that the Proxy Fight Evidence is admissible because party admissions are not subject to "rules covering opinion evidence." They are wrong. As much of the relevant caselaw makes clear, FRE 801(d)(2) merely provides an exception to the hearsay rule for party admissions. It does not provide a free pass to ignore the remainder of the Rules. And the reason why Plaintiffs seek to misconstrue FRE 801(d)(2) is clear: they have no answer to Defendants' argument that the materials comprising the Proxy Fight Evidence, focused on whether interim

Case 1:23-cv-10678-WGY   Document 300   Filed 10/02/23   Page 3 of 15

offers by JetBlue to acquire Spirit would pass regulatory and judicial muster, are indisputably expressions of opinion that will not help the Court in determining whether the agreement that was ultimately signed will substantially lessen competition. None of the caselaw Plaintiffs cite support the notion that party admissions are somehow exempt from the remainder of the Rules of Evidence. The Court should grant Defendants' motion.

I. **ARGUMENT**

　　A. **ADMISSION OF THE PROXY FIGHT EVIDENCE WOULD LEAD TO MINITRIALS OVER NEGOTATIONS THAT ARE NO LONGER RELEVANT**

Plaintiffs (disproportionately) emphasize the "rigorous review" purportedly underlying the Proxy Fight Evidence and argue that it should be admitted because its context is supposedly "directly relevant evidence" to the present dispute. (Opp. at 2.) This framing misses the point, namely that the introduction of documents and testimony comprising the Proxy Fight Evidence would require Defendants to review for the Court the extensive history of negotiations that are *no longer relevant*: those between Spirit and JetBlue before they entered into the July 28, 2022 merger agreement, including the back-and-forth between Spirit and JetBlue on regulatory concessions necessary to get Spirit comfortable that the transaction should go forward. Despite Plaintiffs' posturing to the contrary, such an exercise would be a waste of the Court's time. The issue that the Court must decide is whether the deal that the parties struck will lead to a substantial lessening of competition. The extensive negotiating history—and Spirit's predictions about what regulatory concessions would assist in securing regulatory approval of a deal—will not assist the Court in passing on the lawfulness of this merger.

　　In arguing that the Proxy Fight Evidence is "highly relevant" because it contains Spirit's "contemporaneous and well-investigated admissions," Plaintiffs conflate parties' *predictions* regarding a given merger with their *intent*. (Opp. at 8–9.) That statements contained in the Proxy

3

Fight Evidence may qualify as party admissions is of no moment since they go to ultimate issues and legal conclusions (*see infra* Section 1(B)), but moreover, Plaintiffs' reliance on such cases as *Brown Shoe Co.* v. *United States*, 370 U.S. 294 (1962) regarding "purpose of the merging parties" is completely misguided. (*See* Opp. at 9.)  Contrary to Plaintiffs' gambit, materials evincing parties' *intent* as opposed to merely *predictive* statements regarding a potential transaction are entirely different forms of evidence, a fact that courts in merger cases have explicitly acknowledged.  For example, in *United States* v. *AT & T Inc.*, even "despite the Government's efforts to paint a contrary picture," the court held that prior statements that did not contain "direct, probative evidence of anticompetitive intent" were of little probative value. 310 F. Supp. 3d 161, 210 (D.D.C. 2018), *aff'd sub nom. United States* v. *AT&T, Inc.*, 916 F.3d 1029 (D.C. Cir. 2019).  In fact, that court found that "evidence indicating defendants' recognition that it could be possible to act in accordance with the Government's theories of harm" was "a far cry from evidence that the merged company is likely to do so." *Id.*  Spirit's opinions contained in the Proxy Fight Evidence make no determination as to any anticompetitive effects of this merger, but rather focus on predictions as to how the DOJ could view the 2022 deal and highlighting to shareholders the potential delay resulting from legal scrutiny surrounding it.[1]

Plaintiffs cite a series of inapposite Title VII cases dealing with evidence of patterns of past discrimination and/or discriminatory motive for the broad proposition that evidence should be admitted where its probative value exceeds the risk of creating time-wasting mini-trials. (*See*

---

[1]   While Plaintiffs' discussion of "purpose" and "motive" is misplaced to begin with (*see* Opp. at 2, 9, 14), their citation to *Morrison* v. *Murray Biscuit Co.* is especially puzzling, as the Seventh Circuit there found in favor of the defendant-appellees in the plaintiff-appellants' conspiracy lawsuit, noting that "antitrust liability should not turn on a court's guess as to which motive may have predominated." 797 F.2d 1430, 1440 (7th Cir. 1986). In *United States* v. *Visa U.S.A., Inc.*, the "admitted, anticompetitive purpose" was in the "[t]he contemporaneous evidence show[ing] that defendants' motives [were] to restrict competition at the network and issuer levels to enhance member bank profitability," a scenario bearing zero resemblance to the current dispute regarding Spirit's statements of opinion included in the Proxy Fight Evidence. 163 F. Supp. 2d 322, 400 (S.D.N.Y. 2001).

