```
 1                UNITED STATES DISTRICT COURT

 2                DISTRICT OF MASSACHUSETTS (Boston)

 3                              No. 1:23-cv-10678-WGY

 4

 5   GABRIEL GARAVANIAN, et al,
              Plaintiffs
 6

 7   vs.

 8

 9   JETBLUE AIRWAYS CORPORATION, et al,
              Defendants
10

11
                         *********
12

13              For Hearing Before:
               Judge William G. Young
14

15                 Motion Hearing

16
                 United States District Court
17               District of Massachusetts (Boston)
                 One Courthouse Way
18               Boston, Massachusetts 02210
                 Wednesday, October 4, 2023
19

20                      *******

21

22         REPORTER: RICHARD H. ROMANOW, RPR
                 Official Court Reporter
23            United States District Court
       One Courthouse Way, Room 5510, Boston, MA 02210
24              bulldog@richromanow.com

25
```

```
 1                     A P P E A R A N C E S

 2


 3   JOSEPH MICHELANGELO ALIOTO, JR., ESQ.
     JOSEPHINE M. ALIOTO, SR., ESQ.
 4      Alioto Legal
        100 Pine Street, Suite 1250
 5      San Francisco, CA 94111
        (415) 398-3800
 6      Email: Joseph@aliotolegal.com
    and
 7   SCOTT GREGORY HERRMAN, ESQ.
        Larson, LLP
 8      900 17th Street NW
        Suite 320
 9      Washington, DC 20006
        (202) 795-4900
10      Email: Gherrman@larsonllp.com
        For Plaintiffs
11

12   ETHAN GLASS, ESQ.
     ELIZABETH M. WRIGHT, ESQ.
13      Cooley LLP - Library
        1299 Pennsylvania Avenue, NW
14      Suite 700
        Washington, DC 20004
15      (202) 776-2244
        Email: Eglass@cooley.com
16      For Defendant Jet Blue Airways Corporation

17


18   JAY COHEN, ESQ.
     ANDREW  C. FINCH, ESQ.
19      Paul Weiss, Rifkind, Wharton & Garrison, LLP
        1285 Avenue of the Americas
20      New York, NY 10019-6064
        (212) 373-3000
21      Email: Jaycohen@paulweiss.com
        For Defendant Spirit Airlines, Inc.
22


23


24


25
```

```
 1            P R O C E E D I N G S
 2            (Begins, 2:20 p.m.)
 3            THE CLERK:  Now hearing Civil Matter 23-10678,
 4   Garavanian versus JetBlue Airways.
 5            THE COURT:  Would counsel introduce themselves.
 6            MR. ALIOTO:  Good afternoon, your Honor, Joseph M.
 7   Alioto, Jr. on behalf of the plaintiffs.  I'm
 8   accompanied by my distinguished co-counsel Joseph M.
 9   Alioto, Senior.  Also Greg Herrman from the Larson Law
10   Firm.  And, your Honor, I'd like to introduce to you the
11   named plaintiff in this case, Mr. Gabriel Garavanian.
12            THE COURT:  Good afternoon to all of you.
13            MR. GLASS:  Good afternoon, your Honor, Ethan
14   Glass on behalf of JetBlue, and with me is my colleague,
15   Beth Wright.
16            MR. COHEN:  Good afternoon, your Honor, Jay Cohen
17   on behalf of defendant Spirit, with my colleague, Andrew
18   Finch.
19            THE COURT:  And good afternoon to you.
20            There's three motions.  The first motion is the,
21   um, JetBlue's motion for summary judgment on the ground
22   that the plaintiffs do not have Article III standing,
23   and I will take that up first.  If we get by that, we've
24   got the plaintiffs' motions for summary judgment.
25   However that's resolved or taken under advisement, we
```

