UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GABRIEL GARAVANIAN, *et al.*,<br><br>       *Plaintiffs*,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC.,<br><br>       *Defendants*. | Civil Action No.: 1:23-cv-10678-WGY |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

APPLICABLE LAW ............................................................................................................2

UNDISPUTED FACTS ........................................................................................................3

ARGUMENT ........................................................................................................................9

    I.    The Court's Decision in the DOJ Case Has Collateral Estoppel Effect Here ..................................................................................................................9

    II.   It is Undisputed That Plaintiffs G. Garavanian and Nieboer Have Standing and Are "Threatened with Loss or Damage" by the Proposed Merger ..................11

CONCLUSION ....................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................................2

*Depianti v. Jan-Pro Franchising Int'l, Inc.*,
    39 F. Supp. 3d 112 (D. Mass. 2014) .....................................................................................10

*Emich Motors Corp. v. Gen. Motors Corp.*,
    340 U.S. 558 (1951) ................................................................................................................3

*Enica v. Principi*,
    544 F.3d 328 (1st Cir. 2008) ................................................................................................3, 9

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) ........................................................................................................ *passim*

*In re: Relafen Antitrust Litig.*,
    360 F.Supp.2d 166 ..............................................................................................................2, 11

**Federal Statutes**

15 U.S.C.
    § 16(a) .....................................................................................................................................3
    § 26 ..................................................................................................................................11, 13

Clayton Act
    § 5 ............................................................................................................................................3
    § 7, 15 U.S.C. § 18 .....................................................................................................1, 3, 5, 11

**Other Authorities**

Fed. R. Civ. P. 56 ............................................................................................................................2

## INTRODUCTION

After the trial in *United States of America et al v. JetBlue Airways Corporation et al*, 1:23CV10511 (the "DOJ Case"), this Court found that the proposed merger of JetBlue Airways Corp. ("JetBlue") and Spirit Airlines, Inc. ("Spirit") was anticompetitive, and it issued an injunction blocking the merger. DOJ Case, Dkt. 461 (hereinafter "DOJ Decision"). Because the issues in the DOJ Case were identical to those in this case, and were fully and fairly litigated in the DOJ Case, the DOJ Decision has a collateral estoppel effect in this case. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327-333 (1979).

On November 3, 2022, Plaintiffs filed their Complaint in the Northern District of California seeking to enjoin the proposed merger between Defendants JetBlue and Spirit because it was anticompetitive under section 7 of the Clayton Act, 15 U.S.C. § 18. Dkt. 1. Four months later, on March 7, 2023, the United States filed a Complaint in the District of Massachusetts also seeking to enjoin the proposed merger because it was anticompetitive under 15 U.S.C. § 18. DOJ Case, Dkt. 1. Defendants repeatedly advised the Court that the issues in these two cases were the same, and the Court relied on these representations to, for example, consolidate the cases for discovery.

The only issue in this case not formally resolved by the DOJ Decision is whether the Plaintiffs have standing. The Court, however, has already addressed that issue as well. In denying Defendants' motion for summary judgment that challenged Plaintiffs' standing, the Court expressly found that "Plaintiffs G. Garavanian and Nieboer **have standing** because they are 'the type of person the law intends to protect against the harm of which [they] complain.'" Dkt. 338 at 6 (emphasis added) (quoting *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 408 (1st Cir. 1985). Even if the Court concludes it has not already issued a decision

1

concluding plaintiffs have standing, summary judgment should still be granted because the record clearly shows there are no remaining genuine disputes of material fact as to that issue.

## APPLICABLE LAW

Pursuant to Fed. R. Civ. P. 56, courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court may grant a motion for summary judgment "only if the record 'construed in the light most favorable to the party opposing summary judgment,' reveals no genuine issue of material fact." *In re: Relafen Antitrust Litig.*, 360 F.Supp.2d 166, 117 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261 n. 2 (1986)). "The party seeking summary judgment must first make a preliminary showing that there are no issues worthy of trial." *In re: Relafen Antitrust Litig.*, 360 F.Supp.2d at 177 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 300 (1986)). "Upon such a showing, the burden of production shifts to the nonmovant, who must identify specific evidence demonstrating a genuine issue of material fact." *In re: Relafen Antitrust Litig.*, 360 F.Supp.2d at 177 (citing *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

Unlike the burden of production, the ultimate burden of persuasion remains on the moving party, and this burden is a "stringent one." *In re: Relafen Antitrust Litig.*, 360 F.Supp.2d at 177 (citing *Celotex*, 477 U.S. at 330). "Summary judgment should not be granted unless it is clear that a trial is unnecessary, and any doubt as to the existence of a genuine issue for trial should be resolved against the moving party." *Id*.

