UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GABRIEL GARAVANIAN, et al., <br><br> Plaintiff, <br><br> v. <br><br> JET BLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC., <br><br> Defendant. | CIVIL ACTION NO.: 1:23-CV-10678-WGY |

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Procedure 56 and Local Rule 56.1, Plaintiffs respectfully submit this statement of undisputed material facts in support of their Motion for Summary Judgment. The material facts of record as to which Plaintiffs contend there is no genuine issue to be tried are as follows:

**A.     The Illegality of Defendants' Proposed Merger Has Been Established**

1. On November 3, 2022, Plaintiffs filed a Complaint seeking to enjoin the proposed merger between Defendants JetBlue and Spirit because it violated section 7 of the Clayton Act, 15 U.S.C. § 18.  Dkt. 1.

2. On March 7, 2023, the United States filed a Complaint also seeking to enjoin the proposed merger based on violations of 15 U.S.C. § 18.  Case No. 1:23-cv-10511-WGY (hereinafter "the DOJ Case"), Dkt. 1.

3. In the March 16, 2023, Joint Stipulation to Transfer, the parties stated that the DOJ Case involves "the same transaction challenged in this case."  Dkt. 33 at 1.

4. In the March 30, 2023, Motion to Relate Case with the DOJ Case, Defendants stated that both cases "involve the same or substantially similar issues of fact," "seek the same relief" and "arise out of the same occurrence, transaction or property: the proposed JetBlue-Spirit merger."  Dkt. 39 at 3.

5. In the April 24, 2023, Proposed Schedule and Case Management Order, Defendants stated that the two cases, "at their core, are based on the same transaction and will entail, to significant degree, the same discovery."  Dkt. 76 at 6.

6. In their May 5, 2023, Opposition to Proposed Orders Submitted by Non-Party United States of American and Private Plaintiffs, Defendants stated:  "DOJ's proposal [of separate trial dates] ignores the reality that the cases are nearly identical, and would require the Court to hold two independent trials for cases that involve nearly identical evidence and claims

under the same law. Nothing could be more inefficient or burdensome for the Court, witnesses, and the Defendants." Dkt. 90 at 2-3.

7.  In their August 8, 2023, Memorandum in Support of Motion to Strike, or in the Alternative, to Deny or Defer Plaintiffs' Motion for Summary Judgment Motion, Defendants argued that the Court should not consider Plaintiffs' Summary Judgment Motion because the DOJ trial "will fully litigate whether this merger is consistent with the antitrust laws." Dkt. 178 at 2.

8.  During the October 4, 2023 Hearing, Counsel for JetBlue stated: "And here we have the United States, which is bringing the same case seeking the same relief, that is going to protect Mr. Garavanian and anybody like him if they prevail." Herrman Dec.[1] Ex. 10 at 10:16-19.

9.  Following a trial in the DOJ Case, the Court issued a decision finding that the proposed JetBlue-Spirt merger was anticompetitive under Section 7 of the Clayton Act, 15 U.S.C. § 18. DOJ Case, Dkt. 461. The Court enjoined the proposed merger. *Id.* at 109. Specifically, the Court found that the merger would result in anticompetitive effects in routes flown by Spirit. *Id.* at 73, 105-07. The Court concluded by stating: "To those dedicated customers of Spirit, this one's for you." *Id.* at 109.

10. The Court issued a final judgment the next day. DOJ Case, Dkt. 463.

**B.   Plaintiff Gabriel Garavanian**

11. Plaintiff Gabriel Garavanian's ("Garavanian") primary residence is in Tyngsborough, Massachusetts. Herrman Dec. Ex. 1 (Garavanian Dep. 6:18-21).

12. In 1986, Garavanian co-founded the Garavanian Travel Agency and operated it

---

[1] Declaration of Scott Gregory Herrman in Support of Plaintiffs' Motion for Summary Judgment (hereinafter "Herrman Dec.").

for 34 years until he sold the business in 2020. Herrman Dec. Ex. 4 (Garavanian Supp. Resp. to Second Interrogatories), Interrog. No. 5 at 2.

13. In 2019, Garavanian purchased a condo in Myrtle Beach. Herrman Dec. Ex. 1 (Garavanian Dep. 20:18-21:6). In 2020, he purchased two additional condos in Myrtle Beach, South Carolina. *Id*.

