UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GABRIEL GARAVANIAN, *et al.*,

    *Plaintiffs*,

v.

JETBLUE AIRWAYS CORPORATION and
SPIRIT AIRLINES, INC.,

    *Defendants*.

Civil Action No.: 1:23-cv-10678-WGY

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AS MOOT**

    Defendants' Motion to Dismiss the Complaint as Moot (Dkt. 346; the "Motion") is procedurally improper, premised upon a faulty factual basis, directly contradicts applicable legal precedent, and should be denied.

    In sum, Defendants argue that Plaintiffs' antitrust claims are "moot" because this Court has enjoined the merger in the related Department of Justice case *United States v. JetBlue Airways Corp.*, Case No. 1:23-cv-10511 (the "DOJ Case") and because Defendants have "publicly . . . abandoned" the merger, which events they claim deprive both the Plaintiffs of standing and this Court of jurisdiction. Defendants, however, do not point to a single case – because they cannot – in which any court has dismissed a complaint under the circumstances presented here: where the government and private plaintiffs have brought separate actions to enjoin an anticompetitive merger and one has obtained an injunction before the other. On a

1

motion to dismiss Defendants have a "heavy burden." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). As described below, this heavy burden has not been met. Defendants' Motion relies on irrelevant caselaw and ignores controlling, long-standing Supreme Court precedent holding that such relief is *not* available here.

Defendants' non-binding announcement *in a press release* of their purported "abandonment" of the merger, submitted as an exhibit to the Motion, is of no consequence or legal significance. Dkt. 348-1; 348-2. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

As explained in detail below, there remains a specific threat of injury to Plaintiffs. Therefore, there remains a significant "case or controversy" that cannot reliably be addressed by the Government's injunction or Defendants' purported unilateral "abandonment" of the merger.

For these reasons, Defendants' motion should be denied.

## I. The Government's Injunction Does Not Deprive Plaintiffs of Standing

Defendants argue that the Complaint is moot because the remedy that Plaintiffs seek – an injunction – is "duplicative" of the injunction already obtained by the Government. Dkt. 347 at 9. The Supreme Court, however, has made clear for decades that a Government injunction does not render moot a concomitant private consumer antitrust action seeking an injunction to bar the same conduct.

In *United States v. Borden Co.*, 347 U.S. 514 (1954), the Supreme Court directly addressed and resolved this issue. In *Borden*, a district court had already granted an injunction for a private party that prohibited the defendants from engaging in anticompetitive conduct in violation of the antitrust laws. *Id*. at 515. The government also brought a separate suit in another district court alleging the *same antitrust violation* and seeking an injunction as well. *Id*. The

district court dismissed the government's complaint on the same grounds urged by Defendants here: "a prior decree in a private antitrust action . . . enjoined the conduct in question and made it '*useless*' to award the Government an injunction." *Id*.

The Supreme Court reversed, holding that the government was entitled to its own injunction because "[t]hese private and public actions were designed to be cumulative, not mutually exclusive" and "may proceed simultaneously *or in disregard of each other*." *Id*. at 518-519 (emphasis added). The reason these injunctions are not duplicative is rooted in the "public policy as determined by Congress." *Id*. (citing S. Rep. No. 698, 63d Cong., 2d Sess. 42). Specifically, "[t]he scheme of the statute is sharply to distinguish between Government suits, either criminal or civil, and private suits for injunctive relief . . . . Different policy considerations govern each of these." *Borden*, 347 U.S. at 518-19. The private action "supplements Government enforcement of the antitrust laws," and vindicates rights "of a sort personal to the plaintiff." *Id*. at 518. The Court reasoned that the "Government seeks its injunctive remedies on behalf of the general public" while "the private plaintiff . . . may be expected to exercise it only when his personal interest will be served." *Id.* at 518 (citing S. Rep. No. 698, 63d Cong., 2d Sess. 42).

