**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GABRIEL GARAVANIAN, *et al.,*       ) | |
|       ) | |
| Plaintiffs,       ) | |
|       ) | |
| v.       ) | |
|       ) | Case No. 1:23-CV-10678-WGY |
|       ) | |
| JETBLUE AIRWAYS CORPORATION and       ) | |
| SPIRIT AIRLINES, INC,       ) | |
|       ) | |
| Defendants       ) | |
|       ) | |

**DECLARATION OF ROBERT J. BONSIGNORE ON BEHALF OF BONSIGNORE, PLLC IN SUPPORT OF PRIVATE PLAINTIFF COUNSEL'S MOTION FOR AN INTERIM AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

I, Robert J. Bonsignore, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am a partner in the law firm of Bonsignore Trial Lawyers, PLLC ("Bonsignore Firm" or "BTL") and a member in good standing of the state bars of New Hampshire and Massachusetts. I am also admitted to multiple federal courts across the United States. As referenced on my curriculum vitae, for the past 20 years I have focused my practice on complex litigation, financial transaction litigation, class actions, and multidistrict litigation. (*See* Exhibit 1, Bonsignore Firm Curriculum Vitae). The Bonsignore Firm has substantial experience in complex class action litigation, multidistrict litigation, antitrust, and financial fraud-based litigation including pyramid and Ponzi scheme cases.

2.      Except as otherwise stated, I have personal knowledge of the facts stated below and can testify competently thereto. I am familiar with the market rates charged by attorneys in Boston, and generally nationwide, in high risk, high-expense, resource-draining, high stakes litigation by

participating in such cases, discussing fees with other attorneys, obtaining and reviewing declarations and supporting detailed time entries as it relates to prevailing market rates in other cases in which I have been personally charged with reviewing, working with counsel to adjust billing, approving, rejecting, and submitting attorney fee and expense requests, attorneys' fee applications, providing budgets to clients before and during litigation, otherwise auditing legal bills prepared by my firm and other lawyers, and by reviewing articles on fees in legal newspapers and treatises. I have previously served as an expert witness in the Commonwealth of Massachusetts to support a request for an award of attorney fees in a consumer protection action.

3.      I submit this declaration in support of the above-captioned motion for an award of attorneys' fees (the "Motion") of Plaintiffs' Counsel in connection with the services rendered by Class Counsel in this action since it was originally filed in 2022.

4.      This declaration is submitted as the Bonsignore Firm's support for Lead Counsel's Motion for Attorney Fees and Costs.

5.      My observations and opinions are based upon my supervision and direct participation in multiple aspects of the litigation against Defendants JetBlue Airways ("JetBlue") and Spirit Airlines ("Spirit"), including the development of strategies, discovery battles, and the integration of proof into Plaintiffs' litigation plan, briefing, and preparing and defending the twenty-four (24) private plaintiffs in depositions taken by JetBlue and Spirit—often sitting for three depositions in one day. BTL was also deeply involved with multiple aspects of offensive and defensive discovery. Each deponent was personally prepared by myself in advance of their deposition. I also drew upon my knowledge of this litigation's history since its inception.

6.      I participated in weekly strategy calls with lead counsel and other Plaintiffs' Counsel. I defended twenty-three (23) of the twenty-four (24) Plaintiffs' depositions. At my

request, BTL and other Plaintiffs' Counsel worked with me to gather missing discovery for all twenty-four (24) private Plaintiffs and supplemented discovery responses. I engaged with each Plaintiff on a personal, one-on-one basis to obtain the air flight routes that they had flown in the past and were planning on flying in the future that would be impacted by the proposed JetBlue and Spirit merger. and worked to gather missing discovery for all 24 private plaintiffs and supplement discovery responses.

7.      Upon instruction of Lead Counsel Alioto, BTL also reviewed deposition transcripts for executives and high-level employees at JetBlue and Spirit and created summaries of each transcript for reference over the course of the litigation. These transcripts were essential in opposing JetBlue and Spirit's Motion for Summary Judgment and in the overall prosecution of the litigation.

8.      Melanie Porter is a partner in the Bonsignore Firm. Ms. Porter worked with other Plaintiffs' Counsel to analyze and summarize deposition transcripts and provided input on strategy when called upon. Ms. Porter also substantially contributed to the discovery process by helping to produce documents and working with each private plaintiff to ensure documents were produced in the correct manner to the defendants.

9.      Ms. Porter was actively involved in essentially every one of the weekly strategy calls.

10.     Ms. Porter engaged in extensive (client) communications with Plaintiffs during the discovery phase. Ms. Porter worked closely with Lead Counsel and other Plaintiffs' Counsel to ensure multiple sets of interrogatories served by the defendants were supplemented and answered satisfactorily.

11.     Ms. Porter also conducted extensive work relating to defeating defendants' Motion for Summary Judgment.

12.     Ms. Porter reviewed hundreds of documents that showed how each of the private Plaintiffs would be impacted by JetBlue and Spirit merging. She used this information to bolster the discovery responses from each Plaintiff, including reviewing lists of every previous flight that each private Plaintiff had taken.

13.     Ms. Porter guided other members of the Plaintiff litigation team throughout the discovery process. She also attended many of the private Plaintiff depositions and helped to prepare each Plaintiff prior to their deposition. Ms. Porter was a leading and guiding voice in the review and analysis of documents produced.

14.     Ross Friedman, BTL paralegal, worked with out-of-state counsel to familiarize them with the Local Rules of the United States District Court for the District of Massachusetts and worked to achieve the timely filing of their pro hac vice motions. He also summarized multiple transcripts of JetBlue and Spirit executives for Plaintiffs' Counsel to refer to during the discovery and trial preparation process.

15.     Mr. Friedman remained in close contact with each of the twenty-four (24) private plaintiffs, ensuring that they had sufficient technological capabilities to participate in Zoom depositions and were otherwise comfortable administratively for their remote depositions in advance.  He also assisted with many depositions by scheduling calls with both Plaintiffs' counsel and defense counsel to assist with scheduling the depositions at a time that worked for all counsel and the Plaintiffs themselves.

16.     Once the depositions were complete, Mr. Friedman summarized and identified the private Plaintiffs' deposition transcripts so that they would be able to be used for briefing and trial

purposes. In addition, he helped to supplement Plaintiffs' discovery responses with information that was missing or inconsistently referred to.

17.     Once Lead Plaintiffs' Counsel determined that he would be appealing the case, Mr. Friedman worked closely with Mr. Alioto for more than three weeks, often participating in telephonic conferences multiple times a day to help prepare the appellate brief, appendix, and table of contents.

18.     Mr. Friedman assembled chambers' copies of multiple briefs that were requested by the Court. He then hand-delivered the briefing and appellate brief to the Court.

19.     The summary time chart for my firm is attached hereto. (*See* Exhibit 2, Bonsignore Firm Summary Time Chart). Upon request, the granular time sheets will be produced to the Court.

20.     I set out the following parameters for, and limitations to, the time submissions by my firm:

    a.   Billable rates for non-lawyers are capped at $250 per hour.

21.     All work performed by the Bonsignore Firm was authorized or assigned by Lead Counsel and approved by me. I insist on reasonable caps on the time spent on a task-by-task basis and monitor same.

22.     All timekeepers are salaried employees.

23.     The non-lawyer, Mr. Friedman, graduated from law school.

24.     The Bonsignore Firm applies a customary, capped rate for non-lawyer staff and did not "rate up" or "equate" specially trained non-lawyer staff to match or exceed the same hourly rate charged by its outside vendors.

