# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GABRIEL GARAVANIAN, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No.: 1:23-cv-10678-WGY |
| JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC., | |
| *Defendants*. | |

## MEMORANDUM IN SUPPORT OF MOTION
## FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

APPLICABLE LAW .............................................................................................................6

ARGUMENT ........................................................................................................................7

    I.     Plaintiffs "substantially prevailed" in this case and should be granted reasonable attorneys' fees, costs, and expenses. .......................................................7

    II.    Plaintiffs' Request for Fees is Reasonable. ...........................................................12

        A  The Time and Labor Expended by Counsel (i.e., the Lodestar). .....................12

        B  This Court should apply a fee multiple between 3.0 and 5.0 to the calculated lodestar fee amount. ..................................................................13

        1.     The Risk Associated with the Litigation .....................................................15

        2.     The Magnitude and Complexities of the Litigation ....................................18

        3.     The Quality Of Representation ....................................................................20

        4.     Public Policy Considerations Favor Applying a Significant Multiplier to the Lodestar. ........................................................................21

CONCLUSION....................................................................................................................21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arcell, et al. v. JetBlue Airways Corp. and Spirit Airlines*,
  Case No. 23-1897 (1st Cir. Mar. 18, 2024) .................................................5

*Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*,
  512 F. Supp. 3d 196 (D. Mass. 2020), *aff'd in part, appeal dismissed in part
  sub nom. Arkansas Tchr. Ret. Sys. v. State St. Corp.*, 25 F.4th 55 (1st Cir.
  2022) ........................................................................................................18

*Campbell-Ewald Co. v. Gomez*,
  577 U.S. 153 (2016)....................................................................................9

*Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*,
  434 U.S. 412 (1978) (describing Clayton Act § 4, 15 U.S.C. § 15) .........6

*City of Chanute, Kan. v. Williams Natural Gas Co.*
  (10th Cir. 1994) 31 F.3d 1041 ...................................................................6

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)......................................................................18

*Conley v. Sears Roebuck and Co.*,
  222 B.R. 181 ............................................................................................14

*Costco Wholesale Corp. v. Hoen*,
  538 F.3d 1128 (9th Cir. 2008) (describing Clayton Act § 16, 15 U.S.C. § 26)...................6, 7

*Decker v. Northwest Environmental Defense Center*,
  568 U.S. 597 (2013)....................................................................................9

Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.,
  62 F.4th 704 (2d Cir. 2023) ......................................................................14

*Home Placement Service, Inc. v. Providence Journal Co.*,
  819 F.2d 1199 (1st Cir. 1987)..................................................................6, 7

*J.S. v. Westerly School District*,
  910 F.3d 4 (1st Cir. 2018)...........................................................................8

*Hutchinson ex rel. Julien v. Patrick*,
  636 F.3d 1 (1st Cir. 2011).......................................................................7, 12

*Knox v. Serv. Emps. Int'l Union, Local 1000*,
  567 U.S. 298 (2012)....................................................................................8

*Knutson v. Daily Rev., Inc.*,
    479 F. Supp. 1263 (N.D. Cal. 1979) ...............................................................16

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
    587 U.S. 370 (2019) ...........................................................................................8

*N. Heel Corp. v. Compo Indus., Inc.*,
    851 F.2d 456 (1st Cir. 1988) ...........................................................................14

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.*,
    602 F. Supp. 2d 277 (D. Mass. 2009) .............................................................18

*Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*,
    776 F.2d 646 (7th Cir. 1985) ....................................................................12, 16

*Oil, Chemical and Atomic Workers Intern. Union, AFL-CIO v. Department of
Energy*,
    288 F.3d 452 (D.C. Cir. 2002) ..........................................................................6

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010) ...................................................................................12, 14

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
    630 F. Supp. 3d 241 (D. Mass. 2022) ........................................................14, 18

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005) .......................................................................14

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3rd Cir. 2005) ..........................................................................14

*Suarez-Torres v. Panaderia Y Reposteria Espana, Inc.*,
    988 F.3d 542 (1st Cir. 2021) ...........................................................................7, 8

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,
    724 F. Supp. 160 (S.D.N.Y. 1989) ..................................................................15

*United States, et al. v. JetBlue Airways Corp., et al.*,
    No. 24-1092 (1st Cir.) .......................................................................................4

*United States v. One Star Class Sloop Sailboat built in 1930 with hull no. 721,
named "Flash II"*
    546 F.3d 26 (1st Cir. 2008) .............................................................................13

*United States v. US Airways Grp., Inc.*,
    38 F. Supp. 3d 69 (D.D.C. 2014) ....................................................................17

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ...................................................................................14

*Weinberger v. Great N. Nekoosa Corp.*,
   801 F. Supp. 804 (D. Me. 1992) ...........................................................................14, 16

**Statutes**

Clayton Act ..................................................................................................................... *passim*

Fed. R. Civ. P. 54(d) ....................................................................................................1, 13

## INTRODUCTION

Plaintiffs respectfully submit this memorandum in support of their motion for attorneys' fees and costs pursuant to the Clayton Act, 15 U.S.C. § 26 and Fed. R. Civ. P. 54(d). Section 16 of the Clayton Act provides that "in any action [ ] in which the plaintiff substantially prevails, the court *shall* award the cost of suit, including a reasonable attorney's fee, to such plaintiff." As set forth below, Plaintiffs here are entitled to attorneys' fees because they prevailed in their action against Defendants.

