# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GABRIEL GARAVANIAN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 1:23-cv-10678-WGY |
| | ) |
| JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC., | ) |
| | ) |
| Defendants, | ) |

# DEFENDANTS JETBLUE AIRWAYS CORPORATION AND SPIRIT AIRLINES, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES

# TABLE OF CONTENTS

**Page**

BACKGROUND .................................................................................................................... 3

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ........................................................................................................................ 6

I.      PLAINTIFFS' MOTION SHOULD BE DENIED AS UNTIMELY ............................... 6

II.     PLAINTIFFS ARE NOT ENTITLED TO ANY FEES BECAUSE THEY ARE
        NOT A "PREVAILING PARTY" UNDER THE CLAYTON ACT ............................ 6

III.    PLAINTIFFS' FEE REQUEST IS EXORBITANT AND VASTLY
        DISPROPORTIONATE TO ANY *DE MINIMIS* IMPACT THEY HAD ON
        DEFENDANTS' PROPOSED MERGER ........................................................................ 12

        A.      The Court Has Discretion to Deny Fees Entirely ................................................. 13

        B.      Fees for Plaintiffs Lacking Standing (or Deceased) Should Not Be
                Allowed ............................................................................................................. 14

        C.      Fees for Work After DOJ Sued that Are Unique to this Matter Should Not
                Be Allowed ........................................................................................................ 15

        D.      Wholly Unsupported Fees Should Not Be Allowed ............................................ 16

        E.      Vague, Block-Billed, Overly Redacted, and Unnecessary Entries Should
                Not Be Allowed ................................................................................................. 16

        F.      Fees for Work that Could Have Been Staffed More Appropriately Should
                Not Be Allowed ................................................................................................. 17

        G.      Plaintiffs' Hourly Rates Are Unsupported and Unreasonable ............................ 18

        H.      Plaintiffs' Costs Should Be Denied .................................................................... 18

        I.      No Multiplier Is Justified Here ........................................................................... 19

CONCLUSION ..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Mass. Dep't of Corr.*,
 2024 WL 2013852 (D. Mass. May 7, 2024) .................................................................5, 17, 18

*Arcell v. JetBlue Airways Corp*,
 No. 23-1897 (1st Cir. May 21, 2024) ...................................................................................5

*Arelene Ocasio v. Comision Estatal De Elecciones*,
 2023 WL 8889653 (D.P.R. Dec. 26, 2023) ........................................................................16

*Aronov v. Napolitano*,
 562 F.3d 84 (1st Cir. 2009) ........................................................................................ *passim*

*In re Asacol Antitrust Litig.*,
 2017 WL 11475275 (D. Mass. Dec. 7, 2017) .....................................................................20

*Bergus v. Florian*,
 699 F. Supp. 3d 110 (D. Mass. 2023) .................................................................................17

*Brenner v. J.C. Penney Co.*,
 2013 WL 6865667 (D. Mass. 2013) ...................................................................................17

*Brigham & Women's Hosp., Inc. v. Perrigo Co.*,
 251 F. Supp. 3d 285 (D. Mass. 2017) ...................................................................................6

*Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health
 and Human Resources*,
 532 U.S. 598 (2001) .................................................................................................. *passim*

*City of Burlington v. Dague*,
 505 U.S. 557 (1992) .............................................................................................................19

*Coutin v. Young & Rubicam P.R., Inc.*,
 124 F.3d 331 (1st Cir. 1997) .................................................................................................6

*Crawford Fitting Co. v. J. T. Gibbons, Inc.*,
 482 U.S. 437 (1987) .............................................................................................................15

*Day v. Gracy*,
 2019 WL 3753947 (D. Mass. Aug. 8, 2019) .......................................................................18

*United States ex rel. Drennen v. Fresenius Med. Care Holdings, Inc.*,
 2024 WL 2720786 (D. Mass. May 28, 2024) ......................................................................16

*E.E.O.C. v. AutoZone, Inc.*,
  934 F. Supp. 2d 342 (D. Mass. 2013) .............................................................16, 18

*Fields v. City of Tarpon Springs*,
  721 F.2d 318 (11th Cir. 1983) .................................................................................10

*First State Ins. Grp. v. Nationwide Mut. Ins. Co.*,
  402 F.3d 43 (1st Cir. 2005)...............................................................1, 7, 10, 13

*Garavanian. v. JetBlue Airways Corp.*,
  No. 22-cv-6841 (N.D. Cal. Nov. 3, 2022), ECF No. 1 ......................................3, 11

*Gay Officers Action League v. Puerto Rico*,
  247 F.3d 288 ...........................................................................................................18

*Guckenberger v. Bos. Univ.*,
  8 F. Supp. 2d 91 (D. Mass. 1998) ..........................................................................18

*Hart v. Bourque*,
  798 F.2d 519 (1st Cir. 1986)........................................................14, 18, 19, 20

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983).........................................................................................5, 14

*Hewitt v. Helms*,
  482 U.S. 755 (1980)..................................................................................................7

*J.S. v. Westerly Sch. Dist.*, 910 F.3d 4 (1st Cir. 2018) ............................................7, 9

*Jalal v. Shanahan*,
  2018 WL 10466837 (E.D.N.Y. May 10, 2018) ........................................................6

*Lewis v. Kendrick*,
  944 F.2d 949 (1st Cir. 1991)........................................................................13, 14

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..................................................................................................9

*Martino v. Mass. Bay Transp. Auth.*,
  230 F. Supp. 2d 195 (D. Mass. 2002) .......................................................................5

*Matalon v. Hynnes*,
  806 F.3d 627 (1st Cir. 2015).................................................................................18

*McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*,
  53 F. Supp. 3d 312 (D. Mass. 2014) ......................................................................16

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986)...............................................................................................19

*Phetosomphone v. Allison Reed Grp., Inc.*,
    984 F.2d 4 (1st Cir. 1993) ........................................................................................16

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
    630 F. Supp. 3d 241 (D. Mass. 2022) ......................................................................20

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005) ................................................................................20

*Richardson v. Miller*,
    279 F.3d 1 (1st Cir. 2002) ..........................................................................................5

*Royal Crown Cola Co. v. Coca-Cola Co.*,
    887 F.2d 1480 (11th Cir. 1989) ..........................................................................10, 11

