UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GABRIEL GARAVANIAN, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC., <br><br> *Defendants*. | Civil Action No.: 1:23-cv-10678-WGY |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION
FOR ATTORNEYS' FEES, COSTS, AND EXPENSES**

# **TABLE OF CONTENTS**

**Page**

| | | | |
|---|---|---|---|
| I. | | The Court's Duty To Award Fees Has No Time Limit ......................................... | 3 |
| II. | | Plaintiffs' Motion Was Timely ................................................................................ | 3 |
| | A. | The June 18 Dismissal for Mootness Was Not A Judgment Under Rule 54 That Triggered the 14-day Deadline ............................................... | 4 |
| | | 1.   The June 18 Dismissal is Not a Judgment Under Rule 54 Because it is Not Appealable ........................................................... | 4 |
| | | 2.   The June 18 Dismissal for Mootness Is Not A Separate Document As Required By Rule 58 ................................................ | 5 |
| | B. | Even If The June 18 Dismissal Is A Judgment Under Rule 54, Plaintiffs' Motion Is Timely As A Motion For Additional Findings Under Rule 52(B) ................................................................................... | 6 |
| III. | | Plaintiffs "Substantially Prevailed" In This Case .................................................. | 7 |
| IV. | | Amount of Fees ..................................................................................................... | 10 |
| V. | | Conclusion ............................................................................................................ | 11 |

# **TABLE OF AUTHORITIESN**

Page(s)

**Cases**

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*,
    532 U.S. 598 (2001) .................................................................................................. 2, 7, 8, 9

*First State Ins. Grp. v. Nationwide Mut. Ins. Co.*, 402 F.3d 43 (1st Cir. 2005) ............................ 8

*Jalal v. Shanahan*,
    2018 WL 10466837 (E.D.N.Y. May 10, 2018) ...................................................................... 3

*Naser Jewelers, Inc. v. City of Concord*,
    538 F.3d 17 (1st Cir. 2008) ..................................................................................................... 4

*NuVasive, Inc. v. Rival Med., LLC*,
    No. CV 21-11644-DJC, 2023 WL 3997029 (D. Mass. June 14, 2023) .................................. 6

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
    507 U.S. 380 (1993) ................................................................................................................ 6

*Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.*,
    730 F.3d 23 (1st Cir. 2013) ..................................................................................................... 5

*Slep-Tone Ent. Corp. v. Karaoke Kandy Store, Inc.*,
    782 F.3d 313 (6th Cir. 2015) .................................................................................................. 3

*In re Spenlinhauer*,
    No. 13-17191-JNF, 2018 WL 1684294 (Bankr. D. Mass. Apr. 5, 2018), *aff'd*,
    592 B.R. 1 (D. Mass. 2018) .................................................................................................... 6

*Tubens v. Doe*,
    976 F.3d 101 (1st Cir. 2020) ................................................................................................... 6

*U.S. v. Bell*,
    988 F.2d 247 (1st Cir. 1993) ................................................................................................... 5

**Statutes**

Americans with Disabilities Act of 1990 ............................................................................... 7, 8, 9

Clayton Act .............................................................................................................................*passim*

Fair Housing Amendments Act of 1988 ................................................................................ 7, 8, 9

**Rules**

Federal Rule of Civil Procedure 6 ................................................................................................2, 5

Federal Rule of Civil Procedure 12....................................................................................................5

Federal Rule of Civil Procedure 50(b) ..........................................................................................3, 5

Federal Rule of Civil Procedure 52(b) .................................................................................. 4, 5, 6, 7

Federal Rule of Civil Procedure 54.........................................................................................*passim*

Federal Rule of Civil Procedure 58............................................................................................2, 3, 5

Federal Rule of Civil Procedure 59....................................................................................................5

Federal Rule of Civil Procedure 60....................................................................................................5

Section 16 of the Clayton Act provides that "in any action . . . in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff."  The Clayton Act's fee-shifting provision is unique in several respects.  While many other fee-shifting statutes are discretionary, the Clayton Act **_mandates_** that the court award fees.  Additionally, nearly all other fee-shifting statutes provide for fees only to a "prevailing party,"  while the Clayton Act merely requires that a plaintiff "substantially prevail."