4

Opp. at 10–11.)  In fact, these Title VII cases have no bearing on issues relating to the admissibility of the Proxy Fight Evidence.

Plaintiffs' lengthy recitation of the Proxy Fight Evidence and their skewed analysis of supposed similarities between JetBlue's 2022 hostile tender offer and the transaction before the Court (*see* Opp. at 3–9) also underscore the time-wasting sideshow that admission of the Proxy Fight Evidence will create.  It will require Defendants to discuss the negotiation of divestitures and other regulatory commitments made by JetBlue over the course of protracted negotiations prior to the execution of the merger agreement.  None of that evidence will assist the Court in its determination of whether the transaction passes muster under Section 7 of the Clayton Act.[2]

Finally, Plaintiffs suggest that FRE 403 should not be applied to the Proxy Fight Evidence because this is a bench trial. (*See* MIL Opp. at 8).  Plaintiffs misread the caselaw, as evidence may be excluded, in proper circumstances, under FRE 403 in a bench trial: "[e]xcluding relevant evidence in a bench trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power" under FRE 403.  *Gulf States Utilities Co.* v. *Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981).  Plaintiffs also misconstrue that court's comment regarding judges "exclud[ing] improper inferences," which pertained to undue prejudice, not cumulative or time-wasting evidence.  *See id.*  The circumstances here—wasting the Court's time on the negotiating history of the JetBlue/Spirit transaction—call for the exercise of such discretion by the Court, and the exclusion of the Proxy Fight Evidence under FRE 403.

---

[2] *Thompson* v. *City of Chicago* is clearly distinguishable in terms of the amount of time that stands to be wasted.  There, counsel for certain witnesses "indicated that [their testimony] would take a 'half day' at most,'" and there was no "serious suggestion that the testimony of [those] witnesses would be a waste of time . . . Instead, the district court precluded these witnesses from testifying based on a *generalized* concern that admitting this evidence would entail time-consuming 'mini-trials.'" 722 F.3d 963, 974 (7th Cir. 2013) (emphasis added).

5

### B. THE STATEMENTS AT ISSUE ARE INADMISSIBLE OPINIONS UNDER RULE 701 AND 704

Plaintiffs argue that neither FRE 701 nor 704 applies to party admissions. (Opp. 2, 11–14.) That is also wrong. The exception to the hearsay rule is just that: an exception that allows otherwise inadmissible hearsay to come into evidence, despite the ordinary requirement that bars out-of-court statements offered for the truth of the matter asserted. Fed. R. Evid. 801(c), (d). Relying on a handful of thinly reasoned cases from outside of the First Circuit, Plaintiffs ignore the caselaw holding that "party admissions 'still must comply with other evidence rules.'" *Bartlett* v. *Mut. Pharm. Co.*, No. 08-CV-358-JL, 2010 WL 3156555, at *5 (D.N.H. July 26, 2010) (excluding lay opinion under FRE 403 "[e]ven assuming *arguendo*" it was a party admission). There is nothing in FRE 801(d)(2) that exempts party admissions from the requirement that they otherwise be admissible under the Federal Rules of Evidence. As one district court has put it, "Rule 801(d)(2) does not . . . trump all other Rules of Evidence." *Nowell* v. *City of Cincinnati*, No. 1:03CV859, 2006 WL 2619846, at *6 (S.D. Ohio Sept. 12, 2006).

As a result, opinion testimony, even if it is a party admission, still must meet the requirements of FRE 701 and 704. While there is no controlling First Circuit decision on point, relevant caselaw so holds. In *Middleby Corp.* v. *Hussmann Corp.*, which Plaintiffs cite, the court rejected "the notion that Rule 701 is inapplicable to party admissions," noting that "when the legal principle is highly technical or the party assents to a characterization solely regarding an abstract issue of law, Rule 701 may still operate to exclude the evidence." No. 90 C 2744, 1993 WL 151290, at *3 (N.D. Ill. May 7, 1993); *see also Eagleston* v. *Guido*, 41 F.3d 865, 873 (2d Cir. 1994) (police commissioner's view on the constitutionality of a non-arrest policy was not admissible as a party admission because it constituted a legal conclusion concerning an ultimate issue in the case); *Becton* v. *Starbucks Corp.*, 491 F. Supp. 2d 737, 742 (S.D. Ohio 2007) (cafe