1  have JetBlue's motion for sanctions if they're still
2  requesting that.  That's the order in which we'll go.
3         All right.  The motion, um -- I think this is the
4  best way to tee it up.  As I've prepared for this, I
5  think there's much to be said for JetBlue's motion that
6  your clients, Mr. Garavanian and the others, really
7  don't have Article III standing here, under *TransUnion*,
8  under *Valley Forge*, because the injury that you've
9  alleged is common to really all Americans.  I'll hear
10 you.
11        MR. ALIOTO:  Thank you, your Honor.  Let me begin
12 by saying that at trial, in order for the plaintiffs to
13 win an injunction, they will be required to show that
14 there is a significant threat of injury, and the reason
15 that that's important is because if they can show a
16 significant threat in the future to a merger that
17 violates Section 7, that is enough, in and of itself, to
18 win an injunction.  The reason I bring it up is because
19 it's important to recognize that all that's required is
20 a threat, it needs to be a significant threat, but it's
21 a threat.
22        THE COURT:  It needs to be particularized, doesn't
23 it?
24        MR. ALIOTO:  It does indeed.  And because it's a
25 threat, there's no requirement that the plaintiffs show

1   that actual damage will occur in the future.  Of course
2   it would be impossible to do that in any event.
3   Now on this motion for summary judgment, the question is
4   whether or not there is a factual dispute as to whether
5   the plaintiffs are threatened with harm?  Now here's why
6   the plaintiffs are threatened with harm.
7   Every one of the plaintiffs, the 24 plaintiffs in this
8   case, fly the routes that will be impacted by this
9   merger.  There are 24 plaintiffs, there are
10  approximately 600 or 700 routes that will be impacted by
11  this merger, and that is a number that was derived from
12  the plaintiffs' expert, who we intend to put on the
13  stand at trial.
14  Now of these 700 routes, about half of those, roughly
15  300 of those routes, are direct head-to-head competition
16  routes where Spirit and JetBlue compete head to head and
17  they're --
18       THE COURT:  The record as I see it, after they've
19  done discovery here, is that none of your clients have
20  any plans to fly Spirit.
21       MR. ALIOTO:  Well, your Honor, um, first of all,
22  they do have plans to fly Spirit, there are 18
23  plaintiffs that we've identified in our opposition brief
24  who have plans and fly Spirit regularly.
25       THE COURT:  They didn't on deposition?

1      MR. ALIOTO:  Yes, they did, your Honor.  I'll give
2 you one example.  Here is Mr. Garavanian who's here in
3 the courtroom, he lives in Boston, flies down to Myrtle
4 Beach 3 or 4 times every year, and he owns property down
5 in Myrtle Breach.  He actually travels to Myrtle Beach
6 from Boston so frequently that he has a part-time job in
7 Myrtle Beach.  He flies Spirit every single time.  Now
8 just this morning Mr. Garavanian flew here to Boston to
9 attend this hearing flying Spirit.
10      Now the deposition testimony of Mr. Garavanian was
11 that he flies Spirit a lot obviously.  This is his quote
12 and it's in -- I believe it's Paragraph 98 and 99 of our
13 separate statement of material facts, where
14 Mr. Garavanian stated in deposition, "I fly Spirit quite
15 a lot, obviously."
16      Now the defendants asked him during the
17 deposition, "Do you have any booked flights on Spirit as
18 of this moment?" which would have been sometime in June,
19 and he said, "No, I do not, I don't have a booked
20 flight."  But he travels back and forth from Boston to
21 Florida so often that it's clear and plain that he will
22 continue to do that, and that's a fact, as demonstrated
23 by this morning, that's what he does, he practically
24 commutes down to Myrtle Beach from Boston.
25      So the idea, your Honor -- and I'll give you an