Collateral estoppel, or issue preclusion, bars a party from relitigating issues decided against them in a prior case where (1) "the issue to be precluded is the same as that disputed in a prior proceeding," (2) "the issue was actually litigated in the earlier proceeding," (3) "the issue was determined by a valid and binding final judgment or order," and (4) "the determination of

the issue in the prior proceeding was essential to the final judgment or order." *Enica v. Principi*, 544 F.3d 328, 337 (1st Cir. 2008). Unlike claim preclusion, issue preclusion does not require mutuality of parties and may be applied against a defendant based on a final decision in a prior lawsuit brought by a different plaintiff. *Parklane*, 439 U.S. at 331. Such "offensive collateral estoppel" is appropriate where a plaintiff could not "easily have joined in the earlier action" or where the application of offensive estoppel would not "be unfair to a defendant." *Id.*

Section 5 of the Clayton Act expressly imposes no limitations on the application of collateral estoppel based on prior antitrust cases brought by the United States. 15 U.S.C. § 16(a) ("Nothing contained in this section shall be construed to impose any limitation on the application of collateral estoppel."). With Section 5, "Congress intended to confer, subject only to a defendant's enjoyment of its day in court against a new party, as large an advantage as the estoppel doctrine would afford had the Government brought suit." *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568 (1951).

## UNDISPUTED FACTS

On November 3, 2022, Plaintiffs filed a Complaint seeking to enjoin the proposed merger between Defendants JetBlue and Spirit because it violated Section 7 of the Clayton Act, 15 U.S.C. § 18. Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment ("SUMF") ¶ 1. Four months later, on March 7, 2023, the United States filed a Complaint seeking to enjoin the proposed merger based on the same violation. SUMF ¶ 2.

There is no dispute that the antitrust issues in the DOJ Case and this case are the same. Defendants have repeatedly argued:

> March 16, 2023, Joint Stipulation to Transfer (Dkt. 33): The DOJ Case involves
> "the same transaction challenged in this case." SUMF ¶ 3.

3

<ul>
<li>March 30, 2023, Motion to Relate Case with DOJ Case (Dkt. 39): Both cases "involve the same or substantially similar issues of fact," "seek the same relief" and "arise out of the same occurrence, transaction or property: the proposed JetBlue-Spirit merger."  SUMF ¶ 4.</li>

<li>April 24, 2023, Proposed Schedule and Case Management Order (Dkt. 76):  The two cases, "at their core, are based on the same transaction and will entail, to significant degree, the same discovery." SUMF ¶ 5.</li>

<li>May 5, 2023, Opposition to Proposed Discovery Orders Submitted by DOJ and Plaintiffs (Dkt. 90):  "DOJ's proposal [of separate trial dates] ignores the reality that the cases are nearly identical, and would require the Court to hold two independent trials for cases that involve nearly identical evidence and claims under the same law. Nothing could be more inefficient or burdensome for the Court, witnesses, and the Defendants."  SUMF ¶ 6.</li>

<li>August 8, 2023, Memorandum in Support of Motion to Strike Plaintiffs' Summary Judgment Motion (Dkt. 178):  Arguing that the Court should not consider Plaintiffs' Summary Judgment Motion because the DOJ trial "will fully litigate whether this merger is consistent with the antitrust laws."  SUMF ¶ 7.</li>

<li>October 4, 2023 Hearing:  Counsel for JetBlue:  "And here we have the United States, which is bringing the same case seeking the same relief, that is going to protect Mr. Garavanian and anybody like him if they prevail." SUMF ¶ 8.</li>
</ul>

The Court generally agreed that the cases had common issues, granted Defendants' Motion to Relate the Cases (Dkt. 39), and ordered discovery consolidated. (Dkt. 96).