14. Garavanian has been employed as an independent contractor for a travel agency located in Myrtle Beach. Herrman Dec. Ex. 4 (Garavanian Supp. Resp. to Second Interrogatories), Interrog. No. 5 at 2. He is also employed part-time at a golf course in Myrtle Beach. Herrman Dec. Ex. 1 (Garavanian Dep. 6:18-21; 16:11-16).

### *Garavanian Regularly Flies Spirit*

15. Since he purchased his condos in South Carolina, Garavanian now flies between Myrtle Beach and Boston about four times per year. Herrman Dec. Ex. 1 (Garavanian Dep. 20:5-6; 19:9-14).

16. Between June 2020 and January 2024, Garavanian has flown Spirit between Boston and Myrtle Beach 24 times over that 44-month period, averaging about one Spirit flight every 1.8 months. *See infra* ¶¶ 17-28.

17. On or about June 8, 2020 to June 14, 2020, Garavanian flew roundtrip from Boston to Myrtle Beach on Spirit Airlines. Herrman Dec. Ex. 1 (Garavanian Dep. 21:2-6, 12-14, 21-23; 71:25-72:9).

18. In or around August 2020, Garavanian flew roundtrip from Boston to Myrtle Beach on Spirit Airlines. Herrman Dec. Ex. 1 (Garavanian Dep. 21:2-6, 12-14, 21-23; 22:11-14).

19. On or about December 26 to on or about December 30, 2020, Garavanian flew roundtrip from Boston to Myrtle Beach on Spirit Airlines. Herrman Dec. Ex. 1 (Garavanian Dep.

3

24:3-13).

20. On or about November 11, 2021, Garavanian flew roundtrip from Boston to Myrtle Beach on Spirit Airlines. Herrman Dec. Ex. 1 (Garavanian Dep. 22:16-20; 74:12-23).

21. On or about March 25, 2022 and on or about March 29, 2022, Garavanian flew roundtrip from Myrtle Beach to the Boston area on Spirit Airlines to celebrate his daughter's 25th birthday. Herrman Dec. Ex. 1 (Garavanian Dep. 38:3-19).

22. On June 19, 2022 and June 24, 2022, Garavanian flew roundtrip from Myrtle Beach to "Manchester NH/Boston area" on Spirit Airlines. Herrman Dec. Ex. 1 (Garavanian Dep. 70:14-71:10; 77:18-78:3); *Id*. Ex. 3 (Garavanian Dep. Ex. 3 at GARAVANIAN000013-GARAVANIAN000014). Garavanian purchased that flight on May 23, 2022. *Id*.

23. On November 19, 2022 and November 25, 2022, Garavanian flew roundtrip from Myrtle Beach to Boston on Spirit Airlines to be with his family during Thanksgiving. Herrman Dec. Ex. 1 (Garavanian Dep. 78:4-13); *Id*. Ex. 3 (Garavanian Dep. Ex. 3 at GARAVANIAN000019-GARAVANIAN000020). Garavanian purchased that flight on November 1, 2022. *Id*.

24. On May 9, 2023 and May 15, 2023, Garavanian flew roundtrip from Myrtle Beach to Boston on Spirit Airlines. Herrman Dec. Ex. 1 (Garavanian Dep. 76:13-25); *Id*. Ex. 3 (Garavanian Dep. Ex. 3 at GARAVANIAN00001). Garavanian purchased that flight on April 6, 2023. *Id*.

25. On June 19, 2023 and June 23, 2023, Garavanian flew roundtrip from Myrtle Beach to Boston on Spirit Airlines. Herrman Dec. Ex. 1 (Garavanian Dep. 77:1-15); *Id*. Ex. 3 (Garavanian Dep. Ex. 3 at GARAVANIAN00007). Garavanian purchased that flight on June 8, 2023. *Id*.

26.     On October 4, 2023 and October 8, 2023, Garavanian flew roundtrip from Myrtle Beach to Boston on Spirit Airlines. Garavanian Dec.[2] ¶ 2.

27.     On November 16, 2023 and November 22, 2023, Garavanian flew roundtrip from Myrtle Beach to Boston on Spirit Airlines. Garavanian Dec. ¶ 3.

28.     On January 28, 2024 and January 30, 2024, Garavanian flew roundtrip from Myrtle Beach to Boston on Spirit Airlines. Garavanian Dec. ¶ 4.