The Supreme Court later clarified that the holding in *Borden* is not limited to securing the Government's right to obtain an injunction for conduct already enjoined in a private case. It applies in the reverse scenario as well. In *Sam Fox Pub. Co. v. United States*, 366 U.S. 683, 689 (1961), the Supreme Court reaffirmed that in *Borden*, "it was there stated in clearest terms that 'private and public actions were designed to be cumulative, not mutually exclusive.'" *Id*. (quoting *Borden*, 347 U.S. at 518). The Court held that it "regarded it as fully settled that a person whose private interests coincide with the public interest in governmental antitrust litigation is nonetheless not bound by the eventuality of [governmental] litigation." *Id*. at 689.

Thus, "this principle [in *Borden*] is certainly broad enough to make it clear that just as the Government is not bound by private antitrust litigation … so private parties, similarly situated, are not bound by government litigation." *Id*. at 690. Indeed, neither *Borden* nor "any other antitrust authority … require[s] the Plaintiffs to have established a need for an injunction that was 'non-duplicative,'" because "*Borden* makes clear that private and public injunctions may exist concomitantly." *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 249 (3d Cir. 2010).

The Supreme Court in *Borden* explained the consequences of dismissing a Government antitrust suit in reliance on a private plaintiff injunction, and *Sam Fox* explains that those consequences apply in the reverse situation where, as here, the government obtains an injunction first. It is axiomatic that a plaintiff in one case has no standing to enforce injunctive relief granted in another case in which that plaintiff is not a party. *Borden* recognized this principle, stating that the Government would have no right to enforce the private plaintiffs' injunction and that the private plaintiffs' differing interests may cause them to enforce or decline to enforce the injunction in a manner inconsistent with the Government's interests. *Borden*, 347 U.S. 514 at 706-707. Here, the same principle is true. Plaintiffs are entitled to pursue this case to obtain an injunction to protect their rights because they could not enforce the existing Government injunction should the Government decline to do so. Nor can Plaintiffs rely on the Government to enforce the Government's injunction in the same manner that Plaintiffs would their own, given their different interests. This is particularly true given the changing nature of, and interests in, antitrust enforcement by government agencies over time. While the Department of Justice, under the current administration and leadership, has sought the existing injunction to enforce the antitrust laws, there can be no guarantee that a succeeding antitrust leadership in the future will

do so. It may have a drastically different view of antitrust enforcement and priorities, leaving these Plaintiffs alone to enforce their rights and only through the vehicle of their own injunction obtained in this case.

For these reasons, the Government injunction is insufficient to address the threat of future harm to Plaintiffs. This case is not "moot," a "case or controversy" continues to exist, and Plaintiffs have standing to pursue this case and obtain injunctive relief.

## II.  Defendants' Purported "Public Abandonment" of the Merger Does Not Remove the Threat of Harm

The Defendants also contend that Plaintiffs' complaint is moot because the Defendants have "publicly announced" an abandonment of the merger. This basis for dismissal is equally deficient. First, Defendants only "abandoned" the merger after they were enjoined by this Court from consummating it. Second, not only are public announcements non-binding statements that have no legal effect, but the press release that Defendants submitted to the Court, as evidence of their public abandonment, expressly states that it cannot be relied on in the form of a written disclaimer: "Given the risks and uncertainties surrounding forward-looking statements," "the forward-looking events discussed in this press release *might not occur*" and "*you should not place undue reliance on these statements*." Dkt. 348-1 at 4 (emphasis added).

Moreover, Defendants have a recent history, in this very case, of backtracking on or even abrogating broad and seemingly confident "public announcements." Among them is Spirit's sudden acceptance of JetBlue's merger offer that came abruptly after *months* of repeated and consistently harsh "public announcements" rejecting JetBlue's merger entreaties. *See* Dkt. 250 at 4-6.