25.     All lawyers are salaried and have more than ten (10) years of related specialized experience.

26.     The Bonsignore Firm Summary Time Chart is generated from underlying contemporaneous time records. The Bonsignore Firm Summary Time Chart and underlying records are organized, keep record of, and display the following information: 1) Date; 2) Timekeeper; 3) Time Category; 4) Historic Hourly Rate; and 5) Description of Activity.

27.     No time related to timekeeping or preparing BTL fee-related documents is included in the time submissions.

28.     The granular detail supporting my firm's contribution to the overall lodestar submitted at this time was reviewed by me, other members of my firm, and Lead Counsel. I have thus reviewed, and caused to be reviewed, the related BTL summary report as well as the supporting granular time submitted by my firm for reasonableness and necessity to the litigation.

29.     The total number of hours reflected in Exhibit 2 is 618.9 hours. The total lodestar reflected in Exhibit 2 is $482,725.00, consisting of $445,350.00 for attorneys' time and $37,375.00 for professional support staff time. In addition to the above, the Bonsignore Firm contributed and benefited the Plaintiffs' cause.

30.     **Administration:** The Bonsignore Firm has billed 11.7 hours for administration. The Bonsignore Firm regularly attended litigation and discovery team meetings during which specialized areas of proof and the evidence was discussed or developed.

31.     In addition to weekly Team meetings, the Bonsignore Firm was responsible for scheduling, determining the agenda of, and leading the many other telephonic and Zoom meetings. This included regular, frequent telephonic meetings with each of the Plaintiffs, Defendants, outside experts, and co-counsel. The Bonsignore Firm also stayed in regular contact with all twenty-four (24) private Plaintiffs to ensure they were prepared and ready for their remote depositions. A test-Zoom session was conducted with all Plaintiffs prior to their deposition so that each remote

deposition went smoothly.

32.     **Briefs, Motions, and Pleadings**: With rare exception, the Bonsignore Firm was actively and substantially involved in drafting the complaint and participated in additional briefing, including but not limited to motions for summary judgment and oppositions thereto. In addition, the Bonsignore Firm attorneys have read or reviewed all orders and opinions issued by the Court as well as all law and motion filed in this case. Because the Bonsignore Firm acted as local counsel in Massachusetts, all pro hac vice motions were reviewed and approved by BTL counsel. Lead Counsel also routinely asked for BTL's input on briefing regulations because of Mr. Bonsignore's familiarity with the Local Rules and motion practice in the United States District Court for the District of Massachusetts.

33.     **Discovery and Document Review**: The Bonsignore Firm billed 397.8 hours for discovery and document review. The Bonsignore Firm actively participated in written discovery, which included multiple sets of interrogatories, requests for admission and document requests propounded on twenty-four (24) plaintiffs. The Bonsignore Firm also helped to identify targets and prepare for deposition. During the course of this litigation, the Bonsignore Firm was integrally involved in the review of documents Plaintiffs received from various Defendants and that each of the private Plaintiffs produced.

34.     In addition to the multitude of discovery-related work that my firm performed, Mr. Bonsignore personally appeared at each of the twenty-four (24) private plaintiffs' depositions that were taken by JetBlue and Spirit. Because of the discovery deadlines, all twenty-four (24) depositions went forward in the span of fewer than 20 days in June 2023. Mr. Bonsignore and other members of the Bonsignore Firm worked closely with each Plaintiff and counsel for JetBlue and Spirit to create a mutually agreeable schedule that would work for all parties. Mr. Bonsignore

defended all of plaintiffs' depositions, except one (1) that my partner Melanie Porter handled.

35.     The Bonsignore Firm also worked directly with Lead Counsel and Plaintiffs to determine routes that each private Plaintiff flew and to supplement discovery responses where necessary. Ms. Porter substantially assisted with the supplementing of Plaintiffs' discovery responses and Plaintiffs' document production, which were then sent to counsel for JetBlue and Spirit.

36.     **Litigation, strategy, and analysis**: The Bonsignore Firm has billed 129.6 hours to this action for Litigation Strategy and Analysis. Litigation, strategy, and analysis time includes research, consideration, meetings, in person and Zoom meetings, telephone conferences, and taking the time to shut out all else and think about the best way to move the case forward. The Bonsignore Firm also participated in many phone conferences with key advisors, setting out alternative strategies and variables and come to the best strategy for the present state of knowledge, evidence and the circumstances at the time.

37.     Bonsignore Firm members have contributed and worked with me every step of the way, including but not limited strategy from the inception of the case. The Bonsignore Firm's experience allowed us to fully appreciate that regulations and variations in the internal processes of Defendants present other challenges and we developed the work around and work through strategies.

38.     **Appeal**: The Bonsignore Firm billed 20.3 hours for appellate work. Members of the Firm played an integral part in the appellate brief, creating a four-volume appendix that was over 2,200 pages in length while working directly with Lead Counsel to do so.

39.     The Bonsignore Firm was put in charge of assembling, printing, and delivering hard copies of multiple briefs and the appellate brief to the courthouse.

40.     The Bonsignore Firm's experience allowed us to fully appreciate that antitrust regulations and variations in the internal processes of Defendants present other challenges that are not typically found in average cases.

41.     BTL contributed substantial funds to the common fund, which paid for a number of depositions, and advanced considerable held costs. My firm is seeking reimbursement of a total of $42,262.01.

42.     The litigation expenses incurred in this Action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records, and other source material and are an accurate record of the expenses incurred. The expenses reflected in the attached chart are the expenses actually incurred by my firm.

43.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 30, 2024 in Tampa Bay, Florida.

*/s/ Robert James Bonsignore*
Robert J. Bonsignore, Esq.

# EXHIBIT 1

**B**ONSIGNORE TRIAL LAWYERS, PLLC

**www.classactions.us**

**BONSIGNORE TRIAL LAWYERS, PLLC ("BTL" or "Firm")** are highly successful and experienced trial lawyers who limit their practice to complex litigation, class actions, and cases involving significant economic loss or public policy. We have learned through experience that the best way to achieve the most favorable outcome for our clients is to prepare each case to win at trial.

BTL attorneys have successfully represented businesses, governmental entities, consumers, and unions in federal and state trial and appellate courts across the United States. BTL has earned a national and international reputation for its professional integrity, competence and an aggressive approach to case prosecution. BTL is capable of litigating any case in any jurisdiction.

BTL's practice is focued on the prosecution of financial fraud, Ponzi/Pyramid schemes, antitrust, business-to-business wrongs, consumer protection, catastrophic personal injury, and mass tort litigation. Over the years, BTL has successfully recovered over a billion dollars for their clients. In actions where BTL has served as Lead Trial Counsel, jury verdicts have exceeded $450 million.

The BTL's appellate briefing team has written multiple precedent setting legal briefs. Robert Bonsignore co-authored the New Hampshire Supreme Court brief in *LaChance v Smokeless Tobacco* which extended to consumers, small businesses, and governmental entities the right to sue antitrust violators. Robert Bonsignore successful persuaded the Ninth Circuit Court of Appeals to set aside a $577 million-dollar settlement of antitrust price-fixing claims that improperly excluded governmental entities, consumers, and small businesses from certain states arbitrarily selected by class counsel from the economic recovery provided for in the settlement agreement. The oral argument before the circuit court may be found at https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000013465.

Other successes include two additional Ninth Circuit Court of Appeals cases relating to wage and hours claims against Wal-Mart, the non appealability of arbitration clauses, and music royalty claims by legacy musicians against EMI Group Limited.