On November 3, 2022, Plaintiffs filed this Action to stop the planned merger between JetBlue Airways Corp. ("JetBlue") and Spirit Airlines, Inc. ("Spirit"). Months later, on March 7, 2023, the United States filed its complaint, setting its sights on the same relief sought by Plaintiffs and premising their case on the same statutory violations. *See United States v. Jet Blue Airways Corporation et al.,* 1:23-cv-10511 (the "DOJ Case"). On January 16, 2024—after these Plaintiffs engaged in hard-fought litigation, including extensive discovery, these Plaintiffs and the government obtained the relief that they sought when the Court enjoined the merger. Although the injunction was granted following a trial of the government's claims involving the same issues and against the same defendants in the DOJ Case, Plaintiffs lawsuit substantially contributed to the DOJ's victory, including as it related to the evidence of direct harm that the public would suffer following the merger. Indeed, this Court expressly acknowledged the impact of its ruling on Spirit's customers in its ruling in the DOJ Case, noting "Spirit is a small airline. But there are those who love it. To those dedicated customers of Spirit, this one's for you…because the Clayton Act requires this result." The Court's ruling underscores the soundness of Plaintiff's claims.

Defendants cannot reasonably dispute that Plaintiffs' litigation efforts contributed to the relief awarded. At the time Plaintiffs filed their complaint in November 2022, they alone bore the

burden of maintaining Spirit's existence as a low-cost carrier. Not only had the government not filed its lawsuit yet, but the government had not challenged an airline merger since 2008.[1] Plaintiffs' complaint became a roadmap to the relief obtained, as Plaintiffs were the first to file a lawsuit alleging Clayton Act violations and articulating the anticompetitive effects of the merger that would negatively affect approximately 44 million passengers, including overlapping flights, market share, Jet Blue's plans for fare increases, and reduced capacity. After the two cases were consolidated, the government and Plaintiffs coordinated during discovery. Even though Plaintiffs were not permitted to try their case, they were ready and prepared to do so even after the government obtained the injunctive relief requested. Thus, Plaintiffs are prevailing parties in this Action and are entitled to their reasonable fees and costs.

The amount of fees and costs that Plaintiffs incurred are amply supported by detailed time records, accounting entries, and third-party invoices as set forth in the accompanying declarations and exhibits.  Moreover, declarations of Plaintiffs' counsel which support these records are attached hereto.  These records show that Plaintiffs incurred $724,066.31 in litigation costs, consisting primarily of expert costs, discovery costs, document management expenses, transcription fees, filing fees, and travel costs to attend hearings and depositions.

Plaintiffs' records also show that the lodestar amount of fees incurred by Plaintiffs' counsel at normal and reasonable standard rates was $6,807,175.50.  However, Plaintiffs respectfully request that the Court apply a multiplier ranging between 3.0x and 5.0x.  Plaintiffs' request for a multiplier is reasonable given the nature of the case; the hours expended; the significant risk of representing Plaintiffs on a contingency fee basis; the filing of the suit without

---

[1] This Court's decision stands out as the first time that a merger or acquisition was enjoined in the airline industry.

any assurance of government intervention; the skill, experience and efficiency of counsel; and

the substantially beneficial result to consumers from the sought-after permanent injunction.

Indeed, when it found the proposed merger anticompetitive and granted injunctive relief in the

DOJ Case, the Court specifically alluded to those consumers who would have endured

significant harm from a merger:

> Throughout trial, the Government invoked the experience of the average Spirit
> consumer: a college student in Boston hoping to visit her parents in San Juan,
> Puerto Rico; a large Boston family planning a vacation to Miami that can only
> afford the trip at Spirit's prices. It is this large category of consumers, those who
> must <u>rely</u> on Spirit, that this merger would harm.
>
> To those dedicated customers of Spirit, this one's for you.

DOJ Case, 23-cv-10511; <u>Dkt. No. 461 at 105-106</u>; 109.

Plaintiffs Gabriel Garavanian and Timothy Nieboer are precisely those "dedicated

customers of Spirit" who fall squarely within the group of consumers for whom the Court based

its opinion and judgment. A multiplier of at least 3.0 is appropriate.

Accordingly, the Court should grant this Motion and award Plaintiffs $724,066.31 in

costs and no less than $20,421,526.50 in attorneys' fees.

## PROCEDURAL HISTORY

Plaintiffs filed their Complaint on November 3, 2022, in the Northern District of

California seeking to permanently enjoin the proposed merger between Defendants JetBlue and

Spirit as anticompetitive and violative of Section 7 of the Clayton Act, <u>15 U.S.C. § 18</u>. <u>Dkt. 1</u>.

On March 7, 2023, more than four months later, the United States filed a complaint in the

District of Massachusetts similarly seeking to permanently enjoin the proposed merger as

anticompetitive, claiming the exact same statutory violation. DOJ Case, <u>Dkt. 1</u>. Defendants

repeatedly took the position with the Court that the issues in both the DOJ Case and this case

3

were identical. Dkt. 76; Dkt. 90; Dkt. 178. And, the Court relied on these representations to consolidate the cases for coordinated discovery. Dkt. 164. Plaintiffs sought an early trial date and requested permission of the Court to have this case tried first, or in the alternative, in conjunction with the DOJ Case. Dkt. 266. The Court determined that the DOJ Case should go to trial first. Dkt. 309. Notwithstanding the ruling, Plaintiffs continued their trial preparation during the trial of the DOJ Case and were prepared to try their case if the Court denied the DOJ's request for the injunction to stop the proposed acquisition.

On January 16, 2024, after a bench trial in the DOJ Case, the Court found the proposed merger anticompetitive and permanent enjoined the Defendants from consummating it. DOJ Case, Dkt. 461. The Defendants immediately appealed.