*Slep-Tone Ent. Corp. v. Karaoke Kandy Store, Inc.*,
    782 F.3d 313 (6th Cir. 2015) ......................................................................................6

*Sobel v. Hertz Corp.*,
    53 F. Supp. 3d 1319 (D. Nev. 2014) .........................................................................20

*Sonesta RL Hotels Franchising, Inc. v. Patel*,
    2024 WL 457046 (D. Mass. Feb. 6, 2024) ...............................................................16

*Suarez-Torres v. Panaderia Y Reposteria Espana, Inc.*,
    988 F.3d 542 (1st Cir. 2021) ......................................................................................9

*In re Taco Bell Wage and Hour Actions*,
    222 F. Supp. 3d 813 (E.D. Cal. 2016) ......................................................................20

*Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*,
    489 U.S. 782 (1989) ..................................................................................................14

*Torres–Rivera v. O'Neill–Cancel*,
    524 F.3d 331 (1st Cir. 2008) ....................................................................................16

*Trindade v. Grove Servs., Inc.*,
    2023 WL 6444259 (D. Mass. Oct. 3, 2023) ..............................................12, 13, 18

*United States v. Dentsply Int'l, Inc.*,
    190 F.R.D. 140 (D. Del. 1999) ...................................................................................7

*United States v. JBS S.A.*,
    No. 1:08-cv-5992 (N.D. Ill. Dec. 12, 2008), ECF 91 .................................................7

*United States v. Yu*,
    No. 19-10195-WGY, Slip. Op. (D. Mass. Mar. 5, 2024) .........................................17

*Weinberger v. Great N. Nekoosa Corp.*,
   801 F. Supp. 804 (D. Me. 1992) ...............................................................................18, 19, 20

**Statutes**

15 U.S.C. § 26 ...............................................................................................................5

28 U.S.C. § 1821 ..........................................................................................................15

Clayton Act ......................................................................................................... *passim*

Fair Housing Act ...........................................................................................................6

Lanham Act...................................................................................................................6

**Other Authorities**

Fed. R. Civ. P.
   54(d) ......................................................................................................................1, 6

Plaintiffs are not entitled to any fees under the Clayton Act.  Plaintiffs did not prevail. They did not receive a favorable judgment; one Plaintiff was dead and could not receive the only relief sought (injunctive relief), 22 had no standing, and the entire case was moot and unnecessary in light of the DOJ lawsuit.  Even if Plaintiffs had prevailed—which they did not, and all but two Plaintiffs were dismissed—their fee request is untimely and unreasonable. Whatever Plaintiffs did was wholly duplicative of what the DOJ and states did, and that type of effort is not entitled to compensation as reasonable attorneys' fees and costs.

This private case was brought by twenty-five Plaintiffs who challenged the same proposed merger the Department of Justice ("DOJ") sought to enjoin, sought the same relief under the same statute, and thereafter piggy-backed on the government's prosecution of that case.  Plaintiffs' case was dismissed as moot.  They did not try this case.  They did not win at summary judgment; indeed, ***twenty-two*** of the original twenty-five Plaintiffs were dismissed at summary judgment for lack of standing.  One plaintiff was voluntarily dismissed as a result of her death.  There was no "judicial imprimatur" in this case that could possibly qualify Plaintiffs as prevailing parties.  And yet they seek to recover between ***$20 million and $34 million*** in attorneys' fees and costs for their purported contributions to the government's victory and the Defendants' subsequent abandonment of the proposed merger.

***First***, Plaintiffs' motion is untimely under the "mandatory deadline" of Rule 54(d)(2)(B)(i).  Plaintiffs' motion was due on July 2, 2024—14 days after the Court's entry of judgment, ECF No. 360.  Plaintiffs did not file until July 12, 2024.  ECF No. 361.

***Second***, the Court need not consider the reasonableness of Plaintiffs' fee demand at all, because Plaintiffs are not entitled to fees under the fee-shifting framework outlined by the Supreme Court in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of*

*Health and Human Resources*, 532 U.S. 598 (2001). *Buckhannon* requires plaintiffs seeking a fee award under a "prevailing party" statute such as the Clayton Act to establish both a "material alteration in the legal relationship of the parties," as well as "judicial *imprimatur*." *Id.* at 605, 608 n.9. Plaintiffs can establish neither. There is no "alteration" in the legal relationship between Plaintiffs and Defendants as a result of Plaintiffs' suit; Plaintiffs have obtained no judgment and no relief and admit that they have no ability to enforce DOJ's injunction. Nor do any changed circumstances carry the necessary "judicial *imprimatur*"— DOJ, not Plaintiffs, won an injunction, and a defendant's voluntary abandonment of a merger is expressly foreclosed by *Buckhannon* as a basis for recovering fees as a "prevailing party."

Failing to meet the *Buckhannon* standard, Plaintiffs pivot to an argument that their "contributions" to the DOJ's case should be taken into consideration. But that claim is, again, squarely foreclosed by *Buckhannon*, which rejects any consideration of the impact of a party's efforts in inducing an extrajudicial outcome. In any event, for a number of reasons, Plaintiffs' purported contributions to the outcome here, especially after DOJ brought its lawsuit, are speculative and insufficient under any framework.

**Third**, even if Plaintiffs could satisfy the applicable standard, their requested fees of $6.8 million (which they ask the Court to multiply between 3x and 5x) is excessive and insufficiently supported. Plaintiffs have not met their burden of establishing the prevailing market rates in Boston for similar work, nor have they demonstrated that the more than 6,700 hours spent by nine different law firms were reasonably expended. Three firms have not submitted contemporaneous daily time records, hundreds of entries are block-billed or so vague or heavily redacted that the Court cannot determine whether the time spent was reasonable. Worse yet, hundreds of hours are for tasks uniquely related to this case, which

could not possibly have "contributed" to the DOJ case as Plaintiffs argue. Amazingly, Plaintiffs even claim fees for work related to plaintiffs whom the Court dismissed for lack of standing. Defendants respectfully request the Court deny Plaintiffs' motion.

## BACKGROUND

The procedural history of this case is well-known to the Court. Defendants provide background only to the extent relevant to Plaintiffs' request for attorneys' fees and costs.