These differences in statutory language reflect the reality that Plaintiffs brought their Clayton Act lawsuit for the public good. In enacting the Clayton Act, Congress intended to encourage individuals such as Plaintiffs to enforce the antitrust laws because, as a result of shifting political winds, the Government might not always enforce them.  When Plaintiffs filed their complaint seeking to enjoin the JetBlue-Spirit merger, they did not expect the Government to challenge this airline merger because it was not the Government's general practice to do so.[1]  Nevertheless, four months after Plaintiffs filed their Complaint, the Government filed a similar Complaint.  The Plaintiffs still pressed its case forward to trial until the Court decided that the Government's case would go to trial first and ultimately enjoined the merger.

---

[1] The last time the government intervened in a proposed airline merger was more than a decade before, when the Department of Justice unsuccessfully filed suit to block the American Airlines-US Airways merger in 2013, and agreed to a remedy allowing the merger to proceed. _United States v. US Airways Grp., Inc._, 38 F. Supp. 3d 69 (D.D.C. 2014), judgment entered, No. 1:13-CV-01236 (CKK), 2014 WL 13078262 (D.D.C. Apr. 25, 2014). Before that, the Government's next most recent challenge came a decade and a half earlier, in 2001, when it challenged a proposed merger between United and U.S. Airways. Kenneth N. Gilpin, _Antitrust Challenge Stops United Merger With US Airways_, N.Y. Times, Jul. 8, 2001, at C1. Numerous airline mergers that occurred since 2000 were permitted to proceed without Government enforcement, including mergers between US Airways and America West (2000); TWA and American (2003); Mesaba and Northwest (2007); United and Continental (2010); Delta and Northwest (2010); and Southwest and Airtran (2011).

1

As explained in Plaintiffs Motion for Attorneys' Fees ("Motion"), Plaintiffs substantially prevailed in this lawsuit because their Complaint sought to enjoin the merger and the merger was enjoined. Defendants appealed the injunction, but eventually abandoned the appeal and completely capitulated knowing that, even if they won the appeal, they would still face the Plaintiffs' claims. Thus, Plaintiffs "substantially prevailed" and the Clayton Act requires that the Court award fees.

Defendants' Opposition relies entirely on cases involving *other* fee-shifting statutes with starkly different requirements. These cases, including *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001), involve *permissive* fee-shifting statutes, where the court has discretion to award fees only to a "prevailing party." Conversely, the Clayton Act *mandates* that a Court award fees. And the party entitled to a fee award need not meet definitions of "prevailing party," it need only "substantially prevail." The Court should reject Defendants demand that it apply the standards for inapposite permissive fee-shifting statutes to the mandatory fee-shifting required by the Clayton Act.

Defendants also argue, without merit, that Plaintiffs' Motion was untimely because it was not filed within fourteen days of the Court's June 18, 2024 dismissal for mootness.[2] The June 18 dismissal for mootness, however, is not a "judgment" under Rule 54 that triggered the deadline. That dismissal is not appealable, does not decide all of the issues, and does not meet the requirements of Rule 58. Even if this Court were to determine that Plaintiffs' Motion was untimely—which it was not—the Motion should be considered timely because Plaintiffs' delay may be treated as "excusable neglect" under Federal Rule of Civil Procedure 6(a).

---

[2] The statement in Plaintiffs' Motion that it was made pursuant to Rule 54(d) is not an admission that the June 18 Dismissal is a judgment under Rule 54(a). A judgment is not necessary to file a motion for attorneys' fees pursuant to Rule 54(d), only to trigger the 14-day deadline.