manager's statement that coffee cups and lids that spilled on a customer must have been defective was an inadmissible legal conclusion, even though the statement would otherwise be acceptable as a party admission); *Evangelista* v. *Inlandboatmen's Union of Pac.*, 777 F.2d 1390, 1398 (9th Cir. 1985) (holding that party witness's opinion as to the correct construction of a collective bargaining agreement was "an inadmissible legal conclusion," noting FRE 701's helpfulness requirement and FRE 704's Advisory Committee comment that FRE 701 "affords ample [assurance] against the admission of opinions which would merely tell the jury what result to reach. . . . [and] also stand[s] ready to exclude opinions phrased in terms of inadequately explored legal criteria"); *Torres* v. *Cnty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985). In short, "that legal opinions may constitute party admissions does not change the [ultimate issue] analysis." *Bensen* v. *Am. Ultramar Ltd.*, No. 92CIV.4420(KMW)(NRB), 1996 WL 422262, at *13 (S.D.N.Y. July 29, 1996) (citing *Middleby*, 1993 WL 151290, at *3 ("Rule 701 may . . . operate to exclude" party admissions)).

Plaintiffs rely on a handful of inapposite cases, but they do not and should not compel the Court to conclude that party admissions bypass the Rules of Evidence. First, Plaintiffs rely on *Jordan* v. *Binns*, 712 F.3d 1123, 1128 (7th Cir. 2013) for the proposition that "[a]dmissions of a party opponent . . . are not subject to exclusion under rules covering opinion evidence." (Opp. at 2, 12.) That is incorrect. The evidentiary dispute in *Jordan* concerned statements alleged to have been "merely repeated" by a party opponent, and for that reason the court noted that "[b]ecause trustworthiness is not the touchstone for admissibility of party admissions, they are not subject to the personal-knowledge requirement of FRE 602 . . . or the restrictions of the opinion rule of FRE 701." *Id.* Read in context, "the restrictions of the opinion rule of FRE 701" clearly refer to FRE 701's requirement that testimony be "rationally based on the witness's

7

perception," similar to the personal-knowledge requirement of FRE 602. Fed. R. Evid. 701. Were there any doubt—and there is not—*Middleby* dispels it: there, the court soundly rejected "the notion that Rule 701 is inapplicable to party admissions." 1993 WL 151290, at *3.[3]

Plaintiffs then cite *Life Plans, Inc.* v. *Sec. Life of Denver Ins. Co.*, 2017 WL 106109, at *1 (N.D. Ill. Jan. 11, 2017). Without elaboration, that unpublished case found that certain unidentified statements that contained "mixed questions of fact and law" and were "relevant to the ultimate issue" were admissible under FRE 801(d)(2). Setting aside that lack of reasoning, the opinions here are not so anodyne; they contain ultimate-issue legal conclusions that will not assist the Court in passing on the lawfulness of the proposed merger. Courts distinguish between party admissions which are merely relevant to ultimate issues and those which outright tell the trier of fact how to decide the case. *See, e.g.*, *Chao* v. *Tyson Foods, Inc.*, No. 2:02-CV-1174-VEH, 2009 WL 10687776, at *3 (N.D. Ala. Jan. 17, 2009) (distinguishing between "evidence . . . allowed as a party admission [when] introduced to prove facts . . . from which the court drew legal conclusions" and party admissions which themselves amount to legal conclusions in holding that "[i]t would be inappropriate for [the defendant] to offer legal materials to the jury that attempt to effectively preempt a decision the jury must make or to preempt this Court's duty to instruct the jury on the applicable law").[4] Plaintiffs further rely on *MCI Commc'ns Corp.* v.

---

[3] *Palmer* v. *Cognizant Tech. Sols. Corp.* found that the risk of prejudice stemming from certain party-admission letters containing legal conclusions in EEOC determination letters *outweighed* the probative value of those conclusions, holding "that the two sentences finding a violation of the statute, rather than merely reasonable cause, must be redacted." No. CV176848DMGPLAX, 2023 WL 4155403, at *5 (C.D. Cal. June 1, 2023).