1   example of this.  I had no plans to fly at about
2   September 11 or so, just a couple of weeks ago, I had no
3   plans to fly anywhere.  But your Honor issued an order
4   setting this hearing for October 4 and the very next day
5   I suddenly now have an intention that I'd be flying to
6   Boston.  I still didn't have a flight booked until about
7   a week ago.
8         What I'm getting at is, just because there are
9   questions asked -- and the defendants outlined this in
10  their own reply brief, just because there are questions
11  asked at deposition, "Do you have a booked flight?" does
12  not mean that these plaintiffs don't repeatedly and fly
13  these routes regularly.  There's a lot of examples of
14  these that are provided for in Paragraphs 39 through 194
15  of the separate statement.
16        THE COURT:  Thank you.
17        MR. ALIOTO:  So I dispute the idea that these
18  plaintiffs are not going to suffer imminent harm as a
19  result of this merger.
20        Now I've cited some case law where "imminence" is
21  a, I believe the term is a "flexible concept," and the
22  purpose of that being flexible is to ensure that there's
23  Article III standing, but it's not so remote that the
24  Court doesn't have jurisdiction based on the Article III
25  standing.  This is not that situation.  Every plaintiff

1      in this case flies or has flown in the recent past or
2      has indicated an intention to fly on the -- on one or
3      more of the 700 routes that we've identified.
4              THE COURT:  An intention to fly on one or more of
5      700 routes.
6              MR. ALIOTO:  Yes.
7              Now let me break this down, if I might, unless the
8      Court has another question about this, otherwise I'll --
9      let me break it down for the Court.
10             Of those 24, approximately 10 of them fly routes
11     that are so -- will be so highly concentrated after this
12     merger that that concentration level, in and of itself,
13     is sufficient to presume the merger is unlawful.  That
14     means that those folks, regardless of what airplane they
15     fly, if they fly those routes, because of that
16     concentration, that is going to destroy competition in
17     that market and increase prices, reduce availability,
18     reduce choice, for every consumer regardless of what
19     airline they fly.
20             Now an additional 19 of the plaintiffs fly what we
21     or our expert have defined as the "Spirit-only routes."
22     This is important, this is one of the routes that I'm
23     talking about for Mr. Garavanian.  The "Spirit-only"
24     route refers to a route where Spirit flies on the route
25     and the only other airlines on the route are large

1     legacy carriers, like United or Delta or American
2     Airlines, and there's no other ultra low-cost carrier to
3     discipline prices or to keep prices down.  As a result,
4     Spirit plays a very important role in these particular
5     markets.  The elimination of Spirit from these markets
6     will increase prices of every airline in that market by
7     a significant percentage, which I've included in my
8     brief which I will not say in open court, but it's a
9     significant percentage of increase in prices of every
10    flight within that route.
11         THE COURT:  Thank you.
12         All right, what do you say?
13         MR. GLASS:  Good afternoon, your Honor, Ethan
14    Glass on behalf of JetBlue.
15         Your Honor had it exactly right.  The plaintiffs
16    are saying that literally every single person in the
17    United States would have standing to --
18         THE COURT:  No, but he answered that, you see?  I
19    do start off -- that's the dialogue, and he has -- we've
20    got Mr. Garavanian here, he commutes on Spirit.
21         MR. GLASS:  Even Mr. Garavanian.  So that is the
22    only person who even comes close.  And you heard from
23    counsel, 700 routes.
24         THE COURT:  He only needs 1.
25         MR. GLASS:  Well -- but Mr. Garavanian does not

1   have standing, he does not have a concrete,
2   particularized, actual, and imminent injury.  And
3   standing's hard, as your Honor knows, particularly for
4   injunctive relief, standing is incredibly hard.  And
5   your Honor cited 2 of the 3 cases that I think make this
6   so easy.
7          One is *Valley Forge*.  And the Court -- the Supreme
8   Court in *Valley Forge* even said, and I'm quoting, that
9   "The assumption that if respondents have no standing to
10  sue, no one would have standing, is not a reason to find
11  standing."  And so even where the Court finding no
12  standing would result in no one having standing, that is
13  still sufficient to dismiss a case.
14         THE COURT:  I've read the cases, most of the
15  cases.
16         MR. GLASS:  And here we have the United States,
17  which is bringing the same case seeking the same relief,
18  that is going to protect Mr. Garavanian and anybody like
19  him if they prevail.
20         Second, your Honor, the cases in both *TransUnion*,
21  and I'll also add *Clapper*, had very similar situations.
22  *TransUnion*, as your Honor will recall, were credit
23  files, those credit files had errors in there that were
24  produced, and the Supreme Court made a distinction, the
25  people who brought a case based on past damages had