On August 1, 2023, Defendants filed a motion for summary judgment against all 24 original plaintiffs asserting they lacked Article III standing. Dkt. 173. Plaintiffs opposed the

motion and a hearing was conducted on October 4, 2023. Dkt. 184, 309. At the hearing, when JetBlue argued that Plaintiff Garavanian "is the only person who even comes close" to having standing, the Court replied: "He only needs 1." Herrman Dec.[1] Ex. 10 at 9:24.

On October 11, 2023, the Court denied Defendants' summary judgment motion as to Plaintiffs Gabriel Garavanian and Timothy Nieboer. Dkt. 310. The Court concluded, "G. Garavanian and Nieboer both fly Spirit Airlines ('Spirit') regularly;" therefore, "[e]ach has standing to bring antitrust claims because they are 'the type of person[s] the law intends to protect against the harm of which [they] complain.'" Dkt. 310 at 2 (quoting *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 408 (1st Cir. 1985)).

On December 13, 2023, the Court issued a Memorandum of Decision expanding on its earlier order. Dkt. 338 ("Decision on Standing"). In reviewing the record, the Court found that "[i]n the past eight years, Nieboer has flown 25 times, with 57% of those flights on Spirit Airlines," and that "Garavanian flies Spirit about four times a year, traveling mostly between Boston and his second home in Myrtle Beach, FL." Dkt. 338 at 4. The Court found that "both Plaintiffs G. Garavanian and Nieboer fly Spirit Airlines regularly," remarking as to Garavanian that he has "[flown] 8 times with Spirit in the last year alone." *Id.* at 9. Based on these findings, the Court reiterated its prior conclusion that "Plaintiffs G. Garavanian and Nieboer have standing because they are 'the type of person the law intends to protect against the harm of which [they] complain.'" Dkt. 338 at 6 (quoting *Cia Petrolera Caribe*, 754 F.2d at 408).

Following a trial in the DOJ Case, the Court issued detailed Findings of Fact and Conclusions of Law, which found that the proposed merger violated Section 7 of the Clayton

---

[1] Declaration of Scott Gregory Herrman in Support of Plaintiffs' Motion for Summary Judgment (hereinafter "Herrman Dec.").

5

Act. DOJ Case, Dkt. 461. Specifically, the Court found that the merger would result in anticompetitive effects in routes flown by Spirit. *Id.* at 73, 105-07. As to those consumers who would be harmed by the merger, the Court concluded: "Throughout the trial, the Government invoked the experience of the average Spirit customer," for example, "a large Boston family planning a vacation to Miami that can only afford the trip at Spirit's prices. It is this large category of consumers, those who must rely on Spirit, that this merger would harm; the Defendant Airlines, though exceedingly well-represented, simply cannot demonstrate that these consumers would avoid harm." *Id*. at 105-106. The Court concluded by stating: "To those dedicated customers of Spirit, this one's for you." *Id.* at 109.

Plaintiffs Gabriel Garavanian and Timothy Nieboer are those dedicted customers of Spirit. Garavanian's primary residence is in Boston, but since purchasing a condominium in Myrtle Beach, South Carolina in 2020, he now flies between those cities about four times per year. SUMF ¶¶ 11, 15. Between June 2020 and January 2024, Garavanian has flown Spirit between Boston and Myrtle Beach 24 times over that 44 month period, equating to one Spirit flight every 1.8 months or every 7 weeks on average. SUMF ¶ 16. Every time Garavanian has flown from Boston to Myrtle Beach since purchasing his condo there, he has flown Spirit. SUMF ¶ 33. He has flown Spirit between Myrtle Beach and Boston 10 times in the last 10 months alone. SUMF ¶¶ 24-28. His most recent flight on Spirit was January 30, 2024, a month before the filing of this document. SUMF ¶ 28. As Garavanian aptly stated at his June 2023 deposition, "I fly on, you know, Spirit, a lot, obviously." SUMF ¶ 30.