29.     Garavanian intends to continue flying Spirit Airlines between Myrtle Beach and Boston and has plans to do so in the Spring and Fall of 2024. Garavanian Dec. ¶ 5. He will purchase his tickets approximately 3-4 weeks in advance of travel. *Id*.

30.     Garavanian testified, "I fly on, you know, Spirit, a lot, obviously." Herrman Dec. Ex. 1 (Garavanian Dep. 42:5-6).

### *Garavanian Purchases Airfare About 3 Weeks Before Departure*

31.     Among the four Spirit flights for which Garavanian's booking date is available – *i.e.* the June 2022, November 2022, May 2023, and June 2023 flights – Garavanian purchased his tickets 27 days in advance, 18 days in advance, 33 days in advance, and 11 days in advance, respectively. Herrman Dec. Ex. 1 (Garavanian Dep. 70:14-71:10; 77:18-78:3; 78:4-13; 7; 6:13-25; 77:1-15); *Id*. Ex. 3 (Garavanian Dep. Ex. 3 at GARAVANIAN00001, 00007, 000013-14, 000019-20).

32.     Among these four flights, Garavanian purchased his tickets on average 22.25 days – or about 3 weeks – in advance of travel. *Id*.

### *Garavanian's Preference For Spirit*

---

[2] The February 13, 2024 Declaration of Gabriel Garavanian in Support of Plaintiffs' Motion for Summary Judgment, filed concurrently herewith.

5

33.     Between 2020 and present, Garavanian has flown Spirit every time he has flown between Myrtle Beach and Boston, a total of some 24 flights. *See supra* ¶¶ 17-28; Herrman Dec. Ex. 2 (Garavanian Dep. Ex. 1 (Resp. to First Set Interrogatories, No. 1 at 6 (no Boston to Myrtle Beach flights listed on chart showing all airline flights *other than Spirit or JetBlue* from 2015 to present); Herrman Dec. Ex. 1 (Garavanian Dep. 29:5-14) (testifying that response to interrogatory no. 1 listed only "flights I took that *weren't* Spirit or JetBlue") (emphasis added).

34.     Garavanian flies Spirit for two primary reasons: "No. 1 [is] the price, and No. 2 [is] they [go] there nonstop." Herrman Dec. Ex. 1 (Garavanian Dep. 79:25-80:15).

35.     Garavanian prefers to fly Spirit because of the price, and Spirit has been the least expensive option every time he has flown Spirit. He testified, "A. I'd rather go on Spirit because of the price. Q. Is Spirit always cheaper than the other airlines? A. Every time I've flown on Spirit, it has been, you know, a considerably less expensive choice." Herrman Dec. Ex. 1 (Garavanian Dep. 82:10-23).

36.     When Garavanian flies on Spirit, he does not spend money on convenience items, like the Big Front Seat, as he "just wants to go from point A to point B at the price Spirit has." Herrman Dec. Ex. 1 (Garavanian Dep. 48:4-13).

### *Garavanian Has Been Forced To Drive When Spirit Has Suspended Flights*

37.     In December 2022, Garavanian planned to fly home to visit family in Boston for Christmas. Herrman Dec. Ex. 1 (Garavanian Dep. 25:2-9). However, Spirit had stopped operating the route during that period. *Id*.; Herrman Dec. Ex. 2 (Garavanian Resp. Interrogatories Set One at 7 ("Plaintiff drove round trip from Myrtle Beach to Boston in January 2023 because Spirit Airlines cancelled the flights")). With Spirit out of the market, the lowest roundtrip airfare from Myrtle Beach to Boston was $750. *Id*. Ex. 1 (Garavanian Dep. 25:2-9, 24:15-25).

6

Garavanian did not travel to Boston for Christmas. *Id*.

38. When Spirit is operating between Boston and Myrtle Beach, Garavanian is usually able to find and purchase a ticket for between $45 to $90 each way. Herrman Dec. Ex. 1 (Garavanian Dep. 24:15-25). Garavanian does not like to spend more than that for the flight. *Id*. at 24:23-25.

39. On January 12, 2023, Garavanian drove from Myrtle Beach to Boston because airfare had become too expensive to fly. Herrman Dec. Ex. 1 (Garavanian Dep. 25:1-9; 19:9-20); Herrman Dec. Ex. 2 (Garavanian Resp. Set One Interrogatories), Resp. to Interrog. No. 2 at 7.