While Defendants now claim to have "abandoned" the merger on March 4, 2024, that is a stark reversal of the actions and statements that led up to it.  During the entire month of

5

February, Defendants aggressively pursued and defended the merger in a variety of public statements promising to appeal on an expedited basis. On February 8, 2024, just a month before Defendants "abandoned" the merger, and three weeks after this Court permanently enjoined the merger, Spirit issued an earnings report that stated publicly, "Spirit and JetBlue expect to conclude the regulatory process and close the transaction no later than the first half of 2024." *See* "Spirit Airlines Reports Fourth Quarter and Full Year 2023 Results," Spirit.com (Feb. 8, 2024), https://ir.spirit.com/files/doc_financials/2023/q4/Earnings-Release-4Q23.pdf. Then, on February 26, Defendants continued their vigorous defense of the merger at the First Circuit, filing their Opening Brief with a 10,000 page appendix. Case No. 24-1092 (Feb. 26, 2024). The purported "abandonment" of the merger on March 4 is as non-binding as Defendants' contrary public statements, none of which are enforceable by Plaintiffs, absent an injunction in this case. "The possibility that respondent may change its mind in the future is sufficient to preclude a finding of mootness." *United States v. Generix Drug Corp.*, 460 U.S. 453, 456 n.6 (1983) ) (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 288–289 (1982)).

      The Supreme Court has repeatedly held and reaffirmed that "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its [jurisdictional] power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982); *see also Walling v. Helmerich & Payne*, 323 U.S. 37, 43 (1944) ("Voluntary discontinuance of an alleged illegal activity does not operate to remove a case from the ambit of judicial power."); *W. T. Grant Co.*, 345 U.S. at 632 (noting that the parties agree that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot").

The two cases Defendants primarily relied on – *FTC v. H.J. Heinz*, 164 F.Supp.2d 659 (D.D.C. 2001) and *U.S. v. Mercy Health Servs.*, 107 F.3d 632 (8th Cir. 1997) – in addition to being non-binding on this Court, are readily distinguishable. *H.J. Heinz*, a district court case, did not involve simultaneous government and private plaintiff actions. The FTC alone challenged the Heinz-Beechnut baby food merger. After the appellate court reversed and remanded the administrative law judge's *denial of an injunction,* Heinz and Beechnut abandoned the merger. The only plaintiff, the FTC, accepted the abandonment and moved to dismiss the administrative proceeding, which was granted. *H.J. Heinz*, 164 F.Supp.2d at 659-660. Four months later *the same FTC* filed a district court case seeking a preliminary injunction expressly to "maintain the status quo" in the baby food industry while there were no existing merger plans at play. *Id.* at 660. The court dismissed the latter case as moot. The court pointed out that the Plaintiff FTC *itself* moved to dismiss the first administrative injunction case. And if Heinz and Beech-Nut were to "rekindle their interest in one another" at some later time, they would have to go back through the same FTC's pre-merger clearance procedures. *Id.* Unlike the FTC in *H.J. Heinz*, Plaintiffs here are not seeking dismissal. On the contrary, they are continuing to assert their rights to an injunction, cannot rely upon the Defendants' non-binding announcements, do not have the ability to enforce the existing Government-obtained injunction, and have no regulatory authority over the defendants as the FTC does. *Heinz* is wholly inapplicable on its facts.

Similarly, *Mercy Health* did *not* involve concomitant private plaintiff and government actions seeking to enjoin a merger, but an action by the government alone. The district court in *Mercy Health denied the injunction* because the Government failed to prove its case at trial. Defendants announced their intention to abandon the merger on appeal, *after a trial* in which the district court found in their favor, *denying the injunction* and allowing the merger. On appeal,

7

addressing the facts in *Mercy Health* – a case brought by the government alone with no concomitant private action – the Court of Appeals held the appeal was moot because no injunction had been entered based upon the government's failure of proof, and any future attempt to merge would require the defendants to file a "premerger notification" under the Hart-Scott-Rodino Act. *Id.* at 637. In short, the *Mercy Health* Court did not address the salient issues in this case: where an injunction is entered for the Government blocking the anticompetitive merger, what are the rights of the concomitant private plaintiffs to obtain an injunction to protect their interests in the event that the government declines to enforce the injunction in the future. Those issues had already been decided by the Supreme Court in *Borden* and its progeny: Plaintiffs have standing to pursue this case and obtain injunctive relief, and the case is not moot.