BTL serves as Lead Counsel for eight of 10 counties in New Hampshire in the Opioid Taxpayer Recoupment Litigation and represents 9 of 10. BTL also consults with them as existing clients on an as-needed basis on other matters. BTL also represents additional cities, towns, and counties in New Hampshire and Massachusetts. Bonsignore also filed among the first related cases in the nation against the Prescription Benefit Managers (PBM's).

For the last past ten (10) years Robert Bonsignore has served as Lead Counsel in MDL 2566, *In re: TelexFree Securities Litigation*, (the pyramid scheme involving the largest number of victims in United States history). MDL 2566 advances the rights of approximately 580,000 class members awho suffered upn to a $4 billion dollar projected loss.

Most recently a ninety-five million four hundred and fifty thousand settlement ($95,450,000) was reached with numerous defendants added to prior settlements totaling $24,600,000.00. Between July 1, 2020, and November 2023 the MDL 2566 Plaintiffs fully researched, briefed and filed 105 motions, memorandums, replies, declarations, oppositions, and affidavits totaling 1,452 pages and served against 30 defendants. During this same time period, the MDL 2566 Plaintiffs filed 11 motions to compel, including 22 memorandum, sur-replies, affidavits, and oppositions against 11 defendants totaling 328 pages and including 1,315 pages of exhibits. Because of the complexity and intricacies of the applicable regulations, protocols and standards of conduct, the MDL 2566 Plaintiffs retained and consulted with three (3) distinct experts in banking, one expert in investment banking, and one expert in pay processing. Each industry is subject to a labyrnth of regulations, duties, obligations, practices, procedures, and protocols including but not limited to the Banking Secrecy Act (BSA), the Patriot Act, contractual obligations with VISA and Mastercard, contractual relationships with customers and others, Anti Money Laundering (AML), and Know Your Client (KYC) onboarding, acccount monitoring, freezing and involuntary termination. Additionally, the MDL 2566 Plaintiffs have retained one Ponzi scheme expert; one big data reconstruction expert, and a team of financial fraud experts with specialized and extensive experience in Ponzi schemes and other financial frauds. The MDL 2566 Plaintiffs have consulted with practice of law and legal malpractice insurance coverage experts and retained as an independent judicial evaluator, one of the most preeminent JAMS judges, the Honorable Gerald E. Rosen (Ret.). BTL's Melanie Porter lead the document reviewers efforts. In addition to his Lead Counsel, b briefing and strategy related respnsibilites, Mr. Bonsignore took, defended or participated in each deposition.

The Bonsignore Firm served as Class Counsel for the Plaintiffs in *Garavanian, et al. v. JetBlue Airways Corporation and Spirit Airlines, Inc.* (Case No. 1:23-cv-10678-FDS). This is a private antitrust action seeking to prohibit the proposed elimination of Spirit Airlines by JetBlue Airways Corporation as a violation of 15 USC Section 18, better known as Section 7 of the Clayton Act. The Garavanian private consumer plaintiffs filed long before DOJ tag along action which advanced a near identical complaint and similar claims on behalf of the United States. Robert Bonsignore was a member of the litigation strategy, discovery and trial teams in Jet Blue and defended the deposition/video trial testimony of all twenty-four (24) Plaintiffs. As a result of the original efforts of these consumers, the proposed merger was struck down. BTL's Melanie Porter lead the document reviewers efforts.

The Bonsignore Firm currently serves as Class Counsel in *California Crane School, Inc., et al. v. Google LLC, Apple Inc., Tim Cook, et al.* (Northern District of California Case No. 4:21-cv-10001-HSG). This is a private antitrust suit brought under Sections 4 and 16 of the Clayton Antitrust Act (15 USC 15, 26) for actual and potential damages and injunctive relief caused by reason of and made necessary by the Defendants' past, present, and substantially threatening continuing violations of Sections 1 and 2 of the Sherman Antitrust Act (15 USC 1, 2). Plaintiffs allege that Google pays Apple billions of dollars a year not to compete in the search engine business. Plaintiffs filed long before DOJ tag along actions advancing similar claims on behalf of the United States.

BTL also presently serves as Class Counsel for *Rosemary D'Augusta, et al. v. American Petroleum Institute, et al.* (Northern District of California Case No. 3:22-cv-01979). This is a private antitrust suit brought under Section 7 of the Clayton Antitrust Act where Defendants combined and conspired between and among themselves, Russia, and Saudi Arabia to raise the price of oil and gasoline in direct violation of Sections 1 and 2 of the Sherman Antitrust Act (15 USC 1, 2). Plaintiffs allege that the rise in the price of gas was triggered by insider dealing Plaintiffs filed long before DOJ tag along actions advancing similar claims on behalf of the United States.

BTL and its principal have been appointed or retained to serve in leadership roles in many other complex multidistrict litigation actions. For example.

Robert Bonsignore was Co-Lead Counsel in MDL 1735, the largest certified wage and hour case in United States history with over 2.5 million class members. Robert Bonsignore authored the lead appellate brief in MDL 1735 and successfully argued the appeal before the Ninth Circuit and won the leading case on the rights of parties to arbitration to further review.

Robert Bonsignore served as Lead Counsel in MDL 1631, *In re: Publication Paper Antitrust Litigation* which advanced and resolved the claims of all nation-wide end-use consumers of publication paper against international conspirators. All related claims have been settled.

Robert Bonsignore served together with Mark Robinson as the RCR firm representative to the California Tobacco litigation's Plaintiffs' Executive Committee All related claims have been settled.

Robert Bonsignore served as Lead Counsel for the appellants in *Cohen ET AL. v. Brown University ET AL.* (First Circuit # *21-1032)* BTL represented a group of women athletes objecting to the stripping away of the original settlement in this Title VII case.

**EXEMPLAR REPRESENTATIVE CASES BY PRACTICE AREA**

**Other Exemplar Cases - Protection of Businesses**

***In Re: Broiler Chicken Grower Litigation No. II (MDL 2977)*** (***Eastern District of Oklahoma***)
BTL serves as class counsel in precedent setting private antitrust litigation brought by broiler chicken farmers against the  allege that the major poultry defendants and their co-conspirators entered into an unlawful agreement, combination or conspiracy not to compete for chicken broiler grower services, with the purpose and effect of fixing, maintaining or stabilizing chicken broiler grower compensation below competitive levels. Among other things including the amount of economic loss suffered by the grower chicken farmers is the effect of the alleged conspiracy on the levels of chicken broiler grower compensation in the United States during the class period, at issue is whether the major poultry defendants alleged conspiracy violated Section 1 of the Sherman Antitrust Act and Section 202 of the Packers and Stockyards Act.
The parties have briefed and argued several Rule 12(b) motions to dismiss, and the Plaintiffs have propounded discovery requests and served third-party subpoenas, and the responding parties have begun to produce responsive documents. This matter has concluded and BTL clients served as Lead Plaintiffs and all class members were paid.

***In re TelexFree Securities Litigation (MDL 2566) (USDC District of Massachusetts)*** -
TelexFree was a sprawling international pyramid scheme, the largest in United States history, that affected nearly a million victims and resulted in an estimated $4 billion dollars in damages. BTL filed against TelexFree, banks, pay processors, financial institutions, licensed professional, its owners and founders, insider promoters, and others for violations of state law, including the unregistered sale of securities, deceptive trade practices statutes, fraud, aiding and abetting and conspiracy. With the case eventually being given MDL status, Mr. Bonsignore was appointed and has acting Lead Counsel for about 10 years. Total settlements thus far exceed $115 million dollars. The litigation is ongoing.