On January 29, 2024, the Airlines moved to expedite their appeal in the First Circuit, which was granted on February 2, 2024. *United States, et al. v. JetBlue Airways Corp., et al.*, No. 24-1092 (1st Cir.) ("Government Appeal").

On February 8, 2024, Spirit reaffirmed the Airlines' intention to proceed with the merger, stating in a public filing, "Spirit and JetBlue expect to conclude the regulatory process and close the transaction no later than the first half of 2024." See "Spirit Airlines Reports Fourth Quarter and Full Year 2023 Results," Spirit.com (Feb. 8, 2024), https://ir.spirit.com/files/doc_financials/2023/q4/ Earnings-Release-4Q23.pdf.

On February 26, 2024, the Airlines filed their Opening Brief in the First Circuit, forcefully arguing that this Court erred in the DOJ Case by never defining a specific geographic market and incorrectly relying on "hypothesized" and "supposed" Spirit customers who "must rely on Spirit for air travel because they cannot 'afford' another airline." Opening Br. at 3; 1-6 (using variation of "hypothetical Spirit customer" eight different times).

On March 1, 2024, Plaintiffs moved for leave to file a motion for summary judgment based on collateral estoppel. Dkt. 343. That motion, which has not yet been ruled on, presented irrefutable arguments. First, it argued that the merger issues in this case are *identical* to those in the DOJ Case, which had already been fully and fairly litigated. Second, this Court had already determined that Plaintiffs had standing, finding that "Plaintiffs G. Garavanian and Nieboer have standing because they are 'the type of person[s] the law intends to protect against the harm of which [they] complain.'" Dkt. No. 338 at 6 (quoting *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 408 (1st Cir. 1985)); *see also* Dkt. 310 at 2 ("Each has standing to bring an antitrust claim.").[2] Since every substantive issue and the standing issue had already been decided, there was nothing left to do but grant Judgment to Plaintiffs.

Then suddenly, on March 4, 2024 – notably, three days after Plaintiffs had requested judgment on collateral estoppel grounds, and less than a week after Defendants filed their opening brief to the First Circuit in the DOJ Case, they abruptly about-faced, suddenly "abandoning" the merger *and* their First Circuit appeal . Relying on nothing more than a press release announcing the "abandonment" of the merger, Defendants then relied on their unilateral announcement to move to dismiss this case as moot. Dkt. 346.

Presenting the same arguments to the First Circuit, Defendants filed a motion to dismiss the appeal brought by those Plaintiffs who had been dismissed from this case for lack of standing. *Arcell, et al. v. JetBlue Airways Corp. and Spirit Airlines*, Case No. 23-1897 (1st Cir. Mar. 18, 2024). The Court of Appeals granted that motion on April 29, 2024. Citing the First

---

[2] In its decision on standing in late 2023, the Court reviewed the record and found that "[i]n the past eight years, Nieboer has flown 25 times, with 57% of those flights on Spirit Airlines," and "Garavanian flies Spirit about four times a year, traveling mostly between Boston and his second home in Myrtle Beach, FL." Dkt. no. 338 at 4. Moreover, it found that "Garavanian [has flown] 8 times with Spirit in the last year alone." *Id.* at 9.

Circuit's mandate, this Court dismissed the instant case as moot on June 18, 2024. Dkt. Nos. 359 (minute order); 360.

## APPLICABLE LAW

The Clayton Act § 16 provides that "[i]n any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff." 15 U.S.C. § 26. This statutory language makes "fee awards mandatory for prevailing plaintiffs." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 & n.5 (1978) (describing Clayton Act § 4, 15 U.S.C. § 15); *accord Costco Wholesale Corp. v. Hoen*, 538 F.3d 1128, 1136 (9th Cir. 2008) (describing Clayton Act § 16, 15 U.S.C. § 26); *see also Home Placement Service, Inc. v. Providence Journal Co.*, 819 F.2d 1199, 1210 (1st Cir. 1987) ("[T]he award of reasonable attorney's fees [] is mandatory in order to encourage private prosecution of antitrust.").

Courts determining whether a plaintiff "substantially prevailed" under the Clayton Act apply the same analysis as other Federal statutes which award fees to a "prevailing party." *See e.g. Oil, Chemical and Atomic Workers Intern. Union, AFL-CIO v. Department of Energy*, 288 F.3d 452, 454 (D.C. Cir. 2002) ("[T]here are dozens of fee-shifting statutes, some worded slightly differently from others. A wide range of statutes uses the "substantially prevails" formulation. …. Many other statutes use "prevailing party." As to a litigant's eligibility for an award of attorney's fees, we have treated these statutes as substantially similar."]; *City of Chanute, Kan. v. Williams Natural Gas Co.* (10th Cir. 1994) 31 F.3d 1041, 1047 [applying "prevailing party" framework under 42 U.S.C. 1988 to Section 16 of the Clayton Act). Thus, this statutory language makes "fee awards mandatory for prevailing plaintiffs." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 & n.5 (1978) (describing Clayton Act § 4, 15 U.S.C. § 15); *accord Costco Wholesale Corp. v. Hoen*, 538 F.3d

1128, 1136 (9th Cir. 2008) (describing Clayton Act § 16, 15 U.S.C. § 26); *see also Home Placement Service, Inc. v. Providence Journal Co.*, 819 F.2d 1199, 1210 (1st Cir. 1987) ("[T]he award of reasonable attorney's fees . . . is mandatory in order to encourage private prosecution of antitrust . . . .").