In November 2022, twenty-five individual Plaintiffs filed suit in the Northern District of California seeking to enjoin a proposed merger between JetBlue Airways Corporation ("JetBlue") and Spirit Airlines, Inc. ("Spirit," and together, "Defendants") under the Clayton Act. Plaintiffs' suit was filed during the statutory Hart-Scott-Rodino period while the DOJ was reviewing the transaction. Complaint, *Garavanian. v. JetBlue Airways Corp.*, No. 22-cv-6841 (N.D. Cal. Nov. 3, 2022), ECF No. 1.

In March 2023, DOJ and several states filed suit in this Court. Complaint, *United States v. JetBlue Airways Corp.*, No. 23-cv-10511 (D. Mass. Mar. 7, 2023), ECF No. 1 (the "DOJ Action"). Plaintiffs' case was subsequently transferred here. In connection with that transfer, Defendants agreed to produce to Plaintiffs the documents produced to the DOJ during the HSR period . Wright Decl. ¶ 3. That is the only document request that Plaintiffs ever made. Wright Decl. ¶ 4.

During discovery, the Court instructed Plaintiffs to coordinate depositions with the DOJ. Plaintiffs asked questions in about half of the depositions cross-noticed in the DOJ Action. Wright Decl. ¶ 5. Defendants deposed all 24 living Plaintiffs and Plaintiffs' two expert witnesses. *Id.* ¶¶ 7, 9. DOJ did not participate in any of those depositions. *Id.* ¶ 7. In addition to receiving no additional documents from JetBlue and Spirit, Plaintiffs received *less* third-

party discovery than the DOJ, because numerous third parties refused to produce documents to them, after which Plaintiffs abandoned third-party efforts.  ECF No. 127; Wright Decl. ¶ 8.

Following the close of fact discovery, Defendants moved for summary judgment as to all Plaintiffs for lack of standing.  ECF No. 172.[1]  The Court granted summary judgment as to all but two of the remaining 24 Plaintiffs,[2] reasoning that only Gabriel Garavanian and Timothy Nieboer had raised a factual dispute that they were "the type of person the law intends to protect against the harm of which they complain."  ECF No. 310 at 1–2.  The dismissed Plaintiffs appealed.  ECF No. 318.

Prior to trial in the DOJ Action, Plaintiffs requested that the two cases be consolidated for trial.  ECF No. 266.  The DOJ and Defendants objected.  ECF Nos. 294, 302.  The DOJ noted the "stark differences" between Plaintiffs' case and the government's, including key differences in the required factual proof and in the parties' legal theories.  ECF No. 294 at 1–4.  The Court declined to consolidate the two cases for trial.  ECF No. 309.

Following a full trial in the DOJ Action, this Court enjoined the proposed merger on January 16, 2024.  DOJ Action, ECF No. 461.  Defendants initially appealed the Court's ruling but, on March 4, 2024, Defendants voluntarily dismissed their appeal and abandoned the proposed transaction, based on their conclusion that the regulatory environment made it unlikely to timely consummate the merger.  ECF No. 355-1 at ECF pages 28, 47.  The First Circuit subsequently dismissed the 22 Plaintiffs' appeal as moot, and issued the mandate.

---

[1] On August 1, 2024, Plaintiffs served a 66-page memorandum of law in support of their summary judgment motion.  Defendants moved to strike it as over-length (ECF No. 177), prompting Plaintiffs to move for leave to file excess pages (ECF No. 179).  The Court denied Plaintiffs' request for excess pages (ECF No. 182), and Plaintiffs never attempted to file their summary judgment motion.

[2] One Plaintiff, June Stansbury, passed away on February 14, 2023, and was voluntarily dismissed on September 19, 2023, by stipulation of the parties.  ECF No. 244.

Mandate, *Arcell v. JetBlue Airways Corp*, No. 23-1897 (1st Cir. May 21, 2024).  This Court

thereafter dismissed this case pursuant to the mandate of the Court of Appeals.  ECF No. 359.

## LEGAL STANDARD

Section 16 of the Clayton Act instructs courts to award a party "the cost of suit,

including a reasonable attorney's fee," to the extent that the applicant "substantially prevails"

in its suit.  15 U.S.C. § 26.  "[T]he fee applicant bears the burden of establishing" that the

applicant is a "prevailing party." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Courts evaluating claims for attorneys' fees under the Clayton Act construe the fees

provision identically to other statutes that award fees to a "prevailing party."  *See, e.g.*,

*Buckhannon*, 532 U.S. at 600.  To qualify as a "prevailing party" under the Clayton Act, a

plaintiff must "show that he succeeded on an important issue in the case, thereby gaining at

least some of the benefit he sought in bringing suit." *Richardson v. Miller*, 279 F.3d 1, 3 (1st

Cir. 2002) (citation omitted).  Plaintiffs must also show (1) "a material alteration of the legal

relationship of the parties," and (2) a "judicial imprimatur on the change." *Aronov v.*

*Napolitano*, 562 F.3d 84, 89 (1st Cir. 2009) (citation omitted).

Plaintiffs bear the burden of "establishing entitlement to an award and documenting the

appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.  Here, the Court

"must find the prevailing hourly rate in Boston for attorneys of comparable skill, experience,

and reputation" as Plaintiffs' attorneys. *Martino v. Mass. Bay Transp. Auth.*, 230 F. Supp. 2d

195, 205 (D. Mass. 2002).  Plaintiffs must provide the Court "with affidavits and other forms

of evidence that: (1) establish [their] lawyers' skills and experience, and (2) inform the Court

of the prevailing market rate in the community for attorneys with such qualifications."

*Alexander v. Mass. Dep't of Corr.*, 2024 WL 2013852, at *2 (D. Mass. May 7, 2024) (citation

omitted).  The Court has discretion to "fashion a lodestar which differs substantially from the

5

fee requested" and to "segregate time spent on certain unsuccessful claims, eliminate excessive or unproductive hours, and assign more realistic rates to time spent." *Coutin v. Young & Rubicam P.R., Inc.*, 124 F.3d 331, 337 (1st Cir. 1997) (citation omitted).