2

Thus, the Court should award Plaintiffs' fees in the amount requested in the Motion.

## I.     The Court's Duty To Award Fees Has No Time Limit

Section 16 of the Clayton Act provides that, "[i]n any action under this section in which the plaintiff substantially prevails, *the court shall award* the cost of suit, including a reasonable attorney's fee, to such plaintiff."  15 U.S.C. § 26.  This requirement that the Court "shall" award fees is unqualified, and does not limit, and is not limited by, a plaintiff's right to move for fees.  Thus, it is no surprise that Defendants have failed to cite to any case where a court denied a motion for attorneys' fees under the Clayton Act because it was late.

## II.    Plaintiffs' Motion Was Timely

Defendants' argument that the Court's June 18 dismissal for mootness was a "judgment" that triggered a 14-day deadline for moving for fees under Rule 54(d)(2)(B) is without merit.[3]  As explained below, the June 18 dismissal for mootness is not a "judgment" under Rule 54, and therefore did not trigger the 14-day deadline, because it is not an appealable order and because it was not a separate document as required by Rule 58.

The cases Defendants rely on are inapposite because none of them apply the 14-day deadline of FRCP 54(d)(2)(B) to a dismissal for mootness.[4]  And Plaintiffs have been unable to cite any such case.  Even if the Court were to decide that the June 18 dismissal for mootness triggered the 14-day deadline, the Court should find that Plaintiffs' delay was due to excusable neglect and was therefore nonetheless timely.  Alternatively, Plaintiffs' Motion should be treated

---

[3] Defendants claim that Rule 54(d)(2)(B) is a "mandatory deadline," but cite to a case discussing Rule 50(b), not Rule 54. FRCP Rule 6(b) does, indeed, foreclose the Court's ability to extend time to act under certain Rules, but not Rule 54.

[4] Both cases cited by Defendants -- *Jalal v. Shanahan*, 2018 WL 10466837, at *8 (E.D.N.Y. May 10, 2018) and *Slep-Tone Ent. Corp. v. Karaoke Kandy Store, Inc.*, 782 F.3d 313, 316 (6th Cir. 2015), involve entry of judgment after a jury trial, and neither address the "separate document" requirement of Rule 58.

as a timely motion for amended judgment/findings under Rule 52(b) because the June 18 dismissal for mootness did not resolve all of the issues, including the issue of attorneys' fees required by Section 16.

### A. The June 18 Dismissal for Mootness Was Not A Judgment Under Rule 54 That Triggered the 14-day Deadline

#### 1. The June 18 Dismissal is Not a Judgment Under Rule 54 Because it is Not Appealable

Rule 54(a) defines a "judgment" as "a decree and any order from which an appeal lies." The June 18 dismissal for mootness, however, could not be appealed and is therefore not a judgment under Rule 54 in part because of the unusual procedural history of the disputes surrounding the merger.

On March 1, 2024, Plaintiffs requested leave to move for summary judgment based on the judgment entered in the DOJ case. Thereafter, Defendants surrendered defeat by abandoning the merger and, as a result, moved to dismiss its appeal of the judgment entered in the DOJ case, Plaintiffs' appeal of the court's. On March 18, 2024, Defendants filed similar motions to dismiss Plaintiff's district court case and Plaintiff's First Circuit appeal of the Court's denial of Summary Judgment. Dkt. 347; Larson Decl., Ex. 1. On April 29, 2024, the First Circuit granted the Motion to Dismiss the appeal as moot. Dkt. 357. On June 18, 2024, the Court granted Defendants' Motion to Dismiss as Moot "pursuant to the mandate of the Court of Appeals." Dkt. 359.

Because the Court's June 18 dismissal was based on the First Circuit's decision on the same issues, Plaintiffs could not appeal the dismissal to the First Circuit and ask the First Circuit to decide the same issues again. *See Naser Jewelers, Inc. v. City of Concord*, 538 F.3d 17, 20 (1st Cir. 2008) ("Under the law of the case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.")