[4] *Bakst* v. *Cmty. Mem'l Health Sys., Inc.* held "that party admissions are not subject to the personal perception requirement of Rule 701," not that they are exempt from FRE 701 altogether. No. CV0908241MMMFFMX, 2011 WL 13214315, at *43 (C.D. Cal. Mar. 7, 2011). Moreover, unlike here, *Bakst* did not entail any evidence going to legal conclusions and/or ultimate issues. The same is true for *Foster* v. *Comm'r of Internal Revenue*, where the court had no need to conduct such analysis in the portion Plaintiffs cite, but acknowledged in another section that "it is clear that the abolition of the ultimate issue rule in Fed. R. Evid. 704 does not render admissible every expression of opinion; rather, opinion testimony must still be 'helpful' under Fed. R. Evid. 701." 80 T.C. 34, 136 (1983), *aff'd in part and vacated in part sub nom. Foster* v. *Comm'r*, 756 F.2d 1430 (9th Cir. 1985).

*Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1143 (7th Cir. 1983) and *Pekelis* v. *Transcon. & W. Air, Inc.*, 187 F.2d 122, 129 (2d Cir. 1951) to argue that party admissions are particularly insulated from "opinion rules" where they were "contemporaneously prepared by a corporate agent and relied on by the corporation." (Opp. at 13.) Once again, that is incorrect, because those cases involved no ultimate issues or legal conclusions. Plaintiffs also briefly gesture toward *In re: Gen. Motors LLC* for its citation to *Pekelis*, but that case clearly noted "that 'Rule 701 . . . may operate to *exclude*' party admissions." No. 14-MD-2543 (JMF), 2015 WL 8578945, at *3 n.2 (S.D.N.Y. Dec. 9, 2015) (quoting *Middleby*, 1993 WL 151290, at *3) (emphasis added)).

Plaintiffs' reliance on an excerpt from the 1972 Advisory Committee Notes to FRE 801 fares no better. The full Note reads, "The freedom which admissions have enjoyed from technical demands of searching for an assurance of *truthworthiness* in some against-interest circumstance, and from the restrictive influences of the opinion rule and the *rule requiring firsthand knowledge*, when taken with the apparently prevalent satisfaction with the results, calls for generous treatment of this avenue to admissibility." Fed. R. Evid. 801, Advisory Comm. Notes (1972) (emphasis added). As the complete text makes clear, the Note provides no basis for courts to disregard FRE 701 or 704 in determining the admissibility of party admissions.[5]

As Defendants showed in their moving brief, the Proxy Fight Evidence contains a number of statements concerning Spirit's opinions of how the DOJ might assess a JetBlue/Spirit combination, particularly in light of the then-existing NEA litigation. (MIL at 6–7.) It predicted that the DOJ would not approve the acquisition "while DOJ is suing to block the NEA," GP0121

---

[5]   Plaintiffs cite *Washington Pub. Power Supply Sys.* v. *Pittsburgh-Des Moines Corp.*, 876 F.2d 690, 697 (9th Cir. 1989) to argue that "the 'legal opinion rule'" does not apply to party admissions. Providing little to no insight into the lower court's reasoning, that court noted that the trial court had "reviewed the disputed statements in the depositions, ruling on their admissibility line by line. It permitted testimony only as to what the negotiators believed were [the defendant's] obligations based upon their state of mind at that time," excluding other party admissions, and the Ninth Circuit simply affirmed the trial court's findings. *Id.*

at 8, accurately forecasted a protracted legal fight, GP149 at 6, and highlighted for shareholders what Spirit perceived as a risk of potential delay due to an extended regulatory and legal process. GP0145 at 2.

Plaintiffs do not contest that these statements are opinions that go to the ultimate issue to be decided by the Court, or that they "merely tell the [Court] what result to reach." Fed. R. Evid. 2011 Adv. Comm. Note to Rule 704 ("The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day."). What Spirit thought at a point in time prior to the conclusion of its negotiations with JetBlue about the prospects of antitrust clearance for a merger—or its predictions about how a court might react to such a deal—is exactly the kind of opinion evidence on the ultimate issue that should be excluded. It makes little difference what Spirit thought during the course of its negotiations with JetBlue. The task for the Court, Defendants respectfully submit, is to determine whether Plaintiffs can discharge their burden of proving that the merger agreement the parties actually signed on July 28, 2022 passes muster under Section 7 of the Clayton Act. *See, e.g.*, *United States v. Meises*, 645 F.3d 5, 16 (1st Cir. 2011) (recognizing that opinion on ultimate issues and/or legal conclusions is seldom helpful to the trier of fact).