1  standing, but the injunctive relief the Supreme Court
2  said there's no standing.  And that's for the same
3  reasons why there's no standing here, which is that some
4  expectation that somewhere down the line something may
5  harm you is not enough to get federal court
6  jurisdiction.
7       I mean *Clapper,* it was the same.  It was, as your
8  Honor might recall, that surveillance statute that was
9  challenged.  It went up to the Supreme Court.  And the
10 Supreme Court noted that the case was brought on the day
11 the surveillance statute became effective, and nobody
12 had sufficient concrete particulars, actual imminent
13 standing, um, harm, to bring a case in the United States
14 federal court.
15      This case was brought before the Department of
16 Justice case.  This is a classic example where the
17 plaintiffs cannot articulate how they will be injured in
18 a concrete, particularized, and imminent way, and that's
19 why this case should be dismissed and left for the
20 Department of Justice, which represents the people of
21 the United States, to litigate this matter.
22      THE COURT:  All right.  Here's what we're going to
23 do.
24      I'm taking the matter under advisement.  I will
25 tell you, I'm disposed to grant the motion for summary

1    judgment, but the argument of counsel has given me pause
2    at least as to some of these plaintiffs, and I need to
3    reflect on that.  So I try to be transparent and I am
4    taking it under advisement.
5         It's appropriate therefore -- of course I've got
6    to take now the motion, their motion for summary
7    judgment under advisement as well, and, um, you can be
8    sure that I will, but I'm going to hear the Garavanian
9    plaintiffs.  And so let's turn to that motion.
10        How -- how can you get summary judgment on this
11   complex antitrust case in light of the Supreme Court's
12   jurisprudence in ***Reeves vs. Sanderson Plumbing***, you bear
13   the burden of proof?  On summary judgment I have to take
14   everything against you and they don't admit that they
15   violate the law.  I'll hear you.
16        MR. ALIOTO:  Your Honor, I must disclose to you
17   that we prepared and spent a large amount of time
18   preparing a summary judgment that we had every intention
19   of filing.  This motion was oversized and it included
20   material that was to be filed under seal or to be
21   impounded.  We sought leave of court to file an
22   oversized brief and we sought leave of court to file the
23   motion under seal and the Court denied those motions.
24   As a result, we did not file our motion for summary
25   judgment.

1        Now having said that, I will tell you, and as I
2   mentioned in the opposition brief to the defendants'
3   motion for summary judgment, that the evidence in this
4   case is very -- this is a very specific and unusual
5   merger case for the strength of the direct evidence of
6   anticompetitive effects.  I'm not going to talk about
7   the specific details of the evidence --
8        THE COURT:  Well if there's no motion before me,
9   I'm not reaching out for it.
10       (Laughter.)
11       MR. ALIOTO:  If the Court would like, we would be
12  more than happy to refile that motion.
13       THE COURT:  I'm not inviting it nor accusing it,
14  I'm taking the matter I have under advisement.
15       There's the motion for sanctions.  Um, I've
16  determined -- and I don't intend to hold a hearing on
17  this, but I've determined that the two cases will not be
18  consolidated for trial.  That being so and having
19  decided to go forward on the case of the Department of
20  Justice first, it seems to me we don't really need to
21  pursue the motions for sanctions, do we?
22       (Laughter.)
23       MR. GLASS:  Your Honor, Ethan Glass for JetBlue.
24  We do not.
25       THE COURT:  Thank you.

Case 1:23-cv-10678-WGY   Document 314   Filed 10/18/23   Page 14 of 15

14

1          All right, I'll take the matter under advisement.
2     We'll stand in recess.
3              (Ends, 2:35 p.m.)

C E R T I F I C A T E

I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do hereby certify that the foregoing record is a true and accurate transcription of my stenographic notes before Judge William G. Young, on Wednesday, October 4, 2023, to the best of my skill and ability.

/s/ Richard H. Romanow 10-18-23
_____
RICHARD H. ROMANOW    Date