Garavanian intends to continue to fly Spirit between Myrtle Beach and Boston and expects to do so in the Spring and Summer of this year, but like most airline passengers, he will not purchase his tickets until about 3 to 4 weeks in advance of the flight. SUMF ¶¶ 29.

Historically, Garavanian purchases his tickets an average of 22 days before the flight's departure date. SUMF ¶¶ 31-32.

Garavanian flies Spirit because of the low prices, and he will not spend money on comfort or convenience items; he "just wants to go from point A to point B at the price Spirit has." SUMF ¶¶ 34-36. Everytime Garavanian has flown Spirit, it has been the least expensive choice. SUMF ¶ 35.

In December 2022, Garavanian planned to fly home to Boston to be with family over Christmas, but when Spirit flights were unavailable from Myrtle Beach during that time, prices went from $180 round trip to $750 round trip, preventing Garavanian from returning to Boston over the holidays. SUMF ¶¶ 37-39. With flights still suspended as of January 12, 2023, Garavanian had to drive the roughly 13 hours to Boston because the cost of flights had skyrocketed with Spirit not operating. *Id*.

Garavanian has worked in the travel agency industry for 35 of the past 38 years. SUMF ¶ 40. Through his own experiences, he has directly observed how the decrease in competition on routes has increased prices and eliminated consumer choice. SUMF ¶¶ 42.

Plaintiff Timothy Nieboer resides in Clarkstown, Michigan and most frequently flies out of Detroit Metro airport. SUMF ¶¶ 47-48. The price of airfare is the most important factor for Nieboer when he is choosing between flight options. SUMF ¶ 51 ("Q. If price isn't an option, would you prefer to fly other airlines? A. To me, price has always been the option …."). He is willing to forego comfort to fly inexpensively. SUMF ¶ 52 ("I guess [Spirit's] aren't the best seats in the world of the most – best legroom, but they're the most economical to fly.").

Nieboer regularly flies Spirit. In fact, Nieboer flies Spirit "a lot" because Spirit is "always the most economical" and he flies "barebones." SUMF ¶ 54. In the past ten years, two-thirds of

7

all his flights have been on Spirit. SUMF ¶ 56. Since 2014, he has flown 27 times, 17 times on Spirit. *Id*.

Nieboer regularly travels from Detroit to three places. First, he travels annually for vacation to a timeshare he purchased in Fort Lauderdale in 2018. SUMF ¶¶ 59-60. Since that time, he has flown a total of 12 times between the two locations, 8 of which were on Spirit. SUMF ¶ 61. His most recent Spirit flight to Fort Lauderdale was a few days ago, on February 13, 2024. SUMF ¶ 60.

Nieboer and his wife also travel regularly to St. Petersburg, Florida, where their daughter moved in September 2022. SUMF ¶¶ 62-70. So far, Nieboer and his wife (he pays for his wife's tickets) have flown the route a combined four times in the past two months, flying Spirit each time. SUMF ¶¶ 4-5. Based on Nieboer's experience, the most economical route between Detroit and St. Petersburg has been to fly Spirit into Tampa, which is just outside of St. Petersburg. SUMF ¶ 5. When Nieboer retires in May 2024, he and his wife will travel to St. Petersburg between two and four times a year. SUMF ¶ 70. They will fly Spirit if it is the most economical, which it historically has been in Nieboer's experience. *Id*.

Nieboer travels annually to his time share in Hilton Head Island, South Carolina. In 2018 and 2019, he flew Spirit into Atlanta and Jacksonville and drove the remaining 4 hours and 2.5 hours to Hilton Head, respectively. SUMF ¶¶ 71-74.

Defendants do not dispute that Garavanian flies Spirit; they admit that fact. SUMF ¶ 80. Defendants do not dispute that Nieboer flies Spirit; they admit that fact. SUMF ¶ 81.