### *The Proposed Merger Threatens Garavanian With Harm*

40. Garavanian has been in the travel agency business for about 35 of the past 38 years. Herrman Dec. Ex. 4 (Garavanian Supp. Resp. to Second Interrogatories), Interrog. Nos. 5 at 2.

41. Garavanian's expectation that the merger of JetBlue and Spirit would harm him is based on his experience observing the effects of past airline mergers and code-sharing agreements. Herrman Dec. Ex. 1 (Garavanian Dep.108:2-120:19; *e.g.* 111:2-9 ("Q. What else is your basis for – you know, based on your experience, what else can you point to show that airline prices go up after airline mergers? A. I'm basing it on when I owned the agency for 34 and a half years, okay?").

42. Based on Garavanian's experience, the elimination of Spirit will likely result in higher prices, less capacity, fewer choices, logistical problems (109:20-23), higher ancillary fees (115:2-23), trip interruptions and flight cancellations (116:16-118:14), and cancelled seat assignments (118:12-119:21). Herrman Dec. Ex. 1 (Garavanian Dep.108:2-120:19); Herrman Dec. Ex. 4 at 3-6 (Resp. to Interrogatory No. 7).

43. Garavanian observed American Airlines and JetBlue enact a code sharing agreement "twice out of Boston," "and in both instances, the prices jacked up to the point where people – it was costing people $600 roundtrip on airline tickets down to Orlando from Boston. How can a family afford that for 2,400 bucks before they even step into the [amusement] park?" Herrman Dec. Ex. 1 (Garavanian Dep. 108:20-109:9).

44. Garavanian observed that after the Northwest and Delta merger, Delta eliminated 75% of its flights on the Manchester to Cincinnati route and prices increased on the "two-hour flight" to $600. Herrman Dec. Ex. 1 (Garavanian Dep. 113:5-17).

45. Garavanian observed that after US Airways bought American West Airlines, US Airways eliminated American West's Boston to Phoenix flight, which had been priced at $150 one way. After American West was gone, prices on that route went up to $450 roundtrip, "almost twice as much money." Herrman Dec. Ex. 1 (Garavanian Dep. 113:23-114:10).

46. Garavanian observed that when American Airlines merged with US Airways, which were both competing on the Boston/Orlando route pre-merger, prices on that route went from $200 roundtrip pre-merger to $450 post-merger. Herrman Dec. Ex. 1 (Garavanian Dep. 109:15-110:5).

**C.    Plaintiff Timothy Nieboer**

47. Plaintiff Timothy Nieboer ("Nieboer") resides in Clarkstown, Michigan. Herrman Dec., Ex. 6 (Deposition of Timothy Nieboer, June 18, 2023 ("Nieboer Dep.") 5:14-16.)

48. The airport Nieboer uses most frequently when flying from home is the Detroit Metro airport. *Id.* 29:25-30:1.

49. Nieboer travels for vacation twice a year. *Id.* (Nieboer Dep. 29:3-5.) He takes annual trips to "repeat destinations" Fort Lauderdale and Hilton Head Island where he owns

8

annual timeshares. Herrman Dec., Ex. 6 (Nieboer Dep. 30:11-13; 51:17-22); Nieboer Dec.[3] ¶¶ 5, 9).

50. Nieboer and his wife regularly travel to St. Petersburg, Florida to visit their younger daughter who moved there in September 2022. Nieboer Dec. ¶¶ 3-8; Herrman Dec. Ex. 7 at 7 (Nieboer Second Supp. Resp. to Interrogatory No. 1 (showing Detroit to Tampa roundtrip flight on Spirit November 3 to 7, 2022).)

51. The price of airfare is the most important factor for Nieboer when he is choosing between flight options. Herrman Dec. Ex. 6 (Nieboer Dep. 66:15-67:1) ("Q. If price isn't an option, would you prefer to fly other airlines? A. To me, price has always been the option ….")

52. Nieboer is willing to forego comfort to fly on the most economical flight. Herrman Dec. Ex. 6 (Nieboer Dep. 66:15-67:1) ("A. I guess they aren't the best seats in the world or the most – best legroom, but they're the most economical to fly.").