Moreover, the *Mercy Health* Court cited *R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102 (2d Cir. 1989) with approval and distinguished it on the facts. Like *Mercy Health*, the *Bigelow* case also addressed whether a Section 7 action was mooted by a public announcement declaring the merger "abandoned." *Id*. at 637, n. 5. It stated, "[u]nlike the circumstances in *R.C. Bigelow*, we do not believe that here the 'abandonment of challenged conduct seems **timed to head off an adverse determination on the merits**.'" *Mercy Health*, 107 F.3d at 637, n.5 (quoting *R.C. Bigelow* 867 F.2d at 106) (emphasis added). In *R.C. Bigelow*, Bigelow challenged the merger of Lipton and Celestial teas. 867 F.2d at 103. The district court granted summary judgment for the defendants, denying an injunction, and Bigelow appealed. *Id*. Shortly after oral argument, Lipton and Celestial abandoned the merger and moved to dismiss the appeal as moot. *Id.* at 105. The Second Circuit rejected the mootness argument and reversed the district court's grant of summary judgment, stating: "When abandonment of challenged conduct seems timed to

8

head off an adverse determination on the merits . . . it cannot be said that the possibility of repetition of such activity is merely abstractly conceivable." *Id.* at 106-07.

Like *R.C. Bigelow*, there is little doubt here that Defendants' purported "abandonment" of the merger was "timed to head off an adverse determination on the merits." On January 16, 2024, this Court found the proposed merger to be anticompetitive. DOJ Case Dkt. 461. Defendants immediately moved for an expedited appeal in the First Circuit, which was granted. Mot. to Expedite, No. 24-1092 (Jan. 29, 2024); Order (Feb. 2, 2024). In their Appellants' Opening Brief ("AOB"), Defendants forcefully argued that this Court erred by failing to identify any actual harmed Spirit customer. AOB, No. 24-1092 (Feb. 26, 2024). The Opening Brief's Introduction used some variant of the expression "hypothetical Spirit customer" some *eight* times, pointing out that this Court's order enjoining the merger *never* defined a specific geographic market and relied entirely on "hypothesized" and "supposed" Spirit customers who "must rely on Spirit" because they "cannot 'afford' another airline." AOB at 3. On March 1, 2024 Plaintiffs in this case filed a Motion for Leave to File a Summary Judgment Motion. Dkt. 343. Plaintiffs' summary judgment motion fills many of the gaps identified by Defendants in the Court's order enjoining the merger. Specifically, Plaintiffs' Motion for Summary Judgment identifies *specific* – not "hypothetical" – customers, Garavanian and Nieboer, who travel specific geographic routes that would be demonstrably impacted by the merger. See, Dkt. 343 at 5-8.

On March 4, 2024, only three days after Plaintiffs filed their summary judgment motion, Defendants issued a press release purporting to "abandon" the merger. Dkt. 348-1; 348-2. On March 15, Defendants declined to oppose Plaintiffs' motion for leave to file its summary judgment motion, and instead, on March 18, filed this Motion to Dismiss, seeking to avoid an adverse determination on the merits – namely the injunction sought by Plaintiffs in this case.