***In re: Automotive Parts Antitrust Litigation (MDL 2311) (USDC Eastern District of Michigan Southern Division)*** - BTL filed among the first 4 cases in one of the largest private antitrust litigation in United States history on behalf of a domestic wire harness manufacturer headquartered in Virginia. In the originally filed complaint, Plaintiffs alleged that the Defendant foreign suppliers engaged in a conspiracy over a 10-year period to illegally increase the price of "Wire Harness Systems Products," which include wire harnesses, electrical wiring, lead wire assemblies, cable bond, wiring connectors, wiring terminals, electronic control units, fuse boxes, relay boxes, junction blocks, and power distributors. Notably, in a separate governmental investigation, two of the named Defendants, Furukawa Electric Co., Ltd. and Yazaki Corporation, as well as some of their executives, pleaded guilty for their involvement in the conspiracy and agreed to pay nearly $700 million in criminal fines and serve prison sentences. Other guilty pleas have been entered as to other automotive suppliers. Since the cases' filing, the number of parts involved in the litigation has increased with an additional 200 plus automotive parts anticipated to be added to the list. This litigation has been resolved through settlements.

***In re: Lithium Ion Batteries Antitrust Litigation (MDL 2420) (USDC Northern District of California)*** - BTL filed the second case nationally and represents direct purchasers of Lithium Ion Batteries. The complaint alleges that several of the largest lithium-ion battery producers, including LG Chem, Ltd., Panasonic Corporation, Sanyo Corporation, Sony Corp., Samsung SDI, Hitachi, Ltd. and Maxell Corporation of America collectively controlled between 60 to 90 percent of the market for lithium-ion batteries between 2000 and 2011 and unlawfully conspired to fix and artificially increase the price of the batteries, inflating the cost of notebooks and other portable computers paid by consumers. The complaint also alleges that battery prices fell by nearly 50 percent when several Korean companies entered the market in the early 2000s and that, in response, the Japanese companies who had long controlled the market entered into an illegal price-fixing agreement, resulting in a stabilization of prices that lasted until 2008. The lawsuit claims that in 2008 the Defendants received notice that they were being investigated for price-fixing activities by both American and European regulators. Almost immediately after the investigations were disclosed, prices began to fall again, about 10 percent in three months. This litigation has been resolved through settlements.

***In re: After Market Filters Antitrust Litigation (MDL 1957) (USDC Northern District of Illinois)*** – BTL represented direct purchasers of replacement automobile air and oil filters in this nationwide, antitrust price fixing case.  This litigation has been resolved through settlements.

***In re: Optical Disc Drive Litigation (MDL 2143) (USDC Northern District of California)*** - BTL represents direct purchasers in an antitrust action challenging the price fixing of optical disc drives in this international antitrust case. This litigation has been resolved through settlements.

***In re: Employee Benefit Insurance Brokerage Litigation*** (**MDL 1663**) (***USDC New Jersey***) – BTL filed one of the first bid-rigging class actions in the country on behalf of a large upstate New York employer and major plastics manufacturer. The lawsuit alleged that insurance companies and brokers conspired with one another to allocate customers and markets and initiated kickbacks ("contingent commissions") with certain insurance companies. It alleges that the kickback agreements were used to obtain inflated or false price quotes that the Defendants then used to steer their customers into purchasing higher priced insurance policies issued by the insurance companies that paid the brokers the highest kickbacks. BTL served as Class Counsel and was assigned to the Discovery and Class Certification Committees in the multi-district action pending in New Jersey. Robert J. Bonsignore was responsible for taking numerous depositions of the Defendants' corporate officers and other firm members carried out numerous massive document review projects. The Class Plaintiffs have settled with the Zurich, Gallagher and Marsh Defendant groups for an aggregate amount in excess of $218 million. This litigation has been resolved through settlements.

***In re: Cement Antitrust Litigation 1:05 cv 979 (USDC Southern District of Indiana)*** – BTL represented a direct purchaser (business) in an antitrust action challenging the price fixing of cement in the mid-west United States. The firm served as Class Counsel in the multi-district litigation that settled in the United States District Court for the District of Indiana. This litigation has been resolved through settlements.

***SKYVA International v. ABB (Privately Settled)*** – This was a complex matter involving arbitration, mediation, litigation and negotiation of multiple disputes revolving around a $600 million contract and related business relationships and pending relationships with and between Microsoft, IBM, Adjenture, ABB and SKYVA. Choice of law issues involving this product technology included Swiss, New York, Delaware and Massachusetts law. This case has been settled.

***In re: Polyester Staple Antitrust Litigation (MDL 1516)* (*USDC North Carolina*)** – BTL filed one of the first direct purchaser (business) cases in the country representing Malden Mills, a major textile manufacturing firm. The firm represented direct purchasers of polyester staple alleging a single, nationwide conspiracy among Defendants to fix, raise, maintain and/or stabilize the price of, and/or allocate markets and customers for, polyester staple in the United States in violation of Section 1 of the Sherman Act, 15 U.S. C. § 1. The claims brought on behalf of Plaintiffs further alleged that, as a result of the unlawful conspiracy, they and other purchasers paid more for polyester staple than they would have paid absent the conspiracy. Defendants named in the Complaints included Wellman, Inc., Nan Ya Plastics Corporation; Nan Ya Plastics Corporation, America; E.I. DuPont de Nemours and Company; DAK Americas LLC; DAK Fibers LLC.; Arteva Specialties LLC d/b/a KoSa and now named INVISTA S.ar.l.; Arteva Specialties S.ar.l.; and Koch Industries. This litigation has been resolved through settlements.

***In re: Vehicle Carrier Services Antitrust Litigation (MDL No. 2471)* (*USDC North Carolina*)** – BTL filed one of the first cases in the country representing indirect purchasers of vehicle carrier services. Vehicle carriers transport large numbers of cars, trucks or other automotive vehicles including agriculture and construction equipment across large bodies of water using specialized cargo ships known as roll on/roll off vessels. The litigation alleges a conspiracy among certain vehicle carriers, between January 1, 2008 and May 24, 2013, to fix, raise, maintain and/or stabilize prices, and allocate the market and customers in the United States for, vehicle carrier services in violation of certain state and federal laws. This litigation has been resolved through settlements.

***In re: Aluminum Warehousing Antitrust Litigation (MDL No. 2481)* (*USDC Southern District of New York*)** – BTL filed a claim on behalf of an aluminum and precious metals company claiming that they overpaid for aluminum and other precious metals. Facts alleged in support included allegations that Defendants hoarded, stockpiled and manipulated the supply of physical

aluminum stored in their warehouses in Detroit; Defendants hold 1.5 million tons of raw aluminum in 29 industrial warehouses throughout the Detroit-metro area; Defendants made illicit payments to potential customers to secure aluminum for storage in Detroit to further their scheme; Defendants shuttled 3,000 tons of aluminum per day from one Detroit area warehouse to another to further their scheme; and Defendants agreed to charge three times the market rate for storage in the Detroit warehouses. Branch offs of this case are being litigated. This matter has been concluded.

***In re: Dynamic Random-Access Memory 2 Antitrust Litigation (MDL TBD) (USDC Northern District of California)*** - BTL recently filed among the first-class action complaints advanced on behalf of all persons and entities in the United States who purchased Dynamic Random Access Memory ("DRAM") directly from manufacturers between June 1, 2016, through February 1, 2018. The complaint alleges that the officers, directors, employees, agents, or other representatives entered a continuing contract, combination, or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. and through their unlawful conspiracy, artificially raised, inflated, and maintained the market price of DRAM. This litigation has been resolved through settlements.