With respect to claims for injunctive relief in particular, such as Plaintiffs' successful claim for an injunction blocking the merger, a fee award furthers Congress' objective "to encourage private parties to bring and maintain meritorious antitrust injunction cases." *Costco*, 538 F.3d at 1136-37. "Mandatory awards were seen as necessary to protect the injunction-seeking plaintiff's financial incentive to file suit because antitrust cases are normally very expensive to bring and maintain and claims for injunctive relief by nature provide no prospect of money damages." *Id.*

## ARGUMENT

### I. Plaintiffs "substantially prevailed" in this case and should be granted reasonable attorneys' fees, costs, and expenses.

Under the Clayton Act's fee-shifting provision, JetBlue and Spirit are responsible for paying costs, including attorneys' fees, incurred by private plaintiffs in litigating a suit in which plaintiffs "substantially prevailed." 15 U.S.C. § 26. "To qualify as a prevailing party, a litigant must show that a material alteration of the parties' legal relationship has taken place as a result of the litigation." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 8 (1st Cir. 2011). "In addition, a party must demonstrate that the alteration possesses a "*judicial imprimatur*." *Id.* (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001); *see also Suarez-Torres v. Panaderia Y Reposteria Espana, Inc.*, 988 F.3d 542, 551 (1st Cir. 2021) ("To qualify as a 'prevailing party,' the party seeking to recover fees must demonstrate (1) 'a material alteration of the legal relationship of the parties' (2) that possesses

the requisite 'judicial imprimatur.'"); *J.S. v. Westerly School District*, 910 F.3d 4, 10 (1st Cir.

2018) ("To be a 'prevailing party' under a federal fee-shifting statute, a litigant must show both a

'material alteration of the legal relationship of the parties' and a 'judicial imprimatur on the

change.'"). "A material change occurs when the plaintiff succeeds on 'any significant issue in

litigation which achieves some of the benefit the [plaintiff] sought in bringing the suit.'" *Suarez-*

*Torres*, 988 F.3d at 551 (citing *Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S.

782, 789 (1989)).  Moreover, "[t]he judicial imprimatur inquiry looks to the level of court

involvement in the parties' changed relationship."  *Id.* at 552.

　　　Here, there is no question that there was a material change in the Parties' legal

relationship and this change was caused by "*judicial imprimatur*"—Defendants were judicially

enjoined by the Court from proceeding with—and have since abandoned—their proposed

merger. Accordingly, Plaintiffs must be considered the prevailing party if their lawsuit

contributed to the imposition of this injunction.

　　　Indeed, the Defendants claim that Plaintiffs' action should be dismissed as moot confirms

that Plaintiffs have prevailed on their action.  When a defendant moves to dismiss a disputed

claim "as moot" based upon a judgment having already been entered against that defendant in

another case, the defendant is necessarily admitting that the claim against it has been resolved in

favor of the plaintiff, that the plaintiff has obtained the relief sought in its complaint, and that no

further effectual relief could be granted. *See e.g. Knox v. Serv. Emps. Int'l Union, Local*

*1000*, 567 U.S. 298, 307 (2012) ("A case becomes moot **only** when it is impossible for a court to

grant any effectual relief whatever to the prevailing party.") (quoting *City of Erie*, 529 U.S. at

287); *see also, Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 376-77

(2019); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016); *Decker v. Northwest Environmental Defense Center*, 568 U.S. 597, 609 (2013).

   Moreover, Plaintiffs' case undoubtedly contributed to securing this victory. First, right after this Court enjoined the merger, Defendants promised the public, the courts, and their shareholders that they would vigorously fight this Court's ruling in the Court of Appeals. Yet, Defendants abandoned their appeal – along with the merger itself – only after it became clear that Plaintiffs would likely win a judgment no matter how the Airlines' appeal to the First Circuit turned out. Defendants' primary criticisms of this Court's permanent injunction order in the DOJ Case – that it relied on "hypothetical" Spirit customers in undefined geographic markets – would have been entirely resolved by Plaintiffs' case: Garavanian and Nieboer are *real* Spirit customers who "rely" on Spirit and would have suffered *real* harms in *well-defined* geographic markets. With Plaintiffs' case waiting in the wings, Defendants came to see that prevailing in the Court of Appeals in the DOJ Case would have been a pyrrhic victory. They manufactured a mootness argument solely to avoid an adverse adjudication in this case by "abandoning" the merger before this Court could grant Plaintiffs the judgment they deserved.

   Second, whether this Court had Plaintiffs Gabriel Garavanian and Timothy Nieboer in mind when the Court powerfully dedicated its permanent injunction to "those dedicated customers of Spirit" who "must rely on Spirit," is a question that only the Court can answer. (DOJ Case, Dkt. No. 461 at 109, 105 (emphasis in original).) The Court heard argument on the Defendants' motion for summary judgment for lack of standing on October 4, 2023. At the hearing, the Court initially indicated it was inclined to grant the motion and dismiss the case. But, then the Court heard that Mr. Garavanian (who was in the courtroom and had travelled to

Boston that same day on Spirit Airlines) travels Spirit so frequently between Boston and Myrtle

Beach as to almost "commute" between those cities. The following colloquy ensued:

| | |
|---|---|
| [JET BLUE COUNSEL]: | … Your Honor had it exactly right. The plaintiffs are saying that literally every single person in the United States would have standing to – |
| THE COURT: | No, but he answered that, you see? I do start off -- that's the dialogue, and he has -- **we've got Mr. Garavanian here, he commutes on Spirit**. |
| [JET BLUE COUNSEL]: | Even Mr. Garavanian. So that is the only person who even comes close. And you heard from counsel, 700 routes. |
| THE COURT: | He only needs 1. |