## ARGUMENT

### I.      Plaintiffs' Motion Should Be Denied as Untimely

Plaintiffs' motion is untimely.  Rule 54(d)(2)(B)'s "mandatory deadline" provides that "[u]nless a statute or a court order provides otherwise, [a] motion [for attorneys' fees] must be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B); *Brigham & Women's Hosp., Inc. v. Perrigo Co.*, 251 F. Supp. 3d 285, 292 (D. Mass. 2017) (the 14-day deadline is "mandatory").  Courts routinely apply the 14-day deadline in Rule 54 to fee-shifting statutes that do not provide a different deadline.  *See, e.g.*, *Jalal v. Shanahan*, 2018 WL 10466837, at *8 (E.D.N.Y. May 10, 2018) (applying Rule 54's 14-day deadline and denying untimely motion under the Fair Housing Act); *Slep-Tone Ent. Corp. v. Karaoke Kandy Store, Inc.*, 782 F.3d 313, 316 (6th Cir. 2015) (same as to Lanham Act).  The Court entered an order dismissing Plaintiffs' case as moot on June 18, 2024.  ECF Nos. 359, 360.  Twenty-four days later, on July 12, 2024, Plaintiffs filed their Motion, which is brought explicitly "pursuant to . . . Fed. R. Civ. P. 54(d)." ECF No. 361.  Plaintiffs offer no explanation for their untimeliness, and their motion should be denied on this ground alone.

### II.      Plaintiffs Are Not Entitled to any Fees Because They Are Not a "Prevailing Party" Under the Clayton Act

To qualify for fees, Plaintiffs would need to have "substantially prevailed" on an important issue in *their* case, and also demonstrate a "material alteration of the legal relationship" between themselves and Defendants, which contains "judicial imprimatur." *Buckhannon*, 532 U.S. at 604, 606; *Aronov*, 562 F.3d at 89.

Nothing in this proceeding provides a basis for concluding that Plaintiffs prevailed. Twenty-two of the twenty-five plaintiffs lost at summary judgment, and another was dead. This Court did not enter any judgment or decree in Plaintiffs' lawsuit,[3] and refused Plaintiffs' request to consolidate their case with the DOJ.[4] ECF No. 309.  The Court entered an injunction in the **DOJ's** case, and Defendants voluntarily abandoned the merger.  Mem. at 3.  In its decision in the DOJ matter, the Court did not mention Plaintiffs and resolved only the dispute brought by the DOJ and plaintiff States.  DOJ Action, ECF No. 461 at 3; *id.* ECF No. 463.  No orders support any claim that Plaintiffs have obtained any relief by the Court.

Neither the DOJ injunction, nor Defendants' voluntary abandonment of the transaction, transforms Plaintiffs into a "prevailing party" under either *Buckhannon* prong.

**First**, *Buckhannon* and its progeny require Plaintiffs to show a "material alteration of the legal relationship" between themselves and Defendants.  *E.g.*, *Aronov*, 562 F.3d at 89.  The Court's entry of an injunction in favor of the DOJ does not suffice, because it does not impact **Plaintiffs'** legal rights whatsoever.  As Plaintiffs admitted in their Opposition to Defendants' Motion to Dismiss, they have no right to enforce the DOJ injunction.  ECF No. 354 at 4–5.

---

[3] At most, two of the twenty-four Plaintiffs survived a facial challenge to their standing under Article III.  Surviving a defendant's dispositive motion or proceeding to the next phase of a hearing "is not the stuff of which legal victories are made."  *See Buckhannon*, 532 U.S. at 605 (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1980)); *accord Suarez-Torres v. Panaderia Y Reposteria Espana, Inc.*, 988 F.3d 542, 552–53 (1st Cir. 2021) (finding "no authority [] that an order denying summary judgment is equivalent to a 'judgment on the merits'" (emphasis in original)).

[4] Clear precedent *required* the Court to "prioritize[e] prompt resolution of [the DOJ's] antitrust claims" over Private Plaintiffs' request for a redundant remedy.  *E.g.*, *United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 144-45 (D. Del. 1999); Minute Entry, *United States v. JBS S.A.*, No. 1:08-cv-5992 (N.D. Ill. Dec. 12, 2008), ECF 91 (refusing to consolidate because "plaintiffs may not intervene in a government antitrust case").

Plaintiffs' legal relationship with Defendants has not changed whatsoever since they brought their suit, which forecloses their claims to fees. *Buckhannon*, 532 U.S. at 605.

For the same reason, Defendants' voluntary abandonment of the merger does not modify the parties' legal relationship. The Supreme Court explained in *Buckhannon* that it had "never [] awarded attorney's fees for a nonjudicial 'alteration of actual circumstances.'" *Buckhannon*, 532 U.S. at 606 (citation omitted); *see also Aronov*, 562 F.3d at 93 ("that the defendant has voluntarily agreed to change its behavior does not lead to prevailing party status for the plaintiff"). The change in Defendants' plans to pursue a standalone strategy in lieu of a merger is not a change in the "legal relationship of the parties," and certainly not a "judicially sanctioned" one, that would permit a finding that Plaintiffs prevailed. *Id.* at 89.

*Second*, even assuming a "material alteration" of the parties' legal relationship (when there is none), that change does not have the requisite "judicial imprimatur." There are "two and only two situations which meet the judicial imprimatur requirement: where a plaintiff has 'received a judgment on the merits', or . . . 'obtained a court-ordered consent decree.'" *Aronov*, 562 F.3d at 89 (quoting *Buckhannon*). Plaintiffs received neither.

Again, Defendants' voluntary abandonment of the merger was expressly ***rejected*** by the *Buckhannon* court as a basis for a fee award. The Court explained that a prevailing party is "***the party that wins the suit*** or obtains a finding (or an admission) of liability. Not the party that ultimately gets his way . . . because the other side ***ceases (for whatever reason)*** its offensive conduct." *Buckhannon*, 532 U.S. at 615 (Scalia, J. concurring) (emphases added). For the same reason, the injunction this Court granted to the DOJ is irrelevant for purposes of

*Plaintiffs*' case—Plaintiffs did not "win the suit" or "obtain[] a finding [] of liability." *Id.*[5] The DOJ did.