4

(internal quotation marks omitted); *U.S. v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993) ("The black letter rule governing this point is that a legal decision made at one stage of a civil or criminal case, unchallenged in a subsequent appeal despite the existence of ample opportunity to do so, becomes the law of the case for future stages of the same litigation, and the aggrieved party is deemed to have forfeited any right to challenge that particular decision at a subsequent date.").

Thus, the June 18 dismissal could not be appealed and is therefore not a "judgment" under Rule 54 that triggers the 14-day deadline for attorneys' fees motions.

### 2. The June 18 Dismissal for Mootness Is Not A Separate Document As Required By Rule 58.

Rule 54(d)(2)(B) provides that the deadline for filing for a motion for attorneys' fees is "no later than 14 days ***after the entry of judgment***." Rule 58 requires "[e]very judgment" to be "set out in a separate document." Fed. R. Civ. P. 58(a). Rule 58 provides that the only exceptions to this "separate document" rule are "an order disposing of a motion (1) for judgment under Rule 50(b); (2) to amend or make additional findings under Rule 52(b); (3) for attorney's fees under Rule 54; (4) for a new trial, or to alter or amend the judgment, under Rule 59; or (5) for relief under Rule 60." Fed. R. Civ. P. 58(a).

Here, the Court did not issue a "separate document" entering judgment when dismissing the case. A dismissal for mootness, or any other dismissal under Rule 12, is not one of the above-enumerated exceptions to the "separate document" rule. As such, the 14-day deadline under Rule 54(d)(2)(B) was never triggered, and the Plaintiffs' motion was timely.[5]

---

[5] Even if the June 18 dismissal for mootness was a "judgment" under Rule 54 and the 14-day deadline was triggered, Plaintiffs respectfully submit that the Court should extend the deadline and consider the filing timely because Plaintiffs' failure to file by that date was due to "excusable neglect" pursuant to Rule 6. Courts are granted wide discretion to extend deadlines for excusable neglect. *Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.*, 730 F.3d 23, 28 (1st Cir. 2013). The determination of "excusable neglect" is an "equitable one" whose

5

### B.  Even If The June 18 Dismissal Is A Judgment Under Rule 54, Plaintiffs' Motion Is Timely As A Motion For Additional Findings Under Rule 52(B)

The June 18 dismissal for mootness does not address all of the issues in the case. For example, it does not address the merits of Plaintiffs' claim, and, instead, simply found that the Plaintiffs' Clayton Act claim was moot in light of the judgment in the DOJ case and the Defendants' public announcement that they were accepting and not contesting the Court's permanent injunction and abandoned the merger. Importantly, the June 18 dismissal did not

---

"[r]elevant considerations include 'the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Tubens v. Doe*, 976 F.3d 101, 105 (1st Cir. 2020) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Importantly, "'excusable neglect' under Rule 6(b) is an 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer,* 507 U.S. at 392.
    All of these factors weigh in favor of a finding that Plaintiffs' ten-day delay in filing its Motion was due to excusable neglect. The "reason for the delay" factor weighs in favor of excusable neglect. Plaintiffs reasonably interpreted the June 18 order as one that was not a judgment that triggered the deadline under Rule 54. The dismissal was not appealable and did not resolve all of the issues in the case. Moreover, The Federal Rules are clear – a separate "judgment" document is required to trigger the deadline under Rule 54. Supra at __. No court has found that a dismissal for mootness triggers the 14-day deadline under Rule 54. The lack of controlling authority on this issue created a lack of clarity regarding the deadline, which Courts also consider when determining "excusable neglect." *See, e.g.*, *Pioneer,* 507 U.S. at 398–99 (1993); *In re Spenlinhauer*, No. 13-17191-JNF, 2018 WL 1684294, at *10 (Bankr. D. Mass. Apr. 5, 2018), *aff'd*, 592 B.R. 1 (D. Mass. 2018).
    Defendants do not claim they were prejudiced by Plaintiffs' ten-day delay, and indeed they cannot. Plaintiffs delay was only 10 days, and its delay did not impact any other deadlines of the Court of Defendants.
    Another of the factors, the length of the delay, weighs in favor of a finding of excusable neglect. This Court recently found that as many 13 days is "an insubstantial amount of time," weighing in favor of excusable neglect. *NuVasive, Inc. v. Rival Med., LLC*, No. CV 21-11644-DJC, 2023 WL 3997029, at *4 (D. Mass. June 14, 2023). Here, Plaintiffs' delay of only ten (10) days is even less "insubstantial." There can be no allegation that this ten-day delay had any impact on the case given the Court's June 18 dismissal.
    There can be no dispute that Plaintiffs acted, and are acting, in good faith. As explained above, Plaintiffs at least reasonably believed that the June 18 dismissal for mootness was not a judgment that triggered the 14-day deadline.