Finally, Plaintiffs argue that "many of the Spirit statements at issue are not 'in the form of an opinion" and thus not subject to the requirements of Rule 701. (Opp. at 11–12). If Plaintiffs are arguing that the focus of the Proxy Fight Evidence is something other than Spirit's opinion on the regulatory reaction, that is simply not true. In the Amended Complaint, Plaintiffs

10

reproduced—and will no doubt attempt to introduce at trial—a slide entitled "Shareholders Should Think about the Conversation with Regulators," which, the Amended Complaint alleges, shows that "Spirit itself . . . has forcefully predicted the ineluctable negative anticompetitive effects of merging with JetBlue." (Dkt. 1, ¶ 71.) The principal reason why Plaintiffs seek to admit this evidence is to put before the Court Spirit's then-prevailing view of the antitrust risks of the deal, not to introduce facts concerning the impact of the transaction on airline competition. That will be the subject of extensive testimony by Plaintiffs' expert witnesses, and Plaintiffs have no need to rely on inadmissible Proxy Fight Evidence purporting to go to the same issues. *See, e.g.*, *United States* v. *Sanabria*, 645 F.3d 505, 516 (1st Cir. 2011); *United States* v. *Vazquez-Rivera*, 665 F.3d 351, 358 (1st Cir. 2011); *Meises*, 645 F.3d at 16.

## II.     CONCLUSION

For the foregoing reasons, Spirit and JetBlue respectfully request that the Court exclude the Proxy Fight Evidence.

11

Dated: October 2, 2023                    Respectfully submitted,

/s/ Samuel N. Rudman
Samuel N. Rudman (MA BBO #698018)
Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
Tel: 617-248-4034
srudman@choate.com

Andrew C. Finch (*Pro Hac Vice*)
Eyitayo St. Matthew-Daniel (*Pro Hac Vice*)
Jay Cohen (*Pro Hac Vice*)
Jared P. Nagley (*Pro Hac Vice*)
Kate Wald (*Pro Hac Vice*)
Jackson Yates (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: 212-373-3000
Fax: 212-757-3990
afinch@paulweiss.com
tstmatthewdaniel@paulweiss.com
jcohen@paulweiss.com
jnagley@paulweiss.com
kwald@paulweiss.com

Meredith R. Dearborn (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel: 628-432-5100
Fax: 628-232-3101
mdearborn@paulweiss.com

*Attorneys for Defendant*
*Spirit Airlines, Inc.*

Elizabeth M. Wright (MA BBO #569387)
Zachary R. Hafer (MA BBO #569389)
Cooley LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Tel: 617-937-2300
ewright@cooley.com
zhafer@cooley.com

Ethan Glass (*Pro Hac Vice*)
Deepti Bansal (*Pro Hac Vice*)
Matt K. Nguyen (*Pro Hac Vice*)
Cooley LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 2004-2400
Tel: 202-842-7800
Fax: 202-842-7899
eglass@cooley.com
dbansal@cooley.com

Beatriz Mejia (*Pro Hac Vice*)
Cooley LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Tel: 415-693-2000
Fax: 415-693-2222
bmejia@cooley.com

Joyce Rodriguez-Luna (*Pro Hac Vice*)
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
Tel: 212 479 6895
Fax: 2124796275
jrodriguez-luna@cooley.com

Ryan A. Shores (*Pro Hac Vice*)
David I. Gelfand (*Pro Hac Vice*)
Daniel P. Culley (*Pro Hac Vice*)
Cleary Gottlieb Steen & Hamilton, LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Tel: 202-974-1500
rshores@cgsh.com
dgelfand@cgsh.com
dculley@cgsh.com

Michael Mitchell (*Pro Hac Vice*)
Brian Hauser (*Pro Hac Vice*)
Shearman & Sterling LLP
401 9th Street, N.W., Suite 800
Washington, DC 20004
Tel: 202-508-8005
Fax: 202-661-7480
ryan.shores@shearman.com

michael.mitchell@shearman.com
brian.hauser@shearman.com

Richard F. Schwed (*Pro Hac Vice*)
Jessica K. Delbaum (*Pro Hac Vice*)
Leila Siddiky (*Pro Hac Vice*)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
Tel: 212-848-4000
Fax: 212-848-7179
rschwed@shearman.com
jessica.delbaum@shearman.com
leila.siddiky@shearman.com

Rachel Mossman Zieminski (*Pro Hac Vice*)
Shearman & Sterling LLP
2601 Olive Street, 17th Floor
Dallas, TX 75201
Tel: 214-271-5385
rachel.zieminski@shearman.com

*Attorneys for Defendant JetBlue Airways Corporation*

## CERTIFICATE OF SERVICE

I, Samuel N. Rudman, hereby certify that on October 2, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record registered on the CM/ECF system.

DATED this 2nd day of October, 2023.

*/s/ Samuel N. Rudman*
Samuel N. Rudman