# ARGUMENT

## I. THE COURT'S DECISION IN THE DOJ CASE HAS COLLATERAL ESTOPPEL EFFECT HERE

There is no dispute that Defendants had a full and fair opportunity to litigate in the DOJ Case whether the proposed merger was anticompetitive. The elements of collateral estoppel are therefore met with regard to the DOJ Decision: (1) "the issue to be precluded is the same as that disputed in [the DOJ Case]," (2) "the issue was actually litigated in the [DOJ Case]," (3) "the issue was determined by a valid and binding final judgment or order," and (4) "the determination of the issue in the [DOJ Case] was essential to the final judgment or order." *Enica v. Principi*, 544 F.3d 328, 337 (1st Cir. 2008). Further, Plaintiffs' could not have "easily joined" the DOJ trial at least because their attempt to join the trial was denied. Moreover, the application of offensive estoppel here would not be unfair to Defendants who have already fully and fairly litigated those issues decided in the DOJ Case. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979). For these reasons, the DOJ Decision should be given collateral estoppel effect in this case.

There can be no dispute that the Court's decision in the DOJ Case decided ***the identical*** issue in this case: whether the proposed JetBlue-Spirit merger is anticompetitive. That is the issued decided in the DOJ Decision, and is the only claim in Plaintiffs' Complaint in this case. Dkt. 1 at 25. Defendants have admitted that the issues are identical in both cases. *See, e.g.*, SUMF ¶ 8 (counsel for JetBlue arguing: "And here we have the United States, which is bringing the same case seeking the same relief, that is going to protect Mr. Garavanian and anybody like him if they prevail."); SUMF ¶¶ 3-7.

There can also be no dispute that this identical issue – whether the proposed merger is anticompetitive – was litigated in the DOJ case. This Court's 113-page decision in the DOJ case

9

came after four weeks of trial and hundreds of pages of post-trial briefing, and included detailed factual findings and conclusions of law on which its decision was based.

There can further be no dispute that this common issue "was determined by a valid and binding final judgment or order." Shortly after the DOJ Decision, the Court issued final judgment in the DOJ Case. DOJ Case, Dkt. 463. That the Defendants have appealed the Court's decision is immaterial – under the Federal law, "a trial court judgment is final and has preclusive effect regardless of the fact that it is on appeal." *Depianti v. Jan-Pro Franchising Int'l, Inc.*, 39 F. Supp. 3d 112, 125-126 (D. Mass. 2014) (internal quotations omitted). And the Court's decision was certainly "essential" to the final judgment, which issued the day after, and expressly references, the DOJ Decision. DOJ Case, Dkt. 463.

There can also be no dispute that Plaintiffs could not have joined the DOJ trial, "easily" or otherwise. Plaintiffs tried to join the DOJ trial, moving to consolidate the trial in this case with the trial in the DOJ Case. Dkt. 266-267. But that motion was vigorously opposed by Defendants *and* by the DOJ (Dkt. 294, 302), and the Court ultimately denied Plaintiffs' motion (Dkt. 309).

Similarly, Defendants cannot argue that applying collateral estoppel would be unfair. This is not a situation where the "defendant in the first action is sued for small or nominal damages" and may therefore "have little incentive to defend vigorously, particularly if future suits are not foreseeable." *Parklane*, 439 U.S. at 330. Here, the Defendants had as much incentive to "defend vigorously" in the DOJ Case as in this case because both cases sought the same remedy: to enjoin the proposed merger. In fact, the present case was filed *before* the DOJ Case, eliminating any concern that this case was unforeseeable. This is also not a case where the DOJ Decision is inconsistent with any previous judgments. *Parklane*, 439 U.S. at 330.

This case also does not "afford[] the defendant procedural opportunities unavailable in the [DOJ Case] that could readily cause a different result." *Parklane*, 439 U.S. at 331. Both cases involve the same causes of action seeking the same remedy in the same forum. In *Parklane*, the Supreme Court found that applying collateral estoppel would not be unfair despite slightly different cases – the first case involved a bench trial in equity and the second case involved a jury trial for damages. *Id.* at 332. Not even those benign differences exist here.

Because Defendants fully and fairly litigated whether the proposed merger was anticompetitive in the DOJ Case, the DOJ Decision has collateral estoppel effect on this case, and summary judgment should be granted on the issue that the proposed merger violates Section 7 of the Clayton Act for the same reasons that the Court enjoined the merger in the DOJ Case.