53. When Nieboer travels, he "definitely prefer[s] to fly." Herrman Dec. Ex. 6 (Nieboer Dep. 29:18-20). But, he will drive 14 hours to his destination – which takes a day and a half – if airfare is too expensive. *Id.* 52:3-18 ("If it's cost-effective for me, I will fly. If it's not, I will drive").

54. Nieboer flies Spirit "a lot" because Spirit is "always the most economical and [he] go[es] barebones." *Id.* 52:13-15; *see also* 66:6-7 ("they've always been the most economical").

55. Nieboer is retiring in three months, on May 1, 2024. Nieboer Dec. ¶ 1.

***Nieboer's Regular Spirit Flights***

56. In the past ten years, Nieboer has flown a total of 27 times. Herrman Dec. Ex. 7

---

[3] The February 13, 2024 Declaration of Timothy Nieboer in Support of Plaintiffs' Motion for Summary Judgment, filed concurrently herewith.

9

(Nieboer Second Supp. Response to Second Set Interrogatories at 7). Of those 27 flights, 17 of them, or about 63%, were on Spirit Airlines. *Id*.

57. Nieboer will continue to fly Spirit. Herrman Dec. Ex. 6 (Nieboer Dep. 103:3-7) ("Q. Do you have any plans to fly Spirit in the future? A. Yeah. Again, if – yeah. For sure. If it's – if it's still there and if it's economically feasible and it's going to my destination in the time frame that I wanted to go").

58. Nieboer regularly travels to three places: Fort Lauderdale, Florida; St. Peterburg, Florida; and Hilton Head Island, South Carolina. *See, infra* ¶¶ 59-64.

### *Nieboer's Annual Trips to Fort Lauderdale*

59. Nieboer and his wife purchased a timeshare in Fort Lauderdale, Florida in 2018. Nieboer Dec. ¶ 9. They own the seventh week of the year and fly from Detroit to Fort Lauderdale nearly every February. Nieboer Dec. ¶¶ 5, 9.

60. Nieboer has purchased two tickets for he and his wife to fly Spirit Airlines to their timeshare in Fort Lauderdale on February 13, 2024 and February 24, 2024. Nieboer Dec. ¶ 5. The Nieboers will fly Spirit from Detroit to Tampa to visit their daughter in St. Petersburg, drive to their timeshare in Fort Lauderdale, and fly Spirit from Fort Lauderdale to Detroit on February 24, 2024. *Id*.

61. Including 2024, Nieboer will have flown Spirit from Detroit to his Fort Lauderdale timeshare 4 of the 6 times (8 of 12 total flights or 66% of the time) they have flown to the time share since they bought it. Herrman Dec. Ex. 7 (Nieboer Second Supp. Response to Second Set Interrogatories at 7); Nieboer Dec. ¶ 5.

### *Nieboer's Regular Flights to Tampa on Spirit*

62. Nieboer's younger daughter moved to St. Petersburg, Florida in September 2022.

Nieboer Dec. ¶ 3.

63. Nieboer and/or his wife have visited their daughter at least three times since September 2022 by flying Spirit from Detroit to Tampa. Herrman Dec. Ex. 7 (Nieboer Second Supp. Resp. Interrogatory No. 1; Nieboer Dec. ¶¶ 4-5.

64. On November 3, 2022 and November 7, 2022, Nieboer flew Spirit between Detroit and Tampa to visit his daughter. Herrman Dec. Ex. 7 (Nieboer Second Supp. Resp. Interrogatory at 7).

65. Nieboer's wife flew Spirit to visit their daughter in St. Petersburg by flying from Detroit to Tampa on January 18, 2024 and returning on January 24, 2024. Nieboer Dec. ¶ 4. Nieboer purchased those flights. *Id*.

66. On February 13, 2024, Nieboer and his wife flew Spirit from Detroit to Tampa to visit their daughter. Nieboer Dec. ¶ 5. They returned to Detroit by flying Spirit from Fort Lauderdale on February 17, 2024. *Id*.

67. Nieboer's daughter is getting married in St. Petersburg on November 2, 2024. Nieboer Dec. ¶ 6.

68. Nieboer and his wife will fly roundtrip from Detroit to Tampa in October 2024 to help their daughter with wedding planning. Nieboer Dec. ¶ 6. Nieboer will purchase his flights closer to the dates of travel and will choose the most economical option which, based on his experience, will most likely be Spirit Airlines. *Id*.