Finally, Defendants rely on *Harris v. Univ. of Mass. Lowell*, 43 F.4th 187, 191 (1st Cir. 2022), which is wholly inapplicable on the facts. *Harris* involved a preliminary injunction that was *denied* by the district court.[1] In *Harris*, two University of Massachusetts students filed a lawsuit claiming their school's Covid-19 vaccine mandate was unconstitutional. *Id.* at 189. After their motion for a preliminary injunction was denied, they appealed. During the pendency of the appeal, one student transferred to another school, and the other graduated. Unremarkably, the Second Circuit dismissed the claims as moot since the plaintiffs were no longer subject to the policies. *Id.* at 191. The court held that, having left the school, plaintiffs could no longer be harmed by the contested conduct or benefit from any injunction. This is simply not the case here. Plaintiffs have standing as past, present, and future passengers of Spirit Airlines. Without this Court granting *them* an order permanently enjoining the merger in this case, Plaintiffs will have no ability to stop the merger, leading to direct, negative impact on each of them.

## III.  Conclusion

The Defendants have provided no authority to support their Motion to Dismiss this case. Settled, long-standing Supreme Court precedent requires that it be denied. Defendants' purported "abandonment" of the merger cannot reasonably protect Plaintiffs from threatened future injury. This case is not "moot;" a "case or controversy" continues to exist, and Plaintiffs have standing to pursue this case and obtain injunctive relief.

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion and grant Plaintiffs' Pending Motion for Leave to File Plaintiffs' Motion for Summary Judgment.

---

[1] Defendants cite several cases for the proposition that the Court lacks Article III jurisdiction (Motion at 5), but none of these cases involved dismissing a private plaintiff as moot based on an existing government injunction and/or alleged "abandonment" of the challenged action.

Dated: March 28, 2024

                                              */s/* Robert F. Ruyak
                                              Robert F. Ruyak
                                              LARSON LLP
                                              900 17th Street NW, Suite 320
                                              Washington, DC 20006
                                              Tel: (202) 795-4900
                                              Fax: (202) 795-4888
                                              Email:rruyak@larsonllp.com
                                              (*Admitted Pro Hac Vice*)

Stephen G. Larson
LARSON LLP
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Tel: (213) 436-4888
Fax: (213) 623-2000
Email:slarson@larsonllp.com
(*Admitted Pro Hac Vice*)

Scott Gregory Herrman
LARSON LLP
900 17th Street NW, Suite 320
Washington, DC 20006
Tel: (202) 795-4900
Fax: (202) 795-4888
Email:gherrman@larsonllp.com
(*Admitted Pro Hac Vice*)

Jeffery K. Perkins
LAW OFFICES OF JEFFERY K. PERKINS
1550-G Tiburon Blvd., Box 344
Tiburon, California 94920
Telephone: (415) 302-1115

Lingel H. Winters
LAW OFFICES OF LINGEL H. WINTERS
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-2941

Christopher A. Nedeau
NEDEAU LAW PC
154 Baker Street
San Francisco, CA 94117-2111
Telephone: (415) 516-4010
Email: cnedeau@nedeaulaw.net

Joseph M. Alioto
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104
Telephone: (415) 434-8900
(*Admitted pro hac vice*)

Joseph M. Alioto, Jr
ALIOTO LEGAL
100 Pine Street
Suite 1250
San Francisco, CA 94111
Tel.: 415-398-3800
Email: joseph@aliotolegal.com
(*Admitted Pro Hac Vice)*

Josephine Alioto
THE VEEN FIRM
20 Haight Street
San Francisco, CA 94102
Telephone: (415) 673-4800
Email: j.alioto@veenfirm.com
(*Admitted pro hac vice*)

Lawrence G. Papale
LAW OFFICES OF LAWRENCE G. PAPALE
The Cornerstone Building
1308 Main Street, Suite 117
St. Helena, California 94574
Telephone: (707) 963-1704
(*Admitted pro hac vice*)

Robert J. Bonsignore, Esq.
BONSIGNORE TRIAL LAWYERS, PLLC
23 Forest Street
Medford, MA 02155
Phone: 781-856-7650
Email: rbonsignore@classactions.us

**CERTIFICATE OF SERVICE**

I certify that this document was filed through the ECF system on March 28, 2024, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Robert F. Ruyak
Robert F. Ruyak