## Other Exemplar Consumer-Based Litigation

***In re Apple Securities Litigation*** **(Superior Court of California)** – BTL filed on behalf of Apple shareholders claims that an exclusive group of tech elites created and/or ratified policies and protocols that suppressed innovation for ten years. The case asserted that Apple's co-founder and former CEO, Steve Jobs, and executives entered into illegal non-solicitation agreements with executives at other companies, such as Adobe Systems, Google, Inc., and Intel Corporation, with whom they had professional and personal relationships. These agreements provided that Apple and other companies would not recruit each other's employees, thus regulating the competition for talent and suppressing job mobility. "Silicon Valley's vast wealth and warped sense of entitlement led to an audacious conspiracy to suppress salaries," *Bloomberg Businessweek* had reported. Those agreements effectively stunted the success of the Bay Area's innovation which was based on the frequent turnover of employees to diffuse information and spur innovation.

***Dale Bozzio/Missing Persons v. EMI Group Limited et al (USDC Northern District of California Oakland Division and Ninth Circuit Court of Appeals #13-15685)*** - BTL filed a lawsuit in the Northern District of California, that arose from the widespread and systematic breach of recording contracts involving legacy musicians. The complaint was brought on behalf of a nationwide class for breach of contract and statutory violations of California law against Defendants EMI Group Limited; Capitol Records, LLC; EMI North America, LLC; EMI Recorded Music; and EMI Marketing (collectively referred to herein as "EMI"). The complaint alleged that EMI's failure to properly account for and pay its recording artists and music

producers for income it received and continues to receive, from the licensees of its recorded music catalog for the sale of digital downloads, ringtones and streaming music (collectively, "digital content"). The Standard EMI Recording Agreement typically sets forth payments to EMI's recording artists and producers for licensing of masters at 50% of the receipts of EMI, rather than a lesser percentage (typically 12% to 20%) as a royalty paid to the artist or producer based on the price of each unit sold. The Ninth Circuit overturned the USDC dismissal of the action as to Bozzio on the basis of standing. BTL was co-author of the successful appellate briefing. This case was resolved following a successful 9th Circuit appeal.

***In re Contact Lens (MDL 2626) (USDC Middle District of Florida) -*** BTL co-filed a class action lawsuit on behalf its clients in sixteen states, and the District of Columbia. The complaint alleges a conspiracy among four manufacturers and the largest distributor of contact lenses in the United States (CooperVision, Inc., Alcon Laboratories, Inc., Bausch & Lomb Incorporated, and Johnson & Johnson Vision Care, Inc.) to eliminate discounting among retailers of contact lenses and to artificially fix, raise, maintain and/or stabilize the prices charged to consumers. Plaintiffs allege that they were subject to price floor policies during the period from and including June 1, 2013 through such time as the anticompetitive effects of Defendants' unlawful conduct ceases. As of mid-2014, nearly 40 million Americans wore contact lenses and spent $4.2 billion on them annually. The manufacturer Defendants dominate and collectively control over 97% of the contact lens market in the United States. Plaintiffs allege that the Defendants set a minimum price below which no reseller could advertise or sell a particular line of contact lenses. This litigation has been resolved through settlements.

***In re: Vehicle Carrier Services Antitrust Litigation (MDL 2471) (USDC District of New Jersey) -*** BTL represented indirect purchasers of vehicle carrier services in eleven states. Vehicle carriers transport large numbers of cars, trucks or other automotive vehicles including agriculture and construction equipment across large bodies of water using specialized cargo ships known as roll on/roll off vessels. The complaint alleges violations of certain state and federal laws as a direct result of a conspiracy among certain vehicle carriers, between January 1, 2008 and May 24, 2013, to fix, raise, maintain and/or stabilize prices, and allocate the market and customers in the United States for, vehicle carrier services. This litigation has been resolved.

***In re: Hyundai and Kia Fuel Economy Litigation*** (***MDL 2424*** (***USDC Central District of California) -*** BTL filed a putative class-action lawsuit against Hyundai Motor America, Hyundai Motor Company of Korea, Kia Motors America, and Kia Motor Company of Korea as a result of their admission that they overstated the fuel economy for many vehicles they sold in the United States after independent tests by the Environmental Protection Agency (EPA) showed a discrepancy. The multi-district class action lawsuit in the District of Central California was brought on behalf all consumers who own or lease Hyundai and Kia vehicles whose EPA fuel economy ratings were less than the fuel economy rating produced by the applicable federal test in that model's year. BTL and others ("Non-Settling Parties") tested the sufficiency of a

proposed settlement. BTL was requested to and played a major role in the related litigation advanced by the Non-Settling Parties and as a result the original settlement was greatly improved. Bonsignore LLC supports the current settlement that is pending final approval. Hyundai will lower fuel-consumption estimates on most Hyundai and Kia models produced in 2012 and 2013.  This case was resolved through settlements.

***In re: (CRT) Antitrust Litigation (MDL 1917) (USDC Northern District of California)* -** BTL filed one of the first indirect purchaser cases in the country and coordinated the filing of 12 other cases. The nationwide action alleges a price-fixing conspiracy in the CRT industry. Bonsignore waived a fee of over one million dollars to object to the settlement and now represents indirect end users from New Hampshire, Massachusetts, and Missouri who were excluded from the settlement. After BTL filed the lead appellate briefs, Mr. Bonsignore was selected to serve as lead off counsel at oral argument. Following oral argument, the Ninth Circuit ordered the parties to mediation. Mr. Bonsignore later served as co-lead negotiator for the appellants. The Ninth Circuit remanded the case to the district court, overturning a settlement of over $500 million. This matter has been concluded.

***In re: Publication Paper Antitrust Litigation (M.D.L.1631)* (*USDC Connecticut)*** - Robert Bonsignore served as Lead Counsel in MDL 1631 for all Indirect End Use Purchasers. This action focused on alleged national and international price fixing of certain types of publication grade paper during certain time periods. Final approval of a class action settlement against the last remaining Defendants was approved. This case was resolved through settlements.

***In re: Massachusetts Smokeless Tobacco Litigation (Massachusetts Superior Court Business Litigation Session)* -** Robert Bonsignore was appointed as Co-Lead Counsel by the Chief Justice of the Business Litigation Session for the Commonwealth of Massachusetts. This action was fiercely litigated for 7 years. Notably, this was the first contested indirect purchaser class action in the Commonwealth of Massachusetts to be certified. The action sought economic damages for consumers and alleged that U.S. Smokeless unlawfully created and maintained an unlawful monopoly and artificially inflated prices. The action was also noteworthy because Mr. Bonsignore certified a fifteen-year class period by successfully establishing that fraudulent concealment of the bad acts was included in the questioned conduct. The all-cash settlement provided the greatest recovery per consumer (consumer class members were eligible to receive up $700 cash) in any price-fixing action brought against the manufacturers of moist smokeless tobacco. This matter was resolved through settlements.

***In re: New Hampshire Smokeless Tobacco Litigation (New Hampshire Superior Court)* -** Robert Bonsignore served as Lead Counsel. Notably, this was the first contested indirect purchaser class action in the state of New Hampshire. The cause made its way to the New Hampshire Supreme Court who extended its narrow interpretation of consumer protection

statutes and allowed the Plaintiffs' claims to proceed. This successfully created new common law right of end-use indirect purchasers to bring an action to recover economic loss was later codified. The action was also noteworthy because Mr. Bonsignore again certified a fifteen-year class period by successfully establishing that fraudulent concealment of the bad acts was included in the questioned conduct. This matter was resolved through settlements.