Hr'g Transcript, Oct. 4, 2024 at 9 (emphasis added). The Court then took the matter under

advisement and declined to grant the motion as it was originally disposed to do. In a written

decision issued a few weeks later, the Court denied the motion as to Mr. Garavanian, finding that

"Garavanian [has flown] 8 times with Spirit in the last year alone." Dkt. No. 338 at 9. It further

found that "[i]n the past eight years, Nieboer has flown 25 times, with 57% of those flights on

Spirit Airlines." The Court therefore concluded that "Plaintiffs G. Garavanian and Nieboer have

standing because they are 'the type of person[s] the law intends to protect against the harm of

which [they] complain.'" *Id.* at 6 (quoting *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*,

754 F.2d 404, 408 (1st Cir. 1985)); *see also* Dkt. 310 at 2 ("Each has standing to bring an

antitrust claim."). Only the Court can assess what role the Plaintiffs' evidence played in the

Court's ultimate decision to enjoin the merger, but this powerful evidence certainly factored in

the Defendants' decision to abruptly abandon the merger to avoid a foregone Plaintiffs'

judgment.

Third, Plaintiffs filed their Complaint months before the Department of Justice, and with

no expectation that the government would take any action to prevent the merger. In fact,

historically, it has not done so.[3]   When the government did file its complaint four months later, it largely tracked Plaintiffs' complaint. The cases were consolidated and coordinated for discovery. Dkt. No. 96. The government had no obligation to and did not share with Plaintiffs whether it intended to press its case to trial or settle with a consent decree. As a result, Plaintiffs were unaware whether the government would suddenly settle, and they had to continue pressing their case to be fully prepared for trial up until the end. Plaintiffs sought to try their case along with the Government, and it filed a motion with this Court requesting the cases be consolidated for trial. [CITE.] While that motion was denied, the procedural decision by the Court to allow the DOJ case to go to trial first does not change the fact that Plaintiffs had to continue to vigorously litigate this case till the end.  and that the DOJ benefitted from and used Plaintiffs' efforts in order to secure its victory against Defendants.

Fourth, failing to find that Plaintiffs prevailed in this case would chill private antitrust enforcement and significantly undermine Congressional intent, as reflected in decades of Supreme Court case law. Same or similar to those needed in Applicable Law section]. It would further thwart the intent of Section 16 by encouraging Defendants to strategically abandon challenged mergers at the eleventh hour, just as it becomes clear they will lose. Plaintiffs must file merger challenges as soon as possible. Any delay in filing can allow the transaction to close before the plaintiffs' challenge has been properly reviewed. For that same reason,  plaintiffs challenging mergers cannot wait until the government decides whether it will file a case or worse, whether it will settle it long after the case has been filed. Effectuating the purpose of Section 16 requires finding that Plaintiffs prevailed in this case.

---

[3] Indeed, as explained below, the DOJ has approved numerous airline mergers in the past and it was the consolidation in the industry that had previously been approved by the DOJ which made this merger illegal. *See* Section II.B.1, *infra*.

II.     **Plaintiffs' Request for Fees is Reasonable.**

Section 16 of the Clayton Act provides that "[i]n any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff." 15 U.S.C.A. § 26. This includes plaintiffs who, as here, seek only injunctive relief. *See e.g. Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 650 (7th Cir. 1985) ("A plaintiff who substantially prevails in an action for injunctive relief under the antitrust laws also recovers "the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 26 (1982)"). A "reasonable" fee is one that is "sufficient to induce a capable attorney to undertake the representation" of a meritorious case. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). Courts use the lodestar method to calculate reasonable attorneys' fees, multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

A.      **The Time and Labor Expended by Counsel (i.e., the Lodestar)**

A number of highly-reputable law firms contributed to the prosecution of this suit for Plaintiffs:

- Joseph M. Alioto Jr. of Alioto Legal served as lead counsel in this litigation, and dedicated 1255.8 hours to the litigation, for a total lodestar of $1,318,590.00.

- Stephen G. Larson and attorneys and paralegals from his firm Larson LLP, as well as firm paralegals, spent more than 1835.32 hours working on the litigation and seek a total lodestar of $1,491,732.50.

- Joseph Alioto and Tatiana Wallace of Alioto Law dedicated 1,741.25 hours to this litigation for a total lodestar of $2,413,000.

- Robert J. Bonsignore and Melanie Porter of Bonsignore Trial Lawyers, PLLC, as well as paralegal staff, dedicated 618.9 hours to the litigation for a total lodestar of $482,725.

- Josephine Alioto and paralegal staff of The Veen Firm, LLP, dedicated 464.3 hours to the litigation, for a lodestar of $220,185.

- The Law Offices of Lawrence G. Papale dedicated 422.3 hours to the litigation for a lodestar of $407,300.

- Christopher A. Nedeau of Nedeau Law PC, dedicated 204.1 hours to this litigation for a total lodestar of $204,100.

- Lingel H. Winters of the Law Offices of Lingel Winters PC dedicated 193.5 hours on this litigation for a total lodestar of $285,412.

In total, this results in a total lodestar for all Plaintiffs' counsel in the amount of $6,823,044.50, as set forth in the declarations and evidence supporting this motion. Plaintiffs' attorneys also incurred actual costs paid by them to advance Plaintiffs' and the public's interest. These expenses include "costs of suit" under Section 16 of the Clayton Act and Federal Rule of Civil Procedure 54(d), including costs associated with transcript and court reporter fees and depositions. The costs incurred by Plaintiffs' counsel are evidenced in the evidentiary support submitted with this declaration.