Against this binding precedent, Plaintiffs lodge a confused argument that the mootness of their claims somehow proves that they are a "prevailing party" with "judicial imprimatur" on their changed relationship. Mem. at 8. Plaintiffs' argument makes no sense, and utterly contradicts *Buckhannon*, which refused a fee award in the precise posture of a claim mooted by a defendant's voluntary abandonment of challenged conduct. 532 U.S. at 602, 605, 608. Predictably, none of Plaintiffs' cases that post-date *Buckhannon* stand for the proposition that a plaintiff can recover attorneys' fees on the back of a DOJ injunction, or following a defendant's voluntary abandonment of challenged conduct. *See Suarez-Torres v. Panaderia Y Reposteria Espana, Inc.*, 988 F.3d 542, 553-55 (1st Cir. 2021) (denying fee award because a voluntary change in conduct did not have the necessary "judicial imprimatur"); *J.S. v. Westerly Sch. Dist.*, 910 F.3d 4, 11 (1st Cir. 2018) (interim, procedural relief did not warrant fee award).

Plaintiffs next pivot to an argument that they "undoubtedly contributed to securing [the DOJ's] victory." Mem. at 8-10. This is nothing more than an attempt to revive the "catalyst theory," which the Supreme Court rejected in 2001. *Buckhannon*, 532 U.S. at 605-10. The

---

[5] Contrary to their assertions, Mem. at 5, that "there was nothing left to do [in this case] but grant Judgment to Plaintiffs[,]" Plaintiffs have come nowhere near winning their case. Surviving a challenge to standing at summary judgment does not waive Plaintiffs' obligation to prove their case at trial, and indeed, there are a number of reasons the Court might have rejected standing with a more fully developed record and the opportunity to hear testimony, not least of which is Plaintiffs' patent lack of credibility as serial litigants. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) (standing must be "supported . . . with the manner and degree of evidence required at [each] successive stage[] of the litigation"). Moreover, Plaintiffs would have been obligated to demonstrate that routes **they themselves** flew (as opposed to the DOJ's broader challenge) was likely to suffer antitrust harm from the merger. ECF No. 294 at 7–8. Defendants may have had unique defenses to the Plaintiff-specific routes. DOJ Action, ECF No. 461.

now-defunct "catalyst theory" permitted courts to award attorneys' fees based on a causal link between a plaintiff's lawsuit and a modification of a defendant's behavior—in other words, based on the contributions a party made to the ultimate resolution of the dispute.  *Id.*[6] *Buckhannon* expressly precluded the "catalyst theory" as a basis for an award of attorneys' fees.  *See Aronov*, 562 F.3d at 89.  Plaintiffs' alleged "contributions" are irrelevant.

In any event, there were no such contributions.

***First***, Plaintiffs argue that they "contributed" to the DOJ victory because Defendants abandoned their appeal.  Mem. at 1, 9.  In the first place, there is no support for Plaintiffs' improbable speculation that Defendants' decision to abandon its multibillion-dollar transaction had anything to do with this case.  To the contrary, as common sense would dictate, the decision was driven by the pendency of the DOJ injunction: "regulatory obstacles will not permit" JetBlue and Spirit to close the transaction "in a timely fashion."  ECF No. 355-1 at 5, 47.  Moreover, even under the pre-*Buckhannon* framework, this type of speculative argument did not suffice.  In *Royal Crown Cola Co. v. Coca-Cola Co.*, 887 F.2d 1480 (11th Cir. 1989), the court explained that plaintiff's reliance on "the chronology of events to demonstrate a causal connection between its litigation and the ultimate result" was pure "speculation."  *Id.*

***Next***, Plaintiffs argue that DOJ somehow "benefitted from" Plaintiffs' own efforts, including because the Court referred to "Spirit customers" in its ruling, who—in Plaintiffs' telling—must have been Messrs. Nieboer and Garavanian.  Mem. at 12.  Again, Plaintiffs' argument is dead in the water under *Buckhannon*, 532 U.S. at 606, and even under the defunct "catalyst theory" is too "speculat[ive]."  *Royal Crown Cola*, 887 F.2d at 1492-93.

---

[6] *See, e.g.*, *Fields v. City of Tarpon Springs*, 721 F.2d 318, 321 (11th Cir. 1983) (applying the catalyst theory to award fees based on a finding of a "causal link" between the challenged conduct and supposed remedial action)

But in any event, the record belies any contribution by Plaintiffs to the DOJ Action. The DOJ objected to Plaintiffs' participation at trial, noting the "stark differences" between the two cases, which featured "distinct and inconsistent legal theories" and "unique facts the *Garavanian* Plaintiffs must show . . . that [were] irrelevant to" the DOJ Action. ECF No. 294 at 1. Plaintiffs' discovery contributions were also negligible. Plaintiffs asked questions in about half of the cross-noticed depositions.[7] Wright Decl. ¶ 5. The discovery of Plaintiffs— including Messrs. Niebor and Garavanian—was never produced to DOJ. Wright Decl. ¶ 7. Nor did Plaintiffs obtain any discovery that supplemented the DOJ's efforts, instead resting on clone document discovery that the DOJ had received during the HSR period, and *less* from third parties, who refused to produce documents to Plaintiffs. ECF No. 127 (sustaining objections of non-parties); Wright Decl. ¶ 8; ECF No. 164.[8] Plaintiffs' expert reports were not produced to DOJ or cited by either party in briefing before the Court. Wright Decl. ¶ 9; *e.g.*, ECF No. 461. And Plaintiffs played no role whatsoever at the trial or post-trial proceedings conducted by the DOJ. Plaintiffs simply cannot show any added value to the DOJ Action beyond speculating that this Court was moved by the presence of Gabriel Garavanian at oral argument. Mem. at 10. That is plainly insufficient even under the pre-*Buckhannon* framework.

**Third**, Plaintiffs' argument that their case was first-filed fails as well. That fact is irrelevant after *Buckhannon*. And, again, even before *Buckhannon*, courts rejected plaintiffs' right to obtain attorneys' fees by racing the government to the courthouse. *See Royal Crown*

---

[7] Indeed, Plaintiffs' questions were so unhelpful that the *DOJ*—whose interests were ostensibly aligned with Plaintiffs, and whose case Plaintiffs purportedly "contributed to"—objected ubiquitously throughout their limited questioning. Wright Decl. ¶ 6.

[8] Defendants are not aware of Plaintiffs issuing subpoenas to procure any separate third-party productions. Wright Decl. ¶ 8; ECF No. 294 at 4 n.3.

*Cola*, 887 F.2d at 1493 ("[A] plaintiff must do more than to bring a carefully timed lawsuit as a potential back-up to government action.").