6

include any of the required findings as to whether Plaintiffs substantially prevailed and if they are entitled to an award attorneys' fees as required by section 16 of the Clayton Act.

Where, as here, a judgment does not resolve all remaining issues, a party may file a motion requesting additional findings or an amended judgment under Rule 52(b) within 28 days of the entry of judgment. Because Plaintiffs' Motion was filed within the 28-day deadline under Rule 52(b) and requires that the Court make additional findings, such a motion is timely.

### III.     Plaintiffs "Substantially Prevailed" In This Case

Section 16 of the Clayton Act provides that "in any action . . . in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff." Plaintiffs "substantially prevail[ed]" because they filed a complaint seeking to enjoin the merger and the merger was enjoined.

Defendants incorrectly urge this court to apply to this case the standards required for *permissive* fee-shifting statutes. Indeed, Defendants' response argues that Plaintiffs are not the "prevailing party," which is not a relevant question under section 16 of the Clayton Act. Defendants rely on *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001), a case that deals with different statutes having very different requirements for attorneys' fees. The Supreme Court in *Buckhannon* held that a "voluntary change in defendant's conduct," which in that case involved the West Virginia Legislature changing the law to remove the challenged language, could not make a plaintiff a "prevailing party" under the Fair Housing Amendments Act of 1988 ("FHAA") and the Americans with Disabilities Act of 1990 ("ADA"). *Buckhannon*, however, does not address broader concept of a "substantially prevailing party" in the Clayton act, and whether a "voluntary change in defendant's conduct" can make a person a "*substantially* prevailing party." *Buckhannon* instead analyzes the scope of the phrase "prevailing party" as used in the FHAA and ADA. *See*

7

*Buckhannon*, 532 U.S. at 603 ("In designating those parties eligible for an award of litigation costs, Congress employed the term '*prevailing party*,' a legal term of art."); *id* at 602 ("Under this 'American Rule,' we follow 'a general practice of not awarding fees to a *prevailing party* absent explicit statutory authority.'"); *id* at 607 ("We doubt that legislative history could overcome what we think is the rather clear meaning of '*prevailing party*' -- *the term actually used in the statute*."); *id.* ("The House Report to § 1988 states that *'[t]he phrase 'prevailing party'* is not intended to be limited to the victor only after entry of a final judgment following a full trial on the merits,'"). Thus, *Buckhannon* does not apply to the "substantially prevails" standard of the Clayton Act and should be disregarded.