## II. It is Undisputed That Plaintiffs G. Garavanian and Nieboer Have Standing and Are "Threatened with Loss or Damage" by the Proposed Merger

Plaintiffs recognize they have a high burden to prevail on summary judgment when they bear the ultimate burden of persuasion at trial, but that high standard is easily met here. All the triable issues have already been decided by the Court and admitted by Defendants. The record "reveals [that] no genuine issue of material fact" exists, so "there are no issues worthy of trial." *In re Relafen Antitrust Litig.*, 360 F.Supp.2d at 177. To win an injunction, all Plaintiffs are required to do is show they are *threatened* with harm. 15 U.S.C. § 26 ("Any person … shall be entitled to sue for and have injunctive relief … against threatened loss or damage by a violation of the antitrust laws").

First, the Court has already concluded that "Garavanian and Nieboer … [e]ach has standing to bring an antitrust claim." Dkt 310 at 2. While that ruling was issued in a different procedural posture in which the Plaintiffs resisted summary judgment, the undisputable nature of the facts has not changed.

11

In the Decision on Standing, the Court reviewed the record and found that "[i]n the past eight years, Nieboer has flown 25 times, with 57% of those flights on Spirit Airlines," and "Garavanian flies Spirit about four times a year, traveling mostly between Boston and his second home in Myrtle Beach, FL." Dkt. 338 at 4. The Court remarked that "Garavanian [has flown] 8 times with Spirit in the last year alone." *Id*. at 9. Based on this evidence, the Court concluded that "Plaintiffs G. Garavanian and Nieboer have standing because they are 'the type of person[s] the law intends to protect against the harm of which [they] complain.'" *Id.* at 6 (quoting *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 408 (1st Cir. 1985)); *see also* Dkt. 310 at 2 ("Each has standing to bring an antitrust claim.").

The undisputed facts confirm this Court's conclusion. During the last summary judgment briefing, Defendants already admitted that Garavanian regularly flies Spirit. SUMF ¶ 80. He has flown Spirit 24 times since he began flying Spirit in June 2020, less than four years ago. SUMF ¶ 16. In fact, during that time period, he has flown Spirit *exclusively* between Boston and Myrtle Beach. SUMF ¶¶ 15-28, 56 . He has flown Spirit 10 times in the past 10 months. SUMF ¶¶ 24-28. Since his June 2023 deposition, Garavanian has flown Spirit between Myrtle Beach and Boston 6 times – most recently in January 2024. SUMF ¶¶ 25-28. As Mr. Garavanian testified, "I fly on, you know, Spirit, a lot, obviously." SUMF ¶ 30. And, as the Court accurately described it at the October 4, 2023 hearing: "we've got Mr. Garavanian here, he commutes on Spirit." Herrman Dec. Ex. 10 at 9:19-20.

Nieboer is also a regular Spirit flyer, and Defendants have admitted that Nieboer has flown Spirit four times since 2018. SUMF ¶ 81. Two-thirds of Nieboer's flights over the past decade have been on Spirit. He has flown a total of 27 times over the past ten years, and 17 of

12

those flights (or 63%) were on Spirit. SUMF ¶ 56. He flew Spirit from Detroit to Florida last month (on February 13, 2024) and returned home the next week on Spirit. SUMF ¶ 56.

Both of the Plaintiffs' main routes discussed above (Boston-Myrtle Beach and Detroit-Fort Lauderdale) have been identified as among the relevant city-pair routes in which Plaintiffs were, prior to this Court's imjunction, "threatened with loss or damage" by the proposed merger. SUMF ¶¶ 84-85; 15 U.S.C. § 26.

Plaintiffs' undisputed testimony is also direct evidence of the anticompetitive impact the merger's elimination of Spirit would have on routes regularly traveled by Plaintiffs and the threatened loss or harm to them.

In December 2022, Garavanian had to forego returning home to Boston for Christmas because Spirit flights were temporarily unavailable, which sent prices skyrocketing from $180 rountrip to $750. SUMF ¶ 37. Unable to afford flying home, Garavanian remained in Myrtle Beach for the holidays and ultimately drove 13+ hours to Boston in mid-January. SUMF ¶¶ 38-39. As this evidence clearly shows, Spirit's elimination by this anticompetitive merger threatens substantial damage and injury to Garavanian, monetray and otherwise, that the antitrust laws are intended to prevent, and dictating real and significant changes in his and his family's lives.