69. Nieboer and his wife will fly roundtrip from Detroit to Tampa a few days before their daughter's November 2, 2024 wedding and return around November 4, 2024. Nieboer Dec. ¶ 7. Nieboer will purchase his flights closer to the dates of travel and will choose the most economical option which, based on his experience, will most likely be Spirit Airlines. *Id*.

70. After Nieboer retires on May 1, 2024, he and his wife plan to visit their daughter in St. Petersburg between two and four times a year. Nieboer Dec. ¶ 8. When he travels, he will choose the most economical option available which, based on his experience, will most likely be Spirit Airlines. *Id*.

### *Nieboer's Annual Trips to Hilton Head Island*

71. Nieboer travels to Hilton Head Island every year in May to vacation at the family timeshare he inherited from his mother. Herrman Dec. Ex. 6 (Nieboer Dep. 51:17-22; 23:24-24:1.)

72. The drive from Detroit to Hilton Head Island is 14 hours and "takes a day and a half." Herrman Dec., Ex. 6 (Nieboer Dep. 52:3-7.) Because the drive is so long, Nieboer "prefer[s] to fly." *Id*. But, if airfare is too expensive, Nieboer will drive because he would "rather spend [his] time and money on [his] vacation" than on airfare. *Id*. 52:12-15. He testified, "If it's cost-effective for me, I will fly. If it's not, I will drive." *Id*. 52:17-18.

73. On May 10, 2019 and May 17, 2019, Nieboer flew Spirit roundtrip from Detroit to Jacksonville and then drove from Jacksonville to his timeshare in Hilton Head (about 2.5 hours) because that was the least expensive manner of travel. Herrman Dec. Ex. 6 (Nieboer Dep. 49:16-50:2.)

74. On May 9, 2018 and May 15, 2018, Nieboer flew Spirit roundtrip from Detroit to Atlanta and then drove from Atlanta to his timeshare in Hilton Head (about 4 hours) because that was the least expensive manner of travel. Herrman Dec. Ex. 7 (Supp. Resp. Interrogatories at 7).

### *Nieboer Will Be Forced To Drive Long Distances With Spirit Gone*

75. When asked at deposition "[H]ow do you expect the merger of Spirit and JetBlue will affect you," Nieboer responded: "Spirit [is] going away, so there's gonna be less seats, less

12

opportunity to – to fly to certain destinations …. Now it just gets a lot more expensive, and I know for the – the people that can barely afford it, their life is gonna change, too, because they're not gonna be able to fly the way they want." Herrman Dec. Ex. 6 (Nieboer Dep. 82:2-83:1). He further testified, "I just feel like there's gonna be possibly a less opportunity to go to the destinations that I want." *Id*. 96:18-20.

76. When asked "So when flying is too expensive or not available, you consider driving; is that correct?" Nieboer responded, "I will drive, yes." Herrman Dec. Ex. 6 (Nieboer Dep. 85:20-21).

**D.    Garavanian and Nieboer Fly Routes That Will Be Impacted by the Merger**

77. In its Findings of Fact and Conclusions of Law in the DOJ Action, the Court found that "'Spirit-only routes,' which are routes that Spirit currently flies, but JetBlue does not," are "relevant markets" for purposes of analyzing Defendants' proposed merger. *United States v. JetBlue Corp. and Spirit Airlines, Inc*., Case No. 23-cv-10511-WGY (Dist. Mass. Jan. 16, 2024), ECF No. 461 at 73.

78. In its Findings of Fact and Conclusions of Law in the DOJ Action, the Court found that "consumers value Spirit flights as a unique, economical product option," and further found that "[t]he removal of Spirit as an option for consumers … would constitute a cognizable harm." *United States v. JetBlue Corp. and Spirit Airlines, Inc*., Case No. 23-cv-10511-WGY (Dist. Mass. Jan. 16, 2024), ECF No. 461 at 81.

79. In its Findings of Fact and Conclusions of Law in the DOJ Action, the Court found that "[i]t is this large category [of] consumers, those who must rely on Spirit, that this merger would harm; the Defendant Airlines … simply cannot demonstrate that these consumers would avoid harm." *United States v. JetBlue Corp. and Spirit Airlines, Inc*., Case No. 23-cv-10511-WGY (Dist. Mass. Jan. 16, 2024), ECF No. 461 at 105-106.