*In re: California Vitamin Cases* **(San Francisco Superior Court)** – Robert Bonsignore served on the Executive Committee in *In re: Vitamin Cases* which was settled on behalf of California indirect purchasers. This action advanced antitrust claims against an international cartel of vitamin manufacturers accused of fixing prices and allocating markets in every level of the chain of distribution. The court granted final approval of a settlement with certain vitamin manufacturers in a class action alleging that these and other manufacturers engaged in price fixing of particular vitamins. This matter was resolved through settlements..

*In re: Dynamic Random Access Memory Antitrust Litigation (MDL 1486) (USDC Northern District of California)* – Robert Bonsignore filed one of the first indirect purchaser DRAM cases in the country. Bonsignore was selected to serve as a member of the Executive Committee. Subsequent to filing, BTL coordinated the consolidation and coordination of like cases in 48 states. The nationwide action alleged a price-fixing conspiracy in the DRAM industry. Robert Bonsignore was appointed by the USDC to serve as interim lead counsel of a related putative class, later absorbed into MDL 1486. This matterwas resolved through settlements.

*In re: Chocolate Antitrust Litigation (MDL 1935)* **(***USDC Middle District of Pennsylvania***)** - BTL represented indirect end use purchasers of chocolate in 14 of 29 states involved in the litigation. The action alleged an international price-fixing conspiracy in the chocolate industry. Robert Bonsignore was responsible for taking numerous depositions of the Defendant's corporate officers, engaged in corporate document discovery, and was designated to serve as the discovery liaison with the largest purchaser of chocolate in the United States. Mr. Bonsignore also served on the 5-person Plaintiffs' Settlement Negotiation team and the expert witness and class certifications teams. Other firm members carried out numerous massive document review projects. This case was dismissed. An appeal was not taken.

*In re: Wal-Mart Wage and Hour Practices Litigation (MDL 1735) (USDC District of Nevada and Ninth Circuit Court of Appeals)* - This successfully and finally resolved multi–district class action is the largest certified class in a wage and hour case in United States history. The filing, coordination and prosecution of coordinated proceedings in 39 states were found to have been the brainchild of Robert Bonsignore. Bonsignore first successfully argued that the litigation should be granted MDL status and coordinated for all pre-trial proceedings. Mr. Bonsignore was then appointed to serve as national Co-Lead Counsel in this multi-district litigation and fully litigated the action. This action focused on allegations that Wal-Mart systematically failed to pay

its hourly employees for all time worked, including supplemental benefits. The action settled for $85 million dollars plus injunctive relief designed to prevent the alleged violations from occurring again. After the settlement received final approval a law firm that entered the case one-month prior to the execution of the Settlement Agreement purchased an interest in the attorney fees award ("Objector"). After allocation of the attorney fees was arbitrated, the Objector filed an federal Arbitration Act appeal of the arbitration award. The district court rejected that appeal in a lengthy opinion, finding the challenge to be meritless. The Objector appealed to the Ninth Circuit Court of Appeals. On December 18, 2013, nearly 10 years after the litigation was filed the Ninth Circuit found the appeal to be meritless and affirmed the district court's ruling. Robert Bonsignore briefed and argued all appeals. Mr. Bonsignore's oral argument before the Ninth Circuit Court of Appeals can be heard at http://www.ca9.uscourts.gov/media/view.php?pk_id=0000011351. (*Carolyn Burton, et al. v. Class Counsel and Party to Arb, et al.,* No. 11-17718). This matter was resolved through settlements.

***In re: Wal-Mart Massachusetts Wage and Hour Litigation-*** Bonsignore served as Class Counsel in *Salvas v. Wal-Mart Stores, Inc.,* a certified Massachusetts class action of 67,000 hourly employees alleging wage and hour violations against Wal-Mart occurring in the Commonwealth of Massachusetts. This action is the largest certified employment class in Massachusetts state history. Notably, rulings and bodies of evidence obtained in this action have been relied upon in other employment litigation around the country. Attorney Robert Bonsignore successfully convinced the Massachusetts Supreme Judicial Court to reverse a trial court decision decertifying the class. The argument, which is the second most watched archived SJC argument, set numerous precedents that have been frequently cited in numerous decisions. This matter was resolved through settlements.

***Opioids -*** (including but not limited to: In Re: National Prescription Opiate Litigation (MDL 2804 )(United States District Court Northern District Of Ohio Eastern Division: In re: Purdue Pharma, L.P., et al., Case No. 19-23649 (RDD) (Bankr. S.D.N.Y. ($10 billion settlement); In Re Mallinckrodt PLC., et al., (United States Bankruptcy Court For The District Of Delaware)( Case No.20-12522) ($1.65 billion settlement) and In Re Insys Therapeutics, Inc., Case No. 19-11292 (KG) (D. Del.) BTL has actively pursued the case against the manufacturers, distributors of Opioids on behalf of 9 of the 10 New Hampshire Counties and cities and towns throughout Massachusetts and New Hampshire. In this litigation BTL primarily served as Lead Local Counsel and was responsible for obtaining all evidence relating to the economic loss suffered by each governmental entity. Several settlements have been reached and others are pending including those in the bankruptcy Court. The Center for Decease Control has reported that in the United States, prescription opioid abuse costs may approximate $55.7 billion annually and each governmental entity incurred significant expense related to the Opioid Epidemic and will certainly incur future related expenses.

*In re: Paraquat* – Bonsignore actively represents victims of Paraquat including farm workers, sprayers, and people who lived in the proximity of farms that used Paraquat. Plaintiffs allege that Paraquat was negligently, willfully, and wrongfully designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, and sold. All Plaintiffs in this action suffer from Parkinson's disease.

*In re: Round-Up* – Bonsignore represents approximately 100 victims of Round Up. BTL's clients are among the first in the country to settle their cases and he has already recovered over $2 million with many more settlements still in the works. Plaintiffs allege that Monsanto negligently, willfully, and wrongfully designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, and sold Roundup® and other Monsanto glyphosate-containing products. All Plaintiffs in this action suffer from Non-Hodgkin's Lymphoma ("NHL") which was directly caused by the dangerous and defective nature of Roundup®, and its active ingredient, glyphosate.

*In r: Hernia Mesh (Pending in Diverse Jurisdictions)* – Hernia mesh is an unnecessary product that was created as a profit center by unscrupulous medical device companies who then compounded their misconduct through a series of marketing ploys from medically unsound fish oil to bold, yet unsupported claims of efficacy. BTL so successfully litigated a claim on behalf of an individual mesh recipient that it was requested to create the consolidated litigation. The Hernia Mesh complaints advance claims that focus on a number of theories, some specific to a particular product. They include defective design, manufacture, production, testing, study, research, training, inspection, labeling, marketing, advertising, sales, promotion, and/or distribution of the hernia mesh products. BTL represents approximately 250 mesh clients. The litigation is spread out across the country and continues.

*In re: Silicone Gel Breast Implant Product Liability Litigation (MDL 926) (USDC Northern District of Alabama and USDC Eastern District of Michigan)* – Bonsignore represented over 400 pre-1991 recipients of saline and silicone breast implants. During the multi-district litigation, Bonsignore served as Co-Counsel and on the Discovery Committee and was part of the discovery team. A $2.35 billion fund was created in one of the largest class action settlements in U.S. history. This case has been settled. Mr. Bonsignore resolved the claims of 2500 breast implant claimants.