**B.    This Court should apply a fee multiple between 3.0 and 5.0 to the calculated lodestar fee amount.**

The lodestar calculation is not the end of the inquiry into what constitutes a reasonable attorneys' fee. In the First Circuit "[e]ven after the basic lodestar is calculated, the court may adjust it, up or down, to reflect other considerations, such as the results obtained." *United States v. One Star Class Sloop Sailboat built in 1930 with hull no. 721, named "Flash II"*, 546 F.3d 26,

13

38 (1st Cir. 2008). The Supreme Court has "repeatedly" held the lodestar may be enhanced or multiplied in certain circumstances. *Perdue* at 552. Courts have repeatedly applied enhancements in the range sought here. (*See e.g. In re Relafen Antitrust Litig*., 231 F.R.D. 52, 82 (D. Mass. 2005) (citing *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1052 n. 6 (9th Cir. 2002)); *see also In re Ranbaxy Generic Drug Application Antitrust Litig*., 630 F. Supp. 3d 241, 246 (D. Mass. 2022) (noting that "[m]ost multipliers fall between one and four, although there is significant variation."). Here, Plaintiffs are only seeking a multiplier between 3.0x and 5.0x. *See N. Heel Corp. v. Compo Indus., Inc.*, 851 F.2d 456, 474 (1st Cir. 1988) (affirming a lodestar multiplier of 2.5x); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298-99, 303-04 (3rd Cir.2005) (finding no abuse of discretion where district court applied lodestar multiplier of 4.07); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n. 6 (9th Cir. 2002) (charting attorney's fees awards and multipliers in common fund cases of $50-$200 million from 1996-2001 and noting "a range of 0.6-19.6 with most (20 of 24, or 83%) from 1.0-4.0 and a bare majority (13 of 24, or 54%) in the 1.5-3.0 range"); *Conley v. Sears Roebuck and Co.*, 222 B.R. 181 (awarding multiplier of 8.9 to arrive at a $7,500,000 fee).

Among the factors determining the lodestar multiplier are "the contingent nature of the fee" *Weinberger v. Great N. Nekoosa Corp.*, 801 F. Supp. 804, 825 (D. Me. 1992); "the risk of the litigation;" "the time and labor expended by counsel;" "the magnitude and complexities of the litigation;" "the quality of representation;" and "public policy considerations." *Fikes Wholesale, Inc. v. HSBC Bank USA*, N.A., 62 F.4th 704, 723 (2d Cir. 2023). Here, where each of these factors points towards an enhancement multiplier, the unenhanced lodestar fees are likely too low to qualify as "reasonable."

1.      <u>The Risk Associated with the Litigation</u>

Plaintiffs were the first to file a case contesting the JetBlue/Spirit merger, filing this case more than four months before the Government took action, and without any knowledge or guarantee of whether the Government would even do so. Plaintiffs' counsel took the risk that it would have to prosecute this case alone through trial in order to obtain injunctive relief against the two massive air carriers who had agreed to merge. Plaintiffs' counsel agreed to represent passengers in this large, fast moving, and difficult case, on a purely contingent fees and costs basis. They faced off, initially alone, against multiple largescale law firms representing, and massively funded by, Spirit and JetBlue. Plaintiffs' counsel assumed the entire financial risk of the litigation, including significant cost advances. Importantly, this case sought only injunctive relief – to block the anticompetitive merger – and neither sought nor involved monetary damages claims or a common fund award from which attorneys' fees and costs could be paid. This case is a prime example of the type Congress intended to encourage under the Clayton Act's private attorney general provisions. Here, the individual passenger—who would be the victim of an anticompetitive merger that would substantially reduce competition, raise prices and/or reduce capacity and eliminate consumer competitive options for air travel—would not have the financial resources necessary to enforce the antitrust laws absent experienced counsel willing to represent them on a contingent fee and cost basis. Absent these provisions, such illegal conduct, and the substantial harm resulting therefrom, could go unopposed. These facts, combined with the legislative incentives built into the Clayton Act, set antitrust enforcement cases apart from others and warrant the award of enhanced attorneys' fees to counsel in this case.

The "contingent fee risk is the single most important factor in awarding a multiplier." *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, <u>724 F. Supp. 160, 164</u> (S.D.N.Y.

1989). Courts "may consider—and have considered—the fact that the attorney worked on a contingency or an hourly basis." *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 662 (7th Cir. 1985). "Where plaintiff's attorney is not guaranteed payment but takes the case substantially on a contingency basis, the attorney must receive additional compensation for the risk undertaken." *Knutson v. Daily Rev., Inc.*, 479 F. Supp. 1263, 1270 (N.D. Cal. 1979). This is particularly the case where, as here, "counsel's efforts throughout this litigation were performed on a wholly contingent basis" and Plaintiffs' counsel "also advance[ed] the many thousands of dollars of necessary disbursements" to litigate the case. *Id.* Plaintiffs' counsel undertook this high risk at a time when no one else, including the Government, was challenging the proposed merger.

To determine what percentage contingency enhancement is warranted, courts evaluate the degree of risk of the litigation, or "how likely it was, at the beginning of the suit, that the litigation would be unsuccessful, and result in no fee." *Weinberger*, 801 F. Supp. at 825. Where there is "significant litigation risk present" and "class counsel had taken on a venture with a high risk of failure," then "that the risk should be compensated." *Fikes* at 727.

The risk here was significant. Plaintiffs were first on the ground in opposing this merger: they filed their complaint on November 3, 2022 (Dkt. 1), more than four months before the Department of Justice filed its suit on March 7, 2023. (DOJ Dkt. 1). When Plaintiffs filed their Complaint (and their counsel decided to undertake this risk), Plaintiffs were the only entity seeking to protect consumers from what this Court has since determined after trial on the merits to be an anticompetitive merger warranting a permanent injunction prohibiting it. (DOJ Dkt. 461). There was no indication at that time that the Department of Justice would file suit.