**Finally**, Plaintiffs' public policy rationales of avoiding "chilling antitrust enforcement," Mem. 10-11, are also meritless. Plaintiffs are serial litigants who have challenged numerous mergers in multiple industries, including every single airline merger for the last decade and a half; many are members of a profit-sharing arrangement to challenge any merger in the airline industry, regardless of the merits of such a challenge and the impact of the merger on the Plaintiffs. *See* ECF Nos. 113 at 5-7, 12-13; 173 at 2, 174 ¶¶ 7-25, 175-5 ("Passengers Against Mergers" Agreement). Plaintiffs have never successfully enjoined any merger, won or even negotiated any equitable relief, but have, on occasion, extracted ransom payments from companies in exchange for withdrawing their claims. ECF No. 173 at 2. Plaintiffs, by and large, produced no or extremely limited, deficient discovery, and were frequently unaware of their discovery obligations or even that this case had been filed under their names. ECF No. 173 at 10; 174 at ¶¶ 31-32, 109, 116; 175 ¶¶ 2–10. The Court should not sanction the distortion of the Clayton Act's fee shifting provisions to reward a business model predicated on bringing duplicative challenges in cases in which the government has already assumed the mantle of antitrust enforcement.

### III. Plaintiffs' Fee Request Is Exorbitant and Vastly Disproportionate to any *De Minimis* Impact They Had on Defendants' Proposed Merger

Even if Plaintiffs were entitled to any fees at all (and they are not), they would not be entitled to the exorbitant sums they demand. Courts in this Circuit follow the lodestar method to calculate reasonable attorneys' fees, "multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." *Trindade v. Grove Servs., Inc.*, 2023 WL 6444259, at *1 (D. Mass. Oct. 3, 2023). The Court "has a right—indeed, a duty—to see

whether counsel substantially exceeded the bounds of reasonable effort." *Id*.  Once the Court

has determined the reasonable number of hours and rates, the Court can decide whether to

adjust the lodestar either upwards or downwards based on a number of factors.  *Id.* at 2.

### A.       The Court Has Discretion to Deny Fees Entirely

"Where the attorneys' fees requested are unreasonably excessive, it is within a court's

discretion to deny fees entirely."  *First State Ins. Grp. v. Nationwide Mut. Ins. Co.*, 402 F.3d

43, 44 (1st Cir. 2005) (affirming district court's denial of  excessive fee request).  A request

for attorneys' fees "is required to be in good faith and in reasonable compliance with judicial

pronouncements."  *Lewis v. Kendrick*, 944 F.2d 949, 958 (1st Cir. 1991).  When a fee request

is "intolerably inflated," then the court is "warranted" in "reacting vigorously to prevent such

abuse of the court's authority."  *Id.* (citation omitted).

Such is the case here.  Plaintiffs' submission includes time entries from nine different

law firms totaling more than 6,700 hours:

| Law Firm | Hours[9] | Lodestar |
|---|---|---|
| Alioto Legal (1 partner) | 1,255.8 | $1,318,590 |
| Larson LLP (2 partners, 1 counsel, 1 associate, two staff) | 1,835.32 | $1,491,732.50 |
| Alioto Law (2 partners) | 1,741.25 | $2,413,000 |
| Bonsignore Trial Lawyers (2 partners, 1 attorney, 1 paralegal) | 618.9 | $482,725 |
| The Veen Firm (1 partner, 1 paralegal) | 464.3 | $220,185 |
| Law Offices of Lawrence Papale (1 attorney) | 422.3 | $407,300 |
| Nedeau Law PC (1 attorney) | 204.1 | $204,100 |
| Law Offices of Lingel Winters (1 attorney) | 193.5 | $285,412 |
| Law Offices of Jeffrey K. Perkins (1 attorney) | 41 | $30,750 |
| **Totals** | **6,776.47** | **$6,853,795** |

---

[9] Plaintiffs' submission contains numerous inconsistencies regarding both the number of hours worked and fees requested.  For example, Plaintiffs' Motion states that Alioto Legal is seeking $1,318,590 in fees; but the time entry submission for Mr. Alioto adds up to $1,317,645. Plaintiffs' motion makes no mention of attorney Jeffrey Perkins, but he has submitted a declaration seeking fees of $30,750 for 41 hours of work on this matter.  ECF No. 361-12.

That is an excessive number of hours for a case that never went to trial and in which Plaintiffs largely piggy-backed off the DOJ matter, propounding no unique discovery requests, participating in about half of the DOJ depositions (and then only for limited and objectionable questioning at the end), and receiving limited third-party discovery. *See, e.g.*, *Hart v. Bourque*, 798 F.2d 519, 523 (1st Cir. 1986) (610 hours for a case that did not involve heavy trial work "was far too much"). While denying fees outright might be "strong medicine," it is "entirely appropriate" when the requested fees are "too extreme to be tolerated." *Lewis*, 944 F.2d at 958.

## B.     Fees for Plaintiffs Lacking Standing (or Deceased) Should Not Be Allowed

When a plaintiff "achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440. District courts have discretion "to arrive at a reasonable fee award, either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff." *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789-90 (1989) (citations omitted).

The Court found only two Plaintiffs had standing to pursue their Clayton Act claim. In other words, just eight percent of the original Plaintiffs were allowed to proceed past summary judgment. Yet, brazenly, Plaintiffs claim fees related to the twenty-two dismissed Plaintiffs who had no connection to the merging airlines at all—fees relating to defending their twenty-two depositions, producing their documents, preparing interrogatory responses for them, and the like. Wright Decl. ¶ 7. The Court should disallow all fees pertaining to the twenty-two Plaintiffs who had no business invoking the Court's jurisdiction at all.