Several other important differences between the Clayton Act and the FHAA and ADA further support the inapplicability of *Buckhannon*. For example, the FHAA and ADA involve *permissive* fee-shifting statutes, whereas the Clayton Act involves *mandatory* fee-shifting. The FHAA and ADA both expressly *allow* the Court to exercise its *discretion* to award attorneys' fees. 42 U.S.C. §§ 3613, 12205 (each stating that the court, "*in its discretion, may* allow the prevailing party, other than the United States, a reasonable attorney's fee") (emphasis added). The Clayton Act, in contrast, mandates fee-shifting, stating that, "[i]n *any action* under this section in which the plaintiff substantially prevails, the court *shall* award . . . ." 15 U.S.C. § 26 (emphasis added).[6]

---

[6] Similarly, Defendants' erroneously assert that the Court has discretion to deny fees entirely. Opposition at 13-14. The cases that Defendants' rely on for this extraordinary proposition are all cases involving *permissive* fee shifting statutes. In fact, one of the cases cited by Defendants, *First State Ins. Grp. v. Nationwide Mut. Ins. Co.*, 402 F.3d 43 (1st Cir. 2005), states that whether a court could deny fees entirely would be handled differently under mandatory fee shifting statutes. *Id.* at 44 n.1

8

Even if *Buckhannon* applies, which it does not, it would not preclude Plaintiffs from relying on Defendants' purported "abandonment" of the merger in the face of a permanent injunction entered by the Court (i.e., complete capitulation) as a basis for "substantially prevailing."  In *Buckhannon* the defendant voluntarily ceased the alleged illegal conduct prior to any resolution or Court judgment.  Here, Defendants did not abandon the merger until after it lost a trial and the Court entered a permanent injunction prohibiting the proposed merger.  Indeed, the Defendants' statement that they "voluntarily abandoned" the merger is not true.  Rather, Defendants simply acquiesced to the Court's permanent injunction without appeal.  *Buckhannon* does not address the fact that an injunction was achieved here, and therefore cannot address Plaintiffs' argument that it substantially prevailed because the Court actually enjoined the merger.

Defendants do not cite any authority applying *Buckhannon* to the antitrust laws.  And indeed they cannot.  As described above, *Buckhannon* involves very different fee-shifting statutes for which Congress clearly did not intend to as-strongly encourage private enforcement.  Where the Clayton Act **mandates** fees to prevailing plaintiffs ("shall") to plaintiffs that only "substantially prevail," the FHAA and ADA "allow" courts to award fees, in their "discretion," and only to those plaintiffs that "prevail." Applying *Buckhannon* to preclude fees in antitrust cases where the defendants "voluntarily" abandon an anticompetitive merger risks eliminating private plaintiff enforcement of those laws, which flies in the face of Congressional intent.  *See Costco*, 538 F.3d at 1136-37 ("Mandatory awards were seen as necessary to protect the injunction-seeking plaintiff's financial incentive to file suit because antitrust cases are normally very expensive to bring and maintain and claims for injunctive relief by nature provide no prospect of money damages."); Grumman Corp. v. LTV Corp., 533 F. Supp. 1385, 1389

9

(E.D.N.Y. 1982) ("The legislative history makes clear Congress' desire to provide an incentive to private parties who would otherwise be 'unable to afford or unwilling to bring antitrust injunction cases' to assume the role of 'private attorneys general' to help enforce the antitrust laws," and finding that, "[b]y modifying the word 'prevails' with the word 'substantially,' Congress appears to have expressed an intent to reward plaintiffs who 'vindicate rights'").

Finally, Defendants' argument that Plaintiffs are not entitled to fees because they made no contribution is meritless. As described in the Motion, Statements that the Court made about plaintiffs Garavanian and Nieboer likely pressured the Defendants to abandon their merger. And Defendants have acknowledged the importance of these statements. Larson Dec. at Ex. 2 (explaining that the Court's decision in the DOJ case was based on "harm to a small and unquantified group of fliers and enjoined the entire merger to present any potential harm to them: 'To those dedicated customers of Spirit, this one's for you.'"). Moreover, Plaintiffs filed their complaint seeking to enjoin the merger four (4) months before the DOJ and tried to take its case to trial before (and eventually concurrently with) the DOJ, and contributed to the joint discovery in the case. Defendants' contention that "[t]he discovery of Plaintiffs . . . was never produced to DOJ" is also incorrect. The DOJ requested the discovery of Plaintiffs, and Plaintiffs provided it to them.