Undisputed evidence shows that Nieboer "definitely prefers to fly," but, for him, the price of airfare is the most important factor. SUMF ¶¶ 51-53. When the cost of air travel is too high, Nieboer will be unable to fly, forced to drive up to 14 hours to his vacation destinations. *Id*. Spirit's elimination by this anticompetitive merger threatens substantial damage and injury to Nieboer of the kind that the antitrust laws are intended to prevent,

In the DOJ Decision, this Court noted that the Government "invoked the experience of the average Spirit consumer," such as "a large Boston family planning a vacation to Miami that

13

can only afford the trip at Spirit's prices." Case No. 23-cv-10511-WGY, Dkt. 461 at 105. "It is this large category of consumers, those who must <u>rely</u> on Spirit," the Court wrote, "that this merger would harm." *Id*. 105-106. While the Government may have invoked these American experiences in broader hypothetical terms, Garavanian and Nieboer are their embodiment. At the end of its decision, when this Court addressed those "dedicated customers of Spirit" and declared that "this one's for you," *id.* at 109, it could well have been speaking directly about Garavanian and Nieboer. It is they for whom this Court enjoined the merger.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court grant their motion and enter judgment in their favor.

Dated: March 1, 2024

*/s/ Scott Gregory Herrman*
Scott Gregory Herrman (DC Bar No. 983114)
LARSON LLP
900 17th Street NW, Suite 320
Washington, DC 20006
Tel: (202) 795-4900
Fax: (202) 795-4888
Email:gherrman@larsonllp.com
(*Admitted Pro Hac Vice*)

Stephen G. Larson (CA State Bar No. 145225)
Robert F. Ruyak, (DC Bar No. 233304
LARSON LLP
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Tel: (213) 436-4888
Fax: (213) 623-2000
Email:slarson@larsonllp.com
Email:rruyak@larsonllp.com
(*Admitted Pro Hac Vice*)

Joseph M. Alioto, Jr. (CA State Bar No. 215544)
ALIOTO LEGAL
100 Pine Street
Suite 1250
San Francisco, CA 94111
Tel.: 415-398-3800
Email: joseph@aliotolegal.com
(*Admitted Pro Hac Vice*)

Joseph M. Alioto (CA State Bar No. 42680)
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104
Telephone: (415) 434-8900
Email:  jmalioto@aliotolaw.com
(*Admitted pro hac vice*)
Josephine Alioto (CA State Bar No. 282989)
THE VEEN FIRM
20 Haight Street
San Francisco, CA 94102
Telephone: (415) 673-4800
Email: j.alioto@veenfirm.com
(*Admitted pro hac vice*)

Lawrence G. Papale (CA State Bar No. 67068)
LAW OFFICES OF LAWRENCE G. PAPALE
The Cornerstone Building
1308 Main Street, Suite 117
St. Helena, California 94574
Telephone: (707) 963-1704
(*Admitted pro hac vice*)

Jeffrey K. Perkins (CA State Bar No. 57996)
LAW OFFICES OF JEFFREY K. PERKINS
1550-G Tiburon Blvd., Box 344
Tiburon, California 94920
Telephone: (415) 302-1115
(*Admitted pro hac vice*)

Lingel H. Winters (CA State Bar No. 37759)
LAW OFFICES OF LINGEL H. WINTERS
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-2941
Email:  sawmill2@aol.com
(*Admitted pro hac vice*)

Christopher A. Nedeau (CA State Bar No. 81297)
NEDEAU LAW PC
154 Baker Street
San Francisco, CA 94117-2111
Telephone: (415) 516-4010
Email: cnedeau@nedeaulaw.net
(*Admitted pro hac vice*)

Robert J. Bonsignore, Esq.
BONSIGNORE TRIAL LAWYERS, PLLC
23 Forest Street
Medford, MA 02155
Phone: 781-856-7650
Email: rbonsignore@classactions.us

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that this document was filed through the ECF system on March 1, 2024, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

<em>/s/ S. Gregory Herrman</em><br>
S. Gregory Herrman