80. Defendants have admitted that "G. Garavanian has flown Spirit since November 2018." Dkt. 213 (Defendants' Reply Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment) at 79 ¶ 97 (citing ECF No. 175-42 (Exhibit 42 to Wright Declaration)).

81. Defendants have admitted that "[s]ince November 2018, Nieboer has flown Spirit four times." Dkt. 213 at 114 (¶ 144) (citing ECF 175-66 (Exhibit 66 to Wright Declaration)).

82. Plaintiff's expert identified 283 so-called "Spirit Only" routes served by Spirit and no other ultra low cost carrier. Herrman Dec. Ex. 11 (Singer Rep.) ¶¶ 42, 108 (chart); *Id.* Ex. 12 (Singer Dec. ¶ 3 and Ex. A).

83. Garavanian and Nieboer served the list of 283 routes on Defendants on August 11, 2023. Herrman Dec. Exs. 5 & 9 (Garavanian Second Supp. Resp. to Second Set Interrogatories; Nieboer Second Supp. Resp. to Second Set Interrogatories).

84. The Boston-Myrtle Beach route is among the Spirit Only routes that would be impacted by the proposed merger. Herrman Dec. Ex. 12 (Singer Dec. ¶ 3, Ex. A).

85. The Detroit-Fort Lauderdale route is among the Spirit Only routes that would be impacted by the proposed merger. Herrman Dec. Ex. 12 (Singer Dec. ¶ 3, Ex. A).

Dated: March 1, 2024

/s/ *Scott Gregory Herrman*
Scott Gregory Herrman (DC Bar No. 983114)
LARSON LLP
900 17th Street NW, Suite 320
Washington, DC 20006
Tel: (202) 795-4900
Fax: (202) 795-4888
Email:gherrman@larsonllp.com
(*Admitted Pro Hac Vice*)

Stephen G. Larson (CA State Bar No. 145225)
Robert F. Ruyak, (DC Bar No. 233304
LARSON LLP
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Tel: (213) 436-4888
Fax: (213) 623-2000
Email:slarson@larsonllp.com
Email:rruyak@larsonllp.com
(*Admitted Pro Hac Vice*)

Joseph M. Alioto, Jr. (CA State Bar No. 215544)
ALIOTO LEGAL
100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel.: 415-398-3800
Email: joseph@aliotolegal.com
(*Admitted Pro Hac Vice*)

Joseph M. Alioto (CA State Bar No. 42680)
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104
Telephone: (415) 434-8900
Email:  jmalioto@aliotolaw.com
(*Admitted pro hac vice*)

Josephine Alioto (CA State Bar No. 282989)
THE VEEN FIRM
20 Haight Street
San Francisco, CA 94102
Telephone: (415) 673-4800
Email: j.alioto@veenfirm.com
(*Admitted pro hac vice*)

Lawrence G. Papale (CA State Bar No. 67068)
LAW OFFICES OF LAWRENCE G. PAPALE
The Cornerstone Building
1308 Main Street, Suite 117
St. Helena, California 94574
Telephone: (707) 963-1704
(*Admitted pro hac vice*)

Jeffrey K. Perkins (CA State Bar No. 57996)
LAW OFFICES OF JEFFREY K. PERKINS
1550-G Tiburon Blvd., Box 344
Tiburon, California 94920
Telephone: (415) 302-1115
(*Admitted pro hac vice*)

Lingel H. Winters (CA State Bar No. 37759)
LAW OFFICES OF LINGEL H. WINTERS
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-2941
Email:  sawmill2@aol.com
(*Admitted pro hac vice*)

Christopher A. Nedeau (CA State Bar No. 81297)
NEDEAU LAW PC
154 Baker Street
San Francisco, CA 94117-2111
Telephone: (415) 516-4010
Email: cnedeau@nedeaulaw.net
(*Admitted pro hac vice*)

Robert J. Bonsignore, Esq.
BONSIGNORE TRIAL LAWYERS, PLLC
23 Forest Street
Medford, MA 02155
Phone: 781-856-7650
Email: rbonsignore@classactions.us

*Attorneys for Plaintiffs*

16

**CERTIFICATE OF SERVICE**

I certify that this document was filed through the ECF system on March 1, 2024, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ S. Gregory Herrman*
S. Gregory Herrman