*In re: Mercury Vaccine Litigation* (multiple jurisdictions) – Bonsignore filed several of the first consumer protection class action cases in the country alleging that the toxic levels of mercury coupled with the increased number of vaccinations poisoned infants and directly caused their learning disabilities and autism. The action sought medical monitoring, a public release of related studies and data that could be used in diagnosis and treatment, and reimbursement of families as well as local and federal government for the staggering costs associated with the

treatment of the affected children. The firm helped spearhead a collective group of North America's best trial lawyers and significantly contributed to this national litigation. Bonsignore served on the Executive, Science, Expert, Class Certification, State Coordination and Discovery Committees. The related claims gained no traction because the science relied upon were compromised when a researcher exaggerated his findings. The sudden and continuing spike in the rate of autism remains stunning and unexplained. This case was dismissed.

***In re: Rezulin Products Liability Litigation* (MDL 1348) *(USDC Southern District of New York)* -** Bonsignore filed one of the first wrongful death, liver failure and consumer protection class action cases in the country. The action alleged that the makers of the diabetes drug did not adequately test its safety and efficacy prior to mass marketing it to consumers. On March 21, 2000, per the FDA's request, Warner-Lambert finally issued the Rezulin recall after its controversial run on the U.S. market. Robert Bonsignore's early aggressive discovery led to the key admission that Warner Lambert had health department reviewers of the drug on its payroll at the time it was approved. Bonsignore served on the Science, Expert, Class Certification, State Coordination and Discovery Committees in the multi-district action. In addition, Bonsignore was selected to take critical depositions. Mr. Bonsignore secured the largest single award in an individual action, obtaining a $3.75 million-dollar recovery for his client. The remainder of this matter was resolved through settlements.

***In re: Sulzer Orthopedics, Inc., Hip Prothesis and Knee Prothesis Product Liability Litigation* (MDL 1410) *(USDC Northern District of Ohio)* -** Bonsignore filed one of the first hip failure consumer protection class actions cases in the country. Bonsignore took and attended the first depositions obtaining key admissions. The aggressive discovery conducted by Bonsignore resulted in key admissions by one of its chief worldwide recall investigators. The multi-district class action alleged that the makers of hip and knee prostheses negligently coated these medical devices with commercial grade motor oil and did not adequately test safety and efficacy prior to mass marketing to consumers. The related products were recalled from the United States market. A settlement was reached approximating $1 billion. This matter was resolved through settlements.

***In re: Lead Paint* –** Bonsignore represented the City of Providence Rhode Island in an action seeking to have the manufacturers of lead paint pay for its removal and to pay for the costs absorbed by the city for the health care and special education of children who suffered from lead paint poisoning.

**PRINCIPAL**

**ROBERT J. BONSIGNORE**. Mr. Bonsignore began his career in the Office of the District Attorney for Middlesex County, Massachusetts. Since 1990 when he began his own law firm

specializing in complex litigation and trial work, he has been lead trial counsel in cases with jury verdicts totaling in excess of $350 million dollars. Mr. Bonsignore is AV rated by Martindale Hubbell and was awarded Diplomat status by the National College of Advocacy. Mr. Bonsignore is frequently requested to speak at Continuing Legal Education seminars across the country. He has lectured on topics ranging from antitrust to consumer advocacy and from trial techniques to ethics. He has co-authored a trial technique treatise on Direct Examination for Lexus/Nexus.

Mr. Bonsignore has extensive experience in antitrust, consumer protection, complex litigation, class actions, multi-district litigation, Judicial Panel on Multi-District Litigation proceedings, and commercial cases. He also has received significant jury verdicts in wrongful death and catastrophic injury cases.

Between 2001 and 2004, Mr. Bonsignore was appointed Lead Counsel in five separate certified class actions by the Chief Justice of the Business Litigation Session for the Commonwealth of Massachusetts advancing claims raised pursuant to the Massachusetts Consumer Protection statute - Massachusetts General Law 93A. All were finally approved without appeal. Mr. Bonsignore was also appointed Lead or Co-Lead counsel in four other certified and class actions that were finally approved. Mr. Bonsignore successfully argued the re-certification of the largest employment class action in Massachusetts' history at the Supreme Judicial Court level. At the trial court level, Mr. Bonsignore presented the oral argument at the first contested end use consumer indirect purchaser monopolization class action to be certified pursuant to Mass. General Laws Chapter 93A.

Mr. Bonsignore is frequently called upon to serve as counsel in team approach litigation because of his decades-long experience and proven track record in multi-district litigation. After establishing himself as a trial lawyer and working cooperatively in the Silicon Breast Implant Litigation in 2000, Mr. Bonsignore was selected as the firm representative of Robinson, Calcagnie & Robinson to the "megafirm" of Herman, Middleton, Casey, Kitchens & Robinson ("HMCKR"). HMCKR formally brought together nationally top-ranked law firms to jointly prosecute MDL actions (multi-district class actions) and other complex litigation involving

antitrust, unfair competition, and pharmaceutical matters. Other mega-firm members selected Mr. Bonsignore based on his skill, experience, work ethic accomplishment, and demonstrated ability to work cooperatively with co-counsel and opposing counsel on a multitude of projects.

Mr. Bonsignore was extensively involved in trial preparation in cases against tobacco manufacturers brought by public entities as well as private attorneys general and was counsel of record for the former Governor of California as well as Orange and Los Angeles counties. He is presently retained by the majority of counties in New Hampshire to represent them in the Opioid

Litigation. He also advises them on antitrust litigation. Mr. Bonsignore first drafted the State of Rhode Island's indirect end use purchaser antitrust laws and advised the City of Providence, Rhode Island throughout the legislative process.

In cases pending in United States federal courts, Mr. Bonsignore has been appointed lead counsel in 3 cases assigned Multi-District Litigation status by the Judicial Panel on Multi-District Litigation. MDL 1631 consolidated all indirect purchaser anti-trust actions filed nationwide addressing price fixing in the publication paper industry. MDL 1735 consolidated cases nationwide addressing wage and our violations by Wal-Mart Inc. Both actions in which Mr. Bonsignore was appointed Lead Counsel were settled after being aggressively litigated and received final approval. Mr. Bonsignore presently serves as Lead Counsel in MDL 2566, *In re TelexFree Securities Litigation*.

Mr. Bonsignore has served as a member of the American Antitrust Institute's Board of Directors since 2009. The American Trial Lawyers Association has selected him as a peer reviewed "Top Trial Lawyer" each year since 2007. In 2010, he received the Outstanding Public Service Award from the Ipswich River Foundation. He is a 2010 graduate of the Trial Lawyers College. Mr. Bonsignore served as antitrust advisor to the Chief Counsel for the City of Providence, Rhode Island. Legislation Mr. Bonsignore initially drafted that provided for municipalities and school districts to bring an indirect purchaser antitrust case was eventually signed into law in 2013. In 2020 he made a substantial donation to the Medford Public Library and a conference room was named in his family's honor in the new Bloomberg Public Library.

Mr. Bonsignore has successfully tried to verdict several high-profile cases including cases selected by the Association of Trial Lawyers of America (ATLA) as the most outstanding jury verdicts of the year. Legal publications have featured Mr. Bonsignore's success in first obtaining admissions of payoffs to medical reviewers in the Rezulin litigation. Mr. Bonsignore's finding of Sulzer's document destruction in the hip replacement litigation was publicized in the United States and Europe. His work on Sulzer hip litigation also merited a feature story in the European news magazine FACTS, where he was headlined as the "American Killer Lawyer."