Indeed, history indicated that government intervention in a proposed airline merger was a rare and unlikely event. The last time the government intervened in a proposed airline merger was more than a decade before, when the Department of Justice unsuccessfully filed suit to block the American Airlines-US Airways merger in 2013, and agreed to a remedy allowing the merger to proceed. *See United States v. US Airways Grp., Inc.*, 38 F. Supp. 3d 69 (D.D.C. 2014), judgment entered, No. 1:13-CV-01236 (CKK), 2014 WL 13078262 (D.D.C. Apr. 25, 2014). Before that, the Government's next most recent challenge came a decade and a half earlier, in 2001, when it challenged a proposed merger between United and U.S. Airways. Kenneth N. Gilpin, *Antitrust Challenge Stops United Merger With US Airways*, N.Y. Times, Jul. 8, 2001, at C1. Numerous airline mergers that occurred since 2000 were permitted to proceed without Government enforcement, including mergers between US Airways and America West (2000); TWA and American (2003); Mesaba and Northwest (2007); United and Continental (2010); Delta and Northwest (2010); and Southwest and Airtran (2011). By 2022 all of these mergers resulted in four airlines controlling over 80% of the market for air travel. Accordingly, Plaintiffs and their counsel had good reason to believe they would have to pursue this massive, complex, and fast-moving injunction action alone.

In a highly technical antitrust case such as this, the costs and fees are prohibitive for an ordinary consumer to shoulder. Pursuing such a case requires retaining multiple expert witnesses, which alone represents a huge expense beyond the means of most ordinary consumers. Deposition and document discovery costs are also substantial, and the preparation for and trial of the case represent additional massive expenses. Counsel for Plaintiffs made a substantial investment of time and resources and undertook a substantial risk of total loss, if Plaintiffs' claims for injunctive relief proved unsuccessful. A significant multiplier on the lodestar is

appropriate in such circumstances to encourage attorneys to take on such meritorious but difficult cases, and to compensate them for the high risk of potential loss.

2.   The Magnitude and Complexities of the Litigation

Given the size and complexity of the case, a significant multiplier to the lodestar is warranted. "Although the First Circuit Court of Appeals has not provided supplemental guidance" to determine appropriate fee multipliers, "many courts in this Circuit have looked to those set forth by the Second Circuit Court of Appeals in *City of Detroit v. Grinnell Corp*., 495 F.2d 448 (2d Cir. 1974). *See, e.g.*, *New England Carpenters Health Benefits Fund v. First DataBank, Inc*., 602 F. Supp. 2d 277, 281 (D. Mass. 2009)." First among those factors is "the complexity, expense, and likely duration of the litigation." *In re Ranbaxy Generic Drug Application Antitrust Litig*., 630 F. Supp. 3d 241, 244 (D. Mass. 2022).

The First Circuit has recognized that a multiplier applied to the lodestar can be "justified by the complexity of the case" *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co*., 512 F. Supp. 3d 196, 239 (D. Mass. 2020), *aff'd in part, appeal dismissed in part sub nom. Arkansas Tchr. Ret. Sys. v. State St. Corp.*, 25 F.4th 55 (1st Cir. 2022). This was an important and high stakes litigation that served public good. Counsel for Plaintiffs faced off against large corporations defending a multi-billion-dollar merger that they were determined to conclude at all costs. Had the merger gone forward, it likely would have had an enormous impact on competition in more than 200 city-pair origin and destination markets across the U.S. This would have led to a substantial impact on consumers (air travelers) who would suffer higher supracompetitive prices, substantially less access to flights through decreased capacity, and decreased competition between airlines that would reduce the number of available destinations in affected markets.

Seeking this injunction was the <u>only way</u> to curb or eliminate these anti-competitive effects of the proposed merger. This was winner take all litigation for consumers.

The case was also made more complex and difficult by the accelerated timeline imposed by the merger agreement. The compressed case schedule required a trial to be completed prior to the merger closure, which meant Plaintiffs' counsel had to dedicate and fully commit resources for several months, foregoing other representations. Plaintiffs were fully prepared to try the injunction case with or following the DOJ trial. Indeed, Plaintiffs requested permission from this Court to go to trial first. (Dkt 309).

This case is exactly the type of litigation that the antitrust laws intended to encourage with their "private attorney general" provisions. Because the DOJ had not challenged the proposed merger at the time Plaintiffs filed their complaint, Plaintiffs did so with a high probability that without this suit, this anti-competitive merger may have been concluded and its anticompetitive effects achieved. Even after the DOJ filed its later suit, the Government could have settled or declined to challenge the merger without any consultation with Plaintiffs. Further, this complex case could not have been successfully litigated by just any counsel. This was a massive and complex litigation, requiring mastery of complex economic evidence; ability to communicate clearly with experts and deponents about hundreds of origin-destination city pair markets; the skill and organization to allow Plaintiffs to seek, obtain, and evaluate over 24 million files comprising about 10 terabytes of data in Defendant's first document production alone, plus documents from third-party airline competitors, airport authorities, and experts; the resources and experience to take approximately 65 depositions in a roughly 30 day period,[4] and

---

[4] In accordance with the CMO, Private Plaintiffs noticed nearly all depositions noticed by the DOJ in the Government Action, attended the Government Action depositions, and examined

the organizational heft to coordinate all of those depositions with the DOJ so as to maximize efficiency and avoid duplication of efforts. In carrying out these complex tasks, Plaintiffs faced off against multiple incredibly well-resourced defense firms representing deep-pocketed corporations that had huge monetary stakes in the outcome of the litigation. By maintaining their suit in parallel to the DOJ, Plaintiffs provided insurance for air travel consumers that the request for a permanent injunction would be bolstered by the continued threat of an additional injunction should DOJ not succeed alone, or should DOJ decide to negotiate a settlement with Defendants. This threat of a further injunction led Defendants to withdraw their appeal and accept the permanent injunction.