14

### C.    Fees for Work After DOJ Sued that Are Unique to this Matter Should Not Be Allowed

Plaintiffs made no attempt to exclude work after DOJ sued on issues unique to this case, including on matters where they had no success at all, and which had no bearing on the trial in the DOJ Action.  For example, Plaintiffs seek fees for:

- Written discovery and depositions of Plaintiffs, including those who had no standing, and to which DOJ never had access: 700+ hours ($660,000+)

- Defendants' largely successful motion for summary judgment on Plaintiffs' standing: 280+ hours ($280,000+)

- Plaintiffs' summary judgment motion, which was stricken as grossly over-length and never re-filed: 485+ hours ($460,000+)[10]

- Work with Plaintiffs' own experts (which, again, DOJ never had access to): 390+ hours ($400,000+) plus more than $450,000 in costs[11]

- Plaintiffs' trial preparation (no trial was held): 475+ hours ($425,000+)[12]

- Plaintiffs' (dismissed) appeal: 190+ hours ($190,000+)

- Plaintiffs' preparation of the fee application: 100+ hours ($85,000+)

*See* Wright Decl. ¶ 14.[13]  Plaintiffs fail to explain why they are entitled to any work they did after DOJ sued.  Even under Plaintiffs' own (mistaken) theory that they should receive fees

---

[10] Plaintiffs essentially seek Defendants to cover the costs of Plaintiffs' own mistake in preparing an over-long summary judgment brief and asking the Court to extend their page limit after the deadline for dispositive motions.

[11] Plaintiffs are not entitled to seek these expert costs. The Supreme Court has held that "when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987).  28 U.S.C. § 1821 sets the witness fee at $40 per day.

[12] For example, Plaintiffs filed an unnecessary Trial Brief on Oct. 27, 2023 (ECF No. 328) after the parties had filed a Joint Motion to Suspend deadlines on Oct. 12, 2023 (ECF No. 311).

[13] Exhibits 1–7 to the Wright Declaration contain examples of billing entries from Plaintiffs' submission that appear to fall within these categories.  Defendants have not attempted to achieve "auditing perfection" in reviewing Plaintiffs' submission, nor are Defendants "green-

because they "contributed" to the success of the DOJ Action, none of these fees should be allowed; the work had nothing to do with the DOJ Action at all.

### D.        Wholly Unsupported Fees Should Not Be Allowed

It is Plaintiffs' responsibility to prepare an adequate fee request.  *See, e.g.*, *Phetosomphone v. Allison Reed Grp., Inc.*, 984 F.2d 4, 9 (1st Cir. 1993).  "To be acceptable, the accounting must be reasonable," and it must be supported by "detailed contemporaneous time records."  *Arelene Ocasio v. Comision Estatal De Elecciones*, 2023 WL 8889653, at *2 (D.P.R. Dec. 26, 2023); *Sonesta RL Hotels Franchising, Inc. v. Patel*, 2024 WL 457046, at *4 (D. Mass. Feb. 6, 2024).  Three of the declarations submitted by Plaintiffs fail to include even basic time records.  ECF No. 361-5, 361-7, 361-12 (seeking $790,500, $482,725, and $30,750 in lodestars).  None of these unsupported fees should be allowed.

### E.        Vague, Block-Billed, Overly Redacted, and Unnecessary Entries Should Not Be Allowed

The daily time entries that Plaintiffs did include are deficient.  The Court has "broad discretion in reducing fee requests where attorney time records are rife with 'questionable entries.'"  *E.E.O.C. v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 355 (D. Mass. 2013) (citation omitted).  The Court "may either discount or disallow those hours" that are not "precise enough to assess whether the time spent was excessive or redundant, or engage in a global reduction of the total hours sought."  *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 53 F. Supp. 3d 312, 319 (D. Mass. 2014) (citations omitted); *see Torres–Rivera v. O'Neill–Cancel*, 524 F.3d 331, 340 (1st Cir. 2008) (15 percent global reduction); *E.E.O.C.*, 934 F. Supp. 2d at 355 (20 percent reduction).  Likewise, the Court may disallow block-billed or heavily-redacted

---

eyeshade accountants."  *United States ex rel. Drennen v. Fresenius Med. Care Holdings, Inc.*, 2024 WL 2720786, at *2 (D. Mass. May 28, 2024).

entries because it "cannot determine how much time was spent on each activity." *Bergus v. Florian*, 699 F. Supp. 3d 110, 126 (D. Mass. 2023) (block-billing); *United States v. Yu*, No. 19-10195-WGY, 2024 WL 943913, at *7-8 (D. Mass. Mar. 5, 2024) (redactions).

Here, the Court should disallow the entries from which it cannot determine whether counsel was engaged in reasonable work. Exhibits 8–10 contains examples of such entries, including over 200 vague entries totaling more than $700,000; over 800 heavily redacted entries totaling more than $1.2 million; and over 160 block-billed entries that account for over 2,600 hours totaling more than $2 million. Nor should Plaintiffs recover for time unreasonably spent on issues never raised with the Court, such as a preliminary injunction motion that was never filed, for which Plaintiffs seek to recover over $100,000. Exhibit 11. Fee applicants are supposed to exercise billing judgment and make "a good faith effort to exclude" unnecessary fees from the submission. *Alexander*, 2024 WL 2013852, at *3. Plaintiffs failed to do so.

### F. Fees for Work that Could Have Been Staffed More Appropriately Should Not Be Allowed

Plaintiffs' nine-firm team of outside counsel largely consisted of partners and solo practitioners. It appears only one associate was significantly involved. *See* ECF No. 361-3 at 54. Courts disallow fees for work that could have been performed by a lower-billing attorney (such as contract attorney for document reviews) or that is administrative in nature. *See, e.g.*, *Brenner v. J.C. Penney Co.*, 2013 WL 6865667, at *3 (D. Mass. 2013). Plaintiffs' submission contains numerous examples of this over-billing, including: 6 hours to draft a protective order at $2,000/hour; 305 hours for document review at $850/hour; and more than 80 entries where attorneys billing more than $850/hour included "research" in their time entry, amounting to over $450,000. Wright Decl. ¶ 16. Plaintiffs' submission also includes hundreds of entries amounting to over 1,700 hours and more than $1.8 million for communications among

Plaintiffs' counsel. *Id.* ¶ 17; Exhibit 12. Mr. Papale alone appears to have billed more than $80,000 for either "draft[ing] email" or "review[ing] email." *Id.* ¶ 17; Exhibit 13. These excessive fees should not be allowed. *Hart*, 798 F.2d at 523 (165 hours of calls was excessive); *Weinberger v. Great N. Nekoosa Corp.*, 801 F. Supp. 804, 819 (D. Me. 1992) (disallowing 80 percent of counsel conferences).