## IV.  Amount of Fees

For the reasons set forth in the Motion, Defendants' arguments that Plaintiffs are seeking fees that are either unreasonable or unnecessarily incurred have no merit for the reasons articulated in Plaintiffs' Motion. However, Plaintiffs note that the Ninth Circuit's decision to reject such arguments in *Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190, 221–22 (9th Cir. 1964) illustrates the flawed logic Defendants' invoke here. In that case, the Ninth Circuit noted that "[t]here is no doubt that counsel for plaintiff did a prodigious amount of work

in preparing this case for trial, and in trying it. Defendants do not contend to the contrary. They do question the necessity for much of this work. However, this is almost like saying that plaintiff could have won more easily—a not very telling argument when made by those who contend that plaintiff should not have won at all."

## V.  Conclusion

Based on the foregoing and the arguments set forth in Plaintiffs Motion, Plaintiffs' Motion for Attorneys' Fees should be granted.

Dated: August 10, 2024

/s/  Stephen G. Larson
Stephen G. Larson (CA State Bar No. 145225)
LARSON LLP
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Tel: (213) 436-4888
Fax: (213) 623-2000
Email:slarson@larsonllp.com
(*Admitted Pro Hac Vice*)

Robert F. Ruyak, (DC Bar No. 233304)
Scott Gregory Herrman (DC Bar No. 983114)
LARSON LLP
900 17th Street NW, Suite 320
Washington, DC 20006
Tel: (202) 795-4900
Fax: (202) 795-4888
Email:rruyak@larsonllp.com
Email:gherrman@larsonllp.com
(*Admitted Pro Hac Vice*)

Joseph M. Alioto, Jr. (CA State Bar No. 215544)
ALIOTO LEGAL
100 Pine Street
Suite 1250
San Francisco, CA 94111
Tel.: 415-398-3800
Email: joseph@aliotolegal.com
(*Admitted Pro Hac Vice*)

Joseph M. Alioto (CA State Bar No. 42680)
ALIOTO LAW FIRM

11

One Sansome Street, 35th Floor
San Francisco, California 94104
Telephone: (415) 434-8900
Email: jmalioto@aliotolaw.com
(*Admitted pro hac vice*)

Josephine Alioto (CA State Bar No. 282989)
THE VEEN FIRM
20 Haight Street
San Francisco, CA 94102
Telephone: (415) 673-4800
Email: j.alioto@veenfirm.com
(*Admitted pro hac vice*)

Lawrence G. Papale (CA State Bar No. 67068)
LAW OFFICES OF LAWRENCE G. PAPALE
The Cornerstone Building
1308 Main Street, Suite 117
St. Helena, California 94574
Telephone: (707) 963-1704
(*Admitted pro hac vice*)

Jeffrey K. Perkins (CA State Bar No. 57996)
LAW OFFICES OF JEFFREY K. PERKINS
1550-G Tiburon Blvd., Box 344
Tiburon, California 94920
Telephone: (415) 302-1115
(*Admitted pro hac vice*)

Lingel H. Winters (CA State Bar No. 37759)
LAW OFFICES OF LINGEL H. WINTERS
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-2941
Email: sawmill2@aol.com
(*Admitted pro hac vice*)

Christopher A. Nedeau (CA State Bar No. 81297)
NEDEAU LAW PC
154 Baker Street
San Francisco, CA 94117-2111
Telephone: (415) 516-4010
Email: cnedeau@nedeaulaw.net
(*Admitted pro hac vice*)

Robert J. Bonsignore, Esq.

12

        BONSIGNORE TRIAL LAWYERS, PLLC
        23 Forest Street
        Medford, MA 02155
        Phone: 781-856-7650
        Email: rbonsignore@classactions.us

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that this document was filed through the ECF system on August 10, 2024, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Stephen G. Larson*
Stephen G. Larson