Mr. Bonsignore is a past recipient of the F. Scott Baldwin Most Outstanding Young Trial Lawyer in America Award that he received in 1997. He also is a seven-time recipient of the prestigious Wiedemann-Wysocki Citation of Excellence Award that is awarded by the trial bar to the most outstanding members of its ranks. In 1994, he received the Massachusetts Junior Chamber of Commerce Most Outstanding Young Leader Award, and in 1997 he was honored by

the Massachusetts Bar Association with the Most Outstanding Young Lawyer Award. In 2005, Mr. Bonsignore was presented with the Joseph Tonihill award that is recognized as the most

prestigious award presented by the Association of Trial Lawyers of America for consumer advocacy.

As a past Chair of the Association of Trial Lawyers of America, Young Lawyers Division, Mr. Bonsignore was credited with creating the practice of appointing one man and one woman representative wherever possible in each representative member state, province or country for the purpose of representing the interests of young lawyers to the bar. He created and instituted a program promoting local public service by young lawyers. In recognition of the nature and scope of this undertaking and before its demise, the Association of Trial Lawyers of America Young Lawyers Division, presented the Robert J. Bonsignore Public Service Award to a representative bar group that performs the most outstanding acts of public service.

Mr. Bonsignore previously served on the Boards of the non-profit Trial Lawyers for Public Justice and was a national officer for the Civil Justice Foundation. Mr. Bonsignore is a Life Member of the National Conference of Bar Presidents of the American Bar Association and has served on the Articles and Bylaws Committee since 1999. Mr. Bonsignore has previously served as a Consumer Advisory Commissioner for the Office of the Attorney General for the Commonwealth of Massachusetts and as an Assistant District Attorney for Middlesex County. Forbes Sky Radio selected Mr. Bonsignore as one of America's Best Lawyers. Mr. Bonsignore is an Assistant Scout Master for Scout Troop 143, St Viator School, Black Mountain District, Las Vegas Area Counsel and the proud father of two Eagle Scouts and a pending Congressional Medal of Honor winner. His youngest daughter was the first female Scout in her District.

During 2018 and 2019 Mr. Bonsignore was requested to give about 10 Continuing Legal Education (CLE") programs on behalf of "for pay" CLE companies on complex litigation, discovery, class actions, and e discovery. He is the author of Westlaw's Litigating Tort Cases; Chapter 39. Direct Examination of Lay Witnesses. He most recent request to offer a course on CLE on MDL practice, class actions, and complex litigation has been put on hold in light of the above considerations.

# EXHIBIT 2

## TIME REPORT

**FIRM NAME:** Bonsignore Trial Lawyers, PLLC
**REPORTING PERIOD:** 1/1/2022-3/15/2024

**Categories:**
(1) DISCOVERY
(2) ADMINISTRATION
(3) BRIEFS MOTIONS AND PLEADINGS
(4) LITIGATION STRATEGY, ANALYSIS AND CASE MANAGEMENT
(5) COURT APPEARANCES

(6) TRIAL PREP
(7) SETTLEMENT NEGOTIATIONS AND DRAFTING
(8) APPEAL
(9) BANKRUPTCY

**Status:**
(P)  Partner
(A)  Associate
(LC) Law Clerk
(PL) Paralegal
(OC) Of Counsel
(DR) Document Reviewer

| NAME | STATUS/YEAR | (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) | (9) | Current Hours | Hourly Rate | Current Lodestar | Previous Hours | Previous Lodestar | Cumulative Hours | Cumulative Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Robert Bonsignore | P/2022-2024 | 161.50 | | 15.90 | 22.50 | | | | | | 199.90 | $ 950.00 | $ 189,905.00 | - | $ - | 199.90 | $ 189,905.00 |
| Melanie Porter | P/2023-2024 | 127.30 | 1.50 | 32.00 | 105.90 | | | | | | 266.70 | $ 950.00 | $ 253,225.00 | - | $ - | 266.70 | $ 253,225.00 |
| Melanie Porter | P/2022 | | | | 1.20 | | | | | | 1.20 | $ 850.00 | $ 1,020.00 | | $ - | 1.20 | $ 1,020.00 |
| Frances Whitaker | A/2022-2023 | 1.60 | | | | | | | | | 1.60 | $ 750.00 | $ 1,200.00 | - | $ - | 1.60 | $ 1,200.00 |
| | | | | | | | | | | | | | $ - | | $ - | | $ - |
| **ATTORNEY TOTALS** | | **290.40** | **1.50** | **47.90** | **129.60** | **-** | **-** | **-** | **-** | **-** | **469.40** | | $ 445,350.00 | - | $ - | 469.40 | $ 445,350.00 |
| Ross Friedman | LC/2022-2024 | 107.40 | 10.20 | 11.60 | | | | | 20.30 | | 149.50 | $ 250.00 | $ 37,375.00 | - | $ - | 149.50 | $ 37,375.00 |
| | | | | | | | | | | | 0.00 | | $ - | - | $ - | 0.00 | $ - |
| **NON-ATTORNEY TOTALS** | | **107.40** | **10.20** | **11.60** | **0.00** | **0.00** | **0.00** | **0.00** | **20.30** | **0.00** | **149.50** | | $ 37,375.00 | - | $ - | 149.50 | $ 37,375.00 |
| | | | | | | | | | | | | | | | | | |
| **TOTALS** | | **397.80** | **11.70** | **59.50** | **129.60** | **0.00** | **0.00** | **0.00** | **20.30** | **0.00** | **618.90** | | $ 482,725.00 | - | $ - | 618.90 | $ 482,725.00 |

**JetBlue**
**EXPENSES REPORT**

**FIRM NAME: Bonsignore Trial Lawyers, PLLC**
**REPORTING PERIOD:  January 1st, 2021 - March 12, 2024**

| DESCRIPTION | Jan 2021 - Feb 2024 Expenses | CUMULATIVE  EXPENSES |
|---|---|---|
| FILING COSTS (Court Cost, Exhibits) | $1,250.00 | $1,250.00 |
| LITIGATION FUND ASSESSMENTS | | $0.00 |
| TRANSCRIPTS OF PROCEEDINGS OR DEPOSITIONS | | $0.00 |
| LONG DISTANCE TELEPHONE CHARGES | | $0.00 |
| FASCIMILE CHARGES | | $0.00 |
| PHOTOCOPYING CHARGES (Photcopies @ $0.15/page) - 1,083 pages | $162.45 | $162.45 |
| FEDERAL EXPRESS / OVERNIGHT DELIVERY / COURIER | | $0.00 |
| POSTAGE CHARGES | | $0.00 |
| SECRETARIAL AND CLERICAL OVERTIME (PRE-APPROVED) | | $0.00 |
| TRAVEL (Travel, Air, Shuttle, Rental, Parking, Lodging, Meeting) | $2,515.56 | $2,515.56 |
| SERVICE OF PROCESS (Services, Sheriff) | | $0.00 |
| EXPERT WITNESS FEES (Expert, Expert Witness) | | $0.00 |
| OTHER PROFESSIONAL SERVICES (ITEMIZE):  Supplies for remote depositions | $43.00 | $43.00 |
| MISCELLANEOUS / OTHER (DESCRIBE) **(line of credit interest)** | | $0.00 |
| **TOTAL FEES** | | |
| **TOTAL EXPENSES** | $3,971.01 | $3,971.01 |
| **TOTAL FEES AND EXPENSES** | $3,971.01 | $3,971.01 |