> 3.   The Quality Of Representation

The nature of the case supports applying a significant modifier to the lodestar, as the litigation included both novel legal issues and required substantive antitrust merger knowledge, experience, and expertise, as well as experience and expertise in efficiently managing massive amounts of documentary and economic evidence. Even within the already-specialized world of antirust litigators, this case required litigators with experience in merger cases and with claims for specific merger-blocking injunctive relief. Counsel had to have substantial knowledge and expertise in antitrust economics and in working with expert witnesses. Because Plaintiffs' counsel did have this knowledge and expertise, their work was more effective and efficient than less experienced counsel would have been, and thus the lodestar without enhancement does not amount to a "reasonable" fee.

---

those same witnesses. Declaration of Josephine L. Alioto in Support of Plaintiffs' Motion to Consolidate (Dkt. 267-1), ¶3. Private Plaintiffs also attended third party depositions noticed by Defendants, which were noticed in both actions. *Id.*

    4.    <u>Public Policy Considerations Favor Applying a Significant Multiplier to the Lodestar.</u>

Congress created the option for private attorney generals to bring antitrust suits because they wanted to encourage private enforcement of these important laws. This shifting provision serves a unique public policy purpose because bringing meritorious antitrust claims requires highly experienced counsel willing to prosecute extraordinarily complex injunctive relief claims against massive, well-financed merger partners at a contingent fee risk, in order to protect the rights of ordinary citizens otherwise would suffer harm if the conduct was left unchallenged.

Here, this suit served an important public purpose by representing the interests of consumers of ultra-low-cost airlines, against deep corporate pockets and large well-resourced law firms, when no one else was challenging the proposed merger and protecting those critical public interests. This is exactly the type of suit Congress intended to encourage when it passed the Clayton Act's fee-shifting provisions, and exactly the type of suit that the Supreme Court wanted to protect when it found lodestar fee multipliers are justified. This

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court award a reasonable lode star of $6,823,044.50 and apply a fee multiplier of 3.0x to 5.0x, which would result in a reasonable fee award of $20,421,526.50 and $34,115,222.50. This Court should also award costs of suit incurred in the amount of $724,066.31.

Dated: July 12, 2024

                <u>*/s/ Stephen G. Larson*</u>
                Stephen G. Larson (CA State Bar No. 145225)
                LARSON LLP
                555 South Flower Street, Suite 4400
                Los Angeles, California 90071
                Tel: (213) 436-4888
                Fax: (213) 623-2000
                Email:slarson@larsonllp.com
                (*Admitted Pro Hac Vice*)

Robert F. Ruyak, (DC Bar No. 233304)
Scott Gregory Herrman (DC Bar No. 983114)
LARSON LLP
900 17th Street NW, Suite 320
Washington, DC 20006
Tel: (202) 795-4900
Fax: (202) 795-4888
Email:rruyak@larsonllp.com
Email:gherrman@larsonllp.com
(*Admitted Pro Hac Vice*)

Joseph M. Alioto, Jr. (CA State Bar No. 215544)
ALIOTO LEGAL
100 Pine Street
Suite 1250
San Francisco, CA 94111
Tel.: 415-398-3800
Email: joseph@aliotolegal.com
(*Admitted Pro Hac Vice*)

Joseph M. Alioto (CA State Bar No. 42680)
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104
Telephone: (415) 434-8900
Email: jmalioto@aliotolaw.com
(*Admitted pro hac vice*)

Josephine Alioto (CA State Bar No. 282989)
THE VEEN FIRM
20 Haight Street
San Francisco, CA 94102
Telephone: (415) 673-4800
Email: j.alioto@veenfirm.com
(*Admitted pro hac vice*)

Lawrence G. Papale (CA State Bar No. 67068)
LAW OFFICES OF LAWRENCE G. PAPALE
The Cornerstone Building
1308 Main Street, Suite 117
St. Helena, California 94574
Telephone: (707) 963-1704
(*Admitted pro hac vice*)

Jeffrey K. Perkins (CA State Bar No. 57996)

LAW OFFICES OF JEFFREY K. PERKINS
1550-G Tiburon Blvd., Box 344
Tiburon, California 94920
Telephone: (415) 302-1115
(*Admitted pro hac vice*)

Lingel H. Winters (CA State Bar No. 37759)
LAW OFFICES OF LINGEL H. WINTERS
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-2941
Email: sawmill2@aol.com
(*Admitted pro hac vice*)

Christopher A. Nedeau (CA State Bar No. 81297)
NEDEAU LAW PC
154 Baker Street
San Francisco, CA 94117-2111
Telephone: (415) 516-4010
Email: cnedeau@nedeaulaw.net
(*Admitted pro hac vice*)

Robert J. Bonsignore, Esq.
BONSIGNORE TRIAL LAWYERS, PLLC
23 Forest Street
Medford, MA 02155
Phone: 781-856-7650
Email: rbonsignore@classactions.us

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that this document was filed through the ECF system on July 12, 2024, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Stephen G. Larson*

Stephen G. Larson