### G.     Plaintiffs' Hourly Rates Are Unsupported and Unreasonable

Plaintiffs bear the burden of submitting evidence of the prevailing market rate, *Alexander*, 2024 WL 2013852, at *2, but did not even attempt to do so here. Reasonable hourly rates for billing attorneys "is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence." *Matalon v. Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015). Plaintiffs have submitted no evidence of the prevailing rates in Boston. *See Guckenberger v. Bos. Univ.*, 8 F. Supp. 2d 91, 105 (D. Mass. 1998) (applying Boston rates to out-of-town counsel). While an attorney's standard billing rate may be instructive, the Court "is not bound by" it. *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295-96; see *E.E.O.C.*, 934 F. Supp. 2d at 356 (court must "look beyond the affidavit of an attorney requesting fees in determining the prevailing market rate").

The Court need not accept Plaintiffs' standard rates, which ranged from $200 for a paralegal to six partners billing between $1,000 and $2,000 per hour. ECF Nos. 361-3 – 361-12. In recent cases, courts in this District have found far lower fees to be reasonable. *See, e.g.*, *Alexander*, 2024 WL 2013852, at *3 ($600); *Trindade*, 2023 WL 6444259, at *5 ($450 and $350); *Day v. Gracy*, 2019 WL 3753947, at *3-4 (D. Mass. Aug. 8, 2019) ($300).

### H.     Plaintiffs' Costs Should Be Denied

Plaintiffs' request for $724,066.31 in costs is replete with examples of outrageous spending and otherwise unnecessary or excessive costs. Plaintiffs seek more than $70,000 for

travel-related costs alone (on top of over 170 attorney hours totaling over $285,000 in fees for travel[14]).  Those travel costs include more than $3,000 for three different attorneys to travel to Boston to watch closing arguments in the DOJ Action.  Plaintiffs also seek more than $9,000 in travel and meal costs for Mr. Alioto Sr.'s travel to the incorrect city for a Spirit deposition as well as his travel to the correct city.  Exhibit 14 contains other examples of excessive and unnecessary costs, such as $15,000 for "graphics for complaint," $4,959.60 for a flight from San Francisco to Miami, and $1,993.49 for a one-night stay at the Ritz Carlton in Fort Lauderdale.  The Court can also disallow expenses such as copying, postage, and other costs attributable to firm overhead.  *Weinberger*, 801 F. Supp. at 827-28.

## I.     No Multiplier Is Justified Here

Plaintiffs also cannot overcome the strong presumption against multipliers to enhance a lodestar award.  *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).  Applicants seeking a multiplier must show that "such an adjustment is *necessary* to the determination of a reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (quotation omitted).  "The bonus or multiplier that enhances a lodestar is *not* a figure that increases a reasonable fee, but a figure that brings an unreasonably low fee up to a level where it more nearly represents the true market value of an attorney's work." *Weinberger*, 801 F. Supp. at 824 (citation omitted) (denying multiplier).  As discussed *supra*, Plaintiffs' lodestar is excessive.  It follows that Plaintiffs have not shown a multiplier is necessary.

Even so, Plaintiffs have not carried their burden to show that their demanded $6 million in fees, in a case in which they did not even prevail, is too low.  Plaintiffs focus much of their argument on the risk of the litigation.  But "an enhancement for contingency would likely

---

[14] Courts routinely disallow attorneys' fees for time spent traveling.  *See, e.g.*, *Hart*, 798 F.2d at 523 (disallowing time spent traveling).

duplicate in substantial part factors already subsumed in the lodestar." *City of Burlington*, 505 U.S. at 562, 567 (reversing 25% enhancement). Plaintiffs' argument that the risk was amplified here because they sued before DOJ also falls flat. Once DOJ filed suit, Plaintiffs no longer "had good reason to believe they would have to pursue this massive, complex, and fast-moving injunction action alone." Mem. at 22. Courts commonly reject such unsupported requests for multipliers. *See Hart*, 798 F.2d at 523-24 (no multiplier was appropriate); *In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 848 (E.D. Cal. 2016) (same); *Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1327 (D. Nev. 2014) (same).

Plaintiffs also overreach in seeking a multiplier between 3x and 5x. They cite no merger cases in support of their request and identify no cases in which relief issued in a different litigation somehow warranted a fee enhancement. Several of Plaintiffs' own cases actually undermine their requested multiplier. *See, e.g.*, *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 244, 246-47 (D. Mass. 2022) (denying multipliers of 2.11 and 2.94 as "substantially higher" than others awarded in similar cases) (citing *In re Asacol Antitrust Litig.*, 2017 WL 11475275, at *4 (D. Mass. Dec. 7, 2017) (multiplier of less than 0.60)); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (multiplier of 2.02 to be paid from settlement fund).

Because "the Court cannot conclude that the 'results obtained' . . . are attributable in any significant way to Plaintiffs' counsel's efforts," no multiplier is appropriate. *Weinberger*, 801 F. Supp. at 827.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied.

Dated: August 2, 2024                Respectfully submitted,

/s/ Elizabeth M. Wright
Zachary R. Hafer (MA BBO #569389)
Elizabeth M. Wright (MA BBO #569387)
Zachary Sisko (MA BBO #705883)
Cooley LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Tel: 617-937-2300
ewright@cooley.com
zhafer@cooley.com
zsisko@cooley.com

Ethan Glass (Pro Hac Vice)
Deepti Bansal (Pro Hac Vice)
Cooley LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 2004-2400
Tel: 202-842-7800
Fax: 202-842-7899
eglass@cooley.com
dbansal@cooley.com

Attorneys for Defendant JetBlue Airways
Corporation

Andrew C. Finch (Pro Hac Vice)
Jay Cohen (Pro Hac Vice)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: 212-373-3000
Fax: 212-757-3990
afinch@paulweiss.com
jcohen@paulweiss.com

Meredith R. Dearborn (Pro Hac Vice)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel: 628-432-5100
Fax: 628-232-3101
mdearborn@paulweiss.com

21

*Attorneys for Defendant*
*Spirit Airlines, Inc*

## <u>CERTIFICATE OF SERVICE</u>

IT IS HEREBY CERTIFIED that on August 2, 2024, the foregoing document was filed through the ECF system and will be sent electronically to the registered participants on the Notice of Electronic Filing and paper copies will be sent to any non-registered participants.

*/s/ Elizabeth M. Wright*
Elizabeth M. Wright
